1  KENNETH W. BROTHERS, *admitted pro hac vice*
   GARY M. HOFFMAN, *admitted pro hac vice*
2  Dickstein Shapiro Morin & Oshinsky, LLP
   2101 L Street, N.W.
3  Washington, DC  20037-1526
   Telephone:     (202) 785-9700
4  Facsimile:      (202) 887-0689

5  EDWARD A. MEILMAN, *admitted pro hac vice*
   Dickstein Shapiro Morin & Oshinsky, LLP
6  1177 Avenue of the Americas
   New York, New York  10036-2714
7  Telephone:     (212) 835-1400
   Facsimile:      (212) 997-9880

8
   JEFFREY B. DEMAIN, State Bar No. 126715
9  JONATHAN WEISSGLASS, State Bar No. 185008
   Altshuler, Berzon, Nussbaum, Rubin & Demain
10 177 Post Street, Suite 300
   San Francisco, California  94108
11 Telephone:     (415) 421-7151
   Facsimile:      (415) 362-8064

12
   Attorneys for Defendant
13

14                  UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16  _____   )   Case No.:  C03-02289 MJJ
                                        )
17  SYNOPSYS, INC.,                     )   **NOTICE OF MOTION AND MOTION**
                                        )   **TO DISMISS OR IN THE**
18                       Plaintiff,     )   **ALTERNATIVE TO STAY OR**
                                        )   **TRANSFER VENUE; MEMORANDUM**
19  v.                                  )   **OF POINTS AND AUTHORITIES IN**
                                        )   **SUPPORT THEREOF**
20  RICOH COMPANY, LTD.,                )
                                        )   Date:  August 19, 2003
21                       Defendant.     )   Time:  9:30 a.m.
                                        )   Courtroom:  11
22  _____   )

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION TO DISMISS OR
IN THE ALTERNATIVE TO STAY OR TRANSFER VENUE ........................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY OR
TRANSFER VENUE ........................................................................................................ 2

I.      INTRODUCTION AND SUMMARY ................................................................... 2

II.     FACTUAL BACKGROUND ................................................................................. 3

III.    ARGUMENT .......................................................................................................... 5

        A.    This Case Should Be Dismissed Because RCL Is Not Amenable to
              The Jurisdiction of This Court. .................................................................. 5

              1.    California Minimum Contacts Principles. ....................................... 5

              2.    California Courts Do Not Have General Personal Jurisdiction
                    Over RCL. ........................................................................................ 6

              3.    The California Court Does Not Have Specific Personal
                    Jurisdiction Over RCL. ................................................................... 7

                    a.    RCL Has Not Purposely Availed Itself of the
                          Privileges of Conducting Activities in California. ............. 7

                    b.    This Claim Does Not Arise out of Any RCL's
                          Activities in California. ..................................................... 8

                    c.    In View of RCL's Lack of Contacts with California,
                          Exercise of Specific Jurisdiction over RCL Would Be
                          Unreasonable. ..................................................................... 8

        B.    There Is No Justiciable Case Or Controversy Between RCL and
              Synopsys Because RCL Has Not And Will Not Sue Synopsys For
              Infringement of the '432 Patent .................................................................. 9

              1.    Synopsys Does Not Have An Objective Basis For A
                    Declaratory Judgment Action......................................................... 10

              2.    RCL Has Not Created A Reasonable Apprehension That It
                    Will Initiate A Suit Against Synopsys Because RCL Has Not
                    And Will Not Sue Synopsys For Infringement As To Any
                    Claim Of The '432 Patent. ............................................................ 12

              3.    There Is No Justiciable Controversy Because Synopsys Has
                    No Valid Interest In This Declaratory Judgment Suit, As
                    Synopsys's Interests Are Merely Economic ................................. 13

C.    The Court Should Dismiss Synopsys's Declaratory Judgment Action Because All Issues In Controversy Will Be Determined By RCL's Delaware Action ................................................................................. 15

D.    In The Alternative, This Action Should Be Stayed Or Transferred ...................... 16

    1.    This Action Should Be Stayed Or Transferred To Delaware Under The First-To-File Rule ....................................... 16

    2.    There Are No Local Interests Or Public Policies That Would Be Better Served By Trial in Northern California Than In Delaware ................................................................................. 18

    3.    The Present Action Will Benefit From the Speed, Expense And Efficiency of Trial In Delaware .......................................... 19

IV.    CONCLUSION .......................................................................................... 20

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227 (1937)..................................................9

4

*Aralac, Inc. v. Hat Corp. of America*, 166 F.2d 286 (3d Cir. 1948) ....................13, 14, 15

5

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731

6
        (Fed. Cir. 1988) ........................................................................10, 11, 13

7

*Asten, Inc. v. Weavexx Corp.* 2000 WL 1728354 (D. Del. 2000) .....................................17

8

*BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993).......................10

9

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ..........................................................6, 8

10

*Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082 (9th Cir. 2000)..........7

11

*Bisq'ettes Ceramic Tile, Inc. v. Skinner,* 2000 WL 33375409

12
        (N.D. Cal. 2000) .....................................................................................5-8

13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................6, 7

14

*Centocor, Inc. v. Medimmune, Inc.*, 2002 WL. 31465299 (N.D. Cal. 2002).............15, 17

15

*Chiron Corp. v.  Advanced Chemtech, Inc.*, 869 F. Supp. 800

16
        (N.D. Cal. 1994) .........................................................................................15

17

*Church of Scientology of California v. United States Department of the
        Army*, 611 F.2d 738 (9th Cir. 1979) ..........................................................17

18

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993)...........................5

19

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962

20
        (D. Del. 1993)..............................................................................................16

21

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941).....................................17

22

*Data-Discount, Inc. v. Systems Technology Associate, Inc.*, 557 F.2d 1280

23
        (9th Cir. 1977) ...............................................................................................6

24

*Dow Chemical Co. v. Viskase Corp.*, 892 F. Supp. 991 (N.D.Ill. 1995).........................14

25

*Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931 (Fed Cir. 1993) .................................15

26

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).......................6

27

*Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474
        (9th Cir. 1986) ...............................................................................................7

28

*Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879
(Fed. Cir. 1985) ...................................................................................... 11

*Intellectual Property Development v. TCI Cablevision of California, Inc.*,
248 F.3d 1333 (Fed. Cir. 2001) .......................................................... 12, 13

*International Shoe Co. v. State of Washington,* 326 U.S. 310 (1945) ................................ 5

*Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) ........................................ 17

*Kerotest Manufacturing Co. v. C-O- Two Fire Equipment Co.*,
342 U.S. 180 (1952) .............................................................................. 15

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.2d 267 (9th Cir. 1995) ..................... 5, 7

*Pacesetter System, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ................... 15, 17

*Panavision International, L.P. v. Dennis Toeppen,* 141 F.3d 1316
(9th Cir. 1998) .................................................................................... 6, 7

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051
(Fed. Cir. 1995) ........................................................................... 10, 11, 13

*Roth v. Garcia Marquez,* 942 F.2d 617 (9th Cir. 1991) ...................................................... 9

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992) ................................... 10, 11

*Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc.*,
655 F.2d 938 (9th Cir. 1981) ................................................................... 9

*Stone Creek Mech., Inc. v. Carnes Co., Inc.*, 2002 WL 31424390
(E.D. Pa 2002) .................................................................................. 17, 18

*Stratos Lightwave, Inc. v. E20 Communications, Inc.*, 2002 WL. 500920 (D.
Del. 2002) ......................................................................................... 18

*Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054
(Fed. Cir. 1995) ................................................................................ 12, 13

*TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314 (7th Cir. 1974) ........................................... 13, 14

*Van Wyck Int'l Corp. v. Scovill Mfg. Co.*, 184 U.S.P.Q. 572
(S.D.N.Y. 1974) .................................................................................. 18

*Walker Process Equipment Co. v. FMC Corp*, 356 F.2d 449
(7th Cir. 1966) ................................................................................. 13, 14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ..................................... 5

1

## FEDERAL STATUTES

2    28 U.S.C. § 1404(a)......................................................................................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS
## OR IN THE ALTERNATIVE TO STAY OR TRANSFER VENUE

2

3      PLEASE TAKE NOTICE that on August 19, 2003, at 9:30 a.m., in Courtroom 11,

4  located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, Defendant Ricoh

5  Company, Ltd., will and hereby does move the Court to dismiss this case or in the alternative to

6  stay or transfer venue.

7      Defendant brings this motion on the grounds that it is not amenable to the personal

8  jurisdiction of this Court, there is no justiciable controversy between the parties, and this case

9  should be heard in the District Court of Delaware where an earlier-filed related case is pending.

10      This motion is based on this Notice of Motion and Motion, the accompanying

11  Memorandum of Points and Authorities, the Declarations of Kenji Takiguchi and Kenneth W.

12  Brothers, the complete files and records in this action, and on such other argument or evidence as

13  may be presented at or before the time of hearing.

14

15  Dated:  July 15, 2003                    Respectfully submitted,

16                                           Jeffrey B. Demain
                                             Jonathan Weissglass
17                                           ALTSHULER, BERZON, NUSSBAUM,
                                             RUBIN & DEMAIN
18
                                             Gary M. Hoffman
19                                           Edward A. Meilman
                                             Kenneth W. Brothers
20                                           DICKSTEIN SHAPIRO MORIN &
                                               OSHINSKY LLP
21

22

23                                           _____/s/_____

24                                           Kenneth W. Brothers

25                                           Attorneys for Defendant Ricoh Company, Ltd.

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY OR TRANSFER VENUE

### I.    INTRODUCTION AND SUMMARY

Seven months ago, Ricoh Company, Limited ("RCL") sued several designers and manufacturers of computer chips in the District of Delaware for patent infringement, alleging that those defendants were using the steps recited in the process claims of RCL's United States Letters Patent No. 4,922,432 (the '432 Patent).  The '432 Patent describes a highly advanced technical process for designing and manufacturing certain types of computer memory chips.  In the process of their alleged infringement, the Delaware defendants use software supplied by the plaintiff in the instant action, Synopsys.  RCL has never accused Synopsys itself of infringing the '432 Patent.

Although Synopsys chose not to try to intervene in the Delaware case, its attorneys have assumed control of the defense by appearing on behalf of each of the manufacturers and filing multiple declaratory judgment counterclaims against RCL.  Synopsys' attorneys have filed all papers on behalf of each of Delaware defendants; have attended the Rule 16 conference and agreed to a discovery schedule and protective order; and have taken and responded to discovery. Despite this extensive involvement, however, Synopsys has never claimed that it has been threatened by RCL.  Nevertheless, after months of litigating the Delaware case, Synopsys filed the instant declaratory judgment action.  Synopsys' actions are nothing more, and nothing less, than a belated attempt to forum shop and stall.

This case should be dismissed for three independent reasons.

First, as demonstrated by the attached declaration of Kenji Takiguchi, the Deputy General Manager of RCL's Legal Division, RCL is not amenable to personal jurisdiction of this Court. RCL is a Japanese corporation headquartered in Tokyo.  RCL has no presence in California.  RCL has no offices in California.  It has never registered to do business in California and has no agent in California.  RCL does not make any products in California.  RCL has not purposefully availed itself to jurisdiction in California.  There is no basis in fact or law to subject RCL to the jurisdiction of this Court.

1         Second, there is no justiciable controversy between the parties. RCL has neither sued nor

2    threatened to sue Synopsys on either the '432 or U.S. Patent No. 5,197,016 (the '016 Patent).

3    Although RCL has sued certain customers of Synopsys in Delaware alleging that the manufacture

4    of computer chips infringes the process claims of RCL's '432 Patent, RCL has not and will not

5    assert any such claims against Synopsys. As such, there is no case or controversy between Ricoh

6    and Synopsys. The Delaware defendants are accused of directly infringing the '432 Patent, and no

7    declaratory judgment action by Synopsys can resolve Ricoh's direct infringement claims.

8         Third, even if this Court has jurisdiction over RCL, and even if there is a case or

9    controversy, this action should be dismissed because all issues in controversy will be determined

10   by the suit initiated by RCL in Delaware federal court.

11        In the alternative, if this case is not dismissed, then it should be stayed or transferred to

12   Delaware.

13

14

15   II.    **FACTUAL BACKGROUND**

16        RCL is a Japanese corporation headquartered in Tokyo. (Kenji Takiguchi Decl. ¶ 2.) RCL

17   is not incorporated in California. (*Id.* at ¶ 3.) RCL is not registered to do business in California.

18   (*Id.* at ¶ 4.) RCL has no offices in California. (*Id.* at ¶ 5.) RCL has no designated agent in

19   California. (*Id.* at ¶ 6.) RCL does not make any products in California. (*Id.* at ¶ 7.) RCL has not

20   purposefully availed itself to jurisdiction in California. (*Id.* at ¶ 8.) RCL does not consent to the

21   jurisdiction of this Court. (*Id.* at ¶ 11.)

22        As Synopsys has recited in its declaratory judgment complaint, on January 21, 2003, RCL

23   initiated suit in the District of Delaware against Aeroflex Incorporated, AMI Semiconductor, Inc.,

24   Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox

25   Tech Inc., alleging infringement of RCL's Patent No. 4,922,432. (Synopsys 5/15/03 Compl. ¶6; a

26   copy of RCL's complaint and the '432 Patent is attached as exhibit 1 to the Declaration of

27   Kenneth W. Brothers.) Aeroflex, AMI Semiconductor, Inc. AMIS and Matrox Tech, Inc. all are

28   incorporated in Delaware. (Brothers Decl. ¶¶ 3-5.) The other Matrox entities are incorporated in

1  New York and Quebec, and have their principal places of business in Florida, New York, Illinois,

2  and Quebec.  (Brothers Decl. ¶¶ 6-7.)  Aeroflex, AMI, and some of the Matrox corporations use

3  Synopsys software to design some of their computer chips.  (Compl. ¶6.)  All defendants filed

4  amended answers and declaratory judgment counterclaims against RCL by April 10, 2003.

5  (Brothers Decl. ¶¶ 3-7 and exhibits 2-7.)

6          Non-party Synopsys has assumed control of the defense of the Delaware case.  Synopsys'

7  attorneys have filed all papers on behalf of each of the defendants.  (Brothers Decl. ¶ 14.)

8  Synopsys' attorneys attended the Rule 16 conference held on May 16, 2003, which established a

9  pretrial and trial schedule.  (*Id*. ¶ 9 and exhibit 8.)  The parties filed their initial disclosures on

10  May 30, 2003.  (*Id*. ¶ 10 and exhibit 9.)  Synopsys' attorneys have served a large volume of

11  interrogatories, document requests and requests for admission.  (*Id*. ¶ 11.)  Document exchange is

12  underway.  (*Id*. ¶ 12.)  Counsel for Synopsys and the Delaware defendants have demanded a Rule

13  30(b)(6) deposition of RCL, which commenced on July 15, and a deposition of a third party is

14  scheduled for July 17.  (*Id*. ¶ 13.)  The parties also have served subpoenas upon third parties for

15  documents and depositions.  (*Id*. ¶ 12.)  Despite this extensive involvement, however, Synopsys

16  has never claimed that it has been threatened by RCL.  (*Id*. ¶ 14.)

17          On June 5, 2003, Synopsys served RCL with its declaratory judgment complaint alleging

18  invalidity and non-infringement of the '432 Patent as well as the '016 patent.  (*Id*. ¶ 15.)  Synopsys

19  is not a designer or manufacturer of computer chips.  Instead, Synopsys is a software company

20  that makes, among other things, software that its customers use to help design computer chips.

21  (Compl. ¶ 4.)  Synopsys does not allege that, prior to the commencement of the Delaware

22  litigation, it had any communications with RCL, in California or elsewhere, relating to the '432 or

23  '016 Patent.  RCL has neither sued nor threatened to sue Synopsys on either the '432 or '016

24  Patent.  (Takiguchi ¶ 9.)  RCL has not and will not assert any such claims against Synopsys.  (*Id*.)

25  RCL unconditionally agrees not to sue Synopsys for infringement as to any claim of the '432

26  Patent and the '016 Patent based upon the products currently manufactured, sold, and used by

27  Synopsys.  (*Id*. ¶ 10.)

28

III.    **ARGUMENT**

    A.    **This Case Should Be Dismissed Because RCL Is Not Amenable to The Jurisdiction of This Court.**

RCL is not amenable to personal jurisdiction in the Northern District of California. As set forth in the declaration of Kenji Takiguchi, RCL's Deputy General Manager of the Legal Division, RCL is a Japanese corporation headquartered in Tokyo. (Takiguchi Decl. ¶ 2.) RCL is not incorporated in California. (*Id*. ¶ 3.) RCL is not registered to do business in California. (*Id*. ¶ 4.) RCL has no offices in California. (*Id*. ¶ 5.) RCL has no designated agent in California. (*Id*. ¶ 6.) RCL does not make any products in California. (*Id*. ¶ 7.) RCL has not purposefully availed itself to jurisdiction in California. (*Id*. ¶ 8.) RCL has not consented to the jurisdiction of this Court. (*Id*. ¶ 11.)

    1.    **California Minimum Contacts Principles.**

California law "allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the Constitution." *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1484 (9th Cir. 1993). Due Process requires that the party over which jurisdiction is sought have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945). These notions of fairness require that RCL's activities involving the forum state should be such that the defendant could "reasonably anticipate being haled into court there." *Bisq'ettes Ceramic Tile, Inc. v. Skinner,* 2000 WL 33375409 (N.D. Cal. 2000) at *2 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)); *see Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995).

Another rationale supporting the minimum contacts requirement is that defendants should be protected "against the burdens of litigating at a distant or inconvenient forum" and to "ensure that States … do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen*, 444 U.S. at 292.

Personal jurisdiction based on such minimum contacts can either be "general" or "specific," depending on the nature of the defendant's contacts with the forum state. General

jurisdiction may be asserted if the defendant's activities are "substantial" or "continuous and systematic" within the forum state, even if the cause of action is not related to those activities. *Data-Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1287 (9th Cir. 1977).  If the defendant's contacts are insufficient to support general jurisdiction, specific jurisdiction can be found where the defendant has minimum contacts with the forum state that are related to the subject of the lawsuit.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985); *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).

Synopsys has the burden of establishing that California has personal jurisdiction over RCL.  *Data Disc*, 557 F.2d at 1285; *Bisq'ettes*, at *2.

> 2.    **California Courts Do Not Have General Personal Jurisdiction Over RCL.**

For a California court to have general jurisdiction over RCL, Synopsys must show that RCL:

- is domiciled in the forum state;
- consents to California jurisdiction;
- was served and is present in California; or
- has "substantial" or "continuous and systematic" activities in California.

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984); *Panavision International, L.P. v. Dennis Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998); *Bisq'ettes*, at *2.  The Ninth Circuit has held that, in making this general jurisdiction determination, courts may consider whether the defendant:

- makes sales in the forum state;
- engages in business in the forum state;
- appoints an agent for service of process in the forum state;
- serves the state's markets;
- is licensed to do business in the state; or
- is incorporated in the forum state.

1  *Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000), *Hirsch v.*

2  *Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1478 (9th Cir. 1986); *Bisq'ettes* at *2.

3          None of these conditions are satisfied.  RCL is domiciled in Japan, not California

4  (Takiguchi Decl. at ¶ 2).  RCL does not consent to jurisdiction in California.  (*Id*. at ¶ 11).  RCL

5  was not served in California.  (Brothers Decl. at ¶ 15).  RCL does not have any substantial or

6  continuous and systematic contacts with California.  For example, RCL has no offices in

7  California.  (Takiguchi Decl. at ¶ 5).  RCL is not registered or licensed to do business in

8  California.  (*Id*. at ¶ 4).  While RCL has U.S. subsidiaries in California, RCL has no corporate

9  presence in this state.  Because RCL has neither substantial nor continuous and systematic

10  contacts with California, this action must be dismissed for want of personal jurisdiction.

11

12          3.    **The California Court Does Not Have Specific Personal Jurisdiction Over**
              **RCL.**

13          "The existence of specific jurisdiction is determined by the application of a three-

14  pronged test."  *Bisq'ettes* at *3 (citing *Panavision* at 1320, *Omeluk* at 270):

15

16          First, the defendant must do some act or consummate some transaction by
          which he purposefully avails himself of the privileges of conducting
17          activities in the forum state, thereby invoking the benefits and protection of
          its laws.

18
          Second, the claim must be one which arises out of or results from the
19          defendant's forum-related activities.

20          Third, the exercise of jurisdiction must be reasonable.

21  *Id*. at *3.  This test requires that all three conditions be satisfied.  *Id*.  Defendants cannot show that

22  RCL has met any of these conditions.

23

24          a.    **RCL Has Not Purposely Availed Itself of the Privileges of**
              **Conducting Activities in California.**

25          The reason for the "purposeful availment rule" is to ensure "that a non-resident

26  defendant will not be haled into local courts solely as the result of 'random, fortuitous or

27  attenuated' contacts with the forum state."  *Bisq'ettes* at *4 (citing *Panavision* at 1320, quoting

28  *Burger King* at 475).  Any contacts that RCL has with California are, at best, attenuated.  While it

1  may be that RCL's United States subsidiary has business contacts with California, RCL has no

2  such contacts.

3          b.      **This Claim Does Not Arise out of Any RCL's Activities in**
                   **California.**

4

5          Even if the Court were to find that RCL had activities in California, this claim does not

6  arise out of those activities.  The Ninth Circuit uses a "but for" test to determine whether a claim

7  arises out of the defendant's forum-related activities:

8          Specific jurisdiction only applies to claims arising out of the nonresident's
           forum-related activities. In determining whether the claim arises out of the
9          nonresident's forum-related activities, the proper test is *whether the plaintiff*
           *would have suffered the alleged injuries but for the defendant's forum-*
10         *related activities.*

11  *Bisq'ettes* at *5 (citing *Ballard* at 1500) (emphasis added).

12         As discussed *supra,* RCL does not have minimum contacts with California.  Even if it

13  did, there is no "but for" showing as required by California law.

14         c.      **In View of RCL's Lack of Contacts with California, Exercise of**
                   **Specific Jurisdiction over RCL Would Be Unreasonable.**

15

16         Application of the Ninth Circuit's reasonableness test results in a conclusion that exercise

17  by this case may not be transferred to California, because that Court's specific jurisdiction over

18  RCL would be unreasonable.  This test weighs the following seven factors:

19             •   the extent of the defendant's purposeful interjection into the forum state;

20             •   the burden on the defendant, if forced to litigate in the forum state;

21             •   plaintiff's interest in convenient and effective relief;

22             •   the most efficient forum for judicial resolution of the dispute;

23             •   the forum state's interest in adjudicating the dispute;

24             •   the existence of an alternative forum;

25             •   the extent of conflicts of law with sovereignty of the defendant's state.

26  *Roth v. Garcia Marquez,* 942 F.2d 617, 623-24 (9th Cir. 1991); *Bisq'ettes* at *5.

27         As discussed *supra,* RCL has not purposefully interjected itself into California.  RCL is

28  a Japanese corporation that does business in Japan.  Like many large Japanese corporations, it has

1   taken great pains to avoid having to litigate in the United States.  It would be burdensome for RCL

2   to have to defend this declaratory judgment action in California at the very same time that it was

3   prosecuting an earlier-filed patent infringement action in Delaware.  Application of the seven *Roth*

4   factors demonstrates that exercise of specific personal jurisdiction over RCL by the Northern

5   District of California would be unreasonable and therefore violative of Due Process protections.

6
    B.    **There Is No Justiciable Case Or Controversy Between RCL and Synopsys**
7          **Because RCL Has Not And Will Not Sue Synopsys For Infringement of the**
           **'432 Patent**

8          In filing its declaratory judgment action, Synopsys hopes to delay RCL's substantive

9   charges of direct infringement of the '432 Patent against Synopsys' customers by redefining the

10  dispute to whether Synopsys' software (without any actual chip manufacturing operations)

11  infringes the '432 Patent.  Synopsys' strategy is doomed, however, because RCL has not made

12  such a claim.  Instead, RCL's infringement claims against the Delaware defendants are claims of

13  direct patent infringement based upon the fact those defendants are using a process that combines

14  software, hardware and certain manufacturing processes in a manner that infringes the '432 Patent.

15  Synopsys has never, and will never, be charged with infringement, so there is no case or

16  controversy between RCL and Synopsys.

17         Synopsys may not use a declaratory judgment action as a means to circumvent the

18  central dispute of direct patent infringement in order to instead obtain an advisory opinion with

19  respect to Synopsys which is not accused of infringement.  Rather, declaratory judgments may

20  only be employed where there is an actual justiciable controversy which is ripe for adjudication.

21  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (distinguishing justiciable

22  controversies from mere hypothetical situations); *Societe de Conditionnement en Aluminum v.*

23  *Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942-43 (9th Cir. 1981) (defining actual controversy).  There

24  is no singular test delineating the boundary between abstract hypothetical questions and actual

25  controversies; each case must be determined by considering the alleged facts and circumstances.

26         In cases in which a plaintiff (such as Synopsys) seeks a declaration of invalidity or

27  non-infringement of a patent, the plaintiff must demonstrate both an activity which could

28  constitute infringement, or concrete steps which the declaratory plaintiff has taken with the intent

1   to infringe, and an explicit action by the patent holder creating a reasonable apprehension that the

2   declaratory plaintiff will face infringement.  *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975,

3   978 (Fed. Cir. 1993) (setting forth a two prong test for determining justiciability in patent

4   litigation); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992) (the declaratory

5   judgment plaintiff carries the burden of establishing reasonable apprehension that it will be sued).

6   The court determines the existence of an activity constituting infringement by examining the

7   actions of the alleged infringer, while it looks to the actions of the patent holder in determining the

8   existence of a reasonable apprehension that the patent holder will initiate an infringement action.

9   *BP*, 4 F.3d at 978-79 ("The element of threat or reasonable apprehension of suit turns on the

10  conduct of the patentee, while the infringement element depends on the conduct of the asserted

11  infringer.").

12          1.   **Synopsys Does Not Have An Objective Basis For A Declaratory**
               **Judgment Action**

13

14          A subjective assessment that a declaratory plaintiff is subject to suit by the patent

15  holder does not create a reasonable apprehension sufficient for a justiciable controversy.  *Indium*

16  *Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (a "subjective

17  apprehension" of suit does not create a justiciable controversy).  Rather, the determination as to

18  whether a reasonable apprehension exists requires an objective evaluation of the patent holder's

19  actions.  *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed.

20  Cir. 1995) ("The 'reasonable apprehension of suit' test requires more than the nervous state of

21  mind of a possible infringer.").  Where, as here, there has been no explicit threat of litigation, the

22  court must consider the circumstances in their entirety.  *Shell Oil Co. v. Amoco Corp.*, 970 F.2d

23  885, 888 (Fed. Cir. 1992)("We must look for any express charges of infringement, and if none,

24  then to the 'totality of the circumstances.'") (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem,*

25  *Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)).  In evaluating those circumstances, initiation of

26  licensing agreements alone, without a threat of infringement litigation, do not create a reasonable

27  apprehension of litigation.  *Phillips Plastics Corp.*, 57 F.3d at 1054 ("a patentee's attempt to

28

1   conduct license negotiations is a commercial activity.  [Defendant's] activity was not a threat of

2   suit, and did not create a justiciable controversy").

3          In *Phillips Plastics*, Kato Hatsujou Kabushiki Kaisha did not create a reasonable

4   apprehension that it would initiate suit against Phillips Plastics for infringing upon its patent

5   because it did not threaten Phillips Plastics implicitly or explicitly with suit.  *Id.*  Kato Hatsujou

6   Kabushiki Kaisha merely stated that Phillips Plastics or Illinois Tool Works, the business to which

7   Phillips Plastics sold its fastener business and which Phillips Plastics agreed to indemnify in patent

8   infringement suits,  needed a license in order to make certain fasteners.  *Id.*  Similarly, RCL has

9   not threatened Synopsys with suit; RCL has merely offered Synopsys's *customers* a non-exclusive

10  license.  In its correspondence to Synopsys's customers, RCL has not claimed that Synopsys is

11  infringing upon RCL's patent and has therefore not created a reasonable apprehension that it will

12  initiate infringement litigation against Synopsys.

13         Conversely, in *Arrowhead,* 846 F.2d at 731, a reasonable apprehension of litigation

14  existed where the following three situations arose: the president of the patent holding company

15  sent letters to the declaratory plaintiff's customers stating that the declaratory plaintiff was not

16  licensed to use the patent holder's product and that any use would be a direct patent infringement,

17  the patent holding company warned the declaratory plaintiff that it was willing to protect its patent

18  rights through patent infringement litigation, and in another patent infringement action the patent

19  holder submitted a proposal that the court find the declaratory plaintiff an infringer.  *Id.* at 733,

20  736-37.

21         Synopsys has not alleged that RCL has engaged in any of the activities which created a

22  reasonable apprehension of a suit in *Arrowhead*.  RCL has not alleged that Synopsys infringes

23  upon the patents which RCL holds.  RCL has never proposed to a court that it determine that

24  Synopsys has infringed upon its patent.  Thus, Synopsys has no objective basis that it has been or

25  will be accused by RCL of infringing the '432 Patent.

26

27

28

1

2

### 2.    RCL Has Not Created A Reasonable Apprehension That It Will Initiate A Suit Against Synopsys Because RCL Has Not And Will Not Sue Synopsys For Infringement As To Any Claim Of The '432 Patent.

3

4

5

6

7

8

9

There is no question that RCL has not sued or threatened to sue Synopsys regarding the '432 Patent. Although RCL is currently pursuing infringement claims against manufacturers of computer chips using the process disclosed in the '432 Patent, RCL will not assert those claims against Synopsys. As manifested in the attached declaration of Kenji Takiguchi, RCL's Deputy General Manager of RCL's Legal Division, RCL has unconditionally agreed not to sue Synopsys for infringement as to any claim of the '432 Patent and the '016 Patent based upon the products currently created by Synopsys.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Where a statement of non-liability estops a patentee from asserting liability against a declaratory plaintiff for infringement, the declaratory plaintiff maintains no reasonable apprehension that it will face an infringement suit from the patentee and therefore divests the court of a justiciable controversy required for jurisdiction to consider declaratory judgment claims. The legal effect of RCL's promise not to sue estops it from asserting liability against Synopsys in connection with any products that party made, sold, or used on or before the date on which the promise was made. *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995) (holding that a patentee's promise not to sue, in statement of counsel and motion papers and briefs, estops the patentee from suing from past acts of patent infringement and renders declaratory plaintiff's claim non-justiciable). "This estoppel, in turn, removes from the field any controversy sufficiently actual to confer jurisdiction over [a] case." *See also Intellectual Property Development v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1338-41 (Fed. Cir. 2001) (statement of non-liability attached to the motion to dismiss the counterclaimant had no liability on the relevant patent, and that plaintiff would not sue counterclaimants for patent infringement meant that there was no case or controversy). RCL's unconditional agreement not to sue removes any current or future apprehension by Synopsys that it will face claims of infringement regarding the patents-in-suit. Under the well-established law of *Super Sack* and *IPD,* RCL's undertaking completely eliminates any actual case or controversy between Synopsys and RCL.

1        3. **There Is No Justiciable Controversy Because Synopsys Has No Valid Interest In This Declaratory Judgment Suit, As Synopsys's Interests Are Merely Economic**

2

3        In order for a declaratory plaintiff's actions to constitute an infringement, he must have

4 a valid interest requiring the protection of a declaratory judgment. *Arrowhead*, 846 F.2d at 736.

5 An economic interest alone is not enough to create a valid interest. *Aralac, Inc. v. Hat Corp. of*

6 *America*, 166 F.2d 286, 295 (3d Cir. 1948). In the absence of a claim that the declaratory plaintiff

7 infringed upon the patentee's patent, an economic interest is not sufficient to justify a justiciable

8 controversy. *Walker Process Equip. Co. v. FMC Corp*, 356 F.2d 449, 452 (7th Cir. 1966). An

9 economic interest is asserted where a declaratory plaintiff claims that a patent holder's assertions

10 of violations of his patent negatively impact the plaintiff's sales, thereby causing the declaratory

11 plaintiff to suffer from financial loss. *See Aralac*, 166 F.2d at 289-90.

12        Where suits are pending against the declaratory plaintiff's customers and those suits

13 allege that these customers are using the declaratory plaintiff's product in a way which violates the

14 patentee's patent, then a justiciable controversy may not exist. *See id.* at 286. There is no

15 justiciable controversy where a patentee has not charged that a product which the declaratory

16 plaintiff produces infringes his patent and merely charges that the process in which it is used

17 infringes upon his patent. *See Id.* at 293. ("[Plaintiff] has no right to demand that others be

18 allowed to practice the patented process in violation of the patent monopoly in order that it might

19 have a market for its [product]."); *see also TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 319 (7th Cir.

20 1974) ("Where…the charge of patent infringement is asserted against the use of a product by a

21 particular customer, no independent charges of patent infringement unrelated to the litigation are

22 implied."); *Walker Process Equip. Co. v. FMC Corp*, 356 F.2d 449, 452 (7th Cir. 1966) (asserting

23 that even though the declaratory plaintiff's product required no alteration before being utilized in

24 an infringing manner, as long as the patent owner did not charge the declaratory plaintiff with

25 infringement and only claimed infringement by the customers of the declaratory plaintiff because

26 they used the product to perform a process covered by the patent holder's patent, there was no

27 justiciable controversy).

28

1           In *Aralac*, Aralac sold casein fibers to its customers and Hat Corporation, the patent

2    holder, notified Aralac's customers that its patent covered use of casein fiber in manufacturing

3    hats and that unauthorized use of the fiber's would infringe upon Hat Corporation's patents.

4    *Aralac*, 166 F.2d at 289.  Additionally, Hat Corporation charged one of Aralac's largest customers

5    with infringement, thereby prompting this customer to obtain a license from Hat Company.  *Id.*

6    While stating that proof by a vendor that it sells products which makes its customers vulnerable to

7    an infringement claim by a patent holder creates a justiciable controversy sufficient for a

8    declaratory judgment action, the court held that there was no justiciable controversy under these

9    facts because Hat Corporation never alleged that the declaratory plaintiff's product itself infringed

10   upon its patent.  *Id.* at 292-93 ("[T]here has never been a charge of infringement made by

11   defendant … as to the sale or purchase of casein fiber or against casein fiber as such, but … that

12   the purchasers of plaintiff's fibers were, by using the process encompassed by defendant's patents,

13   performing an act of infringement.").

14          Just as the declaratory plaintiff in *Aralac* did not prove the existence of a valid interest,

15   Synopsys has not demonstrated that it has an interest sufficient to constitute a justiciable

16   controversy.  RCL is not claiming that Synopsys's product itself infringes upon RCL's patents;

17   rather, RCL is claiming that Synopsys's customers are using Synopsys's product in a way which

18   infringes upon RCL's patents.  Like the declaratory plaintiff in *Aralac*, Synopsys has no interest in

19   this litigation beyond an economic one.

20          Declaratory relief is not available to a declaratory plaintiff who may stand to lose

21   business, but has not alleged that it has any *legal* interest.  *Dow Chemical Co. v. Viskase Corp.*,

22   892 F.Supp. 991, 997 (N.D.Ill. 1995) (determining that patentee's threat of infringement suit

23   against manufacturer's customers based on customers' alleged production of infringing product

24   does not create actual controversy).  The claim of commercial injury alone does not constitute a

25   valid interest on the part of Synopsys in a declaratory judgment suit.

26

27

28

C.    **The Court Should Dismiss Synopsys's Declaratory Judgment Action Because All Issues In Controversy Will Be Determined By RCL's Delaware Action**

When one party initiates a patent infringement suit in a federal district court, and a second party initiates a suit raising the same issue, the first party chooses the forum of the suit, "unless interests of justice and convenience dictate otherwise." *Chiron Corp. v. Advanced Chemtech, Inc.*, 869 F.Supp 800, 801-802 (N.D. Cal. 1994) (stating that absent extenuating circumstances, "claims should be adjudicated in the forum of the first-filed action") (citing *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937-38 (Fed Cir. 1993)). In determining "the interests of justice and convenience," a court is to look to the availability of witnesses, absence of jurisdiction over all necessary or desirable parties, the interests of the real party in interest, and the potential to consolidate related litigation.

The Supreme Court has ruled that, where a patent holder initiates a suit against an infringer, the company which manufactures and supplies products for the infringer may not initiate a declaratory judgment action in a different forum. In *Kerotest Mfg Co. v. C-O- Two Fire Equip. Co.*, 342 U.S. 180 (1952), the patent holder, C-O-Two Fire Equipment Company, initiated suit against the Acme Equipment Co. in the District Court of Illinois, claiming that Acme made and sold equipment which infringed upon its patents. Kerotest, a company who manufactured and supplied equipment to Acme then brought a declaratory judgment action in the District Court of Delaware claiming that the patents at issue in the Illinois action were invalid. *Id.* at 181. The Supreme Court affirmed the dismissal of the declaratory judgment action, holding that "[t]he manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and invalidity." *Id.* at 184.

The Ninth Circuit has held that a district court may appropriately dismiss a suit brought against patent holder (like the Synopsys action against RCL) if the patent holder has previously filed an infringement action in another district. *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982) Likewise, in *Centocor, Inc. v. Medimmune, Inc.*, 2002 WL 31465299,

1  *4 (N.D. Cal. 2002), this Court granted the motion to dismiss a patent declaratory judgment action

2  in favor of an earlier-filed action.  The Court found that the two actions involved similar parties

3  and issues, and when those actions are commenced in separate forums, preference is given to first-

4  filed plaintiff's choice of forum.  As a result, the Court dismissed the later-filed action.

5         This case is no different.  Synopsys cannot initiate a declaratory judgment action

6  establishing the invalidity of a patent which is being challenged in another forum.  Because

7  Synopsys's only interest is in indemnifying the users of its equipment in the earlier filed Delaware

8  action, all matters pertinent to Synopsys's interest will be determined in the suit which was filed

9  first.

10        Synopsys has not offered any reasons why in this instance justice mandates an exception to

11  the rule that the party filing first chooses the forum.  Because it is a Delaware corporation, the

12  Delaware District Court has jurisdiction over Synopsys.  Synopsys has not alleged that there is any

13  reason why the location of its evidence or witnesses requires that an exception be made and that

14  the forum of its choice be honored.

15

16     D.    **In The Alternative, This Action Should Be Stayed Or Transferred**

17            1.    **This Action Should Be Stayed Or Transferred To Delaware Under The First-To-File Rule**

18

19        In the event that this Court declines to dismiss this action, then it should be either stayed,

20  or transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a) and the "first-to-file"

21  rule.  That statute states that "a district court may transfer any civil action to any other district or

22  division where it might have been brought."  Synopsys is a Delaware corporation.  (Synopsys

23  Complaint ¶ 1.)  Thus, it is amenable to the jurisdiction of Delaware courts.  Where a party such as

24  Synopsys has chosen Delaware as its legal home and has received the benefits of Delaware

25  incorporation, it should not protest having a cause of action involving it heard in Delaware.

26  *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F.Supp. 962, 965 (D. Del. 1993).

27        The Delaware complaint is the earlier filed action.  As detailed in the declaration of

28  Kenneth W. Brothers and supporting exhibits, the Delaware action has been pending for seven

1  months; the issue is joined; a protective order and discovery plan is in place; the parties have

2  exchanged voluminous interrogatories, documents requests, request for admission; and have

3  initiated deposition discovery.  It makes no sense to force all of that upon this Court when

4  essentially the same issues and lawyers are already litigating essentially the identical issues that

5  are presented by Synopsys' complaint.

6        The Ninth Circuit respects the "first-to-file" rule, which requires this action to be either

7  dismissed, stayed, or transferred to Delaware.  "There is a generally recognized doctrine of federal

8  comity which permits a district court to decline jurisdiction over an action when a complaint

9  involving the same parties and issues has already been filed in another district."  *Pacesetter,* 678

10 F.2d 93 at 94-95 (dismissing later-filed action, citing *Church of Scientology of California v.*

11 *United States Dep't of the Army*, 611 F.2d 738, 749 (9th Cir. 1979)).  "Under the first-to-file

12 doctrine, it is 'a principle of sound judicial administration [that] the first suit should have priority,

13 absent special circumstances…. Restraint of the first-filed suit is made only to prevent wrong or

14 injustice….'"  *Centocor*, 2002 WL 31465299, *4, quoting *Kahn v. Gen. Motors Corp.*, 889 F.2d

15 1078, 1081 (Fed. Cir. 1989) (brackets and ellipses original to *Centocor*).

16       Since the jurisdiction of the Delaware federal court has already been invoked to determine

17 issues of patent validity and infringement, the first-filed rule should apply.  The Court in *Asten*

18 noted that "[i]n first adopting the rule, the Third Circuit explained that the party who 'first brings a

19 controversy into a court of competent jurisdiction for adjudication should . . . be free from the

20 vexation of subsequent litigation over the same subject matter.'" *Asten, Inc. v. Weavexx Corp.*

21 2000 WL 1728354, *2 (D. Del. 2000) (emphasis omitted) *(*quoting *Crosley Corp. v. Hazeltine*

22 *Corp.*, 122 F.2d 925, 930 (3d Cir. 1941)).

23       Synopsys has made no assertions of special circumstances warranting a departure from the

24 first-filed rule.  Absent special circumstances such as bad faith on the part of the plaintiff in the

25 first-filed action, forum shopping being a motivation for the filing of the first action, the second

26 filed action being further developed than the first at the time the motion is made, and the filing of

27 the first suit in one forum to preempt the opponent's imminent filing of a suit in a different forum,

28 the first-filed rule should apply.  *Stone Creek Mech., Inc. v. Carnes Co., Inc.*, 2002 WL 31424390,

1   *2 (E.D. Pa 2002) (applying first-filed rule where circumstances did not justify a departure from

2   the rule).

3       This case is similar to *Van Wyck Int'l Corp. v. Scovill Mfg. Co.*, 184 U.S.P.Q. 572

4   (S.D.N.Y. 1974).  There, as here, customers (such as Aeroflex, AMIS and the Matrox Tech

5   companies) of a supplier (like Synopsys) were being sued by the declaratory defendant (RCL) in a

6   prior action.  The court stayed the later-filed action, holding in the name of judicial economy that

7   the commencement of prior suit (like RCL's Delaware action here) mandated the termination of

8   the later action.  *Id.*  Just as in *Van Wyck*, pursuing this declaratory action would be judicially

9   inefficient, as the Delaware action has been underway for seven months.

10      RCL, in good faith, chose the District of Delaware based on the incorporation of most of

11  the defendants and its central location to their principal places of business.  RCL did not engage in

12  any forum shopping.  In fact, it is Synopsys, by bringing the present declaratory judgment action

13  in the Northern District of California, that is engaging in forum shopping.  The Delaware suit has

14  been ongoing for months, discovery is well underway, and concurrent litigation of the same issues

15  in the Northern District of California would fly in the face of judicial efficiency and federal

16  comity.

17          2.    **There Are No Local Interests Or Public Policies That Would Be Better
                  Served By Trial in Northern California Than In Delaware.**
18

19      The Delaware defendants have not named any party witnesses who are located in the

20  Northern District of California.  In defendants' May 30, 2003 initial disclosure, Aeroflex named

21  eight party witness, all located in Colorado.  (Brothers Decl. ¶ 10 and Ex. 9.)  AMIS named two

22  witnesses, one in Idaho and the other in the Eastern District of California.  (*Id.*)  The Matrox

23  entities collectively identified four witnesses, all located in Dorval, Quebec.  (*Id.*)  The scattered

24  location of these witnesses provides no reason to keep the Synopsys action (which claims to have

25  identical issues) in this Court.

26      With regard to other local interests and public policies, "[p]atent rights are not local or

27  state matters and therefore cannot give rise to a local controversy, or implicate local public

28  policy."  *Stratos Lightwave, Inc. v. E20 Communications, Inc.,* 2002 WL 500920, at *2 (D. Del.

2002).  As this is a patent infringement case, a trial judge's familiarity with the applicable state law has no bearing on the outcome of this case.  As such, public interests weigh in favor of consolidating this action with the earlier-filed action in Delaware.

### 3.    The Present Action Will Benefit From the Speed, Expense And Efficiency of Trial In Delaware.

Although enforceability of the judgment is no different in Delaware than in the Northern District of California, practical considerations are vastly different between the two jurisdictions. "Delaware is a small state which has intentionally created a legal environment favorable to being the legal home for businesses and providing an efficient system for resolution of business disputes. The federal district court there also has sought to be an attractive district for patent litigation by providing expeditious dispositions." John B. Pegram, Should There Be a U.S. Trial Court with a Specialization in Patent Litigation?, 82 JPTOS 766, 791 (2000).  While Delaware had 1,715 private civil cases, comprising 212 patent, copyright and trademark cases, filed in 2002, during the same time the Northern District of California had filed 6,086 private civil cases, including 475 patent, copyright and trademark cases.  Judicial Business of the United States, 2002 Annual Report of the Director, Table C-3A (2002).  This Court is so busy that, even though Synopsys filed its declaratory judgment action in the San Jose division of the Northern District of California, on July 9, 2003, the case was sua sponte transferred to the San Francisco division.  The lighter docket of the District Court of Delaware is also able to provide more judicial pretrial involvement than the Northern District of California.  *See* Pegram at 791.  There is little doubt that keeping the case in Delaware better serves the public interest of trial efficiency and alleviating court congestion.

1  IV.    **CONCLUSION**

2          For the foregoing reasons, the Court should dismiss Synopsys's declaratory judgment suit.

3  In the alternative, this Court should grant a stay pending resolution of the earlier filed Delaware

4  action or transfer this action to Delaware.

5  Dated:  July 15, 2003                    Respectfully submitted,

6                                           Jeffrey B. Demain
7                                           Jonathan Weissglass
                                            ALTSHULER, BERZON, NUSSBAUM,
8                                           RUBIN & DEMAIN

9                                           Gary M. Hoffman
                                            Edward A. Meilman
10                                          Kenneth W. Brothers
                                            DICKSTEIN SHAPIRO MORIN &
11                                             OSHINSKY LLP

12

13

14                                          _____/s/_____
                                            Kenneth W. Brothers
15
                                            Attorneys for Defendant Ricoh Company, Ltd.
16

17

18

19

20

21

22

23

24

25

26

27

28