1   KENNETH W. BROTHERS, *admitted pro hac vice*
    GARY M. HOFFMAN, *admitted pro hac vice*
2   Dickstein Shapiro Morin & Oshinsky, LLP
    2101 L Street, N.W.
3   Washington, DC  20037-1526
    Telephone:    (202) 785-9700
4   Facsimile:    (202) 887-0689

5   EDWARD A. MEILMAN, *admitted pro hac vice*
    Dickstein Shapiro Morin & Oshinsky, LLP
6   1177 Avenue of the Americas
    New York, New York  10036-2714
7   Telephone:    (212) 835-1400
    Facsimile:    (212) 997-9880

8
    JEFFREY B. DEMAIN, State Bar No. 126715
9   JONATHAN WEISSGLASS, State Bar No. 185008
    Altshuler, Berzon, Nussbaum, Rubin & Demain
10  177 Post Street, Suite 300
    San Francisco, California  94108
11  Telephone:    (415) 421-7151
    Facsimile:    (415) 362-8064
12
    Attorneys for Defendant
13

14                   UNITED STATES DISTRICT COURT

15            FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

17  SYNOPSYS, INC.,                          )   Case No. C03-02289 MJJ
                                             )
18            Plaintiff,                      )   **DEFENDANT'S SUPPLEMENTAL**
                                             )   **BRIEF IN SUPPORT OF ITS**
19       vs.                                  )   **MOTION TO DISMISS, OR TO STAY**
                                             )   **OR TRANSFER**
20  RICOH COMPANY, LTD., a Japanese           )
    corporation,                             )   Date:   August 19, 2003
21                                            )   Time:   9:30 am
              Defendant.                      )   Place:  Courtroom 11, 19th Floor
22  _____ )           The Honorable Martin J. Jenkins

23

24

25

26

27

28

1    As ordered by the Court during the August 19, 2003 hearing, defendant Ricoh

2    Corporation, Ltd. ("RCL") respectfully submits this supplemental brief in support of its

3    motion to dismiss or in the alternative, to stay or transfer.  This brief was occasioned by

4    plaintiff's reliance upon a previously uncited (and unpublished) New Hampshire case, *R&J*

5    *Tool, Inc. v. Manchester Tool Co.,* 2000 U.S. Dist. LEXIS 6201, 2001 WL 1636435 (D.N.H.

6    April 21, 2000).[1]  The Court invited this response.

7    During the August 19 argument, counsel for plaintiff called *R&J Tool* directly

8    controlling and dispositive.  It is neither.  *R&J Tool* involved a declaratory judgment action

9    filed by an accused infringer who refurbished and resold the defendant's patented products.

10   Ruling on the defendant's motion to dismiss for lack of personal jurisdiction, the court found

11   that the defendant had "fairly substantial" contacts with the forum state.  *Id.* at *12.  These

12   contacts included:  (1) the defendant's business relationships with New Hampshire entities

13   pursuant to several license agreements; (2) the defendant's patented products at issue were

14   sold in the forum state; (3) the defendant received profits from those sales; and (4) the

15   defendant had sent a warning letter to the plaintiff in the forum state.  *Id.* at *2-3, 11-12 & n.2.

16   None of those facts are present here.  RCL does not do business in California.  RCL

17   has never licensed or otherwise authorized anyone in California to sell products embodying

18   the '432 Patent.  Neither RCL nor anyone else sells or offers for sale any Ricoh products

19   embodying the '432 Patent in California.  RCL has never received any proceeds from those

20   nonexistent sales.  And RCL never communicated with Synopsys regarding the '432 Patent,

21   much less sent it a warning letter.  Perhaps most importantly, *R&J Tool* involves a patented

22   *product* and that very *product* is what the declaratory judgment defendant had shipped into the

23   forum, whereas the asserted claims of the '432 Patent cover a *process*.  There is no connection

24   between RCL, that patented *process,* and California.  Synopsys likewise does not practice the

25   *process* described in the '432 Patent, because the process instead depends upon additional

26   _____

27   [1] There is some confusion over the date of this opinion.  Lexis provides a date of April 21,
     2000; Westlaw dates it as April 21, 2001.  The docket sheet, however, makes clear that the
28   order was entered on April 21, 2000.

1   steps by the actual ASIC chip manufacturers, such as the Delaware defendants.

2       Not only is *R&J Tool* factually distinct, but the case establishes no new law.  It applies

3   the Federal Circuit case law that each of the parties have cited in their briefs, including *Viam*

4   *Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424 (Fed. Cir. 1996) and *Akro Corp. v.*

5   *Luker,* 45 F.3d 1541 (Fed. Cir. 1995).  As applied by the *R&J Tool* court, those cases held that,

6   under the "stream of commerce" theory, "a plaintiff may establish that a defendant has

7   'minimum contacts' with the forum state by showing that the defendant placed its products

8   into the stream of commerce, knowing that those products would be likely [to] make their way

9   into the economy of the forum state." *R&J Tool,* at *11.

10      Synopsys insisted in its papers that there does not need to be a nexus between the

11  Ricoh products placed into commerce and the '432 Patent.  On August 19, Synopsys argued

12  that *R&J Tool* does not support the requirement of *Viam* and *Akro* that the declaratory

13  judgment action must arise out of the defendant's contacts with the forum state.  To the

14  contrary, the *R&J Tool* court explicitly held that the declaratory judgment claim must

15  specifically relate to the defendant's activities in the forum state:

16          [T]he court concludes (1) Manchester purposefully directed activities at the
            residents of New Hampshire within the meaning of the due process inquiry
17          employed by the court of Appeals for the Federal Circuit; and (2) this
            declaratory judgment action **arises out of or relates to those very activities**.
18          See generally *Akro,* 45 F. 3d at 1546-49 (concluding, on facts very similar to
            those presented here, that the pending declaratory judgment action arose out of,
19          or related to, defendant's in-state activities).

20  *R&J Tool,* at *14-15 (emphasis added).  Thus, *R&J Tool* directly supports RCL's contention

21  that stream of commerce jurisdiction must be based upon actions in the forum state that

22  specifically relate to the declaratory judgment action.

23      In the present case, there is absolutely no evidence that Synopsys' declaratory

24  judgment action "arose out of, or related to, defendant's in-state activities."  RCL's papers

25  have already demonstrated that it has no activities in California relating to the '432 patent, or

26  otherwise, that would support this Court's assertion of jurisdiction over it.  *R&J Tool* teaches

27  that Synopsys bears the burden to produce "specific facts set forth in the record in order to

28  defeat a defendant's motion to dismiss." *Id.* at *4.  The only assertions by Synopsys that RCL

DEF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS, OR TO STAY OR TRANSFER,
*Synopsys, Inc. v. Ricoh Co., Ltd.*, N.D. Cal. Case No. C03-02289 MJJ                    2

1   has done anything in California relating to the '432 Patent is (1) after the commencement of

2   the Delaware action, RCL transmitted two warning letters to third parties (but not Synopsys);

3   and (2) more ten years ago, there was an alleged communication with Synopsys by a then co-

4   owner (and not RCL) of the '432 Patent. Under the law as established by *Viam* and recited by

5   *R&J Tools* these bare assertions are not sufficient to carry Synopsys' burden and justify this

6   Court's assertion of stream of commerce jurisdiction over RCL. Warning letters are

7   insufficient to establish jurisdiction, as all concede. The non-RCL communication more than a

8   decade ago is not the "purposeful availment" required by *Viam* and the Supreme Court. The

9   absence of RCL's conducting the process steps of the '432 Patent or sale in California of the

10  resulting products requires the immediate dismissal of Synopsys' complaint.

11         A recent Federal Circuit case reinforces the holding in *R&J Tool* that, for a declaratory

12  judgment plaintiff to succeed in asserting personal jurisdiction over an out-of-state defendant,

13  it must show that "the claim arises out of or relates to the defendant's activities with the forum

14  state." *Electronics for Imaging, Inc. v. Coyle,* Slip Op. No. 02-1536 (Fed. Cir. Aug. 18, 2003)

15  (attached as Ex. A.). Like *R&J Tool*, the *Electronics for Imaging* court held:

16         To determine whether jurisdiction over an out-of-state defendant comports with
           due process, we look to whether (1) the defendant purposefully directed its
17         activities at residents of the forum state, (2) **the claim arises out of or relates
           to the defendant's activities with the forum state**, and (3) assertion of
18         personal jurisdiction is reasonable and fair. *Inamed,* 249 F.3d at 1360 (citing
           *Akro,* 45 F.3d at 1545). The first two factors correspond to the "minimum
19         contacts" prong of the *International Shoe* analysis, and the third factor with the
           "fair play and substantial justice" prong. *Id.* (citing *Akro,* 45 F.3d at 1545).
20         While the plaintiff bears the burden to establish minimum contacts, upon this
           showing, defendants must prove that the exercise of jurisdiction is
21         unreasonable. *Id.* (citing *Akro,* 45 F.3d at 1546).

22  *Id.* at 9 (emphasis added). Although the facts in *Electronics for Imaging* are far different –

23  there, the defendants had extensive contacts with California, including extensive meetings,

24  telephone communications and a signed agreement with the plaintiff – the court's discussion

25  of the law is a useful guide for the present case. The *Electronics for Imaging* court explains

26  the interplay between Federal Circuit and Ninth Circuit law; shows the similarity between the

27  Ninth Circuit's "but for" test and the Federal Circuit's analysis of whether "claim arises out of

28  or relates to the defendant's activities with the forum state"; and reaffirms the distinction

1    between general and specific jurisdiction.  All of these points support the granting of RCL's

2    motion.  Perhaps most importantly, both *Electronics for Imaging* and *R&J Tool* illustrate that a

3    declaratory defendant must purposefully avail itself to California jurisdiction through

4    meetings, phone calls and agreements with the plaintiff pertaining to the patent in suit.  RCL

5    has never had any such communications with Synopsys regarding the '432 Patent.  Synopsys

6    has failed to meet its burden on showing facts supporting the assertion of jurisdiction by this

7    court over RCL, and its complaint should be dismissed.

8    Dated:  August 22, 2003.

9                                              Respectfully submitted,

10                                             KENNETH W. BROTHERS
                                               GARY M. HOFFMAN
11                                             EDWARD A. MEILMAN
                                               Dickstein Shapiro Morin & Oshinsky, LLP
12
                                               JEFFREY B. DEMAIN
13                                             JONATHAN WEISSGLASS
                                               Altshuler, Berzon, Nussbaum, Rubin & Demain
14

15

16
                                               By:_____/s/_____
17                                                       Kenneth W. Brothers

18                                             Attorneys for Defendant

19   F:\Ricoh\Synopsys\Pleadings\Dismiss\Supplemental.Brief.8-22-03.wpd

20

21

22

23

24

25

26

27

28

# United States Court of Appeals for the Federal Circuit

02-1536

ELECTRONICS FOR IMAGING, INC.,

Plaintiff-Appellant,

v.

JAN R. COYLE and KOLBET LABS,

Defendants-Appellees.

<u>William C. Rooklidge</u>, Howrey Simon Arnold & White, LLP, of Irvine, California, argued for plaintiff-appellant.  With him on the brief was <u>Russell B. Hill</u>.

<u>Steven A. Gibson</u>, Santoro, Driggs, Walch, Kearney, Johnson & Thompson, of Las Vegas, Nevada, argued for defendants-appellees.  With him on the brief was <u>F. Christopher Austin</u>.

Appealed from:    United States District Court for the Northern District of California

Judge Martin J. Jenkins

# United States Court of Appeals for the Federal Circuit

02-1536

ELECTRONICS FOR IMAGING, INC.,

Plaintiff-Appellant,

v.

JAN R. COYLE and KOLBET LABS,

Defendants-Appellees.

———————————————

DECIDED:  August 18, 2003

———————————————

Before RADER, BRYSON, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

Electronics for Imaging, Inc. ("EFI") appeals from the judgment issued by the United States District for the Northern District of California ("district court") granting the motion of Jan R. Coyle ("Coyle") and Kolbet Labs (collectively "defendants") to dismiss for lack of personal jurisdiction EFI's first amended complaint for declaratory and injunctive relief.  <u>Elecs. for Imaging, Inc. v. Coyle</u>, No. 01-CV-4853 (N.D. Cal. Mar. 26, 2002).  EFI's complaint for declaratory and injunctive relief alleged that Coyle's United States Patent No. 6,337,746 ("the '746 patent") was invalid and that EFI had not misappropriated defendants' alleged trade secrets or breached any contract entered into with defendants.  We conclude that the district court may exercise personal jurisdiction over defendants and such jurisdiction comports with due process.  We therefore reverse and remand.

A.  I. BACKGROUND

Plaintiff-appellant EFI, a Delaware corporation with its principal place of business in Foster City, California, is a world leader in the area of software and hardware imaging solutions for network printing.  EFI develops, manufactures, and sells print controllers, which are devices that control printers and copiers.  Defendant-appellee Kolbet Labs is a Nevada corporation.  EFI believes that defendant-appellee Coyle, a Nevada resident, does business as Kolbet Labs.  Both Coyle and Kolbet Labs engage in the research and development of computer software and hardware technology that can be used to more efficiently control digital printers and copiers.

Coyle filed United States Patent Application No. 08/987/212 ("the '212 application") on December 9, 1997, which eventually issued as the '746 patent on January 8, 2002.  The subject matter of the '212 application concerned an interface card for coupling a computer to an external device.  Coyle hired two different California firms to prosecute the '212 application.

In late 1999 or early 2000, Coyle solicited EFI and proposed that EFI purchase defendants' technology related to an interface card for controlling printers and copiers.  Thereafter, on or about January 28, 2000, EFI and Kolbet Labs entered into a mutual nondisclosure agreement ("NDA"), which Coyle signed as "owner" of Kolbet Labs.  The agreement addressed the treatment of certain confidential information disclosed during the course of discussing a "business possibility of mutual interest relating to digital image processing."  In the NDA, the parties agreed to restrict use of the confidential information to reviewing and discussing such information in order to determine "whether to enter into a business relationship with the other party."  The NDA was to terminate after a year, but the obligations of confidentiality as set forth would be binding on the parties for four years after

the termination of the NDA.  Finally, the NDA was "governed by and construed under the laws of the State of California, without reference to conflicts of laws principles."

After the signing of the NDA, defendants solicited EFI in California repeatedly, providing information regarding defendants' technology to EFI.  At several different times around May and June 2000, Coyle's attorney in California, Newton Lee, sent EFI various documents relating to the progress of the '212 application, including copies of selected parts of the '212 application.  In December 2000, Coyle contacted EFI in California again to solicit EFI's purchase of his technology.  On December 13, 2000, two of defendants' representatives visited EFI's facility in California to demonstrate Coyle's interface card.  After the visit, EFI informed Coyle that it was not interested in purchasing the technology.

In September 2001, Coyle informed EFI by telephone that the claims of the '212 application had been allowed by the U.S. Patent and Trademark Office, alleged that the allowed patent claims covered EFI's print controllers, and continued to report further new developments in his technology.  Coyle later that month continued to solicit EFI by sending documents identifying the claims that had been allowed and additional information on defendants' technology.

Around the week of November 26, 2001, Coyle made telephone calls to EFI in California several times, alleging that EFI's print controllers infringed the claims of the '212 application.  In these phone calls, Coyle also alleged that EFI's print controllers contained trade secret information belonging to Coyle and/or Kolbet Labs, and threatened to sue EFI for misappropriation of trade secrets and breach of the NDA.  Coyle thereafter repeatedly threatened litigation throughout the next two weeks.

On December 11, 2001, before the '746 patent issued, EFI filed a complaint for declaratory and injunctive relief against defendants in the district court.  EFI's complaint alleged that (1) EFI did not misappropriate any trade secret information belonging to

defendants by sales of its print controllers or otherwise, and (2) EFI did not breach any NDA with defendants. After the '746 patent issued on January 8, 2002, EFI amended its complaint to allege that the claims of the '746 patent were invalid. Subject matter jurisdiction over these three claims was alleged to exist pursuant to 28 U.S.C. §§ 1331, 1332, and 1338. Defendants moved to dismiss the amended complaint for lack of personal jurisdiction.

On March 26, 2002, the district court granted defendants' motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Rule 12(b)(2)"). Applying Ninth Circuit law, the court held that EFI failed to show that defendants had purposefully directed its activities at California, thereby failing to establish that defendants had the "minimum contacts" in California necessary to justify the exercise of jurisdiction over defendants. EFI timely appealed, and we have jurisdiction pursuant to 28 U.S.C. §1295(a)(1).

## B. II. DISCUSSION

### C. Choice of Law and Standard of Review

We begin with the choice-of-law question: whether the personal jurisdiction analysis in this case is pursuant to Federal Circuit or regional circuit law. The district court applied Ninth Circuit law of personal jurisdiction to all three claims in the complaint. The parties concur that the district court erred in doing so, asserting that Federal Circuit law should apply to all three claims. We disagree with both the district court and the parties in this regard because Federal Circuit law applies to the patent claim and Ninth Circuit law applies to the state law claims.

Our prior decisions make clear that where the personal jurisdictional inquiry is "intimately involved with the substance of the patent laws," we apply Federal Circuit law. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995). We thus apply Federal Circuit law to the patent invalidity claim presented, even in the context presented here, where defendants in the declaratory judgment are the patentees. See id. The district court

5

therefore erred to the extent that it applied Ninth Circuit law on personal jurisdiction to the patent invalidity claim.  However, the declaratory claims of non-misappropriation of trade secrets and non-breach of contract do not present questions that are intimately involved with the substance of the patent laws.  See Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 857 (Fed. Cir. 1999) (analyzing personal jurisdiction question over defendant as to the state law trade libel and defamation claims under regional circuit law).

These claims therefore are governed not by Federal Circuit but regional circuit law, here that of the Ninth Circuit.[1]

Where the facts upon which the jurisdictional inquiry turns are undisputed, both the Ninth and Federal Circuits review de novo whether a district court has personal jurisdiction over a defendant.  Akro, 45 F.3d at 1543 (further citations omitted); Sher v. Johnson, 911 F.2d 1357, 1360 (9th Cir. 1990).  This circuit and the Ninth Circuit also agree that where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction.  Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002); Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits

---

[1]    Although not addressed by the parties, the district court would also have personal jurisdiction over defendants as to the two state law claims provided that personal jurisdiction existed as to the patent claim and there was supplemental jurisdiction pursuant to 28 U.S.C. § 1367 existed as to the state law claims.  Silent Drive, Inc., v. Strong Indus., Inc., 326 F.3d 1194, 1206 (Fed. Cir. 2003); 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377-78 (Fed. Cir. 1998); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362-63 (Fed. Cir. 2001); 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (hereinafter "Wright & Miller") § 3523.1 (2002)).  While the issue of supplemental jurisdiction was not before this court, we note that the end result is the same – the district court can exercise personal jurisdiction over defendants for all three claims.  Accordingly, we need not address

in the plaintiff's favor.  Deprenyl, 297 F.3d at 1347; Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

    D.  B.    Specific Jurisdiction

    EFI does not assert general jurisdiction in this case.  Under general jurisdiction, the exercise of jurisdiction is proper where the defendant has continuous and systematic contacts, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984), with the forum state, even if those contacts are not related to the cause of action.  Rather, EFI seeks specific jurisdiction over defendants.[2]

    Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (citing Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76 (1985))); Sher, 911 F.2d at 1360.  In this case, California's long-arm statute permits service of process to the limits of the due process clauses of the federal Constitution.  See Cal. Civ. P. Code § 410.10 (West, WESTLAW through Ch. 43 of 2003-04 Reg. Sess. urgency legislation, Ch. 12 of 1st Ex. Sess. urgency legislation, & Ch. 1 of 2d Ex. Sess.) ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); Data Disc, 557 F.2d at 1286 (stating that California's long-arm statute is "co-extensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United

---

whether the state law claims form part of the same case or controversy for purposes of supplemental jurisdiction.

    [2]    Because EFI alleges that Coyle does business as Kolbet Labs, all contacts made by Coyle are also attributable to Kolbet Labs.  It therefore is unnecessary to conduct separate minimum contact analyses with respect to each defendant in this case.

States Supreme Court" (further citations omitted)).    Therefore, the personal jurisdiction analysis in this case narrows to one inquiry: whether jurisdiction comports with due process.

Under the governing framework of personal jurisdiction, as developed in the Supreme Court jurisprudence,[3] the exercise of jurisdiction over nonresident defendants of a forum state is not inconsistent with due process if the nonresident defendants have certain "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"    Int'l Shoe v. Washington, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 462 (1940)).    In general, there must be "some act" by which defendants "purposefully avail[]" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."    Burger King, 471 U.S. at 475.    The contacts made by defendants must therefore by their actions create a "substantial connection" to the forum state – where defendants have deliberately "engaged in significant activities within a State" or have "created 'continuing obligations' between [themselves] and residents of the forum – and "proximately result from the actions by the defendant[s] themselves," such that it is "presumptively not unreasonable to require [defendants] to submit to the burdens of litigation in that forum as well."    Id. at 475-76 (further citations and quotations omitted).

---

[3]    We apply the framework of the Due Process Clause of the Fourteenth Amendment, as developed by the Supreme Court in International Shoe v. Washington, 326 U.S. 310 (1945), and its progeny, to claims that involve questions of federal law and that therefore must satisfy the Due Process Clause of the Fifth Amendment for personal jurisdiction purposes. Deprenyl, 297 F.3d at 1350 (further citations omitted).

1. <u>Patent Invalidity Claim</u>

As discussed <u>supra</u> Part II.A., Federal Circuit law applies to the question of whether the district court properly could exercise personal jurisdiction over defendants as to the patent invalidity claim.  This court has adopted a three-factor test embodying the Supreme Court's jurisprudence on specific personal jurisdiction.  To determine whether jurisdiction over an out-of-state defendant comports with due process, we look to whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair.  <u>Inamed</u>, 249 F.3d at 1360 (citing <u>Akro</u>, 45 F.3d at 1545). The first two factors correspond to the "minimum contacts" prong of the <u>International Shoe</u> analysis, and the third factor with the "fair play and substantial justice" prong.  <u>Id.</u> (citing <u>Akro</u>, 45 F.3d at 1545).  While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable.  <u>Id.</u> (citing <u>Akro</u>, 45 F.3d at 1546).

a. <u>"Purposefully directed"</u>

We first conclude that defendants' contacts were "purposefully directed" at California. First, Coyle repeatedly threatened EFI over the telephone in November 2001.  We have held that mere threats of infringement directed at the forum state are not sufficient to satisfy due process requirements when exercising jurisdiction over an out-of-state patentee. <u>Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (holding that three cease-and-desist letters alone "do not suffice to create personal jurisdiction").  Rather, "other activities" distinct from threats of infringement are required for a patentee to be subject to personal jurisdiction in the forum.  <u>Silent Drive, Inc. v. Strong Indus., Inc.</u>, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (citing <u>Inamed</u>, 249 F.3d at 1361 (quoting <u>Genetic Implant</u>, 123 F.3d at 1458)).  We thus consider other relevant contacts with California demonstrating that

defendants purposefully directed their activities to California.  First, Coyle hired two California law firms to prosecute the application that matured into the very patent that EFI is now seeking to invalidate.  The prosecution lasted from 1997 to 2001, during which Coyle and the involved law firms remained in communication with each other.   Second, Coyle hired California attorney Lee, who contacted EFI at various times to report on the progress of the pending application.   Third, Coyle telephoned EFI in California at various times between approximately late 1999 (or early 2000) and fall of 2001 regarding the subject matter of the technology covered by the patent application.  Coyle's communications are significant in the personal jurisdiction calculus even though Coyle was not physically present in California when he made these communications.  See Burger King, 471 U.S. at 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").   Fourth, two representatives of defendants visited EFI's facility in California for the purpose of demonstrating the technology underlying what later issued as the '746 patent.  Far from being random, fortuitous, or attenuated, id. at 480, the totality of these contacts sufficiently make out EFI's prima facie case that defendants, by "engag[ing] in significant activities" in California, id. at 475-76, purposefully directed their activities to California.

### b.  "Arises out of or relates to"

We next examine whether EFI's declaratory claim of patent invalidity arises out of or is related to defendants' alleged contacts with California.  See Akro, 45 F.3d at 1545.  As related supra, Part II.A.1.a., such contacts include the prosecution of the application that became the '746 patent, the visit of defendants' representatives to demonstrate the technology that formed the subject matter of the '746 patent, and various communications from Coyle and his attorney Lee to EFI concerning the underlying technology of the '746

patent. These contacts with California made by Coyle and Kolbet Labs clearly arise out of or are related to EFI's claim that the '746 patent is invalid. Thus, we conclude that EFI has met its <u>prima facie</u> burden of establishing defendants' minimum contacts.

### E. "Reasonable and fair"

Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes defendants' burden to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King</u>, 471 U.S. at 477. The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. <u>Inamed</u>, 249 F.3d at 1363, (citing <u>Asahi Metal Indus. Co. v. Super. Ct. of Cal.</u>, 480 U.S. 102, 113 (1987)). Here, defendants are unable to demonstrate that it would be unreasonable for the district court to exercise jurisdiction over them. First, it would not impose much of a geographic burden for Nevada defendants to litigate in California. Second, California has a substantial interest in protecting its residents from unwarranted claims of patent infringement. <u>See Deprenyl</u>, 297 F.3d at 1356. Third, EFI also has an undisputed interest in protecting itself from patent infringement. Fourth, concerning the interstate judicial system's interest in obtaining efficient resolution of disputes, we recognize that Coyle has filed a complaint against EFI in the District Court for the District of Nevada alleging, among other things, antitrust violations, patent infringement, and breach of contract. <u>J&L Elecs., LLC v. Elecs. for Imaging, Inc.</u>, No. CVS020266-KJD-LRL (filed Feb. 23, 2002). However, the still-pending Nevada case can be consolidated with the current action. Finally, we see no conflict between the interests of California and Nevada in

furthering their own respective substantive laws, as the same body of federal patent law would govern the patent invalidity claim irrespective of the forum.

In view of the above, defendants' arguments fail to convince the court that this is one of the "rare" situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable.  See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing Burger King, 471 U.S. at 477)).

 1. State Law Claims

EFI has also asserted two state law claims of non-breach of contract and non-misappropriation of trade secrets.  We apply Ninth Circuit law in determining whether personal jurisdiction over defendants as to these claims would comport with due process.  Under Ninth Circuit law, EFI is required to show that (1) defendants performed some act or consummated some transaction within the forum or otherwise purposefully availed themselves of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws, (2) EFI's claims arise out of defendants' California-related activities, and (3) the exercise of jurisdiction would be reasonable.  Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995) (quotation omitted).

 a. Non-Breach of Contract Claim

We first consider whether jurisdiction over defendants as to EFI's non-breach of contract claim is proper.  Purposeful availment, the first part of the Ninth Circuit test, requires that defendants "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  Sher, 911 F.2d at 1362; (quoting Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)).  Here, EFI seeks a declaration that it has not breached the NDA between EFI and defendants.  Thus, our analysis necessarily centers around the NDA and the attendant relevant facts.  The Supreme Court has made clear that a contract alone cannot "automatically establish sufficient minimum contacts in the

12

other party's home forum."  <u>Burger King</u>, 471 U.S. at 478.  Rather, where a contract between a forum and out-of-state resident is involved, the Court instructs us to examine the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts with the forum."  <u>Id.</u> at 480.

As the district court recognized, the only obligation created by the NDA was the obligation of nondisclosure.  Had the parties, after entering into the NDA, then failed to enter into a course of dealing invoking these principles of nondisclosure, the obligation of nondisclosure in the NDA would be a hollow one.  In that case, we might agree with the district court that that there were no significant contacts made by defendants that would justify the exercise of jurisdiction over them.  However, the parties' course of dealing subsequent to the NDA persuades us otherwise.  Under the NDA, the parties agreed to be bound, until four years following termination of the agreement, by the confidentiality principles for all pertinent information exchanged between the parties from January 28, 2000, when the NDA was executed, until January 28, 2001, when the NDA terminated.  These confidentiality principles thus governed defendants' multiple contacts to California during 2000, when defendants allegedly conveyed information about and solicited EFI to purchase defendants' technology.  These contacts include the phone and mail contacts made by Coyle and his California attorney Lee, as well as the visit of defendants' representatives to EFI's facility. That no actual sales agreement arose out of these contacts does not negate the fact that, in making these contacts, defendants took affirmative conduct to promote "the transaction of business within the forum state."  <u>Sher</u>, 911 F.2d at 1362.

Moreover, the NDA included a California choice-of-law clause.  As defendants correctly point out, a choice-of-law clause does not carry the same dispositive weight as a choice-of-forum clause in a personal jurisdiction analysis.  <u>Docksider Ltd. v. Seatech, Ltd.</u>,

875 F.2d at 763 (9th Cir. 1989).    However, the choice-of-law clause here is far from irrelevant.  Indeed, in light of the parties' actual course of dealing during 2000, this clause reinforces defendants' "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."  Burger King, 471 U.S. at 482.

Thus, here we have defendants' repeated communications with and solicitation of EFI's business in California, as well as the NDA itself, which envisioned and governed such communications and which included a California choice-of-law clause.  In light of these contacts, we conclude that EFI has set forth a sufficient prima facie case that the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," id. at 479, establish a purposeful availment of the laws and protections of California.

We next turn to the second part of the personal jurisdiction inquiry: whether a particular claim arises out of forum-related activities.  The Ninth Circuit relies on a "but for" test in determining the second prong.  Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995).  The "but for" test is satisfied if, but for defendant's contacts with California, EFI's claims against defendants would not have arisen.  See id.  We conclude that the but for requirement is easily met here.  The information provided from defendants to EFI during 2000 constitutes the factual basis for the very breach of contract action which Coyle allegedly threatened to bring against EFI and which led EFI to file this declaratory claim.  Therefore, but for the NDA, the visit to EFI to demonstrate defendants' technology, and the numerous phone calls and letters from Coyle and his attorney Lee to EFI in California regarding defendants' technology, EFI would not be seeking a judicial declaration that it did not breach the confidentiality principles spelled out in the NDA.

Finally, we examine whether jurisdiction over defendants as to the non-breach of contract claim is reasonable.  The Ninth Circuit considers the following factors, as distilled

14

from the Supreme Court's decision in <u>Burger King</u>: (1) the extent of the defendant's purposeful injection into the forum, (2) the burden on the defendant, (3) the extent of conflict with the sovereignty of defendants' state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and efficient relief, and (7) the existence of an alternative forum. <u>Bancroft</u>, 223 F.3d at 1088 (citing <u>Burger King</u>, 471 U.S. at 476-77). Upon careful consideration of the above factors, we conclude that defendants fail to meet their burden of showing that this is the sort of "compelling case," <u>id.</u> (quoting <u>Burger King</u>, 471 U.S. at 477), in which the exercise of jurisdiction would be unreasonable. For example, we note that pursuant to the choice-of-law clause in the NDA, California law would be applied to the breach of contract claim. We also note that California would be the locus of the facts relevant to establishing whether the contract was breached or performed satisfactorily by EFI.

b. <u>Non-Misappropriation of Trade Secrets Claim</u>

We also conclude that the district court's exercise of jurisdiction over defendants as to EFI's non-misappropriation of trade secrets claim would comport with due process. First, defendants purposefully availed themselves of the privilege of conducting activities in California, thereby invoking the benefits and protections of the laws of California. As related above, defendants allegedly solicited EFI in California repeatedly – including phone calls and other communications directed to EFI in California, as well as a visit to EFI – to buy defendants' technology. Second, but for these contacts, EFI would not have filed an action seeking a declaration of non-misappropriation of trade secrets. EFI's claim, and any facts necessary to proving or disproving it, would necessarily coalesce out of the information disclosed during defendants' communications to California. Finally, upon consideration of the reasonableness factors adopted by the Ninth Circuit, defendants fail to overcome the presumption that the exercise of jurisdiction would be reasonable.

III. CONCLUSION

Because we hold that EFI established a <u>prima</u> <u>facie</u> case that personal jurisdiction over defendants would be proper, we reverse the district court's dismissal of EFI's complaint and remand for further proceedings consistent with this opinion.

<u>REVERSED AND REMANDED.</u>

Costs to appellant.