1   Teresa M. Corbin (SBN 132360)
    Christopher Kelley (SBN 166608)
2   Thomas C. Mavrakakis (SBN 177927)
    Erik K. Moller (SBN 147674)
3   HOWREY SIMON ARNOLD & WHITE, LLP
    301 Ravenswood Avenue
4   Menlo Park, California  94025
    Telephone:  (650) 463-8100
5   Facsimile:  (650) 463-8400

6   Attorneys for Plaintiff SYNOPSYS, INC.

7

8

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12  SYNOPSYS, INC.,                    )  Case No. C03-02289 MJJ
                                       )
13              Plaintiff,             )  **BRIEF IN OPPOSITION TO RICOH'S**
                                       )  **MOTION FOR SANCTIONS**
14         vs.                         )
                                       )
15  RICOH COMPANY, LTD.,               )  Date:       January 6, 2004
                                       )  Time:       9:30 a.m.
16              Defendants.            )  Courtroom:  11, 19th Floor
                                       )
17  ─────────────────────────────     )

18

19

20

21

22

23

24

25

26

27

28

**HOWREY
SIMON
ARNOLD &
WHITE**
BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

STATEMENT OF FACTS ................................................................................. 2

ARGUMENT ............................................................................................... 5

I.    LEGAL STANDARDS .......................................................................... 5

    A.    Ricoh must prove by clear and convincing evidence that
        defense counsel contacted Dr. Thomas with bad faith intent
        to obtain confidential information. ..................................................... 5

II.   COUNSEL'S FAILURE TO TIMELY SERVE RICOH WITH
    DR. THOMAS'S SUBPOENA WAS INADVERTENT NOT
    SANCTIONABLE MISCONDUCT. ......................................................... 5

III.  THERE IS NO BASIS IN FACT OR LAW FOR
    DISQUALIFICATION OR SANCTION OF DEFENSE
    COUNSEL FOR ITS DEALINGS WITH DR. THOMAS. ............................. 7

    A.    Defense counsel acted properly in making an immediate
        notification to opposing counsel of its plans to consult with
        Dr. Thomas. ................................................................................. 8

    B.    There is no basis for the Court to make an assumption that
        defense counsel received Ricoh confidential information .................. 10

        1.    Dr. Thomas's statements about the general
            character of his work for Ricoh do not justify the
            imposition of sanctions. ...................................................... 11

        2.    Sanctions are not warranted where Ricoh elicited
            Dr. Thomas' testimony regarding his view of
            Ricoh's patents. ................................................................. 12

    C.    Communication with Dr. Thomas regarding Dr. Kowalski's
        telephone number was not improper. ............................................. 13

    D.    Ricoh's allegations that defense counsel misled Dr. Thomas
        and instructed him to terminate his relationship with Ricoh
        are false. ..................................................................................... 14

IV.   RICOH'S ALLEGATION THAT DEFENSE COUNSEL
    MISLED JUDGE SLEET IS MERITLESS AND SHOULD BE
    REJECTED .......................................................................................... 16

    A.    There is no factual basis for Ricoh's allegation that counsel
        misled Judge Sleet about the timing of its questions of Dr.
        Thomas. ...................................................................................... 16

    B.    There is no factual basis for Ricoh's allegation that counsel
        misled Judge Sleet about the nature of questions asked of
        Dr. Thomas and his communications in response. ............................ 18

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

-i-

V.    RICOH'S ARGUMENT THAT DEFENDANTS ARE IN WILLFUL VIOLATION OF A COURT ORDER TO PRODUCE A PRIVILEGE LOG IS MERITLESS. ........................................................... 20

VI.   THERE IS NOTHING SANCTIONABLE IN DEFENSE COUNSEL'S REQUEST THAT IT BE ALLOWED TO TAKE "ORTHODOX" DISCOVERY OF DR. THOMAS. ........................................ 22

VII.  RICOH'S FEE REQUEST IS UNJUSTIFIED AND SHOULD BE DENIED. .................................................................... 24

CONCLUSION .................................................................................. 25

HOWREY
SIMON
ARNOLD &
WHITE

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Actel Corp. v. Quicklogic Corp.*,
   1996 U.S. Dist. LEXIS 11815 (N.D. Cal. 1996) ..................................... 9, 10

4

*Aptargroup, Inc. v. Owens-Illinois, Inc.*,
   2003 U.S. Dist. LEXIS 13047 (N.D. Ill. 2003) .......................................... 12

5

*Atari Corp. v. Sega of America*,
   161 F.R.D. 417 (N.D. Cal. 1994) ........................................................ 13, 23

6

*Campbell Industries v. M/V Gemini*,
   619 F.2d 24 (9th Cir. 1980) ...................................................................... 13

7

8

*Complex Asbestos Litigation*,
   232 Cal.App.3d 572 Cal.Rptr. 732 (1991) ..................... 9, 10, 11, 19, 24

9

*Cordy v. Sherwin-Williams Co.*,
   156 F.R.D. 575 (D. N.J. 1994) .............................................................. 8, 10

10

11

*Eliasen v. Hamilton*,
   111 F.R.D. 396 (N.D. Ill. 1986) ............................................................... 23

12

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
   167 F.R.D. 90 (D. Colo. 1996) .................................................................. 5

13

14

*Lewis v. Telephone Employees Credit Union*,
   87 F.3d 1537  (9th Cir. 1996) ........................................................ 5, 14, 25

15

*MMR/Wallace Power & Industrial, Inc. v. Thames Associates*,
   764 F. Supp. 712 (D. Conn. 1991)) ...................................................... 8, 10

16

17

*Navellier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001) ............................................................... 5, 25

18

*Primus Automotive Fin'l Services, Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) ...................................................................... 5

19

20

*Shadow Traffic Network v. Superior Court*,
   24 Cal.App.4th 1067 (1994) ................................................ 1, 8, 9, 10, 24

21

*Shepherd v. American Broadcasting Companies, Inc.*,
   62 F.3d 1469 (D.C. Cir. 1995) .................................................................... 5

22

23

*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Tech., Inc.*,
   69 Cal.App.4th 1399, 82 Cal. Rptr. 2d 326 ................................ 11, 19, 24

24

*Terrebonne, Ltd. v. Murray*,
   1 F.Supp.2d 1050 (E.D. Cal. 1998) .......................................................... 9

25

26

*Wang Laboratories, Inc. v. CFR Associates, Inc.*,
   125 F.R.D. 10 (D. Mass. 1989) ......................................................... 23, 24

27

28

**HOWREY**
**SIMON**
**ARNOLD &**
**WHITE**

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

-iii-

*Wang Labs. Inc. v. Toshiba Corp.*,
    762 F.Supp. 1246 (E.D. Va. 1991) ......................................................................... 1, 9

*Zambrano v. City of Tustin*,
    885 F.2d 1473 (9th Cir. 1989) ................................................................................. 5

## STATUTES

Fed. R. Civ. P. 26 ......................................................................................................... 13

Fed. R. Civ. P. 37 ........................................................................................................... 5

Fed. R. Civ. P. 24 ......................................................................................................... 11

Fed. R. Civ. P. 26 ......................................................................................................... 13

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

HOWREY
SIMON
ARNOLD &
WHITE

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Counsel for Synopsys in the *Synopsys v. Ricoh* case and for the defendants in the *Aeroflex v. Ricoh* case (hereinafter "defense counsel") wished to consult with Dr. Donald Thomas regarding his work on the prior art Design Automation Assistant (DAA) logic synthesis system.  Defense counsel had learned from Dr. Thomas that he had worked briefly for Ricoh about a year previously helping Ricoh's counsel "read through and understand" prior art logic synthesis papers, but that this relationship had ended.  Defense counsel recognized that Dr. Thomas might have a conflict of interest as a result of his prior work for Ricoh that could disqualify him from consulting with the defense.  Counsel, therefore, pursued the course of action recommended in *Wang Labs. Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1250 (E.D. Va. 1991) and *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1088, 24 Cal. Rptr. 2d 693, 704-05 (1994).  These cases teach that a party considering retaining an expert under these circumstances should make immediate disclosure of its plan to consult with the potentially-conflicted witness so that the question of the expert's potential conflict can be resolved between the parties before there is any disclosure of confidential attorney-client information belonging to the party that originally retained the consultant.  After reaching agreement with Dr. Thomas on the terms of the potential consulting relationship, defense counsel notified Ricoh on July 22 of its retention of Dr. Thomas.  *See* Declaration of Louis Campbell ("Campbell Decl.")[1], Ex. F (this document is mis-dated July 17 but was sent on July 22).  Counsel, however, did not begin substantive consultations with Dr. Thomas.  Instead counsel told Ricoh's attorneys that they would not consult with Dr. Thomas for two weeks to allow Ricoh to present its objections to the proposed arrangement.  *See* Ex. I.

Ricoh has presented no authority indicating that the act of proposing a consulting relationship with Dr. Thomas was sanctionable, particularly when counsel provides the notice discussed in *Wang* and *Shadow Traffic*.  Ricoh's brief instead addresses the question of whether Dr. Thomas is disqualified

---

[1]    Hereinafter, all references to "Ex." should be understood as references to Exhibits attached to Mr. Campbell's declaration submitted with this opposition, unless otherwise indicated.

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                                                    -1-

1  from consulting with the defense, *see* Motion for Sanctions at 19:25 – 20:19 ("Sanc. Mot."), but since

2  defense counsel abandoned its plan to consult with Dr. Thomas in August, that issue is moot.

3  The great bulk of Ricoh's motion is dedicated to allegations that defense counsel misled either

4  Dr. Thomas or Judge Sleet, who had the *Ricoh v. Aeroflex* case before it was transferred to this Court.

5  In its brief, Ricoh contends with mock solemnity that it takes no pleasure in making these allegations,

6  but is compelled to do so by the evidence. *See* Sanc. Mot. at 1:21-25. That might be credible if there

7  was some merit to Ricoh's various allegations. Ricoh's allegations, however, are a grab bag of

8  assertions – some of which are directly contradicted by evidence available in the record (see, *e.g.,*

9  sections III D & V, *infra*) and some of which rely on theories about intent that require wild leaps of

10 logic (see, *e.g.,* sections IV A and IV B, *infra*). A challenge to the integrity of opposing counsel, if it is

11 to be made, must be based on clear and convincing evidence of intentional misconduct. Ricoh's

12 motion is not.

13 Furthermore, Ricoh has suffered no harm as a result of defense counsel's unsuccessful effort to

14 consult with Dr. Thomas. Despite Ricoh's perfunctory allegations to the contrary, no litigation

15 confidences of Ricoh were disclosed by Dr. Thomas. There is no basis in the law to disqualify defense

16 counsel that sought diligently and successfully to prevent such disclosures. Since there was nothing

17 improper in at least exploring the idea of whether Dr. Thomas could consult for defense counsel and

18 Ricoh suffered no harm as a result, there is no basis for the imposition of sanctions.

19 **STATEMENT OF FACTS**

20 The facts and circumstances surrounding defense counsel's communications with Dr. Thomas

21 regarding a subpoena served on him, defense counsel's short-lived plan to consult with Dr. Thomas

22 and the two subsequent hearings before Judge Sleet are described in the pending "Motion Requesting

23 Court Order Lifting Restrictions Imposed by Delaware Court on Deposition of Dr. Donald Thomas,"

24 made by Synopsys and the *Ricoh v. Aeroflex* defendants. A shorter précis of those facts is as follows:

25 Dr. Thomas was one of the principal developers of the Design Automation Assistant logic

26 synthesis system, which Defendants believe is prior art to the patent that Ricoh is asserting in this case.

27 Prior to the initiation of the Delaware lawsuit, in June 2002, Dr. Thomas had briefly served as a

28 consultant for Ricoh, advising them on the substance of various prior art papers. *See* Ex. B at 7, 30. In

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

-2-

1  March of 2003, Defendants first contacted Dr. Thomas by email and asked whether he was available to

2  serve as a consultant to the defense. *See* Ex. B at 1. Dr. Thomas responded by email and told

3  Defendants that he had done related work for Ricoh, and Defendants did not pursue the matter further

4  at that point. *See* Ex. B at 7, 13. Dr. Thomas contacted Ricoh's attorneys at that time and told them

5  that he would not testify for Ricoh at trial. *See* Ex. B at 26, 30; Ex. A at 44:16–46:4.

6        In June, Defendants subpoenaed Dr. Thomas for documents and testimony relating to the prior

7  art Design Automation Assistant logic synthesis system. Unfortunately, because of a clerical error, a

8  copy of the subpoena was not sent to Ricoh. *See* Campbell Decl. at ¶¶ 2-4, Decl. of Wendy Hobbs at

9  ¶3. In response to the subpoena, Dr. Thomas contacted Defendants' counsel by e-mail, asking if

10  defense counsel would compensate him for the cost of reproducing the documents requested in the

11  subpoena, the time of assistant in collecting the materials and his time expended during a deposition.

12  *See* Ex. B at 24; Ex. A at 41:18-42:17. Defense counsel responded that if Dr. Thomas was consulting

13  with Ricoh he should contact them regarding covering his expenses, but that if he was not consulting

14  with Ricoh and Ricoh was not serving as his counsel, that defense counsel was willing to pay these

15  costs. *See* Ex. B at 25.

16        Dr. Thomas replied that he had not consulted with Ricoh since the summer of 2002, that he did

17  not believe that he was in an ongoing consulting relationship with Ricoh and he informed defense

18  counsel that he was sending Ricoh a note officially terminating the agreement that he had with them.

19  *See* Ex. B at 26-31; *see also* Ex. A at 44:16-46:4; 46:21-47:17. In an e-mail a few days later, Dr.

20  Thomas stated that he believed he could be "of great help to the defense." *See* Ex. B at 36. Defense

21  counsel inquired if this meant that he was interested in considering a consulting relationship with the

22  defense. *See* Ex. B at 37. Dr. Thomas then went on a week long vacation. The week Dr. Thomas

23  returned defense counsel and Dr. Thomas reached agreement on the terms under which Dr. Thomas

24  might consult for the defense. *See* Ex. B at 45-48. On July 22, immediately after receiving Dr.

25  Thomas's signed agreement formalizing these terms, defense counsel sent Ricoh's counsel a letter

26  informing them that Dr. Thomas had been retained as a consultant and that the scheduled deposition

27  was being taken off calendar. *See* Ex. F.

28

1      By a letter dated July 22, Ricoh's counsel objected to Defendants' retention of Dr. Thomas as a

2  consultant and asserted that Dr. Thomas was in possession of Ricoh's confidential and privileged

3  information.  Thereafter, in a short five minute conversation, Mr. Louis Campbell, counsel for

4  Defendants, asked Dr. Thomas questions intended to verify whether Dr. Thomas had received from

5  Ricoh any work-product information that might prevent him from consulting for Defendants.  This was

6  the only direct oral communication between Dr. Thomas and defense counsel.  Defense counsel took

7  pains to avoid disclosure of the particulars of what materials Ricoh had supplied Dr. Thomas while

8  trying to ascertain whether this information was public or represented work product of Ricoh's

9  counsel.  *See* Ex. B at 45-48, 51-52 and July 23 telephone conversation described in Ex. E.  Dr.

10  Thomas reviewed the materials and identified them by type in a reply e-mail, which indicated that the

11  materials were not confidential attorney work product.  *See* Ex. B at 52.

12      The issue of whether defense counsel could consult with Dr. Thomas was raised in a hearing

13  held before Judge Sleet on July 30.  At the end of the hearing, Judge Sleet ordered defense counsel to

14  produce copies of their correspondence with Dr. Thomas to Ricoh (and a privilege log of any

15  documents withheld for privilege), and ordered Dr. Thomas to appear for a deposition limited to the

16  subject matter of his dealings with defense counsel.  The correspondence was produced to Ricoh (since

17  no documents were withheld for privilege, no privilege log was prepared), and Dr. Thomas's

18  deposition was taken.  All evidence demonstrated that there had been no communication of any Ricoh

19  confidences from Dr. Thomas to defense counsel.

20      Thereafter, hoping to put the matter to rest, defense counsel informed Ricoh that they were

21  abandoning any effort to use Dr. Thomas as a consultant and would instead take his deposition only as

22  a fact witness on the DAA prior art.  Ricoh, again strenuously object and raised the issue with the

23  Court again during a telephone conference held on August 28, in which a variety of different discovery

24  issues were addressed.  On this occasion, acting without having seen any of the evidence, the Court

25  ordered defense counsel to produce its internal communications regarding Dr. Thomas's retention for

26  an *in camera* inspection.  Contrary to what Ricoh has contended in its motion, (see Sanc. Mot. at

27  17:18-18:7), the Court did not order defense counsel to prepare a privilege log of the documents that it

28

HOWREY
SIMON
ARNOLD &
WHITE
BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ
-4-

1  was to supply for *in camera* review. The very next day, before Defendants had an opportunity to

2  present the requested documents, the Delaware court transferred the case to this District.

3  <center>ARGUMENT</center>

4  **I.    LEGAL STANDARDS**

5&6  > **A.    Ricoh must prove by clear and convincing evidence that defense counsel contacted Dr. Thomas with bad faith intent to obtain confidential information.**

7  Ricoh must present clear and convincing proof of misconduct by defense counsel before any

8  drastic sanction, including imposition of attorney fees or disqualification of counsel, can be imposed.

9  *See, e.g., Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995)

10  ("[F]or those inherent power sanctions that are fundamentally penal—dismissals and default

11  judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines—the

12  district court must find clear and convincing evidence of the predicate misconduct."); *Gates Rubber*

13  *Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 106 (D. Colo. 1996); W. Schwarzer, W. Tashima & J.

14  Wagstaffe, Federal Procedure Before Trial at ¶17:174.1 (2003) ("Schwarzer"). Furthermore, Ricoh

15  must prove that defense counsel acted in bad faith to support an order sanctioning defense counsels

16  conduct. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) ("A specific finding of

17  bad faith by the trial judge or magistrate must accompany the sanction order in all such case."); *see*

18  *also Primus Automotive Fin'l Services, Inc. v. Batarse*, 115 F.3d 644, 650 (9th Cir. 1997); Schwarzer at

19  ¶¶17:170d, 17:177. Finally, any remedy must be carefully fashioned to provide redress directed to any

20  proven bad faith conduct. *See Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (sanctions under

21  Fed. R. Civ. P. 37(b)(2) must be just and "must be specifically related to the particular 'claim' which

22  was at issue in the order to provide discovery"); *Lewis v. Telephone Employees Credit Union*, 87 F.3d

23  1537, 1558-59 (9th Cir. 1996) (holding that the district court's decision to prohibit the testimony of an

24  expert witness who had *ex parte* communications with an opposing party was not carefully fashioned).

25&26  **II.   COUNSEL'S FAILURE TO TIMELY SERVE RICOH WITH DR. THOMAS'S SUBPOENA WAS INADVERTENT NOT SANCTIONABLE MISCONDUCT.**

27  Defense counsel immediately disclosed to Ricoh its retention of Dr. Thomas. This disclosure,

28  however, was complicated by the fact that, as a result of an accidental oversight, Ricoh was not sent a

HOWREY
SIMON
ARNOLD &
WHITE    BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                                    -5-

1    copy of Dr. Thomas's subpoena at the time it was served.  The failure to make timely service on Ricoh

2    was inadvertent, not an "error of judgment" as Ricoh alleges.  *See* Sanc. Mot. at 12:19-22, 13:10-24.

3    Because the failure to serve Ricoh was accidental and Ricoh did not suffer any harm as a result of the

4    delayed notice, there is no basis for sanctioning defense counsel for this unintentional action.

5         There is no question that the failure to serve was accidental and not intentional.  Synopsys

6    presents, with this brief, declarations from Louis Campbell and Wendy Hobbs, Mr. Campbell's legal

7    assistant, explaining how the accident occurred.  *See* Hobbs Decl. at ¶¶ 2-3; Campbell Decl. at ¶¶ 2-4.

8    Even without this testimony, however, defense counsel's behavior at the time indicates that counsel

9    intended Ricoh to receive notice of Dr. Thomas's subpoena and was unaware that notice had not been

10   given.  Of particular significance is the fact that Ricoh first learned of the subpoena to Dr. Thomas

11   when defense counsel sent Ricoh a letter stating that Dr. Thomas had been retained and that the

12   deposition resulting from the subpoena was being taken off the calendar.  *See* Ex. F.  Likewise, Mr.

13   Campbell encouraged Dr. Thomas to seek Ricoh's assistance in responding to the subpoena, if he was

14   still working for Ricoh.  *See* Ex. B at 25.  To believe, as Ricoh contends, that this failure to serve Ricoh

15   was intentional one would have to believe that Mr. Campbell intentionally withheld notice of the

16   subpoena for some nefarious purpose, then encouraged Dr. Thomas to disclose the existence of the

17   subpoena to Ricoh and then ultimately "blew the whistle" on himself by disclosing the existence of the

18   subpoena in a letter to Ricoh.  This scenario makes no sense.

19        Ricoh presents no evidence that the failure to provide timely service of Dr. Thomas's subpoena

20   was intentional, and suggests no motive or rationale for this alleged intentional omission.[2]  Instead,

21   Ricoh raises the unrelated and irrelevant question of whether it is sufficient for compliance with Rule

22   45(b)(1) that parties be given notice of a third party subpoena directly after this has been served.  *See*

23   Sanc. Mot. at 13:12-19.  Defense counsel does not dispute that Ricoh should have been given notice of

24

25

---

26   [2]   If defense counsel, counter-factually, had wanted to communicate with Dr. Thomas without
27   involving or engaging Ricoh, it defies logic to think that it try to initiate this contact by serving Dr.
     Thomas with a subpoena.  If Dr. Thomas had been working for Ricoh, one would expect that he would
28   turn to Ricoh's counsel for assistance in responding to any subpoena.

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                                   -6-

1   the subpoena served on Dr. Thomas but through clerical error was not.  The timing of the notice not

2   given is irrelevant.[3]

3        Because the failure to give Ricoh notice of Dr. Thomas's subpoena was accidental, there is no

4   basis for imposing any sanction on defense counsel.  Furthermore, Ricoh has suffered no harm from its

5   delayed notice of the subpoena.  None of Ricoh's confidences were revealed as a result of the

6   subpoena (see, *e.g.,* section IV B, *infra*) and if Ricoh and Dr. Thomas wish to renew their consulting

7   relationship, they are free to do so.

8   **III.    THERE IS NO BASIS IN FACT OR LAW FOR DISQUALIFICATION OR SANCTION**

9   **OF DEFENSE COUNSEL FOR ITS DEALINGS WITH DR. THOMAS.**

10       There is nothing sanctionable in any aspect of defense counsel's dealings with Dr. Thomas.

11  The fact that counsel proposed consulting with Dr. Thomas is not sanctionable.  The case law imposes

12  two obligations on parties seeking to retain experts who *may* pose a conflict-of-interest problem.  They

13  must carefully avoid seeking disclosures of confidential information from the expert's earlier

14  representation, and must make early disclosure to opposing counsel of its intentions to consult with the

15  expert.  Because defense counsel observed both of these requirements, there is no basis for sanctioning

16  counsel merely for considering the possibility of consulting with Dr. Thomas.

17       Furthermore, nothing in the substance of defense counsel's communications with Dr. Thomas

18  warrants the imposition of sanctions.  The evidence clearly demonstrates that none of Ricoh's

19  confidential information was transmitted to defense counsel.  There is, therefore, no basis for

20  disqualifying defense counsel, and Ricoh's assertion that the Court should presume that confidential

21  information was exchanged, even in the face of clear evidence that it was not, has no foundation in the

22  law.

23

24

25

26  [3]  Defense counsel's practice, on other occasions, of giving Ricoh fax notice of subpoenas

27  immediately after they were served rather than before does not demonstrate that counsel intended to
    provide no notice of Dr. Thomas's deposition.  Counsel's practice, at worst, delayed Ricoh's receipt of

28  two subpoenas by a handful of days.

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                    -7-

1    Finally, Ricoh alleges that defense counsel should be sanctioned for specific communications

2  that Ricoh alleges were intended to mislead Dr. Thomas.  Ricoh's allegations are based on obvious

3  mischaracterizations of the communications, and are without merit.

4    **A.    Defense counsel acted properly in making an immediate notification to opposing counsel of its plans to consult with Dr. Thomas.**

5

6    The facts show that the defendants and Synopsys did nothing improper in their dealings with

7  Dr. Thomas or Ricoh justifying sanctions.  Synopsys determined that Dr. Thomas had worked for

8  Ricoh in the past but was no longer working for them, reached agreement with him on the terms of a

9  consulting relationship and then announced to opposing counsel that they had done so, without

10  beginning any kind of substantive consultations with Dr. Thomas.  In marked contrast, the cases cited

11  by Ricoh establish that that a party, or its counsel, can be sanctioned or disqualified when counsel does

12  substantive work with the conflicted person without prior disclosure to the other party.

13    In *Shadow Traffic*, Latham & Watkins consulted Deloitte & Touche to provide expert witnesses

14  for an upcoming trial.  *See Shadow Traffic,* 29 Cal. Rptr. 2d at 694-95.  Deloitte & Touche, however,

15  had already had discussions with the other party in the case regarding work on the matter.  *See id.*  The

16  appeals court decision holds that it was proper to disqualify Latham.  It noted, however, that the

17  problem could have been avoided if Latham had disclosed its intention to consult with Deloitte &

18  Touche to opposing counsel:

19       "To discharge [the obligation of protecting confidential information] and at the
        same time properly represent its client Shadow, if Latham & Watkins wished to
20       employ Deloitte & Touche, it should have contacted [opposing counsel] upon
        learning of the latter's discussion(s) with Deloitte & Touche.  Latham &
21       Watkins failed to take that simple step.

22  *Id.* at 705.  What the appeals court proposes as proper conduct is exactly what defense counsel did.

23    Ricoh's cited case *Cordy v. Sherwin-Williams Co.* 156 F.R.D. 575 (D.N.J. 1994), is inapposite.

24  *Cordy* involves a situation in which one party actually worked with an expert who had previously

25  consulted for the other side.  *Cordy*, 156 F.R.D. at 577-78..  Opposing counsel learned of this work only

26  after it was already well underway.  *See id.* at 578-79 (at ¶¶ 20-21).  The *Cordy* court advised that the

27  problem could have been avoided if the counsel wishing to consult with the expert had identified their

28  intention to opposing counsel.  *See id* at 584.

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                              -8-

1    Ricoh cites *Terrebonne, Ltd. v. Murray* as providing the basis for its request for fees based on

2  defense counsel's contact with Dr. Thomas.  However, *Terrebonne* involves a situation in which

3  counsel falsely represented his allegiances.  In *Terrebonne*, Mr. Bayer, an attorney, held himself out as

4  counsel for one group of parties (New Hogan Lake Investors) when in fact he was simultaneously

5  representing another party (Terrebonne) that was contemplating action against the New Hogan Lake

6  Investors.  *See Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1056-1058, 1067-1068 (E.D. Cal.

7  1998).  The other cases that Ricoh cites, *Actel Corp. v. Quicklogic Corp.*, 1996 U.S. Dist. LEXIS

8  11815 (N.D. Cal. 1996) and *In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 283 Cal. Rptr.

9  732 (1991), involve situations in which personnel worked for, or as, counsel representing one party to

10  a suit and then switched employers and did substantive work with counsel on the opposite side of the

11  matter without giving their former employers proper notice of the altered allegiance.  Dr. Thomas

12  never had substantive communications with defense counsel, the *Aeroflex* defendants or Synopsys, and

13  Ricoh was given proper notice of the proposed consulting relationship, so these cases are inapplicable.

14    Ricoh argues that defense counsel made an "error of judgment" in failing to make an

15  investigation into the nature of Dr. Thomas's communications with Ricoh before signing a consulting

16  agreement with him and disclosing their intention to consult with Dr. Thomas to Ricoh.  *See* Sanc.

17  Mot. at 14:16-25 (so-called "error 5").  It is not certain if Ricoh's complaint is that defense counsel

18  signed a consulting agreement with Dr. Thomas – but did no more – before disclosing their plan to

19  consult with Dr. Thomas or that defense did not do a full inquiry into Dr. Thomas's communications

20  with Ricoh before disclosing their intention to consult with him.  The latter course would plainly be

21  fraught with peril, and is contrary to the guidance of *Wang* and *Shadow Traffic* that early disclosure to

22  opposing counsel is best.  Since Ricoh now alleges that asking Dr. Thomas to identify the types of

23  documents he received from Ricoh was sanctionable error (see Sanc. Mot. at 14:26 – 15:12), it cannot

24  argue that defense counsel erred by not asking similar questions <u>before</u> Ricoh was notified of counsel's

25  plan to consult with Dr. Thomas.  If Ricoh's objection is that defense counsel and Dr. Thomas entered

26  a formal retention agreement before the proposed consulting relationship was disclosed, Ricoh presents

27  no case authority indicating that this is sanctionable misconduct.

28

HOWREY
SIMON
ARNOLD &
WHITE    BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ    -9-

**B.    There is no basis for the Court to make an assumption that defense counsel received Ricoh confidential information.**

Ricoh alternatively asks that the Court presume, even in the absence of any supporting evidence, that Dr. Thomas disclosed confidential information to defense counsel.  *See* Sanc. Mot. at 21:4-10.  None of the case law that Ricoh cites supports the view that the Court might, or should, ignore factual evidence demonstrating that there has not been a disclosure of confidential information, and presume such a disclosure.

In each of the cases cited by Ricoh, the court found that the second counsel had substantive communications with the conflicted expert or employee that justified adopting a presumption that confidential case strategy information had been conveyed.  *See Shadow Traffic*, 29 Cal. Rptr. 2d at 703-704 (counsel had substantive conversations with conflicted expert regarding opponent's damages theory); *Actel Corp. v. QuickLogic Corp.*, 1996 U.S. Dist. LEXIS 11815 at *12-*13 (N.D. Cal. 1996) (paralegal with knowledge of opponents case switched to opposing counsel's law firm and was not effectively screened from the matter); *Complex Asbestos*, 283 Cal. Rptr. at 737 (same); *Cordy*, 156 F.R.D. at 578-79 (conflicted expert provided preliminary opinion and did $14,500 of work for new counsel); *MMR/Wallace*, 764 F. Supp. at 715 (conflicted witness had substantive conversation with second counsel).  These cases explicitly state that any presumption that confidential information has been communicated is rebuttable.  *See Complex Asbestos*, 283 Cal. Rptr. at 746-47; *Shadow Traffic*, 29 Cal. Rptr. 2d at 703; *Actel*, 1996 U.S. Dist. LEXIS 11815, at *25; *MMR/Wallace*, 764 F.Supp. at 726 (suggestion in prior cases that presumption might be irrebuttable was dicta).

In the present case there have been no substantive communications between defense counsel and Dr. Thomas and no occasion, therefore, for Dr. Thomas to convey any case strategy information that he might have received from Ricoh to defense counsel.  Furthermore, there is no reason for the Court to make any presumptions about the content of the communication between Dr. Thomas and defense counsel, which occurred exclusively by e-mail or regular surface mail, with the exception of voice messages regarding scheduling and one brief telephone conversation.  *See* Campbell Decl. at ¶7.  Counsel and Dr. Thomas have both provided independent descriptions of that conversation, which are

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

-10-

1   entirely consistent.[4]  The Court, therefore, has a verbatim transcript of the communications between

2   counsel and Dr. Thomas.  The defense urges the Court to review this communication for itself.  *See* Ex.

3   B.  That review will reveal that the communication was strictly limited to logistical and procedural

4   matters and that counsel explicitly cautioned Dr. Thomas to avoid discussing his substantive

5   communications with Ricoh.  *See* Ex. B at 47 (sixth para.), 51.

6               **1.      Dr. Thomas's statements about the general character of his work for Ricoh
                           do not justify the imposition of sanctions.**
7

8          Ricoh alleges that defense counsel should be disqualified because they inquired into the general

9   character of the materials Dr. Thomas had received from Ricoh and in particular as to whether the

10  materials were published.  *See* Sanc. Mot. at 21:10-16.  Acting on defense counsel's instruction that he

11  not identify the specifics ("title, author, dates, etc.") of the documents, Dr. Thomas replied that he had

12  received "patents," "published articles," and "one [document] that appears to be a rough draft of

13  corporate literature."  *See* Ex. B at 52.

14         Ricoh's argument that this communication requires imposition of sanctions is meritless since

15  the bare fact that Dr. Thomas received technical articles and patents from Ricoh does not constitute a

16  disclosure of confidential attorney-client information.  Ricoh relies on the rule set out in *Complex*

17  *Asbestos Litigation* to justify its demand for disqualification of counsel.  Sanctions are appropriate

18  under the rule of *Complex Asbestos Litigation* only when "employees or agents of attorneys go to work

19  for opposing counsel and bring confidential *attorney-client* information with them."  *Strasbourger*

20  *Pearson Tulcin Wolff Inc. v. Wiz Tech., Inc.*, 69 Cal. App. 4th 1399; 82 Cal. Rptr. 2d 326, 334 (1999)

21  (emphasis in original).  The fact that Ricoh gave Dr. Thomas certain types of documents to review is a

22  predicate fact that helps determine the nature of the relationship between Dr. Thomas and Ricoh.  That

23  fact, however, does not rise to the level of "confidential attorney-client information."  Even if Dr.

24  Thomas was serving as a non-testifying expert, and his communications with Ricoh were, therefore,

25  shielded from discovery under Fed. R. Civ. P. Rule 24(b)(4), defense counsel would still be entitled to

26  _____

27  [4]    It is worth noting that Dr. Thomas did not have access to the description of the telephone
        conference provided by Synopsys' counsel before his deposition, and that Synopsys' counsel did not
28      confer with Dr. Thomas before his deposition.

HOWREY
SIMON
ARNOLD &
WHITE          BRIEF IN OPPOSITION TO RICOH'S MOTION FOR          -11-
               SANCTIONS
               Case No. C03-02289MJJ

1  discover information about the general "nature of the documents, communications or things" had

2  between Ricoh and Dr. Thomas. *See* Fed. R.Civ. P., Rule 24(b)(5); *Aptargroup, Inc. v. Owens-Illinois,*

3  *Inc.*, 2003 U.S. Dist. LEXIS 13047, at *4 - *6 (N.D. Ill. 2003). This discovery allows the side

4  asserting the protection of the Rules to establish the preconditions for the protection, and defense

5  counsel to challenge their application. *See Aptargroup*, 2003 U.S. Dist. LEXIS 13047 at *6 - *8.

6        Ricoh also contends that defense counsel must be disqualified because Dr. Thomas told defense

7  counsel that he had told Ricoh that he did not intend to testify on their behalf at trial. *See* Sanc. Mot. at

8  21:14-16. Defendants and their counsel cannot, however, be sanctioned for the disclosure of this

9  information, because this information was also simply a predicate fact about Dr. Thomas's status in the

10 litigation, and not a privileged communication containing "attorney-client" confidences. Furthermore,

11 defense counsel did not cause this information to be revealed. Defense counsel had only inquired into

12 whether Dr. Thomas was in an ongoing consulting relationship with Ricoh, which was a necessary

13 question for counsel to ask in order to determine if it could properly compensate Dr. Thomas for his

14 expenses incurred in responding to the subpoena, as he had requested. *See* Ex. B at 25. Dr. Thomas

15 gratuitously included in his reply the information that he had told Ricoh that he would not testify for

16 them. *See* Ex. B at 26. The inquiry by defense counsel was perfectly appropriate, even necessary, and

17 the fact that Dr. Thomas revealed this additional information in his answer cannot be the basis for

18 sanction.

19           **2.      Sanctions are not warranted where Ricoh elicited Dr. Thomas' testimony**

20                     **regarding his view of Ricoh's patents.**

21       Ricoh also claims that Dr. Thomas must have discussed the substance of his work for Ricoh

22 with defense counsel because defense counsel has stated in papers filed with this Court that Dr.

23 Thomas's testimony indicates that he told Ricoh that their patent claim was not meritorious. *See*

24 Notice to Court Re Order Requiring Delivery of Documents, filed Oct. 30, at 2, n.1, and Motion

25 Requesting Court Order Lifting Restrictions On Deposition of Dr. Thomas, ("Thomas Depo. Mot.")

26 filed December 2, at 4:6-14; *see also* Sanc. Mot. at 21:16-18. Ricoh's argument completely ignores

27 the fact that defense counsel's discussion of Dr. Thomas's views has always been based exclusively on

28 testimony that <u>Ricoh's own counsel</u> elicited at Dr. Thomas's deposition. *See* Thomas Depo. Mot. at

1  4:6-14. Defense counsel never discussed Ricoh's patent with Dr. Thomas. *See* Campbell Decl. at ¶7.

2  To the extent that defense counsel had any expectation that Dr. Thomas might have negative views

3  regarding Ricoh's patent, that expectation was based exclusively on Dr. Thomas's apparent desire to

4  consult for defense counsel and counsel's own independent evaluation of Ricoh's patent and prior art.

5  *See id.* For Ricoh to allege that defense counsel's citation to testimony elicited by Ricoh is a tacit

6  admission that Dr. Thomas disclosed his conclusions regarding Ricoh's patent (see Sanc. Mot. at

7  21:16-18) is simply dishonest.

8      **C.**    **Communication with Dr. Thomas regarding Dr. Kowalski's telephone number was not improper.**

9

10      Ricoh alleges that defense counsel made an "error of judgment" in responding to Dr. Thomas's

11  e-mail in April 2003 that suggested that defense counsel might contact Dr. Thaddeus Kowalski to

12  determine if he could serve as a potential expert. *See* Sanc. Mot. at 12:23-13:9. Defense counsel urges

13  the Court to review the correspondence to which Ricoh refers, which is located at pages 13 through 23

14  of Exhibit B of Mr. Campbell's declaration, so that the Court can see for itself the frivolous nature of

15  Ricoh's allegations. The only information that Mr. Campbell requested from Dr. Thomas was the

16  telephone number for Dr. Thaddeus Kowalski, and Mr. Campbell makes this request only in response

17  to Dr. Thomas's suggestion that Synopsys contact Dr. Kowalski as a possible expert. *See* Ex. B at 14-

18  15. The other two e-mails sent by Mr. Campbell are polite "thank you" e-mails. *See* Ex. B at 17, 22.

19  Contrary to Ricoh's assertions, nothing that Mr. Campbell did for his part in this correspondence

20  violates any California ethical rule or any provision of the Federal Rules.

21      Asking Dr. Thomas for the telephone number of a potential expert that he proposed to defense

22  counsel is not a violation of either the Federal Rules of Civil Procedure or the California Rules of

23  Professional Conduct. Federal Rule 26(b)(4) served as the basis of the sanction in the *Campbell*

24  *Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980), decision cited by Ricoh. Federal Rule

25  26(b)(4) limits the circumstances in which an opponent can have access to the facts and opinions held

26  by an expert retained by an adverse party. *See* Fed. R. Civ. P. Rule 26(b)(4). The Rule 26 prohibitions

27  do not extend, however, to facts known to the expert prior to, or independently of his work on behalf of

28  the adverse party. *See Atari Corp. v. Sega of America*, 161 F.R.D. 417, 421-22 (N.D. Cal. 1994). *See*

1  *also* Advisory Committee Notes to section 26(b)(4) ("[m]aterials assembled in the ordinary course of

2  business ... or for other nonlitigation purposes are not under the qualified immunity" of section 26(4)).

3          Rule 2-100 of the California Rules of Professional Conduct may, alternatively, serve as the

4  basis for sanctioning *ex parte* communications with an expert, as the Ninth Circuit held in *Lewis*, 87

5  F.3d at 1557-58.  Rule 2-100 forbids communications between counsel and parties represented by

6  another attorney, but is, appropriately, limited to communications relating to "the subject of the

7  representation."  Dr. Kowalski's telephone number was not developed by Dr. Thomas in connection

8  with his work for Ricoh and it is not the subject of the litigation.  It is, therefore, not covered by either

9  of Rule 26(b)(4) or Rule 2-100.  Communication of this sort regarding a matter not related to the

10 subject matter of the litigation is not improper and Ricoh has provided no basis in law for sanctioning

11 Mr. Campbell's request for the telephone number of a former colleague of Dr. Thomas.

12       **D.  Ricoh's allegations that defense counsel misled Dr. Thomas and instructed him to terminate his relationship with Ricoh are false.**

13

14          Ricoh asserts that defense counsel misled Dr. Thomas into believing that Ricoh did not intend

   to rely on Dr. Thomas as an expert (see Sanc. Mot. at 14:1-9), and that counsel "instructed" Dr.
15
   Thomas to terminate his consulting agreement with Ricoh (see Sanc. Mot. at 14:10-15).  There is no
16
   factual basis for either of these allegations, which are directly contrary to the evidence of the e-mail
17
   communication between defense counsel and Dr. Thomas.
18
          Defense attorney Mr. Campbell made no representations at all to Dr. Thomas about his
19
   relationship with Ricoh.  Instead, counsel *inquired* from Dr. Thomas what the status of his relationship
20
   to Ricoh was.  *See* Ex. B at 25, 28.  Ricoh, however, undeterred by the absence of any evidence for its
21
   theory concocts a basis from unwarranted speculation that there is unstated subtext in Dr. Thomas's
22
   July 7 e-mail.  There Dr. Thomas wrote:
23
24          "I have not been contacted by Ricoh (Dickstein Shapiro ...) for consultation since last
            summer.  I spoke with them briefly on the phone this March, when you sent your
25          original email to me.  I told them I wouldn't be an expert witness for them during
            trial.
26
            "They have not offered to serve as my counsel during the deposition, and I assume
27          that they know that you subpoenaed me for the documentation and deposition.  Have
            they listed me as a consultant?
28

HOWREY
SIMON
ARNOLD &
WHITE    BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS        -14-
Case No. C03-02289MJJ

1    *See* Ex. B at 28. Like Dr. Thomas, Mr. Campbell believed that Ricoh had been served with a copy of

2    the subpoena. *See* Campbell Decl. at ¶ 4. Any response that Mr. Campbell made as to Dr. Thomas's

3    implicit question as to why he had not been contacted by Ricoh would have, therefore, been pure

4    speculation. Instead, Mr. Campbell responded:

5
6            "I take it from your email that you do not believe yourself to be in an ongoing consulting relationship with Ricoh. They have not listed you as a consultant in this case.

7    *See* Ex. B at 28. Mr. Campbell's statement that Dr. Thomas had not yet been identified as a consultant

8    was entirely accurate and in no way intended to mislead Dr. Thomas. Ricoh had supplied Defendants

9    with an initial disclosure statement that identified a number of persons with knowledge of facts

10    relevant to the litigation. Mr. Campbell based his answer that Dr. Thomas had not been listed as a

11    consultant based on his review of that list. *See* Campbell Decl. at ¶ 9.

12       Ricoh argues that Mr. Campbell's response was a deception because he should have understood

13    Dr. Thomas's question "Have they listed me as a consultant?" as an inquiry into whether Dr. Thomas

14    appeared on Ricoh's pre-trial list of witnesses. *See* Sanc. Mot. 14:3-6. There is absolutely no

15    justification for supposing that Dr. Thomas intended his question to have this particular meaning. In

16    the same e-mail in which Dr. Thomas inquired as to whether he has been listed as a consultant, he told

17    Mr. Campbell that he had told Ricoh that he would not appear as a witness on their behalf. *See* Ex. B

18    at 26. Based on this statement, it would be irrational for Mr. Campbell to interpret "Have they listed

19    me as a consultant?" as "Have they listed me on a witness list?"

20       Ricoh's contention that defense counsel instructed Dr. Thomas to terminate his consulting

21    agreement is also directly rebutted by the e-mail communication between Mr. Campbell and Dr.

22    Thomas. Defense counsel invites the Court to review the relevant history for itself at pages 24 through

23    36 of Exhibit B to the Campbell Declaration. That history demonstrates that, far from encouraging Dr.

24    Thomas to terminate his consulting agreement, defense counsel encouraged Dr. Thomas to contact

25    Ricoh for assistance in responding to the subpoena. *See* Ex. B at 25.

26       Dr. Thomas initiated e-mail communication with defense counsel after he received the

27    subpoena. He stated that he was tracking down the documents requested by counsel and inquired

28    about reimbursement for the cost of photocopying, the time spent by his assistant in retrieving the

1   requested materials and his personal time during a deposition. *See* Ex. B at 24.[5] Defense counsel

2   responded that "[i]f you are no longer a consultant for Ricoh and Ricoh will not serve as your counsel

3   during the deposition nor work with you prior to the deposition, we may be willing to pay your costs

4   for copying documents and time spent at the deposition." *See* Ex. B at 25.  Defense counsel advised

5   said that if Dr. Thomas was still in a consulting relationship with Ricoh he should contact Ricoh about

6   covering his costs. *See id.*  Dr. Thomas responded with the statement that he believed that his

7   relationship with Ricoh had come to an end. *See* Ex. B at 30.

8          Mr. Campbell neither instructed nor induced Dr. Thomas to terminate his relationship with

9   Ricoh.  Dr. Thomas approached defense counsel seeking compensation for his expenses.  Mr.

10   Campbell explicitly instructed Dr. Thomas to contact Ricoh regarding reimbursement if he was serving

11   as their consultant.  If Dr. Thomas was no longer serving as a consultant for Ricoh, Mr. Campbell

12   agreed to compensate him for his time spent at a deposition, at his normal consulting rate.  Mr.

13   Campbell could not offer to pay Dr. Thomas if Dr. Thomas was still consulting for Ricoh, as that

14   would create an obvious conflict of interest problem.  There is no inducement for Dr. Thomas to

15   switch sides in Mr. Campbell's e-mail, since Mr. Campbell offers nothing more than what Ricoh

16   presumably would have paid Dr. Thomas, if his consulting relationship with them had been ongoing.

17   Mr. Campbell did not hold out to Dr. Thomas the possibility of consulting work.  That was not

18   considered until Dr. Thomas first suggested that he could be "of great help to the defense" in an e-mail

19   sent after he had already elected not to renew his relationship with Ricoh. *See* Ex. B at 36.

20  **IV.    RICOH'S ALLEGATION THAT DEFENSE COUNSEL MISLED JUDGE SLEET IS
21           MERITLESS AND SHOULD BE REJECTED.**

22       **A.    There is no factual basis for Ricoh's allegation that counsel misled Judge Sleet
                 about the timing of its questions of Dr. Thomas.**
23
         Ricoh contends that Defendants' counsel misled the Court by asserting that they had inquired
24
     into whether Dr. Thomas had received confidential materials or information about case strategy from
25

26   _____

27   [5]   The fact that Dr. Thomas apparently did not contact Ricoh to seek reimbursement for these costs or
         Ricoh's assistance during the requested depositions, is explained by Dr. Thomas's subsequent
28       statements that he believed his relationship with Ricoh to have ended. *See* Ex. B at 30.

HOWREY
SIMON
ARNOLD &
WHITE          BRIEF IN OPPOSITION TO RICOH'S MOTION FOR            -16-
               SANCTIONS
               Case No. C03-02289MJJ

1  Ricoh, and that this inquiry had taken place "*before* Synopsys retained Dr. Thomas." Sanc. Mot. at

2  16:10-11.

3    Ricoh bases this assertion on the second paragraph from the following statement made by Mr.

4  Kelley, an attorney for the defense, at the July 30, 2003 hearing:

6    "Whether [Dr. Thomas received confidential information from Ricoh], obviously
     counsel for plaintiff is indicating that he did receive that information. Sitting here, I
     have no idea who's correct on that dispute. But having asked Dr. Thomas, well, if what
7    he said is true, we should be able to use his services under the relevant case law and so
     what we did is say we're interested in retaining you, but we're going to notify the other
8    side. We're not going to do anything about the fact that we want to work with you.
     We're not going to consult with you. We're not going ask to ask [sic] for your opinions
9    yet. We are going to give them notice we want to enter into this relationship, which is
     how we ended up where are today.

10
     "Yes, I was aware that we were certainly aware there was a possibility that he might
11   have a conflict of interest, but he had indicated he had not received any such information
     that would create a conflict. If that's true, we wanted to get into that consulting
12   relationship.

13

14   Ex. D at 15:5-21.

15    Ricoh contends that the second paragraph contains a representation that counsel conducted an

16  investigation before it signed an agreement with Dr. Thomas. There is, however, no explicit statement

17  about the chronology of events in Mr. Kelley's statement. Ricoh's argument is based entirely on the

18  inference that when Mr. Kelley told the Court that "we wanted to get into that consulting relationship,"

19  the fact that the "consulting relationship" was referred to as prospective was intended to convey that

20  Dr. Thomas had not yet signed a retention agreement with Defendants.

21    Ricoh's construction of Mr. Kelley's words falls apart when the entire transcript is examined.

22  In a part of the transcript preceding the language quoted by Ricoh, Mr. Kelley told the Court that

23  Defendants had notified Ricoh of their plans to consult with Dr. Thomas "as soon as we had retained

24  Dr. Thomas." Ex. D at 12:22–13:2. In the first paragraph of the passage quoted above, Mr. Kelley

25  describes that defense counsel told Dr. Thomas that "we are not going to consult with you" but that

26  counsel will notify Ricoh of its intentions. In that context, "consult," had to refer to actual substantive

27  conversations and not the mere act of signing a retention agreement, since Mr. Kelley had already told

28  the Court that Dr. Thomas signed a retention agreement before Ricoh was notified. Given this, Mr.

HOWREY
SIMON
ARNOLD &
WHITE    BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
         SANCTIONS                                      -17-
         Case No. C03-02289MJJ

1  Kelley's statement that defense counsel wished to "get into that consulting relationship" was clearly

2  referring to future discussions with Dr. Thomas regarding matters pertaining to the defense of the

3  case.[6]  When Mr. Kelley told Judge Sleet that Defendants wished to "get into that consulting

4  relationship," he was referring to prospective consultation on the merits of the litigation between

5  Defendants and Dr. Thomas that had not yet – and still has not – occurred.

**B.    There is no factual basis for Ricoh's allegation that counsel misled Judge Sleet about the nature of questions asked of Dr. Thomas and his communications in response.**

8  Ricoh next alleges that defense counsel misled Judge Sleet when Mr. Kelley stated that:

"we asked [Dr. Thomas]: Have you received anything confidential from Ricoh, did you talk to them about case strategy?   We understand that these are two kinds of things that create a conflict of interest.  And he assured us he had not.

11  Ex. D at 14:25-15:4.

12  These remarks identify two types of communication that, had they occurred, might serve as the basis

13  for disqualifying Dr. Thomas.  He could be disqualified, Mr. Kelley posited, if he had received

14  confidential materials from Ricoh's counsel or if he talked to Ricoh's counsel about case strategy.  Mr.

15  Kelley's representation that defense counsel had inquired into whether either of these types of

16  communication had occurred was based on Mr. Campbell's telephone conversation with Dr. Thomas

17  on July 23 and the follow-up e-mails with Dr. Thomas in which he enumerates the type of materials he

18  received.  *See* Ex. B, at cover letter (2nd para. describing telephone conference) and 51-52.

19  Dr. Thomas's follow-up e-mail identified the types of documents that he had received from

20  Ricoh as "patents," "published articles" and "one [document] that appears to be a rough draft of

21  corporate literature." *See* Ex. B at 52.  This confirms Mr. Kelley's representation that Dr. Thomas told

22  counsel that he had not received documents containing confidential attorney-client information.

23  There is no comparable e-mail confirming what is stated in Mr. Kelley's August 5 letter to Mr.

24  Hoffman, which states that Mr. Campbell inquired into whether Dr. Thomas had received any

---

26  [6]   It is also worth noting the similarity between the phrase "we want to enter into this relationship" in the previous paragraph quoted above, which plainly refers to future consultation after signing the agreement, with the phrase "we wanted to get into that consulting relationship."  The two passages were obviously intended to have similar meaning.

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                                    -18-

1    information related to case strategy and that Dr. Thomas had said that he had not. *See* Ex. B, cover

2    letter. During Dr. Thomas's deposition, Ricoh's counsel did not specifically inquire into whether he

3    believed he had received information about "case strategy." Dr. Thomas, however, did provide

4    deposition testimony characterizing the work that he did for Ricoh, and this testimony is consistent

5    with his representation to Mr. Campbell that he had not received such information. Dr. Thomas

6    testified:

7        "I feel that my work for Ricoh was in patent analysis. I taught them certain things as if
         they had come to a classroom and I taught them something. They would ask a question, I
8        would explain something. If somebody else asked me those same questions, as people
         have done over the years and people will over other years, I would feel free to answer
9        those questions.

10   Ex. A at 35:2-8. *See also* Ex. A at 70:18-71:15.

11   Dr. Thomas presumably would have not said that the questions asked by Ricoh were like those he

12   heard in his classes at Carnegie-Mellon if those questions directly related to Ricoh's strategy for

13   litigating this case.

14       Ricoh argues that the Court should infer that Mr. Kelley must have mischaracterized defense

15   counsel's communications with Dr. Thomas because Dr. Thomas testified that he regarded his

16   conversations with Ricoh as "confidential." *See* Sanc. Mot. at 16-17. This ignores a much more

17   likely, and innocent, explanation for Dr. Thomas's testimony. Disqualification of an expert for conflict

18   of interest requires the two-part showing that (1) the expert had a prior relationship with the other party

19   in which there was a reasonable expectation of confidentiality, and (2) that "confidential attorney-

20   client information" was exchanged. *See Complex Asbestos Litigation*, 283 Cal. Rptr. at 746-47. *See*

21   *also Strasbourger Pearson*, 82 Cal. Rptr. 2d at 333 (confidential information must be in the nature of

22   "attorney-client" confidences to justify disqualification). The fact that conversations were conducted

23   as part of a confidential relationship does not in itself establish that "confidential attorney-client

24   information" was exchanged. Mr. Kelley's colloquy with the Court, which was focused on the

25   question of whether Dr. Thomas had "received anything confidential from Ricoh [or] talk[ed] to them

26   about case strategy," was plainly focused on the <u>content</u> of the information exchanged, *i.e.* the second

27   element of the disqualification inquiry. In contrast, the testimony from Dr. Thomas that Ricoh refers

28   to relates to the fact that Dr. Thomas believed that the work he had done for Ricoh was to be held in

HOWREY
SIMON
ARNOLD &
WHITE    BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                -19-

1   confidence, *i.e.* that the first element of the disqualification test, the existence of a confidential

2   relationship. For example, Dr. Thomas testified that he regarded the fact that Ricoh had given him

3   specific articles was confidential information – even though the materials received themselves were

4   not confidential in content. *See* Ex. A at 75:8-25. When asked whether he had "received confidential

5   information from Ricoh's counsel," Dr. Thomas gave the somewhat equivocal answer that "I feel that

6   the fact that they were bringing these articles to my attention was confidential." *See* Ex. A at 76:16-23.

7   Dr. Thomas's testimony seems, therefore, to be directed to a different issue than that addressed by Mr.

8   Kelley before Judge Sleet.

9         Ricoh also represents that Mr. Kelley's statement to Judge Sleet is contradicted by his August 5

10  letter to Mr. Hoffman describing defense counsel's one telephone call with Dr. Thomas on July 23.

11  Ricoh alleges that "[f]ive days after making his misrepresentation to the Court, Mr. Kelley admitted

12  that Dr. Thomas had said he did not know whether or not he had received confidential information."

13  Sanc. Mot. at 16:24-26. This characterization relies on highly selective, and misleading, citation from

14  the letter. Here is what the letter actually says:

15       "Mr. Campbell then asked if Dr. Thomas had received anything confidential from Ricoh
16       or its counsel. Dr. Thomas stated that he did not think he had but that he was not entirely
         certain. Mr. Campbell then asked Dr. Thomas to investigate to determine the answer to
17       this question.

    *See* Ex. B (cover letter from Mr. Kelley to Mr. Hoffman, dated Aug. 5). Dr. Thomas made his
18
    investigation and communicated the result the next day by e-mail, identifying the classes of documents
19
    received (patents, published articles and one rough draft of corporate literature). *See* Ex. B at 52.
20
    Ricoh's selective citation in its brief to the sentence about Dr. Thomas's initial uncertainty, without
21
    any reference to his subsequent e-mail resolving that uncertainty, is simply dishonest.
22

23  **V.    RICOH'S ARGUMENT THAT DEFENDANTS ARE IN WILLFUL VIOLATION OF A
         COURT ORDER TO PRODUCE A PRIVILEGE LOG IS MERITLESS.**
24
         Ricoh also contends that Defendants have ignored Judge Sleet's instructions that counsel
25
    produce a privilege log of all internal communications regarding Dr. Thomas. Judge Sleet never
26
    issued such an order. The record shows that Judge Sleet imposed two obligations on the Defendants in
27
    the *Aeroflex* case and counsel. First, the Court issued a written order on July 31 requiring Defendants
28

1   to either produce or describe on a privilege log, all documents relating to communications between

2   Defendants' counsel and Dr. Thomas. *See* Ex. H at ¶ 2.  Defendants produced all such documents

3   and, therefore, did not produce a privilege log. *See* Ex. B (first paragraph of cover letter)

4          At an August 28 discovery hearing, Ricoh argued that the July 31 order extended not only to

5   counsel's communications with Dr. Thomas, but also to counsel's *internal* communications regarding

6   Dr. Thomas.  Defendants' counsel Frank DiGiovanni responded that Ricoh's construction of the July

7   31 order was not correct and Judge Sleet agreed that "Mr. DiGiovanni's reflections do seem to

8   comport with my recollection" of the intended scope of the order. *See* Ex. C at 10:9-11:25, 11:25-

9   12:9.  Nothing in the subsequent deliberations at the August 28 hearing indicates that Judge Sleet ever

10  reconsidered this view.  Furthermore, when Judge Sleet required production *in camera* of defense

11  counsel's internal communications regarding Dr. Thomas, he did not indicate that he was enforcing or

12  implementing the July 31 order and he did not state that Defendants should supply Ricoh with a

13  privilege log covering the documents produced for *in camera* review.  Defendants complied with

14  Judge Sleet's order to produce counsel's internal communications for *in camera* review by producing

15  the documents to Judge Chesney on October 30, 2003.

16         Ricoh states "Judge Sleet rejected the argument … that the July 31 order did not require the

17  preparation of a privilege log." Sanc. Mot. at 17:25-27.  If this was true, of course, Ricoh ought to be

18  able to point to a place in the transcript where Judge Sleet made this rejection.  Instead, Ricoh cites

19  generally to pages 26-32 of the transcript.  Reference to a "privilege log" appears in only one place in

20  that passage – when Ricoh's counsel Mr. Brothers mentions it in passing when he requests that the

21  Court alter the deadline for the two-page letter Ricoh is authorized to file under the July 31 order. *See*

22  Ex. C at 26:21-27:3.  Judge Sleet says that this alteration is acceptable, but there is nothing in this

23  interchange to lead one to the conclusion that Judge Sleet is *sotto voce* ordering Defendants to prepare

24  a privilege log covering their internal communications.  Had anyone attached any significance to Mr.

25  Brother's reference to "privilege log" at this point – which is debatable, since the issue is never

26  discussed again in five full pages of discussion regarding Judge Sleet's order that follow – one would

27  naturally have read it as a reference to the privilege log discussed in the July 31 order.

28

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

-21-

1    Elsewhere, in a portion of the transcript that Ricoh does not cite, Ricoh's counsel Mr. Hoffman

2    asks the Court to construe the July 31 order to require production of a privilege log that included all of

3    the internal communications of defendants' counsel, conceding, it would appear, that there is a

4    question as to whether the July 31 order reaches internal communications.  Mr. Hoffman told the

5    Court:

6        "And we are asking that the Court – the way we believe the order read, we ask that the
         Court require the Howrey & Simon firm and defendants to provide a list of the privileged
7        documents."

8    Ex. C at 22:15-18.  In the next sentence Mr. Hoffman requested that the Court require that Defendants'

9    counsel provide copies of internal communication regarding Dr. Thomas for *in camera* review by the

10   Court.  Judge Sleet conspicuously granted the latter request but said nothing about the former.  *See* Ex.

11   C at 22:7-23:7.

12   Ricoh asks this Court to find Defendants in contempt for their failure to follow Ricoh's

13   construction of the July 31 order.  *See* Sanc. Mot. at 18.  This request is wholly without merit, since

14   Ricoh's argument that Judge Sleet ever ordered preparation of a privilege log extending to defense

15   counsel's internal documents is unsupported by the record.  The only word from Judge Sleet directly

16   addressed to the July 31 order indicates that he agreed with defense counsel's view on its scope and

17   opposed Ricoh's.  *See* Ex. C at 10:9-25, 12:7-9.

18   **VI.    THERE IS NOTHING SANCTIONABLE IN DEFENSE COUNSEL'S REQUEST THAT**
19        **IT BE ALLOWED TO TAKE "ORTHODOX" DISCOVERY OF DR. THOMAS.**

20   Ricoh contends that defense counsel's desire to depose Dr. Thomas as a fact witness regarding

21   his knowledge of prior art logic synthesis systems is a sanctionable "error of judgment."  *See* Sanc.

22   Mot. at 12:19-22, 15:13-20.  Established precedent, however, authorizes defendants to take discovery

23   of facts known to a witness and opinions held by them independently of their consulting work for an

24   opposing party.

25   As explained in the motions noticed on December 2, 2003 by Synopsys and the defendants

26   seeking relief to take Dr. Thomas deposition, Dr. Thomas had direct involvement in the development

27   of extremely important prior art logic synthesis systems.  *See* Thomas Depo. Mot. at 1:15-19; 4:2-4.  It

28   is well established that even if an expert serves as a non-testifying consultant for one side of the

HOWREY
SIMON
ARNOLD &
WHITE    BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ    -22-

1  litigation, the other parties may still have "have 'orthodox' discovery of facts known and opinions held

2  by the expert prior to the time he began to work for the plaintiff on the litigation, but not with respect

3  to information or opinions developed thereafter." *Eliasen v. Hamilton*, 111 F.R.D. 396, 402 (N.D. Ill.

4  1986). *See also Atari Corp*, 161 F.R.D. at 422. Since Synopsys is allowed under law to take Dr.

5  Thomas's testimony on the question of the character of prior art systems, the fact that it is standing on

6  its right to do so cannot be an "error of judgment" or the basis for sanction.

7         Contrary to what Ricoh contends (see Sanc. Mot. at 15:18-20), Defendants have already

8  indicated that they have no intention to question Dr. Thomas on the substance of his work for Ricoh.

9  *See* Thomas Depo. Mot. at 9:21-10:8. Ricoh argues that obtaining Dr. Thomas's testimony regarding

10  the character of prior art systems necessarily encroaches on the work that Ricoh did for Dr. Thomas.

11  *See* Sanc. Mot. at 22:3-13. Ricoh ignores the fact that Dr. Thomas has a long history of work in this

12  area, and testified that the questions that Ricoh asked him were in the same areas and of the same sort

13  that addressed regularly in his professional career. *See* Ex. A at 35:2-8 ("I taught them certain things

14  as if they had come to a classroom and I taught them something. ... If somebody else asked me those

15  same questions, as people have done over the years and people will over other years, I would feel free

16  to answer those questions."). Having paid Dr. Thomas to explain his understanding of the prior art,

17  Ricoh did not thereby lockup access to information and opinions that Dr. Thomas had formed

18  independently of his retention by Ricoh.

19         Ricoh's brief also suggests that Dr. Thomas's testimony on factual issues should be suppressed

20  as a sanction. *See* Sanc. Mot. at 19-22. Ricoh cites a number of cases that address the question of

21  whether an individual should be disqualified from serving as an expert on behalf of one party if he has

22  a conflict of interest. No case cited by Ricoh stands for the proposition that an individual disqualified

23  from serving as an expert is barred from giving testimony on matters of which they have independent

24  knowledge that predates the prior retention that creates the conflict of interest. In fact, in *Wang* the

25  district court disqualified an individual from serving as an expert on the basis of a conflict of interest,

26  but held that he could be deposed on matters of which he had independent, pre-existing knowledge.

27  *See Wang*, 124 F.R.D. at 13-14.

28

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ

-23-

1  **VII.   RICOH'S FEE REQUEST IS UNJUSTIFIED AND SHOULD BE DENIED.**

2         Last, Ricoh's request for an award for fees and costs related to this issue is legally unjustified

3  and should be denied.  Since Synopsys was justified in its course of action regarding Dr. Thomas, an

4  award of costs is unjustified.  Since counsel was justified in its actions with respect to Dr. Thomas,

5  Ricoh is not entitled to fees or costs it has incurred.  In fact, Ricoh's request fees and costs in seeking

6  to prevent Synopsys from obtaining relevant discovery is perverse and should be rejected.

7         For a proposed consultant or expert to be disqualified by his prior work, the party seeking

8  disqualification must establish that: (1) the party reasonably assumed a confidential relationship had

9  existed between the expert and the party, and (2) "confidential attorney-client information" was

10  exchanged.  *See Complex Asbestos Litigation*, 283 Cal. Rptr. at 746-47.  *See also Strasbourger*

11  *Pearson*, 82 Cal. Rptr. 2d at 333 (confidential information must be in the nature of "attorney-client"

12  confidences to justify disqualification).  Given Dr. Thomas's representation that he had ceased

13  consulting for Ricoh about a year previously (see Ex. B at 26), and that his work for them had been "to

14  help them read through and understand various papers of the time," (see Ex. B at 7), it was not

15  frivolous for defense counsel to question whether the second element required for disqualification of

16  an expert, that he had received "confidential attorney-client information," was present.  Ricoh's

17  expenses in addressing that question, up until the time at which Synopsys abandoned its efforts to

18  consult Dr. Thomas, were not the result of unreasonable "multiplication" of the proceedings, as Ricoh

19  argues.  *See* Sanc. Mot. at 22:21 – 23:3.  Likewise, Synopsys' counsel did not exhibit "reckless

20  conduct" in the manner in which they raised the question.  In providing immediate notification to

21  Ricoh of their desire to consult with Dr. Thomas, they followed the procedure endorsed in *Wang* and

22  *Shadow Traffic*.

23         Furthermore, the sanction that Ricoh proposes is grossly excessive in scope because the great

24  bulk of the fees that Ricoh seeks to recover were expended after Synopsys and the *Aeroflex* defendants

25  had already agreed to abandon their plan to consult with Dr. Thomas.  None of the efforts undertaken

26  by Ricoh after this point have yielded anything that provides further relief to Ricoh or further advances

27  the issues in this case. Ricoh's second petition to Judge Sleet, to seek in camera review of the internal

28  communications of defense counsel regarding Dr. Thomas – based on unsubstantiated dark theories of

HOWREY
SIMON
ARNOLD &
WHITE    BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ    -24-

1    "fraud on the court" (see Ex. C at 28:15-29:16) – has produced nothing of value. The fees associated

2    with the preparation of the present motion are included in the fees that Ricoh now seeks to impose as

3    sanctions. *See* Decl. of Ken Brothers, at ¶39. This motion requests substantive relief in the form of

4    disqualification of defense counsel and an absolute bar on any discovery from Dr. Thomas, as well as

5    the imposition of monetary sanctions. Because the requests for substantive relief lack any foundation

6    in law or fact and cannot, therefore, be granted, there is no basis for awarding Ricoh fees expended on

7    bringing this meritless motion. *See Navellier*, 262 F.3d at 947; *Lewis*, 87 F.3d at 1558-59.

8                                    **CONCLUSION**

9              For the reasons stated above, Ricoh's motion should be denied.

10   Dated: December 16, 2003              Respectfully submitted,

11                                          HOWREY SIMON ARNOLD & WHITE, LLP

12

13                                          By:  /s/ Christopher L. Kelley

14                                               Christopher L. Kelley

15                                          Attorneys for Plaintiff SYNOPSYS,
                                            INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

BRIEF IN OPPOSITION TO RICOH'S MOTION FOR
SANCTIONS
Case No. C03-02289MJJ                           -25-