Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>                Plaintiff,<br><br>        vs.<br><br>RICOH COMPANY, LTD.,<br><br>                Defendant. | **CASE NO. C-03-2289-MJJ**<br><br>**RICOH'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PROTECTIVE ORDER AND SUPPORTING BRIEF**<br><br>**Date:  February 10, 2004**<br>**Time:  9:30 a.m.**<br>**Courtroom:  11** |

**NOTICE OF MOTION AND RELIEF REQUESTED**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 10, 2004, at 9:30 a.m. in Courtroom 11 of the above-referenced Court defendant Ricoh Company, Ltd. ("Ricoh"), will and hereby does move the Court for approval of a Protective Order in this case.  This motion has become necessary because of the inability of the parties to reach an agreement regarding one aspect of the protective order regarding the safeguarding of software source code.  Ricoh proposes that the party receiving confidential source code shall safeguard and maintain the confidentiality of the code.

Ricoh bases this motion upon the following Memorandum of Points and Authorities, all pleadings on file in these cases, and such argument as may be heard by this Court.  A proposed protective order is filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

A protective order is appropriate in this case and the parties have agreed on all provisions except for a sub-aspect of one provision.  Despite repeated communications, both in writing and during several meet and confers, the parties have not been able to reach an agreement on where any software source code that is provided during discovery in the instant case shall be maintained.  Synopsys has proposed, and Ricoh has agreed, to have the source code maintained at designated secure facilities.  In the case of Ricoh being receiving party, Ricoh has proposed that the secure facility would be a non-networked computer in a locked room within the law offices of counsel for Ricoh but Synopsys insists that it be a Synopsys facility.

This motion concerns only the last sentence in paragraph 23 of the proposed protective order.

**BACKGROUND FACTS**

The present Declaratory Judgment action is related to a patent infringement action (the "Delaware case") filed by Ricoh against a group of ASIC defendants in Delaware (which has been subsequently transferred to this Court and is pending as docket number C03-4669 MJJ).  Not only is the

1  subject matter of the instant case closely related to the subject matter of the Delaware case, but also the
2  controlling parties and counsel are related.  The Howrey Simon firm represents Synopsys in the present
3  case.  In the Delaware case, Howrey Simon also represents the ASIC defendants under the authority and
4  control of Synopsys.  Ricoh and its counsel are the same in both cases. In the Delaware case, Synopsys'
5  counsel came to an agreement with counsel for Ricoh and jointly submitted a stipulated Protective
6  Order.  The Stipulated Protective Order was entered by the Delaware Court before the Delaware case
7  was transferred to this Court, (Protective Order, Ex. 1) and still governs the related case in this Court.
8  In December 2003, this Court deferred consolidation of the two cases for the present.
9         Because the two actions were so closely related, Ricoh suggested that the protective order in
10 this case should be the same as that in the Delaware case and indicated that it would consider any
11 additional provisions that Synopsys wanted to propose. (DSMO letter 11/3/03, Ex. 2).  In response,
12 Synopsys proposed a protective order for this case which was based on the protective order from the
13 Delaware case with an additional provision for source code.  (Howrey letter 11/7/03, Ex. 3).  Ricoh
14 agreed to the proposal for a secure facility but proposed a different definition of such a facility (DSMO
15 letter 11/20/03, Ex. 4)
16         The parties have come to a meeting of the minds on the provisions in a protective order to be
17 used in the case.   The only unresolved issue is the definition of a secure facility to be used for secure
18 storage yet permit the unfettered and unobserved examination and testing of alleged infringing software
19 and any other source code.
20         Under Ricoh's proposal, Synopsys would provide and Ricoh would maintain Synopsys'
21 source code in a secure facility.  Ricoh has proposed a secure facility as a location within the confines of
22 the Washington, DC office of Dickstein Shapiro Morin & Oshinsky, LLP, Ricoh's attorneys of record.
23 Ricoh's proposed facility would comprise a non-networked computer in a locked room within the law
24 office. (DSMO letter 11/20/03, Ex. 4).  The law firm would control access to the room and access to the
25 source code.   This approach allows Ricoh's counsel and experts unfettered and unobserved access to the
26 software while still safeguarding and maintaining the confidentiality of the source code.
27
28

1  Under Synopsys' proposal, Synopsys would make available and maintain Synopsys source
2  code in a secure facility defined as Synopsys's SURF, a Synopsys secure facility that is under the
3  authority and control of Synopsys in Mountainview, California, and another Synopsys secure facility in
4  Bethesda, Maryland. (Howrey letter 12/7/03, Ex. 5). Each facility is monitored and under the auspices
5  of Synopsys. (For a description of SURF see Howrey letter 11/13/03, Ex. 6 and print outs of websites
6  describing SURF, Ex. 7). If Ricoh desired a hard copy of any portions of the Synopsys source code,
7  Synopsys' proposal requires Ricoh to identify those portions to Synopsys which would then make a
8  copy.

## ARGUMENT

## ADOPTION OF RICOH'S PROVISION REGARDING THE PROTECTION OF SOURCE CODE IS WARRANTED.

The Patent Local Rules for the Northern District of California require that source code be provided as part of the document production. Thus, a party opposing a claim of patent infringement must produce or make available for inspection or copying "With the 'Preliminary Invalidity Contentions,": (a) source code, specifications, schematics, flow charts…to show the operation of any aspects or elements of an Accused instrumentality." (Patent Local Rule 3-4(a)).

The Northern District of California website provides a sample stipulated protective order. Although provided by a Court that also has special rules for patent suits and explicit reference to the production of source code, the sample protective order does not specify additional, specific requirements for the protection of source code. (Stipulated protective order form, Ex. 8). This Court thus does not normally require any specific manner of maintaining source code confidential.

In the original Delaware case, Synopsys had the attorneys who represent Synopsys in the present action represent the ASIC defendants, and they came to an agreement with Ricoh about the provisions of a Protective Order, which was jointly submitted and approved by the Court. (Protective Order, Ex. 1). This occurred long after Synopsys announced that it had filed the present action. (*Ricoh v. Aeroflex et al.* transcript of Case Management Conference 5/16/03, Ex. 9). As the Delaware case

involved many of the same issues as the present suit, Synopsys knew, or should have known, that it would be expected to provide source code of any alleged infringing software as part of discovery. Synopsys did not raise nor suggest that any special protection for Synopsys source code was required or important.[1]

Ricoh believed that no additional verbiage to the Delaware protective order already in place in the related case was necessary to safeguard source code. The Protective Order protects confidential documents. Although it does not specifically refer to different types of confidential documents, i.e., source code, the Protective Order does provide guidelines for the protection of all confidential material. However, in an effort to accommodate Synopsys' concerns, Ricoh has made its best efforts to reach an agreement with respect to this provision and has agreed to maintain the source code in a secure facility.

The only difference between the proposals from the parties relates to definition of the secure facility. Ricoh recognizes that the local rules require that source code be produced as part of discovery. Therefore, Ricoh defines a secure facility in terms of how the party receiving any confidential source code will safeguard the code. To the contrary, Synopsys defines a secure facility in terms of how the party "producing" any confidential source code will safeguard the code.

Ricoh's proposed definition requires the receiving party receiving to maintain and safeguard the source code. This proposal allows the party receiving the source code to view, inspect, and examine the code without undue limitations on access or concerns that their actions can be monitored.

If the producing party maintains the source code and only permits visitations to view, inspect and examine the code, as suggested by Synopsys, then the receiving party does not have unfettered and unmonitored access to the code. Offering to allow unlimited access to Synopsys' SURF facility, maintained by Synopsys employees, which because it is simultaneously being used by Synopsys for other purposes, will require Ricoh's attorneys to "sign in", is not full and unhindered access. Additionally, if the producing party maintains control over the access to the source code, then the

---

[1] Assuming *arguendo* that Synopsys did not contemplate the production of source code being required under the rules of discovery in the District court of Delaware, the ASIC defendants at Synopsys' direction filed a motion to transfer the Delaware case to the present jurisdiction – whose rules Synopsys must have been familiar with and which required production of the source code.

producing party can potentially pierce the work product privilege by monitoring who, what, where, when, and how the source code is accessed.

As a result of using the SURF facility or any other similar facility owned, controlled, or authorized by Synopsys, those permitted access to protected information on behalf of Ricoh will not have transparent access to the source code.[2]  If the source code is only available in a facility secured by Synopsys, Synopsys will always know when the code is being examined and also will have the ability to monitor what examination is being conducted.  Synopsys will have knowledge of specific persons on behalf of Ricoh that are entering and leaving the SURF facility.[3]   Synopsys will also be able to know how much time such persons spent at the SURF facility.  Because Synopsys insists on control of the production of printouts, Synopsys necessarily will be monitoring the work Ricoh does.

Further, as the machines at the SURF facility may be networked, Synopsys will be able to determine which parts of the source code Ricoh views.  With the networked system, Synopsys can watch as Ricoh works - Synopsys will be able to see what Ricoh sees.  Even if the computer in a Synopsys' secure facility is not networked, its computer systems may have audit trails, which reflect actions taken by a computer user and under Synopsys' proposal, the computer with the audit trail will always be available to Synopsys employees.  Therefore, Synopsys may be able to reconstruct the work done by Ricoh and obtain information that should be protected by the work product privilege.  If Ricoh wants to examine portions of the source code in more detail, it would have to ask Synopsys to make a hard copy of such portions, and such a request by its very nature, reveals privileged attorney work product to the opposing party.  Moreover, Synopsys' facilities are operated by and under the control of its employees, who are not officers of the Court, and Ricoh should not be subject to the possibility of monitoring by such employees even assuming they were instructed not to do so by Synopsys' counsel.

---

[2] The Synopsys facility in Bethesda, Maryland is only available during normal business hours.  Although the Mountainview, California facility may be available 24/7, it is still located on the opposite side of the continent from the offices of Ricoh's counsel.

[3] Each visitor is required to get a photo ID and access codes.  Access to a room within the SURF secure facility is done with identifiable smart cards and key pads.  Each person must be listed with Synopsys in order to gain entry to the facility.  Therefore, Synopsys can track each visitor.

Under Ricoh's proposal, Synopsys gets more protection than provided by the prototype protective order promulgated by this Court. The Synopsys' source code would be on a single, stand alone (non-networked) computer in a locked room located in the offices of Ricoh's counsel and access to the room would be under the control of a Ricoh attorney. Thus, Synopsys' source code would be under the control of an officer of this Court at all times. The Ricoh proposal also ensures the protection of Ricoh's privileged attorney work product.

## CONCLUSION

Wherefore, Ricoh respectfully requests that this Court adopt its proposed protective order, which incorporates Ricoh's provision for the protection of source code and designates that the receiving party maintain receives source code and maintains responsibility for confidentiality of the source code received.

Dated: January 6, 2004

Respectfully submitted,

Ricoh Company, Ltd.

By: __/s/_ Ken Brothers_____

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM,
 RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Gary M. Hoffman
Ken Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN *&*
 OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY  LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Attorneys for Ricoh Company, Ltd.