1   Teresa M. Corbin (SBN 132360)
    Christopher Kelley (SBN 166608)
2   Thomas C. Mavrakakis (SBN 177927)
    Erik K. Moller (SBN 147674)
3   HOWREY SIMON ARNOLD & WHITE, LLP
    301 Ravenswood Avenue
4   Menlo Park, California  94025
    Telephone:  (650) 463-8100
5   Facsimile:  (650) 463-8400

6   Attorneys for Plaintiff SYNOPSYS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  SYNOPSYS, INC.,                    )  Case No. C03-02289 MJJ
                                       )
13              Plaintiff,             )  **SYNOPSYS' OPPOSITION TO RICOH'S**
                                       )  **MOTION FOR ENTRY OF PROTECTIVE**
14         vs.                         )  **ORDER AND CROSS-MOTION FOR**
                                       )  **ADOPTION OF SYNOPSYS' PROTECTIVE**
15  RICOH COMPANY, LTD.,               )  **ORDER AND DISCOVERY PROCEDURES**
                                       )
16              Defendant.             )  Date:       February 10, 2004
                                       )  Time:       9:30 a.m.
17  _____  )  Courtroom:  11

18

19

20

21

22

23

24

25

26

27

28

---

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-02289 MJJ
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

1    I.    **INTRODUCTION**

2         The parties to this dispute have both proposed alternative arrangements under which the source

3    code for Synopsys' Design Compiler™ product would be available to Ricoh's counsel.  Ricoh

4    proposes that Synopsys be compelled to turn over the entirety of its source code in electronic form, and

5    Ricoh will commit to keep this source code in a locked room at its counsel's office.  Synopsys is

6    extremely concerned about such an arrangement because it would expose a complete copy of its source

7    code in an environment with security protections that are significantly lower than those that Synopsys

8    imposes at its own facilities.  As a compromise, Synopsys has proposed that it make a complete

9    electronic copy of its code available for Ricoh's review on a non-networked computer in a closed

10   office reserved for the use of Ricoh's counsel at one of Synopsys' facilities.  Ricoh's counsel would be

11   able to use this machine to identify those portions of the source code that it believed were relevant to

12   its infringement analysis.  Paper copies of those sections of code would then be produced to Ricoh's

13   counsel.  Synopsys' compromise provides Synopsys with the assurance that the entirety of its source

14   code will never leave the perimeter of a Synopsys facility.  At the same time, the compromise allows

15   Ricoh's counsel to work with the relevant portions of the source code from the convenience of their

16   office.

17        Synopsys vigorously opposes Ricoh's code discovery proposal because it would require

18   Synopsys to surrender control over a complete copy of the source code for its most important product

19   to Ricoh, an adverse party.   As described in the accompanying declaration of Mr. Van Nguyen,

20   Synopsys employees go to great effort and Synopsys spends significant sums of money to ensure that

21   complete copies of its source code do not leave the tightly controlled environment of its computer

22   network.  The reason for this is simple:  Synopsys' business is built entirely on the trade secrets

23   contained in its software.  As described in the accompanying declaration of Mr. Gal Hasson, if the

24   source code, and the algorithms that it contains, found their way into the public domain or into the

25   hands of Synopsys' competitors, the resultant damage to Synopsys' business would be incalculable.

26   *See* Declaration of Gal Hasson at ¶ 5 ("Hasson Decl.").  For this reason, Synopsys has not previously

27   allowed complete copies of its source code to leave the confines of its computer network or the

28   physical premises of its facilities.  *See* Declaration of Van Nguyen at ¶ 2 ("Nguyen Decl.").  Under

Synopsys' compromise proposal, the risk to Synopsys is greatly reduced, since only specific portions of the code will leave the confines of Synopsys. At the same time, Ricoh's counsel is afforded unhindered access to the subset of the code that Ricoh hopes will be relevant to their infringement allegations.

Ricoh identifies two rationales for opposing Synopsys' proposed compromise, but neither rationale has any real substance that would weigh against Synopsys' interest in preserving the integrity of its most important trade secrets. The first "injury" identified by Ricoh is trivial: because Synopsys will provide copies of the relevant sections of code identified by Ricoh, Synopsys will know what sections of code Ricoh believes are relevant to its infringement analysis. This is no injury at all. Since Ricoh is required under the Local Patent Rules to identify "specifically where each element of each asserted claim is found within each Accused Instrumentality," N.D. Cal. Patent Rule 3-1(c), it would be improper for Ricoh to attempt to conceal this information. *See also* N.D. Cal. Patent Rule 3-6. The second "injury" identified by Ricoh is fantastic, verging on the paranoid. Ricoh proposes that Synopsys will secretly network the computer that it provides to Ricoh and monitor the keystrokes made by Ricoh's counsel so as to gain some insight into their thought process. *See* Motion for Approval of Protective Order at 5:12-13 ("Motion")("With the networked system, Synopsys can watch as Ricoh works – Synopsys will be able to see what Ricoh sees.") Alternatively, Ricoh alleges, Synopsys will capture this "keystroke information" after Ricoh is finished using the computer. *See id.* at 5:13-17 (using an "audit trail … Synopsys may be able to reconstruct the work done by Ricoh and obtain information that should be protected by the work product privilege.").

The conditions imposed on production of Synopsys' source code should be based on a realistic assessment of risks, not flights of fancy. Synopsys' is proposing providing Ricoh access to its code in Synopsys' Secure User Research Facility (SURF). *See* Exhibit A to Declaration of Erik K. Moller in Support of Opposition to Motion to for Approval of Protective Order and Cross-Motion for Adoption of Synopsys' Protective Order ("Moller Decl.")[1]. The SURF facility was designed expressly for the

---

[1] All exhibits are attached to the Moller Decl. unless otherwise indicated.

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-02289 MJJ                                        -2-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

1  purpose of providing a secure working environment in which Synopsys' business competitors and even

2  potential legal adversaries such as the Internal Revenue Service can conduct their own private and

3  unsupervised review of Synopsys' confidential materials.  The SURF is designed specifically to

4  address Ricoh's concerns: the computers are not networked and each user has a physically secure

5  portion of the SURF facility.  *See* Exhibits A and C.  If Synopsys' competitors and the IRS regard

6  SURF as sufficiently secure to use – and they do – there is no reason to suppose the SURF facility is

7  not adequate for Ricoh.  Ricoh's technical concerns regarding keyboard "audit trails" can be addressed

8  by technical solutions.

9    Ricoh's discovery proposal, on the other hand, requires Synopsys to rely on the physical

10  protection of a locked door in a building over which Synopsys has no control.  Synopsys has never

11  previously regarded a door lock as sufficient to protect its source code and Ricoh's brief offers no

12  compelling reason why it should be forced to do so now.  Synopsys, therefore, requests that the Court

13  deny Ricoh's proposed protective order terms and adopt the procedures and protective order proposed

14  by Synopsys.

15  II.  **FACTS**

16    Ricoh has alleged that certain uses of Synopsys' Design Compiler™ software infringe Ricoh's

17  U.S. patent number 4,922,432 (the "'432 patent").  Design Compiler is one of the earliest products

18  developed by Synopsys and remains one of its most important products.  *See* Hasson Decl. at ¶¶ 3-4.

19  Design Compiler is part of a class of tools known as logic synthesis software.  Logic synthesis

20  software translates a more abstract, or higher level, register transfer level ("RTL") description of a

21  semiconductor circuit, into a detailed "netlist" that describes, using circuit cells from a library of cells

22  provided by a semiconductor foundry, how to build the circuit described at the higher level.  *See id*.

23  Design Compiler is the preeminent logic synthesis offered on the market today.  *See id*.  It is the

24  principal contributor to revenues from Synopsys' "Design Implementation" line of products, which

25  accounts for between 40 and 50 percent of Synopsys' total revenues.  *See id.* at ¶ 5.

26    Design Compiler has achieved widespread commercial adoption because of the high quality of

27  the transformations from RTL to final netlist that Design Compiler is able to produce.  *See id.* at ¶ 4.

28  This ability to do high quality transformations is a result of the proprietary algorithms that Synopsys

**HOWREY
SIMON
ARNOLD &
WHITE**

Case No. C03-02289 MJJ                    -3-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

1   has developed and improved over the approximately fifteen-year period that Synopsys has been

2   designing and improving the Design Compiler software.  *See id.*  Synopsys regards the algorithms used

3   in Design Compiler, and the source code for this product, as trade secrets and goes to considerable

4   effort to secure these trade secrets against disclosure.  *See* Nguyen Decl. at ¶¶ 2-6.  As a policy,

5   Synopsys aims to confine the source code for Design Compiler within its secure computer network,

6   and the confines of its physical plant.  *See id.* at ¶ 2.  In order to achieve this goal, Synopsys has

7   implemented a computer network with multiple layers of protection against unauthorized access to the

8   servers on which the source code reside.  *See id.* at ¶¶ 3-6.

9        Synopsys' desire to minimize the risk of unauthorized disclosure of its trade secrets prompted it

10   to construct the Secure User Research Facility (SURF) at its headquarters in Mountain View.  At

11   SURF, third parties are provided with a temporary right of exclusive access to individual rooms within

12   the confines of Synopsys' facility.  *See* Exhibit A.  At the SURF facility, Synopsys can give authorized

13   persons access to Synopsys' confidential or trade secret information in private facilities for review, but

14   assures Synopsys that its trade secrets will not leave the confines of Synopsys' facilities.

15        Synopsys originally proposed to give Ricoh access to the source code for its Design Compiler

16   product at its SURF facility. *See* Exhibit B.  Under this proposal, Synopsys would provide Ricoh with

17   a SURF room containing a non-networked computer with a complete copy of the Design Compiler

18   source code.  Ricoh would be permitted to identify those portions of the source code that it deemed

19   relevant to its infringement allegations and Synopsys would then produce hard copies of those code

20   elements.  The hard copy code would be marked as requiring the highest level of protection under the

21   protective order, but Ricoh would be able to use it as it would any other highly confidential document

22   produced by Synopsys.

23        Ricoh objected to the SURF proposal because the facility was located in California, at some

24   distance from the offices of Ricoh's counsel in Washington, D.C.  Wishing to accommodate Ricoh,

25   Synopsys then proposed to make a SURF-like room available at a Synopsys facility in Bethesda,

26   Maryland.  *See* Exhibit C.  Ricoh has rejected this proposal as well.

27

28

**HOWREY
SIMON
ARNOLD &
WHITE**

Case No. C03-02289 MJJ                       -4-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

III.    **ARGUMENT**

A.    **The Court Has Authority to Issue Appropriate Protective Orders**

The Federal Rules authorize the Court to craft discovery procedures and orders to prevent disclosure of trade secrets and other confidential research, development or commercial information or to control the manner in which such material is revealed.  Fed. R. Civ. P. 26(c)(7).  If a party seeking protection from the Court can establish that the information that it is being asked to produce is a trade secret, the burden then shifts to the party seeking discovery to demonstrate that the information is relevant to its claims or defenses and that discovery is necessary.  *See In Re Remington Arms Company, Inc.*, 952 F.2d 1029, 1033 (8th Cir. 1991); W. SCHWARZER, A. TASHIMA & J. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL at §§11:1110, et seq.  If each party can make its showing, the court must balance the competing interests in determining what production will be required and what conditions will be imposed on that production.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Broad discretion is given to the district courts to decide what degree of protection is required. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Phillips v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002).  The *Remington Arms* decision identifies several requirements that a district court may impose to protect trade secrets, including limiting reproduction of the protected information, limiting the individuals who may have access to the protected information, and requiring the party seeking disclosure to post a bond against disclosure.  *See Remington Arms*, 952 F.2d at 1033. Other decisions impose restrictions on the manner in which trade secrets are made available for production in order to minimize the risk of unauthorized disclosure.  *See Hartman v. Remington Arms Co., Inc.*, 143 F.R.D. 673, 690-691 (W.D. Mo. 1992) (documents maintained at producing party's counsel's offices); *Dynamic Microprocessor Assoc. v. EKD Computer Sales*, 919 F.Supp. 101, 106 (E.D.N.Y. 1996) (prohibiting reproduction of source code); *Adobe Systems v. Macromedia*, 2001 U.S. Dist. LEXIS 18630, at *2 (source code must be produced in paper, rather than electronic, format).

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-02289 MJJ                              -5-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

## B. **Ricoh's Proposed Protective Order Does Not Adequately Protect Synopsys' Trade Secrets.**

Ricoh's proposed protective order requires Synopsys to accept a much lower level of protection for its source code than Synopsys has ever previously tolerated. At its own facilities, Synopsys protects its code with multiple levels of security. *See* Nguyen Decl. at ¶¶ 3-6. Ricoh proposes nothing more sophisticated than a door lock to protect Synopsys' source code. Furthermore, Ricoh provides no substantive justification for why Ricoh's counsel requires a complete copy of Synopsys' source code at its own facilities and why, therefore, Synopsys should be forced to bear any risk of malicious disclosure of its code. Synopsys has demonstrated the importance of its source code trade secrets by the extensive steps that it has taken over the past years to protect this code. *See Ruckelshaus v. Monsanto*, 467 U.S. 986, 1002 (1984) (the scope of a trade secret is defined by the extent to which the owner protects the secret from disclosure to others). The protective order for this case must, therefore, safeguard Synopsys' property interest in its trade secrets. *See Remington Arms*, 952 F.2d at 1033.

The fact that Ricoh's counsel may be "officers of the court," see Motion at 6:4-5, does not confer any guarantee that Synopsys' code will be secure in their office building. Many other people pass through the offices of Ricoh's counsel and have access to the building at 2101 L Street in Washington D.C. which Ricoh's counsel shares with other businesses, and most of these people are not directly subject to the jurisdiction of this Court. Synopsys is legitimately concerned about relying on a third-party building security force, over which Synopsys has no control or authority, to protect Synopsys' trade secrets. Synopsys is also reluctant to entrust the continued commercial viability of its Design Compiler™ product so completely and wholly in the hands of people who sued its customers on a patent that Synopsys believes has no legitimate application to its products. While the risks of either a break-in or unauthorized copying by personnel working for Ricoh's counsel are difficult to quantify, the commercial injury to Synopsys were this to occur would be devastating. For this reason, Synopsys would never allow a complete copy of its source code to be protected solely by a door lock – even at its own facility. *See* Nguyen Decl. at ¶¶ 2-6. Ricoh's discovery proposal, therefore, imposes unprecedented, and unjustifiable risks.

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-02289 MJJ                    -6-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

1   The risk to Synopsys is significantly mitigated if the sections of Design Compiler source code

2   that leave the confines of Synopsys' facilities are only those portions that are relevant to Ricoh's

3   infringement allegations.  In addition the risk is somewhat mitigated by production of the relevant

4   sections of code on paper, rather than in electronic format.  *See Adobe Systems*, 2001 U.S. Dist. LEXIS

5   18630, at *2-*3.[2]  Ricoh bears the burden of demonstrating that the protections that Synopsys seeks are

6   outweighed by some discovery necessity.  *See DirecTV, Inc. v. Trone*, 209 F.R.D. 455, 459-460 (C. D.

7   Cal. 2002) (disclosure of trade secrets "will be required only when such disclosure is relevant and

8   necessary to the prosecution or defense of a particular case" and the "burden rests upon the party

9   seeking disclosure" to establish the need).  Ricoh, however, has no need for access, outside the

10  perimeter of a Synopsys facility, to those sections of the Design Compiler code that are irrelevant to its

11  infringement allegations.  There is, therefore, no countervailing interest weighing against Synopsys'

12  need to protect its trade secrets, and Ricoh has failed to justify its opposition to the compromise

13  discovery provisions proposed by Synopsys.

14      **C.      Ricoh's Proposed Protective Order Does Not Adequately Protect Synopsys' Trade
                  Secrets.**

15

16      The compromise proposed by Synopsys allows Ricoh the unfettered access that it seeks to the

17  relevant portions of the Design Compiler™ source code and requires only that Ricoh make the "first

18  cut" selection between those sections of code that it regards as relevant and those that it regards as

19  irrelevant within the secure perimeter of a Synopsys facility.  This compromise reflects an appropriate

20  balance of the interests of the parties – giving Ricoh broad access to what it needs and protecting

21  Synopsys by limiting the quantity of source code that will be removed from the confines of Synopsys'

22  facilities.  *See Brown Bag*, 960 F.2d at 1470 (protective order disputes are to be resolved with a

23  balancing of the interests of the parties); *Oregon Health & Sci. Univ. v. Vertex Pharms., Inc.*, 2002

24  U.S. Dist. Lexis 23299, at *7 (D. Or. 2002) ("The Ninth Circuit employs a balancing test to determine

25

26  ---
    [2]   With the advent of bulk scanning and optical character recognition, it is not impossible to convert
27  paper copies of the source code back into an electronic format.  It is, however, significantly easier to
    make copies of an electronic source quickly and without detection than it is to make copies of a paper
28  original.

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-02289 MJJ                        -7-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

1    what special measures should be taken, weighing the risk of disclosure to competitors against the risk

2    that a protective order will impair prosecution or defense of claims.").

3         It is appropriate to impose more restrictive discovery terms on materials that have little or no

4    relevance to the matter in dispute.  In *Upjohn Co. v. Hygieia Biological Lab.*, 151 F.R.D. 355 (E.D. Ca.

5    1993), the district court balanced the discovery needs of the plaintiff with the defendant's need to

6    protect its trade secrets by narrowing the scope of the requested discovery to include only those

7    materials most directly relevant to the plaintiff's allegations.  *See id.* at 360-361.  The Synopsys

8    proposal is even less restrictive since it allows Ricoh to make the assessment as to what types of

9    documents it believes are most relevant to its cause.

10        Ricoh alleges that it will be harmed because, under Synopsys' proposal, Synopsys will know

11   what sections of the Design Compiler code Ricoh has identified for production in hardcopy.  *See*

12   Motion at 5:17-20.  Ricoh's desire to conceal the basis of its infringement allegations is not only

13   unseemly, but is incompatible with the Northern District's Local Patent Rules, which oblige Ricoh to

14   spell out its infringement allegations in detail.  *See* Patent L.R. 3-1(c) and 3-6.  Ricoh suffers no

15   "injury" in being forced to disclose which code sections it believes are relevant to its infringement

16   allegations.

17        Under traditional discovery practice without the procedures proposed by Synopsys, Ricoh

18   could not expect to make a secret of the identity of the relevant code sections.  In ordinary practice,

19   Synopsys would select, and produce, copies of the code sections that it believed were relevant and

20   would seek a protective order against any request for production of source code sections not relevant to

21   Ricoh's infringement allegations.  Ricoh would be worse off under this arrangement, since it would be

22   forced either to accept Synopsys' determination as to which code sections were relevant, or to bring a

23   motion to the Court and ask the Court to determine what was relevant and what was not.  In any event,

24   Synopsys would still know under this scheme what sections of code Ricoh had available for its review.

25        Ricoh also alleges that it will be injured by Synopsys' compromise because Ricoh's counsel

26   (and any outside consultants) will be forced to sign in when they enter Synopsys' facility to make the

27   "first cut" division between relevant and irrelevant code.  *See* Motion at 4:21-5:2.  Ricoh does not

28   explain how it will be harmed if Synopsys knows who was present for Ricoh when this separation of

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-02289 MJJ                    -8-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

1    code was made. There is, therefore, no reason to credit this as a legitimate objection to Synopsys'

2    proposal. If, however, Ricoh could articulate some rational reason to believe that this information

3    should be protected, the parties could negotiate some procedural mechanism to address this issue.

4         Ricoh's final objection to Synopsys compromise proposal is based on the fantastic speculation

5    that Synopsys will spy on Ricoh's counsel when they are working at Synopsys' facility. *See* Motion at

6    5:6-16. The SURF facility has previously been used by organizations having an adverse relationship

7    with Synopsys, including Synopsys' competitors and the IRS, and there is absolutely no basis for

8    Ricoh's suggestion that Synopsys personnel would or could engage in misconduct targeted at SURF

9    users. Nevertheless, if Ricoh was truly concerned about the possibility of spying, its concerns could be

10   addressed by suitable protocols governing treatment of the computer provided to Ricoh.[3]

11        D.    **The Content of the Protective Order in the *Ricoh v. Aeroflex* Litigation Is**
             **Irrelevant.**

12

13        On pages 3 and 4 of its motion, Ricoh argues, in effect, that Synopsys ought to be bound by the

14   protective order entered in the *Ricoh v. Aeroflex* case. This contention is extraordinary not only

15   because Synopsys was not a party to the *Ricoh v. Aeroflex* case, but also because Ricoh, which was a

16   party, is asking the Court in its motion to adopt an amended version of that order for use in this case.

17   *See* Motion at 2:9-19. Ricoh provides no explanation as to why it may propose amendments to the

18   *Ricoh v. Aeroflex* order, but Synopsys may not.

19        Furthermore, Ricoh's assertion that "Synopsys knew, or should have known, that it would be

20   expected to provide source code" in the *Ricoh v. Aeroflex* case, is a statement not of fact, but of

21   Ricoh's unfulfilled wishes. In reality, Synopsys fought very hard to avoid producing source code in

22   the *Ricoh v. Aeroflex* case, arguing that any dispute about alleged infringement of Ricoh's patent by

23   Synopsys' Design Compiler™ product should be resolved in the present litigation. *See* Exhibits D and

24   E. Synopsys, not Ricoh, won that argument. Synopsys, therefore, had every right to expect that any

25

26   _____

[3]   Possible counter-measures that might be deployed to address this "threat" could include
27   mechanical means such as a safe to secure the hard disk when Ricoh was not present in the room.
     When Ricoh completed its use of the computer the disk could be erased, in the presence of Ricoh's
28   counsel if need be, to remove all record of their use of the machine.

Case No. C03-02289 MJJ                                    -9-
OPPOSITION TO MOTION APPROVE
PROTECTIVE ORDER

1   production of its source code would be governed by the protective order in this case, in which

2   Synopsys is a direct participant.

3   IV.    **CONCLUSION**

4          For all the foregoing reasons, Synopsys requests that the Court deny Ricoh's motion and

5   instruct the parties to proceed in accordance with the discovery provisions regarding production of

6   source code proposed by Synopsys.

7   Dated:  January 20, 2004                    Respectfully submitted,

8
                                               HOWREY SIMON ARNOLD & WHITE, LLP
9

10

11                                       By:   /s/ Christopher L. Kelley
                                               Christopher L. Kelley
12                                             Attorneys for Plaintiff
                                               Synopsys, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28