Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | ) **CASE NO. C-03-2289-MJJ** |
| | ) |
| Plaintiff, | ) **RICOH'S REPLY IN SUPPORT OF ITS** |
| | ) **MOTION FOR APPROVAL OF** |
| vs. | ) **PROTECTIVE ORDER, AND OPPOSITIONS** |
| | ) **TO SYNOPSYS' CROSS-MOTION FOR** |
| RICOH COMPANY, LTD., | ) **APPROVAL OF SYNOPSYS' PROPOSED** |
| | ) **PROTECTIVE ORDER** |
| Defendant. | ) |
| | ) **Date:  February 10, 2004** |
| | ) **Time:  9:30 a.m.** |
| | ) **Courtroom:  11** |
| | ) |

## **Table of Contents**

I. INTRODUCTION ................................................................................................. 1

II. FACTS ............................................................................................................... 2

      1. The Parties' Differences Regarding the Location of the Source Code ................................................................................................... 2

      2. Synopsys' Undisclosed Change to the Number of Experts ................. 4

III. ARGUMENT ..................................................................................................... 4

ADOPTION OF RICOH'S PROVISION REGARDING THE PROTECTION OF SOURCE CODE IS WARRANTED. ................................................... 4

      1. Confidential material should be protected .......................................... 4

      2. Synopsys' source code is relevant and must be disclosed .................. 5

      3. At least three experts should be allowed access to source code .......... 9

IV. CONCLUSION .................................................................................................. 10

1

## I.    __INTRODUCTION__

2

Ricoh would gladly accept this Court's endorsement of the protective order that was negotiated

3
by counsel for all parties before the related action was transferred to this Court from Delaware, and

4
entered by Delaware District Court Judge Sleet.  After having its counsel negotiate that protective order

5
as the representatives of the defendants in that case, however, Synopsys wants to reject it and instead

6
urge this Court to impose extraordinary limits on the ability of Ricoh and its experts to review the

7
software that Synopsys itself deliberately and intentionally placed at issue in its declaratory judgment

8
action.  Synopsys' proposal would place an inappropriate burden upon the ability of Ricoh's experts and

9
attorneys to evaluate, test, and report on the operation of the relevant software code, and of necessity,

10
invades the work product privilege.  Synopsys' proposal subjects each evaluation session to oversight by

11
Synopsys.  It limits the time that the work may be done and places Ricoh's attorneys review under

12
Synopsys' control.

13

By contrast, Ricoh's proposal balances the interests of the parties by placing the software solely

14
within the control of Ricoh's counsel, within a secure facility, in a locked, restricted access room, and on

15
a non-networked computer.  The procedures proposed by Ricoh are the same that Ricoh's counsel

16
utilizes in litigation for the protection of highly confidential materials produced in government contract

17
litigation with the United States Government.  Although Synopsys claims that this level of protection is

18
inadequate, this is belied by the fact that Synopsys has not insisted on any similar protections on the

19
hard copy sections of the code that it will produce!  The fact that Synopsys will produce the source code

20
in hard copy without these extraordinary restrictions, but insists on preventing Ricoh's attorneys and

21
experts from accessing the source code in electronic form (in which it can be tested) except in a

22
Synopsys facility, reflects an inconsistent approach to its purported security concerns.  Clearly,

23
Synopsys is not adverse to producing the source code, but only seeks to erect obstacles to an effective

24
examination of what it is prepared to produce.

25

The legitimacy of Synopsys' concern in its cross-motion is further suspect due to a second

26
position taken by Synopsys.  Counsel for the parties had previously expressly agreed that three experts

27

28

from each party would have access to the source code.[1]  Without acknowledging the fact, however, Synopsys' proposed protective order secretly and unilaterally dropped that number of Ricoh experts having access from three to one.  This reduction would cause a tremendous prejudice to Ricoh. Synopsys' sleight of hand raises a question as to the veracity of the other statements in Synopsys' opposition, especially after Synopsys secretly persuaded Dr. Thomas to switch sides.[2]

In light of the Court's Order of January 21, 2004 (since withdrawn), a revised Ricoh proposed protective order is submitted herewith.  In paragraphs 14 and 26, it incorporates the detailed instructions and time limit that the Court set forth in that Order.  No other changes have been made.

## II.    FACTS

The present Declaratory Judgment action is related to a patent infringement action (the "Delaware case") filed by Ricoh against a group of ASIC manufacturers in Delaware (which has been subsequently transferred to this Court and is pending as docket number C03-4669 MJJ).  While a Protective Order had been agreed to and entered by the Delaware Court, Synopsys now seeks to change that Protective Order.  In a spirit of compromise, Ricoh has worked with Synopsys and resolved all issues with the exception of one (although, Synopsys has now slipped in a second issue as indicated above).

### 1.    The Parties' Differences Regarding the Location of the Source Code

Other than the new issue of the number of experts, the parties had negotiated all but one provision of the protective order in this case.  The only unresolved issue is the definition of a secure facility to be used for secure storage of the electronic version (but not the print version) of the source code to permit the unfettered and unobserved examination and testing of alleged infringing software and any other source code.

Under Ricoh's proposal for its protective order, Synopsys would provide and Ricoh would maintain the electronic version of the source code in a secure facility.  Ricoh has proposed a secure

---

[1] Ricoh originally had not wanted any restriction on the number of experts but in reaching a compromise with Synopsys had agreed to be limited to three experts being able to view the software.

[2] See Ricoh's pending motion for sanctions.

facility as a location within the confines of the Washington, DC office of Dickstein Shapiro Morin & Oshinsky, LLP, Ricoh's attorneys of record. Ricoh's proposed facility would comprise a non-networked computer in a locked room within the law office. (DSMO letter 11/20/03, Ex. 1). The law firm, in addition to providing control over its offices in general, would additionally control access to the room and access to the source code. This approach allows Ricoh's counsel and experts (under the protective order) unfettered, unhindered, and unobserved access to the software while still safeguarding and maintaining the confidentiality of the source code.

There is some significance to the fact that the Dickstein Shapiro firm is well versed in maintaining confidential documents and software. Dickstein Shapiro uses the same type of software and access protections as outlined in the Synopsys declarations. Dickstein Shapiro in its offices has obtained and kept restricted access to secret governmental documents and/or software in various litigations involving government contracts or other issues. Dickstein Shapiro also has obtained and kept restricted access in its offices to secret or otherwise confidential documents and/or software in a large number of private litigations. Contrary to the implications being raised by Synopsys, no source code has ever been misappropriated from a Dickstein Shapiro facility. (Weinstein Decl.)

Under Synopsys' proposal, Synopsys would make available and maintain Synopsys source code in a secure facility defined as Synopsys' SURF, a Synopsys facility that is under the authority and control of Synopsys in Mountainview, California or another "SURF-like" Synopsys facility in Bethesda, Maryland. (Howrey letter 12/7/03, Ex. 2). This proposal is unworkable because it significantly affects and limits Ricoh's counsel and experts unfettered, unhindered, and unobserved access to the software. Although one Synopsys' facility may be open 24/7 and the other facility in Bethesda is open during business hours, both facilities observe, monitor, and selectively authorize persons visiting the Synopsys facility. Attaining hard-copy printouts while at the facility is subject to the scrutiny (and permission) of Synopsys. Therefore, any print-outs of tests of Synopsys software that are conducted will be immediately known and seen by Synopsys.[3] Synopsys will also be cognizant of which sections of

_____

[3] While Synopsys is correct that eventually Ricoh must identify all materials relied upon by its experts, this identification takes place when the expert reports are provided and not throughout the litigation

1   Synopsys software is being printed out because it is the only one who can do the printing.  As the

2   Synopsys program is presumed to be large, examination of the code will take a significant amount of

3   time.  Examination of the software may require additional software tools to help experts identify the

4   functionality and inter-operability of the software.  As indicated in Van Nguyen's affidavit, Synopsys

5   uses monitoring software, Clearcase, to observe, control, and track access to Synopsys software.  (See

6   Nguyen Affidavit, Ex.3).  This, and/or similar types of control mechanisms, will provide and enable

7   Synopsys the awareness of Ricoh's counsel's and experts' activities during their examination of the

8   Synopsys code.  Synopsys' actions not only prevent Ricoh's counsel and experts unfettered, unhindered,

9   and unobserved access to the software, but their actions also would clearly invade the attorney work

10  product privilege.

11              **2.     Synopsys' Undisclosed Change to the Number of Experts**

12          Synopsys has changed its position on the number of experts that would be permitted access to the

13  software.  The parties had previously agreed that three (3) experts would be allowed to access the code.

14  (See Weinstein Decl.).  Without ever mentioning the issue in its brief, Synopsys' proposed protective

15  order, however, permits only one expert to access to the software.  But for a close comparison of the

16  Ricoh's and Synopsys' proposed protective orders, this change would not have been spotted.[4]

17                         **III.     ARGUMENT**

18  **ADOPTION OF RICOH'S PROVISION REGARDING THE PROTECTION OF SOURCE**
19                          **CODE IS WARRANTED.**

20          **1.     Confidential material should be protected**

21          No one disputes that confidential material should be protected.  Cases cited by Synopsys confirm

22  that courts are inclined to grant protective orders to protect a party's confidential material.  The only

23  disagreement here is one aspect of how the confidential material should be protected.

24          In the instant case, Synopsys intentionally placed its software at issue.  Synopsys contends that it

25

26  every time Ricoh's counsel looks at or copies a document.  Synopsys should have no right to look over
    the shoulder of counsel for Ricoh and watch them work.
27

28  [4] Giving Synopsys the benefit of the doubt, it is conceivable that this could have simply been a
    stenographical error.

1   filed the declaratory judgment case since it 'arises from' Ricoh's patent infringement suit on the '432

2   patent against certain manufacturers of ASICs (the ASIC defendants) and the Synopsys source code

3   involved is the same in both actions.  In both actions, one issue relates to the use of the Synopsys

4   software as part of a manufacturing process that infringes U.S. Patent number, 4,932,432.  Therefore,

5   not only is the Synopsys software, in both its executable and source code form, relevant to the instant

6   case, but it is also relevant to the determination of infringement.  The source code is needed in order to

7   be able to view the code and understand how the program is structured.  The executable code is

8   important because it is needed to test how the program works.  Synopsys does not dispute the relevance

9   of the source code.

10          The parties agree that the Synopsys Design Compiler source code is confidential and should be

11   protected.  However, the protected confidential material still needs to be subject to restrictions which are

12   reasonable.

13          Where software source code has been found to be both relevant and necessary in a case, the court

14   must balance one party's need for information with the other party's interest in maintaining the

15   confidentiality of the source code.  In this case, there is a need for information that comes from access to

16   the electronic version of the source code (and a hard copy of portion may be needed for further detailed

17   review).[5]  It is relevant and necessary to access the Synopsys source code to determine the functionality

18   of the program.  An appropriate protective order can satisfy both parties, *Hartman v. Remington Arms*,

19   143 F.R.D. 673 (W.D. Mi 1992).  By offering to allow representatives of Ricoh to have access to the

20   code under a protective order, Synopsys concedes that its concerns about confidentiality are not

21   necessarily directed towards Ricoh (or its representatives).  Synopsys' real concerns are about third

22   parties getting access to the software.

23                  **2.      Synopsys' source code is relevant and must be disclosed**

24           Synopsys overlooks its responsibility under the Patent Local Rules.  Patent L.R. 3-4 "Document

25   production Accompanying Preliminary Invalidity Contentions" establishes several different types of

26   documents that must be produced as part of a patent suit.  The Rule recognizes and specifically

27   _____

28   [5] Synopsys has not insisted that the hard copies be kept under the same "lock and key" security.

enunciates that source code is to be produced.  (Patent L. R. 3-4)  Synopsys is intentionally trying to remove itself from, or avoid, the requirements under the Rules.  Even the model stipulated protective order provided by the Court does not unduly restrict access to confidential source code.  The model does not expressly or impliedly treat confidential source code any different from any other type of confidential material.

Synopsys asserts that with respect to security, its facilities are beyond approach.  But, regardless of how sophisticated, affluent, or large Synopsys' security system is, it does not negate the security of a locked facility within Dickstein Shapiro.  Synopsys, in its opposition motion, spent a great deal of time to suggest the extreme measures it takes to safeguard its code.  According to the statement of Nguyen, Synopsys spends one-fifth of its operating costs on security.  (See Nguyen Decl., Ex. 3)  Synopsys also employs many physical and technical measures to safeguard code.  But, however much Synopsys may toot its own horn about how good its facilities are or how much money its spends on security, that does not correlate with the proposition that protection is not available from the law offices of Ricoh's counsel.  Synopsys simply offers its conclusion that a locked facility within Dickstein Shapiro is not safe.  Synopsys fails to indicate why that it is in fact not safe.  Dickstein Shapiro does not simply offer a locked door in a building—its offices as a whole are under a security system controlled by Dickstein Shapiro, not the building.  The locked office is a secured room within a secured facility (offices).  The computer can be password protected to add yet another layer of security.  Although the Dickstein Shapiro office facility is not under Synopsys' control, that does not mean that the facility offered by Dickstein Shapiro is not secure.  Additionally, the protection for the hard copy printout that Synopsys proposes would be subject to much less security.[6]  Synopsys has not proffered an objection to a print version of its source code sitting on an attorney's desk, out in the open, in the very same offices in which the locked room is located.

Synopsys simply wants to maintain exclusive control of the access to its electronic source code and the inspection by Ricoh's counsel and experts.  By maintaining supervision and oversight of the

_____

[6] As admitted by Synopsys, "with the advent of bulk scanning and optical character recognition, it is not impossible to convert paper copies of source code back into an electronic format."  (See Opposition Motion, page 7, footnote 2)

facility that is suggested by Synopsys (the SURF facility it owns and controls), Synopsys desires to pierce the work product privilege.  By regulating who can access the code and when they access the code, Synopsys, at the very least, is trying to invade Ricoh's work product privilege.  Synopsys' approach to providing access to the software does not provide Ricoh's counsel or experts unfettered, unobserved access to the code.  For example, Synopsys' motion describes the layers of access restriction that exists that must be navigated for a person just to gain entry to the Synopsys facility.  Further, Ricoh's access is further restricted in that Synopsys will only provide printouts after Ricoh's identification of the desired sections.  Again, this approach does not allow an expert to investigate the software code without oversight as this approach does not allow "unfettered access" to the code, but only access to portions selected under the watchful eye of Synopsys.

Presumably, the Synopsys source code is rather lengthy.  Therefore, an expert's analysis of the code may require a significant amount of time to study and understand the program flow and operational elements.  Lengthy code is often more easily analyzed using a computer rather than examining the code solely on paper.  Additionally, software analysis tools may be required as part of the analysis process.  Synopsys asserts that in its brief that it is against the Ricoh protective order because it 'would require Synopsys to "surrender control over a complete copy of the source code for its most important product to Ricoh, an adverse party." Synopsys is wrong.  Nowhere does Ricoh's protective order provide or allow for the source code to be accessed by other than certain individuals.  Under Ricoh's proposal, Synopsys gets more protection than provided by the prototype protective order promulgated by this Court.  Synopsys' source code would be on a single, stand-alone (non-networked) computer in a locked room located in the offices of Ricoh's counsel and access to the room would be under the control of a Ricoh attorney.  The Ricoh proposal also ensures the protection of Ricoh's privileged attorney work product.

Traditional discovery procedure does not allow Synopsys to choose what sections of the code to provide.  Synopsys cannot selectively choose what sections of the code it believes are relevant and only produce those sections—Synopsys must make the entire program available.  Ricoh's counsel and experts must be able to determine what code sections they feel are relevant to the allegations.  Synopsys should not "in any event" know what sections of code that Ricoh would like made available for its review.  Nor

1    is it reasonable to expect Ricoh to have to approach Synopsys each time it desires a printout and then

2    wait "a reasonable time" (whatever that means) for it to be produced.[7]

3        Ricoh's proposal is not only based on a reasonable approach for effectuating a reasonable

4    examination of the Synopsys program, but it also addresses legitimate concerns.  Contemporaneously

5    pending with this motion is Ricoh's motion for sanctions.  Ricoh's other motion addresses the

6    impropriety of Synopsys' actions demonstrated in the early days of the related case—the transferred

7    case.  That motion, in short, regards Synopsys' counsel aggressively seeking information and advice

8    from an expert while knowing the expert had previously been retained by Ricoh.  Therefore, Ricoh's

9    concerns are not "fantastic speculation" and are not simply based on the adversarial nature of litigation,

10    but also derived from the prior actions of Synopsys.

11        Furthermore, the content of the protective order in the related case is relevant.  Even if Synopsys

12    desires that an infringement determination and therefore the examination of the source code be

13    addressed in this action, that does not preclude the reality that the ultimate determination of infringement

14    by the Delaware defendants will occur in the *Ricoh v. Aeroflex et al*. case.  Further, Synopsys is

15    intimately involved in both cases, in the instant case as the plaintiff and in the ASIC defendant case

16    where Synopsys controls the actions of the ASIC Defendants and Synopsys has been subpoenaed as a

17    third party.  Neither Synopsys nor Ricoh "won" this issue; the issue was deferred due to the transfer of

18    the Delaware case to California.  Synopsys still has an obligation to provide source code in the

19    transferred case.

20        The content of the protective order in the related case is also relevant because it was a common

21    ground for agreement between the parties.  As seen in the letter of November 7, 2003, Synopsys'

22    counsel agreed to use of the Delaware case Protective Order as long as it was amended to include and

23    address its concerns about the production of Synopsys source code.  (See Ex. 2, letter Nov. 7, 2003).

24    Therefore, both sides agreed to use of the Delaware case Protective Order, but could not completely

25    agree as to source code provision.

26    _____

27    [7] This process of waiting for (approval and production of) printouts could conceivable unnecessarily
28    delay and frustrate Ricoh's discovery in these actions, all playing into Synopsys' threat to make the
     litigation long and expensive.

1
2
3
4
5
6
7
8

Even the case law cited in Synopsys' brief makes clear that source code will be disclosed.  In *Dynamic Microprocessor v. EKD*, 919 F.Supp 101 (E.D.N.Y. 1996) source code was the subject matter of the dispute.  Even though the source code was found to be a trade secret, the court ordered the production of the source code in dispute under the guidelines of the protective order in the case.[8]  In another case to which Synopsys refers, the court ordered the production of the source code in dispute.  In *Adobe Systems v. Macromedia*, 2001 U.S. Dist. LEXIS 18630 the Court ordered that printed copies be provided instead of production by encrypted code.  The court did not otherwise restrict or limit the production to less than the entirety of the code.

9
10
11
12
13

Additionally, contrary to Synopsys' interpretation of the local rules, Ricoh does not have an obligation to produce any document or other information pursuant to Patent L.R. 3-1 – this case is declaratory judgment action where there are no pending claims of infringement filed by Ricoh.  (See Patent L. R. 3-5.)  Ricoh will identify the sections of code it is relying after receiving and examining the entirety of the Synopsys program at the appropriate time during discovery.[9]

14

### 3.    At least three experts should be allowed access to source code

15
16
17
18
19
20
21
22
23
24

The parties had previously agreed on three experts having access to the other party's confidential source code and confidential documents.  Although Ricoh initially preferred five (5) experts and Synopsys preferred only one (1), the parties reached a compromise and agreed on the use of three (3) experts.  (See Weinstein Decl.).  Three experts were determined to be a fair balance in light of the size of the program and the differing roles of the experts.  Synopsys Design compiler is presumed to be a relatively large program.  The analysis of the code may require team work to perform effectively and within a reasonable time.  Different experts may be utilized by Ricoh, e.g., at least one that may be a testifying expert, another expert may serve as a consulting expert, and a third expert may be used to help expedite the analysis.

25
26

[8] Note that the court placed no restrictions on the amount of source code to be produced, i.e., no partial production of the code.  "The Source codes shall be produced"  (*Dynamic*, at 11).

27
28

[9] As this is a Declaratory Judgment action without any claims for infringement, Ricoh is under no obligation to provide an infringement analysis.  (See Patent L. R. 3-5 which obviates the requirement to produce infringement analysis under Patent L.R. 3-1)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    <u>CONCLUSION</u>

Ricoh respectfully requests that this Court adopt its proposed protective order, which incorporates Ricoh's provision for the protection of source code so that it can have fair access to the software without invading the attorney work product privilege.  Ricoh also seeks approval of the provision allowing for three experts to access the Synopsys code.

Dated: January 27, 2004                    Respectfully submitted,

Ricoh Company, Ltd.


By: _____Ken Brothers_____

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM,
    RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone:  (415) 421-7151
Fax:  (415) 362-8064

Gary M. Hoffman
Ken Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN *&*
    OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN *&*
    OSHINSKY  LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Attorneys for Ricoh Company, Ltd.