1  Gary M. Hoffman (*Pro Hac Vice*)
   Kenneth W. Brothers (*Pro Hac Vice*)
2  DICKSTEIN SHAPIRO MORIN
     & OSHINSKY, LLP
3  2101 L Street, NW
   Washington, DC  20037-1526
4  Phone (202) 785-9700
   Fax (202) 887-0689
5
   Edward A. Meilman (*Pro Hac Vice*)
6  DICKSTEIN SHAPIRO MORIN
     & OSHINSKY, LLP
7  1177 Avenue of the Americas
   New York, New York  10036-2714
8  Phone (212) 835-1400
   Fax (212) 997-9880
9
   Jeffrey B. Demain, State Bar No. 126715
10 Jonathan Weissglass, State Bar No. 185008
   ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
11 177 Post Street, Suite 300
   San Francisco, California  94108
12 Phone  (415) 421-7151
   Fax (415) 362-8064
13
   Attorneys for Ricoh Company, Ltd.
14
                    UNITED STATES DISTRICT COURT
15                  NORTHERN DISTRICT OF CALIFORNIA
                       SAN FRANCISCO DIVISION
16

17  RICOH COMPANY, LTD.,
                                          )
18              Plaintiff,                )  **CASE NO. C-03-2289-MJJ (EMC)**
                                          )
19       vs.                              )  **CASE NO. C-03-4669-MJJ (EMC)**
                                          )
20  AEROFLEX INCORPORATED, et al.,        )  **DISCOVERY MATTER**
                                          )
21              Defendants                )
                                          )  **DECLARATION OF KENNETH W.**
22  SYNOPSYS, INC.,                       )  **BROTHERS IN SUPPORT OF JOINT**
                                          )  **REPORT TO THE COURT REGARDING**
23              Plaintiff,                )  **POSSIBLE THOMAS DEPOSITION**
                                          )  **PURSUANT TO MARCH 25, 2004 ORDER**
24       vs.                              )
                                          )
25  RICOH COMPANY, LTD.,                  )  **Date:  None**
                                          )  **Time:  None**
26              Defendant.                )  **Courtroom:**
                                          )  **Judge:  Magistrate Judge Chen**
27

28

Kenneth W. Brothers declares as follows:

1.    My name is Kenneth W. Brothers, an attorney with the law firm of Dickstein, Shapiro, Morin & Oshinsky, LLP, counsel for Ricoh Company Limited.  I am over the age of 21 and am competent to make this declaration.  Based on my personal knowledge and information, I hereby declare to all the facts in this declaration

2.    At a meet and confer on April 21, defendants' counsel declined to address any of Ricoh's concerns and proposals with respect to the Thomas deposition process, and instead stated that they would submit their April 12 proposal to the Court.

3.    At 12:54 p.m. on April 23, Ricoh's counsel received for the first time the ASIC defendants' proposal with respect to Dr. Thomas, which is different from the one-paragraph proposal contained in Mr. Kelley's letter of April 12.

4.    Attached hereto as Ex. 1 is a true and correct copy of the transcript of the hearing before Magistrate Judge Chen on March 24, 2004.

5.    Attached hereto as Ex. 2 is a true and correct copy of the March 25, 2004 Order Re Ricoh's Motion for Sanctions.

6.    Attached hereto as Ex. 3 is a true and correct copy of my March 30, 2004 letter to Teresa M. Corbin.

7.    Attached hereto as Ex. 4 is a true and correct copy of Christopher L. Kelley's April 12, 2004 letter to me.

8.    Attached hereto as Ex. 5 is a true and correct copy of my April 19, 2004 letter to Christopher L. Kelley

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Signed at Washington, D.C. on April 23, 2004.

April 23, 2004                                    /s/ Kenneth W. Brothers
                                                 Kenneth W. Brothers

PAGES 1 - 87

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, MAGISTRATE JUDGE

SYNOPSYS, INCORPORATED,              )
                PLAINTIFF,           )
VS.                                  )   NO. C03-2289 MJJ (EMC)
                                     )   NO. C03-4669 MJJ (EMC)
RICOH COMPANY, LIMITED,              )
                DEFENDANT.           )
_____)

SAN FRANCISCO, CALIFORNIA
WEDNESDAY, MARCH 24, 2004

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:        HOWREY SIMON ARNOLD & WHITE
                     301 RAVENSWOOD AVENUE
                     MENLO PARK, CALIFORNIA  94025
                BY:  TERESA M. CORBIN, ESQ.
                     ERIK K. MOLLER, ESQ.
                     LOUIS CAMPBELL, ESQ.
                     CHRIS KELLY, ESQ.

                     ERIK OLIVER, ESQ. SENIOR IP COUNSEL
                     SYNOPSYS, INCORPORATED
                     700 E. MIDDLEFIELD ROAD
                     MOUNTAIN VIEW, CALIFORNIA  94043

(APPEARANCES CONTINUED ON NEXT PAGE.)

REPORTED BY:    KATE V. MAREE, SHORTHAND REPORTER

        UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF CALIFORNIA

(COMPUTERIZED TRANSCRIPTION BY ECLIPSE)

---

APPEARANCES, CONTINUED:

FOR DEFENDANT:        DICKSTEIN SHAPIRO
                     MORIN & OSHINSKY
                     2101 L STREET NW
                     WASHINGTON, DC  20037-1526
                BY:  KENNETH W. BROTHERS, ESQ.

                     ALTSHULER BERZON NUSSBAUM
                     RUBIN & DEMAIN
                     177 POST STREET, SUITE 300
                     SAN FRANCISCO, CALIFORNIA  94108
                BY:  JONATHAN WEISSGLASS, ESQ.

                     ---oOo---

---

3

1    P R O C E E D I N G S

2    THE CLERK:  CALLING CASE NO. C-03-2289, SYNOPSYS VS.
3    RICOH, AND ALSO CASE NO. C-03-4669, RICOH VS. AEROFLEX.
4    MISS CORBIN:  GOOD AFTERNOON, YOUR HONOR.  TERESA
5    CORBIN, FROM HOWREY, SIMON, ARNOLD & WHITE.  I REPRESENT
6    SYNOPSYS, INC., THE DECLARATORY JUDGMENT PLAINTIFF, AND IN THE
7    MATTER BROUGHT BY RICOH, I REPRESENT AEROFLEX, ET. AL, ALL OF
8    THE DEFENDANTS IN THAT MATTER.
9    THE COURT:  ALL RIGHT.
10   MISS CORBIN:  WITH ME TODAY IS ERIK MOLLER, FROM MY
11   FIRM.  ALSO WITH ME IN THE COURTROOM IS ERIK OLIVER, WHO IS
12   SENIOR IP COUNSEL AT SYNOPSYS, AND THERE ARE SOME OTHER PEOPLE
13   FROM MY FIRM HERE AS WELL, INCLUDING LOUIS CAMPBELL AND CHRIS
14   KELLY, TO WHOM SOME OF THE FACTS THAT WILL BE DISCUSSED TODAY
15   RELATE TO ACTIONS THAT THEY HAVE.
16   THE COURT:  ALL RIGHT, THANK YOU.
17   MR. BROTHERS:  GOOD AFTERNOON, YOUR HONOR.
18   THE COURT:  GOOD AFTERNOON.
19   MR. BROTHERS:  KEN BROTHERS, WITH THE FIRM OF
20   DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, REPRESENTING RICOH IN
21   BOTH ACTIONS.  WITH ME IS JONATHAN WEISSGLASS, OF ALTSHULER,
22   BERZON, NUSSBAUM, RUBIN & DEMAIN.
23   THE COURT:  ALL RIGHT, THANK YOU.  JUST FOR
24   SHORTHAND PURPOSES, SO I DO NOT GET CONFUSED EVERY TIME YOU

---

4

1    HAVE THESE DECLARATORY RELIEF ACTIONS, WHERE I SAY
2    "DEFENDANTS," I MEAN THE DECLARATORY RELIEF "PLAINTIFFS," I
3    GUESS, THE AEROFLEX DEFENDANTS, IF YOU DO NOT MIND MY SORT OF
4    LUMPING THAT TOGETHER; IT IS HARD ENOUGH TO KEEP THINGS
5    STRAIGHT.
6    MR. BROTHERS:  WE HAVE ENOUGH TROUBLE WITH IT
7    OURSELVES, YOUR HONOR.
8    THE COURT:  GOOD.  THANK YOU, BY THE WAY, FOR
9    NARROWING THIS DOWN TO THESE TWO MOTIONS AND, EVEN WITH THAT,
10   THERE WAS A FAIR AMOUNT OF PAPER THAT HAD TO BE GONE THROUGH,
11   AND I HAVE GONE THROUGH THE PAPERS, WITH THE HELP OF MY STAFF,
12   GONE THROUGH SOME OF THE IN CAMERA DOCUMENTS.  BUT LET ME TAKE
13   WHAT I THINK IS THE MOST IMPORTANT ISSUE FIRST: THAT IS, NOW
14   THAT THERE IS NO ISSUE WITH RESPECT TO DR. THOMAS APPEARING AS
15   AN EXPERT FOR EITHER SIDE, BUT THE DESIRE OF THE -- SHALL WE
16   SAY DEFENDANTS -- TO HAVE HIM GIVE WHAT HAS BEEN REFERRED TO AS
17   ORTHODOX TESTIMONY, AS I UNDERSTAND IT, ON THE MORE LIMITED
18   POINT THAT RELATES TO HIS INVENTION, AS INFORMS THE PRIOR ART
19   QUESTION, AND NOT TO APPLYING AND GETTING INTO ANYTHING ABOUT
20   THE CONCLUSIONS OR OPINIONS ABOUT THE VALIDITY OF '432, OR ANY
21   OF THOSE MATTERS.  THAT, SEEMS TO ME, SQUARELY THE QUESTION
22   HERE.
23   I KNOW THE OTHER ISSUES WILL INVOLVE A LOT OF
24   FACTUAL BACKGROUND.  THERE ARE A LOT OF ISSUES WITH RESPECT TO
25   THE SANCTIONS ISSUE, BUT I WOULD LIKE TO PUT THAT ASIDE FOR THE

PAGES 1 - 87

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

SYNOPSYS, INCORPORATED,      )
                             )
            PLAINTIFF,       )
                             )
VS.                          )    NO. C03-2289 MJJ (EMC)
                             )    NO. C03-4669 MJJ (EMC)
RICOH COMPANY, LIMITED,      )
                             )
            DEFENDANT.       )
_____)

SAN FRANCISCO, CALIFORNIA
WEDNESDAY, MARCH 24, 2004

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:        HOWREY SIMON ARNOLD & WHITE
                     301 RAVENSWOOD AVENUE
                     MENLO PARK, CALIFORNIA  94025
                BY:  TERESA M. CORBIN, ESQ.
                     ERIK K. MOLLER, ESQ.
                     LOUIS CAMPBELL, ESQ.
                     CHRIS KELLY, ESQ.

                     ERIK OLIVER, ESQ. SENIOR IP COUNSEL
                     SYNOPSYS, INCORPORATED
                     700 E. MIDDLEFIELD ROAD
                     MOUNTAIN VIEW, CALIFORNIA  94043

(APPEARANCES CONTINUED ON NEXT PAGE.)

REPORTED BY:     KATE V. MAREE, SHORTHAND REPORTER

              UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA

(COMPUTERIZED TRANSCRIPTION BY ECLIPSE)

---

APPEARANCES, CONTINUED:

FOR DEFENDANT:       DICKSTEIN SHAPIRO
                     MORIN & OSHINSKY
                     2101 L STREET NW
                     WASHINGTON, DC  20037-1526
                BY:  KENNETH W. BROTHERS, ESQ.

                     ALTSHULER BERZON NUSSBAUM
                     RUBIN & DEMAIN
                     177 POST STREET, SUITE 300
                     SAN FRANCISCO, CALIFORNIA  94108
                BY:  JONATHAN WEISSGLASS, ESQ.

                     ---oOo---

---

3

WEDNESDAY, MARCH 24, 2004                  2:05 PM

2              P R O C E E D I N G S

3          THE CLERK:  CALLING CASE NO. C-03-2289, SYNOPSYS VS.

4    RICOH, AND ALSO CASE NO. C-03-4669, RICOH VS. AEROFLEX.

5          MISS CORBIN:  GOOD AFTERNOON, YOUR HONOR.  TERESA

6    CORBIN, FROM HOWREY, SIMON, ARNOLD & WHITE.  I REPRESENT

7    SYNOPSYS, INC., THE DECLARATORY JUDGMENT PLAINTIFF, AND IN THE

8    MATTER BROUGHT BY RICOH, I REPRESENT AEROFLEX, ET. AL, ALL OF

9    THE DEFENDANTS IN THAT MATTER.

10         THE COURT:  ALL RIGHT.

11         MISS CORBIN:  WITH ME TODAY IS ERIK MOLLER, FROM MY

12   FIRM.  ALSO WITH ME IN THE COURTROOM IS ERIK OLIVER, WHO IS

13   SENIOR IP COUNSEL AT SYNOPSYS, AND THERE ARE SOME OTHER PEOPLE

14   FROM MY FIRM HERE AS WELL, INCLUDING LOUIS CAMPBELL AND CHRIS

15   KELLY, TO WHOM SOME OF THE FACTS THAT WILL BE DISCUSSED TODAY

16   RELATE TO ACTIONS THAT THEY HAVE.

17         THE COURT:  ALL RIGHT, THANK YOU.

18         MR. BROTHERS:  GOOD AFTERNOON, YOUR HONOR.

19         THE COURT:  GOOD AFTERNOON.

20         MR. BROTHERS:  KEN BROTHERS, WITH THE FIRM OF

21   DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, REPRESENTING RICOH IN

22   BOTH ACTIONS.  WITH ME IS JONATHAN WEISSGLASS, OF ALTSHULER,

23   BERZON, NUSSBAUM, RUBIN & DEMAIN.

24         THE COURT:  ALL RIGHT, THANK YOU.  JUST FOR

25   SHORTHAND PURPOSES, SO I DO NOT GET CONFUSED EVERY TIME YOU

---

4

HAVE THESE DECLARATORY RELIEF ACTIONS, WHERE I SAY

2    "DEFENDANTS," I MEAN THE DECLARATORY RELIEF "PLAINTIFFS," I

3    GUESS, THE AEROFLEX DEFENDANTS, IF YOU DO NOT MIND MY SORT OF

4    LUMPING THAT TOGETHER; IT IS HARD ENOUGH TO KEEP THINGS

5    STRAIGHT.

6          MR. BROTHERS:  WE HAVE ENOUGH TROUBLE WITH IT

7    OURSELVES, YOUR HONOR.

8          THE COURT:  GOOD.  THANK YOU, BY THE WAY, FOR

9    NARROWING THIS DOWN TO THESE TWO MOTIONS AND, EVEN WITH THAT,

10   THERE WAS A FAIR AMOUNT OF PAPER THAT HAD TO BE GONE THROUGH,

11   AND I HAVE GONE THROUGH THE PAPERS, WITH THE HELP OF MY STAFF,

12   GONE THROUGH SOME OF THE IN CAMERA DOCUMENTS.  BUT LET ME TAKE

13   WHAT I THINK IS THE MOST IMPORTANT ISSUE FIRST: THAT IS, NOW

14   THAT THERE IS NO ISSUE WITH RESPECT TO DR. THOMAS APPEARING AS

15   AN EXPERT FOR EITHER SIDE, BUT THE DESIRE OF THE -- SHALL WE

16   SAY DEFENDANTS -- TO HAVE HIM GIVE WHAT HAS BEEN REFERRED TO AS

17   ORTHODOX TESTIMONY, AS I UNDERSTAND IT, ON THE MORE LIMITED

18   POINT THAT RELATES TO HIS INVENTION, AS INFORMS THE PRIOR ART

19   QUESTION, AND NOT TO APPLYING AND GETTING INTO ANYTHING ABOUT

20   THE CONCLUSIONS OR OPINIONS ABOUT THE VALIDITY OF '432, OR ANY

21   OF THOSE MATTERS.  THAT, SEEMS TO ME, SQUARELY THE QUESTION

22   HERE.

23         I KNOW THE OTHER ISSUES WILL INVOLVE A LOT OF

24   FACTUAL BACKGROUND.  THERE ARE A LOT OF ISSUES WITH RESPECT TO

25   THE SANCTIONS ISSUE, BUT I WOULD LIKE TO PUT THAT ASIDE FOR THE

1  MOMENT, AND ADDRESS WHAT I THINK NEEDS TO BE LOOKED AT BEFORE
2  WE GO FORWARD, AND THAT IS: WHAT ABOUT THE POSSIBILITY OF HIS
3  TESTIMONY NOW IN THIS LIMITED CAPACITY?  WHAT I WOULD LIKE TO
4  KNOW IS, IS THERE A CONTENTION -- I GUESS THERE IS BUT I AM NOT
5  SURE I UNDERSTAND IT -- THAT SO LIMITED, DR. THOMAS, IF
6  QUESTIONED AND GIVES "ORTHODOX" TESTIMONY ON HIS INVENTION AND
7  THE ALLEGED PRIOR ART, IS THERE AN ALLEGATION THAT THAT PROCESS
8  OF EXAMINATION WILL INEVITABLY REVEAL RICOH'S CONFIDENTIAL
9  INFORMATION?
10       MR. BROTHERS:  YOUR HONOR, IF I MAY RESPOND, THERE
11  IS SUCH A CONTENTION.  TO ANSWER THAT QUESTION REQUIRES
12  STEPPING BACK FOR A MOMENT, AND LOOKING AT WHAT IT IS THAT
13  RICOH ASKED DR. THOMAS TO DO.  THESE ARE SET FORTH IN THE
14  DECLARATION OF CHRISTOPHER MONSEY, ESPECIALLY PARAGRAPHS 5
15  THROUGH 15, WHICH WAS EXHIBIT 1 TO MY DECLARATION, WHICH WAS
16  FILED ON DECEMBER 2ND.
17       CHRISTOPHER MONSEY SPENT A CONSIDERABLE AMOUNT OF
18  TIME WORKING WITH DR. THOMAS, AND HE RECOUNTS THAT IN A WAY
19  THAT WE THOUGHT WENT FAR ENOUGH THAT IT IDENTIFIED SPECIFICALLY
20  WHAT HE DID, WITHOUT REVEALING THE WORK PRODUCT OR OTHER
21  PRIVILEGED INFORMATION.  WHAT DR. THOMAS WAS ASKED TO DO -- WE
22  DID NOT IDENTIFY SPECIFICALLY THE PRIOR ART THAT DR. THOMAS WAS
23  ASKED TO REVIEW -- BUT THE SUBJECT MATTER OF THE DEPOSITION
24  TESTIMONY PROPOSED BY THE DEFENDANTS IS THE EXACT SAME SUBJECT
25  MATTER.  IT IS THE EXACT SAME OPINIONS AND CONCLUSIONS THAT, AS

KATE V. MAREE, Court Reporter

1  A RESULT OF THE DISCUSSIONS WITH CHRIS MONSEY, DR. THOMAS
2  TESTIFIED THAT HE HAD FORMED OPINIONS AND CONCLUSIONS, AND HE
3  EXPRESSED THOSE OPINIONS AND CONCLUSIONS AND HIS VIEWS TO
4  COUNSEL FOR RICOH REPEATEDLY, IN THOSE MANY, LONG TELEPHONE
5  CONVERSATIONS THAT ARE DOCUMENTED IN MR. MONSEY'S DECLARATION.
6       WHEN I TOOK DR. THOMAS' DEPOSITION LAST AUGUST, IT
7  WAS LIMITED SOLELY TO HIS COMMUNICATIONS WITH COUNSEL FOR
8  DEFENDANTS, AND I DID NOT ASK HIM TO REVEAL OR OTHERWISE
9  DISCUSS WHAT HE DID WITH COUNSEL FOR RICOH.  NEVERTHELESS,
10  DR. THOMAS, IN THE CONTEXT OF MY ASKING HIM, "WHAT DID YOU
11  DISCUSS DURING YOUR TELEPHONE CONVERSATION WITH COUNSEL FOR
12  DEFENDANTS ON JULY 23RD?" -- WHEN, AFTER HE WAS RETAINED THEY
13  ASKED HIM FOR THE FIRST TIME -- "OKAY, WHAT DID YOU FIND OUT
14  FROM RICOH?" OR, "WHAT CONFIDENTIAL INFORMATION WAS
15  DISCUSSED?" THAT IS WHEN HE SAID, "YES, I DID RECEIVE
16  CONFIDENTIAL INFORMATION FROM RICOH; YES, I CONSIDERED THE FACT
17  OF MY COMMUNICATIONS WITH RICOH CONFIDENTIAL, AND ALSO THE
18  SUBSTANCE OF THOSE COMMUNICATIONS TO BE CONFIDENTIAL."  HE
19  TESTIFIED THAT BEFORE HE WAS RETAINED BY SYNOPSYS, HE HAD
20  FORMED OPINIONS WITH RESPECT TO PATENTS AT ISSUE AND ITS
21  RELATIONSHIP TO THE PRIOR ART, WHICH IS THE VERY SUBJECT OF
22  TESTIMONY THE DEFENDANTS WOULD PROPOSE TO TAKE HIS DEPOSITION.
23       THE COURT:  I HAVE NO DOUBT, THAT IN THE PROCESS OF
24  HIS PROPOSED DEPOSITION HERE, HE WILL SAY THINGS THAT HE SAID
25  TO RICOH IN CONFIDENCE AT THE TIME; ONE WOULD HOPE HIS POSITION

KATE V. MAREE, Court Reporter

7

1  WOULD BE CONSISTENT, IN ANY EVENT, BUT IT SEEMS TO ME THAT IS
2  NOT THE ISSUE.  THE ISSUE IS NOT WHETHER HE WOULD SAY SOMETHING
3  THAT WAS IN CONFIDENCE BUT, IN THE PROCESS OF THAT TESTIMONY,
4  WILL HE REVEAL CONFIDENTIAL INFORMATION OBTAINED FROM RICOH TO
5  HIM, AND THEREBY COMPROMISE RICOH'S WORK PRODUCT AND
6  ATTORNEY/CLIENT PRIVILEGES?
7       MR. BROTHERS:  IRONICALLY, THE DEFENDANTS POINTED
8  OUT IN THEIR PAPERS THAT AT DR. THOMAS' DEPOSITION -- EVEN WITH
9  THE CAUTIONARY INSTRUCTION TO NOT REVEAL ANY COMMUNICATIONS OR
10  ANY CONFIDENTIAL INFORMATION RECEIVED FROM RICOH -- HE DID SO,
11  AND DEFENDANTS CALLED THAT DISCLOSURE GRATUITOUS, AND NOT AT
12  THEIR REQUEST.
13       THE COURT:  BUT THE SUBJECT MATTER OF THAT
14  DEPOSITION -- THIS IS A LITTLE BIT OF A CHICKEN OR EGG
15  PROBLEM IF WE ARE TALKING ABOUT LATER -- IS THAT, IN TRYING TO
16  DISCERN WHETHER A PERSON IS DISQUALIFIED OR NOT, AND WHETHER HE
17  RECEIVED CONFIDENTIAL INFORMATION, YOU HAVE TO ASK SOME
18  QUESTIONS, AND THEN SORT OF GO AROUND THE EDGE TO GIVE SOME
19  INFORMATION BUT, IN ANY EVENT, WHETHER THAT CAN BE DONE -- AND
20  I AM NOT SURE THAT CAN BE DONE WITHOUT HUGE RISK -- BUT, AS I
21  UNDERSTAND IT, THAT IS NOT THE ISSUE HERE, THAT WOULD NOT BE
22  THE SUBJECT OF THE DEPOSITION.  THE DEPOSITION, AS I UNDERSTAND
23  IT IS, YOU KNOW, TELL ME ABOUT YOUR DEVELOPMENT OF THE -- WHAT
24  IS THE PHRASE?
25       MISS CORBIN:  THE DAA.

KATE V. MAREE, Court Reporter

8

1       THE COURT:  YES, ABOUT THE DAA.  WHAT IS IT?  YOU
2  KNOW, QUESTIONS THAT GO TO THAT, WHICH WOULD NOT BE INFORMED
3  BY, WELL, RE: CLIENT TALKED WITH RICOH, THESE KINDS OF
4  DOCUMENTS, I REVIEWED THIS; OR WOULD IT?  THAT IS THE QUESTION:
5  CAN HE TESTIFY TO EVENTS, HISTORIC EVENTS PRE-DATING THE RICOH
6  RETENTION, WITHOUT REVEALING ANY CONFIDENTIAL INFORMATION
7  SUBSEQUENTLY OBTAINED DURING THE COURSE OF THAT CONSULTATION?
8       MR. BROTHERS:  I DO NOT THINK ANY PERSON CAN ANSWER
9  THAT QUESTION, EXCEPT DR. THOMAS, WHEN PUT IN THAT
10  CIRCUMSTANCE.  THE CASE LAW, THE **SHADOW TRAFFIC** CASE AND THE
11  **CORDI** CASE THAT WE HAVE CITED, BOTH SAY THAT THOSE VERY
12  CONCERNS ARE A STRONG REASON WHY SIDE-SWITCHING EXPERTS SHOULD
13  BE DISQUALIFIED.  THERE ARE TWO OTHER CONSIDERATIONS THAT THE
14  COURT SHOULD KEEP IN MIND.  THE ONLY BASIS THAT DEFENDANTS HAVE
15  IDENTIFIED FOR TAKING DR. THOMAS' DEPOSITION ARE TWO ARTICLES
16  THAT HE WAS A CO-AUTHOR OF -- HE WAS NOT THE LEADING AUTHOR --
17  HE WAS A CO-AUTHOR, HE WAS THE LAST NAME LISTED OR, IN
18  SCHOLASTIC PARLANCE, THAT USUALLY MEANS HE IS THE ONE WHO
19  CONTRIBUTED THE LEAST.
20       SIGNIFICANTLY, DR THOMAS' MENTEE ON THE DAA SYSTEM,
21  DR. KOWALSKI, HAS BEEN RETAINED BY COUNSEL FOR DEFENDANTS.
22  DR. KOWALSKI, I ASSUME, CAN PROVIDE DEFENDANTS WHATEVER THEY
23  WANT TO KNOW WITH RESPECT TO THE DAA SYSTEM.  DEFENDANTS HAVE
24  IDENTIFIED 30 FACT WITNESSES WITH RESPECT TO PRIOR ART.  THERE
25  IS NO COMPELLING REASON THAT DR. THOMAS' DEPOSITION SHOULD BE

KATE V. MAREE, Court Reporter

**10**

1  ALLOWED TO PROCEED, IN LIGHT OF THE SIGNIFICANT RISKS, NOT OF
2  RICOH'S MAKING. WHY SHOULD RICOH'S CONFIDENTIAL INFORMATION BE
3  JEOPARDIZED BY ACTIONS OF NO FAULT OF RICOH'S?
4       THE COURT:  I UNDERSTAND BOTH POINTS, AND I AM GOING
5  TO FIRST ASK COUNSEL ON THE SECOND POINT, BECAUSE I AM CURIOUS
6  ABOUT THAT MYSELF. THE FIRST POINT: WHAT IS YOUR VIEW OF THE
7  **ELLISON** CASE, WHICH ADDRESSES THIS ISSUE AND USES THE TERM
8  "ORTHODOX" DISCOVERY OF FACTS, WHEN SOMEBODY WHO HAD
9  BEEN PREVIOUSLY RETAINED? THE COURT SAYS, "WHILE THE EXPERT'S
10 PRE-ESTABLISHED FACTS AND GAINS WILL OFTEN BE HARD TO
11 DISTINGUISH FROM THE ACQUIRED DEVELOPMENTS" -- THE ACQUIRED
12 DEVELOPMENT OF COURSE OF RETENTION BY OTHERS -- "WE THINK THE
13 PURPOSE OF THE RULE IS TO PROTECT FROM DISCOVERY ONLY THOSE
14 FACTS AND OPINIONS THE EXPERT HAS ACQUIRED AND DEVELOPED FOR
15 THE CLIENT WHO HIRED HIM, IN ANTICIPATION OF WHAT HE NEEDS FROM
16 THE TRIAL."
17      CAN YOU GIVE ME AN EXAMPLE OF HOW, WHEN HE IS BEING
18 ASKED ABOUT HIS ROLE IN THE DEVELOPMENT OF THE DAA, WHICH
19 PRE-DATES RETENTION BY RICOH, HE WILL LIKELY REVEAL SOMETHING
20 THAT HE HAD SUBSEQUENTLY LEARNED?
21      MR. BROTHERS:  EVERY ONE OF COUNSEL'S QUESTIONS ARE
22 GOING TO BE TARGETED TOWARDS ELICITING INFORMATION IN SUCH A
23 WAY THAT THE DAA SYSTEM WOULD BE CHARACTERIZED AS INVALIDATING
24 PRIOR ART TO RICOH'S PATENT. DR. THOMAS MAY NOT NECESSARILY
25 HAVE A FULL APPRECIATION OF THE INTENT OF COUNSEL IN ELICITING

1  SPECIFIC INFORMATION, BUT MAYBE HE WILL, SINCE HE HAS REVIEWED
2  THE PATENT AND CERTAINLY KNOWS WHAT HE HAS DONE IN THE PAST,
3  BUT DR. THOMAS DOES NOT CONTROL THE AGENDA OF HIS DEPOSITION.
4  IF COUNSEL FOR DEFENDANTS IS PERMITTED TO TAKE DR. THOMAS'
5  DEPOSITION, THE ONLY OBJECTIVE OF THAT DEPOSITION IS GOING TO
6  BE FRAMING INFORMATION, OBTAINING INFORMATION IN SUCH A WAY
7  THAT THEY WOULD LATER BE ABLE TO TRY TO USE TO INVALIDATE
8  RICOH'S PATENT; THERE IS NO OTHER REASON THAT I CAN THINK OF.
9       THE COURT:  WELL, THEN THAT IS NO SECRET HOW HE WILL
10 TESTIFY --
11      MR. BROTHERS:  RIGHT, RIGHT.
12      THE COURT:  -- BUT HOW WILL THAT REVEAL SOMETHING
13 CONFIDENTIAL THAT WAS TOLD, FOR INSTANCE, BY RICOH'S COUNSEL TO
14 DR. THOMAS?
15      MR. BROTHERS:  LET ME GIVE YOU AN EXAMPLE: FIRST OF
16 ALL, LET ME TAKE A STEP BACK. I BELIEVE THE **ELLISON** CASE WAS
17 A FORMER FACT WITNESS, WHO WAS INVOLVED IN THE UNDERLYING
18 EVENTS AT ISSUE. I DO NOT BELIEVE THAT HE WAS AN INDEPENDENT
19 EXPERT THAT NEVER HAD ANY PRIOR AFFILIATION WITH EITHER PARTY
20 BUT RATHER, I BELIEVE, HE WAS AN ACTOR IN THE UNDERLYING FACTS;
21 THAT IS A DISTINGUISHING POINT THAT IS PRESENT HERE. IN
22 ADDITION --
23      THE COURT:  WELL, I AM NOT SURE, THE COURT TALKS
24 ABOUT RULE 26 --
25      MR. BROTHERS:  HE HAD BEEN DESIGNATED AS AN EXPERT,

**11**

1  AND I MAY BE MISTAKEN, BUT MY RECOLLECTION OF THAT CASE WAS
2  THAT THE WITNESS, THE PROPOSED EXPERT, HAD OBTAINED MUCH OF HIS
3  KNOWLEDGE AS A RESULT OF, I THOUGHT, HIS EMPLOYMENT BY ONE OF
4  THE PARTIES. BUT TO RESPOND TO YOUR HONOR'S QUESTION, WITH
5  RESPECT TO HOW WOULD A DEPOSITION OF DR. THOMAS, LIMITED TO THE
6  DAA SYSTEM, LEAD TO INEVITABLE DISCLOSURE? ASSUMING THAT
7  DR. THOMAS -- SINCE THE QUESTIONS ARE GOING TO BE PHRASED IN
8  LIGHT OF THE '432 PATENT, QUESTIONS OR CONCEPTS THAT ARE IN THE
9  PATENT, FOR EXAMPLE, WHAT IS AN EXPERT RULE? WHAT IS AN
10 INDEPENDENT, ARCHITECTURAL ACTION AND CONDITION? THESE
11 SPECIFIC TERMS THAT ARE USED IN THE PATENT, TO THE EXTENT THAT
12 THOSE CONCEPTS ARE GOING TO BE INCLUDED IN THE INQUIRY -- AND
13 I QUITE FRANKLY CANNOT UNDERSTAND HOW THEY COULD NOT BE
14 INCLUDED IN THE INQUIRY -- WOULD NECESSARILY IMPLICATE
15 DR. THOMAS' ANALYSIS OF THE PATENT AND THE OTHER PRIOR ART, NOT
16 JUST THE DAA SYSTEM, AS WELL AS HIS OPINIONS AND CONCLUSIONS
17 THAT HE FORMED.
18      WE CANNOT EXPECT HIM TO UN-LEARN OR UN-REMEMBER THE
19 WORK THAT HE HAS ALREADY DONE FOR RICOH. FOR THAT REASON, THE
20 COURTS IN BOTH **SHADOW TRAFFIC** AND **CORDI** HAVE SAID THAT IT IS
21 INAPPROPRIATE TO EVEN PUT THE WITNESS IN THAT CIRCUMSTANCE,
22 ESPECIALLY IF IT IS NOT ABSOLUTELY NECESSARY INFORMATION, WHERE
23 WE HAVE WITNESSES HERE, SUCH AS DR KOWALSKI, OR THE OTHER 28
24 EXPERTS THAT ARE FACT WITNESSES, THAT HAVE BEEN IDENTIFIED BY
25 THE DEFENDANT, WHO HAVE PROVIDED INFORMATION.

**12**

1       THE COURT:  LET ME ASK YOU THESE QUESTIONS:
2  NUMBER ONE, FIRST OF ALL, WHY, FACTUALLY, IS NOT THERE A RISK
3  HERE OF SOME COMPROMISE OF INTEGRITY OR CONFIDENCE, EVEN IF YOU
4  TRY TO LIMIT IT? NUMBER TWO, WHAT IS THE NEED, IF YOU HAVE GOT
5  DR. KOWALSKI'S EXPERT EVIDENCE?
6       MISS CORBIN:  OKAY. I WILL TAKE THE SECOND POINT
7  FIRST, PERHAPS THAT WOULD BE HELPFUL. DR. THOMAS IS A
8  SPECIALIST IN LOGIC SYNTHESIS AND HE IS A LUMINARY IN THE
9  FIELD. NOT ONLY IS HE ONE OF THE PRINCIPAL ENGINEERS IN THE
10 DEVELOPMENT OF THIS EARLY LOGIC SYNTHESIS SOFTWARE, KNOWN AS
11 DAA, BUT HE WAS THE SUPERVISOR OF SEVERAL OF THESE OTHER
12 PERSONS AND HE HAD A LONGER -- HIS TIME IN THE FIELD GOES BACK
13 EARLIER THAN SOME OF THESE OTHER PEOPLE -- AND HE HAD A BROADER
14 KNOWLEDGE SET THAN SOME OF THESE OTHER PEOPLE, IN TERMS OF HOW
15 DAA FIT WITH OTHER SYSTEMS; YOU KNOW, HOW IT WAS DIFFERENT FROM
16 OTHER PRIOR ART SYSTEMS THAT WERE THERE IN THE TIME, IN THE
17 PRIOR ART AND, YOU KNOW, BEFORE WE TAKE HIS DEPOSITION, WE
18 CANNOT KNOW, FOR A FACT, BUT WE SUSPECT, HIGHLY SUSPECT, THAT
19 HE HAS A SUBSET OF KNOWLEDGE THAT IS NOT RESIDENT WITH, OR THAT
20 OTHERS CAN TESTIFY ABOUT.
21      IT IS TRUE THAT WE HAVE RETAINED DR. KOWALSKI. HE
22 WAS A GRADUATE STUDENT, HE DID WORK UNDER DR. THOMAS FOR A
23 TIME. HE ALSO WORKED ON THE DAA SYSTEM, BUT ON THAT ONE
24 SPECIFIC, CONCRETE, SYSTEM SOFTWARE, AND SO WE DO BELIEVE THAT
25 THERE IS TESTIMONY THAT DR. KOWALSKI COULD HAVE AND PERSPECTIVE

1 THAT HE HAS, AS TO WHAT WAS KNOWN IN THE PRIOR ART; WHAT WAS
2 KNOWN TO PEOPLE OF ORDINARY SKILL IN THOSE EARLY DAYS THAT
3 OTHERS WOULD NOT HAVE?  AS TO --
4         THE COURT:  WELL, HOLD ON.  SO, WHAT YOU WILL WANT
5 FROM DOCTOR -- I THINK YOU MEANT DR. THOMAS?
6         MISS CORBIN:  YES, DR. THOMAS, SORRY.
7         THE COURT:  WHAT YOU WILL WANT FROM HIM, AMONG OTHER
8 THINGS, IS WHAT WAS KNOWN IN THE FIELD, NOT JUST HIS
9 DEVELOPMENT OF DAA BUT, MORE GENERALLY, APPLIES TO THE GENERAL
10 KNOWLEDGE --
11         MISS CORBIN:  HE WAS CERTAINLY AWARE, YOUR HONOR, OF
12 OTHER SYSTEMS, THAT WERE THE OTHER COMPETITIVE SYSTEMS AT THE
13 TIME THAT WERE BEING DEVELOPED, AND HE IS ABLE, HE IS FAMILIAR
14 WITH THOSE, HE IS ABLE TO PLACE THOSE INTO HISTORICAL CONTEXT
15 IN TERMS OF WHEN THEY WERE DEVELOPED, AND WE THINK THAT IS ALSO
16 AN IMPORTANT PART OF THE COURT ULTIMATELY UNDERSTANDING WHAT IS
17 PRIOR ART; WHAT WAS KNOWN IN THE FIELD, PRIOR TO ANY ALLEGED
18 INVENTION ON THE BEHALF OF THE PLAINTIFF HERE?
19         THE COURT:  WHAT EVIDENCE DO YOU HAVE THAT OTHER
20 PEOPLE WHO ARE AVAILABLE, WITHOUT THE RISK OF TAINT OR
21 COMPROMISE, COULD NOT PROVIDE THAT INFORMATION, INCLUDING
22 DR. KOWALSKI?
23         MISS CORBIN:  WELL, YOUR HONOR, I JUST -- THERE IS
24 NO WAY FOR ME, SINCE WE HAVE HAD NO SUBSTANTIVE COMMUNICATIONS
25 WITH DR. THOMAS, WE ONLY KNOW HIM BY REPUTATION, BY HIS

1 PUBLICATIONS IN THE FIELD, AND I WILL JUST ADD FOR THAT POINT,
2 IT IS NOT JUST FOR TWO PUBLICATIONS FOR WHICH DR. KOWALSKI IS
3 ONE OF SEVERAL AUTHORS; HE HAS ALSO INDEPENDENTLY AND SOLELY
4 AUTHORED MULTIPLE OTHER REFERENCES THAT WE ARE REFERRING TO,
5 AND WILL BE RELYING ON FOR HISTORICAL CONTEXT AS TO THE PRIOR
6 ART, BUT IT IS HARD TO PROVE A NEGATIVE SO, BECAUSE WE HAVE NOT
7 HAD ANY SUBSTANTIVE COMMUNICATION WITH DR. THOMAS, IT IS
8 IMPOSSIBLE FOR US TO SAY THAT THERE IS A DIFFERENTIAL.
9         WE JUST BELIEVE, BASED ON THE PUBLICATIONS, WHO HE
10 IS, THE TIME PERIOD WE KNOW HE WAS WORKING, HIS HIGHER, YOU
11 KNOW, HE WAS A PROFESSOR AT CARNEGIE MELLON AT THE TIME THIS
12 WAS DEVELOPED.  DR. KOWALSKI, FOR EXAMPLE, WAS A GRADUATE
13 STUDENT, JUST WORKING UNDER DR. THOMAS AT THAT TIME, SO I DO
14 BELIEVE THAT THE KNOWLEDGE SET OF DR. THOMAS IS GREATER.
15         THE COURT:  CERTAINLY, DR. KOWALSKI WILL HAVE PRETTY
16 GOOD INFORMATION ABOUT, FIRST OF ALL, WHAT DR. KOWALSKI HIMSELF
17 KNOWS, AS WELL AS HAVING WORKED WITH DR. THOMAS, AS TO WHAT HE
18 BELIEVES DR. THOMAS KNOWS AND CAN ADD, IF THERE IS A DIFFERENCE
19 THERE.  WHAT DO YOU KNOW, BASED ON THAT?
20         MISS CORBIN:  I WOULD HAVE TO SAY, PERSONALLY, YOUR
21 HONOR, I DO NOT KNOW.  MR. KELLY MAY HAVE A BETTER SENSE OF
22 THAT, OR PEOPLE WHO HAVE HAD -- I HAVE HAD NO INDEPENDENT
23 INTERACTION EXCEPT FOR -- I TAKE THAT BACK -- MAYBE ONE WITH
24 DR. KOWALSKI HIMSELF, BUT I DO NOT KNOW THAT DR. KOWALSKI
25 EITHER CAN BE IN A POSITION TO KNOW WHETHER THERE IS A SUBSET

1 OF INFORMATION AND CONTEXT THAT DR. THOMAS HAS, AND CAN
2 PROVIDE, DIFFERENT FROM WHAT DR. KOWALSKI HIMSELF KNOWS.  I
3 MEAN, HE WILL KNOW, HE WILL BE ABLE TO SPEAK TO THOSE THINGS HE
4 KNOWS DR. THOMAS KNOWS, BUT HE WILL BE SIMILARLY SITUATED TO
5 ME, IN THAT HE WILL NOT BE ABLE TO SPEAK TO THOSE ASPECTS THAT
6 HE DOES NOT KNOW, AND WHICH ARE HIGHLY MATERIAL, BECAUSE, AS I
7 THINK PLAINTIFF'S COUNSEL SAID, IT IS THE CONTENTION OF THE
8 DEFENDANTS THAT THE DAA SYSTEM IS '102 ANTICIPATORY PRIOR ART.
9         SO, IT IS ONE OF THE VERY IMPORTANT PIECES OF PRIOR
10 ART THAT WILL BE AT ISSUE IN THIS CASE, AND I WOULD POINT THE
11 COURT -- YOU ALREADY MENTIONED THE *ELLISON* CASE -- BUT I THINK
12 THAT THE ***ATARI VS. SEGA*** CASE IS ALSO VERY RELEVANT; IT IS FROM
13 THE NORTHERN DISTRICT.  I THINK THAT CASE MAKES VERY CLEAR AND,
14 AS YOUR HONOR ALSO MENTIONED, IT DOES ALSO REFER TO THE
15 ADVISORY COMMITTEE NOTES TO THE FEDERAL RULES OF CIVIL
16 PROCEDURE, RULE 26.  IN THAT CASE, THEY ALLOWED THE DISCOVERY
17 TO GO FORWARD AND, EVEN THOUGH THERE WAS SUCH AN OVERLAP, AS IS
18 YOUR HONOR'S CONCERN HERE, THEY SAID THAT, EVEN TO THE EXTENT
19 THERE IS OVERLAP, THAT THE WITNESS COULD TESTIFY, AND IT WAS
20 ONLY WITH RESPECT TO THOSE THINGS THAT WERE EXCLUSIVELY
21 OBTAINED, OR FORMED EXCLUSIVELY UNDER THE EXPERT
22 RETENTION, THAT WOULD BE EXCLUDED.
23         TO THE EXTENT THAT THEY OVERLAPPED WITH THE
24 PRE-EXISTING KNOWLEDGE OR PRE-EXISTING OPINIONS, THAT TESTIMONY
25 WAS GOING TO BE ALLOWED.  I THINK THAT CASE IS VERY IMPORTANT;

1 IT TALKS TO THE PUBLIC POLICY, AND IT WAS OUR CONCERN HERE,
2 YOUR HONOR, THAT PART OF THE REASON, IN LARGE PART, THAT THIS
3 HAS BEEN CARRYING ON SO LONG, IS THAT THE PRIMARY MOTIVATION OF
4 THE PLAINTIFFS IS TO LOCK-UP THIS VERY IMPORTANT WITNESS AND
5 THIS VERY IMPORTANT INFORMATION, THAT WE BELIEVE ANTICIPATES
6 AND WILL INVALIDATE THEIR PATENT.
7         THE ADVISORY COMMITTEE NOTES ARE VERY CLEAR ON THAT
8 AS WELL THAT, YOU KNOW, EVEN IF TODAY -- I MEAN DR. THOMAS IS
9 ACTUALLY NO LONGER CONSULTING WITH PLAINTIFF IT IS MY
10 UNDERSTANDING -- BUT EVEN IF HE PRESENTLY WERE STILL ACTING AS
11 A NON-TESTIFYING CONSULTANT, UNDER THE ADVISORY COMMITTEE
12 NOTES, UNDER THE ***ATARI VS. SAGA*** CASE, THE **WANG LABORATORIES VS.**
13 **CFR** CASE, ALL SPEAK TO THAT SUBJECT, AS WELL AS THE **ELLISON**
14 CASE, WE WOULD BE STILL ENTITLED TO TAKE HIS DEPOSITION, AS A
15 PERCIPIENT WITNESS, AS TO THE FACTS HE HAS AS TO THE
16 DEVELOPMENT OF HIS OWN DAA SYSTEM, AS WELL AS ANY KNOWLEDGE AND
17 OPINIONS HE HAD FORMED PRIOR TO THE DATE OF HIS RETENTION.
18         UNDER THE ***ATARI VS. SEGA*** CASE, EVEN TO THE EXTENT
19 THEY OVERLAP, THOSE OPINIONS AND THAT INFORMATION OVERLAPS, IT
20 IS DISCOVERABLE.  IT IS ONLY WHERE THERE IS CERTAIN INFORMATION
21 THAT IS EXCLUSIVELY OBTAINED, OR FORMED IN ANTICIPATION OF THE
22 TRIAL, AND IN CONTEXT OF THE RETENTION AS AN EXPERT, THAT WOULD
23 BE EXCLUDED; AND, YOU KNOW, THERE ARE THINGS SHORT OF EXCLUDING
24 US FROM TAKING THE DEPOSITION OF DR. THOMAS.
25         I HAVE HAD OTHER OCCASIONS WHERE A REFEREE HAS

1  ATTENDED A DEPOSITION, WHO COULD BE THERE TO ADDRESS ISSUES AS
2  THEY AROSE, TO THE EXTENT THAT, YOU KNOW, WE ARE FACING AN
3  ISSUE WHETHER SOMETHING -- I CANNOT, YOU KNOW, I AM NOT SAYING
4  THERE IS NOTHING EXCLUSIVELY OBTAINED -- BUT TO THE EXTENT SOME
5  QUESTION WE ASKED IMPINGED ON THAT, IT COULD BE ADDRESSED, YOU
6  KNOW, RIGHT THERE ON THE SPOT WITH A REFEREE, AND I HAVE DONE
7  THAT IN OTHER CASES, AND I THINK THAT, ESPECIALLY GIVEN THE
8  POLICY CONCERNS OF PEOPLE, YOU KNOW, IN THIS CONTEXT, RETAINING
9  EXPERTS JUST SO THAT THEY CAN LOCK-UP INFORMATION, THAT THAT
10 WOULD BE A PREFERABLE WAY TO GO, THAN JUST EXCLUDING THE
11 TESTIMONY ALTOGETHER.
12      THE COURT:  LET ME ASK YOU THIS MORE SPECIFIC
13 QUESTION, WITH RESPECT TO THE DAA, WHICH IS THE MORE PRECISE
14 TOPIC: IS IT YOUR CONTENTION THAT HE IS NEEDED FOR THAT?  NOT
15 OPINION, NOT SO MUCH OPINION EVIDENCE AS TO THE STATE OF THE
16 ART AT THE TIME BUT, REALLY, MORE THE HISTORICAL FACTS?
17 IS THERE SOME REASON WHY DR. KOWALSKI COULD NOT SUPPLY THAT?
18      MISS CORBIN:  I THINK TO SOME EXTENT AND, MAYBE TO A
19 LARGE EXTENT, DR. KOWALSKI WILL BE ABLE TO DO THAT.  I DO
20 BELIEVE, THOUGH, THERE WILL BE A SET OF INFORMATION, A GREATER
21 SET OF INFORMATION THAT RESIDES WITH DR. THOMAS AND, YOU KNOW,
22 I BELIEVE THAT THE CASES SPEAK TO THE PUBLIC POLICY FAVORING
23 WITH THE DISCOVERY OF THIS INFORMATION, TO THE EXTENT IT WAS
24 OBTAINED AND HAD BY DR. THOMAS PRIOR TO HIS RETENTION BY RICOH,
25 HERE; THE OTHER THING, I DO NOT KNOW.

KATE V. MAREE, Court Reporter

---

1  I KNOW YOUR HONOR HAS READ THE MATERIALS, THERE IS
2  A LOT OF MATERIAL THERE, SO IT IS TOUGH.  THE INFORMATION WE
3  HAVE FROM DR. THOMAS IS THAT HE WAS RETAINED INITIALLY FOR 10
4  HOURS; HE DID SPEND 10 HOURS ON THE MATTER WITH PLAINTIFF'S
5  COUNSEL.  HE WAS THEN HIRED FOR AN ADDITIONAL 10, IN WHICH HE
6  SAID HE DID NOT DO VERY MUCH WORK UNDER THAT ADDITIONAL 10 AND,
7  IN FACT, DID NOT CHARGE FOR IT, SO I AM NOT SAYING THERE IS NOT
8  A SUBSET OF INFORMATION AND OPINIONS THAT, PERHAPS, WERE
9  GENERATED DURING THIS 10, 12, SOMETHING LESS THAN 20 HOURS.
10      I AM JUST SAYING THAT IT DOES NOT SEEM LIKE IT CAN
11 BE THAT SUBSTANTIAL A SET OF INFORMATION, GIVEN THE SMALL
12 AMOUNT OF TIME THAT HE WAS WORKING ON THE MATTER, AND THAT
13 GIVEN THE MATERIALITY OF THE SUBJECT MATTER AND THE FACT THAT
14 THOSE FACTS AND THAT INFORMATION WAS KNOWN TO HIM PRIOR TO THE
15 RETENTION, IT SEEMS LIKE IT WOULD BE APPROPRIATE TO PUT SOME
16 OTHER PROTECTION IN PLACE, IF APPROPRIATE, BUT TO ALLOW THE
17 TESTIMONY TO BE TAKEN.
18      THE COURT:  IF THIS WERE A -- TO GET TO MY FIRST
19 QUESTION: IF YOU HAD TO ENUMERATE THE SORT OF DISCRETE AREAS OF
20 INQUIRY, AND TREAT THIS FOR A MOMENT LIKE A 30(B)(6)
21 DEPOSITION, WHAT WOULD THEY BE FOR DR. THOMAS -- FOR HIS,
22 OBVIOUSLY THE DEVELOPMENT OF THE DAA?
23      MISS CORBIN:  YES, ALL THE FEATURES OF THE DAA
24 SYSTEM, YOU KNOW, WHAT ASPECTS IT HAD?  WHETHER -- I MEAN, ONE
25 OF THE THINGS PLAINTIFF'S COUNSEL MENTIONED IS, FOR EXAMPLE,

KATE V. MAREE, Court Reporter

---

19

1  WHETHER DAA WAS AN EXPERT SYSTEM, OR INCORPORATED IN AN EXPERT
2  SYSTEM?  A DEFINITION OF AN EXPERT SYSTEM IS CERTAINLY
3  SOMETHING THAT DR. THOMAS UNDERSTOOD PRIOR TO HIS BEING
4  RETAINED BY PLAINTIFF'S COUNSEL.  I MEAN, THESE ARE IDEAS, THEY
5  ARE ELEMENTS OF A CLAIM THAT HAVE A COMMON, ORDINARY MEANING
6  AND HE CERTAINLY WILL BE ABLE TO SPEAK TO -- WITHOUT OFFERING
7  AN OPINION -- WHETHER CERTAIN ELEMENTS OF THE CLAIM ARE ASPECTS
8  OF THE DAA SYSTEM?  AND WHEN THOSE WERE ASPECTS OF THE DAA
9  SYSTEM, IN TERMS OF ESTABLISHING THEM AS PRIOR ART?
10      HE WILL ALSO BE ABLE TO, WE EXPECT, SPEAK TO THE
11 OTHER ART THAT WAS OUT THERE, AND THE TIME, AND TO PLACE ALL OF
12 THESE THINGS IN CONTEXT, IN TERMS OF, YOU KNOW, WHERE IT
13 DISTINGUISHED AN EXPERT SOFTWARE OF THIS TYPE, THAT HAD AN
14 EXPERT SYSTEM, FROM OTHER TYPES OF SOFTWARE?  HE HAS BEEN IN
15 THE INDUSTRY SINCE ITS INCEPTION AND HE HAS A UNIQUE SET OF
16 KNOWLEDGE, IN TERMS OF THAT HISTORICAL PERSPECTIVE, OF THE
17 TIMING AND THE DEVELOPMENT OF THAT TYPE OF SOFTWARE.
18      THE COURT:  IS THAT BASICALLY IT, THOSE TWO AREAS?
19      MISS CORBIN:  WELL, IT WOULD BE ANY INFORMATION THAT
20 HE HAS WITH RESPECT TO ANY PRIOR ART SYSTEMS -- HIS DAA SYSTEM
21 IN PARTICULAR -- AND THEN, YOU KNOW, ESTABLISHING WHAT ONE OF
22 ORDINARY SKILL WOULD HAVE KNOWN ABOUT THE SYSTEMS THAT EXISTED
23 AT THE TIME, AND WHAT THEY WOULD HAVE UNDERSTOOD BY CERTAIN
24 TERMS AT THE TIME INCLUDING, YOU KNOW, WHAT WAS AN EXPERT
25 SYSTEM?  HOW DID IT DIFFER FROM OTHER SYSTEMS?, AND SO ON.

KATE V. MAREE, Court Reporter

---

20

1  THERE WOULD BE, PROBABLY, OTHER ELEMENTS OF THE CLAIM THAT HAVE
2  ORDINARY MEANING THAT WOULD BE, YOU KNOW, SIMILAR SUBJECTS OF
3  INQUIRY.
4      THE COURT:  ALL RIGHT, MOVING BACK HERE.
5      MR. BROTHERS:  THANK YOU, YOUR HONOR.  WITH RESPECT
6  TO THE ATARI CASE, THAT WAS A CASE INVOLVING A FORMER EMPLOYEE
7  OF THE OPPOSING SIDE, WHO HAD MADE VOLUNTARY DISCLOSURE OF
8  INFORMATION DURING SETTLEMENT NEGOTIATIONS.  HE WAS THE
9  INVENTOR AND HE WAS AN INSTRUMENTAL ACTOR IN MANY OF THE
10 UNDERLYING FACTS GIVING RISE TO THE VERY DISPUTE TO THE PATENT
11 AT ISSUE.  HE, AS A RESULT, WAS HEAVILY INVOLVED AS A FACT
12 WITNESS; HE WAS NOT A SIDE-SWITCHING, NON-FACT WITNESS, SUCH AS
13 DR. THOMAS IS PRESENTED HERE.
14      I HAVE SOME CONCERNS, SOME SIGNIFICANT CONCERNS WITH
15 RESPECT TO THE PROPOSED SCOPE OF DR. THOMAS' DEPOSITION.  THERE
16 IS NO EVIDENCE IN THE RECORD, NON WHATSOEVER, THAT DR. THOMAS
17 PROVIDES ANYTHING UNIQUE; THERE IS MERELY SPECULATION OF
18 COUNSEL, WITHOUT EVEN HAVING SPOKEN TO DR. KOWALSKI TO
19 DETERMINE THE LIMITS OF HIS KNOWLEDGE, AND DETERMINE WHY THE
20 INQUIRY SHOULD BE SUBJECTED TO SUCH SIGNIFICANT RISK, WITH SO
21 LITTLE INFORMATION.  DR. KOWALSKI, I ASSUME, WOULD HAVE A VERY
22 GOOD FEEL FOR WHAT WAS GOING ON WITH DAA AND MANY OF THESE
23 OTHER AREAS, IF NOT ALL OF THE OTHER AREAS THAT COUNSEL HAS
24 IDENTIFIED.
25      IT SEEMS TO ME THAT, IF THE COURT IS AT ALL INCLINED

KATE V. MAREE, Court Reporter

1  TO EVEN ENTERTAIN THE POSSIBILITY OF PERMITTING DR. THOMAS'
2  POTENTIAL DEPOSITION, IT SHOULD BE DEFERRED UNTIL THE VERY END
3  OF THE CASE, AND A SIGNIFICANT SHOWING BE MADE OF WHAT AREAS,
4  IF ANY, ARE SO CRUCIAL THAT ONLY DR. THOMAS, OF ANY OF THE
5  PEOPLE IN THE WORLD WHO KNOW ABOUT THESE SYSTEMS, CAN ANSWER
6  THEM, AND NO OTHER WITNESSES CAN ANSWER THEM.  THEN, WE WOULD
7  HAVE TO GIVE SERIOUS CONSIDERATION TO WHAT STEPS COULD BE TAKEN
8  TO PREVENT THE DEFENDANTS FROM BENEFITTING FROM ACTIONS THAT
9  WERE NOT RICOH'S FAULT.
10        IF IT WERE MY PREFERENCE, THIS WOULD HAVE NEVER
11  HAPPENED, AND DR. THOMAS WOULD STILL BE A CONSULTING EXPERT FOR
12  RICOH, AND I THINK IT IS A BIT ARTIFICIAL TO VIEW THIS, IN THE
13  ABSENCE OF THE UNDERLYING ACTIONS OF COUNSEL FOR DEFENDANTS,
14  WHICH HAVE BROUGHT US TO THIS POINT.
15        IN THE **WANG** CASE, THE COURT NOTED THAT THERE WAS NO
16  SUGGESTION THERE THAT COUNSEL OR THE EXPERT WITNESS HAD ACTED
17  IN ANY WAY INAPPROPRIATELY AND, NEVERTHELESS, THE EXPERT WAS
18  STILL DISQUALIFIED, AND I FIND IT IRONIC THAT IN THE **WANG** CASE,
19  THAT THE FIRM SEEKING DISQUALIFICATION WAS THE HOWREY FIRM.
20        IN THE **SHADOW TRAFFIC** AND **CORDI** CASES, WHERE THESE
21  ISSUES WERE WRAPPED UP INTO AN EXAMINATION OF THE ACTIONS OF
22  COUNSEL, WHO CAUSED THE EXPERTS TO SWITCH SIDES, THE COURT
23  FOUND THAT YOU CANNOT ISOLATE ONE FROM THE OTHER AND, AS A
24  RESULT, BOTH THE EXPERT AND COUNSEL, INCLUDING THE ENTIRE FIRM,
25  WERE DISQUALIFIED.

KATE V. MAREE, Court Reporter

---

1        **THE COURT:**  MISS CORBIN ARGUES THAT IT DOES NOT EVEN
2  MATTER, THAT SWITCHING COUNSEL DOES NOT MAKE ANY DIFFERENCE IN
3  THE ORTHODOX CONTEXT, AND THAT IS, EVEN IF HE HAD BEEN KEPT AS
4  HIS RETAINED, NON-TESTIFYING EXPERT -- AND THERE IS NO DISPUTE
5  ABOUT THAT -- AND THERE WAS NO APPROACH AT ALL, THAT UNDER SOME
6  CIRCUMSTANCES CONTEMPLATED BY THE ADVISORY COMMITTEE IN SOME OF
7  THESE CASES, THAT THAT DOES NOT NECESSARILY PUT THE PERSON OFF
8  LIMITS; THAT IT LEADS, WITH RESPECT, TO SO-CALLED ORTHODOX
9  TESTIMONY, SO I AM NOT SURE THAT MAKES IT ALL THAT MUCH
10  DIFFERENT.
11        **MR. BROTHERS:**  THE SUGGESTION OF MISS CORBIN WAS,
12  THAT SOMEHOW COUNSEL FOR RICOH WAS LOCKING-UP DR. THOMAS, AND
13  I TAKE SOME OFFENCE AT THAT; IT IS UNSUPPORTED BY ANYTHING
14  WITHIN THE RECORD.  THERE IS CONSIDERABLE EVIDENCE BY
15  MR. MONSEY THAT MORE THAN A YEAR PRIOR TO THIS EVER COMING UP,
16  AS PART OF RICOH'S DUE DILIGENCE IN DETERMINING WHETHER THERE
17  WAS AN ACTIONABLE CLAIM HERE, THOSE WERE THE CONSULTING
18  RELATIONSHIPS THAT WERE FORMED WITH DR. THOMAS, SO I THINK WE
19  CAN SET THAT TO ONE SIDE.
20        WITH RESPECT TO THE COURT'S INQUIRY OF THE SCOPE,
21  IF ANY, OF DR. THOMAS' DEPOSITION, SETTING ASIDE THE CONDUCT OF
22  COUNSEL, MY SUGGESTION WOULD BE THAT THERE NEEDS TO BE SOME
23  SHOWING MADE BY THE DEFENDANTS, MORE THAN WHAT IS HERE, OF WHY
24  DR. THOMAS' TESTIMONY IS SO UNIQUE AND SO NECESSARY, WHEN THEY
25  HAVE ALREADY RETAINED HIS PROTEGE, WHO CAN SPEAK TO EVERY

KATE V. MAREE, Court Reporter

---

1  SUBJECT THAT MISS CORBIN IDENTIFIED.
2        **THE COURT:**  LET ME NOW ASK YOU ABOUT THAT:  WHAT
3  ABOUT THAT?  I MEAN, THAT DID OCCUR TO ME, AS WELL.  IN SOME
4  WAYS, WE ARE SPEAKING IN A VACUUM; WE ARE SPEAKING, PERHAPS, IN
5  ADVANCE OF THAT STAGE WHERE ONE COULD ASSESS MORE PRECISELY THE
6  NEED OR NOT, AND THE SCOPE OF THAT NEED, OF HAVING TO TAKE THE
7  DEPOSITION OF DR. THOMAS, WHICH IS CERTAINLY NOT THE USUAL
8  COURSE OF THE WAY THESE THINGS PROCEED.  WHY NOT DEFER THIS
9  TO A POINT AND SEE IF YOU HAVE -- CAN DEMONSTRATE A SUBSTANTIAL
10  NEED, OR SOME KIND OF NEED?
11        **MISS CORBIN:**  YOUR HONOR, THAT WOULD BE A BURDEN
12  PLACED ON DEFENDANTS IN THIS CASE, THAT HAS NO SUPPORT IN ANY
13  AUTHORITY OR IN THE RULE, AND PLAINTIFF'S COUNSEL HAS NOT CITED
14  TO ANY, AND I NEED TO ADDRESS THE FACT THAT HE KEEPS CALLING TO
15  THE COURT'S ATTENTION TO DISTINGUISH THE CASES, **ATARI**
16  **ELLISON**, AND THESE OTHERS, FROM THE CIRCUMSTANCES HERE, WHICH
17  IS COMPLETELY NOT CORRECT.
18        IN THE **ATARI** CASE, THE PERSON WHO ESSENTIALLY
19  SWITCHED SIDES AND BECAME AN EXPERT FOR THE OTHER SIDE, WAS A
20  FORMER EMPLOYEE OF THE PATENTEE AND, IN FACT, ONE OF THE
21  INVENTORS OF THE VERY PATENT THAT WAS AT SUIT.  THERE IS NO
22  POSSIBILITY THAT THE INTEREST IN THE CONFIDENTIAL INFORMATION
23  HAD -- THE PATENTEE'S COMPANY'S CONCERN ABOUT ITS CONFIDENTIAL
24  INFORMATION BY A FORMER EMPLOYEE, AND ONE WHO ACTUALLY INVENTED
25  THE PATENT, IS ANY LESS THAN IN THIS CIRCUMSTANCE.  YET, THAT

KATE V. MAREE, Court Reporter

---

1  PERSON -- CERTAINLY, IT IS ACTUALLY MUCH HIGHER THAN IN THIS
2  CIRCUMSTANCE -- WAS ALLOWED TO BE DEPOSED, NEVERTHELESS, ON THE
3  UNDERLYING FACTUAL INFORMATION.
4        **THE COURT:**  BEFORE YOU GO, LET ME ASK YOU:  WHAT
5  ABOUT THAT?  IT SEEMS LIKE THE CASE IS EVEN MORE COMPELLING
6  THERE.
7        **MR. BROTHERS:**  I DISAGREE, BECAUSE I THINK THAT
8  THERE STILL NEEDS TO BE SOME SHOWING, GIVEN THE FACTUAL
9  CIRCUMSTANCES THAT WE HAVE HERE, THAT DR. THOMAS HAS TESTIMONY
10  THAT IS NOT CUMULATIVE TO THE INFORMATION THAT IS ATTEMPTED TO
11  BE SOUGHT, GIVEN THE RISKS THAT ARE PRESENTED UNDER THE FACTS,
12  AS WE HAVE THEM.
13        **MISS CORBIN:**  YOUR HONOR, I DO NOT WANT TO
14  INTERRUPT, BUT I WAS JUST WANTING TO FINISH MY DISTINGUISHING
15  THE CHARACTERISTICS.  I THINK WHAT ALL THESE CASES ARE AIMED
16  AT -- AND IT IS TRUE THAT IN ALL THESE CASES THE FACTS WERE ON
17  THE OTHER SIDE -- WHERE THE PERCIPIENT WITNESS HAD INFORMATION
18  ABOUT THE PATENT, THE ACCUSED DEVICE, FOR EXAMPLE, OR THE
19  PATENT, THE INVENTION PATENTED.  THAT IS NO LESS A FACTUAL
20  WITNESS, WITH MATERIAL INFORMATION, THAN A PERSON WHO HAS
21  DEVELOPED, YOU KNOW, IN HIS OWN CAREER, ONE OF THE PRINCIPAL
22  PIECES OF PRIOR ART, THAT WOULD BE INVALIDATING HERE.  THIS
23  JUST HAPPENS TO BE A DIFFERENT CIRCUMSTANCE, ADDRESSING AN
24  ISSUE OF VALIDITY: THE UNDERLYING PRIOR ART, WHICH WOULD BE
25  SUPPORTING INVALIDITY, AS OPPOSED TO THE INVENTION ITSELF, OR

KATE V. MAREE, Court Reporter

1  THE ACCUSED DEVICE ITSELF.

2  AGAIN, I CAN JUST REITERATE, THAT OF ALL THE

3  CITATION THAT HAS BEEN BROUGHT TO YOUR HONOR'S ATTENTION, THERE

4  IS NOTHING IN ANY OF THESE CASES THAT WOULD SUPPORT PLACING THE

5  BURDEN THAT PLAINTIFF'S COUNSEL SUGGESTS ON DEFENDANTS HERE, TO

6  PROVE IN ADVANCE THAT DR. THOMAS HAS, DEFINITELY HAS, SOME

7  SUBSET OF INFORMATION THAT, FOR EXAMPLE, DR. KOWALSKI DOES NOT

8  HAVE.

9  IN FACT, IT IS A BURDEN THAT WE COULD NEVER PROVE,

10  BECAUSE WE ARE NOT HAVING SUBSTANTIVE CONVERSATIONS -- WE HAVE

11  NOT HAD SUBSTANTIVE CONVERSATIONS WITH DR. THOMAS, AND WE

12  CERTAINLY WILL NOT BE NOW, IN LIGHT OF ALL THESE CIRCUMSTANCES.

13  WE JUST WANT TO TAKE HIS DEPOSITION TO HAVE THE BENEFIT OF THE

14  UNDERLYING FACTS THAT HE IS AWARE OF, THAT HE HAD IN HIS

15  POSSESSION, PRIOR TO HIS RETENTION BY PLAINTIFF'S COUNSEL.

16  **THE COURT:**  BUT I THINK THE POINT OF COUNSEL WAS

17  THAT YOU WILL HAVE A BETTER SENSE, ONCE THE EXPERT TESTIMONY IS

18  DEVELOPED, AND THE BASES FOR EXPERT TESTIMONY ARE DEVELOPED, AS

19  THIS CASE PROCEEDS, TO KNOW AT A LATER DATE MORE PRECISELY WHAT

20  THE NEED IS FOR DR. THOMAS, MORE PARTICULARLY THAN YOU DO AT

21  THIS STAGE.  AS YOU SIT HERE TODAY, AS YOU SAID, THAT MAYBE

22  YOUR CONVERSATIONS WITH DR. KOWALSKI, WITH A LIMITED DEFERMENT,

23  MAY HAVE MORE KNOWLEDGE BUT, STILL, YOU KNOW, THE GENERAL

24  DISCOVERY HAS BARELY BEGUN, I THINK, IN THIS CASE.

25  CERTAINLY, THIS COURT HAS DISCRETION GENERALLY,

KATE V. MAREE, Court Reporter

---

1  UNDER RULE 26(B)2, IN BALANCING BURDENS AND BENEFITS, IN A

2  LIMITED DISCOVERY, ORDERED DISCOVERY, SEQUENCED DISCOVERY; SO

3  I FRANKLY -- UNLESS YOU CAN TELL ME OTHERWISE ALTHOUGH THERE IS

4  MAYBE NO CASE ON POINT -- IT WOULD SEEM TO ME, IF I WANTED TO,

5  I WOULD HAVE THE AUTHORITY TO SAY WELL, I THINK WE OUGHT TO

6  SEE, AND STAGE IT; OR, DO IT IN THIS WAY AND, AS YOU SUGGEST,

7  THE IDEA OF A REFEREE, IF WE DEFINE THE BOUNDS OF THAT, IN

8  ORDER TO SET SOME GUIDELINES IN ADVANCE TO MINIMIZE THE RISK OF

9  COMPROMISING THE CONFIDENTIAL INFORMATION, AND ACTUALLY HAVING

10  A REFEREE THERE, IT SEEMS LIKE A PRETTY GOOD OPTION.

11  THERE ARE SEVERAL THINGS WE COULD DO, AND ONE OF

12  THOSE IS TO PHASE THIS FOR A LATER POINT IN TIME, WHEN THE

13  PARTIES ARE BETTER INFORMED AND, RATHER THAN ARGUING IN A

14  VACUUM, CAN ARGUE MORE CONCRETELY BOTH, IN THE END, WHAT THIS

15  DEPOSITION IS LIKELY TO LOOK LIKE.

16  **MISS CORBIN:**  ALL RIGHT.  YOUR HONOR, ALL I CAN

17  REITERATE IS THAT, EVEN WHEN WE ARE AT THE BACK END OF THE

18  DISCOVERY PHASE IN THIS CASE, WE STILL WILL NOT KNOW WHETHER

19  THERE IS A SUBSET OF INFORMATION THAT DR. THOMAS HAS, THAT IS

20  GREATER THAN EVERYBODY THAT, TO THAT TIME HAS BEEN DEPOSED, OR

21  WAS CONSULTING WITH THE DEFENDANTS IN THIS CASE, AND THERE IS

22  A PUBLIC INTEREST ALSO IN, YOU KNOW, NOT HAVING INVALID

23  PATENTS.

24  SO, TO THE EXTENT HE IS IN CUSTODY AND POSSESSION

25  OF INFORMATION THAT IS DIFFERENT: A FACT, A NEGATIVE FACT WHICH

KATE V. MAREE, Court Reporter

---

1  WE WOULD NEVER BE ABLE TO PROVE THE NEGATIVE OF, EVEN AT THE

2  END OF THE DISCOVERY PHASE, SEEMS INAPPROPRIATE WHEN NONE OF

3  THE, YOU KNOW, THE CASES SPEAK TO THAT TYPE OF BURDEN.  WE

4  NEVER WILL KNOW WHETHER HE HAS, UNLESS WE TAKE HIS DEPOSITION,

5  ADDITIONAL INFORMATION THAT COULD SHED LIGHT ON THE VALIDITY

6  OR INVALIDITY OF THIS PATENT AND, CLEARLY, IT IS NOT JUST THE

7  DEFENDANTS AND SYNOPSYS HERE, BUT ALSO THE PUBLIC, THAT HAS A

8  HIGH INTEREST IN SEEING THAT ALL THE INFORMATION THAT IS

9  AVAILABLE, AS TO THE PRIOR ART, COMES TO LIGHT, AS THE COURT

10  DETERMINES WHETHER OR NOT THE CLAIMS OF THIS PATENT ARE VALID

11  OR NOT.

12  **THE COURT:**  AND WILL YOU ALSO ASSERT THAT IT IS

13  FOR THE CONFERENCED (PHONETIC) BACK INTEREST, A FUNDED INTEREST

14  IN POSSIBLE -- THAT MAY INFORM SOMEHOW YOUR CLAIM CONSTRUCTION,

15  OR SUMMARY JUDGMENT AND/OR SETTLEMENT DISCUSSIONS, ARISING OUT

16  OF --

17  **MISS CORBIN:**  THAT IS CERTAINLY A POSSIBILITY, YOUR

18  HONOR.

19  **THE COURT:**  WHAT ABOUT THAT?  IS THERE NOT AN

20  INTEREST IN GETTING THIS INFORMATION OUT EARLY, IF PUT FOR

21  THOSE REASONS?

22  **MR. BROTHERS:**  FIRST OF ALL, WE ARE TALKING ABOUT

23  SPECULATION.  THERE IS NOTHING IN THE RECORD, AND MISS CORBIN

24  HAS CONCEDED THAT SHE DOES NOT KNOW, AND SHE HAS NOT SPOKEN

25  ABOUT THIS MATTER, WITH DR. KOWALSKI.  FOR INFORMATION TO BE

KATE V. MAREE, Court Reporter

---

1  INVALIDATING A PATENT, IT CANNOT JUST BE SOMETHING LOCKED UP IN

2  A PERSON'S MIND; THERE ARE CERTAIN THINGS THAT NEED TO BE DONE:

3  IT HAS TO BE PUBLICLY AVAILABLE, IT HAS TO BE KNOWN, AND SO

4  WITH RESPECT TO THE SPECULATION THAT I AM HEARING, I WOULD BE

5  SHOCKED IF THERE WAS SOMETHING THAT ONLY DR. THOMAS KNEW, THAT

6  WAS UNIQUE TO THE MATTERS IN DISPUTE, THAT DR. KOWALSKI DID NOT

7  AT LEAST HAVE A GOOD IDEA.I SUSPECT THAT IF WE WERE ALL TO

8  TAKE OFF OUR ADVERSARIAL HATS, AND BRING EVERYBODY IN AND TALK

9  ABOUT IT, DR. KOWALSKI WOULD SAY, OH, THERE ARE SOME THINGS

10  THAT I KNOW PRETTY WELL, BUT MY PROFESSOR MIGHT KNOW THEM A

11  LITTLE BIT BETTER; AND THE PROFESSOR MIGHT SAY, THERE ARE SOME

12  THINGS I MIGHT KNOW A LITTLE BIT BETTER, BUT MY PROTEGE IS, YOU

13  KNOW, YOUNGER AND MORE ON THE BALL, AND HE MIGHT KNOW THEM

14  BETTER.

15  **THE COURT:**  IT IS INTERESTING YOU MAKE THAT REMARK,

16  BECAUSE THAT IS WHAT I WAS THINKING: I WAS WONDERING WHETHER

17  THERE WAS SOME WAY, THROUGH A MEET-AND-CONFER CONTEXT, THAT

18  WOULD NOT VIOLATE EVERYBODY'S PRIVILEGES, THAT SOMEHOW THERE

19  COULD BE A FRANK, BUT SOMEHOW MORE SAFE, EXCHANGE OF

20  INFORMATION, SO THAT THERE IS A WAY THAT YOU ALL CAN SEE YOUR

21  WAY THROUGH THIS AND SEE WHETHER, OUT OF THIS, IT BECOMES

22  APPARENT THAT THERE MAY WELL BE AREAS THAT WOULD BE APPROPRIATE

23  THAT DR. THOMAS HAS SOME UNIQUE KNOWLEDGE.  THEN YOU COULD

24  DELINEATE THOSE AREAS FOR DEPOSITION, AND THEN PUT IN SOME

25  PROCEDURAL MECHANISMS TO POLICE THAT.  CAN YOU ENVISION SOME

KATE V. MAREE, Court Reporter

1  KIND OF MEET-AND-CONFER PROCESS THAT WOULD BE HELPFUL IN THAT
2  REGARD?
3      MR. BROTHERS:  THE RISKS THAT ARE THERE ARE: FIRST
4  OF ALL, I THINK IT IMPOSSIBLE THAT ANYONE COULD TAKE OFF THEIR
5  ADVERSARIAL HATS IN THIS LITIGATION.  IT IS -- WE HAVE CLIENT
6  INTERESTS THAT ARE AT STAKE HERE, WITH HUNDREDS OF MILLIONS OF
7  DOLLARS OF POTENTIAL DAMAGES THAT ARE AT STAKE, AND RICOH HAS
8  BEEN SUBJECTED TO A SCORCHED EARTH STRATEGY BY THE DEFENCE, AND
9  IT HAS BEEN A DIFFICULT PROCESS.  I THINK IT WOULD BE LESS THAN
10 REALISTIC, TO BELIEVE THAT THERE COULD BE THAT KIND OF STEPPING
11 AWAY.  NEVERTHELESS, I WOULD THINK THAT THE APPROPRIATE COURSE
12 OF ACTION SHOULD BE, FIRST, SOME SORT OF SHOWING -- MORE THAN
13 THE SPECULATION THAT WE HAVE HEARD TODAY -- OF WHAT IT IS THAT
14 THIS PROPOSED DEPOSITION MIGHT ENTAIL.
15     I WOULD NOTE THAT THE BASIS, AND THE ONLY BASIS,
16 THAT WE HAD FOR THE PROPOSED DEPOSITION, WAS AN E-MAIL FROM
17 MR. CAMPBELL, WHICH WAS MARKED AS EXHIBIT 28, AND WHICH HE
18 SENT, AFTER RICOH HAD OBJECTED, BUT BEFORE THE FIRST HEARING:
19 THIS WAS ON JULY 28, 2003, SAYING, "AS YOU KNOW, RICOH HAS
20 ASSERTED THAT YOU HAVE A CONFLICT OF INTEREST THAT WOULD
21 PRECLUDE YOU FROM CONSULTING WITH DEFENDANTS.  THIS IS A
22 QUESTION THAT MAY BE RESOLVED BY THE DISTRICT COURT IN
23 DELAWARE.  IF THE COURT RULES THAT YOU CANNOT CONSULT WITH
24 DEFENDANTS, THEN WE WILL RESCHEDULE THE DEPOSITION FOR A DATE
25 OF MUTUAL CONVENIENCE.  AT THAT DEPOSITION WE WILL SEEK

---

1  TESTIMONY REGARDING THE CHARACTER OF PRIOR ART LOGIC SYNTHESIS
2  SYSTEMS AND THEIR RELEVANCE TO THE VALIDITY OF RICOH'S
3  PATENTS."
4      I SHOWED THAT TO DR. THOMAS AND I SAID, "ISN'T THAT
5  THE SAME THING THAT YOU WERE ASKED TO CONSULT ABOUT?"  HE SAID,
6  "YES, IT IS THE SAME SUBJECT MATTERS, THEY ARE THE SAME."  I DO
7  NOT UNDERSTAND HOW THE PROPOSED TESTIMONY OF THE CHARACTER OF
8  PRIOR ART LOGIC SYNTHESIS COULD BE RELEVANT TO THE LITIGATION,
9  UNLESS IT WAS FRAMED IN THE CONTESTED TERMS OF THE PATENT IN
10 SUIT, AND THEIR RELEVANCE TO THE VALIDITY OF RICOH'S PATENTS,
11 AS COUNSEL FOR THE DEFENDANTS HAD PROPOSED, FOR THIS
12 DEPOSITION.
13     THAT IS THE MATTER OF CONSULTATION, AND DR. THOMAS
14 SAID HE HAD FORMED OPINIONS ON THOSE ISSUES, AS A RESULT OF
15 THIS CONSULTATION, AND YET WHAT DEFENDANTS ARE SEEKING IS
16 A DEPOSITION OF THIS WITNESS, NOT AS A FACT-WITNESS, BUT ASKING
17 FOR HIS OPINIONS AND CONCLUSIONS -- AS MISS CORBIN SAID --
18 "DEFINITIONS OF THE CLAIMS AT ISSUE, AND HOW ONE OF ORDINARY
19 SKILL IN THE ART, IN THIS HIGHLY TECHNICAL AREA, WOULD
20 UNDERSTAND THE TERMS OF THE PATENT AND WHETHER IT WAS, IN FACT,
21 INVALIDATING."  THESE, IT SOUNDS TO ME, ARE VERY MUCH SIMILAR
22 TO THE PROPOSED SCOPE OF AN EXPERT REPORT THAT I WOULD EXPECT
23 TO SEE FROM DR. KOWALSKI.
24     THE COURT:  IS THERE A DATE SET AT THIS POINT FOR
25 EXPERT DISCLOSURES AND REPORTS?

---

1      MR. BROTHERS:  NO CASE MANAGEMENT CONFERENCE HAS
2  BEEN SCHEDULED TO HELP.
3      MISS CORBIN:  YOUR HONOR, I WOULD LIKE TO
4  ADDRESS -- I DO NOT WANT TO INTERRUPT -- BUT I DO WANT TO
5  ADDRESS THIS.  PLAINTIFF'S COUNSEL RAISES A VERY IMPORTANT
6  POINT, THAT IT IS HIGHLY LIKELY THAT, IN FACT, DR. THOMAS HAS
7  MATERIAL THAT DR. KOWALSKI DOES NOT.  IF I CAN JUST -- THE DAA
8  SYSTEM WAS A STATEWIDE SYSTEM OF SEVERAL SUB-SECTIONS -- AND
9  DR. KOWALSKI WORKED ONE END OF THAT, AND THEN THERE WERE OTHER
10 INDIVIDUALS WHO WERE WORKING ON SEPARATE SUB-SECTIONS.
11 DR. THOMAS OVERSAW ALL THESE PEOPLE AND THE ENTIRE DAA SYSTEM
12 ITSELF, SO HE HAS A BROADER PERSPECTIVE THAN ANY OF THE OTHERS
13 THAT WERE WORKING.
14     MORE IMPORTANTLY, ON THE POINT THAT PLAINTIFF'S
15 COUNSEL RAISED.  HE WAS SAYING, FOR EXAMPLE, ONE ISSUE THAT
16 WOULD COME UP IS, WHAT INFORMATION WAS KNOWN TO THE PUBLIC OR
17 GRADUATE STUDENTS?  DID HE ATTEND FOREIGN CONFERENCES?  HE DID
18 THE TYPE OF WORK STUDENTS GENERALLY FIND INTERESTING.
19 DR. THOMAS WAS THE HEAD OF THIS WHOLE THING AND, BEING
20 A PROFESSOR AT CARNEGIE MELLON, IS MUCH MORE LIKELY TO HAVE
21 INFORMATION OF JUST THAT NATURE.  OR, WOULD IT HAVE BEEN LIKELY
22 THAT THIS INFORMATION WAS MADE PUBLIC IN A WORKSHOP?  ARE YOU
23 AWARE OF ANY PRESENTATION OF HIS SET OF KNOWLEDGE, WITH RESPECT
24 TO THIS TYPE OF FACT AND CIRCUMSTANCE?
25     I WONDER -- BECAUSE OF HIS POSITION AS THE HEAD OF

---

1  ALL THESE INDIVIDUAL PEOPLE -- IF WORKING ON SEPARATE
2  SUB-SYSTEMS WITHIN THE DAA SYSTEM IS DIFFERENT, IN FACT, THAN
3  ANY OF THESE INDIVIDUALS WORKING UNDER HIM, WHO HAD FAR LESS
4  EXPERIENCE AT THE TIME THAN HE DID?
5      THE COURT:  ALL RIGHT, LET ME ASK MR. BROTHERS: YOU
6  PROPOSED AN AGENDA, IF SOMETHING IS GOING TO GO FORWARD, THAT
7  IT BE DEFERRED UNTIL MORE IS SHOWN.  I AM NOT SURE WHEN THAT
8  WOULD BE, HOW THAT WOULD BE.  ARE YOU SUGGESTING AFTER, AT THE
9  TAIL END OF THE CASE, EXPERT DISCLOSURE AND COUNTER REPORTS,
10 DEPOSITIONS, THAT SORT OF THING, ON THE EVE OF TRIAL?  ONLY
11 THEN WOULD THERE BE CONSIDERATION OF HAVING THIS ASSESSMENT, OF
12 WHETHER IT IS APPROPRIATE TO DEPOSE DR. THOMAS?
13     MR. BROTHERS:  TO BE FAIR, MY POSITION COMING IN
14 THIS MORNING, WAS THAT DR. THOMAS'S DEPOSITION WAS NOT
15 APPROPRIATE BUT, WITH RESPECT AND YOUR INQUIRY, I WOULD THINK
16 THAT IT WOULD NOT BE APPROPRIATE TO HAVE THIS ANY SOONER THAN
17 THE LAST MONTH OR SO, OF FACT DISCOVERY.  PERHAPS IT IS
18 APPROPRIATE TO -- IN THE CONTEXT OF DEFENDANTS MAKING THEIR
19 SHOWING AS IT WERE -- AS TO WHY DR. THOMAS' DEPOSITION MAY BE
20 NECESSARY, THEY WOULD HAVE TO MAKE A DISCLOSURE SHOWING EFFORTS
21 TO COLLECT THIS INFORMATION FROM SOURCES OTHER THAN DR. THOMAS.
22     I WOULD NOTE THAT DR. THOMAS WAS SUBPOENAED BY THE
23 DEFENDANTS -- THIS WAS THE UNDISCLOSED SUBPOENA -- AND HE
24 PRODUCED DOCUMENTS IN RESPONSE TO IT, WHICH GO TO THESE VERY
25 ISSUES THAT MISS CORBIN WAS REFERENCING, SO THE FACT OF THESE

DOCUMENTS IS ALREADY OUT THERE, SO WHATEVER CONFERENCES OR
WHATEVER ELSE MIGHT HAVE BEEN OUT THERE -- AND CERTAINLY THE
FACT OF THESE CONFERENCES IS WELL KNOWN AND UNDERSTOOD -- BUT
A SHOWING WOULD HAVE TO BE MADE, AND WHETHER THAT SHOWING WAS
MADE IN THE CONTEXT OF DR. KOWALSKI'S EXPERT REPORT, OR AN
EARLIER SHOWING IN THE LAST MONTH OR SO, OF FACT DISCOVERY, IS
NOT SOMETHING THAT I HAVE THOUGHT THROUGH, ONE WAY OR THE
OTHER.   THERE WOULD BE A NEED TO MAKE A SHOWING, BUT THE METHOD
OF THAT SHOWING I AM NOT SURE, BECAUSE I HAVE NOT GIVEN IT
A LOT OF CONSIDERATION PRIOR TO TODAY'S HEARING.

THE COURT:   ALL RIGHT, LET ME THROW THIS OUT:
DR. THOMAS HAS ALREADY BEEN DEPOSED, FOR LIMITED PURPOSES?

MR. BROTHERS:   THAT IS CORRECT.

THE COURT:   IS THERE A WAY THAT YOU COULD THINK
OF -- I HATE TO SUBMIT THAT WE HAVE MULTIPLE DEPOSITIONS -- BUT
OF HAVING, FOR INSTANCE, SOME DISCOVERY, WHETHER IT IS BY WAY
OF WRITTEN QUESTIONS, FURTHER SUBPOENA, OR A LIMITED
DEPOSITION, BY WHICH EACH SIDE CAN GLEAN NOT SO MUCH THE
ULTIMATE SUBSTANCE OF ALL THIS, BUT THE AREAS OF KNOWLEDGE THAT
HE DOES HAVE AND THE EXPERIENCE THAT HE HAS, WHICH WOULD THEN
INFORM THE QUESTION: IS THERE SOMETHING THAT HE REALLY KNOWS?
ARE THERE AREAS THAT REALLY ONLY HE, OR HE BEST, CAN TESTIFY
TO?

MR. BROTHERS:   I WOULD EXPECT THAT DR. KOWALSKI
WOULD HAVE A VERY GOOD FEEL FOR THAT.

THE COURT:   HE MAY OR MAY NOT, BUT THE PROBLEM WITH
THAT IS, THAT THERE IS GOING TO BE SORT OF A SELF-SERVING
INTEREST, ON THE PART OF THE DEFENDANTS, TO SAY WELL,
DR. KOWALSKI DOES NOT KNOW THIS, DOES NOT KNOW THIS, AS WELL,
ET CETERA, ET CETERA.  THE ADVANTAGE OF HAVING, FOR INSTANCE, A
LIMITED DEPOSITION, IS THAT DR. THOMAS CAN BE ASKED QUESTIONS
FROM BOTH SIDES.

MR. BROTHERS:   WELL, THAT IS AN INTERESTING POINT,
BECAUSE IF DR. KOWALSKI SAYS, I DON'T KNOW ABOUT THIS, OR THIS,
HE IS PRECLUDING HIMSELF, AS AN EXPERT; AND I WOULD THINK IT
WOULD BE IN HIS INTEREST TO SAY, I HAVE SOME KNOWLEDGE OF THAT,
I HAVE SUFFICIENT KNOWLEDGE TO QUALIFY ME TO TESTIFY WITH
RESPECT TO THAT.

THE COURT:   WHAT IS THE PRE-DISCLOSURE MECHANISM
THAT EXISTS FOR THAT KIND OF EXAMINATION OF DR. KOWALSKI?,
NUMBER ONE; AND NUMBER TWO, HE MIGHT SAY HE DOES NOT KNOW.  HE
MAY KNOW WHAT HE KNOWS, BUT THE ARGUMENT IS, HE DOES NOT KNOW
WHAT DR. THOMAS MAY KNOW.

MR. BROTHERS:   THE ANSWER, I THINK, SHOULD BE:
I THINK IT SHOULD BE INCUMBENT UPON DEFENDANTS TO OBTAIN THIS
INFORMATION -- WHICH QUITE FRANKLY I THINK THEY HAVE ALREADY
OBTAINED -- FROM DR. KOWALSKI AND OTHERS; AND TO THE EXTENT
THAT THEY SIMPLY ARE UNABLE TO HAVE THIS INFORMATION, OR MAKE
THIS SHOWING, I WOULD SUGGEST THAT THEY COME FORWARD WITH
A DECLARATION FROM DR. KOWALSKI, AND ANY OTHERS IN THE FIELD,

SAYING, DR. THOMAS WOULD HAVE KNOWLEDGE, IN ADDITION TO MINE,
IN THE FOLLOWING SPECIFIC AREAS.  WITH THAT SHOWING, THAT COULD
DEFINE THE CONTOURS OF A PROPOSED DEPOSITION, IF THAT IS, IN
FACT, INFORMATION THAT CANNOT BE OBTAINED FROM ANY OTHER
SOURCE.

THE COURT:   ALL RIGHT, WHAT ABOUT THAT?  SURE,
DR. KOWALSKI MAY NOT KNOW FOR SURE WHAT DR. THOMAS KNOWS, THAT
HE DOES NOT KNOW, OBVIOUSLY; BUT, HE CERTAINLY COULD HAVE SOME
EDUCATED INSIGHT AS TO WHAT HE IS LIKELY TO KNOW, THAT HE DOES
NOT KNOW.  WHAT IS THE MATTER WITH THAT, AS A **PRIME FACIE** STEP
HERE?

MISS CORBIN:   I JUST THINK IT IS UNWORKABLE, YOUR
HONOR.  I THINK DR. KOWALSKI WILL BE IN THE EXACT SAME POSITION
I AM TODAY, EXCEPT OR TO THE EXTENT OF, ANY ACTUAL INTERACTION
HE HAS HAD WITH DR. THOMAS, WHERE HE KNOWS WELL, I INFORMED HIM
OF X, Y AND Z, AND HE KNOWS ABOUT THAT SUBJECT AREA.  AS TO
ANYTHING ELSE, YOU KNOW, HE WILL HAVE NO INFORMATION, SO HE
WILL NOT BE ABLE TO TESTIFY.  THAT IS WHAT I AM TRYING TO GET
ACROSS THAT, AT THE END OF THE DAY, EVEN IF WE DID THAT, AND
EVEN IF WE TOOK OTHER DISCOVERY, WE STILL WILL NOT KNOW THAT
THERE IS NOT MATERIAL INFORMATION, ADDITIONAL INFORMATION, THAT
DR. THOMAS HAS, THAT IT BEARS LIGHT ON THE VALIDITY OR
INVALIDITY OF THIS PATENT.

THE COURT:   YES, BUT WE ARE NOT DEMANDING CERTAINTY.
WHAT WE ARE TALKING ABOUT HERE IS, CERTAINLY HE HAS, HE

CERTAINLY WAS INVOLVED, AND HE CAN SAY SUCH THINGS AS
WELL, HE CAN ELABORATE, FOR INSTANCE, MORE ON WHAT YOU STARTED
TO TALK ABOUT, AND THAT IS: AS MY ROLE AS A GRADUATE STUDENT,
WORKING ON SOME SUBSET OF DAA, I ONLY WORKED ON, YOU KNOW,
THESE PORTIONS OR THIS ASPECT; I DID NOT WORK ON, AND IT IS
UNLIKELY THAT ANY OTHER GRADUATE STUDENTS WOULD HAVE WORKED ON,
YOU KNOW, SORT OF EVERYTHING ELSE, AND THAT HERE ARE THE KINDS
OF THINGS THAT DR. THOMAS WOULD LIKELY KNOW THAT I WOULD KNOW.

MISS CORBIN:   I AM SORRY.  ARE YOU SUGGESTING HE
PROVIDE A DECLARATION AS TO THESE FACTS?

THE COURT:   YES.

MISS CORBIN:   WE COULD CERTAINLY DO THAT.  I DO NOT
THINK IT RESOLVES OUR ISSUE, OR OUR PROBLEM, NOR THE FACT THAT
NONE OF EITHER THE CASES, THE ADVISORY COMMITTEE NOTES, THE
PUBLIC POLICY, OR THE PUBLIC INTEREST, SUPPORT HAVING THIS
BURDEN PUT ON THE DEFENDANTS AT THIS STAGE.

THE COURT:   I BELIEVE THE **WANG VS. TOSHIBA** CASE
MAKES SOME REFERENCE TO HOW YOU MIGHT HAVE A -- YOU MIGHT NOT
DISQUALIFY AN EXPERT, IF THE CONSULTANT'S INVOLVEMENT WERE
"UNIQUE," WAS THE WORD IN THE COURT.  I MEAN, IT DOES LOOK TO,
IT SEEMS TO ME, AT LEAST IMPLICITLY, THE NEED, AND WHERE THERE
IS A RISK OF, PERHAPS, SOME COMPROMISE AND SOME UNFAIRNESS,
WHEN SOMEBODY WAS INDEED RETAINED.  YOU KNOW, I DO NOT SEE WHY
THERE SHOULD NOT BE SOME SHOWING THAT THE BENEFIT OUTWEIGHS THE
BURDENS, EVEN IF IT IS JUST UNDER A RULE 26(B)(2) ANALYSIS.

1  WE HAVE THAT AS AN ALTERNATIVE.

2  WE HAVE, AS I SUGGESTED, THE SORT OF PRELIMINARY,

3  MORE SURFACE KIND OF DEPOSITION, IN WHICH THE QUESTIONS THAT

4  WOULD BE ASKED WOULD BE AIMED TOWARDS DISCERNING SORT OF

5  SUBJECT MATTER AREAS THAT HE AND -- MAYBE MORE GENERAL

6  QUESTIONS ABOUT THE SCOPE OF HIS KNOWLEDGE, FROM WHICH THEN THE

7  PARTIES COULD GAUGE WHETHER, IN FACT, HE DOES HAVE THESE

8  THINGS.  IT SEEMS TO ME, THAT THERE ARE SOME INTERMEDIATE

9  APPROACHES THAT ARE PLAUSIBLE HERE.

10  I UNDERSTAND YOU ARE NOT IN FAVOUR OF PROLONGING

11  THINGS, MULTIPLYING PROCEEDINGS, THIS IS A DELICATE AREA AND,

12  YOU KNOW, IT SEEMS TO ME, THAT THERE OUGHT TO BE SHOWING OF

13  SHOWING -- AND IT MAY BE IT IS NOT THAT HARD TO SHOW -- IF WHAT

14  YOU SAY ENDS UP BEING DEMONSTRATED, EITHER BY WAY OF THIS

15  DECLARATION PROCESS, OR BY WAY OF A LIMITED, SUBPOENAED

16  DEPOSITION OF DR. THOMAS.  I THINK WE WOULD ALL BE IN A BETTER

17  POSITION.  I WILL SAY THAT I AM INCLINED NOT TO PUT THIS OFF,

18  ALTHOUGH I SEE THE LOGIC OF IT, BUT I THINK THERE ARE SOME

19  STRONG COUNTERVAILING CONSIDERATIONS.

20  IF, AT THE END OF THE DAY, IT IS DETERMINED THAT

21  DR. THOMAS IS ELIGIBLE, UNDER THE APPLICABLE STANDARDS, TO

22  TESTIFY AS AN ORTHODOX -- OR GIVE ORTHODOX TESTIMONY OR

23  WHATEVER YOU WANT TO CALL IT -- AND HE HAS SOMETHING IMPORTANT

24  TO CONTRIBUTE TO THE CASE, TO DEFER THAT TO THE END OF THE

25  PROCESS, WHERE IT MAY WELL INFORM SUMMARY PROCEEDINGS, SUMMARY

1  JUDGMENT, SUMMARY ADJUDICATION OF ISSUES, OF SETTLEMENT

2  DISCUSSIONS, AND VARIOUS OTHER THINGS, IT DOES SEEM TO ME

3  A DISSERVICE TO THE PROCESS, AND TO THE EFFICIENCY OF THE

4  JUDICIAL PROCESS TO DEFER IT, EVEN THOUGH I UNDERSTAND THE

5  LOGIC; AND THAT IS WHY I AM SEARCHING FOR SOMETHING THAT WOULD

6  BE MORE STAGED, BUT STAGED NOW, AND MORE UP FRONT, THAN LATER.

7  MR. BROTHERS:  IF I MAY, YOUR HONOR, WITH A COMMENT

8  AND A SUGGESTION?

9  THE COURT:  YES.

10  MR. BROTHERS:  THE DESIRE OF THE COURT NOT TO

11  FURTHER DELAY THE PROCEEDINGS, I THINK, IS GOOD.  HOWEVER,

12  THESE PROCEEDINGS HAVE BEEN DELAYED FOR SO LONG ALREADY;

13  A CASE MANAGEMENT CONFERENCE HAS BEEN CANCELLED THREE TIMES

14  ALREADY, AND WE HAVE NO CASE MANAGEMENT CONFERENCE.  WE HAVE

15  TRIED TO KICK-START THE PROCEEDINGS BY SERVING OUR PRELIMINARY

16  INFRINGEMENT CONTENTIONS, WHICH ARE PERMITTED UNDER THE RULES.

17  WE HAVE BEEN TOLD THAT WE WILL PROBABLY GET A MOTION TO STRIKE

18  THOSE, WHICH WILL LEAD TO FURTHER DELAYS, OR MAY LEAD TO

19  FURTHER DELAYS.

20  THE INTENT OF THE COURT -- IF IT IS TO EXPEDITE

21  A PROCEEDING THAT JEOPARDIZES THE DISCLOSURE OF RICOH'S

22  CONFIDENTIAL INFORMATION -- I SUGGEST, SHOULD BE DONE VERY

23  CAREFULLY.  I THINK THERE DOES NEED TO BE SOME SHOWING, AS TO

24  WHY DR. THOMAS IS UNIQUE, IN THE WORDS OF THE **WANG** CASE, AND

25  WHY NO ONE ELSE CAN PROVIDE THIS INFORMATION.  IT IS -- I MEAN,

1  WE HAVE NOT TAKEN DISCOVERY YET, OF THE VARIOUS TYPES OF SOURCE

2  CODE AT ISSUE, AND THERE IS MUCH THAT NEEDS TO BE DONE TO

3  ANALYZE THE UNDERLYING SYSTEMS THAT ARE ACCUSED OF -- THE

4  UNDERLYING PROCESSES THAT ARE ACCUSED OF THE INFRINGEMENT OF MY

5  CLIENT'S PATENT.  AND SO TO STAGE, AS YOU ARE PERHAPS

6  CONSIDERING, THE DEPOSITION OF DR. THOMAS, EVEN BEFORE WE HAVE

7  CONDUCTED ANY OF THAT OTHER DISCOVERY, I THINK PLACES AN UNDUE

8  RISK UPON RICOH WHEN, PERHAPS, IT MIGHT MAKE MORE SENSE TO BE

9  DONE LATER IN THE PROCEEDINGS, WHEN THERE IS A MORE MATURE

10  RECORD.

11  THE COURT:  WAS THERE NOT A CMC ON MARCH 2?

12  MR. BROTHERS:  THERE WAS NO CMC, IT WAS DEFERRED BY

13  JUDGE JENKINS, INDEFINITELY.  I BELIEVE THE ORDER SAID, AFTER

14  THIS HEARING, HE WOULD CONSIDER PUTTING IT BACK ON HIS

15  CALENDAR.

16  MISS CORBIN:  YOUR HONOR, IF I MIGHT JUST SAY THAT

17  THE **WANG VS. TOSHIBA** CASE ADDRESSES A COMPLETELY DIFFERENT

18  ISSUE AND A DIFFERENT STANDARD.  THE UNIQUENESS ASPECT THAT

19  THEY WERE LOOKING AT THERE WAS THAT, EVEN IN THE EVENT OF A

20  SIDE-SWITCHING EXPERT, WHO HAD ENGAGED IN SOME TYPE OF

21  MISCONDUCT, IN THAT HE HAD SWITCHED SIDES AND DISCLOSED

22  CONFIDENTIAL INFORMATION -- FACTS THAT WE DO NOT HAVE

23  HERE -- THAT EVEN IN THAT CASE, THAT PERSON MAY BE ALLOWED TO

24  BE DEPOSED, IF IT TURNED OUT THAT HE HAD UNIQUE INFORMATION.

25  THIS IS NOT A CASE WHERE A NON-TESTIFYING EXPERT

1  ACTUALLY ALSO HAPPENS TO BE A PERCIPIENT WITNESS, WITH MATERIAL

2  INFORMATION TO THE CASE.  THERE IS NO SUGGESTION IN ANY OF

3  THOSE CASES, OR THE ADVISORY COMMITTEE NOTES, OR ANYTHING ELSE,

4  THAT SUCH A SHOWING NEED BE MADE, BEFORE THAT TYPE OF DISCOVERY

5  BE HAD.

6  MY FINAL CONCERN IS, IF WE WENT FORWARD, ALONG THE

7  LINES YOUR HONOR SUGGESTS, WE WOULD BE HAPPY TO PREPARE

8  A DECLARATION, AND DR. KOWALSKI MAY BE ABLE TO SPEAK TO WHAT HE

9  THINKS IS THE OVERLAP OF KNOWLEDGE BETWEEN HIMSELF AND

10  DR. THOMAS.  HE WOULD ALSO THEN, IN FAIRNESS, HAVE TO SAY HE

11  DOES NOT KNOW, FOR INSTANCE, WHAT OTHER, YOU KNOW, PRIOR ART

12  REFERENCES DR. THOMAS MAY KNOW OF, WHAT CONFERENCES -- HE HAS

13  NOT ATTENDED ALL THE CONFERENCES DR. THOMAS HAS -- ET CETERA,

14  ET CETERA.

15  MY CONCERN IS, GIVEN THE KIND OF ALLEGATIONS WE GET

16  AT EVERY TURN, THAT THAT IS THEN GOING TO BE SEEN AS

17  SELF-SERVING, BUT WE WOULD BE HAPPY TO DO THAT, I MEAN, WE

18  COULD DO THAT.  I JUST THINK THAT, AT THE END OF THE DAY, IT IS

19  STILL NOT GOING TO ANSWER THE ULTIMATE QUESTION OF WHETHER

20  DR. THOMAS HAS SOME SET OF INFORMATION MATERIAL TO THE VALIDITY

21  OF THIS PATENT, THAT OTHERS DO NOT.  WE WILL KNOW WHERE THE

22  OVERLAP IS, BUT WE WILL NOT KNOW WHETHER THERE IS OTHER

23  INFORMATION.

24  MR. BROTHERS:  YOUR HONOR, ANOTHER IDEA THAT JUST

25  POPPED INTO MY HEAD, SO IT IS PROBABLY DANGEROUS TO MENTION IT.

**Page 42**

1  DR. THOMAS STILL KEEPS IN TOUCH WITH DR. KOWALSKI, AND EVEN AS
2  I -- I WAS GOING TO PROPOSE THAT PERHAPS DR. KOWALSKI AND
3  DR. THOMAS TALK OUTSIDE OF THE COMPANY OF ATTORNEYS AND, WITH
4  CONSIDERATION TO THIS, HOWEVER, EVEN AS I PROPOSE THAT,
5  I REALIZE THAT EVERYTHING THAT DR. KOWALSKI DOES -- BECAUSE HE
6  IS A RETAINED EXPERT BY THE DEFENDANTS -- I DO NOT KNOW IF
7  THAT -- WELL, IT WOULD CAUSE ME TO WONDER HOW TRULY INDEPENDENT
8  THAT WOULD BE.
9      THE COURT:  THERE IS A VARIANCE OF THAT THAT I CAN
10  THINK OF, AND THAT IS: WE COULD RETAIN A SPECIAL MASTER, OR
11  REFEREE, AGAIN AT THE RISK OF MULTIPLYING PROCEEDINGS.  SOME
12  THIRD PARTY COULD TALK TO BOTH AND REPORT BACK TO COURT AND
13  COUNSEL WHAT, AFTER LOOKING IN AND ASKING THEM: WHAT DO YOU
14  KNOW?  WHAT DO YOU KNOW?  THEN, MAYBE WITH SOME GUIDANCE OF THE
15  QUESTION AREAS TO BE EXPLORED, YOU KNOW, THE AREAS YOU WANT TO
16  EXPLORE, PERHAPS AS YOU WANT IT EXPLORED AND, IN THAT WAY, YOU
17  KNOW, YOU WOULD NOT HAVE THAT PARTICULAR PROBLEM, YOU WOULD
18  HAVE A NEUTRAL MAKING THAT ASSESSMENT.
19      MR. BROTHERS:  THAT MAY BE A MORE EFFICIENT WAY TO
20  ADDRESS THE ISSUE.  I WOULD HAVE SOME CONCERNS TO LIMITING IT
21  SOLELY TO DR. KOWALSKI AND DR. THOMAS.  THERE IS ROBERT WALKER,
22  AND SEVERAL OF DR. THOMAS' OTHER GRADUATE STUDENTS -- AND QUITE
23  FRANKLY I DO NOT KNOW HOW MANY OF THOSE INDIVIDUALS HAVE BEEN
24  RETAINED BY COUNSEL FOR THE DEFENDANTS -- SINCE THEY HAVE NOT
25  MADE THEIR DISCLOSURES.  I KNOW THAT THEY IDENTIFIED ABOUT 30

1  PEOPLE IN THE RULE 26(A) DISCLOSURES, THOSE ARE FACT WITNESSES,
2  AND WE HAVE BEEN TRYING TO CONTACT A LOT OF THOSE; SOME OF THEM
3  HAVE SAID, "OH, NO, I HAVE ALREADY BEEN CONTACTED AND I AM
4  REPRESENTED BY, OR RETAINED BY, OR I AM DOING CONSULTING WORK."
5  THERE ARE ABOUT A DOZEN, WHO ARE JUST IMPOSSIBLE, A NAME HAS
6  BEEN GIVEN AS A CONTACT INFORMATION; WE DO NOT HAVE ANY WAY TO
7  FOLLOW-UP.  IT SEEMS TO ME, THAT AN INQUIRY AND A SHOWING TO BE
8  MADE -- AND WHETHER IT IS DONE BY A SPECIAL MASTER OR
9  OTHERWISE -- IT WOULD BE BENEFICIAL TO TAKE INTO ACCOUNT THE
10  STATE OF THE RECORD, AND WHO IS CONSULTING WITH WHOM ALREADY.
11      THE COURT:  WHAT IS YOUR REACTION TO THIS GENERAL
12  IDEA?
13      MISS CORBIN:  WE WOULD BE AMENABLE TO THAT APPROACH.
14  IF WE COULD PROVIDE SOME INSIGHT INTO TYPES OF INFORMATION TO
15  ELICIT FROM THEM, THEIR AREAS OF KNOWLEDGE, THEN THAT MIGHT BE
16  WORKABLE.
17      THE COURT:  WHY DO I NOT I SUGGEST THIS: THAT IS
18  SOMETHING YOU CAN MEET-AND-CONFER ABOUT, AND SEE IF THERE ARE
19  ISSUES YOU CAN IRON OUT, AND IF YOU WANT TO DO IT UNDER THE
20  RULE, WHERE THERE COULD BE A SPECIAL MASTER, A FORMAL
21  APPOINTMENT UNDER RULE 53, ET CETERA, WE CAN DO THAT.
22  OTHERWISE, YOU CAN JUST SIMPLY STIPULATE AND AGREE WHAT IS
23  GOING TO HAPPEN TO THE REPORT, HOW IT IS GOING TO BE TREATED,
24  AND THAT SORT OF THING.
25      IT SEEMS LIKE THAT WOULD BE PROBABLY THE BEST WAY TO

**Page 43**

1  PROCEED, AS ALL THE OTHER WAYS ARE IN SOME DIFFICULTY, AND THIS
2  IS PROBABLY THE MOST EFFICIENT WAY.  AND IN THAT WAY, WE CAN
3  ALSO DEFINE WHO THE FIRST INTERVIEWEE IS GOING TO BE, AND WHAT
4  ARE THE QUESTIONS, AND THE AREAS THAT WE WANT THIS THIRD PARTY
5  TO FIGURE OUT: WHETHER THERE IS SORT OF A UNIQUE -- AND I AM
6  NOT SAYING THAT IS NECESSARILY THE STANDARD HERE YOU
7  NEED -- BUT ALL I AM SAYING AT THIS POINT, CERTAINLY, THE MORE
8  UNIQUE, THE STRONGER THE SHOWING, AND THE MORE COMPELLING IT
9  IS, AND I THINK, IN THE END, IT IS A SLIDING SCALE.
10      THEN FROM THAT, IF YOU CAN, YOU KNOW, OBVIOUSLY TAKE
11  THAT REPORT, AND THEN WORK OUT SOMETHING AMONGST YOURSELVES,
12  WITH THE IDEA THAT IF YOU FEEL THE NEED TO HAVE A REFEREE IN
13  THE ROOM, I WOULD CERTAINLY BE WILLING TO -- AGAIN, WE NEED TO
14  APPOINT THAT REFEREE UNDER RULE 53, WE COULD DO THAT, AND THEN
15  YOU CAN STIPULATE AS TO HOW THAT WOULD BE HANDLED.  THEN, IF
16  FOR SOME REASON, YOU CANNOT WORK IT OUT, AT LEAST REPORT BACK
17  TO ME TO SEE HOW FAR YOU HAVE GOTTEN; AT LEAST WE WILL KNOW AT
18  SOME POINT WHAT THE STATE OF THE EVIDENCE IS, AND IF I NEED TO
19  RULE ON THIS, YOU ALL CAN COME TO AN AGREEMENT ON THE ULTIMATE
20  QUESTION HERE, AND THEN I CAN RULE ON IT A LITTLE MORE
21  INTELLIGENTLY.
22      SO, THAT IS WHAT I AM INCLINED TO DO, ASKING THAT WE
23  CONFER, I DO NOT KNOW, IN 30 DAYS?  WILL THAT GIVE YOU ENOUGH
24  TIME TO AT LEAST FIGURE OUT HOW, PROCEDURALLY, YOU ARE GOING TO
25  WORK THIS OUT, AND LET ME KNOW?

**Page 44**

1      MR. BROTHERS:  CERTAINLY, WE CAN HAVE THE
2  MEET-AND-CONFERS AND BEGIN TO DISCUSS THE PROCESS.  THE ONLY
3  HESITATION I WOULD HAVE, IS THE IDENTIFICATION OF A POTENTIAL
4  SPECIAL MASTER; I DO NOT KNOW IF THERE IS ANYBODY WHO IS
5  PARTICULARLY KNOWLEDGEABLE IN THIS AREA, THAT HAS NOT ALREADY
6  BEEN GRABBED UP IN THIS LITIGATION.
7      THE COURT:  HAVE YOU TALKED ABOUT GOING TO FRANCE OR
8  ANYTHING?
9      MR. BROTHERS:  I MEAN, PEOPLE HAVE BEEN IDENTIFIED
10  IN GERMANY AND HONG KONG.
11      THE COURT:  AT LEAST, YOU HAVE THE WORLD COVERED.
12      MR. BROTHERS:  YES.  SO, THAT WOULD BE MY ONLY
13  HESITATION, WE MIGHT NOT BE ABLE TO HAVE A SPECIAL MASTER
14  IDENTIFIED BUT, CERTAINLY, WE COULD INITIATE THE CONVERSATION,
15  THE DIALOGUE, AND SEE IF WE COULD BEGIN TO IDENTIFY A PROCESS.
16      THE COURT:  AND IF YOU CANNOT -- YOU KNOW IT IS NOT
17  AN EXPERT IN THIS FIELD -- ALL THEY ARE DOING, THEY ARE NOT
18  GIVING OPINIONS ON THE SUBJECT, THEY JUST WANT TO KNOW WHAT THE
19  PERSON KNOWS.  I MEAN, THEORETICALLY, IT COULD BE AN ATTORNEY,
20  IT COULD BE ANY ONE OF A NUMBER OF TYPES OF PERSONS, TO CARRY
21  OUT THIS TASK BUT, OBVIOUSLY, IF IT IS SOMEBODY WHO IS IN THE
22  FIELD, IT WOULD BE EASIER.  BUT IT SEEMS TO ME, THERE ARE OTHER
23  ALTERNATIVES THAN BEFORE.
24      WHY DO NOT WE DO THAT, AND I WILL JUST STATE THAT IF
25  YOU COULD REPORT BACK TO COURT WITHIN 30 DAYS OF TODAY, AND

1 THEN TELL ME WHERE YOU ARE AT. IF YOU THEN AGREE FROM THAT, TO

2 GO FORWARD WITHIN THE ACTUAL DEPOSITION MECHANISM, THAT IS

3 GREAT, YOU CAN ALWAYS SIGN A STIPULATION. OR, IF YOU GET TO

4 THAT POINT, BUT YOU CANNOT AGREE ANY FURTHER, LET ME KNOW, AND

5 I THEN WILL HAVE TO RULE, BASED ON -- WELL, I WILL FIGURE OUT

6 WHERE WE GO -- WE HAVE TO GET A REPORT FROM THIS STIPULATED

7 PERSON, OR SPECIAL MASTER, AND RULE ON THE BASIS OF THAT.

8     MR. BROTHERS:  AS I UNDERSTAND IT, THE INQUIRY

9 SHOULD BE PRINCIPALLY FOCUSED UPON IDENTIFYING THE AREAS OF

10 INFORMATION THAT DR. THOMAS MAY HAVE, THAT ARE EITHER UNIQUE TO

11 HIM OR, AS YOU SAID, ON A SLIDING SCALE, PERHAPS IDENTIFYING

12 OTHERS THAT MAY HAVE THAT INFORMATION; BUT DR. THOMAS MAY HAVE

13 MORE INFORMATION.

14     THE COURT:  UNIQUE OR SUPERIOR, IS ONE WAY TO PHRASE

15 IT, I SUPPOSE. ALL RIGHT, WHY DO NOT WE SEE IF THIS HELPS

16 UNLOCK THIS DISPUTE, AND IF NOT -- MR BROTHERS?

17     MR. BROTHERS:  JUST TO FOLLOW-UP, ONE CLARIFICATION:

18 THE FLIP SIDE BEING THAT, TO THE EXTENT THAT THERE IS

19 INFORMATION THAT OTHERS -- WHETHER DR. KOWALSKI OR OTHERS --

20 ARE EQUAL TO, OR THEY HAVE SUPERIOR INFORMATION, THAT WOULD NO

21 LONGER BE ON THE TABLE, FOR EVEN A PROPOSED SCOPE OF

22 DEPOSITION; IT WOULD BE FOCUSING SOLELY ON THEN UNIQUE, OR

23 SUPERIOR TO?

24     THE COURT:  YES. DEFENDANTS MAY NOT AGREE WITH

25 THAT VIEW, BUT THAT IS MY VIEW: THAT WITHOUT SOME KIND OF

1 SHOWING OF WHY DR. THOMAS OFFERS, IF NOT UNIQUE, CERTAINLY

2 SUPERIOR, KNOWLEDGE ON PARTICULAR SUBJECTS, I JUST DO NOT

3 SEE -- TO ME THERE IS ENOUGH OF A RISK HERE THAT I JUST DO NOT

4 THINK IT IS WARRANTED -- AND IT DOES SEEM TO ME THERE SHOULD BE

5 SOME SHOWING, AND EXACTLY WHAT THAT SHOWING IS, I AM NOT SURE

6 AT THIS POINT. I WOULD HAVE TO LOOK AT CASE LAW, IF PUSH CAME

7 TO SHOVE, A LITTLE MORE CAREFULLY BUT, CERTAINLY, IF IT WERE

8 THE CASE THAT HE KNEW NOTHING MORE THAN DR. KOWALSKI, AND

9 PERHAPS OTHERS KNOW EXACTLY EVERYTHING HE DID, I JUST DO NOT

10 SEE THE NEED AT THAT POINT, ALL RIGHT? I SOMEHOW SUSPECT THAT

11 WILL NOT BE THE CASE, BUT AT LEAST WE WILL FIND OUT. ALL

12 RIGHT, I AM GETTING HAND SIGNALS HERE.

13     MISS CORBIN:  EXCUSE ME, ONE SECOND.

14     THE COURT:  ALL RIGHT. LET ME ADDRESS MYSELF TO THE

15 SANCTIONS ISSUE. I WILL TELL YOU THAT WITH THE HELP OF MY LAW

16 CLERK, WE WENT THROUGH THESE AND DID AN EXHAUSTIVE CHRONOLOGY

17 OF EVERYTHING IT WAS SUGGESTED THAT WE COULD. WE WENT THROUGH

18 QUITE A BIT OF THIS, AND I AM NOT GOING TO REPRESENT THAT WE

19 WERE NOT A BIT CONFUSED BY THE FACTS OCCASIONALLY, BUT I HAVE

20 A PRETTY GOOD SENSE OF WHAT HAPPENED, AND WHAT THE PARTIES'

21 CONTENTIONS ARE. AND I WILL TELL YOU, THAT IT DOES SEEM TO ME,

22 THAT FIRST OF ALL, WITH RESPECT TO THE STANDARD, UNDER THE

23 INHERENT POWER OF THE COURT, UNDER SECTION 1927 -- PUTTING

24 ASIDE WHETHER IT IS CLEAR AND CONVINCING OF PREPONDERANCE --

25 THERE DOES HAVE TO BE A SHOWING OF SOME BAD FAITH, WILLFULNESS,

1 THAT SORT OF THING.

2     ONCE I WERE TO BE CONVINCED THAT THE SUBPOENA HAD

3 NOT BEEN PROPERLY SERVED, WHICH IN SOME WAYS HAS TRIGGERED ALL

4 THIS, STARTED THIS, AT LEAST ONE OF THE TRIGGERING EVENTS, THAT

5 THAT WAS NOT DELIBERATE -- IT MAY HAVE BEEN THE PRACTICE -- ONE

6 COULD ARGUE THAT THAT PRACTICE WAS NOT CONSISTENT WITH RULE 45,

7 BUT IT IS CERTAINLY NOT THE KIND OF THING -- IF I AM TO TAKE AT

8 FACE VALUE THE DECLARATION THAT WAS SUBMITTED TO ME -- THAT

9 WAS DONE INTENTIONALLY, TO HIDE AND SUBVERT THE PROCESS, AND TO

10 TRY TO, YOU KNOW, ENGAGE ESSENTIALLY IN SOME KIND OF AN EX

11 PARTE CONTEXT, TO THE EXCLUSION OF RICOH'S ATTORNEYS.

12     SO, I AM NOT PREPARED TO GO BEYOND FACE VALUE,

13 UNLESS SOMEBODY HAS SOME **PRIMA FACIE** EVIDENCE THAT THERE IS

14 SOME UNTRUTH ABOUT THAT, AND THAT DISCOVERY IS WARRANTED,

15 ET CETERA, ET CETERA. I AM WILLING TO TAKE THAT AT FACE VALUE.

16 IT DOES SEEM TO ME, THAT THAT HAVING BEEN SET IN MOTION, THERE

17 IS SORT OF THIS INHERENT PROBLEM, AND THAT IS: AT THAT POINT,

18 THE SUBPOENA HAVING BEEN GONE OUT, AND THEN DR. THOMAS

19 CONTACTING THE DEFENDANTS, OR DEFENCE COUNSEL, AND THEN THINGS

20 SORT OF UNFOLDING AT THAT POINT.

21     TO THE EXTENT THERE WAS, AT LEAST, THE DEBATABLE

22 ISSUE AS TO WHETHER THERE WAS CONFIDENTIAL INFORMATION -- I

23 UNDERSTAND THE ARGUMENT THAT THERE WAS NO REAL INQUIRY UNTIL

24 AFTER THE RETENTION AGREEMENT, OR CONSULTING AGREEMENT, OR

25 RETAINER AGREEMENT WAS SIGNED -- BUT ONCE IT IS DEBATABLE,

1 BASED ON CERTAIN THINGS THAT WERE SAID BY DR. THOMAS THAT SEEM

2 TO SUGGEST THAT HIS ENGAGEMENT WAS FAIRLY SHORT, WAS FAIRLY

3 CURSORY, THAT HE HAD NOT BEEN ENGAGED IN ANYTHING MORE, ET

4 CETERA, TO THE EXTENT IT WAS WITHIN THE REALM OF POSSIBILITY

5 THAT HE COULD THEN BE, UNDER THE CASE LAW, A PROPER

6 "SIDE-SWITCHING" EXPERT, I DO NOT SEE ANY WAY AROUND HAVING

7 THEN AT SOME POINT -- AND YOU WOULD HAVE PREFERRED EARLIER I

8 SUPPOSE INSTEAD OF LATER AFTER THE RETAINER WAS SIGNED -- BUT

9 AT SOME POINT, ENGAGING IN THE INQUIRY PROCESS TO DETERMINE

10 WHETHER THAT PARTICULAR EXPERT DOES QUALIFY FOR A VALID AND

11 LEGAL, SIDE-SWITCHING EXPERT STATUS; NAMELY, DID NOT RECEIVE

12 THE KIND OF CONFIDENTIAL INFORMATION THAT WOULD COMPROMISE

13 EITHER WORK PRODUCT OR ATTORNEY/CLIENT INFORMATION.

14     SO, IT IS A LITTLE BIT OF AN INHERENT

15 CONTRADICTION, BECAUSE THEN YOU HAVE TO SORT OF ASK CERTAIN

16 QUESTIONS, AND I THINK THOSE QUESTIONS WERE ASKED IN A DELICATE

17 WAY. IT IS TRUE THAT IN THE PROCESS, IT WOULD SEEM TO ME, NOT

18 UNREASONABLE TO ASK WELL, DON'T TELL ME THE DOCUMENTS YOU'VE

19 GOT, BUT WHAT KIND OF -- WERE THESE PUBLISHED DOCUMENTS OR

20 NOT?, AND CERTAIN OTHER THINGS. OF COURSE, OBVIOUSLY, EVEN

21 SAYING THAT, TO A CERTAIN EXTENT, COMPROMISES THE WORK PRODUCT,

22 BECAUSE YOU ARE SAYING WHAT YOU HAVE GOT? YOU MAY NOT DESCRIBE

23 EXACTLY WHAT IT IS, BUT IT BEGINS TO GET INTO WORK PRODUCT. IT

24 DOES NOT INTRUDE MUCH, UNTIL YOU REALLY START TO IDENTIFY WHAT

25 PRECISELY, WITH SPECIFICITY, THOSE DOCUMENTS ARE.

1    BUT THERE IS AN INHERENT PROBLEM, AND THE BOTTOM
2    LINE QUESTION FOR ME IS, YOU KNOW: DID COUNSEL GO ABOUT THIS IN
3    A RELATIVELY CIRCUMSPECT WAY?  OR, DID THEY DO IT IN A WAY THAT
4    WAS SO RIFE WITH BAD FAITH THAT SANCTIONS ARE APPLICABLE HERE?
5    THERE ARE PLACES WHERE ONE COULD ARGUABLY SAY, YOU SHOULD
6    HAVE DONE X BEFORE Y, YOU SHOULD HAVE MADE THE INQUIRY, BEFORE
7    YOU ACTUALLY SIGNED THE RETAINER AGREEMENT.  FRANKLY, I DO NOT
8    KNOW WHAT DIFFERENCE IT MAKES, IF THE ACTUAL INQUIRY WAS ABOUT
9    WELL, WHAT DID YOU LOOK AT?  WHAT DID YOU TALK ABOUT?  THERE
10   WAS NO SUBSTANTIVE INFORMATION OBTAINED PRIOR TO HIS MAKING THE
11   INQUIRY; IT SEEMS TO ME, THAT IS THE CRITICAL POINT.
12       IT SEEMS TO ME, THAT THIS CASE DOES NOT RISE TO
13   THAT LEVEL, EVEN THOUGH THE DEFENDANTS WERE PLAYING, I THINK,
14   A RISKY AND DANGEROUS GAME.  ANY TIME YOU START TO APPROACH
15   SOMEBODY WHO WAS -- AND, YOU KNOW, WAS FORMERLY RETAINED BY THE
16   OTHER SIDE, AND EVEN IF IT IS ONLY 10 TO 20 HOURS OF
17   CONSULTATION, THAT IS A LOT OF CONSULTATION; AND IT DOES SEEM
18   THAT THE LIKELIHOOD THAT THERE WOULD NOT HAVE BEEN CONFIDENTIAL
19   INFORMATION EXCHANGED IN THAT PROCESS SEEMS SOMEWHAT SLIM, JUST
20   ON FACE VALUE.  NONETHELESS, IT IS NOT UNREASONABLE, AT LEAST,
21   TO MAKE THE SURFACE INQUIRY, TO DETERMINE WHETHER THIS EXPERT
22   QUALIFIES FOR SIDE SWITCHING AND, LOOKING AT THE RECORD, AND I
23   HAVE LOOKED AT THE IN CAMERA DOCUMENTS, AND THE E-MAILS, AND I
24   CONCLUDE THAT IT WAS CIRCUMSPECT ENOUGH AND CAREFUL ENOUGH TO
25   SHOW GOOD FAITH.  THEREFORE, NOT SANCTIONABLE UNDER THE

KATE V. MAREE, Court Reporter

---

1    APPLICABLE STANDARD, WHICH IS 1927, OR THE INHERENT COURT
2    STANDARD.
3        IF THIS WERE MORE OF A RULE 37-TYPE STANDARD, WHERE
4    THE PRESUMPTION IS THAT THERE WOULD BE COSTS OF ORDER, UNLESS
5    SUBSTANTIALLY JUSTIFIED, EVEN THAT, OR MAYBE THAT, IS A CLOSER
6    QUESTION, BUT IT IS NOT THE STANDARD HERE, IT SEEMS TO ME.
7    SO, I DO NOT SEE, AS MUCH AS I UNDERSTAND THE UPSET AND
8    DISCOMFORT THAT IS RESULTING FROM ALL THIS, I THINK THAT MUCH
9    OF THAT STEMS FROM, NUMBER ONE, THE CASE LAW THAT EVEN ALLOWS
10   THIS IN THE FIRST PLACE; AND NUMBER TWO, WHAT I HAVE TO
11   CONCLUDE IS THE INADVERTENT SUBPOENA, THE UNFORTUNATE SUBPOENA
12   SITUATION.
13       I AM NOT SURE THAT WOULD HAVE AVOIDED ANYTHING, ANY
14   WAY, BECAUSE IF THE POSITION IS, AND IF THE LAW DOES ALLOW THAT
15   EVEN SOMEBODY WHO IS -- IN OTHER WORDS IF RICOH HAD GOTTEN THE
16   SUBPOENA AND IMMEDIATELY OBJECTED -- IT IS NOT ALL THAT CLEAR
17   TO ME THAT THAT IS UNILATERAL IN THE INQUIRY, BECAUSE I THINK
18   THE DEFENDANT WOULD STILL BE ABLE TO SAY, WELL, WE DO NOT THINK
19   THIS PERSON IS QUALIFIED, BECAUSE THE INDICATION WE GET WAS THE
20   ENGAGEMENT WAS CURSORY ENOUGH, AND NOTHING CONFIDENTIAL WAS
21   EXCHANGED.  ALTHOUGH, AS A FACTUAL MATTER, I THINK IT PROBABLY
22   WOULD HAVE ENDED IT, BECAUSE YOU WOULD HAVE JUST SAID, NO, OFF
23   LIMITS, FINISHED.  I DO NOT KNOW IF IT WOULD HAVE BEEN PURSUED
24   AT THAT POINT BUT, BECAUSE OF THIS INADVERTENCE, IT KIND OF
25   GAVE A LITTLE BIT OF OPPORTUNITY FOR DR. THOMAS TO KIND OF OPEN

KATE V. MAREE, Court Reporter

---

1    THE DOOR AND SAY SOME STATEMENTS, AND ONCE HE INDICATED THAT,
2    THAT KIND OF OPENED US INTO THIS ALICE IN WONDERLAND
3    CESSPOOL -- WHATEVER YOU WANT TO CALL IT -- THAT WE GOT INTO,
4    AND THAT IS HOW I READ THE REMARKS.
5        I UNDERSTAND THERE ARE SOME ISSUES ABOUT STATEMENTS
6    MADE TO THE COURT IN DELAWARE THAT WERE ON THE EDGE OF -- ONE
7    COULD SAY LITERALLY WAS TRUE OR WAS NOT UNTRUE -- BUT WHETHER
8    THEY WERE MISLEADING TO A CERTAIN EXTENT, YOU KNOW, I HAVE SOME
9    QUESTIONS ABOUT THAT, BUT WITH REGARD TO THOSE, I DO NOT THINK
10   THAT IT WOULD HAVE CHANGED THE COURSE OF EVENTS IN ANY DRAMATIC
11   WAY.  I THINK THE PROBLEM IS, THERE WAS ENOUGH OF A QUESTION
12   HERE TO MAKE THE INQUIRY REASONABLE AND, ONCE YOU HAVE THIS
13   INQUIRY, IT IS A PROCESS OF CONTENTION; IT IS GOING TO GO BACK
14   AND FORTH.
15       MR. BROTHERS:  YOUR HONOR, IF I COULD?
16       THE COURT:  YES.
17       MR. BROTHERS:  THE DEVELOPMENT STANDARD FOR A
18   SIDE-SWITCHING EXPERT, EVERYBODY AGREES, IT IS IN THE **ADVANCED**
19   **CARDIOVASCULAR SYSTEMS**' CASE, THE **STENCIL VS. FAIRCHILD** CASE,
20   THE **SPACE SYSTEMS LORAL** CASE, THE **WANG** CASE, GOING BACK ANY
21   NUMBER OF YEARS, TO THE **PAUL** CASE, BACK IN OHIO, IN 1978 IS:
22   FIRST, WHETHER IT WAS OBJECTIVELY REASONABLE FOR RICOH TO
23   BELIEVE THAT IT HAD A CONFIDENTIAL RELATIONSHIP WITH
24   DR. THOMAS?
25       THE COURT:  AND SETTLE THE DISPUTE ABOUT THAT?

KATE V. MAREE, Court Reporter

---

1        MR. BROTHERS:  RIGHT.  SECOND, DID RICOH ACTUALLY
2    DISCLOSE CONFIDENTIAL INFORMATION?  THAT SHOULD HAVE BEEN THE
3    INQUIRY FROM THE GET-GO BY COUNSEL FOR THE DEFENDANTS: THAT,
4    AND NOTHING ELSE.  THEY NEVER ASKED, AND THAT WAS THE ERROR.
5    THEY WERE PLACED ON NOTICE ON APRIL 4, 2003, THAT DR. THOMAS
6    WAS CONSULTING, AND HAD AN ACTIVE CONSULTING AGREEMENT THAT HAD
7    NOT BEEN TERMINATED.
8        CHRIS MONSEY, HIS PRIMARY CONTACT, HAD BEEN CALLED
9    INTO ACTIVE DUTY IN THE AIR FORCE RESERVES, SO HE WAS NOT AS
10   COMMUNICATIVE AS, PERHAPS, HE MIGHT OTHERWISE HAVE BEEN.  BUT,
11   THE FACT THAT DR. THOMAS STILL HAD AN ACTIVE CONSULTING
12   RELATIONSHIP WITH RICOH, WHICH WAS KNOWN BY COUNSEL FOR THE
13   DEFENDANTS, ON APRIL 4, AND, AS OF THAT TIME, THE APPROPRIATE
14   ACTION SHOULD HAVE BEEN -- AS MR CAMPBELL SAID IN HIS E-MAIL
15   OF APRIL 8, "WE CAN'T PROCEED, IT'S LIKELY WE'LL HAVE
16   A CONFLICT OF INTEREST, MAYBE NEXT TIME."  THAT SHOULD HAVE
17   BEEN THE END OF THE MATTER, AND THAT IS WHAT RULE 26, AND THE
18   HORN BOOK, ALL OF THE CASES THAT WE HAVE CITED, REQUIRE.
19       ONCE THEY WERE ON NOTICE, THERE SHOULD HAVE BEEN NO
20   FURTHER COMMUNICATION AND, IN FACT, HOWREY HAS DEMANDED THAT WE
21   HAVE NO COMMUNICATION WITH ANY OF THEIR EXPERTS, WITH WHICH WE
22   AGREE.  RETAINED EXPERTS SHOULD ONLY BE COMMUNICATED THROUGH
23   COUNSEL, AND WHEN THEY RETAINED DR. KOWALSKI, THEY SENT US A
24   LETTER SAYING, "DON'T YOU TALK TO DR. KOWALSKI", BECAUSE WE HAD
25   BOTH MADE INQUIRIES AT ABOUT THE SAME TIME.

KATE V. MAREE, Court Reporter

1  THE COURT:  PERHAPS, AND THAT IS WHAT WOULD HAVE
2  HAPPENED, HAD THE NOTICE DULY GOTTEN TO YOU, AND YOU WOULD HAVE
3  RESPONDED UNEQUIVOCALLY THAT, EVEN IF DR. THOMAS THINKS MAYBE
4  HE HAS BEEN ABANDONED AND HE IS NO LONGER NEEDED, ET CETERA,
5  WHICH IS SORT OF WHAT HE WAS SAYING, YOU COULD HAVE
6  MADE IT CLEAR THAT NO, HE IS STILL UNDER CONTRACT, IT IS NOT
7  TERMINATED, AND IN THAT COURSE, HE RECEIVED CONFIDENTIAL
8  INFORMATION, AND THAT IS THE END OF THE INQUIRY.
9  NOW, THE QUESTION IS, FROM THE PERSPECTIVE OF THE
10  DEFENDANT'S COUNSEL, WHO SENT OUT A SUBPOENA: HAVING THOUGHT
11  THAT THE SUBPOENA HAD BEEN DELIVERED TO YOUR FIRM, NOT HEARING
12  ANYTHING AND THEN, IN RESPONSE, GETTING SORT OF A **SUA SPONTE**
13  RESPONSE FROM DR. THOMAS, BEGINNING TO RAISE QUESTIONS ABOUT
14  WELL, THEY RETAINED ME, BUT IT WAS A LONG TIME, YOU KNOW, IT
15  HAS BEEN SOME TIME SINCE ANYONE TALKED TO ME, BLAH, BLAH, BLAH
16  AND, YOU KNOW, MAKING IT LOOK LIKE MAYBE THERE WAS NOT AS MUCH
17  THERE AS PERHAPS THERE WAS.
18  MR. BROTHERS:  BUT WHAT THE **SHADOW TRAFFIC** CASE SAYS
19  IS: YOU MAKE A SIMPLE TELEPHONE CALL TO OPPOSING COUNSEL,
20  BECAUSE THE INQUIRY TO THE EXPERT WHO IS RETAINED IS, AS YOU
21  PUT IT, YOU HAVE TO PROCEED VERY CAREFULLY TO FIND OUT WHAT WAS
22  SAID.  WHO WOULD BEST KNOW OF WHETHER THERE WAS A CONSULTING
23  RELATIONSHIP?  WHETHER THERE WAS CONFIDENTIAL INFORMATION
24  DISCLOSED?  WHETHER RICOH BELIEVED IT HAD A CONFIDENTIAL
25  RELATIONSHIP WITH THE EXPERT?  IT WOULD BE COUNSEL FOR RICOH,

KATE V. MAREE, Court Reporter

1  AND THAT IS WHAT THE **SHADOW TRAFFIC** CASE SAYS: MAKE A SIMPLE
2  TELEPHONE CALL, PUT THE OTHER SIDE ON NOTICE, HEY, WE ARE
3  THINKING OF RETAINING DR. THOMAS, WE HEARD THAT MAYBE YOU ARE
4  NOT WORKING WITH HIM ANY MORE, WE WERE PLACED ON NOTICE AT ONE
5  TIME THAT YOU WERE.
6  THEY DID NOT DO THAT, AND THAT IS WHAT LED TO THE
7  LOSS OF RICOH'S EXPERT, THE TENS OF THOUSANDS OF DOLLARS, THE
8  MULTIPLE HEARINGS, AND THE PUBLIC POLICY OF AN EXPERT, WHO MAY
9  HAVE BEEN IN A SIDE-SWITCHING CASE, CONTRARY TO PUBLIC POLICY,
10  BECAUSE IT JUST LOOKS BAD.
11  THE COURT:  ALL RIGHT.  WELL, LET ME ASK MISS CORBIN
12  THAT.
13  MISS CORBIN:  YES.
14  THE COURT:  WHY NOT?  WHY WAS THE CRITICAL FAULT OF
15  NOT MAKING THE CALL, WHICH WOULD HAVE OBVIATED AND PRECLUDED
16  THEN, THE DEEPER INQUIRY INTO THE TWO-PART TEST, THAT YOU SORT
17  OF PROCEEDED TO AT ONE POINT, AND THEN LED TO THIS DISPUTE?
18  WHY NOT MAKE THE CALL?  WHY CANNOT THE FIRM BE FAULTED FOR NOT
19  MAKING THE PHONE CALL?
20  MISS CORBIN:  FIRST OF ALL, YOUR HONOR, FROM OUR
21  PERSPECTIVE AND, CLEARLY, OUR STATE OF MIND AT THE TIME
22  WAS -- THE MOST IMPORTANT, CRITICAL THING ABOUT THE WHOLE THING
23  WAS, THAT BEFORE WE HAVE ANY SUBSTANTIVE CONVERSATIONS WITH
24  DR. THOMAS, THAT WE PUT RICOH'S COUNSEL ON NOTICE THAT WE DID
25  INTEND TO HAVE HIM AS A CONSULTANT, AND WE DID DO THAT.  WE DID

KATE V. MAREE, Court Reporter

1  NOT HAVE ANY SUBSTANTIVE CONVERSATIONS WITH DR. THOMAS, AND
2  YOUR HONOR MAKES A VERY IMPORTANT POINT AS TO OUR STATE OF
3  MIND: THERE WAS THIS UNFORTUNATE MISTAKE ABOUT THE SUBPOENA NOT
4  BEING GIVEN TO PLAINTIFF'S COUNSEL, WHICH WE WERE UNAWARE OF,
5  SO WE ARE ASSUMING THEY MAY HAVE RECEIVED THE DEPOSITION NOTICE, WE
6  HAVE RECEIVED NO OBJECTION.
7  DR. THOMAS HAS NOW COME FORWARD AND SAID TO US, IN
8  THESE EXCHANGES OF E-MAILS, WHICH WERE NOT SUBSTANTIVE, IT WAS
9  IN THE CONTEXT OF HIS GETTING A DEPOSITION SUBPOENA, AND
10  INQUIRING WHETHER HE COULD BE REIMBURSED FOR HIS TIME AND HIS
11  COPY EXPENSE, IN CONNECTION WITH THE DOCUMENTS; THAT HE NO
12  LONGER HAD AN ACTIVE CONSULTING ARRANGEMENT WITH THEM.
13  SUBSEQUENTLY, HE SENDS AN E-MAIL SAYING, IN FACT, "I
14  TERMINATED, I'VE CONTACTED RICOH'S COUNSEL AND I'VE OFFICIALLY,
15  THOUGH I DIDN'T HAVE AN ACTING CONSULTING AGREEMENT, I HAVE
16  OFFICIALLY, ACTIVELY TERMINATED IT."  AGAIN, WE DID NOT GET
17  ANYTHING FROM THE OTHER SIDE.
18  THEN, DR. KOWALSKI WAS GOING ON VACATION, HE
19  MENTIONED IN ONE OF THE E-MAILS HE WAS GOING ON VACATION, SO HE
20  WENT OFF ON VACATION.  WHEN HE CAME BACK, HE SIGNED THE
21  RETENTION LETTER THAT WE HAD FORWARDED IN HIS ABSENCE, DURING
22  HIS VACATION, AND THAT VERY SAME DAY WE SENT THE LETTER TO
23  RICOH'S COUNSEL, NOTIFYING THEM OF OUR INTENT TO SIGN HIM UP AS
24  A CONSULTANT.  THAT SAME DAY, THEY DID NOTIFY HIM THAT THEY
25  OBJECTED, AND THEY NOTIFIED US AS WELL, BUT THIS RAISES THE

KATE V. MAREE, Court Reporter

1  ISSUE ABOUT THE **SHADOW** FACTS' CASE: IT IS A TWO-PRONGED TEST,
2  AND THE QUESTION WAS NOT WHETHER HE HAD ONCE HAD A RELATIONSHIP
3  WITH RICOH'S COUNSEL.  AS YOU SAID, THAT IS UNCONTESTED, HE DID
4  STATE THAT TO US.
5  BUT, THE SECOND PART OF THAT IS: DID HE OBTAIN
6  DURING THE CONTEXT OF THAT, ANY CONFIDENTIAL INFORMATION FROM
7  RICOH THAT PASSED TO DR. THOMAS?  THEY REPRESENTED TO US THAT,
8  IN FACT, HE HAD, BUT THEY DID NOT FLUSH THAT OUT IN ANY WAY.
9  THEY SAID, "WE ARE GOING TO NEED TO TAKE IT UP WITH THE COURT,"
10  WHICH THEY DID PROMPTLY DO AND, IN THE MEANTIME, WE HAD JUST
11  THAT ONE -- AND THE ONLY ORAL COMMUNICATION THAT WAS IN PERSON
12  AT ANY TIME -- THIS SHORT, LESS THAN FIVE-MINUTE PHONE CALL
13  THAT LOUIS CAMPBELL HAD WITH DR. THOMAS, WHERE HE TRIED TO BE
14  AS CIRCUMSPECT AS HE COULD, IN TERMS OF ELICITING WHETHER ANY
15  CONFIDENTIAL INFORMATION WAS OBTAINED BY DR. THOMAS FROM
16  RICOH'S COUNSEL.
17  THE COURT:  WHEN DID RICOH'S COUNSEL FIRST, NOT JUST
18  STATE THAT THERE WAS CONFIDENTIAL INFORMATION, BUT GOT MORE
19  SPECIFIC, ABOUT THE CONFIDENTIAL INFORMATION THAT WAS AFFORDED
20  TO --
21  MISS CORBIN:  WELL, THERE IS THE PROBLEM, YOUR
22  HONOR.  WE DID RECEIVE -- I BELIEVE JULY 22 WAS THE DAY -- I DO
23  NOT WANT TO MISSTATE ANYTHING, BECAUSE WE WILL CERTAINLY GET
24  ACCUSED OF SOME OTHER BAD CONDUCT.  OKAY, ON JULY 22, WE SENT
25  THE LETTER TO PLAINTIFF'S COUNSEL; THAT SAME DAY WE GOT THE

KATE V. MAREE, Court Reporter

1 LETTER BACK, SAYING THAT THEY OBJECTED, AND THAT THEY BELIEVED
2 DR. THOMAS WAS IN POSSESSION OF THEIR CONFIDENTIAL INFORMATION.
3 THERE WAS A SUBSEQUENT CORRESPONDENCE BETWEEN CHRISTOPHER
4 KELLY, I BELIEVE, AND PLAINTIFF'S COUNSEL, WHERE IT WAS
5 DETERMINED THAT WE WERE GOING TO NEED TO TAKE IT UP WITH THE
6 COURT, AND THEN IT WAS ACTUALLY HEARD BY THE COURT, ON JULY 30,
7 I BELIEVE, YES, BY JUDGE SLEET.
8     DURING THAT CONFERENCE -- HERE IS THE OTHER PART OF
9 THE PROBLEM THAT WE HAD -- PLAINTIFF'S COUNSEL REPRESENTED TO
10 JUDGE SLEET THAT THEY HAD A DECLARATION BY MR. MONSEY THAT THEY
11 INTENDED TO FILE THAT DAY.  THEY HAD NOT PROVIDED TO US IN
12 ADVANCE, OR DISCLOSED ANY OF THE INFORMATION IN THAT
13 DECLARATION TO US, AND NOR DID THEY END UP FILING IT THAT DAY.
14 AFTER THAT CONFERENCE WITH JUDGE SLEET, DURING WHICH HE ORDERED
15 THE DEPOSITION OF DR. THOMAS, AND THAT WE PROVIDE TO
16 PLAINTIFF'S COUNSEL THE CORRESPONDENCE BETWEEN US AND
17 DR. THOMAS, WE WERE ASKING, COULD WE PLEASE SEE THE DECLARATION
18 OF DR. MONSEY? AND THEY REFUSED.  IT WAS NOT ACTUALLY UNTIL
19 FIVE DAYS AFTER DR. THOMAS' DEPOSITION TOOK PLACE, BECAUSE AT
20 THAT DEPOSITION WE HAD OUR LOCAL COUNSEL PRESENT,
21 MR. DI GIOVANNI, WHO CONSULTED WITH PLAINTIFF'S COUNSEL, AND
22 MADE REPEATED REQUESTS FOR IT.  AT THAT TIME, THEY AGREED THEY
23 WOULD SEND US THE MONSEY DECLARATION, WE RECEIVED IT FIVE DAYS
24 LATER.
25     THE COURT:  WHAT IS THE DATE?

KATE V. MAREE, Court Reporter

1     MISS CORBIN:  THE THOMAS DECLARATION WAS ON
2 AUGUST 14, AND WE BELIEVE WE GOT IT -- LET US SEE -- ON
3 AUGUST 20, WAS THE DAY, I THINK, WE BELIEVE WE RECEIVED THE
4 MONSEY DECLARATION.  IT WAS ON AUGUST 22, WITHIN TWO DAYS, I
5 BELIEVE, THAT WE THEN, HAVING SEEN THE TRANSCRIPT FROM
6 DR. THOMAS' DEPOSITION, AND HAVING RECEIVED THIS MONSEY
7 DECLARATION, WITHIN TWO DAYS WE ADVISED PLAINTIFF'S COUNSEL
8 THAT, IN LIGHT OF THE FACTS THAT HAD BEEN STATED UNDER OATH IN
9 THE MONSEY DECLARATION, AND THAT WITH THE TESTIMONY OF
10 DR. THOMAS, THAT WE WOULD WITHDRAW, AND WE WOULD NOT BE
11 PROCEEDING WITH DR. THOMAS AS A CONSULTANT.
12     THE COURT:  THAT HAPPENED ON AUGUST 22?
13     MISS CORBIN:  WHAT I AM MAKING THIS BASED UPON IS
14 THAT MR. DI GIOVANNI, IN THE SECOND CONFERENCE WITH THE COURT,
15 MENTIONED TO THE COURT THAT IT WAS TWO DAYS AFTER WE RECEIVED
16 THE MONSEY DECLARATION THAT WE HAD ADVISED THEM, AND THAT WAS
17 ON AUGUST 20; SO, THAT IS MY UNDERSTANDING ABOUT AUGUST 22.
18     THE COURT:  ALL RIGHT.  WELL, LET ME ASK
19 MR. BROTHERS THIS.  LET US SAY THEY FOLLOWED **SHADOW TRAFFIC** AND
20 MADE THE INQUIRY DIRECTLY TO YOU, RATHER THAN SENDING YOU AN
21 ANNOUNCEMENT WHICH YOU DID NOT RECEIVE, OBVIOUSLY, BUT TOLD
22 YOU, WE INTEND TO TALK TO AND DEPOSE IN ONE WAY OR
23 ANOTHER -- AND YOU SENT THE SAME LETTER AND SAID, NO WAY.
24 WHY WOULD NOT THE SAME THING HAVE HAPPENED?  WHY WOULD NOT ALL
25 OF THIS DISPUTE, THAT IS, THEY WOULD TAKE THE POSITION THAT

KATE V. MAREE, Court Reporter

59

1 WHATEVER THE RELATIONSHIP WAS, IT WAS TERMINATED; AT LEAST,
2 THERE IS AN ARGUMENT THAT IT WAS NOT CONFIDENTIAL INFORMATION,
3 SOMETHING THAT HAD TO GO TO THE COURT?  THERE IS A DISPUTE, AND
4 IF YOU ALL COULD NOT WORK IT OUT, THEY HAVE A RIGHT TO GO TO
5 THE COURT AT THAT POINT, IT SEEMS TO ME.
6     EVEN THE COURT, AT THE HEARING, WITHOUT RECEIVING
7 THE MONSEY DECLARATION IN ADVANCE, DID A REASONABLE THING IN
8 SAYING WELL, YOU KNOW, LET US LOOK AT THE CORRESPONDENCE, LET
9 US LOOK AT THE -- ASK HIM SOME QUESTIONS IN A DEPOSITION AND
10 THEN GET IT RESOLVED.  I MEAN, MAYBE IT WOULD HAVE MOVED THINGS
11 UP A BIT, BUT WHY WOULD NOT THE DISPUTE HAVE STILL ARISEN AND
12 REQUIRED RESOLUTION?
13     MR. BROTHERS:  DR. THOMAS WOULD HAVE STILL BEEN OUR
14 EXPERT, THAT IS THE SHORT ANSWER.  **SHADOW TRAFFIC** STATES, AND
15 I AM LOOKING AT THE LAST PAGE, 1088: "IF LATHAM & WATKINS WISH
16 TO EMPLOY DELOITT & TOUCHE," WHICH WAS THE ACCOUNTING FIRM
17 PREVIOUSLY CONSULTED BY THE PLAINTIFFS, "IT SHOULD HAVE
18 CONTACTED ANDREWS AND KURTH," WHICH WAS COUNSEL FOR THE
19 PLAINTIFFS, "UPON LEARNING OF THE LATTER'S DISCUSSIONS WITH
20 DELOITT & TOUCHE."
21     WHEN DID THAT HAPPEN HERE?  APRIL 4, 2003, IS WHEN
22 THEY LEARNED THAT DR. THOMAS HAD BEEN RETAINED BY COUNSEL FOR
23 RICOH.  "LATHAM & WATKINS", AND I AM CONTINUING TO QUOTE:
24 "LATHAM & WATKINS FAILED TO TAKE THAT SIMPLE STEP.  HAD
25 ANDREWS & KURTH OBJECTED TO THE RETENTION BY LATHAM & WATKINS

KATE V. MAREE, Court Reporter

60

1 OF DELOITT & TOUCHE, LATHAM & WATKINS, IF IT BELIEVED THAT THE
2 OBJECTION WAS UNFOUNDED, COULD HAVE FASHIONED AN APPLICATION TO
3 THE TRIAL COURT, INDICATING ITS DESIRE AND THE NECESSITY OF THE
4 SERVICES OF DELOITT & TOUCHE."
5     THE COURT:  THAT IS EXACTLY THE POINT, MR BROTHERS,
6 AND I AM SAYING THAT WOULD HAVE HAPPENED ANYWAY.
7     THE PROBLEM WITH THIS CASE IS THAT, RATHER THAN DO
8 THAT, "THEY," THE LAW READING, "GAINED THE ADVANTAGE OF
9 LEARNING CONFIDENTIAL INFORMATION DISCLOSED BY ITS ADVERSARY
10 BEFORE OBTAINING AN ADJUDICATION".  THAT IS THE VICE IN IT.
11 AND THAT ISSUE -- NOBODY IS CONTENDING HERE THAT DEFENCE
12 COUNSEL OBTAINED THAT KIND OF INFORMATION -- I MEAN YOU MAY SAY
13 THAT, BUT I DO NOT SEE ANYTHING HERE THAT THEY GAINED
14 SUBSTANTIVELY WHAT WAS ATTORNEY/CLIENT, WORK PRODUCT
15 INFORMATION, OTHER THAN A GENERAL DESCRIPTION OF, THEY GAVE ME
16 A BUNCH OF DOCUMENTS IN PDFS, SOME WERE PUBLISHED, SOME WERE
17 NOT, ONE LOOKED LIKE SOME KIND OF CORPORATE DOCUMENT.  YES, ALL
18 RIGHT, THAT IS OF SOME COMPROMISE, BUT THAT IS NOT THE KIND OF
19 STUFF WE ARE TALKING ABOUT.
20     IT IS THE HARM TO YOU FOR WHICH YOU ARE SEEKING
21 SANCTIONS: IT IS MULTIPLYING PROCEEDINGS, HAVING TO GO THROUGH
22 THE BURDEN OF GOING TO JUDGE SLEET, I GUESS, TWICE OR WHATEVER
23 IT WAS, AND GOING THROUGH ALL THAT.  WELL, THIS VERY CASE SAYS
24 THAT IS EXACTLY WHAT WOULD HAVE HAPPENED, HAD THERE BEEN
25 A DISPUTE: YOU APPLY TO THE COURT, YOU FIGHT IT OUT, THE COURT

KATE V. MAREE, Court Reporter

62

1 DECIDES TO GIVE A LIMITED DEPOSITION, SHOW SOME DOCUMENTS, LET
2 US FIGURE OUT REALLY WHETHER, YOU KNOW, THIS PERSON CAN QUALIFY
3 OR NOT. SO, ALL I AM SAYING, IS THAT IT WOULD HAVE HAPPENED
4 ANYWAY.
5      MR. BROTHERS:   BUT, RESPECTFULLY, I THINK THERE IS
6 AN IMPORTANT DISTINCTION. IN FACT, I THINK THERE ARE THREE
7 IMPORTANT DISTINCTIONS: THE FIRST IMPORTANT DISTINCTION IS IN
8 **SHADOW TRAFFIC**, DELOITT & TOUCHE WAS NEVER RETAINED BY
9 ANDREWS & KURTH AND, AS A RESULT OF LATHAM'S ACTIONS,
10 ANDREWS & KURTH WAS NOT DEPRIVED OF THE SERVICES OF ITS
11 CONSULTING EXPERT; HERE, RICOH WAS.
12      SECOND, AN IMPORTANT DISTINCTION IS THAT THEY KNEW,
13 THAT COUNSEL FOR DEFENDANTS KNEW FOR THREE AND-A-HALF MONTHS,
14 AND YET NEVER MADE THE CALL. EVEN WHEN, AFTER THE UNDISCLOSED
15 SUBPOENA WAS SERVED AND THEY BEGAN TO GET EXCITED ABOUT WELL,
16 MAYBE WE CAN, YOU KNOW, HAVE SOME INTEREST IN RETAINING YOU,
17 THEY SHOULD HAVE MADE THE CALL.
18      THE THIRD AND, MOST IMPORTANTLY, **SHADOW TRAFFIC**
19 SAYS: "THAT THE PARTY WISHING TO RETAIN THE EXPERT FIRST TALK
20 WITH OPPOSING COUNSEL, AND ONLY IF THEN THEY THINK THEY CAN
21 STILL RETAIN, THEN THEY MAKE APPLICATION TO THE COURT AND HEAR
22 ABOUT IT". IT SHOULD HAVE BEEN DONE IN A MORE DELIBERATIVE
23 FASHION, IF IT EVEN GOT TO THAT POINT. WHAT IS SO SIGNIFICANT
24 HERE IS, THAT WHEN WE LEARNED OF WHAT HAD HAPPENED, WE
25 IMMEDIATELY SAID, YOU KNOW, DR. THOMAS RECEIVED OUR

KATE V. MAREE, Court Reporter

1 CONFIDENTIAL INFORMATION, WE OBJECT TO THIS. AND WHAT WAS THE
2 RESPONSE? THE RESPONSE WAS, YOU GOT TO GO TO THE COURT, WE ARE
3 PROCEEDING. IF YOU DON'T LIKE IT, YOU FILE AN EMERGENCY
4 APPLICATION WITH THE COURT, BECAUSE IF YOU DO NOT DO IT IN TWO
5 WEEKS, YOU HAVE WAIVED IT. THAT IS CONTRARY TO **SHADOW TRAFFIC**.
6 IN THE --
7      THE COURT:   IT MAY BE --
8      MR. BROTHERS:   I AM SORRY, GO AHEAD.
9      THE COURT:   BUT MY QUESTION IS: WHAT IS THE MARGINAL
10 OR INCREMENTAL COST RESULTING TO YOUR CLIENT AND TO YOU, AS A
11 RESULT OF THE REVERSE ORDER WHICH FLOWED FROM THE FACT THAT THE
12 NOTICE WAS NOT GIVEN; THEREFORE, YOU HAD TO GO AND GET THE
13 ORDER, RATHER THAN THEY GO IN AND FILE FOR THE ORDER?
14      MR. BROTHERS:   THE COST IS THE LOSS OF DR. THOMAS AS
15 AN EXPERT, BECAUSE HAD IT BEEN DONE BEFOREHAND, HAD IT BEEN
16 DONE BEFORE HE SIGNED AN AGREEMENT SAYING, "I WILL NOT GIVE ANY
17 EXPERT TESTIMONY ADVERSE TO SYNOPSYS" -- WHICH IS WHAT HE
18 SIGNED ON JULY 21 -- THEREBY DESTROYING HIS ABILITY TO TESTIFY
19 AS AN EXPERT ON BEHALF OF RICOH, OR OTHERWISE PROVIDE EXPERT
20 SERVICES --
21      THE COURT:   ALL RIGHT.
22      MISS CORBIN:   YOUR HONOR --
23      THE COURT:   HOLD ON, LET ME MAKE SURE I UNDERSTAND
24 THIS.
25      MISS CORBIN:   SORRY.

KATE V. MAREE, Court Reporter

63

1      THE COURT:   SO IT IS NOT -- THE PREJUDICES THAT I
2 CAN SEE FROM NOT FOLLOWING **SHADOW TRAFFIC** ARE: NUMBER ONE,
3 THERE WERE THE TRIPLE PREJUDICES OF OBTAINING CONFIDENTIAL
4 INFORMATION, GETTING THE INFORMATION THAT YOU SHOULD HAVE
5 GOTTEN BECAUSE SOMEONE HAS A CHANCE TO GET TO COURT; THAT DID
6 NOT HAPPEN HERE, AS FAR AS I CAN SEE, NOTHING WAS SUBSTANTIAL;
7 AND NUMBER TWO, THE MULTIPLICITY OF PROCEEDINGS, THE COSTS, THE
8 TRANSACTIONAL COSTS, THE LITIGATION COSTS OF NOW HAVING TO
9 LITIGATE THIS ISSUE, THAT, IT SEEMS TO ME, WOULD HAVE OCCURRED
10 REGARDLESS OF WHO WENT INTO COURT FIRST, JUST LIKE WHETHER
11 SOMEONE GOES IN FOR A PROTECTIVE ORDER, OR A MOTION TO COMPEL.
12 IN THE FINAL ANALYSIS, IT MAY BE FILE ONE MORE BRIEF, AS THE
13 INITIATING PARTY, I DO NOT KNOW, BUT IT IS NOT ALL THAT
14 SUBSTANTIALLY DIFFERENT. IT SEEMS TO ME, THE SAME ISSUES WOULD
15 HAVE ARISEN.
16      MR. BROTHERS:   I WOULD BE WILLING TO WAGER IT WOULD
17 NOT HAVE BEEN THREE HEARINGS.
18      THE COURT:   ALL RIGHT. THE THIRD IS NOW WHAT YOU
19 ARE SAYING: THE LOSS OF AN EXPERT, BECAUSE HE SIGNED A RETAINER
20 AGREEMENT THAT NOW OBLIGATES HIM NOT TO GIVE ADVERSE TESTIMONY.
21 IS THAT WHAT IT IS?
22      MR. BROTHERS:   WHEN YOU HAVE A SIDE-SWITCHING
23 EXPERT -- I MEAN, WE HAVE CITED CASE LAW IN OUR BRIEF, THAT
24 WHEN YOU HAVE A SIDE-SWITCHING EXPERT -- IT IS THE
25 **RUGLE VS. ELI-LILLY** CASE THAT WE CITED AT PAGE 13 OF OUR REPLY

KATE V. MAREE, Court Reporter

64

1 BRIEF: "PERMITTING ONE PARTY TO CALL AN EXPERT PREVIOUSLY
2 RETAINED OR CONSULTED BY THE OTHER SIDE ENTAILS A VERY
3 SUBSTANTIAL PREJUDICE, STEMMING FROM THE FACT OF THE PRIOR
4 RETENTION, QUITE APART FROM THE SUBSTANCE OF THE TESTIMONY";
5 SO, THERE IS THE PUBLIC INTEREST ALSO.
6      THE COURT:   ALL RIGHT. WELL, LET ME ASK YOU THIS.
7 OF COURSE, IT APPEARS THAT DR. THOMAS HAD ALREADY SAID THAT HE
8 WAS NOT GOING TO TESTIFY AS AN EXPERT, AND I KNOW WHAT
9 MISS CORBIN IS GOING TO SAY IS THAT IT WAS ALREADY AGREED, YOU
10 KNOW, LONG BEFORE THIS DISPUTE AROSE. THE INFERENCE IS THAT
11 YOU DID NOT WANT HIM TO TESTIFY AS AN EXPERT, FOR ONE REASON OR
12 ANOTHER -- ONE COULD GUESS WHAT IT IS BUT WE MIGHT NOT GO
13 THERE -- BUT, YOU KNOW, SO, NUMBER ONE, IS THERE REALLY AN
14 INJURY, IN FACT, HERE? NUMBER TWO, WOULD NOT THE REMEDY, IF
15 THEIR IS, BE TO NULLIFY THAT RETAINER AGREEMENT AND FREE HIM
16 AGAIN? AND TO SAY WELL, IF HE SO WANTS TO TESTIFY, YOU ARE
17 GOING TO HAVE TO PUT IT BACK WHERE IT WAS AND, PERHAPS, THE
18 DEFENDANTS WOULD EVEN STIPULATE THAT HE IS CLEARLY NOT GOING TO
19 BE WANTED -- IF HE CANNOT -- AND HE CANNOT POSSIBLY BE THEIR
20 EXPERT AT THIS POINT, AND TO NULLIFY, RESCIND THAT AGREEMENT,
21 PUT THAT BACK WHERE IT WAS? HE IS NOW FREE TO TESTIFY, IF HE
22 WANTS TO, AND IF YOU WANT HIM. WHAT IS WRONG WITH THAT?
23      MR. BROTHERS:   I DO NOT BELIEVE THAT IS AN OMELETTE
24 THAT CAN BE UNSCRAMBLED. I THINK THAT THE ADVERSE IMPACT OF
25 DR. THOMAS HAVING BEEN PERSUADED TO SWITCH SIDES,

KATE V. MAREE, Court Reporter

1  UNFORTUNATELY, CAUSES SOME QUESTIONS AS TO HIS CREDIBILITY AND,
2  PERHAPS, HIS JUDGMENT, AND IT WOULD BE WITH LESS THAN FULL
3  CONFIDENCE, BECAUSE OF THIS EPISODE, THAT RICOH MAY HAVE WITH
4  RESPECT TO DR. THOMAS.  LET ME JUST MAKE A --
5      THE COURT:   LET ME ASK YOU THIS.  IF YOU ARE
6  CONCERNED THAT IF YOU PUT HIM ON THE STAND AND HE IS GOING TO
7  BE CROSS-EXAMINED ON WELL, DID YOU SWITCH SIDES, ET CETERA,
8  ET CETERA, THAT WOULD BE OFF LIMITS?  AS LONG AS THERE IS A
9  RESCISSION, I MEAN, TO PUT EVERYTHING BACK WHERE IT WAS, THERE
10 WOULD BE EITHER A COURT RULING, A MOTION **IN LIMINE**, THAT HE
11 CANNOT BE QUESTIONED ABOUT THE FACT THAT HE HAD SIGNED A
12 RETAINER AGREEMENT AND AGREED TO TESTIFY ON THE OTHER SIDE.
13 IF THAT IS AN ILL-GOTTEN GAIN, UNDER YOUR CONSTRUCTION OF THE
14 **SHADOW TRAFFIC** CASE, THAT PUTS IT BACK WHERE IT WAS.
15     NOW, WHETHER YOU TRUST HIM ANY MORE, MAYBE YOU HAVE
16 NOW DISCOVERED SOMETHING ABOUT HIM -- TO YOUR BENEFIT, YOU HAVE
17 NOW DISCOVERED SOMETHING THAT YOU PROBABLY WOULD HAVE LEARNED
18 AT SOME TIME ANYWAY BUT, IN ANY EVENT, I DO NOT SEE WHY THAT
19 CANNOT BE ADDRESSED.
20     MR. BROTHERS:   I QUESTION WHETHER IT COULD BE
21 EFFECTIVELY ADDRESSED TO THE SATISFACTION OF RICOH, WHO HAD
22 WANTED TO RETAIN HIM, AND NOW HAS CAUSE TO QUESTION THAT.  JUST
23 TO BACK UP A POINT: THE REASON WHY DR. THOMAS WAS RECEPTIVE,
24 AND WHY HE E-MAILED MR. CAMPBELL, WAS BECAUSE MR. CAMPBELL KEPT
25 ON E-MAILING HIM, EVEN AFTER DR. THOMAS HAD SAID, "I'M A

KATE V. MAREE, Court Reporter

1  CONSULTANT FOR DICKSTEIN."  THERE WAS THAT ONGOING EXCHANGE OF
2  E-MAILS ABOUT WHERE IS DR. KOWALSKI?  YOU KNOW, ADDITIONAL
3  COMMUNICATIONS WHICH, IN THE ABSTRACT, MAY NOT APPEAR TO BE
4  PARTICULARLY HARMFUL, EVEN THOUGH WE QUOTE THE HAZARD HORN
5  BOOK, SAYING THAT IS INAPPROPRIATE.  IF THAT IS ALL THAT
6  HAPPENED, WE WOULD NOT BE HERE, BUT IT CREATED AN EASE OF
7  COMMUNICATION BETWEEN DR. THOMAS AND MR. CAMPBELL THAT, AFTER
8  DR. THOMAS RECEIVED THE SUBPOENA, HIS INCLINATION WAS TO E-MAIL
9  THE PERSON WHO HE HAD BEEN EXCHANGING E-MAILS WITH ABOUT THIS
10 CASE, AND CONTINUED THAT DIALOGUE.
11     THE CONCERN THAT WE HAVE HERE IS THE JUDGMENT OF
12 DEFENDANT'S COUNSEL WHO, ON SO MANY OCCASIONS, FAILED TO TAKE
13 ACTIONS THAT WE BELIEVE SHOULD HAVE BEEN TAKEN UNDER THE
14 RULES: TO CEASE COMMUNICATION WITH THE OPPOSING SIDE'S EXPERT,
15 TO PROPERLY ADVISE THE OTHER SIDE OF ITS INTENT, TO SEEK THE
16 INTERVENTION OF THE COURT, IF THE PARTIES COULD NOT ADDRESS THE
17 ISSUE.  I DO FIND IT SIGNIFICANT THAT, AFTER THEY RECEIVED THE
18 MONSEY DECLARATION, THEY SAID, OKAY, WE ARE GOING TO GIVE UP.
19     NOW, MISS CORBIN IMPLIED THAT THAT DECLARATION WAS
20 HELD BACK FOR SOME SORT OF STRATEGIC REASON.  THE REASON WHY
21 THAT DECLARATION WAS NOT PROVIDED, IS BECAUSE DEFENDANT'S
22 COUNSEL REFUSED TO AGREE THAT BY OUR PROVIDING IT, WE WERE NOT
23 WAIVING THE WORK PRODUCT PRIVILEGE OF ANY OF THE INFORMATION
24 THAT WAS DISCLOSED IN THERE.  I WENT BACK AND FORTH IN DETAIL
25 WITH MR DI GIOVANNI WHO WAS, IN TURN, COMMUNICATING WITH

KATE V. MAREE, Court Reporter

---

67

1  MR. KELLY ON THIS ISSUE, AND IT WAS NOT UNTIL WE WERE ABLE TO
2  ACHIEVE THAT AGREEMENT THAT WE IMMEDIATELY PROVIDED THAT
3  DECLARATION, BUT I DO NOT THINK THAT THAT NECESSARILY WAS THE
4  BE-ALL AND END-ALL.
5      MR. HOFFMAN HAD THAT DECLARATION IN HIS HAND DURING
6  THAT TELEPHONE CONFERENCE WITH JUDGE SLEET ON JULY 30, AND HE
7  SUMMARIZED IT, AND YOUR HONOR HAS READ THAT TRANSCRIPT IN WHICH
8  HE SUMMARIZED FOR 10 PAGES, THE CONTENT OF THAT DECLARATION.
9  JUDGE SLEET SAID: "I AM NOT QUESTIONING THE FACT THAT THAT
10 DECLARATION EXISTS".  IT WAS SIGNED TWO DAYS BEFORE THAT
11 HEARING, AND IT WAS LITERALLY PULLED TOGETHER BY CHRIS MONSEY
12 IN THE FIVE DAYS BETWEEN THE NOTICE OF RETENTION BY SYNOPSYS
13 AND THE DEFENDANTS OF DR. THOMAS, ON THE 28TH, WHEN HE SIGNED
14 IT.  YET, EVEN WHEN ALL OF THOSE FACTS WERE ALREADY MADE KNOWN,
15 WERE ALREADY LAID OUT TO COUNSEL FOR THE DEFENDANTS, WHAT DID
16 THEY DO?  THEY DID NOT DECLINE TO PROCEED, THEY INSISTED THAT
17 THEY WERE GOING FORWARD.  THREE TIMES JUDGE SLEET ASKED
18 MR. KELLY, "ISN'T THAT SUFFICIENT?" TWICE, MR. KELLY EVADED THE
19 QUESTION.  THE THIRD TIME, JUDGE SLEET SAID, "ALL RIGHT, IF
20 YOU'RE GOING TO BE DISINGENUOUS WITH ME, COUNSEL FOR RICOH
21 PROVIDE YOUR ORDER;" THAT IS ALL IN THE TRANSCRIPT.
22     WHAT WE HAVE NOW IS: WHAT SHOULD BE THE CONSEQUENCES
23 OF THE CONDUCT THAT IS SO AT ODDS WITH THE COUNSEL OF **SHADOW**
24 **TRAFFIC**?  SO AT ODDS WITH THE COUNSEL OF **CORDI**?  SO AT ODDS
25 WITH THE COUNSEL OF **WANG**?

KATE V. MAREE, Court Reporter

---

68

1      THE COURT:   LET ME ASK YOU, MISS CORBIN, IF THE
2  DECLARATION WAS, IN FACT, READ NOT ONLY BY COUNSEL, BUT BY THE
3  COURT?  OBVIOUSLY, THE COURT HEARD THE WHOLE THING, AND THE
4  COURT ASKED, "ISN'T THAT SUFFICIENT?"  PERHAPS YOU CAN GET THE
5  FULL ANSWER OF THE COURT BUT, NONETHELESS, THE COURT CERTAINLY
6  COULD HAVE JUST RULED AT THIS POINT; THAT ENDS THE INQUIRY.
7      MR. BROTHERS:   THE JUDGE ISSUED AN ORDER THAT SAID:
8  "COUNSEL FOR DEFENDANT SHALL HAVE NO FURTHER COMMUNICATIONS
9  WITH DR. THOMAS".  THAT WAS THE ORDER THAT WAS SIGNED, THAT IS
10 THE ORDER THAT DEFENDANTS NOW SEEK TO HAVE LIFTED.
11     THE COURT:   WHEN WAS THAT ORDER ENTERED?
12     MR. BROTHERS:   THAT ORDER WAS ENTERED ON JULY 31,
13 THE DAY AFTER THE HEARING, AND WE PROVIDED THAT TO YOUR HONOR
14 ON TAB 30 TO MY DECLARATION.
15     THE COURT:   WELL, PENDING FURTHER ORDER, AND THEN HE
16 ORDERS FURTHER PROCEEDINGS, IN TERMS OF DISCLOSURES.  IT WAS
17 NOT THE FINAL ADJUDICATION OF THIS POINT, THAT IS ALL I AM
18 SAYING.  THEREFORE, IT WAS NOT ENOUGH FOR THE JUDGE AND,
19 THEREFORE, AT LEAST THE JUDGE STILL SAW A NEED FOR FURTHER
20 DEVELOPMENT, FOR FACTUAL DETERMINATION ON THIS IMPORTANT
21 QUESTION.  I MEAN, ARE YOU SAYING THAT SOMEHOW THIS IS
22 SANCTIONABLE CONDUCT UNDER SECTION 1927, FOR BAD FAITH, NOT TO
23 GIVE UP?  AFTER HAVING HEARD THE RECITATION OF THIS DECLARATION
24 ON JULY 30, WHEN THE COURT ITSELF HEARD IT, AND DID NOT QUITE
25 COME TO THE CONCLUSION THAT IT WAS THE END-ALL, BE-ALL,

KATE V. MAREE, Court Reporter

1   DISPOSITIVE -- AT LEAST THE COURT FELT THERE WAS STILL SOME
2   WARRANT IN FURTHER DEVELOPMENT.  I DO NOT KNOW HOW IT RISES TO
3   THE LEVEL OF SOMETHING THAT LOOKS LIKE RULE 11, OR SECTION
4   1927, OR WHATEVER.
5       MR. BROTHERS:  THE QUESTION I THINK, YOUR HONOR, IS
6   WHETHER THE ACTIONS OF COUNSEL FOR DEFENDANTS WERE INCONSISTENT
7   WITH THE PRACTICES THAT, TIME AND TIME AGAIN, I HAVE HEARD
8   ENCOURAGED FROM THE FEDERAL BENCH: TO COMMUNICATE WITH EACH
9   OTHER, TO BE PROFESSIONAL, TO NOT MISREPRESENT, TO FOLLOW THE
10  RULES, AND TO MAKE THE APPROPRIATE INQUIRIES.  IN THIS
11  CIRCUMSTANCE, AS COUNSELED BY **SHADOW TRAFFIC**, I DO NOT THINK
12  THAT THERE IS ANY QUESTION THAT **SHADOW TRAFFIC** WAS NOT INVOLVED
13  HERE.
14      IN COMMUNICATIONS WITH MY CLIENT -- BECAUSE WE
15  THOUGHT HARD ABOUT WHETHER WE SHOULD MAINTAIN THIS MOTION -- WE
16  THOUGHT, SHOULD IT JUST BE DROPPED, TAKE OUR LUMPS AND MOVE ON?
17  WE HAVE LOST OUR EXPERT, WE HAVE INCURRED TENS OF THOUSANDS OF
18  DOLLARS IN FEES, BUT THAT IS THE BIG TICK OF LITIGATION.  OR,
19  SHOULD THERE BE SOME SORT OF MARKER LAID DOWN THAT THIS SIMPLY
20  IS NOT APPROPRIATE CONDUCT?  NOW, THAT IS YOUR DECISION -- AND
21  IT IS NOT MINE -- BUT WE THOUGHT WE SHOULD GIVE YOU THE
22  OPPORTUNITY TO MAKE THAT DECISION AND, TO THE EXTENT THAT THERE
23  IS ANYTHING TROUBLING IN HERE AT ALL, IDENTIFY IT FOR WHAT IT
24  IS.
25      TO THE EXTENT THAT THE CONDUCT OF DEFENDANTS GETS

KATE V. MAREE, Court Reporter

1   A FREE PASS, THEN IT GETS A FREE PASS, BUT I WAS SUFFICIENTLY
2   TROUBLED BY IT.  I KNOW IN THE MEET-AND-CONFERS THAT I HAD, IN
3   TRYING TO RESOLVE THIS, I HAD PROPOSED THAT THE ISSUE JUST
4   SIMPLY BE PRESENTED TO BILL O'BRIEN, WHO IS HOWREY'S HEAD OF
5   THEIR PROFESSIONAL RESPONSIBILITY COMMITTEE, BECAUSE I KNOW
6   BILL, AND I KNOW BILL WOULD BE TROUBLED BY WHAT HAPPENED HERE.
7       THE COURT:  WELL, I WILL TELL YOU THIS.  IN GOING
8   THROUGH THE COURSE OF EVENTS HERE I, TOO, AM TROUBLED.  THINGS
9   CERTAINLY COULD HAVE, AND SHOULD HAVE, BEEN HANDLED
10  DIFFERENTLY, IN MY VIEW.  I DO NOT KNOW, IN THE END, WHETHER
11  THAT WOULD HAVE OBVIATED THE CONTESTS, THE TRANSACTION COSTS OF
12  GETTING THIS ISSUE ADJUDICATED, BUT IT CERTAINLY DID NOT STRIKE
13  ME AS SOMETHING THAT I WOULD WANT DONE TO ME, IF I WERE ON THE
14  OTHER SIDE OF THIS THING.  TO HAVE AN EXPERT TALKED TO AND
15  CONSULTED, TO HAVE -- EVEN AS A RESULT OF AN INADVERTENCE -- IT
16  SEEMS TO ME, IF YOU ARE GOING TO DO SOMETHING LIKE SUBPOENA
17  SOMEBODY'S EXPERT, YOU BETTER MAKE DAMN SURE THAT THEY GET THAT
18  NOTICE OF SUBPOENA.  IF YOU DO NOT HEAR ANYTHING, DID IT NOT
19  SEEM ODD?  DID IT NOT OCCUR TO ANYBODY THAT IT SEEMED A LITTLE
20  ODD THAT OPPOSING COUNSEL WOULD JUST SIT THERE AND NOT RESPOND?
21      IT JUST SEEMS TO ME, THAT CERTAIN THINGS COULD HAVE
22  BEEN DONE.  I WILL TELL YOU, AS I SAID AT THE OUTSET, THERE
23  WERE STATEMENTS THAT WERE MADE IN FRONT OF JUDGE SLEET THAT
24  THOUGH, PERHAPS, NOT TECHNICALLY INACCURATE, CERTAINLY WERE
25  CAPABLE OF BEING MISCONSTRUED AND MISLEADING, THAT I WILL

KATE V. MAREE, Court Reporter

71

1   FRANKLY SAY HAD A -- TO BORROW A TERM -- SORT OF CLINTONESQUE
2   AIR TO THEM.  BUT, IN MY VIEW, NUMBER ONE, IT DOES NOT MEET THE
3   STANDARD OF 1927 AND, MORE IMPORTANTLY, I DO NOT SEE IN THE
4   FINAL ANALYSIS, THE THREE PREJUDICES I HAVE BEEN ABLE TO
5   IDENTIFY, THAT ANY ONE HAVE THOSE HAVE BEEN CAUSALLY RELATED IN
6   ANY SUBSTANTIAL WAY BY WHAT HAPPENED.
7       YOU MAY HAVE TO SAY: NO HARM, NO FOUL, BUT I DO NOT
8   THINK ANY CONFIDENTIAL INFORMATION WAS OBTAINED AND THE FIRM
9   WAS CIRCUMSPECT IN THAT REGARD.  TO A CERTAIN EXTENT, I
10  UNDERSTAND THAT FROM THEIR PERSPECTIVE, THEY THOUGHT IT HAD
11  BEEN SERVED, AND THEY TRIED TO MAKE SURE THAT THEY DID NOT GET
12  CONFIDENTIAL INFORMATION, UNLIKE SOME OF THESE OTHER CASES,
13  SUCH AS LATHAM & WATKINS.  THEY DID TAKE STEPS, AND I THINK
14  THAT IS FAIR, AND THAT IS WHY THERE IS NO PREJUDICE ON THAT
15  FIRST PRONG, BECAUSE THEY DID TAKE STEPS.
16      WITH RESPECT TO THE MULTIPLICITY OF PROCEEDINGS, AND
17  THE FACT THAT THERE HAD TO BE THREE HEARINGS, THIS WAS AN ISSUE
18  WHERE, AT LEAST, IT WAS DEBATABLE AND, ONCE IT IS DEBATABLE,
19  THE DOOR IS OPEN.  FRANKLY, TO THE EXTENT THAT CASE LAW PERMITS
20  SIDE SWITCHING, AND EVEN SOME LIMITED DEPOSITION OF THE OTHER
21  SIDE'S EXPERTS, UNDER SOME CIRCUMSTANCES, TO THE EXTENT IT IS
22  DEBATABLE, IT IS FAIR TO DEBATE IT.
23      FINALLY, WITH RESPECT TO THE LOSS OF THE EXPERT, YOU
24  KNOW, IT SEEMS TO ME THAT CAN BE UNDONE.  IF NEED BE, THAT CAN
25  BE STIPULATED TO, IF RICOH IS REALLY SERIOUS ABOUT TRYING TO

KATE V. MAREE, Court Reporter

72

1   RE-ACQUIRE DR. THOMAS INTO ITS CASE.  THAT IS ONE CONCRETE
2   THING THAT I THINK DOES FLOW FROM THE NON-COMPLIANCE WITH THE
3   **SHADOW TRAFFIC** CASE: THE SORT OF, SIGNING SOMEBODY UP BEFORE
4   THE OTHER SIDE GETS A CHANCE TO OBJECT, AND COMMITTING THEM NOT
5   TO GIVE TESTIMONY TO THE OTHER SIDE.  I THINK IT IS HARMLESS IN
6   THIS CASE, BECAUSE NO INVOLVEMENTS WERE, SORT OF, GOING ON HERE
7   BUT, IF NECESSARY, THAT IS THE KIND OF THING I WOULD LOOK AT IN
8   TERMS OF UNDOING BUT, ON ALL THOSE FRONTS, I DO NOT SEE ANY
9   SUBSTANTIAL HARM.
10      THEN, AGAIN, I AM NOT GOING TO CAST ASPERSIONS ON
11  EVERY ACT THAT WAS DONE, AND THE GOOD FAITH, BUT, CERTAINLY,
12  THERE WERE SOME VERY RISKY THINGS HERE, AND THINGS THAT SHOULD
13  NOT -- IT SEEMS TO ME THE BETTER PRACTICE WOULD HAVE BEEN TO
14  CONTACT COUNSEL OUTRIGHT AND MAKE IT CLEAR -- AND NOT LEAVE IT
15  TO A SECRETARY, SIMPLY TO SERVE A SUBPOENA, AFTER THE FACT, AND
16  THEN TO ALLOW ALL THIS TO HAPPEN.  IT JUST SEEMS TO ME, THAT
17  THAT WAS A SLOPPY ACT AND THAT, YOU KNOW, IT IS JUST NOT THE
18  WAY THAT SOMETHING THIS SERIOUS, IN THIS SUBSTANTIAL
19  LITIGATION, SHOULD HAVE BEEN DONE.  FOR WHATEVER THAT IS WORTH,
20  THAT IS MY VIEW.
21      MR. BROTHERS:  YOUR HONOR, THE JOINT LETTER: YOU HAD
22  REQUESTED AN UPDATE, WITH RESPECT TO CERTAIN OTHER DISCOVERY
23  ISSUES.
24      MISS CORBIN:  ARE WE MOVING ON TO ANOTHER TOPIC?,
25  BECAUSE I WOULD LIKE TO BE --

KATE V. MAREE, Court Reporter

1    THE COURT:   YES. I WOULD LIKE TO GIVE YOU A CHANCE
2  TO RESPOND.
3    MISS CORBIN:   OKAY. CERTAINLY, YOUR HONOR, I AGREE
4  IT IS A MOST UNFORTUNATE MISTAKE THAT WAS MADE WITH RESPECT TO
5  THE SUBPOENA -- AN EMBARRASSING ONE TO BOOT -- IT IS NOT WHAT I
6  EXPECT FROM MY FIRM, MY PRACTICE, AND THE PEOPLE THAT I WORK
7  WITH, BUT MISTAKES HAPPEN AND IT DID HAPPEN; IT WAS NOT
8  INTENTIONAL.
9    THE THING I FEEL LIKE I DEFINITELY NEED TO CORRECT
10  IS THAT PLAINTIFF'S COUNSEL -- IT IS HARD TO RETAIN YOUR
11  EQUANIMITY WHEN YOU ARE BEING ATTACKED AND ACCUSED OF UNETHICAL
12  BEHAVIOR AND THE FACTS ARE MISSTATED SO OFTEN -- AS THEY HAVE
13  BEEN DURING THE COURSE OF ADJUDICATING THIS PARTICULAR ISSUE:
14  FOR EXAMPLE, THE THREE AND-A-HALF MONTHS THAT PLAINTIFF'S
15  COUNSEL SPEAKS TO WHEN, I MEAN, I THINK THE RECORD IS CLEAR,
16  THAT WHEN DR. THOMAS ORIGINALLY SAID HE HAD WORKED AT THE OTHER
17  SIDE, WE SAID, "THAT'S IT, WE CAN'T TALK TO YOU ANYMORE."
18  I DO NOT THINK IT IS UNCOMMON: ON MULTIPLE OCCASIONS -- AND IF
19  IT IS INCORRECT THEN I GUESS I BETTER CEASE THIS PRACTICE -- IN
20  SEARCHING FOR AN EXPERT, I HAVE OFTEN BEEN TOLD OH, I HAVE A
21  CONFLICT, SO I WILL NOT BE ABLE TO SPEAK WITH YOU ON THAT
22  MATTER. BUT THEY HAVE EITHER JUST OFFERED, OR I HAVE INQUIRED,
23  IS THERE ANYBODY ELSE YOU COULD INDICATE THAT MIGHT HAVE A
24  SIMILAR BACKGROUND? I HAVE DONE THAT BEFORE, THAT WAS THE ONLY
25  TYPE OF COMMUNICATION.

KATE V. MAREE, Court Reporter

1    THE COURT:   I AGREE WITH THAT. I AGREE WITH THAT,
2  THAT DOES NOT TROUBLE ME AT ALL.
3    MISS CORBIN:   BUT, AS TO THE TIMING OF THE **SHADOW**
4  **TRAFFIC** CASE, THE FIRST -- IT WAS ONLY WHEN WE SERVED THE
5  DEPOSITION: WE ARE ASSUMING THE OTHER SIDE HAS NOTICE OF IT,
6  WE DO NOT GET AN OBJECTION. DR. THOMAS, AGAIN -- THIS SEEMS TO
7  BE ROUTINE PRACTICE NOW -- DOES NOT CALL, BUT SENDS AN E-MAIL
8  SAYING: "CAN I BE REIMBURSED FOR MY TIME?" IT WAS IN THAT
9  CONTEXT, THAT HE EXPLAINED THAT HE WAS NO LONGER ACTIVE IN HIS
10  CONSULTING ARRANGEMENT, AND IT WAS IN AN EXCHANGE OF E-MAILS,
11  ALL OF WHICH YOUR HONOR HAS, ON JULY 10 AND 11, WHERE HE
12  INDICATED THAT HE HAD, IN FACT, TERMINATED HIS AGREEMENT, AND
13  WOULD BE AMENABLE TO WORKING WITH US. SO, THAT HAPPENS ON
14  JULY 11, IT WAS THE DAY HE WENT ON VACATION OR HE WENT ON
15  VACATION THE FOLLOWING DAY, SO I FEEL WE DID COMPORT WITH
16  **SHADOW TRAFFIC**, IN THAT THE FIRST INDICATION THAT HE IS WANTING
17  TO SWITCH SIDES, OCCURS ON JULY 11, AND HE GOES ON VACATION FOR
18  A WEEK.
19    THE DAY HE COMES BACK, JULY 17, IS THE DAY HE SIGNS
20  THE ENGAGEMENT LETTER, AND IT IS THE DAY THAT WE SEND THE
21  LETTER TO PLAINTIFF'S COUNSEL, SO IT IS A PERIOD OF A WEEK
22  WHERE -- I AGREE WITH YOUR HONOR -- MAYBE ON JULY 11, WHEN HE
23  INDICATED HE WANTED TO BE, IT WOULD HAVE BEEN A BETTER PRACTICE
24  FOR US TO INDICATE IT ON THAT DAY.
25    THE COURT:   THAT IS THE POINT.

KATE V. MAREE, Court Reporter

---

75

1    MISS CORBIN:   BUT, WE ARE TALKING ABOUT A WEEK, WE
2  ARE NOT TALKING ABOUT THREE AND-A-HALF MONTHS.
3    THE COURT:   WELL, A WEEK IS INVOLVED AND IMPORTANT
4  THINGS CAN HAPPEN IN A WEEK, AND THE SEQUENCE IS IMPORTANT,
5  THAT IS MY ONLY POINT. IT SEEMS TO ME, THAT IS THE POINT WHERE
6  THE BETTER PRACTICE WOULD HAVE BEEN TO CONTACT COUNSEL
7  DIRECTLY, AND NOT LEAVE IT -- AND I UNDERSCORE MY POINT -- IT
8  DOES SEEM TO ME IT WOULD HAVE BEEN ODD NOT TO HAVE HEARD
9  ANYTHING FROM OPPOSING COUNSEL, AFTER ASSUMING THAT THE
10  SUBPOENA WAS ISSUED. EVEN IF HE HAD BEEN TERMINATED, ON
11  SERVING THE OTHER SIDE, THEY ARE NOT GOING TO JUST SAY, FINE,
12  DO WHATEVER YOU WANT. SOMEBODY SHOULD HAVE MADE A CALL, IS ALL
13  I CAN SAY, IT IS BETTER PRACTICE. WHETHER IT VIOLATED THE LAW
14  OR NOT, I DO NOT KNOW, BUT IT JUST SEEMS TO ME, THE BETTER
15  PRACTICE WOULD HAVE BEEN TO MAKE THE CALL, DEFINITELY.
16    MISS CORBIN:   WELL, CERTAINLY, WE WOULD AGREE TO
17  UNDOING THE AGREEMENT, AND THEN HE COULD BE RETAINED AGAIN.
18  WE CERTAINLY ARE NOT OF THE VIEW THAT THE
19  REASON -- HE HAD TALKED WELL IN ADVANCE OF OUR FIRST CONTACT
20  WITH HIM, AND HE HAD LET THEM KNOW HE DID NOT WANT TO TESTIFY
21  ON THEIR BEHALF; WE CANNOT BE BLAMED FOR THAT. ONE CAN ONLY
22  INFER WHAT THE REASON FOR THAT IS, IT IS IRRELEVANT HERE. IT
23  DID NOT HAVE TO DO WITH ANY COMMUNICATION THEY HAD FROM US, SO
24  I AGREE WITH YOUR HONOR, THAT I DO NOT BELIEVE THAT THIS CASE
25  WOULD NOT HAVE COME OUT ANY DIFFERENTLY OR REQUIRED ANY FEWER

KATE V. MAREE, Court Reporter

76

1  HEARINGS. IT IS UNFORTUNATE, BUT IF THEY WOULD LIKE TO RETAIN
2  HIM, THEN THEY ARE CERTAINLY FREE TO DO SO. I DO NOT BELIEVE
3  THEY WILL, BECAUSE I DO NOT THINK THAT THAT WAS THE PLAN TO
4  BEGIN WITH.
5    THE COURT:   WELL, I HAVE SAID WHAT I AM GOING TO
6  SAY. AS I ALSO PREFACED THIS IN THE BEGINNING, I THOUGHT THE
7  FIRM, IN MANY WAYS, WAS VERY CIRCUMSPECT: THAT ONCE THIS THING
8  STARTED TO UNFOLD, PAST THE **SHADOW TRAFFIC**, A PHONE CALL, I
9  THINK, SHOULD HAVE BEEN MADE. YOU CERTAINLY TOOK STEPS TO MAKE
10  SURE YOU DID NOT GET SUBSTANTIVE ATTORNEY/CLIENT WORK PRODUCT
11  INFORMATION THAT WOULD HAVE BEEN THEN IRREPARABLE. I DO NOT
12  THINK ANYTHING IRREPARABLE HAPPENED SO, TO THAT EXTENT, THAT
13  PART OF IT IS GOOD.
14    MISS CORBIN:   THANK YOU, YOUR HONOR.
15    MR. BROTHERS:   WITH RESPECT TO OTHER DISCOVERY
16  ISSUES, YOUR HONOR --
17    THE COURT:   YES.
18    MR. BROTHERS:   IF I COULD JUST BE HEARD FOR A COUPLE
19  OF MINUTES. I THINK A FEW WORDS FROM YOUR HONOR WOULD DO
20  GREATLY TO HELP MOTIVATE THE DEFENDANTS TO BE MORE FORTHCOMING
21  IN DISCOVERY.
22    THE COURT:   IS THERE SOMETHING STILL IN DISPUTE?
23    MR. BROTHERS:   NOT WITH RESPECT TO THE TWO MOTIONS
24  THAT YOUR HONOR HAS IDENTIFIED. YOUR HONOR DID REQUEST A
25  SUMMARY IN THE JOINT LETTER THAT WAS SUBMITTED. I DO NOT KNOW

KATE V. MAREE, Court Reporter

**Page 78**

1  IF YOUR HONOR HAS ANY INTEREST IN HEARING ANYTHING ABOUT

2  THAT, OR --

3      THE COURT:  I DID NOT REALIZE THERE WAS STILL

4  ANYTHING --

5      MR. BROTHERS:  WELL, IT IS NOT PART OF A PENDING

6  MOTION.

7      THE COURT:  ALL RIGHT.  I WILL HEAR IT, AND THEN I

8  WOULD LIKE TO HEAD THINGS UP FOR THE PAST.

9      MR. BROTHERS:  RICOH SERVED, ON SEPTEMBER 25 LAST

10  YEAR, CORPORATE DEPOSITION NOTICES FOR EACH OF THE ASIC

11  DEFENDANTS.  WE HAVE YET TO RECEIVE ANY DESIGNEES, WE HAVE YET

12  TO RECEIVE ANY DATES, WE HAVE YET TO RECEIVE ANYTHING WITH

13  RESPECT TO THOSE DEPOSITION NOTICES.  I HAVE HAD MULTIPLE

14  MEET-AND-CONFERS, I HAVE RECEIVED PROMISES.  I KNOW OF YOUR

15  HONOR'S STANDING RULE, WITH RESPECT TO IDENTIFICATION OF

16  DEPOSITIONS AND DEPOSITION DATES.  IT WOULD BE HELPFUL IF WE

17  COULD HAVE MORE INSTITUTIONALIZED A PROCESS BY WHICH CORPORATE

18  DESIGNEES ARE IDENTIFIED, AND DATES SELECTED, BECAUSE SIX

19  MONTHS IS FAR TOO LONG.

20      THE COURT:  HOW MANY 30(B)(6) DEPOSITION NOTICES

21  HAVE GONE OUT FROM EACH SIDE HERE?

22      MR. BROTHERS:  THERE HAS BEEN A SINGLE 30(B)(6)

23  DEPOSITION NOTICE TO EACH OF THE SEPARATE ASIC DEFENDANTS,

24  THERE WAS ALSO A 30(B)(6) DEPOSITION NOTICE TO SYNOPSYS; TWO

25  WITNESSES HAVE BEEN DESIGNATED WITH RESPECT TO THOSE TOPICS.

**Page (right, top)**

1  THEN, THERE IS A SEPARATE ISSUE WITH RESPECT TO ONE OF THOSE

2  WITNESSES.  THEN, I BELIEVE DEFENDANTS AND/OR SYNOPSYS HAVE

3  SERVED AT LEAST TWO, AND PERHAPS THREE, 30 BASICS DEPOSITION

4  NOTICES UPON RICOH.

5      THE COURT:  HOW MANY?

6      MR. BROTHERS:  AT LEAST TWO OF WHICH I AM AWARE,

7  AND THEN SOMETHING TELLS ME THAT IT MIGHT BE THREE.

8      THE COURT:  AND NO DEPOSITIONS HAVE BEEN SCHEDULED?

9      MR. BROTHERS:  NO.  RICOH HAS -- BACK IN JUNE OR

10  JULY OF LAST YEAR, RICOH PRESENTED WITNESSES PURSUANT TO THE

11  FIRST 30(B)(6) DEPOSITION NOTICE, AND WE HAVE DEPOSITIONS

12  SCHEDULED IN JAPAN, WELL, TWO ROUNDS HAVE BEEN REQUESTED: ONE

13  IS SCHEDULED TO PROCEED IN MAY, AND THE OTHER REQUEST HAS GONE

14  OUT FOR, PERHAPS IN JULY.  THE ISSUE THAT I HAVE, IS WITH

15  RESPECT TO RICOH'S DISCOVERY OF THE DEFENDANTS.  BECAUSE WE

16  HAVE TWO SEPARATE CASES HERE, I UNDERSTAND THAT IT IS PART OF

17  THE GRAND STRATEGY OF THE DEFENDANTS AND SYNOPSYS TO SLOW DOWN

18  THE PROCESS OF THE ASIC -- THE RICOH VS. AEROFLEX CASE -- AND

19  TRY AND SPEED UP THE DECLARATORY JUDGMENT CASE.

20      NOT SURPRISINGLY, RICOH VIEWS OTHERWISE, BUT WE

21  STILL BELIEVE THAT WE OUGHT TO PROCEED WITH DISCOVERY.  WE HAVE

22  NOT YET EVEN RECEIVED ALL OF THE DOCUMENTS RESPONSIVE TO OUR

23  FIRST DISCOVERY REQUESTS, AND HAVE BEEN TOLD THAT WE MIGHT NOT

24  GET ALL OF THOSE FROM ALL OF THE DEFENDANTS UNTIL MAY, AND

25  THOSE REQUESTS HAVE BEEN PENDING SINCE JUNE OF LAST YEAR.  AS I

**Page 79**

1  SAID BEFORE, AND WE REFERENCED IN OUR LETTER, THE PACE OF

2  DISCOVERY FROM THE DEFENDANTS ON THE ISSUES THAT RICOH IS

3  INTERESTED IN, HAS BEEN EXCRUCIATINGLY SLOW.

4      THE COURT:  HAVE YOU ALL MET-AND-CONFERRED AND

5  WORKED OUT A DISCOVERY PLAN IN THIS CASE?

6      MR. BROTHERS:  WE HAVE, ON THREE SEPARATE OCCASIONS,

7  HAD A PROPOSED CASE MANAGEMENT CONFERENCE SCHEDULED, AND EACH

8  OF THOSE HAS BEEN KICKED OVER, BECAUSE THE CASE MANAGEMENT

9  CONFERENCE DID NOT TAKE PLACE AND, AS A RESULT, APART FROM

10  THOSE, DISCOVERY HAS BEEN OCCURRING ON A HIT OR MISS BASIS.

11  WE HAVE, AS I NOTED EARLIER, SERVED OUR PRELIMINARY

12  INFRINGEMENT CONTENTIONS, PURSUANT TO PATENT LOCAL RULES, AND

13  BELIEVE THAT IT IS INCUMBENT UPON DEFENDANTS TO, WITHIN 45 DAYS

14  OR THE END OF APRIL, RESPOND, AS REQUIRED UNDER THE RULES, WITH

15  THEIR INVALIDITY CONTENTIONS.  I WOULD NOT BE SURPRISED TO SEE

16  A STALLING TACTIC IN RESPONSE TO THAT; IT HAS BEEN THREATENED.

17      THE COURT:  ALL RIGHT.  MISS CORBIN, WHAT IS YOUR

18  VIEW OF DISCOVERY AT THIS POINT?

19      MISS CORBIN:  YOUR HONOR, I DO NOT DEAL WITH THE DAY

20  TO DAY NEGOTIATIONS.  I DO KNOW THAT WE HAVE BEEN WORKING ON

21  THE DOCUMENT PRODUCTION VERY DILIGENTLY: WE HAVE SIX

22  DEFENDANTS, SOME OF WHOM ARE NOT IN THE U.S., ALMOST ALL OF

23  WHICH HAVE MULTIPLE FACILITIES IN MULTIPLE STATES, THOSE ONES

24  THAT ARE IN THE U.S., SO MULTIPLE LOCATIONS HAVE TO BE VISITED

25  AND WE HAVE BEEN MAKING OUR EARLY PRODUCTION.  I WILL INVITE MY

**Page 80**

1  ASSOCIATE ERIK MOLLER TO PLEASE CORRECT ME, IF I AM MISSTATING

2  ANYTHING, SINCE HE DEALS MORE WITH THE DAY TO DAY ON THIS.  WE

3  DID MAKE A REPRESENTATION THAT WE WOULD MAKE OUR BEST EFFORTS

4  TO HAVE THAT DOCUMENT PRODUCTION COMPLETED BY MAY, IF NOT

5  EARLIER, SO THAT IS PROCEEDING APACE.

6      WITH RESPECT TO THE 30(B)(6) SUBPOENAS TO NOTICES TO

7  THE CUSTOMER DEFENDANTS, THERE IS AN ONGOING DISPUTE ABOUT THE

8  CATEGORIES THERE, AND WE HAVE BEEN HAVING DIFFICULTY NARROWING

9  THOSE TO WHAT WE AGREE IS A REASONABLE AND ACTUALLY

10  UNDERSTANDABLE DEGREE, SO THAT WE CAN ACTUALLY HAVE SOME

11  MEETING OF THE MINDS AS TO THE PEOPLE THAT WE NEED TO IDENTIFY,

12  AND WHAT SUBJECTS THEY WILL BE TESTIFYING AS TO, SO I DO NOT

13  KNOW WHAT THE CURRENT STATE OF THAT IS.  I KNOW THERE HAVE BEEN

14  SOME MEET-AND-CONFERS, AND I KNOW WE HAVE BEEN HAVING

15  DIFFICULTY ON THAT FRONT, AND I DO NOT KNOW THAT IT IS

16  RESOLVED; IT IS NOT.  I THINK WE HAVE BEEN MAKING A VERY

17  DILIGENT EFFORT.  WE HAVE MANY PARTIES, MANY LOCATIONS, AND WE

18  HAVE BEEN MOVING APACE WITH THAT.  I THINK IT WOULD BE BEST IF

19  ERIK MOLLER COULD ADDRESS THIS ISSUE.  THANK YOU.

20      MR MOLLER:  MISS CORBIN SUMMARIZES THE POSITION

21  BOTH WITH RESPECT TO THE 30(B)(6) ON THE DEFENDANTS, AND THE

22  DOCUMENT PRODUCTION OF STATEMENTS WITH RESPECT TO THE 30(B)(6)

23  NOTICE ON SYNOPSYS: DESIGNEES HAVE BEEN OFFERED AND THOSE DATES

24  HAVE BEEN REJECTED FOR A MEET-AND-CONFER ON THESE ISSUES;

25  I BELIEVE ADDITIONAL DEPOSITIONS ARE CURRENTLY BEING WORKED OUT

**Page 82**

1  ON THAT FRONT AS WELL.

2      THE COURT:  ON THE SYNOPSYS PART, THE DESIGNEES HAVE

3  BEEN OFFERED, IT IS JUST A QUESTION OF DATES, THAT IS THE

4  ISSUE?

5      MR MOLLER:  WITH RESPECT TO AT LEAST ONE OF THE

6  DESIGNEES, YES.

7      THE COURT:  SO THIS IS NOT A QUESTION OF NOT BEING

8  ABLE TO MAKE THE DESIGNEES -- THE SUFFICIENCY OF THE

9  DESIGNEES, REALLY IT IS A QUESTION OF --

10      MR MOLLER:  TO THE PARTS OF IT MEANT FOR --

11  REGARDING THE SCOPE AS WELL, THEIR SCOPE --

12      MR. BROTHERS:  BUT, WITH RESPECT TO THE DESIGNEES,

13  THERE WAS A DEPOSITION IN JANUARY OF MS. HANFORD, ON A

14  PARTICULAR SUB-TOPIC OF THE SYNOPSYS RULE 30(B)(6), ON A

15  PARTICULAR TYPE OF SYSTEM CALLED SOCRATES WHICH, FROM THE

16  SYNOPSYS DOCUMENTS, THEY REFER TO IT AS THEIR INITIAL PRODUCT,

17  AND MS. HANFORD WAS PROFFERED AS THE WITNESS ON THE SOCRATES

18  SYSTEM.

19      WE TOOK HER DEPOSITION AND LEARNED, TO OUR SURPRISE,

20  THAT, IN FACT, SHE HAD NO KNOWLEDGE WITH RESPECT TO THE

21  SOCRATES SYSTEM; SHE HAD KNOWLEDGE WITH RESPECT TO A RELATED

22  SYSTEM CALLED LOGIC COMPILER, AND IT WAS IN MANY WAYS A WASTE

23  OF TIME. WE HAVE ASKED FOR PROPER WITNESSES ON THE SOCRATES

24  SYSTEM. COUNSEL HAS AGREED TO PROVIDE US PROPERLY DESIGNATED

25  WITNESSES ON THE SOCRATES SYSTEM. WE HAVE SAID, "WELL WHAT

1  ABOUT THE TIME?" BECAUSE THEY HAVE SAID, "WELL, THE TIME THAT

2  YOU TOOK AND, IN OUR VIEW, WASTED WITH RESPECT TO THE HANFORD

3  DEPOSITION, SHOULD COUNT AGAINST YOUR TOTAL." WE HAVE SAID,

4  "LET'S JUST DEFER THE ISSUE, I DON'T EVEN KNOW IF IT'S GONNA

5  COME UP, I DON'T KNOW IF WE'RE GONNA USE THE TOTAL AMOUNT OF

6  THE TIME". AND THE RESPONSE HAS BEEN, "NO, YOU HAVE TO RAISE

7  IT NOW, OR WAIVE IT".

8      THE COURT:  WHEN YOU SAY TIME, YOU MEAN TIME -- IS

9  THEIR A STIPULATION TO EXTEND, UNDER RULE 30 LIMITS? WHAT DO

10  YOU MEAN BY TIME?

11      MR. BROTHERS:  WELL, THERE WAS AN AGREEMENT -- THE

12  AEROFLEX CASE WAS ORIGINALLY BROUGHT IN DELAWARE, AND THERE WAS

13  AN ORDER THERE THAT GOVERNED THE AMOUNT OF TIME -- AS A RESULT

14  OF THAT TRANSFER, THE PRETRIAL ORDER IS NO LONGER IN EFFECT.

15  THE PARTIES HAVE BEEN WORKING UNDER THE ASSUMPTION THAT THERE

16  WILL BE AN EXTENDED AMOUNT OF TIME FOR THE CORPORATE

17  DESIGNEES -- SINCE MUCH OF THE DISCOVERY IN THIS CASE IS GOING

18  TO BE PURSUANT TO RULE 30(B)(6) -- OUR POSITION HAS BEEN THAT

19  THE HANFORD DEPOSITION WHICH WAS, IN OUR VIEW, A

20  MIS-DESIGNATION, SHOULD NOT BE COUNTED AGAINST WHATEVER TOTAL

21  THAT WAS. BUT, ULTIMATELY, WE SAID, "LET'S JUST DEFER IT, WE

22  DON'T EVEN KNOW IF IT'S GOING TO BE AN ISSUE". THE RESPONSE WE

23  HAVE HAD IS, "NO, YOU HAVE TO RAISE THE ISSUE NOW, OR IT'S

24  GOING TO BE WAIVED". I SAID, "WELL, THEN LET'S JUST SPLIT THE

25  DIFFERENCE", AND THAT WAS REJECTED ALSO. IT IS THESE KINDS OF

**Page 83**

1  TACTICS THAT ARE SOMEWHAT FRUSTRATING.

2      THE COURT:  ALL RIGHT. MISS CORBIN, DO YOU HAVE A

3  RESPONSE TO THAT SPECIFIC ISSUE?

4      MISS CORBIN:  WELL, IN LARGE PART, I FEEL SANDBAGGED

5  HERE, YOUR HONOR, BECAUSE MY UNDERSTANDING IS WE ARE MEETING-

6  AND-CONFERRING ON ALL THESE FRONTS, AND I HAD NO IDEA THIS WAS

7  GOING TO BE TAKEN UP TODAY, OR I WOULD BE BETTER PREPARED.

8      THE COURT:  THAT IS A FAIR OBSERVATION.

9      MISS CORBIN:  I BELIEVE, AS TO THE DEPOSITION,

10  OBVIOUSLY, WE HAVE A DIFFERENCE OF OPINION AS TO THE

11  APPROPRIATENESS OF THAT WITNESS, BUT AS TO THE TIME, YOU KNOW,

12  I DO NOT KNOW WHAT COMMUNICATIONS THERE HAVE BEEN NOW, BEFORE,

13  AND I DO NOT MIND -- I DO NOT AGREE THAT THE PERSON WAS NOT

14  APPROPRIATE -- SO I DO NOT AGREE THAT TIME SHOULD NOT COUNT AND

15  THAT WE SHOULD EVEN DISCOUNT IT. BUT, IF WE WANT TO DEFER

16  UNTIL THE END OF THE DAY THE ISSUE ABOUT WHETHER THE PERSON WAS

17  APPROPRIATE, ASSUMING WE GET SOME DISCOVERY DEPOSITION TIME

18  LIMIT THAT THEY NEED TO ACCEDE AT THAT POINT, I JUST CANNOT

19  IMAGINE THIS BECOMING AN ISSUE, BECAUSE THE COURTS ARE USUALLY

20  PRETTY REASONABLE, IF YOU CAN MAKE A SHOWING THAT YOU NEED

21  ADDITIONAL TIME, BECAUSE THERE IS NEW EVIDENCE TO GET AND YOU

22  USUALLY CAN GET THAT TIME, SO I AM AMENABLE TO POSTPONING THAT

23  ISSUE TO -- WHETHER IT EVER BECOMES AN ISSUE --

24      THE COURT:  ALL RIGHT, GOOD, AMENABLE TO THAT ISSUE.

25      MR. BROTHERS:  I AM PLEASED TO HEAR THAT, I HAVE

**Page 84**

1  BEEN ASKING FOR IT FOR TWO MONTHS, AND THAT IS WHY I RAISED IT

2  NOW TODAY.

3      THE COURT:  WELL, WE HAVE RESOLVED THAT ONE MINOR

4  ISSUE; IT IS GOOD THAT WE HAVE RESOLVED SOMETHING TODAY.

5      MR. BROTHERS:  THANK YOU. THE LARGER ISSUE, THOUGH,

6  GOES TO THE TIMING FOR THE SCHEDULING OF DEPOSITIONS, AND WITH

7  RESPECT TO, FOR EXAMPLE, YOUR HONOR'S STANDING ORDERS REQUIRING

8  DATES TO BE PROPOSED WITHIN 10 DAYS OF A DEPOSITION NOTICE

9  BEING SERVED, IT SIMPLY HAS NOT BEEN HONORED HERE BY THE

10  DEFENDANTS. I DO NOT WANT TO BE BRINGING MOTIONS EVERY WEEK.

11      THE COURT:  NO. I DO NOT WANT YOU ALL TO BRING

12  MOTIONS EVERY WEEK. I THINK WHAT I WOULD LIKE YOU TO DO IS TO

13  WORK OUT A SCHEDULE. I KNOW THAT THERE ARE SOME PRELIMINARY

14  ISSUES -- SOUNDS LIKE WITH RESPECT TO SCOPE AND

15  DESIGNEES -- BUT I WOULD LIKE YOU ALL TO WORK OUT, AT LEAST A

16  SCHEDULE, FOR RESOLUTION OR NOT. IF YOU CANNOT GET IT RESOLVED

17  BY MEET-AND-CONFERS, YOU CAN SUBMIT TO ME -- PERHAPS WE ARE

18  TALKING ABOUT LETTER BRIEFS, INSTEAD OF -- I DO NOT NEED FOR

19  SOME THINGS LIKE THAT, TYPICALLY BINDERS FULL OF PLEADINGS,

20  WITH EVERY PIECE OF CORRESPONDENCE THAT HAS GONE BACK AND

21  FORTH. THAT KIND OF STUFF, I CAN TELL YOU IN ADVANCE, IS NOT

22  VERY HELPFUL TO ME. I LIKE TO GET TO THE NUB OF THE DISPUTE,

23  AND KNOW EXACTLY WHAT IT IS SUBSTANTIVELY THAT IS AT ISSUE, AND

24  THEN WE CAN RESOLVE IT.

25      WHAT I WOULD LIKE TO DO IS, MEET-AND-CONFER ON A

1 TIMELINE FOR GETTING THOSE ISSUES RESOLVED, AND THEN FOR TAKING
2 THOSE DEPOSITIONS. IF, AT THE END OF THE FIRST PART OF THAT,
3 YOU HAVE NOT BEEN ABLE TO RESOLVE THE SCOPE QUESTIONS, THE
4 DESIGNEE QUESTIONS, THINGS THAT ARE NECESSARY PREDICATES TO THE
5 ACTUAL 30(B)(6) DEPOSITIONS, AT THAT POINT, WHY DO NOT YOU
6 CONTACT ME WITH A JOINT LETTER BRIEF SAYING, HERE ARE THE
7 DISPUTES -- AFTER YOU HAVE MET-AND-CONFERRED -- AND JUST
8 ENUMERATE THEM ONE BY ONE AND, BRIEFLY, YOUR POSITIONS
9 JUXTAPOSED BY EACH ONE OF THOSE, SO I CAN SEE WHERE THE DISPUTE
10 IS.
11         THEN, I CAN HAVE YOU EITHER COME IN AND DO IT, OR WE
12 COULD DO IT OVER THE TELEPHONE, DEPENDING ON HOW COMPLICATED IT
13 IS. I KNOW YOU ALL HAVE TO TRAVEL LONG DISTANCES AND ARE
14 AMENABLE POSSIBLY TO DOING THINGS BY TELEPHONE, SO WE CAN TRY
15 TO SAVE THE TRAVEL TIME AND THAT SORT OF THING, BUT IT SEEMS TO
16 ME THAT IS THE WAY TO GO. I MEAN, I AM ESSENTIALLY SAYING,
17 DEVELOP SOME KIND OF DISCOVERY PLAN AT THIS POINT, WITH SOME
18 TIMELINES, AND TIMELINES FOR YOURSELF TO GET THESE THINGS
19 RESOLVED, AND GET THEM RESOLVED, AND THE FURTHER TIMELINE
20 ACTUALLY TO GET IT DONE.
21         IF, AT ANY JUNCTURE, YOU HAVE A PROBLEM, YOU CAN
22 CONTACT ME. I THINK I WOULD PREFER THAT, BEFORE YOU DO
23 ANYTHING, YOU SEND ME A BRIEF LETTER SAYING HERE IS THE
24 DISPUTE, HERE ARE THE CONTENTIONS AND IF, FOR SOME REASON,
25 I FEEL I NEED FULL BRIEFING DOWN -- BUT THE LAST THING I WANT

1 IS THIS KIND OF STUFF ON, YOU KNOW, SOMEBODY HAS DONE A
2 DESIGNATED 30(B)(6), OR A DISPUTE OVER THE SCOPE OF THE
3 30(B)(6) TURNS INTO FOUR BINDERS FULL OF STUFF.
4         MR. BROTHERS:   THIS IS WHY I RAISED THE ISSUE NOW,
5 BECAUSE I AM HOPEFUL THAT BY SETTING UP A PROCESS BY WHICH IT
6 CAN BE MORE INFORMAL -- LESS FORMAL I GUESS -- AND A LITTLE BIT
7 MORE EXPEDITED, WE CAN AVOID THE DELAYS THAT ARE INHERENT IN
8 IT. WITH RESPECT TO THE TIMELINE THAT YOUR HONOR IS
9 SUGGESTING, I ASSUME THAT YOUR HONOR IS TALKING ABOUT SOMETHING
10 INDEPENDENT OF THE TIMELINE THAT IS REQUIRED FROM PATENT LOCAL
11 RULES, AND THE CASE MANAGEMENT CONFERENCE, SUCH THAT SOMETHING
12 ALONG THE LINES OF WITHIN A COUPLE OF WEEKS, WE CAN OUTLINE A
13 FRAMEWORK FOR WHEN DOCUMENTS ARE GOING TO BE PRODUCED, AND
14 BLOCKS OF WEEKS, IN WHICH WITNESSES ARE GOING TO BE MADE
15 AVAILABLE FOR DEPOSITION, ON CERTAIN TOPICS. IS THAT WHERE --
16         THE COURT:   YES, THAT IS WHAT I WAS THINKING OF, A
17 DISCOVERY PLAN. OBVIOUSLY, IT SHOULD TAKE INTO ACCOUNT, I
18 THINK, A GENERAL PURSUIT IN TERMS OF DISCOVERY RULES AND TIMES
19 INVOLVED, AND ALL THE OTHER THINGS BUT, YES --
20         MR. BROTHERS:   IT WOULD BE HELPFUL IF -- I'M SORRY,
21 IT WOULD BE HELPFUL IF WE CAN HAVE TARGET DATES TO HAVE EACH OF
22 THESE MILESTONES -- AS YOU KNOW, ATTORNEYS TEND TO WORK AROUND
23 DEADLINES -- SO I WOULD PROPOSE THAT THE PARTIES MAP OUT THEIR
24 DISCOVERY PLAN WITHIN TWO WEEKS AND THEN, WITHIN TWO WEEKS
25 AFTER THAT, DISCUSS OR RESOLVE AS MANY OF THE OTHER ISSUES; SO

1 WITHIN FOUR WEEKS, TO THE EXTENT ANYTHING WOULD NEED TO BE
2 PRESENTED TO THE COURT, I THINK WE SHOULD DO THAT.
3         THE COURT:   IN 30 DAYS, I WOULD EXPECT AN AGREED
4 UPON PLAN, OF BOTH RESOLUTION OF ANY ISSUES THAT ARE CURRENTLY
5 OUTSTANDING WITH RESPECT TO THESE DEPOSITIONS, AND THE ACTUAL
6 SORT OF DISCOVERY PLAN -- AT LEAST BY CATEGORY IF NOT BY
7 WITNESSES, ET CETERA -- SOME BENCHMARK IN TERMS OF TIME, SO WE
8 CAN SEE HOW WE ARE DOING. AT THAT POINT, IF YOU CANNOT RESOLVE
9 IT, AGAIN IN THAT LETTER, TELL ME WHAT IS AT ISSUE, BRIEFLY,
10 AND THEN MAYBE WE CAN TALK ON THE PHONE AND SEE WHAT WE NEED TO
11 DO TO FACILITATE THAT.
12         MR. BROTHERS:   VERY GOOD, YOUR HONOR.
13         MISS CORBIN:   OKAY.
14         THE COURT:   ALL RIGHT. AT THIS POINT, I WILL WAIT
15 TO HEAR ON THESE MATTERS. IN THE MEANTIME, THE MOTION FOR
16 SANCTIONS WILL BE DENIED FOR THE REASONS STATED. IF, AT SOME
17 POINT, RICOH WANTS TO COME BACK AND REJUVENATE ITS RELATIONSHIP
18 WITH DR. THOMAS, AND RESCIND AT SOME AMENABLE -- IF IT CANNOT
19 BE -- SOMEONE CALLING RANK THEN, BUT UNLESS THAT IS WHAT YOU
20 WANT, I AM NOT GOING TO ORDER THAT. ALL RIGHT?
21         MISS CORBIN:   OKAY. THANK YOU FOR YOUR TIME, YOUR
22 HONOR.
23         THE COURT:   ABSOLUTELY, THANK YOU.
24
25

**CERTIFICATE OF REPORTER**

I, KATE V. MAREE, PRO TEM REPORTER FOR THE UNITED
STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY
THAT THE FOREGOING PROCEEDINGS IN CASE NO. C03-2289, SYNOPSYS
VERSUS RICOH, AND C03-4669, SYNOPSYS VERSUS AEROFLEX MJJ, WERE
REPORTED BY ME, A SHORTHAND REPORTER, AND WERE THEREAFTER
TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE
FOREGOING IS A TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME
AT THE TIME OF FILING.

    THE VALIDITY OF THE REPORTER'S CERTIFICATION OF
SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL
FROM THE COURT FILE.

_____

KATE V. MAREE, SHORTHAND REPORTER
WEDNESDAY, MARCH 24, 2004

WORD INDEX

**-- [1]** 6/12
**AND [1]** 48/20
**AS [1]** 35/10
**BECAUSE [1]** 56/23
**IS [1]** 23/25
**OR [1]** 24/18
**TO [1]** 66/14
**UNDER [1]** 65/13

**-**

**-- [227]**
**-- PUTTING [1]** 46/23

**A**

**A -- [1]** 18/18
**A BETTER [2]** 14/21 25/17
**A BIT [2]** 21/12 59/11
**A BROADER [1]** 12/13
**A CASE [2]** 38/13 39/25
**A CERTAIN [1]** 51/8
**A CHANCE [2]** 63/5 72/4
**A CLAIM [1]** 19/5
**A CMC [1]** 39/11
**A COMMENT [1]** 38/7
**A COMMON [1]** 19/5
**A CONFIDENTIAL [2]** 51/23 53/24
**A CONFLICT [1]** 52/16
**A CONSULTANT [1]** 54/25
**A CONSULTING [1]** 53/22
**A CONTENTION -- [1]** 5/4
**A COURT [1]** 65/10
**A DATE [1]** 30/24
**A DECLARATION [3]** 34/25 40/8 57/10
**A DEFINITION [1]** 19/2
**A DELICATE [2]** 37/11 48/16
**A DEPOSITION [3]** 30/16 55/9 59/9
**A DIFFERENT [1]** 24/23
**A DIFFERENTIAL [1]** 14/8
**A DIFFICULT [1]** 29/9
**A DISCLOSURE [1]** 32/20
**A DISPUTE [1]** 60/25
**A DISSERVICE [1]** 38/3
**A DISTINGUISHING [1]** 10/21
**A FACT [2]** 12/18 20/11
**A FACT-WITNESS [1]** 30/16
**A FACTUAL [1]** 50/21
**A FAIR [1]** 4/10
**A FORMER [2]** 10/17 20/6
**A FRANK [1]** 28/19
**A FREE [2]** 70/1 70/1
**A GOOD [1]** 28/7
**A GRADUATE [2]** 12/22 14/12
**A LATER [2]** 25/19 26/12
**A LIMITED [2]** 37/15 61/1
**A LITTLE [3]** 43/20 48/14 50/25
**A LONG [1]** 53/14
**A LONGER [1]** 12/12
**A LOT [4]** 4/23 18/2 33/10 42/2
**A MOMENT [1]** 5/12
**A MORE [2]** 41/19 61/22
**A MOTION [1]** 38/17
**A NEED [2]** 33/8 68/19
**A NEGATIVE [1]** 14/6
**A NEUTRAL [1]** 41/18
**A NUMBER [1]** 44/20
**A PATENT [1]** 28/1
**A PENDING [1]** 77/5
**A POINT [1]** 23/9
**A POSSIBILITY [1]** 27/17
**A POTENTIAL [1]** 44/3
**A PRETTY [2]** 26/10 46/20
**A PRIME [1]** 35/10

**A PROCEEDING THAT [1]** 38/21
**A PROFESSOR [2]** 14/11 31/20
**A PROPER [1]** 48/5
**A PROPOSED [1]** 35/3
**A PUBLIC [1]** 26/22
**A QUESTION [1]** 81/7
**A REASONABLE [1]** 59/7
**A REFEREE [1]** 26/7
**A RELATIVELY [1]** 49/3
**A REPORT [1]** 45/6
**A RETAINED [1]** 41/6
**A RETAINER [1]** 63/19
**A RIGHT [1]** 59/4
**A RISK [2]** 36/22 46/3
**A RISKY [1]** 49/14
**A RULE [1]** 50/3
**A SHOWING [3]** 33/4 33/8 42/7
**A SIDE-SWITCHING [4]** 20/12 54/9 63/22 63/24
**A SIGNIFICANT [1]** 21/3
**A SIMPLE [2]** 53/19 54/1
**A SLIDING [2]** 43/9 45/11
**A SPECIAL [3]** 41/12 42/8 44/13
**A SUBPOENA [2]** 72/15
**A SUBSEQUENT [1]** 57/3
**A SUBSET [3]** 12/19 18/8 26/19
**A SUBSTANTIAL [1]** 23/9
**A SUGGESTION [1]** 38/8
**A UNIQUE [1]** 19/15
**A VACUUM [1]** 23/4
**A VALID [1]** 48/10
**A VERY [4]** 20/21 31/5 33/25 55/2
**ABANDONED [1]** 53/4
**ABILITY [1]** 62/18
**ABLE [18]** 10/7 13/13 13/14 15/3 15/5 17/19 19/6 19/10 27/1 35/18 40/8 44/13 50/18 67/1 71/4 73/21 81/8 85/3
**ABOUT [65]** 4/19 4/20 5/2 7/15 7/23 8/1 9/6 9/18 10/24 12/20 14/16 19/22 27/19 27/22 27/25 28/9 30/5 34/9 35/6 35/16 35/25 36/3 37/6 41/25 42/5 42/18 44/7 47/14 49/2 49/8 49/9 51/5 51/9 51/25 52/25 53/13 54/22 55/3 56/1 56/19 58/17 60/19 61/15 61/22 65/1 65/16 66/2 66/9 69/15 71/25 75/1 75/2 77/1 80/7 82/1 83/16 84/18 86/9
**ABSENCE [2]** 21/13 55/21
**ABSOLUTELY [2]** 11/22 87/23
**ABSTRACT [1]** 66/3
**ACCEDE [1]** 83/18
**ACCOUNT [2]** 42/9 86/17
**ACCOUNTING [1]** 59/16
**ACCUSED [6]** 24/18 25/1 39/3 39/4 56/24 73/11
**ACHIEVE [1]** 67/2
**ACQUIRED [3]** 9/11 9/11 9/14
**ACROSS [1]** 35/19
**ACT [2]** 72/11 72/17
**ACTED [1]** 21/16
**ACTING [2]** 16/10 55/15
**ACTION [3]** 11/10 29/12 52/14
**ACTIONABLE [1]** 22/17
**ACTIONS [10]** 3/16 3/22 4/1 9/3 21/8 21/13 21/21 61/9 66/13 69/6
**ACTIVE [5]** 52/6 52/9 52/11 55/12 74/9

**ACTIVE CONSULTING [1]** 52/11
**ACTIVELY [1]** 55/16
**ACTOR [2]** 10/20 20/9

**ACTUAL [5]** 35/14 45/2 49/8 85/5 87/5
**ACTUALLY [12]** 16/9 23/24 24/1 26/9 40/1 49/7 52/1 57/6 57/18 80/9 80/10 85/20
**ADD [2]** 14/1 14/18
**ADDITION [2]** 10/22 35/1
**ADDITIONAL [7]** 18/5 18/6 27/5 35/21 66/2 80/25 83/21
**ADDRESS [9]** 5/1 17/1 23/14 31/4 31/5 41/20 46/14 66/16 80/19
**ADDRESS -- [1]** 31/4
**ADDRESSED [3]** 17/5 19/19 65/21
**ADDRESSES [2]** 9/7 39/17
**ADDRESSING [1]** 24/23
**ADJUDICATED [1]** 70/12
**ADJUDICATING [1]** 73/13
**ADJUDICATION [3]** 38/1 60/10 68/17
**ADVANCE [7]** 23/5 25/6 26/8 57/12 59/7 75/19 84/21
**ADVANCED [1]** 51/18
**ADVANTAGE [2]** 34/5 60/8
**ADVERSARIAL [2]** 28/8 29/5
**ADVERSARY [1]** 60/9
**ADVERSE [3]** 62/17 63/20 64/24
**ADVISE [1]** 66/15
**ADVISED [2]** 58/7 58/16
**ADVISORY [6]** 15/15 16/7 16/11 22/6 36/14 40/3
**AEROFLEX [6]** 3/4 3/8 4/3 78/18 82/12 88/7
**AFFILIATION [1]** 10/19
**AFFORDED [1]** 56/19
**AFTER [20]** 6/12 29/18 32/8 39/13 41/13 47/24 48/8 57/14 57/19 58/15 61/14 65/25 66/14 67/16 68/13 68/23 72/15 75/9 85/7 86/25
**AFTERNOON [3]** 3/5 3/18 3/19
**AGAIN [10]** 25/2 41/11 43/13 55/16 64/16 69/7 72/10 74/6 75/17 87/9
**AGAINST [2]** 82/3 82/20
**AGENDA [2]** 10/3 32/6
**AGREE [15]** 42/22 45/1 45/4 45/24 52/22 66/22 73/3 74/1 74/1 74/22 75/16 75/24 80/9 83/13 83/14
**AGREED [5]** 57/22 64/9 65/12 81/24 87/3
**AGREEMENT [16]** 43/19 47/24 47/24 47/25 49/7 52/6 55/15 62/16 63/20 64/15 64/20 65/12 67/2 74/12 75/17 82/11
**AGREES [1]** 51/18
**AHEAD [1]** 62/8
**AIMED [2]** 24/15 37/4
**AIR [2]** 52/9 71/2
**AL [1]** 3/8
**ALICE [1]** 51/2
**ALL [86]** 3/8 3/10 3/17 3/24 10/16 12/2 14/16 16/13 18/23 19/11 20/4 20/23 20/25 22/5 22/9 24/15 24/16 25/2 25/12 26/16 26/16 27/8 27/22 28/7 28/20 29/4 31/11 32/1 32/5 33/11 33/19 35/6 37/16 40/13 43/1 43/7 43/19 44/17 45/15 46/10 46/11 46/14 46/22 47/3 50/8 50/16 52/18 54/11 54/20 58/18 58/24 59/4 60/17 60/23 61/3 62/21 63/13 63/18 64/6 66/5 67/14 67/19 67/21 68/17 69/23 72/8 72/16 74/2 74/11 75/12 77/7 78/22 78/24 78/24 79/4 79/17 79/22 83/2 83/6 83/24 84/11 84/15 85/13

## A

**ALL... [3]**  86/19 87/14 87/20
**ALLEGATION [1]**  5/7
**ALLEGATIONS [1]**  40/15
**ALLEGED [2]**  5/7 13/17
**ALLOW [3]**  18/16 50/14 72/16
**ALLOWED [5]**  9/1 15/16 15/25 24/2 39/23
**ALLOWS [1]**  50/9
**ALMOST [1]**  79/22
**ALONG [2]**  40/6 86/12
**ALREADY [15]**  11/19 15/11 22/25 33/1 33/12 34/21 38/12 38/14 42/3 42/10 44/5 64/7 64/9 67/14 67/15
**ALSO [20]**  3/4 3/12 6/17 12/23 13/15 14/3 15/12 15/14 15/14 19/10 26/22 27/7 27/12 40/1 40/10 43/3 64/5 76/6 77/24 82/25
**ALTERNATIVE [1]**  37/1
**ALTERNATIVES [1]**  44/23
**ALTHOUGH [3]**  26/3 37/18 50/21
**ALTOGETHER [1]**  17/11
**ALTSHULER [2]**  2/5 3/22
**ALWAYS [1]**  45/3
**AM [47]**  5/4 7/20 9/4 9/5 10/23 17/3 18/7 18/10 22/9 28/4 32/7 33/9 35/14 35/18 36/9 37/17 38/5 42/3 42/4 43/5 43/7 43/22 46/5 46/12 46/18 47/7 47/12 47/15 50/13 58/13 59/15 59/23 60/6 61/3 62/8 67/9 67/18 67/17 70/8 72/10 76/5 78/6 80/1 83/22 83/25 85/16 86/5 87/20
**AMENABLE [6]**  42/13 74/13 83/22 83/24 85/14 87/18
**AMONG [1]**  13/7
**AMONGST [1]**  49/5
**AMOUNT [6]**  4/10 5/17 18/12 82/5 82/13 82/16
**AN AGREEMENT [1]**  62/16
**ANALYSIS [4]**  11/15 36/25 63/12 71/4
**ANALYZE [1]**  39/3
**AND -- [1]**  37/5
**AND BRING [1]**  28/8
**AND FREE [1]**  64/15
**AND TO [1]**  64/20
**AND-A-HALF [3]**  61/13 73/14 75/2
**AND-CONFERRING [1]**  83/6
**ANDREWS [4]**  59/18 59/25 61/9 61/10
**ANNOUNCEMENT [1]**  58/21
**ANOTHER [4]**  40/24 58/23 64/12 72/24
**ANSWER [8]**  5/11 8/8 21/5 21/6 34/19 40/19 59/14 68/5
**ANTICIPATES [1]**  16/5
**ANTICIPATION [2]**  9/15 16/21
**ANTICIPATORY [1]**  15/8
**ANY [66]**  4/20 7/1 7/9 7/10 7/19 8/6 8/8 10/19 13/17 14/7 16/16 19/19 19/20 21/4 21/4 21/17 22/2 22/21 23/12 23/14 23/25 25/4 31/12 31/23 32/3 32/16 34/25 35/4 35/14 36/6 39/7 40/2 42/6 44/20 45/4 48/6 49/14 50/13 51/10 51/20 52/24 54/4 54/23 55/1 56/6 56/8 56/12 56/14 57/12 62/16 65/15 65/18 66/23 69/12 71/5 71/6 71/8 72/8 75/23 75/25 75/25 77/1 77/11 77/12 85/21 87/4
**ANY DESIGNEES [1]**  77/11
**ANYBODY [3]**  44/4 70/19 73/23
**ANYMORE [1]**  73/17

**ANYONE [2]**  29/4 53/15
**ANYTHING [22]**  4/19 20/17 22/13 35/17 40/3 44/8 48/3 50/13 53/12 55/17 56/23 60/13 69/23 70/18 75/9 76/12 77/1 77/4 77/12 80/2 85/23 87/1
**ANYWAY [3]**  60/6 61/4 65/18
**APACE [2]**  80/5 80/18
**APART [2]**  64/4 79/9
**APPARENT [1]**  28/22
**APPEAR [1]**  66/3
**APPEARANCES [3]**  1/13 1/21 2/1
**APPEARING [1]**  4/14
**APPEARS [1]**  64/7
**APPLICABLE [3]**  37/21 49/4 50/1
**APPLICATION [3]**  60/2 61/21 62/4
**APPLIES [1]**  13/9
**APPLY [1]**  60/25
**APPLYING [1]**  4/19
**APPOINT [1]**  43/14
**APPOINTMENT [1]**  42/21
**APPRECIATION [1]**  9/25
**APPROACH [3]**  22/5 42/13 49/14
**APPROACHES [1]**  37/9
**APPROPRIATE [13]**  18/15 18/16 28/22 29/11 32/12 32/15 32/16 32/18 52/13 69/10 69/20 83/14 83/17
**APPROPRIATENESS [1]**  83/11
**APRIL [5]**  52/5 52/13 52/15 59/21 79/14
**ARCHITECTURAL [1]**  1/10
**ARE [122]**
**AREA [4]**  30/19 35/16 37/11 44/5
**AREAS [16]**  18/19 19/18 20/23 20/23 21/3 28/22 28/24 33/19 33/22 35/2 37/5 41/15 41/15 42/15 43/4 45/9
**ARGUABLY [1]**  49/5
**ARGUE [2]**  26/14 47/6
**ARGUES [1]**  22/1
**ARGUING [1]**  26/13
**ARGUMENT [3]**  34/17 47/23 59/2
**ARISEN [2]**  59/11 63/15
**ARISING [1]**  27/15
**ARNOLD [2]**  1/14 3/6
**AROSE [2]**  17/2 64/10
**AROUND [3]**  7/18 48/6 86/22
**ARRANGEMENT [2]**  55/12 74/10
**ART [25]**  4/18 5/7 5/22 6/21 8/24 9/24 11/15 12/16 12/17 13/1 13/17 14/6 15/8 15/10 17/16 19/9 19/11 19/20 24/22 24/24 27/9 30/1 30/8 30/19 40/11
**ARTICLES [1]**  8/15
**ARTIFICIAL [1]**  21/12
**AS [140]**
**ASIC [3]**  77/10 77/23 78/18
**ASIDE [3]**  4/25 22/21 46/24
**ASK [16]**  6/8 7/17 9/5 12/1 17/12 23/2 24/4 32/5 48/15 48/18 54/11 52/18 59/9 64/6 65/5 68/1
**ASKED [14]**  5/13 5/21 5/23 6/13 9/18 17/5 30/5 34/6 37/4 48/16 52/4 67/17 68/4 81/23
**ASKING [6]**  6/10 30/16 41/13 43/22 57/17 84/1
**ASPECT [2]**  36/5 39/18
**ASPECTS [4]**  15/5 18/24 19/7 19/8
**ASPERSIONS [1]**  72/10
**ASSERT [1]**  27/12
**ASSERTED [1]**  29/20
**ASSESS [1]**  23/5
**ASSESSMENT [2]**  32/11 41/18

**ASSOCIATE [1]**  80/1
**ASSUME [3]**  8/22 20/21 86/9
**ASSUMING [5]**  11/6 55/5 74/5 75/9 83/17
**ASSUMPTION [1]**  82/15
**AT [114]**
**AT -- [1]**  24/16
**ATARI [6]**  15/12 16/12 16/18 20/6 23/15 23/18
**ATTACKED [1]**  73/11
**ATTEMPTED [1]**  24/10
**ATTEND [1]**  31/17
**ATTENDED [2]**  17/1 40/13
**ATTENTION [2]**  23/15 25/3
**ATTORNEY [5]**  7/6 44/19 48/13 60/14 76/10
**ATTORNEYS [3]**  4/13 47/11 86/22
**AUGUST [7]**  6/6 58/2 58/3 58/4 58/12 58/17 58/17
**AUTHOR [1]**  8/16
**AUTHORED [1]**  14/4
**AUTHORITY [2]**  23/13 26/5
**AUTHORS [1]**  14/3
**AVAILABLE [4]**  13/20 27/9 28/3 86/15
**AVENUE [1]**  1/15
**AVOID [1]**  86/7
**AVOIDED [1]**  50/13
**AWARE [4]**  13/11 25/14 31/23 78/6
**AWAY [1]**  29/11

## B

**BACK [27]**  5/12 10/16 12/12 14/23 20/4 26/17 27/13 39/14 41/12 43/16 44/25 51/13 51/20 51/21 55/20 57/1 64/17 64/21 65/9 65/14 65/23 66/20 66/24 74/19 78/9 84/20 87/17
**BACK -- [1]**  14/23
**BACKGROUND [2]**  4/24 73/24
**BAD [5]**  46/25 49/4 54/10 56/24 68/22
**BALANCING [1]**  26/1
**BALL [1]**  28/13
**BARELY [1]**  25/24
**BASED [5]**  14/9 14/19 45/5 48/1 58/13
**BASES [1]**  25/18
**BASICALLY [1]**  19/18
**BASICS [1]**  78/3
**BASIS [5]**  8/14 29/15 29/15 45/7 79/10
**BE [209]**
**BE-ALL [2]**  67/4 68/25
**BEARS [1]**  35/22
**BECAME [2]**  23/19
**BECAUSE [42]**  9/5 14/6 15/6 24/7 25/10 28/16 31/25 33/9 34/9 41/5 48/15 48/22 50/14 50/17 50/19 50/22 50/24 52/24 53/20 54/10 56/23 57/19 62/4 62/15 63/19 65/3 65/24 66/21 69/14 70/5 71/15 72/6 72/25 76/3 77/18 78/15 79/8 82/1 83/5 83/19 83/21 86/5
**BECOMES [2]**  28/21 83/23
**BECOMING [1]**  83/19
**BEEN [97]**
**BEEN -- [1]**  52/14
**BEEN DESIGNATED [1]**  10/25
**BEFORE [22]**  1/4 5/1 6/19 12/17 24/4 29/18 39/6 40/4 44/23 49/6 49/6 54/23 60/10 62/16 63/5 64/10 67/10 72/3 73/24 79/1 83/12 85/22
**BEFOREHAND [1]**  62/15

**B**

**BEGAN** [1] 61/15
**BEGIN** [3] 44/2 44/15 76/4
**BEGINNING** [2] 53/13 76/6
**BEGINS** [1] 48/23
**BEGUN** [1] 25/24
**BEHALF** [3] 13/18 62/19 75/21
**BEHAVIOR** [1] 73/12
**BEING** [12] 9/17 13/13 19/3 31/19 37/14 45/18 55/4 70/25 73/11 80/25 81/7 84/9
**BELIEVE** [28] 10/16 10/18 10/20 12/24 14/9 14/14 16/5 17/20 17/22 29/10 36/17 39/13 51/23 56/22 57/4 57/7 58/2 58/3 58/5 64/23 66/13 75/24 76/2 78/2 78/21 79/13 80/25 83/9
**BELIEVED** [3] 53/24 57/1 60/1
**BELIEVES** [1] 14/18
**BENCH** [1] 69/8
**BENCHMARK** [1] 87/7
**BENEFICIAL** [1] 42/9
**BENEFIT** [3] 25/13 36/24 65/16
**BENEFITS** [1] 26/1
**BENEFITTING** [1] 21/8
**BERZON** [2] 2/5 3/23
**BEST** [5] 33/22 42/25 53/22 80/3 80/18
**BETTER** [15] 14/21 25/17 26/13 28/11 28/12 28/14 37/16 70/17 72/13 73/19 74/23 75/6 75/13 75/14 83/7
**BETWEEN** [5] 40/9 57/3 57/16 66/7 67/12
**BEYOND** [1] 47/12
**BIG** [1] 69/18
**BILL** [3] 70/4 70/6 70/6
**BINDERS** [2] 84/19 86/3
**BIT** [10] 7/14 21/12 28/11 28/12 46/18 46/19 48/14 50/25 59/11 86/6
**BLAH** [3] 53/15 53/15 53/15
**BLAMED** [1] 75/21
**BLOCKS** [1] 86/14
**BOOK** [2] 52/18 66/5
**BOOT** [1] 73/5
**BORROW** [1] 71/1
**BOTH** [11] 3/22 8/11 9/4 11/20 21/24 26/14 34/7 41/12 52/25 80/21 87/4
**BOTTOM** [1] 49/1
**BOUND** [1] 88/10
**BOUNDS** [1] 26/7
**BRIEF** [5] 63/12 63/23 64/1 85/6 85/23
**BRIEFING** [1] 85/25
**BRIEFLY** [2] 85/8 87/9
**BRIEFS** [1] 84/18
**BRING** [2] 28/8 84/11
**BRINGING** [1] 84/10
**BROADER** [2] 12/13 31/12
**BROTHERS** [6] 2/4 3/20 32/5 45/16 58/19 60/5
**BROUGHT** [4] 3/8 21/14 25/3 82/12
**BUNCH** [1] 60/16
**BURDEN** [6] 23/11 25/5 25/9 27/3 36/16 60/22
**BURDENS** [2] 26/1 36/25
**BUT** [118]

**C**

**CALENDAR** [1] 39/15
**CALIFORNIA** [7] 1/3 1/10 1/15 1/20 1/23 2/6 88/5
**CALL** [15] 37/23 51/3 53/19 54/2

54/15 54/18 54/19 56/12 61/14 61/17 64/1 74/7 75/12 75/15 76/8
**CALLED** [4] 7/11 52/8 81/15 81/22
**CALLING** [3] 3/3 23/14 87/19
**CAME** [2] 46/6 55/20
**CAMERA** [1] 4/12 49/23
**CAMPBELL** [8] 1/17 3/14 29/17 52/14 56/13 65/24 65/24 66/7
**CAN** [72] 7/19 7/20 8/5 8/8 8/22 9/17 10/8 12/20 14/18 14/25 15/1 17/9 18/10 21/5 21/6 22/19 22/25 23/9 25/2 26/3 26/14 26/16 28/20 28/25 31/7 33/18 33/22 34/6 36/1 36/2 38/25 41/9 42/18 42/19 42/21 42/22 43/2 43/10 43/15 43/19 43/20 44/1 45/3 61/2 61/16 61/20 63/2 63/6 64/24 68/4 71/24 71/24 74/8 75/4 75/13 75/21 80/10 83/20 83/22 84/17 84/21 84/24 85/9 85/11 85/14 85/21 86/6 86/7 86/12 86/21 87/8 87/10
**CAN'T** [2] 52/15 73/17
**CANCELLED** [1] 38/13
**CANNOT** [21] 11/13 11/18 12/18 17/3 21/23 28/1 29/23 35/4 43/16 44/16 45/4 54/18 64/19 64/19 65/11 65/19 75/21 83/18 84/16 87/8 87/18
**CAPABLE** [1] 70/25
**CAPACITY** [1] 51/19
**CARDIOVASCULAR** [1] 51/19
**CAREER** [1] 24/21
**CAREFUL** [1] 49/24
**CAREFULLY** [3] 38/23 46/7 53/21
**CARNEGIE** [2] 14/11 31/20
**CARRY** [1] 44/20
**CARRYING** [1] 16/3
**CASE** [78] 3/3 3/4 8/10 8/10 8/11 9/7 10/16 11/1 15/10 15/11 15/12 15/13 15/16 15/25 16/12 16/13 16/14 16/18 20/6 20/6 21/3 21/15 21/18 23/12 23/18 24/5 25/19 25/24 26/4 26/18 26/21 31/1 32/9 36/17 37/24 38/13 38/14 38/24 39/17 39/23 39/25 40/2 46/6 46/8 46/11 48/5 49/12 50/9 51/19 51/19 51/20 51/20 51/21 53/18 54/1 54/9 56/1 60/7 60/23 63/23 63/25 65/14 66/10 71/19 72/1 72/3 72/6 74/4 75/24 78/18 78/19 79/5 79/7 79/8 82/12 82/17 86/11 88/6
**CASES** [14] 17/7 17/22 21/20 22/7 23/15 24/15 24/16 25/4 27/3 36/14 40/3 52/18 71/12 78/16
**CAST** [1] 72/10
**CATEGORIES** [1] 80/8
**CATEGORY** [1] 87/6
**CAUSALLY** [1] 71/5
**CAUSE** [2] 41/7 65/22
**CAUSED** [1] 21/22
**CAUSES** [1] 65/1
**CAUTIONARY** [1] 7/9
**CEASE** [2] 66/14 73/19
**CERTAIN** [13] 16/20 19/7 19/23 28/2 48/1 48/15 48/20 48/21 51/8 70/21 71/9 72/22 86/15
**CERTAINLY** [33] 10/2 13/11 14/15 19/2 19/6 23/7 24/1 25/12 25/25 27/17 33/2 35/8 35/25 36/3 36/12 43/7 43/13 44/1 44/14 46/1 46/7 47/7 56/23 68/5 70/9 70/12 70/24 72/11 73/3 75/16 75/18 76/2 76/9
**CERTAINTY** [1] 35/24
**CERTIFICATE** [1] 88/3
**CERTIFICATION** [1] 88/12

**CERTIFY** [1] 88/5
**CESSPOOL** [1] 51/3
**CETERA** [12] 34/5 34/5 40/13 40/14 42/21 47/15 47/15 48/4 53/4 65/7 65/8 87/7
**CETERA --** [1] 87/7
**CFR** [1] 16/13
**CHANCE** [3] 63/5 72/4 73/1
**CHANGED** [1] 51/10
**CHARACTER** [2] 30/1 30/7
**CHARACTERISTICS** [1] 24/15
**CHARACTERIZED** [1] 9/23
**CHARGE** [1] 18/7
**CHEN** [1] 1/4
**CHICKEN** [1] 7/14
**CHRIS** [5] 1/17 3/14 6/1 52/8 67/11
**CHRISTOPHER** [3] 5/14 5/17 57/3
**CHRONOLOGY** [1] 46/16
**CIRCUMSPECT** [5] 49/3 49/24 56/14 71/9 76/7
**CIRCUMSTANCE** [7] 8/10 11/21 23/25 24/2 24/23 31/24 69/11
**CIRCUMSTANCES** [5] 22/6 23/16 24/9 25/12 71/21
**CITATION** [1] 25/3
**CITED** [5] 8/11 23/13 52/18 63/23 63/25
**CIVIL** [1] 15/15
**CLAIM** [5] 19/5 19/7 20/1 22/17 27/14
**CLAIMS** [2] 27/10 30/18
**CLARIFICATION** [1] 45/17
**CLEAR** [7] 15/13 16/7 46/24 50/16 53/6 72/14 73/15
**CLEARLY** [3] 27/6 54/21 64/18
**CLERK** [1] 46/16
**CLIENT** [9] 7/6 8/3 9/15 29/5 48/13 60/14 62/10 69/14 76/10
**CLIENT'S** [1] 39/5
**CLINTONESQUE** [1] 71/1
**CLOSER** [1] 50/5
**CMC** [2] 39/11 39/12
**CO-AUTHOR** [2] 8/16 8/17
**CODE** [1] 39/2
**COLLECT** [1] 32/21
**COME** [9] 31/16 34/24 43/19 55/7 68/25 75/25 82/5 85/11 87/17
**COMES** [2] 27/9 74/19
**COMING** [2] 22/15 32/13
**COMMENT** [1] 38/7
**COMMITTEE** [5] 15/15 16/7 16/11 22/6 36/14 40/3 70/5
**COMMITTING** [1] 72/4
**COMMON** [1] 19/5
**COMMUNICATE** [1] 69/8
**COMMUNICATED** [1] 52/22
**COMMUNICATING** [1] 66/25
**COMMUNICATION** [8] 14/7 52/20 52/21 56/11 66/7 66/14 73/25 75/23
**COMMUNICATIONS** [9] 6/7 6/17 6/18 7/9 13/24 66/3 68/8 69/14 83/12
**COMMUNICATIVE** [1] 52/10
**COMPANY** [2] 1/8 41/3
**COMPANY'S** [1] 23/23
**COMPEL** [1] 63/11
**COMPELLING** [3] 8/25 24/5 43/8
**COMPETITIVE** [1] 13/12
**COMPILER** [1] 81/22
**COMPLETED** [1] 80/4
**COMPLETELY** [2] 23/17 39/17
**COMPLICATED** [1] 85/12
**COMPORT** [1] 74/15

**C**

**COMPROMISE [6]** 7/5 12/3 13/21
36/22 48/12 60/18
**COMPROMISES [1]** 48/21
**COMPROMISING [1]** 26/9
**COMPUTERIZED [1]** 1/25
**CONCEDED [1]** 27/24
**CONCEPTS [2]** 11/8 11/12
**CONCERN [6]** 15/18 16/1 23/23 40/6
40/15 66/11
**CONCERNED [1]** 65/6
**CONCERNS [5]** 8/12 17/8 20/14
20/14 41/20
**CONCLUDE [2]** 49/24 50/11
**CONCLUSION [1]** 68/25
**CONCLUSIONS [6]** 4/20 5/25 6/2 6/3
11/16 30/17
**CONCRETE [2]** 12/24 72/1
**CONCRETELY [1]** 26/14
**CONDITION [1]** 11/10
**CONDUCT [6]** 22/21 56/24 67/23
68/22 69/20 69/25
**CONDUCTED [1]** 39/7
**CONFER [1]** 43/23
**CONFERENCE [10]** 31/1 38/13 38/14
57/8 57/14 58/14 67/6 79/7 79/9
86/11
**CONFERENCE -- [1]** 57/8
**CONFERENCED [1]** 27/13
**CONFERENCES [5]** 31/17 33/1 33/3
40/12 40/13
**CONFIDENCE [4]** 6/25 7/3 12/3 65/3
**CONFIDENTIAL [36]** 5/8 6/14 6/16
6/17 6/18 7/4 7/10 7/17 8/6 9/2 10/13
23/22 23/23 26/9 38/22 39/22 47/22
48/12 49/18 50/20 51/23 52/2 53/7
53/23 53/24 56/6 56/15 56/18 56/19
57/2 59/2 60/9 62/1 63/3 71/8 71/12
**CONFLICT [3]** 29/20 52/16 73/21
**CONFUSED [2]** 3/25 46/19
**CONNECTION [1]** 55/11
**CONSEQUENCES [1]** 67/22
**CONSIDER [1]** 39/14
**CONSIDERABLE [2]** 5/17 22/14
**CONSIDERATION [4]** 21/7 32/11
33/10 41/4
**CONSIDERATIONS [2]** 8/13 37/19
**CONSIDERED [1]** 6/16
**CONSIDERING [1]** 39/6
**CONSISTENT [2]** 7/1 47/6
**CONSTRUCTION [2]** 27/14 65/13
**CONSULT [2]** 29/23 30/5
**CONSULTANT [5]** 16/11 54/25 55/24
58/11 66/1
**CONSULTANT'S [1]** 36/19
**CONSULTATION [5]** 8/7 30/13 30/15
49/17 49/17
**CONSULTED [4]** 57/21 59/17 64/2
70/15
**CONSULTING [16]** 16/9 21/11 22/17
26/21 29/21 42/4 42/10 47/24 52/6
52/6 52/11 53/22 55/12 55/15 61/11
74/10
**CONTACT [8]** 42/2 42/6 52/8 72/14
75/6 75/19 85/6 85/22
**CONTACTED [3]** 42/3 55/14 59/18
**CONTACTING [1]** 47/19
**CONTEMPLATED [1]** 22/6
**CONTENDING [1]** 60/11
**CONTENT [1]** 67/8
**CONTENTION [5]** 5/4 5/11 15/7
17/14 51/13

**CONTENTIONS [5]** 38/16 46/21
79/12 79/15 85/24
**CONTESTED [1]** 30/9
**CONTESTS [1]** 70/11
**CONTEXT [15]** 6/10 13/14 14/5 15/1
16/22 17/8 19/12 22/3 28/17 32/18
33/5 47/11 55/9 56/6 74/9
**CONTINUED [3]** 1/21 2/1 66/10
**CONTINUING [1]** 59/23
**CONTOURS [1]** 35/3
**CONTRACT [1]** 53/6
**CONTRADICTION [1]** 48/15
**CONTRARY [2]** 54/9 62/5
**CONTRIBUTE [1]** 37/24
**CONTRIBUTED [1]** 8/19
**CONTROL [1]** 10/3
**CONVENIENCE [1]** 29/25
**CONVERSATION [2]** 6/11 44/14
**CONVERSATIONS [6]** 6/5 25/10
25/11 25/22 54/23 55/1
**CONVINCED [1]** 47/2
**CONVINCING [1]** 46/24
**COPY [1]** 55/11
**CORBIN [15]** 1/16 3/6 22/1 22/11
23/1 27/23 30/17 32/25 54/11 64/9
66/19 68/1 79/17 80/20 83/2
**CORDI [4]** 8/11 11/20 21/20 67/24
**CORPORATE [4]** 60/17 77/10 77/17
82/16
**CORRECT [4]** 23/17 33/13 73/9 80/1
**CORRESPONDENCE [4]** 57/3 57/16
59/8 84/20
**COST [2]** 62/10 62/14
**COSTS [5]** 50/4 63/7 63/8 63/8 70/11
**COULD [57]** 11/13 12/25 13/21 15/19
17/1 17/5 17/17 21/7 23/5 25/9 26/11
27/5 28/19 28/23 29/4 29/10 30/8
33/14 35/2 35/8 36/12 37/7 40/18
41/10 41/12 42/14 42/20 43/14 44/14
44/15 44/19 44/20 44/25 46/17 47/6
48/5 49/5 51/7 51/15 53/5 55/10
56/14 57/17 59/4 60/2 64/12 65/20
66/16 68/6 70/9 70/21 73/23 75/17
76/18 77/17 80/19 85/12
**COUNSEL [78]** 1/18 3/13 6/4 6/7 6/9
6/11 8/21 9/5 9/25 10/4 10/13 15/7
18/5 18/25 19/4 20/18 20/23 21/13
21/16 21/21 21/24 22/2 22/12 22/22
23/13 25/5 25/15 25/16 30/11 31/5
31/15 41/13 41/24 47/19 49/2 52/3
52/12 52/23 53/10 53/19 53/25 54/24
55/4 55/14 55/23 56/3 56/16 56/17
56/25 57/4 57/9 57/16 57/20 57/21
58/7 59/18 59/22 60/12 61/13 61/20
66/12 66/22 67/15 67/20 67/23 67/24
67/25 68/2 68/8 69/6 70/20 72/14
73/10 73/15 74/21 75/6 75/9 81/24
**COUNSEL'S [1]** 9/21
**COUNSELED [1]** 69/11
**COUNT [2]** 82/3 83/14
**COUNTED [1]** 82/20
**COUNTER [1]** 32/9
**COUNTERVAILING [1]** 37/19
**COUPLE [2]** 76/18 86/12
**COURSE [10]** 8/7 9/12 23/8 29/11
48/20 51/10 53/7 64/7 70/8 73/13
**COURT [50]** 1/2 1/23 8/14 9/9 10/23
13/16 15/11 20/25 21/15 21/22 25/25
27/9 29/22 29/23 36/20 38/10 38/20
41/12 44/25 46/23 50/1 51/6 56/9
57/6 57/6 58/14 58/15 59/3 59/5 59/6
60/3 60/25 60/25 61/21 62/2 62/4

63/5 63/10 65/10 66/16 68/3 68/3
68/4 68/5 68/5 68/24 69/1 87/2 88/5
88/14
**COURT -- [1]** 15/11
**COURT'S [2]** 22/20 23/15
**COURTROOM [1]** 3/12
**COURTS [1]** 11/20 83/19
**COVERED [1]** 44/11
**CREATED [1]** 66/6
**CREDIBILITY [1]** 65/1
**CRITICAL [3]** 49/11 54/14 54/22
**CROSS-EXAMINED [1]** 65/7
**CRUCIAL [1]** 21/4
**CUMULATIVE [1]** 24/10
**CURIOUS [1]** 9/5
**CURRENT [1]** 80/13
**CURRENTLY [2]** 80/25 87/4
**CURSORY [2]** 48/3 50/20
**CUSTODY [1]** 26/24
**CUSTOMER [1]** 80/7

**D**

**DAA [26]** 7/25 8/1 8/20 8/23 9/18
9/23 11/6 11/16 12/11 12/15 12/23
13/9 15/8 16/16 17/13 18/22 18/23
19/1 19/8 19/8 19/20 20/22 31/7
31/11 32/2 36/4
**DAMAGES [1]** 29/7
**DAMN [1]** 70/17
**DANGEROUS [2]** 40/25 49/14
**DATE [5]** 16/17 25/19 29/24 30/24
57/25
**DATES [7]** 77/12 77/16 77/18 80/23
81/3 84/8 86/21
**DAY [22]** 35/19 37/20 40/18 55/22
55/24 56/22 56/25 57/11 57/13 58/3
68/13 74/14 74/15 74/19 74/19 74/20
74/24 79/19 79/20 80/2 80/2 83/16
**DAY -- [1]** 56/22
**DAYS [13]** 13/2 43/23 44/25 57/19
57/23 58/4 58/7 58/15 67/10 67/12
79/13 84/8 87/3
**DC [1]** 2/3
**DEADLINES [1]** 86/23
**DEAL [1]** 79/19
**DEALS [1]** 80/2
**DEBATABLE [5]** 47/21 47/25 71/18
71/18 71/22
**DEBATE [1]** 71/22
**DECEMBER [1]** 5/16
**DECIDES [1]** 61/1
**DECISION [2]** 69/20 69/22
**DECLARATION [28]** 5/14 5/15 6/5
34/25 36/10 37/15 40/8 47/8 57/10
57/13 57/17 57/23 58/1 58/4 58/7
58/9 58/16 59/7 66/18 66/19 66/21
67/3 67/5 67/8 67/10 68/2 68/14
68/23
**DECLARATORY [4]** 3/7 4/1 4/2 78/19
**DECLINE [1]** 67/16
**DEEPER [1]** 52/10
**DEFENCE [3]** 29/8 47/19 60/11
**DEFENDANT [5]** 1/9 2/2 11/25 50/18
68/8
**DEFENDANT'S [3]** 53/10 66/12 66/21
**DEFENDANTS [59]** 3/9 4/2 4/3 4/16
5/24 6/8 6/12 6/22 7/7 7/11 8/14 8/21
8/22 8/23 10/4 15/8 21/8 21/13 22/23
23/12 25/5 26/21 27/7 29/21 29/24
30/11 30/15 32/18 32/23 34/3 34/20
36/16 41/6 41/24 45/24 47/19 49/13
52/3 52/13 61/13 64/18 67/13 67/15
68/10 69/6 69/25 76/20 77/11 77/23

## D

**DEFENDANTS... [10]** 78/2 78/15 78/17 78/24 79/2 79/13 79/22 80/7 80/21 84/10
**DEFENDANTS -- [1]** 4/16
**DEFER [6]** 23/8 37/24 38/4 82/4 82/21 83/15
**DEFERMENT [1]** 25/22
**DEFERRED [3]** 21/2 32/7 39/12
**DEFINE [3]** 26/7 35/3 43/3
**DEFINITELY [3]** 25/6 73/9 75/15
**DEFINITION [1]** 19/2
**DEFINITIONS [1]** 30/18
**DEGREE [1]** 80/10
**DELAWARE [3]** 29/23 51/6 82/12
**DELAY [1]** 38/11
**DELAYED [1]** 38/12
**DELAYS [3]** 38/18 38/19 86/7
**DELIBERATE [1]** 47/5
**DELIBERATIVE [1]** 61/22
**DELICATE [2]** 37/11 48/16
**DELINEATE [1]** 28/24
**DELIVERED [1]** 53/11
**DELOITT [5]** 59/16 59/20 60/1 60/4 61/8
**DEMAIN [2]** 2/5 3/23
**DEMANDED [1]** 52/20
**DEMANDING [1]** 35/24
**DEMONSTRATE [1]** 23/9
**DEMONSTRATED [1]** 37/14
**DENIED [1]** 87/16
**DEPENDING [1]** 85/12
**DEPOSE [2]** 32/12 58/22
**DEPOSED [4]** 24/2 26/20 33/12 39/24
**DEPOSITION [69]** 5/23 6/6 6/22 6/24 7/8 7/14 7/22 7/22 8/15 8/25 10/3 10/5 10/5 11/5 12/17 16/14 16/24 17/1 18/21 20/15 21/2 22/21 23/7 25/13 26/15 27/4 28/24 29/14 29/16 29/24 29/25 30/12 30/16 32/14 32/19 33/18 34/6 35/3 37/3 37/16 39/6 45/2 45/22 55/5 55/9 57/15 57/19 57/20 58/6 59/9 61/1 71/20 74/5 77/10 77/13 77/16 77/20 77/23 77/24 78/3 78/11 81/3 81/19 82/3 82/19 83/9 83/17 84/8 86/15
**DEPOSITIONS [10]** 32/10 33/15 77/16 78/8 78/11 80/25 84/6 85/2 85/5 87/5
**DEPRIVED [1]** 61/10
**DESCRIBE [1]** 48/22
**DESCRIPTION [1]** 60/15
**DESIGNATED [4]** 10/25 77/25 81/24 86/2
**DESIGNEE [1]** 85/4
**DESIGNEES [10]** 77/11 77/18 80/23 81/2 81/6 81/8 81/9 81/12 82/17 84/15
**DESIGNEES -- [1]** 81/8
**DESIRE [3]** 4/15 38/10 60/3
**DESTROYING [1]** 62/18
**DETAIL [1]** 66/24
**DETERMINATION [1]** 68/20
**DETERMINE [4]** 20/19 20/19 48/9 49/21
**DETERMINED [2]** 37/20 57/5
**DETERMINES [1]** 27/10
**DETERMINING [1]** 22/16
**DEVELOP [1]** 85/17
**DEVELOPED [7]** 9/14 13/13 13/15 14/12 24/21 25/18 25/18
**DEVELOPMENT [11]** 7/23 9/12 9/18

12/10 13/9 16/16 18/22 19/17 51/17 68/20 69/2
**DEVELOPMENTS [1]** 9/11
**DEVICE [2]** 24/18 25/1
**DI [3]** 57/21 58/14 66/25
**DIALOGUE [2]** 44/15 66/10
**DICKSTEIN [3]** 2/2 3/21 66/1
**DID [65]** 5/20 5/22 6/8 6/9 6/10 6/13 6/15 7/10 12/22 18/4 18/6 18/7 19/25 23/3 28/6 31/17 31/17 32/4 35/19 36/5 46/9 46/16 48/11 49/2 49/3 49/9 49/9 52/1 54/6 54/24 54/25 54/25 55/16 55/24 56/3 56/5 56/8 56/10 56/17 56/22 57/13 58/21 59/7 59/21 63/5 64/11 65/7 67/15 67/16 68/24 70/12 70/18 70/19 71/11 71/13 71/15 73/7 74/15 75/20 75/23 76/10 76/24 77/3 79/9 80/3
**DIDN'T [1]** 55/15
**DIFFER [1]** 19/25
**DIFFERENCE [5]** 14/18 22/2 49/8 82/25 83/10
**DIFFERENT [9]** 12/15 15/2 22/10 24/23 26/25 32/2 39/17 39/18 63/14
**DIFFERENTIAL [1]** 14/8
**DIFFERENTLY [2]** 70/10 75/25
**DIFFICULT [1]** 29/9
**DIFFICULTY [3]** 43/1 80/8 80/15
**DILIGENCE [1]** 22/16
**DILIGENT [1]** 80/17
**DILIGENTLY [1]** 79/21
**DIRECTION [1]** 88/9
**DIRECTLY [2]** 58/20 75/7
**DISAGREE [1]** 24/7
**DISASSEMBLY [1]** 88/13
**DISCERN [1]** 7/16
**DISCERNING [1]** 37/4
**DISCLOSE [1]** 52/2
**DISCLOSED [5]** 39/21 53/24 57/12 60/9 66/24
**DISCLOSURE [6]** 7/11 11/6 20/7 32/9 32/20 38/21
**DISCLOSURES [4]** 30/25 41/25 42/1 68/16
**DISCOMFORT [1]** 50/8
**DISCOUNT [1]** 83/15
**DISCOVERABLE [1]** 16/20
**DISCOVERED [2]** 65/16 65/17
**DISCOVERY [35]** 9/8 9/13 15/16 17/23 25/24 26/2 26/2 26/2 26/18 27/2 32/17 33/6 33/16 35/20 39/1 39/7 40/4 47/14 72/2 76/15 76/21 78/15 78/21 78/23 79/2 79/5 79/10 79/18 82/17 83/17 85/17 86/17 86/18 86/24 87/6
**DISCRETE [1]** 18/19
**DISCRETION [1]** 25/25
**DISCUSS [4]** 6/9 6/11 44/2 86/25
**DISCUSSED [2]** 3/15 6/15
**DISCUSSIONS [4]** 6/1 27/15 38/2 59/19
**DISINGENUOUS [1]** 67/20
**DISPOSITIVE [1]** 69/1
**DISPUTE [17]** 20/10 22/4 28/6 45/16 51/25 54/17 58/25 59/3 59/11 60/25 64/10 76/22 80/7 84/22 85/9 85/24 86/2
**DISPUTES [1]** 85/7
**DISQUALIFICATION [1]** 21/19
**DISQUALIFIED [4]** 7/16 8/13 21/18 21/25
**DISQUALIFY [1]** 36/19

**DISSERVICE [1]** 38/3
**DISTANCES [1]** 85/13
**DISTINCTION [3]** 61/6 61/7 61/12
**DISTINCTIONS [1]** 61/7
**DISTINGUISH [2]** 9/11 23/15
**DISTINGUISHED [1]** 19/13
**DISTINGUISHING [1]** 10/21 24/14
**DISTRICT [7]** 1/2 1/3 1/23 1/23 15/13 29/22 88/5
**DO [110]**
**DOCTOR [1]** 13/5
**DOCTOR -- [1]** 13/5
**DOCUMENT [4]** 60/17 79/21 80/4 80/22
**DOCUMENTED [1]** 6/5
**DOCUMENTS [14]** 4/12 8/4 32/24 33/1 48/18 48/19 48/25 49/23 55/11 60/16 61/1 78/22 81/16 86/13
**DOES [38]** 10/3 15/6 15/14 18/10 22/1 22/2 22/7 25/7 27/24 31/7 33/20 34/4 34/4 34/16 34/17 35/8 35/9 36/20 37/7 37/8 38/2 38/23 40/11 41/5 46/4 46/21 46/25 47/16 48/10 48/24 49/12 49/17 50/14 71/2 72/2 74/2 74/7 75/8
**DOING [4]** 42/4 44/17 85/14 87/8
**DOLLARS [3]** 29/7 54/7 69/18
**DON'T [7]** 34/9 48/18 52/24 62/3 82/4 82/5 82/22
**DONE [22]** 7/19 7/20 10/2 11/19 17/6 28/2 38/22 39/2 39/9 42/8 47/9 49/6 61/22 62/15 62/16 70/10 72/22 72/11 72/19 73/24 85/20 86/1
**DONE -- [1]** 7/19
**DOOR [2]** 51/1 71/19
**DOUBT [1]** 6/23
**DOWN [4]** 4/9 69/19 78/17 85/25
**DOZEN [1]** 42/5
**DR [177]**
**DRAMATIC [1]** 51/10
**DROPPED [1]** 69/16
**DUE [1]** 22/16
**DULY [1]** 53/2
**DURING [10]** 6/11 8/7 18/9 20/8 55/21 56/6 57/8 57/14 67/5 73/13
**DUTY [1]** 52/9

## E

**E-MAIL [5]** 29/16 52/14 55/13 66/8 74/7
**E-MAILED [1]** 65/24
**E-MAILING [1]** 65/25
**E-MAILS [6]** 49/23 55/8 55/19 66/2 66/9 74/10
**EACH [8]** 33/18 69/8 77/10 77/21 77/23 79/7 85/9 86/21
**EARLIER [5]** 12/13 33/6 48/7 79/11 80/5
**EARLY [4]** 12/10 13/2 27/20 79/25
**EARTH [1]** 29/8
**EASE [1]** 66/6
**EASIER [1]** 44/22
**ECLIPSE [1]** 1/25
**EDGE [2]** 7/18 51/6
**EDUCATED [1]** 35/9
**EDWARD [1]** 1/4
**EFFECT [1]** 82/14
**EFFECTIVELY [1]** 65/21
**EFFICIENCY [1]** 38/3
**EFFICIENT [2]** 41/19 43/2
**EFFORT [1]** 80/17
**EFFORTS [2]** 32/20 80/3
**EGG [1]** 7/14

**E**

**EITHER [10]** 4/15 10/19 14/25 36/14 37/14 45/10 48/13 65/10 73/22 85/11
**ELABORATE [1]** 36/2
**ELEMENTS [3]** 19/5 19/7 20/1
**ELI-LILLY [1]** 63/25
**ELICIT [1]** 42/15
**ELICITING [3]** 9/22 9/25 56/14
**ELIGIBLE [1]** 37/21
**ELLISON [5]** 9/7 10/16 15/11 16/13 23/16
**ELSE [7]** 33/2 35/17 36/7 38/25 40/3 52/4 73/23
**EMBARRASSING [1]** 73/5
**EMC [2]** 1/7 1/7
**EMERGENCY [1]** 62/3
**EMPLOY [1]** 59/16
**EMPLOYEE [2]** 20/6 23/20 23/24
**EMPLOYMENT [1]** 11/3
**ENCOURAGED [1]** 69/8
**END [18]** 21/2 26/14 26/17 27/2 31/9 32/9 35/19 37/20 37/24 40/18 43/9 52/17 53/8 57/13 70/10 79/14 83/16 85/2
**END-ALL [2]** 67/4 68/25
**ENDED [1]** 50/22
**ENDS [2]** 37/14 68/6
**ENGAGE [1]** 47/10
**ENGAGED [2]** 39/20 48/3
**ENGAGEMENT [3]** 48/2 50/20 74/20
**ENGAGING [1]** 48/9
**ENGINEERS [1]** 12/9
**ENOUGH [10]** 4/4 4/6 5/19 43/23 46/3 49/24 49/24 50/20 51/11 68/18
**ENTAIL [1]** 29/14
**ENTAILS [1]** 64/2
**ENTERED [2]** 68/11 68/12
**ENTERED ON [1]** 68/12
**ENTERTAIN [1]** 21/1
**ENTIRE [2]** 21/24 31/11
**ENTITLED [1]** 16/14
**ENUMERATE [2]** 18/19 85/8
**ENVISION [1]** 28/25
**EPISODE [1]** 65/3
**EQUAL [1]** 45/20
**EQUANIMITY [1]** 73/11
**ERIK [6]** 1/16 1/18 3/11 3/12 80/1 80/19
**ERROR [1]** 52/4
**ESPECIALLY [3]** 5/14 11/22 17/7
**ESQ [7]** 1/16 1/16 1/17 1/17 1/18 2/4 2/7
**ESSENTIALLY [3]** 23/18 47/10 85/16
**ESTABLISHING [2]** 19/9 19/21
**ET [13]** 3/8 34/5 34/5 40/13 40/14 42/21 47/15 47/15 48/3 53/4 65/7 65/8 87/7
**EVADED [1]** 67/18
**EVE [1]** 32/10
**EVEN [47]** 4/9 7/8 11/21 12/3 15/17 15/18 16/8 16/10 16/18 20/18 21/1 22/1 22/3 24/5 26/17 27/1 35/19 35/20 36/25 38/4 39/6 39/19 39/23 41/1 41/4 45/21 48/20 49/13 49/16 50/5 50/9 50/15 53/3 59/6 61/14 61/23 64/18 65/25 66/4 67/14 70/15 71/20 75/10 78/22 82/4 82/22 83/15
**EVENT [4]** 7/1 7/19 39/19 65/18
**EVENTS [6]** 8/5 8/5 10/18 47/4 51/10 70/8
**EVER [2]** 22/15 83/23
**EVERY [8]** 3/25 9/21 22/25 40/16

72/11 84/10 84/12 84/20
**EVERYBODY [3]** 26/20 28/8 51/18
**EVERYBODY'S [1]** 28/18
**EVERYTHING [5]** 36/7 41/5 46/9 46/17 65/9
**EVIDENCE [8]** 12/5 13/19 17/15 20/16 22/14 43/18 47/13 83/21
**EX [1]** 47/10
**EXACT [3]** 5/24 5/25 35/13
**EXACTLY [6]** 46/5 46/9 48/23 60/5 60/24 84/23
**EXAMINATION [3]** 5/8 21/21 34/15
**EXAMPLE [10]** 9/17 10/15 11/9 14/12 18/25 24/18 25/7 31/15 73/14 84/7
**EXCEPT [1]** 8/9 14/23 35/14
**EXCHANGE [3]** 28/19 66/1 74/10
**EXCHANGED [2]** 49/19 50/21
**EXCHANGES [1]** 55/8
**EXCHANGING [1]** 66/9
**EXCITED [1]** 61/15
**EXCLUDED [2]** 15/22 16/23
**EXCLUDING [2]** 16/23 17/10
**EXCLUSION [1]** 47/11
**EXCLUSIVELY [4]** 15/20 15/21 16/21 17/4
**EXCRUCIATINGLY [1]** 79/3
**EXCUSE [1]** 46/13
**EXHAUSTIVE [1]** 47/16
**EXHIBIT [2]** 5/15 29/17
**EXISTED [1]** 19/22
**EXISTS [2]** 34/15 67/10
**EXPECT [6]** 11/18 19/10 30/22 33/24 73/6 87/3
**EXPEDITE [1]** 38/20
**EXPEDITED [1]** 86/7
**EXPENSE [1]** 55/11
**EXPERIENCE [2]** 32/4 33/20
**EXPERT [62]** 4/15 9/14 10/19 10/25 11/2 11/9 12/5 15/21 16/22 19/1 19/1 19/2 19/13 19/14 19/24 21/11 21/16 21/17 21/24 22/4 23/19 25/17 25/18 30/22 30/25 32/9 33/5 34/10 36/19 39/20 39/25 41/6 44/17 48/6 48/10 48/11 49/21 51/18 53/20 53/25 54/7 54/8 59/14 61/11 61/19 62/15 62/17 62/19 62/19 63/19 63/23 63/24 64/1 64/8 64/11 64/20 66/14 69/17 70/14 70/17 71/23 73/20
**EXPERT -- [2]** 22/4 63/23
**EXPERT'S [1]** 64/1
**EXPERTS [7]** 8/12 11/24 17/9 21/22 52/21 52/22 71/21
**EXPLAINED [1]** 74/9
**EXPLORE [1]** 41/16
**EXPLORED [2]** 41/15 41/16
**EXPRESSED [1]** 6/3
**EXTEND [1]** 82/9
**EXTENDED [1]** 82/16
**EXTENT [24]** 11/11 15/18 15/23 16/18 17/2 17/4 17/18 17/19 17/23 26/24 34/22 35/14 45/18 47/21 48/4 48/21 51/8 69/22 69/25 71/9 71/19 71/21 76/12 87/1

**F**

**FACE [4]** 47/8 47/12 47/15 49/20
**FACIE [2]** 35/10 47/13
**FACILITATE [1]** 87/11
**FACILITIES [1]** 79/23
**FACING [1]** 17/2
**FACT [40]** 6/16 8/24 10/17 11/24 12/18 18/7 18/13 20/11 23/14 23/20 25/9 26/25 26/25 30/20 31/6 31/24

32/2 32/17 32/25 33/3 33/6 35/4 36/13 37/7 42/1 52/11 52/20 55/13 56/8 61/6 62/11 64/3 64/14 65/11 67/9 68/2 71/17 72/15 74/12 81/20
**FACT-WITNESS [1]** 30/16
**FACTS [18]** 3/15 9/8 9/10 9/14 10/20 16/15 17/16 18/14 20/10 24/11 24/16 25/14 36/10 39/22 46/19 58/8 67/14 73/12
**FACTS' [1]** 56/1
**FACTUAL [6]** 4/24 24/3 24/8 24/19 50/21 68/20
**FACTUALLY [1]** 12/2
**FAILED [2]** 59/24 66/12
**FAIR [5]** 4/10 32/13 71/14 71/22 83/8
**FAIRCHILD [1]** 51/19
**FAIRLY [2]** 48/2 48/2
**FAIRNESS [1]** 40/10
**FAITH [5]** 46/25 49/4 49/25 68/22 72/11
**FAMILIAR [1]** 13/13
**FAR [5]** 5/19 32/3 43/17 63/6 77/19
**FASHION [1]** 61/23
**FASHIONED [1]** 60/2
**FAULT [3]** 9/3 21/9 54/14
**FAULTED [1]** 54/18
**FAVORING [1]** 17/22
**FAVOUR [1]** 37/10
**FEATURES [1]** 18/23
**FEDERAL [2]** 15/15 69/8
**FEEL [7]** 20/22 33/25 43/12 73/9 74/15 83/4 85/25
**FEES [1]** 69/18
**FELT [1]** 69/1
**FEW [1]** 76/19
**FEWER [1]** 75/25
**FIELD [8]** 12/9 12/12 13/8 13/17 14/1 34/25 44/17 44/22
**FIGHT [1]** 60/25
**FIGURE [4]** 43/5 43/24 45/5 61/2
**FILE [5]** 57/11 62/3 62/13 63/12 88/14
**FILED [1]** 5/16
**FILING [2]** 57/13 88/11
**FINAL [4]** 40/6 63/12 68/17 71/4
**FINALLY [1]** 71/23
**FIND [6]** 6/13 21/18 31/18 46/11 53/21 66/17
**FINE [1]** 75/11
**FINISH [1]** 24/14
**FINISHED [1]** 50/23
**FIRM [12]** 3/12 3/14 3/20 21/19 21/19 21/24 53/11 54/18 59/16 71/8 73/6 76/7
**FIRST [29]** 4/13 6/13 9/5 9/6 10/15 12/2 12/17 14/16 18/18 27/22 29/3 29/12 29/18 43/3 46/22 50/10 51/22 54/20 56/17 61/7 61/19 63/11 71/15 74/4 74/16 75/19 78/11 78/23 85/2
**FIT [1]** 12/15
**FIVE [3]** 57/19 57/23 67/12
**FIVE-MINUTE [1]** 56/12
**FLIP [1]** 45/18
**FLOW [1]** 72/2
**FLOWED [1]** 62/11
**FLUSH [1]** 56/8
**FOCUSED [1]** 45/9
**FOCUSING [1]** 45/22
**FOLLOW [1]** 69/9
**FOLLOW-UP [2]** 42/7 45/17
**FOLLOWED [1]** 58/19

**F**

**FOLLOWING [3]** 35/2 63/2 74/15
**FORCE [1]** 52/9
**FOREGOING [2]** 88/6 88/10
**FOREIGN [1]** 31/17
**FORMAL [2]** 42/20 86/6
**FORMED [8]** 6/2 6/20 11/17 15/21 16/17 16/21 22/18 30/14
**FORMER [4]** 10/17 20/6 23/20 23/24
**FORMERLY [1]** 49/15
**FORTH [4]** 5/13 51/14 66/24 84/21
**FORTHCOMING [1]** 76/20
**FORWARD [8]** 5/2 15/17 32/6 34/24 40/6 45/2 55/7 67/17
**FORWARDED [1]** 55/21
**FOUL [1]** 71/7
**FOUND [1]** 21/23
**FOUR [2]** 86/3 87/1
**FRAMED [1]** 30/9
**FRAMEWORK [1]** 86/13
**FRAMING [1]** 10/6
**FRANCE [1]** 44/7
**FRANCISCO [2]** 1/10 2/6
**FRANK [1]** 28/19
**FRANKLY [7]** 11/13 26/3 34/21 41/23 49/7 71/1 71/19
**FREE [5]** 64/15 64/20 70/1 70/1 76/2
**FROM HIM [1]** 13/7
**FRONT [4]** 38/6 70/23 80/15 81/1
**FRONTS [2]** 72/8 83/6
**FRUSTRATING [1]** 83/1
**FULL [6]** 9/25 65/2 68/5 84/19 85/25 86/3
**FUNDED [1]** 27/13
**FURTHER [12]** 33/17 38/11 38/18 38/19 45/4 52/20 68/8 68/15 68/16 68/19 69/2 85/19

**G**

**GAIN [1]** 65/13
**GAINED [2]** 60/8 60/13
**GAINS [1]** 9/10
**GAME [1]** 49/14
**GAUGE [1]** 37/7
**GAVE [2]** 50/25 60/15
**GENERAL [6]** 13/9 25/23 37/5 42/11 60/15 86/18
**GENERALLY [3]** 13/9 25/25 31/18
**GENERATED [1]** 18/9
**GERMANY [1]** 44/10
**GET [29]** 3/25 18/18 35/18 38/17 40/15 45/3 45/6 48/23 50/19 55/16 56/23 59/10 61/15 62/12 63/5 68/4 70/17 71/11 74/6 76/10 78/24 83/17 83/21 83/22 84/16 84/22 85/18 85/19 85/20
**GET-GO [1]** 52/3
**GETS [3]** 69/25 70/1 72/4
**GETTING [8]** 4/19 27/20 46/12 53/12 55/9 63/4 70/12 85/11
**GIOVANNI [3]** 57/21 58/14 66/25
**GIST [1]** 53/5
**GIVE [15]** 4/16 7/18 9/17 10/15 21/7 37/22 43/23 61/1 62/16 63/20 66/18 68/23 69/21 72/5 73/1
**GIVEN [10]** 17/7 18/11 18/13 24/8 24/11 33/9 40/15 42/6 55/4 62/12
**GIVES [1]** 5/6
**GIVING [2]** 20/10 44/18
**GLEAN [1]** 33/18
**GO [22]** 5/2 7/18 8/2 15/17 17/10 24/4 32/6 32/24 45/2 45/6 47/12 49/2

51/13 59/3 59/4 60/21 62/2 62/8 62/12 62/13 64/12 85/16
**GOES [4]** 12/12 63/11 74/17 84/6
**GOING [47]** 9/4 9/22 10/5 11/7 11/12 15/25 20/22 32/6 34/2 40/16 40/19 41/2 42/23 42/23 43/3 43/24 44/7 46/18 51/13 51/20 55/18 55/19 56/9 57/5 60/22 60/23 64/8 64/9 64/17 64/18 65/6 66/18 67/17 67/20 70/7 70/16 72/6 72/10 75/11 76/5 82/17 82/22 82/24 83/7 86/13 86/14 87/20
**GONE [2]** 4/10 4/11 4/12 47/18 77/21 78/13 84/20
**GONNA [2]** 82/4 82/5
**GOOD [17]** 3/5 3/18 3/19 4/8 14/16 20/22 26/10 28/7 33/25 38/11 46/20 49/25 72/11 76/13 83/24 84/4 87/12
**GOT [9]** 12/4 48/19 48/22 51/3 56/18 56/25 58/2 61/23 62/2
**GOTTEN [4]** 43/17 50/15 53/2 63/5
**GOVERNED [1]** 82/13
**GRABBED [1]** 44/6
**GRADUATE [6]** 12/22 14/12 31/17 36/3 36/6 41/22
**GRAND [1]** 78/17
**GRATUITOUS [1]** 7/11
**GREAT [1]** 45/3
**GREATER [3]** 14/14 17/20 26/20
**GREATLY [1]** 76/20
**GUESS [6]** 4/3 5/4 60/22 64/12 73/19 86/6
**GUIDANCE [1]** 41/14
**GUIDELINES [1]** 26/8

**H**

**HAD [94]**
**HAD -- [2]** 23/23 57/9
**HAND [2]** 46/12 67/5
**HANDLED [2]** 43/15 70/9
**HANFORD [4]** 81/13 81/17 82/2 82/19
**HAPPEN [7]** 42/23 59/21 63/6 72/16 73/7 73/7 75/4
**HAPPENED [13]** 21/11 46/20 53/2 58/12 58/24 60/6 60/24 61/3 61/24 66/6 70/6 71/6 76/12
**HAPPENS [3]** 24/23 40/1 74/13
**HAPPY [2]** 40/7 40/17
**HARD [6]** 4/4 9/10 14/6 37/13 69/15 73/10
**HARM [3]** 60/20 71/7 72/9
**HARMFUL [1]** 66/4
**HARMLESS [1]** 72/5
**HAS [80]** 4/16 8/21 9/14 10/1 10/2 11/19 12/19 11 14/3 15/1 16/3 16/15 16/25 16/25 17/14 19/15 19/20 20/23 23/12 23/13 24/9 24/20 25/3 25/6 25/6 25/24 25/25 26/19 26/20 27/4 27/7 27/24 27/24 28/3 28/3 28/23 29/7 29/9 29/19 31/1 31/6 37/23 38/13 40/12 40/13 40/20 42/5 44/5 47/3 47/13 52/20 53/4 53/5 55/7 63/5 65/22 67/7 74/5 74/11 76/24 77/17 78/9 78/13 79/3 79/8 79/10 79/16 81/24 82/6 82/18 84/9 84/20 86/1
**HAT [1]** 80/5
**HATE [1]** 33/15
**HATS [2]** 28/8 29/5
**HAVE [270]**
**HAVE -- [1]** 23/9

**HAVE HAD [1]** 14/22
**HAVING [22]** 14/7 20/18 23/6 25/10 26/9 26/22 32/11 33/16 34/5 36/15 47/16 47/18 48/6 53/10 58/5 58/6 60/21 63/8 64/25 68/23 80/8 80/14
**HAZARD [1]** 66/4
**HE [197]**
**HEAD [5]** 31/19 31/25 40/25 70/4 77/8
**HEAR [5]** 61/21 70/18 77/7 83/25 87/15
**HEARD [9]** 29/13 54/3 57/6 68/3 68/23 68/24 69/7 75/8 76/18
**HEARING [9]** 28/4 29/18 33/10 39/14 53/11 59/6 67/11 68/13 77/1
**HEARINGS [4]** 54/8 63/17 71/17 76/1
**HEAVILY [1]** 20/11
**HELD [1]** 66/20
**HELP [4]** 4/11 31/2 46/15 76/20
**HELPFUL [6]** 12/7 29/1 77/16 84/22 86/20 86/21
**HELPS [1]** 45/15
**HER [1]** 81/19
**HERE [58]** 3/14 4/22 6/24 7/21 10/21 11/23 12/3 13/18 15/18 16/1 17/25 20/4 20/13 22/17 22/23 23/16 24/9 24/22 25/5 25/21 27/7 29/6 35/11 35/25 36/7 37/9 39/23 43/6 43/20 46/3 46/12 49/4 50/6 51/12 57/8 59/21 60/11 60/13 61/11 61/24 63/6 64/14 66/6 66/16 69/13 69/23 70/6 70/8 72/6 72/12 75/22 77/21 78/16 83/5 84/9 85/6 85/23 85/24
**HEREBY [1]** 88/5
**HESITATION [2]** 44/3 44/13
**HEY [1]** 54/2
**HIDE [1]** 47/9
**HIGH [1]** 27/8
**HIGHER [2]** 14/10 24/1
**HIGHLY [4]** 12/18 15/6 30/19 31/6
**HIM [29]** 4/16 6/8 6/10 6/13 7/5 9/15 11/18 13/7 13/25 18/14 32/3 35/15 45/11 54/4 54/25 55/23 55/24 54/9 63/20 64/11 64/15 64/22 65/6 65/15 65/16 65/22 65/25 65/20 76/2
**HIMSELF [5]** 14/16 14/24 15/2 34/10 40/9
**HIRED [2]** 9/15 18/5
**HIS [55]** 4/18 5/2 5/6 6/3 6/7 6/22 6/24 6/25 9/18 10/3 11/2 11/3 11/16 12/12 12/17 13/8 13/25 14/10 16/14 16/16 16/17 17/24 18/21 19/3 19/20 20/19 22/4 22/25 24/21 25/13 25/14 25/15 27/4 30/17 31/23 31/25 34/11 37/6 39/14 48/2 49/10 52/8 52/14 55/9 55/10 55/10 55/21 55/22 62/18 65/1 65/2 66/8 67/5 74/9 74/12
**HISTORIC [1]** 8/5
**HISTORICAL [4]** 13/14 14/5 17/16 19/16
**HIT [1]** 79/10
**HOFFMAN [1]** 67/5
**HOLD [2]** 13/4 62/23
**HONG [1]** 44/10
**HONOR [46]** 3/5 3/18 4/7 5/10 13/11 13/23 14/21 15/14 16/2 18/1 20/5 23/11 24/13 26/16 27/18 31/3 35/13 38/7 39/16 40/7 40/24 51/15 54/20 55/2 56/22 62/22 67/7 68/13 69/5 72/21 73/3 74/11 74/22 75/24 76/14 76/16 76/19 76/24 76/24 77/1 79/19 83/5 86/8 86/9 87/12 87/22

## H

**HONOR'S [5]** 11/4 15/18 25/3 77/15 84/7
**HONORABLE [1]** 1/4
**HONORED [1]** 84/9
**HOPE [1]** 6/25
**HOPEFUL [1]** 86/5
**HORN [2]** 52/18 66/4
**HOURS [4]** 18/4 18/4 18/9 49/16
**HOW [24]** 9/17 10/9 10/12 11/5 11/13 12/14 12/15 19/25 30/7 30/18 32/8 36/18 41/7 41/23 42/23 43/15 43/17 43/24 51/4 69/2 77/20 78/5 85/12 87/8
**HOWEVER [2]** 38/11 41/4
**HOWREY [4]** 1/14 3/6 21/19 52/20
**HOWREY'S [1]** 70/4
**HUGE [1]** 7/20
**HUNDREDS [1]** 29/6

## I

**I -- [1]** 41/2
**I'M [2]** 65/25 86/20
**I'VE [2]** 55/14 55/14
**IDEA [6]** 26/7 28/7 40/24 42/12 43/12 83/6
**IDEAS [1]** 19/4
**IDENTIFICATION [2]** 44/3 77/15
**IDENTIFIED [11]** 5/19 8/15 8/24 11/24 20/24 23/1 41/25 44/9 44/14 76/24 77/18
**IDENTIFY [6]** 5/22 44/15 48/24 69/23 71/5 80/11
**IDENTIFYING [1]** 45/9 45/11
**IF [122]**
**ILL-GOTTEN [1]** 65/13
**IMAGINE [1]** 83/19
**IMMEDIATELY [4]** 50/16 61/25 67/2
**IMPACT [1]** 64/24
**IMPINGED [1]** 17/5
**IMPLICATE [1]** 11/14
**IMPLICITLY [1]** 36/21
**IMPLIED [1]** 66/19
**IMPORTANT [17]** 4/13 13/16 15/9 15/25 16/4 16/5 31/5 37/23 54/22 55/2 61/6 61/7 61/7 61/12 68/20 75/3 75/4
**IMPORTANTLY [3]** 31/14 61/18 71/3
**IMPOSSIBLE [3]** 14/8 29/4 42/5
**IN [304]**
**INACCURATE [1]** 70/24
**INADVERTENCE [2]** 50/24 70/15
**INADVERTENT [1]** 50/11
**INAPPROPRIATE [3]** 11/21 27/2 66/5
**INAPPROPRIATELY [1]** 21/17
**INC [1]** 3/7
**INCEPTION [1]** 19/15
**INCLINATION [1]** 66/8
**INCLINED [3]** 20/25 37/17 43/22
**INCLUDED [2]** 11/12 11/14
**INCLUDING [4]** 3/14 13/21 19/24 21/24
**INCONSISTENT [1]** 69/6
**INCORPORATED [3]** 1/5 1/19 19/1
**INCORRECT [1]** 73/19
**INCREMENTAL [1]** 42/10
**INCUMBENT [2]** 34/20 79/13
**INCURRED [1]** 69/17
**INDEED [1]** 36/23
**INDEFINITELY [1]** 39/13
**INDEPENDENT [5]** 10/18 11/10

14/22 41/7 86/10
**INDEPENDENTLY [1]** 14/3
**INDICATE [2]** 73/23 74/24
**INDICATED [3]** 51/1 74/12 74/23
**INDICATING [1]** 60/3
**INDICATION [2]** 50/19 74/16
**INDIVIDUAL [1]** 32/1
**INDIVIDUALS [3]** 31/10 32/3 41/23
**INDUSTRY [1]** 19/15
**INEVITABLE [1]** 11/6
**INEVITABLY [1]** 5/8
**INFER [1]** 75/22
**INFERENCE [1]** 64/10
**INFORM [3]** 27/14 33/21 37/25
**INFORMAL [1]** 86/6
**INFORMATION [97]**
**INFORMATION -- [1]** 34/21 38/22
**INFORMED [3]** 8/2 26/13 35/15
**INFORMS [1]** 4/18
**INFRINGEMENT [3]** 38/16 39/4 79/12
**INHERENT [6]** 46/23 47/17 48/14 49/1 50/1 86/7
**INITIAL [1]** 18/16
**INITIALLY [1]** 18/3
**INITIATE [1]** 44/14
**INITIATING [1]** 63/13
**INJURY [1]** 64/14
**INQUIRED [1]** 73/22
**INQUIRIES [2]** 52/25 69/10
**INQUIRING [1]** 75/10
**INQUIRY [24]** 11/12 11/14 18/20 20/3 20/20 22/20 32/15 42/7 45/8 47/23 48/9 49/6 49/8 49/11 49/21 50/17 51/12 51/13 52/3 53/8 53/20 54/16 58/20 68/6
**INQUIRY -- [2]** 11/12 11/14
**INSIGHT [2]** 35/9 42/14
**INSISTED [1]** 67/16
**INSTANCE [5]** 10/13 33/16 34/5 36/2 40/11
**INSTEAD [2]** 48/8 84/18
**INSTITUTIONALIZED [1]** 77/17
**INSTRUCTION [1]** 7/9
**INSTRUMENTAL [1]** 20/9
**INTEGRITY [1]** 12/3
**INTELLIGENTLY [1]** 43/21
**INTEND [2]** 54/25 58/22
**INTENDED [1]** 57/11
**INTENT [4]** 9/25 38/20 55/23 66/15
**INTENTIONAL [1]** 73/8
**INTENTIONALLY [1]** 47/9
**INTERACTION [2]** 14/23 35/14
**INTEREST [14]** 23/2 26/22 27/8 27/13 27/13 27/20 29/20 34/3 34/11 36/15 52/16 61/16 64/5 77/1
**INTERESTED [1]** 79/3
**INTERESTING [3]** 28/15 31/18 34/8
**INTERESTS [1]** 29/6
**INTERMEDIATE [1]** 37/8
**INTERRUPT [2]** 24/14 31/4
**INTERVENTION [1]** 66/16
**INTERVIEWEE [1]** 43/3
**INTO [16]** 4/19 13/14 21/21 40/25 42/9 42/14 48/23 51/2 51/3 52/9 54/16 63/10 72/1 86/3 86/17 88/9
**INTRUDE [1]** 48/24
**INVALID [1]** 26/22
**INVALIDATE [2]** 10/7 16/6
**INVALIDATING [4]** 9/23 24/22 28/1 30/21
**INVALIDITY [4]** 24/25 27/6 35/23

79/15
**INVENTED [1]** 23/24
**INVENTION [5]** 4/18 5/6 13/18 24/19 24/25
**INVENTOR [1]** 20/9
**INVENTORS [1]** 23/21
**INVITE [1]** 79/25
**INVOLVE [1]** 4/23
**INVOLVED [6]** 10/17 20/11 36/1 69/12 75/3 86/19
**INVOLVEMENT [1]** 36/19
**INVOLVEMENTS [1]** 72/6
**INVOLVING [1]** 20/6
**IP [2]** 1/18 3/13
**IRON [1]** 42/19
**IRONIC [1]** 21/18
**IRONICALLY [1]** 7/7
**IRRELEVANT [1]** 75/22
**IRREPARABLE [2]** 76/11 76/12
**IS [438]**
**IS BUT [1]** 64/12
**IS JONATHAN [1]** 3/22
**ISN'T [3]** 30/4 67/18 68/4
**ISOLATE [1]** 21/23
**ISSUE [48]** 4/13 4/14 4/25 6/20 7/2 7/2 7/21 9/7 10/18 15/10 17/3 20/11 24/24 30/18 31/15 36/13 39/2 39/18 41/20 46/15 47/22 56/1 60/11 63/9 66/17 67/1 70/3 70/12 71/17 73/13 78/1 78/14 80/19 81/4 82/4 82/22 82/23 83/3 83/16 83/19 83/23 83/23 83/24 84/4 84/5 84/23 86/4 87/9
**ISSUE -- [1]** 60/11
**ISSUED [2]** 68/7 75/10
**ISSUES [18]** 4/23 4/24 17/1 21/21 30/14 32/25 38/1 42/19 51/5 63/14 72/23 76/16 79/2 80/24 84/14 85/1 86/25 87/4
**IT [347]**
**IT -- [3]** 5/5 51/3 75/7
**IT'S [4]** 52/15 82/4 82/22 82/23
**IT. [1]** 67/14
**IT. [1]** 67/14
**ITS [9]** 6/20 19/15 23/23 60/3 60/9 61/10 66/15 72/1 87/17
**ITSELF [4]** 24/25 25/1 31/12 68/24

## J

**JANUARY [1]** 81/13
**JAPAN [1]** 78/12
**JENKINS [1]** 39/13
**JEOPARDIZED [1]** 9/3
**JEOPARDIZES [1]** 38/21
**JOINT [3]** 72/21 76/25 85/6
**JONATHAN [2]** 2/7 3/22
**JUDGE [14]** 1/4 39/13 57/7 57/10 57/14 60/22 67/6 67/9 67/17 67/19 68/7 68/18 68/19 70/23
**JUDGMENT [6]** 3/7 27/15 38/1 65/2 66/11 78/19
**JUDICIAL [1]** 38/4
**JULY [16]** 6/12 29/19 56/22 56/24 57/6 62/18 67/6 68/12 68/24 74/11 74/14 74/17 74/19 74/22 78/10 78/14
**JUNCTURE [1]** 85/21
**JUNE [2]** 78/9 78/25
**JUST [57]** 3/24 11/16 13/8 13/23 14/1 14/2 14/9 14/13 17/9 17/10 18/10 24/14 24/23 25/2 25/13 27/6 28/1 31/7 31/21 35/12 36/25 39/16 40/18 40/24 42/5 42/22 44/18 44/24 45/17 46/2 46/3 46/9 49/19 50/22 54/10 56/10 56/17 63/10 65/4 65/22

## J

**JUST... [17]** 68/6 69/16 70/3 70/20 70/21 72/16 72/17 73/22 75/11 75/14 76/18 81/3 82/4 82/21 82/24 83/18 85/7
**JUST -- [1]** 31/7
**JUSTIFIED [1]** 50/5
**JUXTAPOSED [1]** 85/9

## K

**KATE [3]** 1/22 88/4 88/17
**KEEP [2]** 4/4 8/14
**KEEPS [2]** 23/14 41/1
**KELLY [7]** 1/17 3/15 14/21 57/4 67/1 67/18 67/18
**KEN [1]** 3/20
**KENNETH [1]** 2/4
**KEPT [2]** 22/3 65/24
**KICK-START [1]** 38/15
**KICKED [1]** 79/8
**KIND [22]** 23/10 29/1 29/10 34/15 37/3 37/12 40/15 45/25 47/7 47/10 48/12 48/19 50/24 50/25 51/2 60/12 60/17 60/18 72/7 84/21 85/17 86/1
**KINDS [3]** 8/3 36/7 82/25
**KNEW [4]** 28/5 46/8 61/12 61/13
**KNOW [130]**
**KNOWLEDGE [22]** 11/3 12/14 12/19 13/10 14/14 15/24 16/16 19/16 20/19 25/23 28/23 31/23 33/19 34/11 34/12 35/1 37/6 40/9 42/15 46/2 81/20 81/21
**KNOWLEDGE -- [1]** 13/10
**KNOWLEDGEABLE [1]** 44/5
**KNOWN [12]** 12/10 13/1 13/2 13/8 13/17 18/14 19/22 28/3 31/16 33/3 52/12 67/14
**KNOWS [12]** 10/2 14/17 14/18 15/2 15/4 15/4 33/21 34/17 35/7 35/15 35/16 44/19
**KONG [1]** 44/10
**KOWALSKI [44]** 8/21 8/22 11/23 12/21 12/25 13/22 14/2 14/12 14/15 14/16 14/24 14/24 15/2 17/17 17/19 20/18 20/21 25/7 25/22 27/25 28/6 28/9 30/23 31/7 31/9 33/24 34/4 34/9 34/15 34/22 34/25 35/7 35/13 40/8 41/1 41/2 41/5 41/21 45/19 46/8 52/23 52/24 55/18 66/2
**KOWALSKI'S [2]** 12/5 33/5
**KURTH [4]** 59/18 59/25 61/9 61/10

## L

**LABORATORIES [1]** 16/12
**LAID [2]** 67/15 69/19
**LARGE [3]** 16/2 17/19 83/4
**LARGER [1]** 84/5
**LAST [9]** 6/6 8/17 32/17 33/6 59/15 77/9 78/10 78/25 85/25
**LAST AUGUST [1]** 6/6
**LATER [8]** 7/15 10/7 25/19 26/12 38/6 39/9 48/8 57/24
**LATHAM [6]** 59/15 59/23 59/24 59/25 60/1 71/13
**LATHAM'S [1]** 61/9
**LATTER'S [1]** 59/19
**LAW [10]** 8/10 46/6 46/15 48/5 50/9 50/14 60/8 63/23 71/19 75/13
**LEAD [3]** 11/6 38/18 38/18
**LEADING [1]** 8/16
**LEADS [1]** 22/8
**LEARNED [5]** 9/20 59/22 61/24 65/17

81/19
**LEARNING [2]** 59/19 60/9
**LEAST [20]** 8/19 28/7 36/21 43/16 43/17 43/24 44/11 46/11 47/4 47/21 49/20 59/1 68/19 69/1 71/18 78/3 78/6 81/5 84/15 87/6
**LEAVE [2]** 72/14 75/7
**LED [2]** 54/6 54/17
**LEGAL [1]** 48/11
**LESS [8]** 18/9 23/25 24/19 29/9 32/3 56/12 65/2 86/6
**LET [25]** 4/12 10/15 10/16 12/1 17/12 23/2 24/4 32/5 33/11 43/25 45/4 46/14 54/11 58/2 58/18 58/19 59/8 59/8 61/1 62/23 64/6 65/4 65/5 68/1 75/20
**LET'S [3]** 82/4 82/21 82/24
**LETTER [15]** 52/24 55/21 55/22 56/25 57/1 58/23 72/21 74/20 74/21 76/25 79/1 84/18 85/6 85/23 87/9
**LEVEL [2]** 49/13 69/3
**LIFTED [1]** 68/10
**LIGHT [7]** 9/1 11/8 25/12 27/5 27/9 35/22 58/8
**LIKE [27]** 4/25 5/3 18/10 18/15 18/20 24/5 26/10 26/15 31/3 42/25 53/16 60/17 62/3 63/10 69/3 70/16 72/25 73/1 73/9 76/1 77/8 84/12 84/14 84/15 84/19 84/22 84/25
**LIKELIHOOD [1]** 49/18
**LIKELY [8]** 9/19 26/15 31/6 31/20 31/21 35/9 36/8 52/15
**LIMINE [1]** 65/10
**LIMIT [2]** 12/4 83/18
**LIMITED [14]** 1/8 4/17 5/3 5/6 7 11/5 25/22 26/2 33/12 33/17 34/6 37/15 61/1 71/20
**LIMITING [1]** 41/20
**LIMITS [5]** 20/19 22/8 50/23 65/8 82/9
**LINE [1]** 49/2
**LINES [2]** 40/7 86/12
**LISTED [1]** 8/17
**LITERALLY [2]** 51/7 67/11
**LITIGATE [1]** 63/9
**LITIGATION [6]** 29/5 30/8 44/6 63/8 69/18 72/19
**LITTLE [10]** 7/14 20/21 28/11 28/12 43/20 46/7 48/14 50/25 70/19 86/6
**LOCAL [3]** 57/20 79/12 86/10
**LOCATIONS [2]** 79/24 80/17
**LOCK-UP [2]** 16/4 17/9
**LOCKED [1]** 28/1
**LOCKING-UP [1]** 22/12
**LOGIC [7]** 12/8 12/10 30/1 30/8 37/18 38/5 81/22
**LONG [8]** 6/4 16/3 38/12 53/14 64/10 65/8 77/19 85/13
**LONGER [7]** 12/12 16/9 45/21 53/4 55/12 74/9 82/14
**LOOK [8]** 26/15 36/20 46/6 49/9 53/16 59/8 59/9 72/2
**LOOKED [3]** 5/1 49/23 60/17
**LOOKING [5]** 5/12 39/19 41/13 49/22 59/15
**LOOKS [2]** 44/10 69/3
**LORAL [1]** 51/20
**LOSS [4]** 54/7 62/14 63/19 71/23
**LOST [1]** 69/17
**LOT [6]** 4/23 4/24 18/2 33/10 42/2 49/17
**LOUIS [3]** 1/17 3/14 56/13

## M

**MADE [23]** 20/7 21/3 22/23 31/22 33/4 33/5 40/4 41/25 42/8 49/6 51/6 52/25 53/6 57/22 58/20 61/14 61/17 67/14 70/23 73/4 75/12 76/9 86/14
**MAINTAIN [1]** 69/15
**MAKE [25]** 22/2 28/15 32/20 33/8 34/23 39/8 49/21 51/12 53/19 54/1 54/18 61/21 62/23 65/4 69/10 69/22 70/17 71/11 72/14 75/15 76/9 80/3 80/3 81/8 83/20
**MAKES [5]** 15/13 22/9 36/18 49/8 55/2
**MAKING [10]** 9/2 32/18 41/18 49/10 53/16 54/15 54/19 58/13 79/25 80/16
**MANAGEMENT [6]** 31/1 38/13 38/14 79/7 79/8 86/11
**MANY [12]** 6/4 20/9 20/22 41/23 66/12 76/7 77/20 78/5 80/17 80/17 81/22 86/25
**MAP [1]** 86/23
**MARCH [4]** 1/11 3/1 39/11 88/18
**MAREE [3]** 1/22 88/4 88/17
**MARGINAL [1]** 62/9
**MARKED [1]** 29/17
**MARKER [1]** 69/19
**MASTER [6]** 41/10 42/8 42/20 44/4 44/13 45/7
**MATERIAL [7]** 15/6 18/2 24/20 31/7 35/21 40/1 40/20
**MATERIALITY [1]** 18/13
**MATERIALS [1]** 18/1
**MATTER [16]** 3/8 3/9 5/23 5/25 7/13 18/4 18/12 18/13 22/2 27/25 30/13 35/10 37/5 50/21 52/17 73/22
**MATTERS [4]** 4/21 28/6 30/6 87/15
**MATURE [1]** 39/9
**MAY [39]** 5/10 9/24 11/1 14/21 25/23 27/14 28/22 29/22 32/19 34/1 34/1 34/17 34/18 35/7 37/13 37/25 38/7 38/18 39/23 40/8 40/12 41/19 45/10 45/12 45/12 45/24 47/5 48/22 54/8 60/12 62/7 63/12 65/3 66/3 71/7 78/13 78/24 80/4 88/13
**MAYBE [17]** 10/1 14/23 17/18 25/21 26/4 37/5 41/14 50/5 52/16 53/3 53/16 54/3 59/10 61/16 65/15 74/22 87/10
**ME [85]** 3/11 3/12 3/22 4/12 4/21 7/1 7/23 9/17 10/15 10/16 12/1 13/24 15/5 17/12 20/25 23/2 23/3 24/4 26/3 26/4 30/21 32/5 33/11 34/12 36/21 37/8 37/12 38/2 41/7 42/7 43/17 43/25 44/22 45/1 45/4 46/3 46/4 46/13 46/14 46/21 47/8 47/16 48/17 48/18 49/2 49/11 49/12 50/6 50/17 53/14 53/15 54/11 58/18 59/5 60/15 62/23 63/9 63/14 64/6 65/4 65/5 67/20 68/1 70/13 70/13 70/16 70/21 71/24 72/12 72/14 74/2 75/5 75/8 75/14 78/7 80/1 84/17 84/22 85/6 85/16 85/22 85/23 87/9 88/8 88/10
**MEAN [20]** 4/2 15/3 16/8 18/24 19/4 23/3 36/20 38/25 40/17 44/9 44/19 59/10 60/12 63/23 65/9 68/21 73/15 82/8 82/10 85/16
**MEANING [2]** 19/5 20/2
**MEANS [1]** 8/18
**MEANT [2]** 13/5 81/10

## M

MEANTIME [2]  56/10 87/15
MECHANISM [2]  34/14 45/2
MECHANISMS [1]  28/25
MEET [1]  71/2
MEET-AND-CONFER [5]  28/17 29/1
42/18 80/24 84/25
MEET-AND-CONFERS [5]  44/2 70/2
77/14 80/14 84/17
MEETING [1]  80/11
MEETING- [1]  83/5
MELLON [2]  14/11 31/20
MENLO [1]  1/15
MENTEE [1]  8/20
MENTION [1]  40/25
MENTIONED [5]  15/11 15/14 18/25
55/19 58/15
MERELY [1]  20/17
MET-AND-CONFERRED [2]  79/4 85/7
METHOD [1]  33/8
MIDDLEFIELD [1]  1/19
MIGHT [18]  28/10 28/11 28/12 28/13
29/14 33/2 34/16 36/18 36/18 39/8
39/16 42/15 44/13 52/10 64/12 73/23
78/7 78/23
MILESTONES [1]  86/22
MILLIONS [1]  29/6
MIND [6]  4/3 8/14 28/2 54/21 55/3
83/13
MINDS [1]  80/11
MINE [2]  35/1 69/21
MINIMIZE [1]  26/8
MINOR [1]  84/3
MINUTES [1]  76/19
MIS-DESIGNATION [1]  82/20
MISCONDUCT [1]  39/21
MISCONSTRUED [1]  70/25
MISLEADING [2]  51/8 70/25
MISREPRESENT [1]  69/9
MISS [14]  22/1 22/11 23/1 27/23
30/17 32/25 54/11 64/9 66/19 68/1
79/10 79/17 80/20 83/2
MISSTATE [1]  56/23
MISSTATED [1]  73/12
MISSTATING [1]  80/1
MISTAKE [2]  55/3 73/4
MISTAKEN [1]  11/1
MISTAKES [1]  73/7
MJJ [3]  1/7 1/7 88/7
MOLLER [4]  1/16 3/11 80/1 80/19
MOMENT [3]  5/1 5/12 18/20
MONSEY [15]  5/14 5/17 6/1 22/15
52/8 57/10 57/18 57/23 58/4 58/6
58/9 58/16 59/7 66/18 67/11
MONSEY'S [1]  6/5
MONTH [2]  32/17 33/6
MONTHS [5]  61/13 73/14 75/2 77/19
84/1
MORE [46]  4/17 13/9 17/12 17/13
17/16 22/15 22/23 23/5 24/5 25/19
25/20 25/23 26/14 28/13 28/19 29/12
31/14 31/20 32/7 36/2 37/3 37/5 38/6
38/6 39/8 39/9 41/19 43/7 43/8 43/20
45/13 46/7 46/8 48/3 50/3 54/4 56/18
61/22 63/12 65/15 71/3 76/20 77/17
80/2 86/6 86/7
MORIN [2]  2/2 3/21
MORNING [1]  32/14
MOST [5]  4/13 43/2 54/22 61/18 73/4
MOTION [7]  38/17 47/16 63/11 65/10
69/15 77/6 87/15
MOTION -- [1]  69/15

MOTIONS [4]  4/9 76/23 84/10 84/12
MOTIVATE [1]  76/20
MOTIVATION [1]  16/3
MOUNTAIN [1]  1/20
MOVE [1]  69/16
MOVED [1]  59/10
MOVING [3]  20/4 72/24 80/18
MR [17]  6/5 14/21 22/15 29/17 32/5
45/16 52/14 57/10 57/21 58/14 58/19
60/5 65/24 66/7 66/25 67/18 67/18
MR BROTHERS [1]  60/5
MR CAMPBELL [1]  52/14
MR DI [1]  66/25
MR. [3]  65/24 67/1 67/5
MR. CAMPBELL [1]  65/24
MR. HOFFMAN [1]  67/5
MR. KELLY [1]  67/1
MS [2]  81/13 81/17
MUCH [14]  11/2 17/15 18/6 22/9
24/1 30/21 31/20 33/18 39/2 48/24
50/7 50/8 53/16 82/17
MULTIPLE [8]  14/4 33/15 54/8 73/18
77/13 79/23 79/23 79/24
MULTIPLICITY [2]  63/7 71/16
MULTIPLYING [3]  37/11 41/11 60/21
MUTUAL [1]  29/25
MY [39]  3/11 3/14 4/3 4/11 5/15 6/10
6/17 11/1 16/9 18/18 21/10 22/22
24/14 28/10 28/12 32/13 36/3 39/4
40/6 40/15 40/25 44/12 45/25 46/15
58/17 62/9 68/14 69/14 70/10 71/2
72/20 73/6 73/6 74/8 75/5 75/7 79/25
83/5 88/9
MYSELF [2]  9/6 46/14

## N

NAME [2]  8/17 42/5
NAMELY [1]  48/11
NARROWING [2]  4/9 80/8
NATURE [1]  31/21
NECESSARILY [5]  9/24 11/14 22/7
43/6 67/3
NECESSARY [5]  11/22 22/24 32/20
72/7 85/4
NECESSITY [1]  60/3
NEED [29]  12/4 23/6 23/6 23/10
23/10 23/14 25/20 28/2 33/8 36/21
38/23 40/4 43/7 43/12 43/13 43/18
46/10 56/9 57/5 68/19 71/24 73/9
80/11 83/18 83/20 84/18 85/25 87/1
87/10
NEEDED [2]  17/14 53/4
NEEDS [5]  5/1 9/15 22/22 24/8 39/2
NEGATIVE [3]  14/6 26/25 27/1
NEGOTIATIONS [2]  20/8 79/20
NEUTRAL [1]  41/18
NEVER [8]  1/9 19/10 21/10 25/9 27/1
27/4 52/4 61/8 61/14
NEVERTHELESS [4]  6/9 21/17 24/2
29/11
NEW [1]  83/21
NEXT [2]  1/21 52/16
NO [56]  1/7 1/7 3/3 3/4 4/14 6/23
8/25 9/3 10/8 10/9 13/24 13/24 14/22
16/9 20/16 21/6 21/15 22/4 22/5
23/12 23/21 26/14 31/1 35/17
38/14 38/25 39/12 40/2 42/3 45/20
47/23 49/10 50/22 52/19 52/21 53/4
53/6 55/6 55/11 58/23 68/8 71/7 71/7
71/14 72/6 74/9 78/8 78/9 81/20 82/6
82/14 82/23 83/6 84/11 88/6
NO INVOLVEMENTS [1]  72/6
NOBODY [1]  60/11

NON [1]  20/16
NON-COMPLIANCE [1]  72/2
NON-FACT [1]  20/12
NON-TESTIFYING [3]  16/11 22/4
39/25
NONE [2]  27/2 36/14
NONETHELESS [1]  49/20 68/5
NOR [2]  36/13 57/13
NORTHERN [4]  1/3 1/23 15/13 88/5
NOT [309]
NOT AS [1]  53/16
NOTE [2]  29/15 32/22
NOTED [2]  21/15 79/11
NOTES [5]  15/15 16/7 16/12 36/14
40/3
NOTHING [7]  17/4 25/4 27/23 46/8
50/20 52/4 63/6
NOTICE [16]  52/5 52/19 53/2 54/2
54/4 54/24 55/5 62/12 67/12 70/18
74/5 77/23 77/24 78/11 80/23 84/8
NOTICES [5]  77/10 77/13 77/20 78/4
80/6
NOTIFIED [1]  55/25
NOTIFY [1]  55/24
NOTIFYING [1]  55/23
NOW [25]  4/13 5/3 23/2 25/12 38/6
53/9 55/7 63/8 63/18 63/20 64/21
65/15 65/16 65/17 65/22 66/19 67/22
68/10 69/20 74/7 82/7 82/23 83/12
84/2 86/4
NUB [1]  84/22
NULLIFY [1]  64/15 64/20
NUMBER [13]  12/2 12/4 34/16 34/16
44/20 50/9 50/10 51/21 63/2 63/7
64/13 64/14 71/2
NUSSBAUM [2]  2/5 3/23
NW [1]  2/3

## O

O'BRIEN [1]  70/4
OATH [1]  58/8
OBJECT [2]  62/1 72/4
OBJECTED [5]  29/18 50/16 55/25
57/1 59/25
OBJECTED -- [1]  50/16
OBJECTION [3]  55/6 60/2 74/6
OBJECTIVE [1]  10/5
OBJECTIVELY [1]  51/22
OBLIGATES [1]  63/20
OBSERVATION [1]  83/8
OBTAIN [2]  34/20 56/5
OBTAINED [13]  7/4 8/7 11/2 15/21
16/21 17/4 17/24 34/22 35/4 49/10
56/15 60/12 71/8
OBTAINED -- [1]  34/22
OBTAINING [3]  10/6 60/10 63/3
OBVIATED [2]  54/15 70/11
OBVIOUSLY [9]  18/22 35/8 43/10
44/21 48/20 58/21 68/3 83/10 86/17
OCCASIONALLY [1]  46/19
OCCASIONS [4]  16/25 66/12 73/18
79/6
OCCUR [2]  23/3 70/19
OCCURRED [1]  63/9
OCCURRING [1]  79/10
OCCURS [1]  74/17
ODD [3]  70/19 70/20 75/8
ODDS [3]  67/23 67/24 67/24
OF -- [3]  39/3 51/6 81/9
OF APRIL [1]  52/15
OFF [7]  22/7 28/8 29/4 37/17 50/22
55/20 65/8
OFFENCE [1]  22/13

**O**

**OFFERED [3]** 73/22 80/23 81/3
**OFFERING [1]** 19/6
**OFFERS [1]** 46/1
**OFFICIALLY [2]** 55/14 55/16
**OFTEN [3]** 9/10 73/12 73/20
**OH [3]** 28/9 42/3 73/20
**OHIO [1]** 51/21
**OKAY [7]** 6/13 12/6 56/24 66/18 73/3 87/13 87/21
**OLIVER [2]** 1/18 3/12
**OMELETTE [1]** 64/23
**ON [133]**
**ON -- [1]** 45/5
**ON APRIL [1]** 52/5
**ON AUGUST [2]** 58/12 58/17
**ON DECEMBER [1]** 5/16
**ON JULY [5]** 6/12 57/6 62/18 67/6 68/24
**ON MARCH [1]** 39/11
**ONCE [9]** 25/17 47/2 47/25 51/1 51/12 52/19 56/2 71/18 76/7
**ONE [58]** 6/25 8/18 9/21 11/3 12/2 12/9 12/23 14/3 14/23 15/9 18/24 19/21 21/23 22/19 23/5 23/20 23/24 24/21 26/11 30/18 31/9 31/15 33/7 34/16 38/25 44/20 45/14 45/17 46/13 47/4 47/5 49/5 50/9 51/6 54/4 54/17 55/19 56/11 58/22 60/17 63/2 63/12 64/1 64/11 64/12 64/13 71/2 71/5 72/1 73/5 75/21 78/1 78/12 81/5 84/3 85/8 85/8 85/9
**ONES [1]** 79/23
**ONGOING [2]** 66/1 80/7
**ONLY [24]** 8/14 9/13 10/5 12/9 13/25 15/20 16/20 21/4 28/5 29/15 32/10 33/22 36/4 44/2 44/12 49/16 52/22 56/11 61/20 68/2 73/24 74/4 75/5 75/21
**OPEN [2]** 50/25 71/19
**OPENED [1]** 51/2
**OPINION [4]** 17/15 17/15 19/7 83/10
**OPINIONS [15]** 4/20 5/25 6/2 6/3 6/20 9/14 11/16 15/21 15/24 16/17 16/19 18/8 30/14 30/17 44/18
**OPPORTUNITY [2]** 50/25 69/22
**OPPOSED [1]** 24/25
**OPPOSING [6]** 20/7 53/19 61/20 66/14 70/20 75/9
**OPTION [1]** 26/10
**OR [107]**
**ORAL [1]** 56/11
**ORDER [17]** 26/8 39/13 50/4 62/11 62/13 62/13 63/11 67/21 68/9 68/10 68/11 68/12 68/15 82/13 82/14 87/20
**ORDERED [2]** 26/2 57/14
**ORDERS [2]** 68/16 84/7
**ORDINARY [5]** 13/2 19/5 19/22 20/2 30/18
**ORIGINALLY [2]** 73/16 82/12
**ORTHODOX [7]** 4/17 5/6 9/8 22/3 22/8 37/22 37/22
**OSHINSKY [2]** 2/2 3/21
**OTHER [69]** 3/13 4/23 5/20 8/13 10/8 11/15 11/23 12/11 12/13 12/14 12/15 12/16 13/7 13/12 13/12 13/19 14/2 16/25 17/17 17/25 18/16 19/11 19/14 19/25 20/1 20/23 20/23 21/6 21/23 23/19 24/17 31/9 32/21 33/8 35/4 35/20 36/6 38/2 39/7 40/11 40/22 41/22 43/1 44/22 48/20 49/16 50/15

**OTHERS [12]** 9/12 12/20 13/3 23/16 31/12 34/22 34/25 40/21 45/12 45/19 45/19 46/9
**OTHERWISE [7]** 6/8 26/3 42/9 42/22 52/10 62/19 78/20
**OUGHT [3]** 26/5 37/12 78/21
**OUR [35]** 16/1 28/8 36/13 36/13 38/15 54/20 54/21 55/2 55/23 57/20 59/13 61/25 63/23 63/25 66/22 69/16 69/17 75/19 78/22 79/1 79/11 79/25 80/3 81/19 82/2 82/18 82/19
**OURSELVES [1]** 4/7
**OUT [35]** 6/13 7/8 19/11 27/15 27/20 28/21 33/1 33/2 33/11 39/24 42/19 43/5 43/11 43/16 43/24 43/25 44/21 45/5 46/11 47/18 53/10 53/21 56/18 59/4 60/25 61/2 67/15 75/25 77/21 78/14 79/5 80/25 84/13 84/15 86/23
**OUTLINE [1]** 86/12
**OUTRIGHT [1]** 72/14
**OUTSET [1]** 70/22
**OUTSIDE [1]** 41/3
**OUTSTANDING [1]** 87/5
**OUTWEIGHS [1]** 36/24
**OVER [3]** 79/8 85/12 86/2
**OVERLAP [5]** 15/17 15/19 16/19 40/9 40/22
**OVERLAPPED [1]** 15/23
**OVERLAPS [1]** 16/19
**OVERSAW [1]** 31/11
**OWN [2]** 16/16 24/21

**P**

**PACE [1]** 79/1
**PAGE [3]** 1/21 59/15 63/25
**PAGES [2]** 1/1 67/8
**PAPER [1]** 4/10
**PAPERS [2]** 4/11 7/8
**PARAGRAPHS [1]** 5/14
**PARK [1]** 1/15
**PARLANCE [1]** 8/18
**PART [13]** 16/2 16/2 16/2 22/16 34/3 56/5 57/8 76/13 77/5 78/16 81/2 83/4 85/2
**PARTE [1]** 47/11
**PARTICULAR [7]** 19/21 41/17 46/2 48/10 73/13 81/14 81/15
**PARTICULAR -- [1]** 19/21
**PARTICULARLY [3]** 25/20 44/5 66/4
**PARTIES [7]** 11/4 26/13 37/7 66/16 80/17 82/15 86/2
**PARTIES' [1]** 46/20
**PARTS [1]** 81/10
**PARTY [6]** 10/19 41/12 43/4 61/19 63/13 64/1
**PASS [2]** 70/1 70/1
**PASSED [1]** 56/7
**PAST [3]** 10/2 76/8 77/8
**PATENT [23]** 9/24 10/2 10/8 11/8 11/9 11/11 11/15 16/6 20/10 23/21 23/25 24/18 24/19 27/6 27/10 28/1 30/9 30/20 35/23 39/5 40/21 79/12 86/10
**PATENTED [1]** 24/19
**PATENTEE [1]** 23/20
**PATENTEE'S [1]** 23/23
**PATENTS [4]** 6/20 26/23 30/3 30/10
**PAUL [1]** 51/21
**PDFS [1]** 60/16

**PENDING [3]** 68/15 77/5 78/25
**PEOPLE [14]** 3/13 12/13 12/14 13/2 13/20 14/22 17/8 21/5 31/11 32/1 42/1 44/9 73/6 80/17
**PEOPLE -- [1]** 12/13
**PERCIPIENT [3]** 16/15 24/17 40/1
**PERHAPS [21]** 12/7 18/8 23/4 32/17 36/22 39/5 39/8 41/2 41/16 45/11 46/9 52/10 53/1 53/17 64/17 65/2 68/4 70/24 78/3 78/14 84/17
**PERIOD [2]** 14/10 74/21
**PERMITS [1]** 71/19
**PERMITTED [2]** 10/4 38/16
**PERMITTING [2]** 21/1 64/1
**PERSON [15]** 7/16 8/8 22/7 23/18 24/1 24/20 39/23 44/19 45/7 50/19 56/11 61/2 66/9 83/13 83/16
**PERSON'S [1]** 28/2
**PERSONALLY [1]** 14/20
**PERSONS [2]** 12/12 44/20
**PERSPECTIVE [6]** 12/25 19/16 31/12 53/9 54/21 71/10
**PERSUADED [1]** 64/25
**PHASE [3]** 26/12 26/18 27/2
**PHONE [4]** 54/19 56/12 76/8 87/10
**PHONETIC [1]** 27/13
**PHRASE [2]** 7/24 45/14
**PHRASED [1]** 11/7
**PIECE [1]** 84/20
**PIECES [2]** 15/9 24/22
**PLACE [6]** 13/14 18/16 19/11 50/10 57/19 79/9
**PLACED [2]** 23/12 52/5 54/4
**PLACES [2]** 39/7 49/5
**PLACING [1]** 25/4
**PLAINTIFF [5]** 1/6 1/14 3/7 13/18 16/9
**PLAINTIFF'S [19]** 15/7 18/4 18/25 19/4 23/13 25/5 31/5 31/14 55/4 56/25 57/4 57/9 57/16 57/21 58/7 73/10 73/14 74/21
**PLAINTIFFS [4]** 4/2 16/4 59/17 59/19
**PLAN [7]** 76/3 79/5 85/17 86/17 86/24 87/4 87/6
**PLAN -- [1]** 87/6
**PLAUSIBLE [1]** 37/9
**PLAYING [1]** 49/13
**PLEADINGS [1]** 84/19
**PLEASE [2]** 57/17 80/1
**PLEASED [1]** 83/25
**PM [1]** 3/1
**POINT [47]** 4/18 9/5 9/6 10/21 12/6 14/1 15/10 21/14 23/9 25/16 26/4 26/12 30/24 31/6 31/14 34/8 43/7 43/18 45/4 46/6 46/10 47/17 47/20 48/7 48/9 49/11 50/24 54/17 55/2 59/5 60/5 61/23 64/20 65/23 68/6 68/17 74/25 75/5 75/5 75/7 79/18 83/18 85/5 85/17 87/8 87/14 87/17
**POINT -- [2]** 48/7 75/7
**POINTED [1]** 7/7
**POINTS [1]** 9/4
**POLICE [1]** 28/25
**POLICY [6]** 16/1 17/8 17/22 36/15 54/8 54/9
**POPPED [1]** 40/25
**PORTIONS [1]** 36/5
**POSITION [10]** 6/25 14/25 31/25 32/13 35/13 37/17 50/14 58/25 80/20 82/18
**POSITIONS [1]** 85/8

**P**

POSSESSION [3] 25/15 26/24 57/2
POSSIBILITY [5] 5/2 21/1 23/22 27/17 48/4
POSSIBLE [1] 27/14
POSSIBLE -- [1] 27/14
POSSIBLY [2] 64/19 85/14
POST [1] 2/6
POSTPONING [1] 83/22
POTENTIAL [3] 21/2 29/7 44/3
POWER [1] 46/23
PRACTICE [10] 47/5 47/6 72/13 73/6 73/19 74/7 74/23 75/6 75/13 75/15
PRACTICES [1] 69/7
PRE-DATES [1] 9/19
PRE-DATING [1] 8/5
PRE-DISCLOSURE [1] 34/14
PRE-ESTABLISHED [1] 9/10
PRE-EXISTING [2] 15/24 15/24
PRECISE [1] 17/13
PRECISELY [3] 23/5 25/19 48/25
PRECLUDE [1] 29/21
PRECLUDED [1] 54/15
PRECLUDING [1] 34/10
PREDICATES [1] 85/4
PREFACED [1] 76/6
PREFER [1] 85/22
PREFERABLE [1] 17/10
PREFERENCE [1] 21/10
PREFERRED [1] 48/7
PREJUDICE [2] 64/3 71/14
PREJUDICES [3] 61/3 63/3 71/4
PRELIMINARY [4] 37/2 38/15 79/11 84/13
PREPARE [1] 40/7
PREPARED [2] 47/12 83/7
PREPONDERANCE [1] 46/24
PREPONDERANCE -- [1] 46/24
PRESENT [2] 10/21 57/20
PRESENTATION [1] 31/23
PRESENTED [5] 20/13 24/11 70/4 78/10 87/2
PRESENTED HERE [1] 20/13
PRESENTLY [1] 16/10
PRESUMPTION [1] 50/4
PRETRIAL [1] 82/14
PRETTY [5] 14/15 26/10 28/10 46/20 83/20
PREVENT [1] 21/8
PREVIOUSLY [3] 9/9 59/17 64/1
PRIMARY [2] 16/3 52/8
PRIME [2] 35/10 47/13
PRINCIPAL [2] 12/9 24/21
PRINCIPALLY [1] 45/9
PRIOR [33] 4/18 5/7 5/22 6/21 8/24 9/24 10/19 11/15 12/16 12/17 13/1 13/17 13/17 14/5 15/8 15/9 16/17 17/24 18/14 19/3 19/9 19/20 22/15 24/22 24/24 25/15 27/9 30/1 30/8 33/10 40/11 49/10 64/3
PRIVILEGE [1] 6/12
PRIVILEGED [1] 5/21
PRIVILEGES [2] 7/6 28/18
PRO [1] 88/4
PROBABLY [7] 20/1 38/17 40/25 42/25 43/2 50/21 65/17
PROBLEM [11] 7/15 34/1 36/13 41/17 47/17 49/1 51/11 56/21 57/9 60/7 85/21
PROBLEM IF [1] 7/15
PROCEDURAL [1] 28/25
PROCEDURALLY [1] 43/24

PROCEDURE [1] 15/16
PROCEED [8] 9/1 23/8 43/1 52/15 53/21 67/16 78/13 78/21
PROCEEDED [1] 54/17
PROCEEDING [4] 38/21 58/11 62/3 80/5
PROCEEDINGS [14] 1/12 37/11 37/25 38/11 38/12 38/15 39/9 41/11 60/21 63/7 68/16 71/16 88/6 88/10
PROCEEDS [1] 25/19
PROCESS [5] 5/7 6/21 7/3 29/1 29/9 37/15 37/25 38/3 38/4 44/2 44/15 47/9 48/9 48/17 49/19 51/13 77/17 78/18 86/5
PROCESSES [1] 39/4
PRODUCED [2] 32/24 86/13
PRODUCT [9] 5/20 7/5 48/13 48/21 48/23 60/14 66/23 76/10 81/16
PRODUCTION [4] 79/21 79/25 80/4 80/22
PROFESSIONAL [2] 69/9 70/5
PROFESSOR [4] 14/11 28/10 28/11 31/20
PROFFERED [1] 81/17
PROLONGING [1] 37/10
PROMISES [1] 77/14
PROMPTLY [1] 56/10
PRONG [1] 71/15
PROPER [2] 48/5 81/23
PROPERLY [3] 47/3 66/15 81/24
PROPOSE [4] 6/22 41/2 41/4 86/23
PROPOSED [15] 5/24 6/24 11/2 20/15 29/14 29/16 30/7 30/11 30/22 32/6 35/3 45/21 70/3 79/7 84/8
PROTECT [1] 9/13
PROTECTION [1] 18/16
PROTECTIVE [1] 63/11
PROTEGE [2] 22/25 28/12
PROVE [4] 14/6 25/6 25/9 27/1
PROVIDE [10] 8/22 13/21 15/2 36/10 38/25 42/14 57/15 62/19 67/21 81/24
PROVIDED [5] 11/25 57/11 66/21 67/2 68/13
PROVIDES [1] 20/17
PROVIDING [1] 66/22
PUBLIC [11] 16/1 17/22 26/22 27/7 31/16 31/22 36/15 36/15 54/8 54/9 64/5
PUBLICATIONS [3] 14/1 14/2 14/9
PUBLICLY [1] 28/3
PUBLISHED [2] 48/19 60/16
PULLED [1] 67/11
PURPOSE [1] 45/17
PURPOSES [2] 3/25 33/12
PURSUANT [3] 78/10 79/12 82/18
PURSUED [1] 50/23
PURSUIT [1] 86/18
PUSH [1] 46/6
PUT [16] 4/25 8/9 11/21 18/15 22/7 27/20 28/24 36/16 37/17 53/21 54/2 54/24 64/17 64/21 65/6 65/9
PUTS [1] 65/14
PUTTING [2] 39/14 46/23

**Q**

QUALIFIED [1] 50/19
QUALIFIES [1] 49/22
QUALIFY [3] 34/12 48/10 61/2
QUESTION [29] 4/19 4/21 5/11 8/4 8/9 11/4 17/5 17/13 18/19 29/22 33/21 40/19 41/15 43/20 49/2 50/6 51/11 53/9 56/2 62/9 65/20 65/22 67/19 68/21 69/5 69/12 81/3 81/7

81/9
QUESTIONED [2] 5/6 65/11
QUESTIONING [1] 67/9
QUESTIONS [19] 7/18 8/2 9/21 11/7 11/8 12/1 33/17 34/6 37/3 37/6 43/4 48/16 48/16 51/9 53/13 59/9 65/1 85/3 85/4
QUITE [6] 11/13 34/21 41/22 46/18 64/4 68/24
QUOTE [2] 59/23 66/4

**R**

RAISE [3] 53/13 82/6 82/23
RAISED [3] 31/15 84/1 86/4
RAISES [2] 31/5 55/25
RANK [1] 87/19
RATHER [5] 10/20 26/13 58/20 60/7 62/13
RAVENSWOOD [1] 1/15
RE [1] 8/3
RE-ACQUIRE [1] 72/1
REACTION [1] 42/11
READ [4] 18/1 51/4 67/7 68/2
READING [1] 60/8
REAL [1] 47/23
REALISTIC [1] 29/10
REALIZE [2] 41/5 77/3
REALLY [8] 17/16 33/21 33/22 48/24 61/2 64/13 71/25 81/9
REALM [1] 48/4
REASON [14] 8/12 8/25 10/8 11/19 16/2 17/17 43/16 64/11 65/23 66/20 66/20 75/19 75/22 85/24
REASON -- [1] 75/19
REASONABLE [5] 51/12 51/22 59/7 80/9 83/20
REASONS [2] 27/21 87/16
RECEIVE [7] 6/15 48/11 56/22 58/21 77/11 77/12 77/12
RECEIVED [14] 7/10 7/17 53/7 55/5 55/6 57/23 58/3 58/6 58/15 61/25 66/8 66/17 77/14 78/22
RECEIVING [1] 59/6
RECEPTIVE [1] 65/23
RECITATION [1] 68/23
RECOLLECTION [1] 11/1
RECORD [8] 20/16 22/14 27/23 39/10 42/10 49/22 73/15 88/10
RECOUNTS [1] 5/18
REFER [2] 15/14 81/16
REFEREE [7] 16/25 17/6 26/7 26/10 41/11 43/12 43/14
REFERENCE [1] 36/18
REFERENCED [1] 79/1
REFERENCES [2] 14/4 40/12
REFERENCING [1] 32/25
REFERRED [1] 4/16
REFERRING [1] 14/4
REFUSED [2] 57/18 66/22
REGARD [3] 29/2 51/9 71/9
REGARDING [2] 30/1 81/11
REGARDLESS [1] 63/10
REIMBURSED [2] 55/10 74/8
REITERATE [2] 25/2 26/17
REJECTED [2] 80/24 82/25
REJUVENATE [1] 87/17
RELATE [1] 3/16
RELATED [2] 71/5 81/21
RELATES [1] 4/18
RELATIONSHIP [8] 6/21 51/23 52/12 53/23 53/25 56/2 59/1 87/17
RELATIONSHIPS [1] 22/18
RELATIVELY [1] 49/3

**R**

**RELEVANCE [2]** 30/2 30/10
**RELEVANT [2]** 15/12 30/8
**RELIEF [2]** 4/1 4/2
**RELYING [1]** 14/5
**REMARK [1]** 28/15
**REMARKS [1]** 51/4
**REMEDY [1]** 64/14
**REMOVAL [1]** 88/13
**REPEATED [1]** 57/22
**REPEATEDLY [1]** 6/4
**REPLY [1]** 63/25
**REPORT [8]** 30/22 33/5 41/12 42/23 43/11 43/16 44/25 45/6
**REPORTED [2]** 1/22 88/8
**REPORTER [5]** 1/22 88/3 88/4 88/8 88/17
**REPORTER'S [1]** 88/12
**REPORTS [2]** 30/25 32/9
**REPRESENT [3]** 3/6 3/8 46/18
**REPRESENTATION [1]** 80/3
**REPRESENTED [3]** 42/4 56/7 57/9
**REPRESENTING [1]** 3/21
**REPUTATION [1]** 13/25
**REQUEST [3]** 7/12 76/24 78/13
**REQUESTED [2]** 72/22 78/12
**REQUESTS [3]** 57/22 78/23 78/25
**REQUIRE [1]** 52/18
**REQUIRED [4]** 59/12 75/25 79/14 86/10
**REQUIRES [1]** 5/11
**REQUIRING [1]** 84/7
**RESCHEDULE [1]** 29/24
**RESCIND [2]** 64/20 87/18
**RESCISSION [1]** 65/9
**RESERVES [1]** 52/9
**RESIDENT [1]** 12/19
**RESIDES [1]** 17/21
**RESOLUTION [3]** 59/12 84/16 87/4
**RESOLVE [5]** 70/3 84/24 85/3 86/25 87/8
**RESOLVED [9]** 29/22 59/10 80/16 84/3 84/4 84/16 85/1 85/19 85/19
**RESOLVES [1]** 36/13
**RESPECT [42]** 4/14 4/24 6/20 8/23 8/24 11/5 15/20 17/13 19/20 20/5 20/15 22/8 22/20 28/4 31/23 32/15 34/13 46/22 65/4 71/16 71/23 72/22 73/4 76/15 76/23 77/13 77/15 77/25 78/1 78/15 80/6 80/21 80/22 81/5 81/12 81/20 81/21 82/2 84/7 84/14 86/8 87/5
**RESPECTFULLY [1]** 61/5
**RESPOND [5]** 5/10 11/4 70/20 73/2 79/14
**RESPONDED [1]** 53/3
**RESPONSE [9]** 32/24 53/12 53/13 62/2 62/2 79/16 82/6 82/22 83/3
**RESPONSIBILITY [1]** 70/5
**RESPONSIVE [1]** 78/22
**RESULT [10]** 6/1 11/3 20/11 21/24 30/14 61/9 62/11 70/15 79/9 82/13
**RESULTING [2]** 50/8 62/10
**RETAIN [6]** 41/10 61/19 61/21 65/22 73/10 76/1
**RETAINED [22]** 6/12 6/19 8/21 9/9 12/21 18/3 19/4 22/4 22/25 36/23 41/6 41/24 42/4 49/15 52/22 52/23 53/14 53/20 59/22 61/8 64/2 75/17
**RETAINER [6]** 47/25 48/8 49/7 63/19 64/15 65/12
**RETAINING [3]** 17/8 54/3 61/16

**RETENTION [14]** 8/6 9/12 9/19 15/22 16/17 16/22 17/24 18/15 25/15 47/24 55/21 59/25 64/4 67/12
**REVEAL [6]** 5/8 6/8 7/4 7/9 9/19 10/12
**REVEALING [2]** 5/20 8/6
**REVERSE [1]** 62/11
**REVIEW [1]** 5/23
**REVIEWED [2]** 8/4 10/1
**RICOH [48]** 1/8 3/4 3/4 3/8 3/21 5/13 6/4 6/9 6/14 6/16 6/17 6/25 7/4 7/10 8/3 8/5 9/19 11/19 17/24 21/12 22/12 29/7 29/18 29/19 39/8 50/15 51/22 52/1 52/12 53/24 53/25 56/7 59/23 61/11 62/19 65/3 65/21 67/20 71/25 77/9 78/4 78/9 78/10 78/18 79/9 79/12 87/17 88/7
**RICOH'S [22]** 5/8 7/5 9/2 9/2 9/3 9/24 10/8 10/13 21/9 22/16 30/2 30/10 38/21 47/11 54/7 54/24 55/14 55/23 56/3 56/16 56/17 78/15
**RIFE [1]** 49/4
**RIGHT [30]** 3/10 3/17 3/24 10/11 10/11 17/6 20/4 26/16 32/5 33/11 35/6 45/15 46/10 46/12 46/14 52/1 54/11 58/19 59/4 60/18 62/21 63/18 64/6 67/19 77/7 79/17 83/2 83/24 87/14 87/20
**RISE [2]** 20/10 49/12
**RISES [1]** 69/2
**RISK [9]** 7/20 12/2 13/20 20/20 26/8 36/22 39/8 41/11 46/3
**RISK -- [1]** 7/20
**RISKS [3]** 9/1 24/11 29/3
**RISKY [2]** 49/14 72/12
**ROAD [1]** 1/19
**ROBERT [1]** 41/21
**ROLE [2]** 9/18 36/3
**ROOM [1]** 43/13
**ROUNDS [1]** 78/12
**ROUTINE [1]** 74/7
**RUBIN [2]** 2/5 3/23
**RUGLE [1]** 63/25
**RULE [23]** 9/13 10/24 11/9 15/16 23/13 26/1 36/25 42/1 42/20 42/21 43/14 43/19 43/20 45/5 45/7 47/6 50/3 52/17 69/3 77/11 81/14 82/9 82/18
**RULED [1]** 68/6
**RULES [9]** 15/15 29/23 38/16 66/14 69/10 79/12 79/14 86/11 86/18
**RULING [1]** 65/10

**S**

**SAFE [1]** 28/19
**SAGA [1]** 16/12
**SAID [41]** 6/15 6/24 11/20 15/7 15/18 18/6 25/21 30/4 30/5 30/14 30/17 39/13 42/3 45/11 48/1 50/22 52/14 53/22 55/7 56/3 56/9 58/23 61/25 64/7 65/16 67/9 67/19 68/7 70/22 73/16 73/17 76/5 79/1 81/25 82/1 82/3 82/21 82/24 88/10 88/13
**SAME [13]** 5/24 5/25 30/5 30/6 30/6 35/13 52/25 55/22 55/24 56/25 58/23 58/24 63/14
**SAN [2]** 1/10 2/6
**SANCTIONABLE [2]** 49/25 68/22
**SANCTIONS [5]** 4/25 46/15 49/4 60/21 87/16
**SANDBAGGED [1]** 83/4
**SATISFACTION [1]** 65/21

**SAVE [1]** 85/15
**SAW [1]** 68/19
**SAY [32]** 4/1 4/16 6/24 7/2 8/11 14/8 14/20 26/5 28/9 28/11 34/3 34/11 34/16 36/1 37/14 37/17 39/16 40/10 49/5 50/18 51/1 51/7 58/19 60/12 64/9 64/16 71/1 71/7 75/11 75/13 76/6 82/8
**SAYING [26]** 17/3 18/7 18/10 29/19 31/15 35/1 43/6 43/7 48/21 48/22 52/24 53/5 53/13 57/1 59/8 60/6 61/3 62/16 63/19 66/5 68/18 68/21 74/8 85/6 85/16 85/23
**SAYS [6]** 9/9 34/9 53/18 54/1 60/23 61/19
**SCALE [2]** 43/9 45/11
**SCHEDULE [2]** 84/13 84/16
**SCHEDULED [5]** 31/2 78/8 78/12 78/13 79/7
**SCHEDULING [1]** 84/6
**SCHOLASTIC [1]** 8/18
**SCOPE [11]** 21/15 22/20 23/6 30/22 37/6 45/21 81/11 81/11 84/14 85/3 86/2
**SCORCHED [1]** 29/8
**SEARCHING [2]** 38/5 73/20
**SECOND [7]** 9/5 12/6 46/13 52/1 56/5 58/14 61/12
**SECRET [1]** 10/9
**SECRET HOW [1]** 10/9
**SECRETARY [1]** 72/15
**SECTION [3]** 46/23 68/22 69/3
**SEE [27]** 23/9 26/6 28/20 28/21 30/23 36/23 37/18 42/18 43/17 44/15 45/15 46/3 46/10 48/6 50/7 57/17 58/2 60/13 63/2 63/6 65/18 71/3 72/8 79/15 85/9 87/8 87/10
**SEE -- [1]** 46/3
**SEEING [1]** 27/8
**SEEK [3]** 29/25 66/15 68/10
**SEEKING [3]** 21/19 30/15 60/20
**SEEM [12]** 18/10 26/4 37/8 38/2 46/4 46/21 47/16 48/1 48/17 49/17 70/19 75/8
**SEEMED [1]** 70/19
**SEEMS [28]** 4/21 7/1 18/15 20/25 24/5 26/10 27/2 36/21 37/12 42/7 42/25 44/22 49/11 49/12 49/19 50/6 59/5 63/9 63/14 70/16 70/21 71/24 72/13 72/16 74/6 75/5 75/14 85/15
**SEEN [2]** 40/16 58/5
**SEGA [2]** 15/12 16/18
**SELECTED [1]** 77/18
**SELF-SERVING [2]** 34/2 40/17
**SEND [3]** 57/23 74/20 85/23
**SENDING [1]** 58/20
**SENDS [2]** 55/13 74/7
**SENIOR [2]** 1/18 3/13
**SENSE [4]** 14/21 25/17 39/8 46/20
**SENT [6]** 29/18 52/23 53/10 55/22 56/24 58/23
**SEPARATE [6]** 31/10 32/1 77/23 78/1 78/16 79/6
**SEPTEMBER [1]** 77/9
**SEQUENCE [1]** 75/4
**SEQUENCED [1]** 26/2
**SERIOUS [3]** 21/7 71/25 72/18
**SERVE [1]** 72/15
**SERVED [8]** 47/3 61/15 71/11 74/4 77/9 78/3 79/11 84/9
**SERVICES [3]** 60/4 61/10 62/20
**SERVING [2]** 38/15 75/11

**S**

**SET [13]** 5/13 12/14 14/14 17/20 17/21 18/11 19/15 22/19 26/8 30/24 31/23 40/20 47/16
**SETTING [2]** 22/21 86/5
**SETTLE [1]** 51/25
**SETTLEMENT [3]** 20/8 27/15 38/1
**SEVERAL [5]** 12/11 14/3 26/11 31/8 41/22
**SHADOW [20]** 4/10 11/20 21/20 53/18 54/1 56/1 58/19 59/14 61/8 61/18 62/5 63/2 65/14 67/23 69/11 69/12 72/3 74/3 74/16 76/8
**SHALL [2]** 4/15 68/8
**SHAPIRO [2]** 2/2 3/21
**SHE [4]** 27/24 27/24 81/20 81/21
**SHED [1]** 27/5
**SHOCKED [1]** 28/5
**SHORT [4]** 16/23 48/2 56/12 59/14
**SHORTHAND [4]** 1/22 3/25 88/8 88/17
**SHOULD [41]** 8/12 8/14 8/25 9/2 20/20 21/2 29/12 34/19 34/20 36/24 38/22 45/9 46/4 49/5 49/6 52/2 52/14 52/16 52/19 52/22 59/17 61/17 61/22 63/4 66/13 67/22 69/15 69/16 69/19 69/21 70/9 72/12 72/19 75/12 76/9 82/3 82/20 83/14 83/15 86/17 87/2
**SHOVE [1]** 46/7
**SHOW [3]** 37/13 49/25 61/1
**SHOW -- [1]** 37/13
**SHOWED [1]** 30/4
**SHOWING [24]** 21/3 22/23 24/8 29/12 32/19 32/20 33/4 33/4 33/6 33/8 33/9 34/24 35/2 36/24 37/13 38/23 40/4 42/7 43/8 46/1 46/5 46/5 46/25 83/20
**SHOWING -- [2]** 29/12 37/13
**SHOWN [1]** 32/7
**SIDE [22]** 4/15 20/7 22/19 23/19 24/17 33/18 45/18 49/16 49/22 54/2 55/17 64/2 65/12 66/15 70/14 71/20 72/4 72/5 73/17 74/5 75/11 77/21
**SIDE -- [1]** 24/17
**SIDE'S [2]** 66/14 71/21
**SIDE-SWITCHING [9]** 8/12 20/12 39/20 48/6 48/11 51/18 54/9 63/22 63/24
**SIDES [7]** 21/22 23/19 34/7 39/21 64/25 65/7 74/17
**SIGN [2]** 45/3 55/23
**SIGNALS [1]** 46/12
**SIGNED [11]** 47/25 48/8 49/7 55/20 62/16 62/18 63/19 65/11 67/10 67/13 68/9
**SIGNIFICANT [6]** 9/1 20/14 20/20 21/3 61/23 66/17
**SIGNIFICANTLY [1]** 8/20
**SIGNING [1]** 72/3
**SIGNS [1]** 74/19
**SIMILAR [3]** 20/2 30/21 73/24
**SIMILARLY [1]** 15/4
**SIMON [2]** 1/14 3/6
**SIMPLE [3]** 53/19 54/1 59/24
**SIMPLY [6]** 34/23 42/22 69/19 70/4 72/15 84/9
**SINCE [9]** 10/1 11/7 13/24 19/15 41/24 53/15 78/25 80/2 82/17
**SINGLE [1]** 77/22
**SIT [2]** 25/21 70/20
**SITUATED [1]** 15/4
**SITUATION [1]** 50/12

**SIX [2]** 77/18 79/21
**SKILL [3]** 13/2 19/22 30/19
**SLEET [9]** 57/7 57/10 57/14 60/22 67/6 67/9 67/17 67/19 70/23
**SLIDING [2]** 43/9 45/11
**SLIM [1]** 49/19
**SLOPPY [1]** 72/17
**SLOW [2]** 78/17 79/3
**SMALL [1]** 18/11
**SO [74]** 3/25 5/5 7/10 12/24 13/4 14/6 14/13 15/9 16/3 17/9 17/15 18/2 18/7 19/25 20/20 21/4 22/9 22/18 22/24 22/24 26/24 28/3 28/20 31/12 32/17 32/25 33/1 33/6 33/18 35/17 38/12 39/5 40/25 43/22 44/12 47/12 48/14 49/4 50/7 52/9 55/5 55/19 58/17 61/3 61/23 63/1 64/5 64/13 64/16 66/12 67/23 67/24 67/24 73/12 73/21 74/13 74/15 74/21 75/23 76/2 76/12 79/24 80/5 80/10 80/12 81/7 83/14 83/22 85/9 85/14 86/23 86/25 87/7
**SO-CALLED [1]** 22/8
**SOCRATES [5]** 81/15 81/17 81/21 81/23 81/25
**SOFTWARE [5]** 12/10 12/24 19/13 19/14 19/17
**SOLELY [4]** 6/7 14/3 41/21 45/22
**SOME [94]**
**SOMEBODY [9]** 9/8 36/23 44/21 47/13 49/15 50/15 72/3 75/12 86/1
**SOMEBODY'S [1]** 70/17
**SOMEHOW [6]** 22/12 27/14 28/18 28/19 46/10 68/21
**SOMEONE [3]** 63/5 63/11 87/19
**SOMETHING [27]** 7/2 9/19 10/12 17/3 18/9 19/3 28/1 28/5 32/6 33/7 33/21 37/23 38/5 42/18 43/11 59/3 65/16 65/17 69/3 70/13 70/16 72/18 76/22 78/7 84/4 86/9 86/11
**SOMEWHAT [4]** 49/19 83/1
**SOONER [1]** 32/16
**SORRY [5]** 13/6 36/9 62/8 62/25 86/20
**SORT [25]** 4/3 7/18 18/19 29/12 32/10 34/2 36/7 37/2 37/4 42/24 43/5 47/1 47/17 47/20 48/15 53/5 53/12 54/16 66/20 69/19 71/1 72/3 72/6 85/15 87/6
**SOUGHT [1]** 24/11
**SOUNDS [2]** 30/21 84/14
**SOURCE [2]** 35/5 39/1
**SOURCES [1]** 32/21
**SPACE [1]** 51/20
**SPEAK [10]** 5/23 15/5 16/13 17/22 19/6 19/10 22/25 27/3 40/8 73/21
**SPEAKING [2]** 23/4 23/4
**SPEAKS [1]** 73/15
**SPECIAL [6]** 41/10 42/8 42/20 44/4 44/13 45/7
**SPECIALIST [1]** 12/8
**SPECIFIC [7]** 10/1 11/11 12/24 17/12 35/2 56/19 83/3
**SPECIFICALLY [2]** 5/19 5/22
**SPECIFICITY [1]** 48/25
**SPECULATION [4]** 20/17 27/23 28/4 29/13
**SPEED [1]** 78/19
**SPEND [1]** 18/4
**SPENT [1]** 5/17
**SPLIT [1]** 82/24
**SPOKEN [2]** 20/18 27/24

**SPONTE [1]** 53/12
**SPOT [1]** 17/6
**SQUARELY [1]** 4/21
**STAFF [1]** 4/11
**STAGE [5]** 23/5 25/21 26/6 36/16 39/5
**STAGED [2]** 38/6 38/6
**STAKE [2]** 29/6 29/7
**STALLING [1]** 79/16
**STAND [1]** 65/6
**STANDARD [9]** 39/18 43/6 46/22 50/1 50/2 50/3 50/6 51/17 71/3
**STANDARDS [1]** 37/21
**STANDING [2]** 77/15 84/7
**START [2]** 48/24 49/14
**STARTED [3]** 36/2 47/4 76/8
**STATE [9]** 17/15 42/10 43/18 44/24 54/21 55/2 56/4 56/18 80/13
**STATED [2]** 58/8 87/16
**STATEMENTS [4]** 51/1 51/5 70/23 80/22
**STATES [5]** 1/2 1/23 59/14 79/23 88/5
**STATEWIDE [1]** 31/8
**STATUS [1]** 48/11
**STEMMING [1]** 64/3
**STEMS [1]** 50/9
**STENCIL [1]** 51/19
**STEP [3]** 10/16 35/10 59/24
**STEPPING [2]** 5/12 29/10
**STEPS [4]** 21/7 71/13 71/15 76/9
**STILL [21]** 16/10 16/14 21/11 21/18 24/8 25/23 26/18 35/20 40/19 41/1 50/18 52/11 53/6 59/11 59/13 61/21 68/19 69/1 76/22 77/3 78/21
**STIPULATE [3]** 42/22 43/15 64/18
**STIPULATED [2]** 45/6 71/25
**STIPULATION [2]** 45/3 82/9
**STRAIGHT [1]** 4/5
**STRATEGIC [1]** 66/20
**STRATEGY [2]** 29/8 78/17
**STREET [2]** 2/3 2/6
**STRIKE [2]** 38/17 70/12
**STRONG [2]** 8/12 37/19
**STRONGER [1]** 43/8
**STUDENT [3]** 12/22 14/13 36/3
**STUDENTS [4]** 31/17 31/18 36/6 41/22
**STUDENTS -- [1]** 41/22
**STUFF [4]** 60/19 84/21 86/1 86/3
**SUA [1]** 53/12
**SUB-SECTIONS [2]** 31/8 31/10
**SUB-SYSTEMS [1]** 32/2
**SUB-TOPIC [1]** 81/14
**SUBJECT [12]** 5/23 5/24 6/21 7/13 7/22 16/13 18/13 23/1 30/6 35/16 37/5 44/18
**SUBJECTED [2]** 20/20 29/8
**SUBJECTS [3]** 20/2 46/2 80/12
**SUBMIT [2]** 33/15 84/17
**SUBMITTED [2]** 47/8 76/25
**SUBPOENA [18]** 32/23 33/17 47/2 47/18 50/11 50/11 50/16 53/10 53/11 55/3 55/9 61/15 66/8 70/16 70/18 72/15 73/5 75/10
**SUBPOENA -- [1]** 73/5
**SUBPOENAED [2]** 32/22 37/15
**SUBPOENAS [1]** 80/6
**SUBSEQUENT [1]** 57/3
**SUBSEQUENTLY [3]** 8/7 9/20 55/13
**SUBSET [6]** 12/19 14/25 18/8 25/7 26/19 36/4

**S**

**SUBSTANCE [3]** 6/18 33/19 64/4
**SUBSTANTIAL [7]** 18/11 23/9 63/6 64/3 71/6 72/9 72/18
**SUBSTANTIALLY [2]** 50/5 63/14
**SUBSTANTIVE [9]** 13/24 14/7 25/10 25/11 49/10 54/23 55/1 55/8 76/10
**SUBSTANTIVELY [2]** 60/14 84/23
**SUBVERT [1]** 47/9
**SUCH [11]** 5/11 9/22 10/6 11/23 15/17 20/12 20/20 36/1 40/4 71/13 86/11
**SUFFICIENCY [1]** 81/8
**SUFFICIENT [3]** 34/12 67/18 68/4
**SUFFICIENTLY [1]** 70/1
**SUGGEST [5]** 26/6 34/24 38/22 42/17 48/2
**SUGGESTED [2]** 37/2 46/17
**SUGGESTING [3]** 32/8 36/9 86/9
**SUGGESTION [5]** 21/16 22/11 22/22 38/8 40/2
**SUGGESTS [2]** 25/5 40/7
**SUIT [2]** 23/21 30/10
**SUITE [1]** 2/6
**SUMMARIZED [2]** 67/7 67/8
**SUMMARIZES [1]** 80/20
**SUMMARY [5]** 27/15 37/25 37/25 38/1 76/25
**SUPERIOR [4]** 45/14 45/20 45/23 46/2
**SUPERVISOR [1]** 12/11
**SUPPLY [1]** 17/17
**SUPPORT [3]** 23/12 25/4 36/15
**SUPPORTING [1]** 24/25
**SUPPOSE [2]** 45/15 48/8
**SURE [14]** 5/5 7/20 10/23 22/9 32/7 33/9 35/6 35/7 46/5 50/13 62/23 70/17 71/11 76/10
**SURFACE [2]** 37/3 49/21
**SURPRISE [1]** 81/19
**SURPRISED [1]** 79/15
**SURPRISINGLY [1]** 78/20
**SUSPECT [4]** 12/18 12/18 28/7 46/10
**SWITCH [4]** 21/22 64/25 65/7 74/17
**SWITCHED [2]** 33/19 39/21
**SWITCHING [3]** 22/2 49/22 71/20
**SYNOPSYS [18]** 1/5 1/19 3/3 3/7 3/13 6/19 27/7 62/17 67/12 77/24 78/2 78/17 80/23 81/2 81/14 81/16 88/6 88/7
**SYNTHESIS [4]** 12/8 12/10 30/1 30/8
**SYSTEM [28]** 8/20 8/23 9/23 11/6 11/16 12/23 12/24 15/8 16/16 18/24 19/1 19/2 19/2 19/8 19/9 19/14 19/20 19/25 31/8 31/8 31/11 32/2 81/15 81/18 81/21 81/22 81/24 81/25
**SYSTEMS [11]** 12/15 12/16 13/12 13/12 19/20 19/22 19/25 21/5 30/2 39/3 51/20
**SYSTEMS' [1]** 51/19

**T**

**TAB [1]** 68/14
**TABLE [1]** 45/21
**TACTIC [1]** 79/16
**TACTICS [1]** 83/1
**TAIL [1]** 32/9
**TAINT [1]** 13/20
**TAKE [28]** 4/12 6/22 10/4 10/16 12/6 12/17 14/23 16/14 22/13 23/6 25/13 27/4 28/8 29/4 42/9 43/10 47/7 47/15 56/9 57/5 58/25 59/24 66/12 69/16

71/13 71/15 79/9 86/17
**TAKEN [5]** 18/17 21/7 39/1 66/13 83/7
**TAKING [3]** 8/15 16/24 85/1
**TALK [10]** 28/8 36/3 41/3 41/12 49/9 52/24 58/22 61/19 73/17 87/10
**TALKED [5]** 8/3 44/7 53/15 70/14 75/19
**TALKING [8]** 7/15 27/22 35/25 60/19 75/1 75/2 84/18 86/9
**TALKS [2]** 10/23 16/1
**TARGET [1]** 86/21
**TARGETED [1]** 9/22
**TASK [1]** 44/21
**TECHNICAL [1]** 30/19
**TECHNICALLY [1]** 70/24
**TELEPHONE [7]** 6/4 6/11 53/19 54/2 67/6 85/12 85/14
**TELL [10]** 7/23 26/3 45/1 46/15 46/21 48/18 70/7 70/22 84/21 87/9
**TELLS [1]** 78/7
**TEM [1]** 88/4
**TEND [1]** 86/22
**TENS [2]** 54/7 69/17
**TERESA [2]** 1/16 3/5
**TERM [2]** 9/7 71/1
**TERMINATED [7]** 52/7 53/7 55/14 55/16 59/1 74/12 75/10
**TERMS [14]** 11/11 12/14 13/15 19/9 19/12 19/16 19/24 30/9 30/20 56/14 68/16 72/8 86/18 87/7
**TEST [2]** 54/16 56/1
**TESTIFIED [2]** 6/2 6/19
**TESTIFY [15]** 8/5 10/10 12/20 15/19 33/22 34/12 35/18 37/22 62/18 64/8 64/11 64/16 64/21 65/12 75/20
**TESTIFYING [1]** 80/12
**TESTIMONY [23]** 4/17 5/3 5/6 5/24 6/22 7/3 12/25 15/24 17/11 18/17 22/9 22/24 24/9 25/17 25/18 30/1 30/7 37/22 58/9 62/17 63/20 64/4 72/5
**THAN [28]** 12/13 12/14 17/10 18/9 22/15 22/23 23/25 24/1 24/20 25/20 26/13 26/20 29/3 31/12 32/2 32/4 32/16 32/21 38/6 44/23 46/8 56/12 58/20 60/7 60/15 62/13 65/2
**THANK [9]** 3/17 3/24 4/8 20/5 76/14 80/19 84/5 87/21 87/23
**THAT [832]**
**THAT -- [1]** 41/7
**THAT DR [1]** 14/24
**THAT HAD [1]** 52/6
**THAT HE [1]** 11/19
**THAT PARTICULAR [1]** 48/10
**THAT RETAINER [1]** 64/15
**THAT SHOWING [1]** 35/2
**THAT THE [1]** 47/2
**THAT TYPE [1]** 40/4
**THAT VIEW [1]** 45/25
**THAT WE [1]** 52/20
**THAT YOU [1]** 33/14
**THAT'S [1]** 73/17
**THE -- [2]** 7/23 59/9
**THE DEBATABLE [1]** 47/21
**THE PAST [1]** 77/8
**THEIR [21]** 7/8 7/12 16/6 29/4 30/2 30/10 32/18 41/25 42/15 52/21 57/2 64/15 64/19 70/5 71/10 75/21 79/15 81/11 81/16 82/9 86/23
**THEM [17]** 19/9 21/6 21/6 24/12 28/10 28/13 41/13 42/2 42/15 55/12

55/23 58/16 71/2 72/4 75/20 85/8 85/19
**THEN [58]** 7/18 10/9 18/5 19/21 21/6 28/23 28/24 29/24 31/9 32/11 33/20 37/6 40/10 40/16 41/14 42/15 43/10 43/11 43/14 43/15 43/20 45/1 45/1 45/5 45/22 47/18 47/19 48/5 48/7 48/15 53/12 54/16 54/17 55/18 57/6 58/5 59/10 61/20 61/21 68/15 70/1 72/10 72/16 73/19 75/17 76/2 76/11 77/7 78/1 78/2 78/7 82/24 84/24 85/1 85/11 86/24 87/10 87/19
**THEORETICALLY [1]** 44/19
**THERE [160]**
**THERE -- [2]** 33/2 64/13
**THERE IS [1]** 5/4
**THEREAFTER [1]** 88/8
**THEREBY [2]** 7/5 62/18
**THEREFORE [4]** 49/25 62/12 68/18 68/19
**THESE [43]** 4/1 4/9 5/13 8/3 11/10 12/1 12/11 12/13 12/14 19/4 19/12 20/22 21/5 21/20 22/7 23/8 23/16 24/15 24/16 25/4 25/12 30/21 31/11 32/1 32/3 32/24 32/25 33/3 36/5 36/10 37/7 38/12 46/16 48/19 55/8 71/12 80/24 82/25 83/6 85/18 86/2 87/5 87/15
**THEY [91]**
**THING [19]** 17/25 30/5 31/19 32/10 42/24 47/1 47/7 54/22 54/22 58/24 59/7 68/3 70/14 72/2 72/7 73/9 76/7 85/15 85/25
**THINGS [33]** 4/4 6/24 13/8 15/3 15/20 16/23 18/25 19/12 23/8 26/11 28/2 28/9 28/12 36/1 36/8 37/8 37/11 38/2 47/19 48/1 48/20 59/10 70/8 70/21 72/12 72/12 75/4 77/8 84/19 85/4 85/14 85/18 86/19
**THINK [73]** 4/13 5/1 8/8 9/12 10/8 13/5 13/15 15/7 15/11 15/13 15/25 17/7 17/18 21/12 22/18 24/7 24/15 25/16 25/24 26/5 29/4 29/9 29/11 32/15 33/14 34/10 34/19 34/20 34/21 35/12 35/13 36/13 37/16 37/18 38/11 38/23 39/7 40/18 41/10 43/9 46/4 48/16 49/13 50/8 50/17 50/18 50/21 51/9 51/11 58/3 61/5 61/6 61/20 64/24 67/3 69/5 69/11 71/8 71/13 72/2 72/5 73/15 73/18 76/3 76/9 76/12 76/19 80/16 80/18 84/12 85/22 86/18 87/2
**THINKING [3]** 28/16 54/3 86/16
**THINKS [2]** 40/9 53/3
**THIRD [5]** 41/12 43/4 61/18 63/18 67/19
**THIRD IS [1]** 63/18
**THIS [166]**
**THOMAS [115]**
**THOMAS -- [1]** 11/7
**THOMAS' [15]** 6/6 7/8 8/15 8/20 8/25 10/4 11/15 20/15 21/1 22/21 22/24 32/19 41/22 57/19 58/6
**THOMAS'S [1]** 32/14
**THOSE [46]** 4/21 6/3 6/4 6/18 8/11 9/13 11/12 13/2 13/14 13/14 15/3 15/5 15/20 16/19 18/14 19/8 19/18 22/17 26/12 27/21 28/24 34/14 38/18 40/3 41/23 42/1 42/2 48/16 48/25 51/9 67/14 71/5 72/8 77/13 77/25 78/1 78/24 78/25 79/8 79/10 79/23 80/9 80/23 85/1 85/2 85/9

**T**

**THOUGH [8]** 15/17 17/20 38/4 49/13 55/15 66/4 70/24 84/5
**THOUGHT [9]** 5/19 11/3 33/7 53/10 69/15 69/16 69/21 71/10 76/6
**THOUSANDS [2]** 54/7 69/17
**THREATENED [1]** 79/16
**THREE [12]** 38/13 61/6 61/13 63/17 67/17 71/4 71/17 73/14 75/2 78/3 78/7 79/6
**THROUGH [13]** 4/10 4/11 4/12 5/15 28/17 28/21 33/7 46/16 46/17 52/22 60/21 60/23 70/8
**THROW [1]** 33/11
**TICK [1]** 69/18
**TIME [54]** 3/25 5/18 6/13 6/25 12/12 12/16 12/23 13/13 14/10 14/11 14/13 17/16 18/12 19/11 19/23 19/24 26/12 26/20 32/4 43/24 49/14 52/13 52/16 52/25 53/14 53/15 54/5 54/21 55/10 56/12 57/22 65/18 67/19 69/7 69/7 74/8 81/23 82/1 82/1 82/6 82/8 82/8 82/10 82/13 83/16 83/11 83/14 83/17 83/21 83/22 85/15 87/7 87/21 88/11
**TIME -- [1]** 56/12
**TIMELINE [4]** 85/1 85/19 86/8 86/10
**TIMELINES [2]** 85/18 85/18
**TIMES [3]** 38/13 67/17 86/18
**TIMING [3]** 19/17 74/3 84/6
**TO -- [3]** 13/3 32/18 56/20
**TO AN [1]** 43/19
**TO BILL [1]** 70/4
**TO COURT [2]** 41/12 44/25
**TO DO [1]** 42/19
**TO KNOW [1]** 44/18
**TO TAKE [2]** 25/13 47/7
**TODAY [10]** 3/11 3/15 16/8 25/21 29/13 35/14 44/25 83/7 84/2 84/4
**TODAY -- [1]** 16/8
**TODAY'S [1]** 33/10
**TOGETHER [2]** 4/4 67/11
**TOLD [5]** 10/13 38/17 58/21 73/20 78/23
**TOO [2]** 70/8 77/19
**TOOK [6]** 6/6 35/20 57/19 76/9 81/19 82/2
**TOPIC [2]** 17/14 72/24
**TOPICS [2]** 77/25 86/15
**TOSHIBA [2]** 36/17 39/17
**TOTAL [3]** 82/3 82/5 82/20
**TOUCH [1]** 41/1
**TOUCHE [5]** 59/16 59/20 60/1 60/4 61/8
**TOUGH [1]** 18/2
**TOWARDS [2]** 9/22 37/4
**TRAFFIC [19]** 8/10 11/20 21/20 53/18 54/1 58/19 59/14 61/8 61/18 62/5 63/2 65/14 67/24 69/11 69/12 72/3 74/4 74/16 76/8
**TRANSACTION [1]** 70/11
**TRANSACTIONAL [1]** 63/8
**TRANSCRIBED [1]** 88/9
**TRANSCRIPT [5]** 1/12 58/5 67/7 67/21 88/13
**TRANSCRIPTION [1]** 1/25
**TRANSFER [1]** 82/14
**TRAVEL [2]** 85/13 85/15
**TREAT [1]** 18/20
**TREATED [1]** 42/23
**TRIAL [4]** 9/16 16/22 32/10 60/3
**TRIED [3]** 38/15 56/13 71/11
**TRIGGERED [1]** 47/3

**TRIGGERING [1]** 47/4
**TRIPLE [1]** 63/3
**TROUBLE [2]** 4/6 74/2
**TROUBLED [3]** 70/2 70/6 70/8
**TROUBLING [1]** 69/23
**TRUE [5]** 12/21 24/16 48/17 51/7 88/10
**TRULY [1]** 41/7
**TRUST [1]** 65/15
**TRY [5]** 10/7 12/4 47/10 78/19 85/14
**TRYING [5]** 7/15 35/18 42/2 70/3 71/25
**TURN [2]** 40/16 66/25
**TURNED [1]** 39/24
**TURNS [1]** 86/3
**TWICE [2]** 60/22 67/18
**TWO [24]** 4/9 8/13 8/15 12/4 14/2 19/18 34/16 50/10 58/4 58/7 58/15 62/4 63/7 64/14 67/10 76/23 77/24 78/3 78/6 78/12 78/16 84/1 86/24 86/24
**TWO-PART [1]** 54/16
**TWO-PRONGED [1]** 56/1
**TYPE [9]** 19/13 19/17 27/3 31/18 31/24 39/20 40/4 73/25 81/15
**TYPES [4]** 19/14 39/1 42/14 44/20
**TYPEWRITING [1]** 88/9
**TYPICALLY [1]** 84/19

**U**

**U.S [2]** 79/22 79/24
**ULTIMATE [3]** 33/19 40/19 43/19
**ULTIMATELY [2]** 13/16 82/21
**UN-LEARN [1]** 11/18
**UN-REMEMBER [1]** 11/18
**UNABLE [1]** 34/23
**UNAWARE [1]** 55/4
**UNCOMMON [1]** 73/18
**UNCONTESTED [1]** 56/3
**UNDER [31]** 12/22 14/13 15/21 16/11 16/12 16/18 18/6 22/5 24/11 26/1 32/3 36/25 37/21 38/16 42/19 42/21 43/14 46/22 46/23 48/5 49/25 53/6 58/8 65/13 66/13 68/22 71/21 79/14 82/9 82/15 88/9
**UNDERLYING [9]** 10/17 10/20 20/10 21/13 24/3 24/24 25/14 39/3 39/4
**UNDERSCORE [1]** 75/7
**UNDERSTAND [17]** 4/17 5/5 7/21 7/22 9/4 11/13 30/7 30/20 37/10 38/4 45/8 47/23 50/7 51/5 62/23 71/10 78/16
**UNDERSTANDABLE [1]** 80/10
**UNDERSTANDING [4]** 13/16 16/10 58/17 83/5
**UNDERSTOOD [3]** 19/3 19/23 33/3
**UNDISCLOSED [2]** 32/23 61/14
**UNDOING [2]** 72/8 75/17
**UNDONE [1]** 71/24
**UNDUE [1]** 39/7
**UNEQUIVOCALLY [1]** 53/3
**UNETHICAL [1]** 73/11
**UNFAIRNESS [1]** 36/22
**UNFOLD [1]** 76/8
**UNFOLDING [1]** 47/20
**UNFORTUNATE [4]** 50/11 55/3 73/4 76/1
**UNFORTUNATELY [1]** 65/1
**UNFOUNDED [1]** 60/2
**UNILATERAL [1]** 50/17
**UNIQUE [14]** 19/15 20/17 22/24 28/6 28/23 36/20 38/24 39/24 43/5 43/8 45/10 45/14 45/22 46/1

**UNIQUE -- [1]** 43/5
**UNIQUENESS [1]** 39/18
**UNITED [3]** 1/2 1/23 88/4
**UNLESS [6]** 26/3 27/4 30/9 47/13 50/4 87/19
**UNLIKE [1]** 71/12
**UNLIKELY [1]** 36/6
**UNLOCK [1]** 45/16
**UNREASONABLE [2]** 48/18 49/20
**UNSCRAMBLED [1]** 64/24
**UNSUPPORTED [1]** 22/13
**UNTIL [8]** 21/2 32/7 47/23 48/24 57/18 67/1 78/24 83/16
**UNTRUE [1]** 51/7
**UNTRUTH [1]** 47/14
**UNWORKABLE [1]** 35/12
**UP [21]** 21/21 22/15 28/1 31/16 37/14 38/6 44/6 55/23 56/9 57/5 57/13 59/11 65/23 66/18 68/23 72/3 77/8 78/19 82/5 83/7 86/5
**UPDATE [1]** 72/22
**UPON [9]** 34/20 39/8 45/9 58/13 59/19 78/4 79/13 87/4 88/13
**UPSET [1]** 50/7
**US [22]** 14/8 16/24 21/14 51/2 52/23 55/7 55/25 56/4 56/7 57/11 57/13 57/16 57/23 58/2 58/19 59/8 59/9 61/2 74/13 74/24 75/23 81/24
**USE [2]** 10/7 82/5
**USED [1]** 11/11
**USES [1]** 9/7
**USUAL [1]** 23/7
**USUALLY [3]** 8/18 83/19 83/22

**V**

**VACATION [7]** 55/18 55/19 55/20 55/22 74/14 74/15 74/17
**VACUUM [2]** 23/4 26/14
**VALID [2]** 27/10 48/10
**VALIDITY [8]** 4/20 24/24 27/5 30/2 30/10 35/22 40/20 88/12
**VALUE [4]** 47/8 47/12 47/15 49/20
**VARIANCE [1]** 41/9
**VARIOUS [2]** 38/2 39/1
**VERSUS [2]** 88/7 88/7
**VERY [30]** 6/21 8/11 15/9 15/12 15/13 15/25 16/4 16/5 16/7 18/6 20/10 20/21 21/2 23/21 30/21 31/5 32/24 33/25 38/22 53/21 55/2 55/22 60/23 64/2 72/12 76/7 79/21 80/16 84/22 87/12
**VICE [1]** 60/10
**VIEW [12]** 1/20 9/6 21/12 45/25 45/25 70/10 71/2 72/20 75/18 79/18 82/2 82/19
**VIEWS [2]** 6/3 78/20
**VIOLATE [1]** 28/18
**VIOLATED [1]** 75/13
**VISITED [1]** 79/24
**VOID [1]** 88/13
**VOLUNTARY [1]** 20/7

**W**

**WAGER [1]** 63/16
**WAIT [1]** 87/14
**WAIVE [1]** 82/7
**WAIVED [2]** 62/5 82/24
**WAIVING [1]** 66/23
**WALKER [1]** 41/21
**WANG [8]** 16/12 21/15 21/18 36/17 38/24 39/17 51/20 67/25
**WANT [25]** 8/23 13/4 13/7 24/13 25/13 31/4 31/4 37/23 41/15 41/16

# W

**WANT... [15]** 42/19 43/4 44/18 51/3 56/23 64/11 64/22 70/13 75/12 75/20 83/15 84/10 84/11 85/25 87/20
**WANTED [4]** 26/4 64/19 65/22 74/23
**WANTING [2]** 24/14 74/16
**WANTS [3]** 64/16 64/22 87/17
**WARRANT [1]** 69/2
**WARRANTED [2]** 46/4 47/14
**WAS [230]**
**WASHINGTON [1]** 2/3
**WASTE [1]** 81/22
**WASTED [1]** 82/2
**WATKINS [6]** 59/15 59/23 59/24 59/25 60/1 71/13
**WAY [36]** 4/8 5/18 9/23 10/6 13/24 17/10 21/17 23/8 26/6 28/17 28/20 28/21 33/7 33/14 33/16 37/14 37/15 41/16 41/19 42/6 42/25 43/2 43/2 45/14 48/6 48/17 49/3 49/3 50/14 51/11 56/8 58/22 58/23 71/6 72/18 85/16
**WAYS [5]** 23/4 43/1 47/3 76/7 81/22
**WE [240]**
**WE'LL [1]** 52/15
**WE'RE [1]** 82/5
**WEDNESDAY [3]** 1/11 3/1 88/18
**WEEK [7]** 74/18 74/21 75/1 75/3 75/4 84/10 84/12
**WEEKS [6]** 62/5 86/12 86/14 86/24 86/24 87/1
**WEISSGLASS [2]** 2/7 3/22
**WELL [56]** 3/14 8/3 10/9 10/23 11/16 13/4 13/23 14/17 16/8 16/13 16/16 19/19 23/3 26/5 28/10 28/22 33/3 34/3 34/4 34/8 35/15 36/2 37/25 41/7 45/5 48/18 49/5 49/9 50/18 53/14 54/11 55/25 56/21 58/18 59/8 60/23 61/15 64/6 64/16 65/7 68/15 70/7 75/3 75/16 75/19 76/5 77/5 78/12 81/1 81/11 81/25 82/1 82/11 82/24 83/4 84/3
**WENT [9]** 5/19 40/6 46/16 46/17 55/20 63/10 66/24 74/14 74/14
**WERE [59]** 12/16 13/12 13/13 13/15 15/20 16/10 18/8 18/18 19/8 21/9 21/10 21/21 21/25 22/17 22/18 24/16 28/7 30/5 31/9 31/10 31/13 32/19 36/19 39/19 46/7 46/19 47/2 48/1 48/16 48/19 49/13 50/3 51/6 51/8 52/5 52/19 54/4 54/5 55/4 55/8 57/5 57/17 60/16 60/16 63/3 66/22 67/1 67/14 67/15 67/17 69/6 70/13 70/23 70/23 70/24 72/6 72/12 88/7 88/8
**WHAT [130]**
**WHATEVER [11]** 8/22 33/1 33/2 37/23 51/3 59/1 60/22 69/4 72/19 75/12 82/20
**WHATSOEVER [1]** 20/16
**WHEN [35]** 6/6 6/12 6/15 8/9 9/17 13/15 19/8 22/24 26/12 26/17 27/2 32/7 36/23 39/8 39/9 52/23 55/20 56/17 59/21 59/21 61/14 61/24 63/22 63/24 67/13 67/14 68/11 68/24 73/11 73/15 73/16 74/4 74/22 82/8 86/13
**WHERE [31]** 4/1 9/8 11/22 16/20 16/25 21/20 23/5 24/17 35/15 36/21 37/25 39/25 40/21 42/20 45/1 45/6 49/5 50/3 56/13 57/4 64/17 64/21 65/9 65/14 66/2 71/18 74/11 74/22 75/5 85/9 86/15
**WHETHER [47]** 7/2 7/16 7/16 7/19

14/25 17/3 18/24 19/1 19/7 22/16 26/18 27/4 27/10 28/16 28/21 30/20 32/12 33/4 33/16 37/7 40/19 40/22 42/8 43/5 45/19 46/24 47/22 48/10 49/21 51/7 51/22 53/22 53/23 53/24 55/10 56/2 56/14 61/2 63/10 65/15 65/20 69/6 69/15 70/10 75/13 83/16 83/23
**WHETHER -- [1]** 18/24
**WHICH [51]** 5/15 5/15 6/21 8/2 9/7 9/18 14/2 15/6 17/13 18/5 21/14 23/7 23/16 24/24 26/25 29/17 29/17 32/24 33/18 33/20 34/21 37/3 37/6 38/16 38/18 47/3 50/1 52/12 52/21 53/5 54/15 55/4 55/8 56/10 57/14 58/21 59/16 59/18 60/20 62/11 62/17 66/3 67/7 74/11 77/17 78/6 79/23 81/15 82/19 86/5 86/14
**WHILE [1]** 9/9
**WHITE [2]** 1/14 3/6
**WHO [38]** 3/12 8/18 9/8 9/15 10/17 11/25 13/20 14/9 14/22 17/1 20/7 21/5 21/22 22/25 23/18 23/24 24/20 31/10 32/3 39/20 42/5 42/10 43/3 44/4 44/21 49/15 50/15 53/10 53/20 53/22 54/8 57/21 63/10 65/21 66/9 66/12 66/25 70/4
**WHOLE [3]** 31/19 54/22 68/3
**WHOM [3]** 3/15 42/10 79/22
**WHY [31]** 8/12 9/2 12/2 17/17 20/19 22/23 23/8 32/19 36/23 38/5 38/24 38/25 42/17 44/24 45/15 46/1 54/14 54/14 54/18 54/18 58/24 58/24 59/11 65/18 65/23 65/24 66/20 71/14 84/1 85/5 86/4
**WILL [64]** 3/15 4/23 5/8 6/24 7/4 9/10 9/19 10/1 10/9 10/12 12/6 13/4 13/7 14/1 14/5 14/15 15/3 15/3 15/4 15/5 15/10 16/6 17/19 17/20 19/6 19/10 25/12 25/17 26/18 27/4 27/12 29/24 29/25 35/13 35/17 35/18 35/20 37/17 38/17 38/18 40/21 40/22 43/17 43/23 44/24 45/5 45/5 46/11 46/11 46/21 56/23 62/16 70/7 70/22 70/25 73/21 76/3 77/7 79/25 80/12 85/8 87/14 87/16
**WILLFULNESS [1]** 46/25
**WILLING [3]** 43/13 47/15 63/16
**WISH [1]** 59/15
**WISHING [1]** 61/19
**WITHDRAW [1]** 58/10
**WITHIN [13]** 22/14 32/2 44/25 45/2 48/4 58/4 58/7 79/13 84/8 86/12 86/24 86/24 87/1
**WITHOUT [8]** 5/20 7/20 8/6 13/20 19/6 20/18 45/25 59/6
**WITNESS [15]** 10/17 11/2 11/21 15/19 16/4 16/15 20/12 20/12 21/16 24/17 24/20 30/16 40/1 81/17 83/11
**WITNESSES [12]** 8/24 11/23 11/24 21/6 42/1 77/25 78/2 78/10 81/23 81/25 86/16 87/7
**WONDER [2]** 31/25 41/7
**WONDER -- [1]** 31/25
**WONDERING [1]** 28/16
**WONDERLAND [1]** 51/2
**WORD [1]** 36/20
**WORDS [3]** 38/24 50/15 76/19
**WORK [22]** 5/20 7/5 11/19 12/22 18/6 31/18 36/5 42/4 43/11 43/16 43/25 48/13 48/21 48/23 59/4 60/14 66/23 73/6 76/10 84/13 84/15 86/22

**WORKABLE [1]** 42/16
**WORKED [8]** 12/23 14/17 31/9 36/4 36/6 73/16 79/5 80/25
**WORKING [13]** 5/18 14/10 14/13 18/12 31/10 31/13 32/1 32/3 36/4 54/4 74/13 79/20 82/15
**WORKSHOP [1]** 31/22
**WORLD [2]** 21/5 44/11
**WORTH [1]** 72/19
**WOULD [169]**
**WRAPPED [1]** 21/21
**WRITTEN [1]** 33/17
**WRONG [1]** 64/22

# Y

**YEAR [4]** 22/15 77/10 78/10 78/25
**YEARS [1]** 51/21
**YES [20]** 6/15 6/16 8/1 13/6 18/23 30/6 35/24 36/11 38/9 44/12 45/24 51/16 54/13 55/3 57/6 57/10 57/17 73/1 76/17 81/6 86/16 86/19
**YET [9]** 23/25 30/15 39/1 61/14 67/14 77/11 77/11 77/12 78/22
**YOU [250]**
**YOU'RE [1]** 67/20
**YOU'VE [1]** 48/18
**YOUNGER [1]** 28/13
**YOUR [71]** 3/5 3/18 4/7 5/10 6/11 7/23 9/6 11/4 13/11 13/23 14/20 15/14 15/18 16/2 17/14 18/1 20/5 23/11 24/13 25/3 25/22 26/16 27/14 27/17 28/20 31/3 32/15 35/12 38/7 39/16 40/7 40/24 42/11 51/15 53/11 54/20 55/2 56/21 62/10 62/22 65/13 65/16 67/7 67/21 68/13 69/5 69/20 72/21 73/3 73/10 74/11 74/22 75/24 74/14 76/16 76/19 76/24 76/24 77/1 77/14 79/17 79/19 82/3 83/5 84/7 85/8 86/8 86/9 87/12 87/21 87/21
**YOURSELF [1]** 85/18
**YOURSELVES [1]** 43/11

United States District Court
For the Northern District of California

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYNOPSYS, INC.,

        Plaintiff,

    v.

RICOH CO., LTD.,

        Defendant.

_____/

RICOH CO., LTD.,

        Plaintiff,

    v.

AEROFLEX, et al.,

        Defendants.

_____/

No. C-03-2289 MJJ (EMC)
No. C-03-4669 MJJ (EMC)

**ORDER RE RICOH'S MOTION FOR SANCTIONS REGARDING DR. THOMAS AND AEROFLEX ET AL.'S MOTION REQUESTING COURT ORDER LIFTING RESTRICTIONS IMPOSED BY DELAWARE COURT ON DEPOSITION OF DR. THOMAS (Docket Nos. 67, 68 in No. C-03-4669); AND ORDER CLARIFYING STATUS OF OTHER DISCOVERY MOTIONS (Docket Nos. 19, 22, 24, and 86 in C-03-4669; Docket Nos. 69 and 76 in C-03-2289)**

On February 5, 2004, Judge Jenkins issued an order referring eight discovery motions to this Court. *See* Docket No. 96 in No. C-03-4669. Six of these motions have been withdrawn or otherwise resolved:

    (1)    The parties agreed that three of the motions filed by Ricoh in No. C-03-4669 are not at issue. *See* Docket No. 121 in No. C-03-4669 (addressing motions found at Docket Nos. 19, 22, and 24).

    (2)    The parties agreed that one of the motions filed by Ricoh in No. C-03-4669 is withdrawn. *See* Docket No. 121 in No. C-03-4669 (addressing motion found at Docket No. 86).

United Sta__ District Court
For the Northern District of California

1    (3)    The parties reached agreement with respect to two of the motions in No. C-03-2289 and so

2    withdrew the motions. *See* Docket No. 98 in No. C-03-2289 (addressing motions found at Docket Nos.

3    69 and 76).

4    The last two motions -- more specifically Aeroflex's[1] motion requesting an order lifting restrictions

5    imposed by the Delaware court on the deposition of Dr. Thomas (Docket No. 68 in C-03-4669) and

6    Ricoh's motion for sanctions (Docket No. 67 in No. C-03-4669) -- were heard by this Court on March

7    24, 2004.    At the hearing, the Court ruled as follows.

8    *Aeroflex's motion.*    The Court recommended that the parties come up with an approach to

9    determine whether Dr. Thomas had unique or superior knowledge concerning certain subjects compared,

10   *e.g.*, to Dr. Kowalski and other experts identified by Aeroflex.    The Court proposed several different

11   approaches, including a declaration from Dr. Kowalski stating those topics/subjects on which Aeroflex

12   seeks testimony that he believed Dr. Thomas to have unique or superior knowledge about or a deposition

13   of Dr. Thomas limited to the issue of the scope of his knowledge.    The approach that the parties indicated

14   would be most efficient and effective was that of having a third party (*e.g.*, stipulated to and/or appointed as

15   a special master under Rule 53) who would speak to Dr. Thomas, Dr. Kowalski, and/or others.    That third

16   party would then prepare a report for this Court identifying those areas where Dr. Thomas appears to have

17   unique or superior knowledge.    It was further suggested that, if the report indicates a deposition is

18   warranted because of Dr. Thomas's unique or superior knowledge, a referee might be stipulated to or

19   appointed to preside over the deposition to ensure that confidential information obtained by Dr. Thomas in

20   the course of his consultation with Ricoh would not be disclosed.    The Court ordered the parties to report

21   back within **thirty days** as to whether they were able to agree on such a process and if so what that

22   process would entail and a timeline therefor.

23   *Ricoh's motion.*    Based on the discussion regarding Aeroflex's motion, the issue is whether there

24   are grounds for imposing sanctions pursuant to 28 U.S.C. § 1927 or the Court's inherent power.    While

25   there are steps that counsel for Aeroflex should have taken if only as a matter of good practice -- *e.g.*,

26   immediately contacting counsel for Ricoh in early July 2003 when a consulting relationship with Dr. Thomas

27

28   [1] For purposes of convenience, the Court's use of the term "Aeroflex" refers to all defendants in No.
     C-03-4669 *and* to Synopsys, the declaratory judgment plaintiff in No. C-03-2289.

2

1    was first contemplated -- for the reasons stated on the record, the conduct of counsel for Aeroflex did not

2    rise to the level of bad faith under § 1927 or conduct warranting preclusion under the inherent powers of

3    the Court, which resulted in prejudice to Ricoh. *See Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 436

4    (9th Cir. 1996) (noting that "section 1927 sanctions must be supported by a finding of subjective bad faith,"

5    such as when "an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious

6    claim for the purpose of harassing an opponent") (internal quotation marks omitted); *Advanced*

7    *Cardiovascular Sys. v. Medtronic, Inc.*, 47 U.S.P.Q.2d 1536, at *4 (N.D. Cal. 1998) (discussing

8    inherent power to disqualify experts to protect privileges and to preserve fairness and integrity of judicial

9    proceedings).

10        Ricoh has failed to point to any irreparable prejudice as a result of the conduct of counsel for

11    Aeroflex complained of herein.  For example, based on the Court's review of the documents provided by

12    the parties (including in camera), Dr. Thomas did not share any of Ricoh's substantive confidential

13    information with Aeroflex.[2]  Also, the several proceedings before the Delaware court would more than

14    likely have taken place even if counsel for Aeroflex had immediately notified counsel for Ricoh about the

15    contemplated retention of Dr. Thomas -- *i.e.*, counsel for Ricoh would still have insisted that Aeroflex could

16    not hire Dr. Thomas as an expert and counsel for Aeroflex would still have insisted that Aeroflex could.

17    While Ricoh has suggested that it has suffered prejudice because it has lost the use of Dr. Thomas as an

18    expert (Dr. Thomas's engagement letter with counsel for Aeroflex stated that he would not give testimony

19    adverse to Aeroflex), that prejudice is not irremediable.  That is, the Court could order a complete

20    rescission of the engagement between Dr. Thomas and Aeroflex such that Ricoh, if it so desired, could re-

21    hire Dr. Thomas.  The Court will not consider such relief unless requested by Ricoh.  The Court therefore

22    denies Ricoh's motion for sanctions.

23        In summary, the Court reserves ruling on Docket No. 68 and denies Docket No. 67 (both in No.

24    C-03-4669).  Dockets Nos. 19, 22, 24, and 86 are all denied as moot because they have been withdrawn

---

25

26    [2] Because there was no sharing of Ricoh confidences, disqualification of the Howrey firm as counsel
for Aeroflex is not an appropriate sanction. *See Procter & Gamble Co. v. Haugen*, 183 F.R.D. 571, 574

27    (D. Utah 1998) (noting that "the essential issue in determining whether counsel should be disqualified in a
litigation situation is whether the alleged misconduct taints the lawsuit"; adding that "[t]he court must reject a

28    per se disqualification and requires a showing of actual taint or a substantial likelihood").

1  (all in No. C-03-4669).  In addition, Docket Nos. 69 and 76 are also denied as moot because they have

2  been withdrawn (both in No. C-03-2669).

3

4        IT IS SO ORDERED.

5

6  Dated:  March 25, 2004

7                                                            _____/s/_____
                                                            EDWARD M. CHEN
8                                                            United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 429-2184
E-Mail Address: BrothersK@dsmo.com

March 30, 2004

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Teresa M. Corbin, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025

      Re:   *Ricoh Company, Ltd v. Aeroflex Inc., et al.*
            Our Ref.:  R2180.0171

Dear Terry:

      In light of Judge Chen's order of March 25, 2004, with respect to Dr. Thomas, and the parties' obligation to jointly report to the court within 30 days, Ricoh believes that the ASIC defendants and Aeroflex must promptly identify to Ricoh all experts with whom the ASIC defendants and Synopsys is consulting (regardless of whether those experts have been designated as testifying experts). This information is needed to fully evaluate your need to depose Dr. Thomas in light of the judge's comments. Ricoh also believes that the ASIC defendants and Synopsys should identify at least five potential special master candidates who can conduct the evaluation referenced by the Court. Ricoh will advise you whether it consents to any of those five candidates, and if not, Ricoh will propose its own candidates.

      Please be advised that Ricoh intends to communicate with Dr. Thomas with respect to the Court's order, and to evaluate whether Ricoh may renew its consulting relationship. We understand that the ASIC defendants and Synopsys have no objections to Ricoh's renewed contacts, but please notify us immediately if this is not correct. We further understand that under no circumstances will the ASIC defendants or Synopsys be entitled to take discovery of the subject matter of Ricoh's communications with Dr. Thomas. We note that the ASIC defendants, Synopsys and your firm are still under court order to refrain from communicating, directly or indirectly, with Dr. Thomas.

      We are available to meet and confer with you at a mutually agreeable time to discuss the parties' compliance with the court's order.

                        Sincerely,

                        Kenneth W. Brothers

KWB/edb

1177 Avenue of the Americas • New York, NY 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
www.DicksteinShapiro.com

1750203 v1; 11$GR01!.DOC

Teresa M. Corbin, Esq.
March 30, 2004
Page 2


cc:  Gary Hoffman, Esq.
     Edward A. Meilman, Esq.
     Jeffrey Demain, Esq.



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

CHRISTOPHER L. KELLEY
PARTNER
650.463.8113
kelleyc@howrey.com

April 12, 2004

**VIA FACSIMILE AND U.S. MAIL**

Kenneth W. Brothers
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street NW
Washington, D.C.  20037

Re:    *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.*
       <u>Case No. CV 03-04669 MJJ (EMC)</u>

Dear Ken:

        With regard to Magistrate Chen's instructions regarding Dr. Thomas, we propose the following arrangement:

        By June 11, Defendants will identify any information they have that leads them to believe that Dr. Thomas is reasonably likely to have useful information bearing on the invalidity of Ricoh's patents or the proper construction of terms found within that patent.  Defendants will identify in detail the nature of the subjects on which they would like to depose Dr. Thomas, and any information Defendants wish to submit as to why these subjects may not be in the possession of other witnesses.  By June 25, Ricoh will submit a response providing any basis to believe that the subjects identified by Defendants may, or are likely to, lead to disclosure of privileged communications and/or work product.

                            Very truly yours,

                            Christopher L. Kelley

CLK:gg

cc:    Gary M. Hoffman
       Edward A. Meilman

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
Writer's Direct Dial: (202) 429-2184
E-Mail Address: BrothersK@dsmo.com

April 19, 2004

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025

> Re:  *Ricoh Company, Ltd. v. Aeroflex Inc., et al.*
>      *Synopsys, Inc. v. Ricoh Company Ltd.*
>      Our Ref.: R2180.0171

Dear Chris:

   Your letter of April 12 with respect to Dr. Thomas is disappointing in that it totally ignores what Magistrate Judge Chen told the parties to do.

   Your letter ignores Magistrate Judge Chen's direction during the March 24 hearing that, prior to any deposition of Dr. Thomas, Synopsys and the ASIC defendants must make a showing of how Dr. Thomas' testimony is unique or superior to that of any other witnesses. It does not explain what type of showing that Synopsys or the ASIC defendants might make, such as declarations or other evidence, and you leave unresolved how Ricoh would be able to challenge any such showing. Your letter is silent with respect to the parties' obligation to submit by April 23 a joint proposal with respect to Dr. Thomas and instead seeks to defer any activity until long after that date. Your letter ignores my letter of March 30 to Terry Corbin (and the reminder to you by email on April 6), which requested the identification of your client's experts and proposals with respect to a special master. Your letter also ignores the fact that Synopsys, the ASIC defendants and your firm are precluded by court order from communicating with Dr. Thomas, and apparently assume that the order no longer applies. Finally, your letter proposes a potential deposition of Dr. Thomas on subject matters other than the "historical prior art", the sole justification you gave Judge Chen for possibly still wanting a deposition, and instead proposes questioning Dr. Thomas on his work for Ricoh in analyzing the '432 patent, which was the entire focus of Ricoh's opposition. Thus, your proposal is inconsistent with the Court's comments.

   During my meet and confer on April 13 with Erik Moller and Tom Mavrakakis, I asked for additional explanation of your proposal, but received none. Tom stated that under no circumstances would he disclose the experts with whom the ASIC defendants or Synopsys are consulting. He refused to identify whether, under your proposal, the ASIC defendants or Synopsys would provide any type of

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

Christopher L. Kelley, Esq.
April 19, 2004
Page 2

identification of the areas of information that your consultants do not have knowledge but where Dr. Thomas does have knowledge. He refused to acknowledge that the ASIC defendants and Synopsys had the burden of showing why Dr. Thomas' deposition was necessary. He refused to acknowledge my March 30 letter to Ms. Corbin, and instead demanded that I respond to your proposal. I do not believe that this kind of unilateral demand and refusal to meet and confer in good faith is consistent with Magistrate Judge Chen's directives.

The burden under the Court's order remains upon the ASIC defendants and Synopsys to show why Dr. Thomas' deposition is necessary, and why your clients cannot obtain the same information from their own consultants or other fact witnesses. Any proposal you advance cannot ignore Magistrate Judge Chen's order with respect to a special master or other neutral evaluator, but your April 12 letter does just that. Any proposal you make must take into consideration Ricoh's concerns that any deposition of Dr. Thomas will inevitably lead to the disclosure of Ricoh's work product.

Ricoh reiterates its requests in my March 30 letter and respectfully requests a response consistent with Judge Chen's directions. As we must file a joint report to the Court by this Friday, please provide your response by no later than Wednesday, April 21.

Sincerely,

Kenneth W. Brothers

KWB/edb
cc:   Gary Hoffman, Esq.
      Edward A. Meilman, Esq.
      Jeffrey Demain, Esq.