DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

August 11, 2005

VIA E-FILING AND HAND DELIVERY

Magistrate Judge Edward M. Chen
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    Ricoh Co., Ltd. v. Aeroflex, et al. – No. C-03-4669 MJJ (EMC)
       Synopsys, Inc., v. Ricoh Co., Ltd. – No. C03-2289 MJJ (EMC)

Dear Magistrate Judge Chen:

We represent Ricoh in the above-captioned actions. We understand that discovery matters will be addressed by Your Honor. Pursuant to Your Honor's instructions, Ricoh submits this letter with respect to a discovery dispute, and to request a telephone or in-person hearing.

At your direction, on April 23, 2004, the parties each filed their proposed discovery plans. (Exh. 1; Exh. 2.) As admitted by the Aeroflex Defendants and Synopsys (hereinafter collectively "the Defendants") in the subsequent June 8, 2005 Case Management Conference (CMC) Statement (Exh. 3), the Defendants committed to completing discovery on a number of then outstanding discovery matters by April 30, 2004. The Defendants, however, failed to provide the required discovery, but before their failure could be brought to the attention of the Court, a stay of general discovery was issued on May 4, 2004. The stay was intended to be lifted after the Court issued its claim construction ruling. On April 7, 2005, the Court issued its claim construction ruling, effectively putting the Defendants on notice of the immediate need to provide discovery. By the time the parties filed a Case Management Conference Statement on June 8, 2005, the Defendants had committed to completing the previously outstanding discovery by the end of August 2005. On July 22, 2005, the Court completed its case management conference, and issued a new pretrial and trial schedule (Exh. 4.), allotting only six months for the completion of all fact discovery. Trial is scheduled for July 24, 2006.

There are pending a wide range of discovery requests from Ricoh to the Defendants. Both prior to the submissions of the Discovery Plans filed in 2004, and more recently starting in early June of this year, the parties have had a number of meet and confers with respect to the completion of this long outstanding discovery. (See Summary in Ricoh's letter to Ms. Corbin dated July 27, 2005 (Exh. 5).) The parties conducted a final meet and confer on these issues on August 10, 2005, but too many issues remain unresolved (including the insistence by the Defendants that they desire to further delay in providing discovery), as described below. Most significantly, the Defendants are again engaging in a game of delay. In early June of this year, the

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

Magistrate Judge Chen
August 11, 2005
Page 2

Defendants stated that they need almost three months, until the end of August to provide the discovery previously due in April of 2004.

During the CMC on July 13 and the follow up conference on July 22, Judge Jenkins refused the request by the Defendants to stay discovery and set an aggressive discovery schedule. The Aeroflex Defendants never informed Judge Jenkins that they would not be able to provide discovery on a timely basis and would not be able to live by their commitment to provide the outstanding discovery by the end of August. Instead, they now unilaterally seek to further postpone providing discovery. The Defendants state that they will give their "best efforts" to complete discovery by October 7, 2005, knowing that the discovery is critical to preparation of Ricoh's Final Infringement Contentions (due by the Court-imposed deadline of October 17, 2005). They also refuse to provide discovery on certain topics until after the Court rules on a pending Motion for Summary Judgment, effectively unilaterally imposing the same stay of discovery which they had requested but was denied during the CMC. Ricoh believes that a discovery conference with Your Honor is necessary to avoid any further prejudice to Ricoh's case.

While Ricoh's July 27 letter and the letter of August 4 letter from the Defendants detail the 24 different issues in dispute, the outstanding issues can be categorized as follows. (The parties are unable to reach agreement regarding issues 1, 3-9, 11-20, and 22, but have resolved issues 2, 10, 21, 23 and 24.)

- Whether the Defendants should be allowed to delay until October 2005 the completion of discovery despite having previously committed to Your Honor to do so by April 2004.

- Whether the Defendants should be allowed to delay until October 2005 providing supplementation of long-standing document requests, interrogatories and requests for admission.

- Whether the Defendants should be allowed to delay providing Rule 30(b)(6) witnesses for deposition notices open since the 2004 stay of discovery.

- Whether the Defendants should be allowed to unilaterally refuse damages discovery (e.g., sales and marketing related discovery), especially in view of the fact that Judge Jenkins refused to stay any of the discovery.

- Whether the scope of discovery is limited to only the Synopsys products at issue, or properly includes any relevant evidence, including additional products or tools that are used with the Synopsys products in performing the ASIC design method accused of infringement.

Ricoh's counsel is available for a personal hearing or a conference call at the Court's convenience.

Respectfully,

Gary M. Hoffman

cc:    Teresa Corbin (via PDF)

EXHIBIT 1

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
   & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
   & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
|   Plaintiff, | ) **CASE NO. C-03-2289-MJJ (EMC)** |
| | ) **CASE NO. C-03-4669-MJJ (EMC)** |
|   vs. | ) |
| | ) **DISCOVERY MATTER** |
| AEROFLEX INCORPORATED, et al., | ) |
| | ) |
|   Defendants | ) **RICOH'S DISCOVERY PLAN SUBMITTED** |
| | ) **PURSUANT TO COURT ORDER OF** |
| SYNOPSYS, INC., | ) **MARCH 25, 2004** |
| | ) |
|   Plaintiff, | ) |
| | ) **Date:  None** |
|   vs. | ) **Time:  None** |
| | ) **Courtroom:** |
| RICOH COMPANY, LTD., | ) **Judge:  Magistrate Judge Chen** |
| | ) |
|   Defendant. | ) |
| | ) |

Pursuant to Magistrate Judge Chen's Order of March 25, 2004, plaintiff and counter-defendant Ricoh Company Ltd. ("Ricoh") hereby submits its discovery plan.  Although the parties have been able to resolve many of their differences, at 12:54 pm today, counsel for defendants Aeroflex et al. (the "ASIC defendants") and declaratory judgment plaintiff Synopsys ("Synopsys") advised counsel for Ricoh that they would not agree to a joint submission, and refused to send the final version of their proposed plan to Ricoh for review and comment.

During the March 24 hearing, the Court instructed the parties to

> work out a schedule.  I know that there are some preliminary issues – sounds like with respect to scope and designees – but I would like you all to work out, at least a schedule, for resolution or not.  If you cannot get it resolved by meet-and-confer, you can submit it to me.

3/24/2004 Tr. at 84.

In response to counsel's question of whether the plan should include "a framework for when documents are going to be produced, and blocks of weeks, in which witnesses are going to be made available for deposition, on certain topics," the Court said, "Yes, that is what I was thinking of."  (*Id.* at 85.)  The Court continued:

> In 30 days, I would expect an agreed upon plan, of both resolution of any issues that are currently outstanding with respect to these depositions, and the actual sort of discovery plan – at least by category if not by witnesses, et cetera – some benchmark in terms of time, so we can see how we are doing.  *At that point, if you cannot resolve it, again in that letter, tell me what is at issue, briefly, and then maybe we can talk on the phone and see what we need to do to facilitate that.*

(*Id.* at 87, emphasis added.)  Unfortunately, counsel for the ASIC defendants and Synopsys refused to meet and confer with respect to many of the discovery "issues that are currently outstanding" or to include in a joint discovery plan a list of the discovery issues where the parties are at an impasse.

Last year, Synopsys threatened Ricoh that, if Ricoh continued to press its patent claims against the ASIC defendants, Synopsys would order its counsel (who also represent the ASIC defendants) to fight on every issue and make the litigation as expensive as possible.  Synopsys specifically stated that it would not produce evidence until ordered to do so by the Court.  It appears that Synopsys is substantially following through on that threat.

In this submission, Ricoh attempts to set forth its understanding of the parties' agreements

RICOH'S DISCOVERY PLAN SUBMITTED PURSUANT TO COURT ORDER OF MARCH 25, 2004

and disagreements up to the point that the ASIC defendants and Synopsys broke off negotiations. Ricoh is prepared to participate in a telephone hearing with the Court at any time to address the issues where the parties are at an impasse.

## A. Production of Documents

### 1. Production of documents by April 30

The parties agree in principle that all non-privileged documents (other than e-mails) required to be produced pursuant to Rule 26(a) or responsive to document requests should be produced by no later than April 30, 2004.

There are no disputed issues with respect to the scope of Ricoh's document production.

The parties are an impasse, however, on the refusal of the ASIC defendants and Synopsys to produce several categories of documents requested by Ricoh.[1] These unresolved issues are the exceptions that swallow the rule of the foregoing "agreement" that all documents be produced by April 30. These documents generally fall into the following categories, each of which have been the subject of numerous letters and meet and confer sessions:

(1) Documents in the possession of ASIC defendants Matrox Graphics and Matrox Electronics relating to the design and manufacture of ASICs. These defendants contend that they should not be obligated to produce such documents unless and until the Court denies their Rule 12(c) motion for judgment on the pleadings. Ricoh contends that such stalling makes no sense because the actions of those defendants are inextricably intertwined with the actions of their U.S. subsidiaries, and because the Court has already granted Ricoh leave to file its amended complaint, so even if the motion is granted, those defendants will not be dismissed and production of the documents will be necessary. Moreover, on April 22, 2004, Judge Jenkins denied the ASIC defendants' Rule 12(c) motion. At a meet and confer on April 23, however, counsel for the ASIC defendants refused to commit to withdraw this objection

---

[1] On March 2, 2004, counsel for the ASIC defendants committed to complete their document production by April 2, 2004, with a limited exception of certain documents from AMI. They did not meet this deadline. In addition, they have now changed their position as to what documents they were committed to produce. For instance, counsel for the ASIC defendants indicated in a letter dated March 19, 2004, that documents responsive to requests 11, 13 and 37 would be produced but now refuse such production.

and produce the relevant and responsive documents that they are withholding.

(2) Synopsys and the ASIC defendants have limited the scope of their document production to what they call "Design Compiler products." Ricoh's preliminary infringement contentions specifically name additional Synopsys software products that Ricoh contends the ASIC defendants employ while those defendants practice the process described in the '432 patent. Ricoh contends that Synopsys and the ASIC defendants should provide discovery with respect to all of the products listed in Ricoh's preliminary infringement contentions, but Synopsys and the ASIC defendants have refused.[2]

(3) The ASIC defendants have refused to provide documents with respect to any logic synthesis methods or products other than the Synopsys Design Compiler products. Ricoh contends that it has placed at issue the ASIC defendants' infringement of the '432 patent, regardless of how they actually conduct their infringement.

(4) The ASIC defendants have not sufficiently identified the ASICs they have actually designed and manufactured using either Synopsys products or otherwise. Although they contend that they have identified 63 separate ASICs that allegedly were designed and manufactured with Synopsys' Design Compiler products, they have not provided such a list to Ricoh.

(5) The ASIC defendants' objections to the discovery requests are unreasonable. For example, they object to the definitions of the terms "ASIC Design," "ASIC Product", and "ASIC Method" as vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible information, and incorporate the objection by reference into every response they make. However, counsel for all parties had agreed that the terms "ASIC Design," "ASIC Product", and "ASIC Method" were limited to methods and products made by a process involving computer assisted design with logic synthesis. The ASIC defendants have said that their production of documents are "subject to" these objections, without disclosing whether they are actually withholding documents based upon these and other objections.

(6) The parties cannot agree on when discovery with respect to sales and damages should

_____

[2] Synopsys has made similar objections and limitations in its interrogatory responses. Ricoh believes that the resolution of this issue as it relates to the document production should be equally applicable to the interrogatory responses.

RICOH'S DISCOVERY PLAN SUBMITTED PURSUANT TO COURT ORDER OF MARCH 25, 2004

commence. Judge Jenkins instructed the parties to focus first on claim construction issues. Ricoh has proposed that the defendants produce the requested sales and financial documents within 10 days of the completion of the claim construction hearing (which likely will be in September or October 2004). The ASIC defendants refused this request and also refused to identify an alternative date, instead favoring an indefinite postponement.

(7) Aeroflex has produced a number of CD's that Ricoh cannot read or access.

### 2.    Production of Synopsys' source code

The parties have agreed that some of Synopsys' source code will be produced on May 10, 2004. However, Synopsys has refused to produce the source code for all of the products listed in Ricoh's preliminary infringement contentions and alleged by Ricoh as being employed by the ASIC defendants in carrying out the infringing process.

### 3.    Production of documents pursuant to Rule 33(d)

The parties are at an impasse with respect to the ASIC defendants' production of documents pursuant to Fed. R. Civ. P. 33(d). On May 30, 2003, Ricoh served 10 interrogatories upon the ASIC defendants. In response, the ASIC defendants objected but often generally promised to produce documents pursuant to Rule 33(d). However, none of the ASIC defendants specifically identified those documents by either title or bates number, and Ricoh believes that in most instances no responsive documents have been produced.

### 4.    Production of emails

The parties agree that production of e-mails should be completed by no later than May 31, 2004. Ricoh notes that Synopsys and the ASIC defendants have imposed the same limitations on emails as identified in Section A(1), categories 1-5, above.

### 5.    Production of privilege logs

The parties are at an impasse with respect to the date for production of privilege logs. Ricoh proposes that privilege logs be exchanged by June 7, 2004, *e.g.,* within seven days of the completion of document production. Synopsys and the ASIC defendants propose that privilege logs be exchanged on May 7, 2004, before document production is completed.

The parties are also at an impasse with respect to Ricoh's proposal that communications between Ricoh and its trial counsel not be logged. Ricoh believes that there is no purpose in providing a log of those communications, which relate both to Ricoh's pre-filing investigation as well as its preparation and filing of the complaint. Synopsys and the ASIC defendants insist that all pre-filing communications between Ricoh and its trial counsel be logged.

### 6. Resolution of document discovery issues

The parties cannot agree on a schedule or a process for resolving their document discovery disputes. Ricoh proposes that, consistent with Magistrate Judge Chen's directives, the parties work together, with the Court's assistance as appropriate, to resolve all objections with respect to documents that the parties are seeking pursuant to the currently outstanding discovery requests, by no later than May 15, 2004, and produce by June 7 all documents that have been the subject of objections but that have not specifically been ordered by the Court not to be produced. Synopsys and the ASIC defendants declined to accept this process, but have not proposed an alternative.

### B. Responses to Requests for Admission

Ricoh has responded to all outstanding requests for admissions, and Ricoh is not aware of any outstanding issues with respect to its responses. The parties are at an impasse, however, with respect to the ASIC defendants' responses. For example:

(1) The ASIC defendants have objected to and limited their responses to many of the requests. Some of the requests include objections over issues that that have been resolved. For example, requests 9-19 related to whether the defendants performs certain actions relating to chip design. The ASIC defendants have objected to the term "ASIC method as being incomprehensible...so broad as to be meaningless" in the objections to these requests. This objection is made even though the parties had previously come to an understanding regarding certain terms, including the term "ASIC method."

(2) The ASIC defendants have objected to Requests 9-19 as calling for a claim interpretation and a question of law, when in fact it calls for a question of fact. For example, Request No. 17 seeks an admission of whether the "Defendant performs an ASIC Method that includes generating from a netlist mask data required to produce an integrated circuit having a desired function." No substantive

1    responses have been provided.

2          (3) Some of the Matrox defendants should amend their responses to Request No. 20, which

3    asks whether "The Court has personal jurisdiction over defendant." Matrox Tech has denied that the

4    court (at the time of the response, a Delaware District Court presided over this case) had personal

5    jurisdiction. However by their own admission, Matrox Tech is a company organized under the laws of

6    Delaware. All defendants acceded the personal jurisdiction of this Court as part of the desire to have

7    this case transferred from Delaware to California. Therefore, if true, the Matrox defendants should

8    supplement their response to Request 20.

9    **C.    Rule 30(b)(6) depositions**

10        **1.    Rule 30(b)(6) discovery of Ricoh**

11        There are no outstanding issues with respect to Ricoh's Rule 30(b)(6) witnesses. Ricoh has

12   responded to every Rule 30(b)(6) deposition notice from either Synopsys or the ASIC defendants. On

13   July 15, 2003, Ricoh produced a corporate witness in response to the ASIC defendants' Rule 30(b)(6)

14   notice. In response to another notice, additional corporate designees are to be deposed during the last

15   week of May 2004 in Japan.

16        **2.    Ricoh's Rule 30(b)(6) notices to the ASIC Defendants**

17        The parties are at an impasse with respect to scheduling and taking the corporate depositions

18   of the ASIC defendants pursuant to Ricoh's September 25, 2003 Rule 30(b)(6) notices. The ASIC

19   defendants have stated that they may produce twenty (20) or more different corporate designees in

20   response to Ricoh's long-pending Rule 30(b)(6) notices. Ricoh has requested that those depositions be

21   completed by September, so follow-up individual depositions may be completed in time for the expert

22   reports, which all parties have agreed should be exchanged in November and December 2004.

23        **a.   Option 1: Identify all witnesses by May 14, 2004**

24        During the hearing on March 24, this Court instructed the parties to identify actual deposition

25   dates "at least by category if not by witness." The burden is on the ASIC defendants to identify those

26   dates. Defendants have refused to do so.

27        In particular, on September 25, 2003, Ricoh served identical Rule 30(b)(6) notices upon each

28   of the ASIC defendants as parties in the *Ricoh v. Aeroflex* litigation. As of April 23, 2004, *none* of the

ASIC defendants have proffered *any* dates for *any* of the 30(b)(6) topics.[3]  Attached as Exhibit 1 is a list of the topics and the status on each topic.

Ricoh proposes that the ASIC defendants identify by May 14 the names of all corporate witnesses, and that the parties cooperate in scheduling the depositions of those witnesses starting in July, after the document production has been accomplished, with completion of the depositions in September. Requiring the ASIC defendants to identify witnesses, topics and deposition dates is consistent with this Court's instructions during the March 24 hearing and this Court's Standing Order, and is the most effective way to schedule and complete these corporate depositions.

### b.  Option 2:  Identify nine witnesses by May 14, and the rest on a rolling basis.

Alternatively, the parties discussed a process by which the ASIC defendants would identify a large number of their corporate designees in May, and provide additional deposition dates n a rolling basis.  On April 19 the ASIC defendants proposed in a draft discovery plan that "AMI and Aeroflex are to provide identification and proposed dates for a first set of approximately two to four witnesses a piece by May 14."  The Matrox defendants would identify its witnesses by May 31.  Counsel for the parties discussed this proposal in some detail at a meet and confer on April 21, but negotiations abruptly ceased when Ricoh proposed changing the "two to four witnesses" per party to the three witnesses per party. Ricoh pointed out that there was likely insufficient time to complete the depositions by September if only six corporate deposition days were identified at a time, as the second round of six would not be completed until August and the third not until October.

The ASIC defendants' proposal unreasonably limits the number of witnesses they will identify for corporate depositions at any given time.  Their proposal indicates that the identification of an the first few witnesses will be made, and only after the first set of deposition are underway will any additional witnesses (or deposition days of the same designees by proposed, which may not occur until 40 days later.  This pace is not sufficient, as the ASIC defendants have predicted that there will be more

---

[3]  On February 3, 2004, ASIC defendants Matrox Tech and Matrox International produced a corporate designee for deposition on topics limited to those parties' since-withdrawn motion for summary judgment, but that deposition was *not* on any of the topics in Ricoh's September 25, 2003 Rule 30(b)(6) deposition notices.

than 20 individuals deposed, some for multiple days. It must be remembered that these witnesses are corporate designees, with provides the ASIC defendants with considerable latitude who to designate and on what topics. There is no undue burden in requiring the ASIC defendants to identify their corporate designees many months after the notices have been served.

If, however, the Court is prepared to entertain a variation of this proposal, following is Ricoh's proposal. Ricoh understands that, with the exception of the initial number of witnesses, the ASIC defendants and Synopsys do not object to the following process:

(1) For purposes of this scheduling, the ASIC defendants are divided into three groups: AMI; Aeroflex and its subsidiary, Aeroflex Colorado Springs, Inc. (collectively "Aeroflex"); and Matrox Graphics, Matrox Electronic Systems, Matrox International and Matrox Tech (collectively "Matrox").

(2) By no later than May 14, AMI, Aeroflex and Matrox will each identify deponents and topics for three deposition days each (e.g., a total of nine deposition dates). These initial deposition dates shall be no more than 45 days in the future (e.g., by June 30), and initially shall be focused upon threshold topics, such as corporate organization, identification and collection of documents, and identification of persons with knowledge. The next topics shall relate to the infringement claims and affirmative defenses. The final topics to be offered shall relate to the issues of marketing, sales and damages.

(3) Within ten (10) days of the completion of a deposition day, the party who was being deposed (e.g., AMI, Aeroflex or Matrox) shall identify another corporate designee, topic(s) and deposition date no more than 30 days in the future (e.g., no later than a total of 40 days after the completion of the prior deposition day).

(4) If the initial proposed deposition date is not acceptable, the parties shall work together in good faith for an alternative date within the same time frame. The parties shall work together to complete the ASIC defendant Rule 30(b)(6) depositions by September 2004.

(5) The parties will also work together to resolve or present before Magistrate Judge Chen any disputes regarding the scope of these particular depositions so that they can be quickly and efficiently resolved.

**D.    Fact Depositions**

In addition to taking Rule 30(b)(6) depositions, Synopsys and the ASIC defendants have already taken three other depositions (Dr. James Davis, Brian Bershader, and Dr. Tom Rhyne); have another deposition set on April 23, 2004 (of Mr. Yamada); and have four others in Japan during the last week of May 2004 (Dr. Kobayashi, Dr. Nakayama, Mr. Takada and Mr. Oka), some of whom are corporate designees of Ricoh.

Ricoh proposes that the parties cooperate in scheduling other fact depositions starting in July (after document production is completed) to the end of fact discovery at locations that are convenient for the witnesses and mutually agreeable to the parties.  Although Synopsys and the ASIC defendants have not requested any other depositions of Ricoh employees, to the extent that they are able to provide advance notice of at least 90 days, Ricoh will inquire whether it is possible to schedule the depositions in the United States and, if so, will reasonably cooperate in the scheduling of those deponents.

**E.    Total Deposition Time**

With respect to the number of hours for deposition, in Delaware, counsel for all of the parties agreed that each side would have 240 hours of deposition testimony from fact witnesses.  Ricoh believes that such a modification of the Federal Rules of Civil Procedure is useful here, and there is no reason to deviate from this prior agreement of counsel. There is no question that additional deposition time needed. Since this agreement was established, the ASIC defendants have identified over thirty (30) people who have relevant factual information in their initial disclosure; another party has been added (Aeroflex Colorado Springs, Inc.); and the ASIC defendants have indicated that they may produce as many as twenty (20) corporate witnesses in response to Ricoh's Rule 30(b)(6) deposition notice to each defendant. Despite the additional party and many witnesses, Ricoh is willing to abide by the prior agreement of counsel.

1

2 Dated: April 23, 2004         Respectfully submitted,

3                            Ricoh Company, Ltd.

4

5                            By: <u>Kenneth W. Brothers</u>

6                            Gary M. Hoffman
7                            Kenneth W. Brothers
                           DICKSTEIN SHAPIRO MORIN &
8                                OSHINSKY LLP
                           2101 L Street NW
9                            Washington, D.C. 20037-1526
                           Telephone: (202) 785-9700
10                          Facsimile: (202) 887-0689

11                            Edward A. Meilman
                           DICKSTEIN SHAPIRO MORIN &
12                              OSHINSKY LLP
                           1177 Avenue of the Americas
13                          New York, New York 10036
                           Telephone: (212) 896-5471
14                          Facsimile: (212) 997-9880

15                          Jeffrey B. Demain, State Bar No. 126715
16                          Jonathan Weissglass, State Bar No. 185008
                         ALTSHULER, BERZON, NUSSBAUM,
17                            RUBIN & DEMAIN
                         177 Post Street, Suite 300
18                          San Francisco, California 94108
                         Phone: (415) 421-7151
19                          Fax: (415) 362-8064

20                          Attorneys for Ricoh Company, Ltd.

21

22

23

24

25

26

27

28

# EXHIBIT 1

## 30(b)(6) Deposition Notices to ASIC Defendants

*Note: On September 25, 2003, Ricoh served substantially identical deposition notices upon each of the ASIC defendants. As of April 23, 2004, no witnesses have been offered for deposition, and only AMI and Aeroflex have responded to the notices. This Exhibit identifies each topic and summarizes the responses of each ASIC defendant. For the purposes of this review, Ricoh has not recited the objections by AMI or Aeroflex that impermissibly purport to limit the scope of the deposition notice.*

1. The organizational structure of [defendant], including, but not limited to those groups, divisions, teams and other organizations having any involvement in [defendant]'s ASIC Method at any time, and the identity of all individuals who can testify about such organization.

| Status of Aeroflex: | Have agreed to produce a witness, but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Have agreed to produce a witness, but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

2. The identification of any business entity that designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], any ASIC Product.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

3. The identification of any business entity that uses the ASIC Method to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], including, but not limited to, the date(s) such steps or other

activity occurred, and, where such step or activity is not performed by [defendant], the person or entity performing such step or activity.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

4. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture any ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], and identification of the individual's activity concerning such involvement.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

5. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in performing an ASIC Method for any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant]; identification of the ASIC Products for which such ASIC Method was performed; and identification of the acts of each individual that contributed to performing the ASIC Method.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh |
|---|---|

| | objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

6. Any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and [defendant].

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

7. Any product, including, but not limited to any software or ASIC Design System product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided to [defendant].

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

8. Any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to [defendant] (or from [defendant] to Synopsys),

including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

9. Any product designed or otherwise made by [defendant], using any ASIC Design System, including, but not limited to, products designed or made using Design Compiler (or any product that includes Design Compiler).

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

10. The identification of any ASIC Design System including, but not limited to, the manufacturer, product name, and version, used by [defendant] to design or otherwise make any product.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |

| Status of Matrox Tech: | Has not agreed to offer a witness. |

11. The identification of any software library, cell library, and database used by [defendant] with any ASIC Design System, including, but not limited to, Design Compiler.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

12. The user interface to any ASIC Design System for designing, making or using ASIC Products, including, but not limited to, the user interface for designing, making or using products designed or made using Design Compiler (or any product that includes Design Compiler), and the forms and methods of user input used by or on behalf of [defendant] (whether such input is Verilog, VHDL, HDL, or any other form of input).

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

13. The output or netlist (and use thereof) of ASIC Design Systems used by or on behalf of [defendant] to fabricate any product designed or otherwise made, using any ASIC Design System, including, but not limited to, the output or netlist used to fabricate any ASIC Products designed or otherwise made using Design Compiler (or any product that includes Design Compiler).

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh |

| | objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

14. The identification of the steps or other activities making up the ASIC Method used to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by [defendant], the person or entity performing such step or activity. Such steps or other activities include, but are not limited to, the use of ASIC Design Systems in: defining a library of available hardware cells; selecting hardware cells based on input specifications; and generating an output or netlist of hardware cells needed to achieve the intended function of an ASIC Product.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

15. Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], including, but not limited to the identification for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by [defendant] (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |

| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

16. The use by [defendant] of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS'), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by [defendant].

| Status of Aeroflex: | Will not produce a witness. |
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

17. The cost savings (actual or potential) by [defendant] as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

| Status of Aeroflex: | Will not produce a witness. |
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

18. The marketing of any product designed, sold, or otherwise made by [defendant] using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

| Status of Aeroflex: | Will not produce a witness. |
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

19. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in [defendant]'s marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each [defendant] product.

| Status of Aeroflex: | Will not produce a witness. |
|---|---|
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

20. The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

| Status of Aeroflex: | Will defer the production of a witness. |
|---|---|
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

21. The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by [defendant] of each of [defendant]'s ASIC Products.

| Status of Aeroflex: | Will defer the production of a witness. |
|---|---|
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

22. The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by [defendant] of [defendant]'s ASIC Products, including how [defendant] defines each item of cost deducted from gross revenue to calculate gross and net profits.

| Status of Aeroflex: | Will defer the production of a witness. |
|---|---|
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |

| Status of Matrox Tech: | Has not agreed to offer a witness. |

23. The sales by [defendant] of each ASIC Product produced by an ASIC Method.

| Status of Aeroflex: | Will defer the production of a witness. |
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

24. All facts related to any infringement or non-infringement of the patent-in-suit.

| Status of Aeroflex: | Will provide discovery on its non-infringement contentions at an appropriate time in accordance with a schedule set by the court. |
| Status of AMI: | Will provide discovery on its non-infringement contentions at an appropriate time in accordance with a schedule set by the court. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

25. All facts related to the validity or invalidity of the patent-in-suit.

| Status of Aeroflex: | Will provide discovery on its invalidity contentions at an appropriate time in accordance with a schedule set by the court. |
| Status of AMI: | Will provide discovery on its invalidity contentions at an appropriate time in accordance with a schedule set by the court. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

26. All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

| Status of Aeroflex: | Will provide discovery on its enforceability contentions at an appropriate time in accordance with a schedule set by the court. |
| Status of AMI: | Will provide discovery on its enforceability contentions at an appropriate time in accordance with a schedule set by the court. |

| Status of Matrox Graphics: | Has not agreed to offer a witness. |
|---|---|
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

27. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

| Status of Aeroflex: | Is not aware of anyone |
|---|---|
| Status of AMI: | Is not aware of anyone |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

28. Knowledge by [defendant] of the patent-in-suit prior to January 20, 2003.

| Status of all ASIC defendants: | Stated there is no such knowledge |
|---|---|

29. The identification of each individual from [defendant] (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

| Status of all ASIC defendants: | No response required based on their response to #28. |
|---|---|

30. Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

| Status of Aeroflex: | Is not aware of anyone |
|---|---|
| Status of AMI: | Is not aware of anyone |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix | Has not agreed to offer a witness. |

| International: | |
|---|---|
| Status of Matrox Tech: | Has not agreed to offer a witness. |

31. Any communications within [defendant] concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

32. The identification of all documents concerning all materials presented to any of [defendant]'s personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

33. Any communications between [defendant] and any other defendant concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

34. Any communications between [defendant] and Synopsys concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |

| Status of Matrox Electronics: | Has not agreed to offer a witness. |
|---|---|
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

35. Any communications between [defendant] and any person or entity other that the other defendants and Synopsys concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

EXHIBIT 2

1   Teresa M. Corbin (SBN 132360)
    Christopher Kelley (SBN 166608)
2   Erik K. Moller (SBN 147674)
    HOWREY SIMON ARNOLD & WHITE, LLP
3   301 Ravenswood Avenue
    Menlo Park, California 94025
4   Telephone: (650) 463-8100
    Facsimile: (650) 463-8400
5
    Attorneys for Plaintiff SYNOPSYS, INC. and
6   Defendants AEROFLEX INCORPORATED, ET AL.

7

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  SYNOPSYS, INC.,                    ) Case No. C03-02289 MJJ (EMC)
                                       )
13         Plaintiff,                  ) Case No. CV 03-04669 MJJ (EMC)
                                       )
14  vs.                                ) DISCOVERY MATTER
                                       )
15  RICOH COMPANY, LTD.,               )
           Defendant.                  )
16                                     )
    _____)
17  RICOH COMPANY, LTD.,               ) **SUBMISSION OF AEROFLEX, AMI,**
                                       ) **MATROX COMPANIES AND SYNOPSYS**
18         Plaintiffs,                 ) **TO MAGISTRATE JUDGE CHEN**
                                       ) **REGARDING A DISCOVERY PLAN**
19  v.                                 )
                                       )
20  AEROFLEX INCORPORATED, AMI         )
    SEMICONDUCTOR, INC., MATROX        )
21  ELECTRONIC SYSTESM, LTD., MATROX   )
    GRAPHICS, INC., MATROX             )
22  INTERNATIONAL CORP., and MATROX    )
    TECH, INC.,                        )
23                                     )
           Defendants.                 )
24  _____)

25

26         Pursuant to instructions from Magistrate Judge Chen during a March 24 hearing, the parties

27  met and conferred on several occasions to try to find common ground on a schedule for discovery.

28  Certain agreements, outlined below, were reached.   The parties were, however, unable to agree on the

**HOWREY**
**SIMON**
**ARNOLD &**
**WHITE**
Submission of Aeroflex, AMI, Matrox Companies and Synopsys to          1
Magistrate Judge Chen Regarding A Discovery Plan
Case Nos. C03-02289 MJJ (EMC) and CV03-04669 MJJ (EMC)

1  form of a joint submission to the Court. Ricoh insisted, improperly in our view, on inserting

2  complaints about the scope of Defendants' document production efforts and responses to requests for

3  admission into what was supposed to be a joint submission concerning scheduling.

4       Despite the Defendants' repeated argument that the Court was seeking a plan that contained the

5  parties' *agreements* on discovery, Ricoh's proposed "Discovery Plan"[1] is largely a motion to compel

6  on a large number of discovery issues without a proper meet and confer process or briefing. A review

7  of the transcript from the Court's March 24, 2004 hearing relevant to this matter shows that the Court

8  was in fact responding to the Ricoh's lengthy complaint regarding its Rule 30(b)(6) depositions only:

9
10
11

> In 30 days, I would expect an agreed upon plan, of both resolution of any issues
> that are currently outstanding with respect to these depositions, and the actual sort
> of discovery plan - at least by category if not by witnesses, et cetera. - some
> benchmark in terms of time, so we can see how we are doing.

12  Hearing Transcript from March 24, 2004, at 87:3-8.

13       This passage followed almost ten pages of discussion regarding the scope of Synopsys' and the

14  Defendants' designation and production of Rule 30(b)(6) deponents. The Court did not order the

15  parties to present what is in fact a motion to compel on the issues of document production,

16  interrogatories, or requests for admissions.

17       The discovery disputes raised by Ricoh in the draft submissions that it has shared with counsel

18  for Defendants raise disputed questions of fact about: i) what scope of discovery from Defendants is

19  proper, and ii) the extent of which Defendants and Synopsys have produced responsive and relevant

20  documents. The parties have been contending over the first question since last summer, and indeed the

21  issues that Ricoh raises were originally presented in August of 2003 to Judge Sleet when this matter

22  was pending in Delaware. The parties have argued at length in correspondence about what limits, if

23  any, the Delaware Court placed on discovery, and what bounds are appropriate for discovery. The

24  factual allegations raised by Ricoh in its draft submission are conclusory and provably false. Because

25

26  [1] Defendants and Synopsys have seen draft versions of Ricoh's proposed submission, and base these
27  comments on that draft. We are, of course, unable to predict the form of the document that Ricoh will
   ultimately submit

28

HOWREY
SIMON
ARNOLD &
WHITE

Submission of Aeroflex, AMI, Matrox Companies and Synopsys to
Magistrate Judge Chen Regarding A Discovery Plan
Case Nos. C03-02289 MJJ (EMC) and CV03-04669 MJJ (EMC)

2

of the sweeping nature of the allegations made by Ricoh and the complicated procedural history, Defendants intend to present substantial documentary evidence to rebut Ricoh's allegations. This matter is, therefore, not suited for resolution in a telephonic conference and Defendants' request that the Magistrate Judge set Ricoh's motion for full briefing and an in-person hearing.

Regarding scheduling of discovery, the parties were able to agree on the following:

(1)     The parties agreed on an April 30, 2004 date for completion of document production, save for production of e-mails.

(2)     The parties agreed on the following mechanical procedure for setting depositions. Defendants and Synopsys will designate witnesses and provide proposed dates for deposition on a rolling basis. At any given time, Defendants and Synopsys will make have set dates for some number "N" different witnesses. Within 10 days of completion of a deposition, Defendants and Synopsys will identify proposed dates for an at least one subsequent witness. The dates offered must fall within 40 days of the date of the previously completed deposition.

The parties will work cooperatively to stage deposition discovery in the order requested by Ricoh, to the extent possible.

(3)     The parties agreed that Defendants and Synopsys will attempt to provide advance notification of the depositions of Ricoh personnel that it wishes to conduct and Ricoh will attempt to schedule those depositions within the United States.

(4)     Defendants and Synopsys agreed to identify a first set of "N" deposition dates by May 15.

With respect to the scheduling of discovery, the following points of disagreement remained:

(a)     With regard to paragraph 2, above, Ricoh contended that an appropriate number for "N" was 9. Defendants and Synopsys contend that this number should be 6.

(b)     Defendants and Synopsys believe that the privilege logs should be completed by May 7. We do not expect that the Defendants e-mail production is likely to include any privileged communications, but should that be incorrect, we will supplement. We do not believe that preparation of Ricoh's privilege log should be fixed to the date for completion of

HOWREY
SIMON
ARNOLD &
WHITE

Submission of Aeroflex, AMI, Matrox Companies and Synopsys to
Magistrate Judge Chen Regarding A Discovery Plan
Case Nos. C03-02289 MJJ (EMC) and CV03-04669 MJJ (EMC)

3

1   production of any e-mail from the Defendants.  Ricoh proposed that the party's exchange

2   privilege logs on a common date, set after production of the Defendants' e-mail.

3           (c)     The parties disagreed about a suitable date for completion of production of any

4   relevant and responsive e-mail from Defendants.  Defendants and Synopsys proposed May 31.

5   Ricoh proposed May 15 (in effect May 17, given the Calendar).

6   Dated:  April 23, 2003                          Respectfully submitted,

7                                                    HOWREY SIMON ARNOLD & WHITE, LLP

8

9                                            By:    /s/   Christopher L. Kelley
10                                                   Attorneys for Plaintiff SYNOPSYS, INC.
                                                     and Defendants AEROFLEX
11                                                   INCORPORATED, ET AL.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

EXHIBIT 3

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
Eric Oliver (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
2101 L Street, NW
Washington, DC 20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN
& DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
HOWREY LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for ASIC Defendants and Synopsys, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| RICOH COMPANY, LTD,<br>　　　　　Plaintiff,<br>　　vs.<br>AEROFLEX ET AL.,<br>　　　　　Defendants<br><br>SYNOPSYS, INC.,<br>　　　　　Plaintiff,<br>　　vs.<br>RICOH COMPANY, LTD.,<br>Defendant. | ) Case No. C- 03-04669 MJJ (EMC)<br>) Case No. C-03-02289 MJJ (EMC)<br>)<br>)<br>)<br>) COMBINED JOINT CASE<br>) MANAGEMENT CONFERENCE<br>) STATEMENT AND PROPOSED ORDER<br>)<br>)<br>)<br>) Date:　　　June 14, 2005<br>) Time:　　　2:00 p.m.<br>) Courtroom: 11<br>) |

1

Pursuant to FRCP 26(f) and L.R. 16-9, Ricoh Company, Ltd. and Aeroflex, Inc. et al. in Case No. C-03-04669, and Synopsys, Inc. and Ricoh Company, Ltd. in Case No. C-03-02289, jointly and collectively submit this Joint Case Management Conference Statement and Proposed Order.

**DESCRIPTION OF THE CASE**

**1. A brief description of the events underlying the action:**

**a. Ricoh's Description**

The Court is already acquainted with the events underlying this action, as set forth in this Court's order of September 22, 2003, the Case Management Conference Statement and Proposed Order, dated April 26, 2004, and the Claim Construction issued by the Court on April 7, 2005.

**Ricoh's claims against the ASIC Defendants.** In January 2003, Ricoh Company, Ltd.("Ricoh") sued several designers and manufacturers of computer chips in the District of Delaware (C.A. No. 03-103-GMS) for patent infringement, alleging that those Defendants, Aeroflex, Inc. et al (hereinafter the "ASIC Defendants"), were using the steps recited in the process claims of Ricoh's 4,922,432 patent ("'432 patent"). The '432 patent describes a highly advanced technical process used in designing and producing certain types of computer chips called ASICs. In carrying out their infringement of the patented process, the ASIC Defendants use software supplied by Synopsys, Inc. ("Synopsys"), and perhaps other suppliers, as part of their process in producing ASICs that they sell. Ricoh has never accused Synopsys itself of infringing the '432 patent and has stated that it will not bring any action for infringement of the '432 patent against Synopsys with respect to Synopsys' past or current software products. Further information about the infringing activities of the ASIC Defendants has been set out in Ricoh's preliminary infringement contentions, served on March 12, 2004.

Contrary to the ASIC Defendants' representations, the activities that infringe certain of the process claims of the '432 patent involve more than the "ordinary use" of a Synopsys product named Design Compiler. Indeed, the ASIC Defendants refuse to represent (even in the absence of discovery) in this submission that they have not changed that which Synopsys calls the "ordinary use" of Design Compiler, and thus effectively are telling the Court that they are not doing what Synopsys calls "ordinary use". Ricoh is seeking in its Complaint damages based upon the ASIC Defendants' revenue derived from their use of the patented process, including the sale of the ASICs made utilizing this

2

process. The ASIC Defendants are obligated to defend against Ricoh's infringement claims without limitation to particular equipment they may employ when so acting.  On August 29, 2003, the Delaware court granted the ASIC Defendants' motion to transfer that action to this Court. On December 11, 2003, this Court denied the ASIC Defendants motion to stay, finding that "Ricoh has a 'separate interest' in litigating against Defendants in the first-filed action."

Resorting to hyperbole, Synopsys and the ASIC defendants claim that they are "totally in the dark" as to the issues in this case.  Ricoh's Amended Preliminary Infringement Contentions, which were prepared consistent with the guidelines articulated by Magistrate Judge Chen regarding both the infringement and invalidity contentions, demonstrate explicitly how Ricoh is reading each ASIC Defendants' usage of Synopsys products in the design and production of ASICs.  With respect to the "storing in an expert system knowledge base" limitation, for example, the Amended Preliminary Infringement Contention (PIC) states: "This element is met when the ASIC Designer stores, installs or loads HDL Compiler, Design Compiler, and Synthesis Libraries in computer memory of a computer system."  The "expert system knowledge base" referenced in the claim element is therefore found in the HDL Compiler, Design Compiler, and Synthesis Library components of the Synopsys products.  Even if it were somehow required to do so to prove infringement, it is only because of Synopsys' own deficiencies in the relevant discovery that Ricoh cannot further pinpoint which module(s) in these components contains the "expert system knowledge base."

Regarding the limitation "applying to the specified definition of the action or condition to be performed, a set of cell selection rules," the PICs specifically identify:

> both HDL Compiler and Design Compiler as they are used in conjunction with the Synthesis Libraries, cell selection rules are applied to the synthetic operators ("specified definitions of the action[s] or conditions[s]") to perform the selection of the implementations ("selection of hardware cells") that perform the desired functions of the proposed ASIC.

This passage clearly identifies the manner in which Ricoh is reading the claim limitation on the ASIC Defendants' use of Synopsys products.  To the extent that Ricoh was unable to further define the precise module or subcomponent that may be responsible for performing this claim limitation is a

3

direct result of the failure by Synopsys and the ASIC Defendants to adequately produce the relevant discovery.[1]

**The Declaratory Judgment Action.**  Although Synopsys chose not to try to intervene in the Delaware case, it had indemnified the ASIC Defendants; Synopsys' attorneys assumed control of the defense and have filed multiple declaratory judgment counterclaims against Ricoh.  After months of litigating the Delaware case, Synopsys filed a declaratory judgment action in this Court with respect to the '432 patent and another patent (the 5,197,016 patent ("016 patent")) that Ricoh did not assert in the Delaware case.  Ricoh has never accused Synopsys itself of infringing the '432 patent or the '016 patent and has issued a written commitment that it will not bring any action for infringement of the '432 patent or the '016 patent against Synopsys with respect to Synopsys' past or current software products.  Ricoh has advised others of the availability of a license under the '016 patent but has not threatened anyone with infringement of that patent.  On September 22, 2003, this Court denied Ricoh's motion to dismiss Synopsys' declaratory judgment action.

**Discovery in late 2003 and early 2004.**  In late 2003 and early 2004, this case was marked by constant bickering between counsel and multiple delays.  For example, when Ricoh moved to amend its complaint in early 2004, the motion was opposed by the ASIC Defendants, even though they admitted there was no prejudice in the amendment.  At an April 6, 2004 hearing on the ASIC Defendants' opposition to Ricoh's motion to amend the complaint, this Court expressed its frustration at counsel for the ASIC Defendants for continually delaying the proceedings:

> It struck me from day one in this case, and I don't know what is going on, motions to strike, invalidity contentions, I mean, it's just ridiculous.  And it's not the way this case is going to get litigated.  And I'm going to tell you now . . . I don't have the resources, and no one else around here does, to deal with a case where you want to take it upon yourself to not discuss matters that you can resolve without the Court's intervention.

(April 6, 2004 Tr. at 3.)

---

[1] Amazingly, the ASIC Defendants also fault Ricoh with not issuing a Preliminary Infringement Contention applicable to software about which the ASIC Defendants have refused, and continue to refuse, to reveal whether or not they use.

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

4

Pursuant to the instructions of Magistrate Judge Chen, on April 23, 2004, the parties submitted their respective discovery plans detailing how each side believed discovery should proceed. Ricoh's discovery plan (attached as Exhibit 1) detailed a wide range of areas where the ASIC Defendants and Synopsys had refused to participate in discovery. For example:

- The ASIC Defendants and Synopsys have not produced all of the documents identified in their initial disclosures.

- The ASIC Defendants and Synopsys have not produced the source code for all of the software identified in Ricoh's preliminary infringement charts.

- Although the ASIC Defendants and Synopsys agreed to produce all documents (other than e-mails) by April 30, 2004, they did not do so, and have produced no documents since May 4, 2004. There remains pending a large volume of documents that have never been produced by Synopsys and the ASIC Defendants.

- The ASIC Defendants and Synopsys have objected to a wide range of Ricoh's discovery requests, for example, refusing to produce documents regarding all of the processes and products that Ricoh contends infringe the '432 patent or disclosing the process they actually practice.

- The ASIC Defendants have refused to produce many documents that include source code, inputs, cell libraries and related documentation that is vital to Ricoh's infringement claims.

**The discovery stay.** During the May 4, 2004 Case Management Conference, this Court stated that there should be a stay of discovery related to the merits (e.g., infringement and invalidity). On May 13, 2004, Magistrate Judge Chen issued an Order reaffirming the stay of all discovery not related to claim construction. Consequently, the dates for all actions in this case, other than those related to the Markman process, were suspended pending the Court's claim construction ruling.

The parties nonetheless proceeded with certain depositions in Japan during the discovery stay, and Synopsys permitted Ricoh's experts to have periodic access to some of Synopsys' source code during the discovery stay. Synopsys does not deny withholding access to the source code of many of the products (e.g., Module Compiler, Physical Compiler, etc.) at issue in this case, and it produced only the

5

source code for its Design Compiler product (and its corresponding user interface and compiler components).  Synopsys unilaterally decided what it considered to be the "Synopsys Logic Synthesis Product" that would be produced.  (See footnote 5).  Synopsys has produced a single modified version of the Synopsys Logic Synthesis Product even though up a dozen or more versions have been used by the ASIC Defendants to infringe the '432 patent.  Ricoh has explicitly placed at issue many other products beyond Synopsys' unilateral product definition; however, Synopsys refuses to permit Ricoh access to that source code or other documentation.

Synopsys has made discovery of its Design Compiler source code difficult by refusing to turn over the source code in the manner in which it was kept and insisting it be examined only at inconvenient Synopsys locations under the constant monitoring of Synopsys personnel and under the strict procedures limiting availability and access, using "custom software" Synopsys wrote for that purpose.[2]  While Synopsys several times mentions that it made the code "available" for 34 or 46 weeks, it fails to reveal that the source code had over 21 million lines of code that incorporated tens of thousands of source files, many of which were not humanly readable.  Months into Ricoh's review, Synopsys admitted that of the tens of thousands of source code files provided, many were for products not at issue in the case and thus irrelevant.  Synopsys initially required Ricoh to use a workstation computer that was at least five orders of magnitude slower than an ordinary personal computer.  That workstation suffered multiple outages, each requiring the scheduling of a service call with an off-site Synopsys technician with attendant losses in inspection time.  The workstation ultimately experienced a catastrophic failure and it took several months for Ricoh to convince Synopsys to permit Ricoh to buy a higher speed computer workstation for use in connection with code inspection after Synopsys decided to change the inspection site from Maryland to California.

_____

[2] Synopsys has only now admitted that it has not provided a typical environment in which the source code would operate.  Instead, it created, at its own expense and initiative, custom software for Ricoh's experts to use when accessing the code, when in fact, the source code must have been initially accessible in its native environment.  This new and unique software has not worked, which explains some of the problems detailed in the main text that Ricoh encountered.  Likewise, Ricoh has not been using Design Complier for 17 years – indeed, Design Compiler has not existed in its present form for even a fraction of that time – and Ricoh's use of Design Compiler as a customer is no substitute for a proper inspection of the closely-guarded source code by experts.

6

There has been virtually no merits discovery for more than 13 months.

**The Markman briefing, hearing and claim construction ruling.**  Between March and August 2004, the parties exchanged claim constructions and filed Markman briefs.  Between October 2004 and January 2005, the Court conducted several hearings related to claim construction.  On April 7, 2005, the Court issued its Order construing the claims.

**Stipulation narrowing the claims at issue.**  During the stay period, in June and July 2004, the parties negotiated and the Court entered a Stipulated Order that had the effect of dismissing all claims and counterclaims except those relating Ricoh's allegations that the ASIC Defendants infringe claims 13-17 of the '432 patent.  All other claims relating to the '432 patent, and all issues relating to the '016 patent, were dismissed by Court Order in the *Ricoh v. Aeroflex* litigation on July 8, 2004.  A similar stipulation and order was entered in the *Synopsys v. Ricoh* litigation on July 7, 2004, making those two cases congruent with respect to the patent claims at issue.

**Consolidation vs. stay and/or bifurcation.**  A threshold issue is whether the earlier-filed *Ricoh v. Aeroflex* infringement action should be consolidated with the later-filed *Synopsys v. Ricoh* declaratory judgment action.  There are no patent infringement claims or counterclaims in the declaratory judgment action.  The declaratory judgment claims in the *Synopsys v. Ricoh* litigation are identical in scope and language to the declaratory judgment counterclaims in this litigation.  Ricoh believes that consolidation is appropriate, with Ricoh, the first filer and patent owner, as the plaintiff.

Synopsys and the ASIC Defendants claim that they will consent to consolidation if Ricoh blindly waives any right to proceed with its infringement claims based upon how the ASIC Defendants input specifications into Design Compiler.  In a stunning admission of how little their attorneys know about their own client's business, counsel for the ASIC Defendants write (at p. 13) that "it is most probable that the customer defendants use the same forms of input to Design Compiler that the vast majority of Synopsys' customers use–Verilog and VHDL . . . ."  The fact that the attorneys for the ASIC Defendants do not know what kinds of inputs their clients use, while simultaneously conditioning their consent for consolidation upon an uninformed demand for a stipulation to that effect, is stunning.  It would most irresponsible for Ricoh to even consider such an informed request.

7

Thus, Synopsys and the ASIC Defendants effectively oppose consolidation and refuse to participate in setting a schedule for discovery on Ricoh's infringement claims. Synopsys and the ASIC Defendants instead propose breaking up the dispute before this Court into tiny segments, each of which to be handled as if it were a separate case: a trial on their affirmative defenses first, then a trial on the infringement merits, then separate damages trials.[3] The ASIC Defendants claim that they will be bound by a validity ruling but leave unresolved all other issues <u>including Ricoh's infringement claims and all damage issues</u>. Thus, the ASIC defendants want to narrowly define the accused products and then try only their affirmative defenses while ignoring the merits. With respect to the narrow scope of the products, there are two fundamental problems: first, they do not want to try all of the products that Ricoh has accused of infringement. Second, of their self-defined Synopsys Logic Synthesis Product that there were at least 12 major revisions of the Design Compiler source code during the infringement period before the first-filed case began, but the ASIC defendants propose limiting the possibility of infringement to only one, the "2003.12 source code release," which they have arbitrarily chosen from the releases after the first-filed case was begun and even though Synopsys has produced manuals which related to a different release (2002.05; see footnote 19 infra).[4] Synopsys and the ASIC Defendants also propose bifurcating damages with respect to each of the seven defendants, implying that multiple additional trials will become necessary. Ricoh opposes such bifurcation as unnecessary and wasteful of this Court's resources. While there may be separate calculations for each group of defendants, as there are in any multiple defendant action, Ricoh believes that the Court should approach damages in a consistent manner regardless of the identity of the defendant under consideration.

Synopsys and the ASIC Defendants also announce their intention to renew the stay motion, which has already been denied by both the Delaware court and this Court. In December 2003, this Court

---

[3] It seems incongruous that the ASIC defendants would oppose consolidation and propose that the cases be bifurcated in that the ASIC defendants could find themselves liable beyond any indemnification provisions provided by Synopsys. The ASIC defendants, however, have ceded complete control of this litigation, so it appears their separate interests are not being independently addressed.

[4] Therefore, Synopsys desire to resolve Ricoh's infringement claim by selecting one particular version of one self-designated product, Design Compiler, without regard to any other version of Design Compiler or any product beyond Design Compiler.

ruled that "Ricoh has a 'separate interest' in litigating against the [ASIC] Defendants in the first-filed action."  The ASIC Defendants do not identify why that "separate interest" finding is no longer applicable.  As shown below, the ASIC defendants have refused to respond to discovery regarding their infringing activities.  They refuse to represent (even in the absence of discovery) in this submission that they have not changed that which Synopsys calls the "ordinary use" of Design Compiler, and have conceded that they have done so.  Thus, the ASIC Defendants effectively have told this Court that the case against them will continue even should Synopsys prevail, ending its obligation to defend them (see footnote 5 infra) and leaving the ASIC Defendants to their own devices.

Synopsys and the ASIC Defendants propose the stay of Ricoh's infringement action begun in January 2003 remain in effect until a decision is rendered sometime after their proposed May 2006 trial against Synopsys in the second-filed case, at which time discovery could begin again, resulting in a trial in, perhaps 2008 (assuming that there are no issues that are sought to be appealed).   There is no valid reason for a stay.[5]  Ricoh, in its first filed action, is entitled to have a resolution to its outstanding conflict with the ASIC defendants within a reasonable time.

Finally, Synopsys and the ASIC Defendants claim that they want to file an additional summary judgment motions, even though both sides agree that the deadline should be after close of fact discovery.  For example, they claim an intent to renew a prior motion for partial summary judgment that some, but not all, of the ASIC Defendants had filed under 35 U.S.C. 271(g).  When that earlier 271(g) motion was made, Ricoh asked for discovery pursuant to Fed.R.Civ.P. 56(f) since the ASIC Defendants had mostly refused to produce discovery designed to reveal what they actually did.  An extremely limited deposition of a Matrox defendant revealed that contrary to representations found in Matrox declarations, activities had been conducted within the United States.  After that discovery, the ASIC Defendants hastily withdrew their pending motion for partial summary judgment.  Ricoh disagrees with the statement by Synopsys and the ASIC Defendants that any attempt to renew that motion will be

_____

[5] The argument proffered by Synopsys' and the ASIC defendants to litigate the Synopsys DJ action first and then, and only then, commence the ASIC defendant litigation is unreasonable and akin to a defendant in a patent infringement action arguing that the action should be litigated element by element, where litigation one element does not commence until the litigation has been completed on a prior element.

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

limited to expert issues; instead, Ricoh will require additional discovery on the "proximate relationship" between the '432 patented invention and the ASICs produced by the ASIC Defendants. That relationship is best seen in claim 14 of the '432 patent. This Court noted (at footnote 4, page 8 of the Markman Order) that at least a portion of the invention (i.e., generation of mask data) was required to produce an integrated circuit and was a distinct process apart from the design steps (as recited in claim 13) that culminated in the generation of a netlist. This fact shows that the claimed process, at least as recited in claim 14, is in a "proximate relationship" to the production of ASICs. While the ASIC Defendants would like to assert that there is no relationship between the '432 patent and the manufacture of ASICs, Ricoh maintains that neither the patent, nor the claim construction, nor the facts, support the defendants' argument. In any event, even with this proposed partial summary judgment motion, the ASIC Defendants effectively concede that the case against them would still continue.

The dispositive motion cut off proposed by the parties is rapidly approaching (both are during the first quarter of next year). There is no good reason to consider permit piecemeal motions of a dispositive nature before that time.

**Final infringement contentions.** Ricoh understood the Court's May 2004 discovery stay to suspend all obligations imposed by the court's scheduling orders and the local rules until a new schedule was established after the claim construction ruling was issued. After the claim construction ruling was issued on April 7, 2005, lead counsel for the parties spoke by telephone on April 21, 2005, and Ricoh's counsel understood the parties to agree that all dates and obligations were suspended until a new schedule was established. Since merits discovery had been stayed at that time for about 11 months (now about 13 months), and because the ASIC Defendants and Synopsys have not provided all of the documents and source code for the products identified in Ricoh's preliminary infringement charts, Ricoh believes that it should obtain discovery and have time to analyze it prior to the submission of its final infringement contentions. If the ASIC defendants and Synopsys had not withheld discovery and if discovery had not been stayed, then Ricoh would have obtained discovery needed for it to proceed with presenting its final infringement contentions.

On May 31, 2005, however, counsel for the ASIC Defendants and Synopsys served what purported to be the final invalidity contentions of Synopsys and the ASIC Defendants, with a footnote

10

asserting that Ricoh did not timely present its final infringement contentions "and its opportunity to do so has passed."[6]  This position by the ASIC Defendants and Synopsys came as a surprise to Ricoh, because it is inconsistent with the suspension of all due dates other than those relating to the Markman process, inconsistent with the agreement between counsel that new dates for presenting such charts needed to be set in the schedule, and because counsel for the ASIC Defendants and Synopsys never informed Ricoh of their apparent belief to the contrary, either before or after the purported date for the final infringement contentions.  In a telephone conference on June 2, 2005, counsel for the ASIC Defendants and Synopsys maintained their position but said that they would consider extending the time for Ricoh to submit its final infringement contentions to 30 days after the CMC hearing.  As noted above, however, Ricoh has been denied discovery on most of the products and source code identified in Ricoh's preliminary infringement contentions and the ASIC Defendants and Synopsys continue to withhold documents because of the stay of discovery and suspension of the due dates for the past 13 months.  Ricoh should have a fair opportunity to receive and analyze such discovery prior to the submission of its final infringement contentions.  Therefore, Synopsys' and the ASIC defendants' proposal of Ricoh's submission of the contentions 30 days after the CMC is inappropriate.  If discovery is limited or not permitted until after such contentions are filed, as suggested, it will inevitably lead to unnecessarily burdening the Court with numerous vigorously contested motions to amend the contentions.  Ricoh believes it is more appropriate to provide the final infringement contentions in accordance with the time schedule noted below.

**b.  Description of Synopsys and the ASIC Defendants**

Although this case has been pending for more than two years, the Court has issued its claim construction ruling, and three of Ricoh's experts have had 46 weeks of access to the source code for the Synopsys Logic Synthesis Product[7] (although they have only utilized 34 weeks), Synopsys and the

_____

[6] Counsel for Ricoh did not receive any communication from the counsel for Synopsys and the ASIC defendants inquiring whether Ricoh intentionally failed to provide the final infringement contentions.

[7]  The "Synopsys Logic Synthesis Product" is defined in Paragraph 18 of Synopsys' Amended Complaint For Declaratory Judgment as "Design Compiler® software, HDL Compiler™ for Verilog, VHDL Compiler® and DesignWare Foundation libraries . . ."

11

customer defendants are still totally in the dark with respect to how Ricoh reads any of the elements of the claims at issue on the Synopsys Logic Synthesis Product.[8]  For example, Ricoh has never articulated in its Amended Preliminary Infringement Contentions, or elsewhere, where it finds an "expert system," "knowledge base" or a "set of cell selection rules" in the Synopsys Logic Synthesis Product.[9]  As a result, Synopsys still finds itself in the compromised commercial position of not being able to clear the cloud over its most important product and to quickly establish that the ordinary use of the Synopsys Logic Synthesis Product does not infringe Ricoh's '432 patent.

Once Synopsys establishes that the ordinary use of its product does not infringe the '432 patent it will be relieved of any indemnity obligation to its customers and will be free of the cloud over its business.[10]  If Ricoh fails to show that all of the non-input related claim elements[11] are present in the Synopsys Logic Synthesis Product, the customers would also be in a position to have their case

---

[8] Despite the fact that the Court entered a stay of discovery, in the interests of disposing of this case as soon as possible, Synopsys has made its source code for the Synopsys Logic Synthesis Products available to Ricoh's experts for 46 weeks.  Synopsys did not merely turn over the source code in the manner in which it was kept, which it was entitled to do, but instead, at its own expense, wrote custom software for the source code produced to ensure that Ricoh's experts would be able to compile it.  It took the equivalent of one full time engineer over 30 days to get the system up and running.  In addition to the source code and custom software listed above, which is all Synopsys committed to provide, Synopsys also produced the source code for Presto, Physical Compiler, and Module Compiler, as well as the standard target technology libraries, link libraries, and symbol libraries.  Therefore, all subsequent use of the term "Synopsys Logic Synthesis Product" in this statement will also include these items.  Thus, even if the Court deems it appropriate to include these other Synopsys products in the customer suit, Ricoh has had nearly a year of access to the source code for these products as well.  Recently, Ricoh requested that they be permitted to increase the number of experts with access to the source code from three to five and Synopsys readily agreed that they could do so.  In addition to the source code, Synopsys produced the product manuals for the Synopsys Logic Synthesis Product.

[9] The descriptions provided in Ricoh's section of this Statement simply serve to demonstrate the inadequacy and vagueness of Ricoh's position.  Ricoh simply repeatedly points at the grouping of the HDL Compiler, Design Compiler, and Synthesis Library components as fulfilling each claim element.  These generalized contentions do not satisfy Ricoh's burden of showing where each claim element is found in the accused instrumentality.

[10] The Synopsys Logic Synthesis Product accepts only certain types of input.  If the ordinary use of the Synopsys Logic Synthesis Product, including those specific input types, do not infringe, Synopsys is relieved of its indemnity obligations to its customers.

[11] Non-input related claim elements include for example: "expert system," "knowledge base," and the "selecting" step.

12

dismissed because the only accused instrumentality requires use of the Synopsys Logic Synthesis Product. In other words, Ricoh vaguely alleges that it is the customer defendants' input together with the Synopsys Logic Synthesis Product that infringes its '432 Patent claims. Since Ricoh must show that each element of its asserted claims are infringed, it is indisputable that if the non-input claim elements are not found in the Synopsys Logic Synthesis Product, then the customer defendants do not infringe regardless of the nature of their input.

Ricoh vaguely alleges that there are activities by the customer defendants that involve more than the "ordinary use" of Design Compiler. In fact, Ricoh incredibly states that the customer defendants have conceded that they are not doing what Synopsys calls "ordinary use." It is telling that Ricoh does not point to **anything** to support this completely false assertion, because there is simply no support for it either in the record or in fact. In fact, it is most probable that the customer defendants use the same forms of input to Design Compiler that the vast majority of Synopsys' customers use–Verilog and VHDL–and they may be willing to stipulate to that fact if Ricoh will identify those inputs as the ones that it believes infringe the '432 patent. If Ricoh is saying that the customer defendants' input of Verilog or VHDL infringes the '432 patent, then that is the "ordinary use" of Design Compiler, and trial of the Declaratory Judgment case should resolve both cases.

If Ricoh truly alleges that there is some other activity that the customer defendants do that involves more than the "ordinary use" of Design Compiler, neither Synopsys nor the customer defendants can adequately respond to this allegation since Ricoh has provided no specifics as to this "more than ordinary use." More than two years into this case, it is time for Ricoh to provide detailed contentions of what it believes the customer defendants do that infringes the '432 patent. If there actually is "more than ordinary use" of Design Compiler by the customer defendants that Ricoh can articulate, Synopsys and the customer defendants believe that the customer suit should be stayed pending the outcome of the Declaratory Judgment trial. Synopsys' Declaratory Judgment suit should proceed to trial with all due haste. Synopsys has set forth a time frame for the trial of the Declaratory Judgment case. The Customer Defendants have already agreed and reiterate here that they will be bound by any adjudication respecting the validity of the patents as well as any finding that the ordinary use of the Synopsys Logic Synthesis Product infringes the '432 patent. The trial of the declaratory

13

judgment case will therefore, either eliminate the need for a trial of the Customer case at all, or substantially narrow the issues for trial.[12]

Synopsys and the Customer Defendants identify below several key issues that they believe must be addressed in order to provide a proper framework for determining 1) whether the customer case should be stayed, 2) and if not stayed, whether the cases should be consolidated, 3) whether damages issues should be bifurcated, and 4) the proper scope of discovery in either case.

**Claim Construction Ruling.**  The Customer Defendants would like to renew their summary judgment motion of noninfringement of the '432 Patent under 35 U.S.C. Section 271(g).  In its claim construction ruling, the Court determined that the "computer aided design process" described in Claim 13 of the '432 Patent "does not include a manufacturing process for ASICs."  Resolution of this issue will narrow the issues in the case, eliminate parties, narrow the relevant discovery and enhance the potential for settlement which is frustrated at this moment by the parties' differing positions on whether the relevant economic measure for damages is the revenue on ASIC sales or merely software licensing fees.

Contrary to Ricoh's suggestion, the 271(g) motion will **not** require voluminous additional discovery from the customer defendants on the "proximate relationship" between the '432 patented invention and the ASICs produced.  All that will be required is expert opinion.  Ricoh is simply attempting to conduct yet another fishing expedition to collect damages-related information from the customer defendants.

If the Section 271(g) claims are eliminated from the case, the foreign defendants can move to be dismissed from the case and relevant discovery will exclude, among other things, any manufacturing processes, any design processes not taking place in the United States, and discovery related to the ASIC products themselves (except perhaps as it relates to damages, which relevance is also disputed by Synopsys and the Customer Defendants).

---

[12] With guidance from the Court, the customer defendants are willing to provide limited discovery sufficient to show the types of input they have used in connection with the Synopsys Logic Synthesis Product in designing ASICs.

14

**Final Infringement Contentions.** Ricoh has not served any Final Infringement Contentions. Since the date provided for serving such final contentions has passed, pursuant to the Local Rules, Ricoh would now be foreclosed from revising its infringement contentions absent a showing of good cause and an order of the Court. Synopsys and the Customer Defendants served timely Final Invalidity Contentions on May 31, 2005.

Ricoh asserts that it understood the Court's stay of discovery to include a suspension of the parties' Local Rules obligations. This was never Synopsys' or the Customer Defendants' understanding. There is no Court order or other statement of the Court at any hearing, of which Synopsys and the Customer Defendants are aware, and Ricoh has pointed to none, that indicates a suspension of the Local Rules requirements was contemplated. Moreover, Ricoh has blatantly mischaracterized the conversation between counsel on April 21, 2005. Not only was there no agreement that dates for presenting final contentions were suspended and needed to be set in the schedule, that issue was never discussed at all. Rather, there was a query and a confirmation that the stay entered by the Court was continuing until the status conference. The entire purpose of the call was to determine whether the parties should jointly request that a status conference be scheduled. Ricoh's counsel never raised the Local Rules or the final contentions at all and never informed Synopsys' counsel that Ricoh understood the Local Rules obligations to be suspended as part of the stay. Ricoh's counsel certainly never asked Synopsys' and the Customer Defendants' counsel to agree to suspend the Local Rules obligations and, in any event, that is not something that Synopsys' and the Customer Defendants' counsel understands can be done by agreement of the parties without approval from the Court.

Synopsys and the Customer Defendants have been prejudiced by Ricoh's failure to provide adequate infringement contentions because it is those contentions which should provide the framework within which the Court considers the issues of stay, consolidation and the scope of discovery and their absence has had the effect of delaying the case yet again. Given that Ricoh has represented that it was its belief that the Local Rules obligations were suspended, Synopsys and the Customer Defendants urge the Court to set a deadline for the submission of Ricoh's Final Infringement contentions as early as possible but in no event later than 30 days from the date of the Status

15

Conference.[13] Synopsys and the Customer Defendants should then have an additional 20 days to provide their Final Invalidity Contentions.[14] The court should set another status conference as soon as possible after submission of the parties' final contentions to address the schedule and other issues herein.[15] Once the Final Contentions are submitted, neither side should be able to amend absent a showing of good cause and order of the Court.

Synopsys requests that the court provide guidance with respect to the detail required for the final contentions. Ricoh's Preliminary Infringement Contentions were utterly inadequate. Defendants were forced to file a motion to seek more detailed infringement contentions. At two separate hearings on May 27 and June 16, 2004, and by order dated June 17, 2005, Judge Chen made clear that the amended preliminary infringement contentions were to include as much information as Ricoh currently knew about its infringement contentions, that they needed to provide information specific to each defendant on a product by product basis and that there needed to be an identification of where in each accused product they found each element of the asserted claims. Ricoh's last amended Preliminary Infringement Contentions did not provide that information. For example, Ricoh's Amended Preliminary Contentions did not specify what in the accused products constitutes:

- the "expert system knowledge base,"
- the "set of rules for selecting," or
- "architecture independent actions and conditions."

Rather, Ricoh stated identical contentions for each defendant stating "[defendant] infringes claim 13 by performing a process . . . in which [it] describes input specifications (using User Interfaces) and synthesizes such specifications using the combination of Design Compiler, HDL Compiler, and the Synthesis Libraries."

---

[13] The Local Rules provided Ricoh with 30 days after the claim construction ruling to submit its final contentions.

[14] The Local Rules provide the alleged infringer 50 days after the claim construction to submit its final contentions.

[15] The stay entered by the Court should remain in place until the final contentions of the parties are submitted and the Court holds the next status conference.

16

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

Ricoh is a Synopsys customer and has used the Design Compiler Product for approximately 17 years, so it should be very familiar with its functions, features and the types of input it will accept. Now, having the benefit of the Court's claim construction ruling, 34 weeks of access to the source code for the Synopsys Logic Synthesis Product, and many more weeks than that to review the product manuals, Ricoh's Final Infringement Contentions should set forth with specificity where it is alleging each element of each asserted claim is met in the accused products or combination of products, and specifically how it is reading the non-input claim elements on the Synopsys Logic Synthesis Product source code.

Synopsys and the Customer Defendants know that the Synopsys Logic Synthesis Product does not include the required elements. They believe the case is ripe for bringing summary judgment motions with respect to some of these terms as soon as possible to achieve an early disposition of this case. Synopsys would like to discuss at the status conference whether the Court will entertain summary judgment motions at this juncture.

**The Customer Defendants' Case Should Be Limited to Synopsys' Logic Synthesis Software.**
In Ricoh's portion of this statement entitled "Ricoh's claims against the ASIC Defendants," it twice makes reference to the fact that it believes this case is potentially about logic synthesis software provided by suppliers other than Synopsys. Ricoh states "In carrying out their infringement of the patented process, the ASIC Defendants use software supplied by Synopsys, *and perhaps other suppliers,* as part of their process in producing ASICs that they sell." Ricoh also states that "The ASIC Defendants are obligated to defend against Ricoh's infringement claims *without limitation to particular equipment they may employ* when so acting."

Synopsys and the Customer Defendants request that the Court limit the discovery and the issues to be tried in this case to the Customer Defendants' use of Synopsys' products. In other words, all non-input claim elements must be met by Synopsys' products, not the logic synthesis products of any of its competitors. At the outset of the case, when the Customer Defendants asked on what basis they had been sued, they were told that they were sued because they used Synopsys' Design Compiler product. Ricoh's Preliminary Infringement Contentions reference Synopsys' products only. It appears from discovery taken prior to the stay, that Ricoh's pre-filing "analysis" was limited to a review of the

17

capabilities of the Synopsys Design Compiler product and evidence that Ricoh believed indicated that each of the defendants utilize Design Compiler. No analysis of competing software tools was done, and there is no basis for the suggestion in Ricoh's description of the case that its scope ought to be expanded to include other software products beyond the Synopsys Logic Synthesis Product. The case has been pending for more than two years, the claim construction is in place, and all the parties have indicated that they do not intend to join any additional parties. Since the customers would not have source code for any logic synthesis software they use, and no other logic synthesis software suppliers are parties to this case, the discovery in this case and the issues to be tried should be limited to design in connection with the Synopsys Logic Synthesis Product.

**Source Code Production and Proposed Stipulations re Same.** Contrary to Ricoh's suggestion that there has been virtually no merits discovery for more than 13 months, Synopsys has made its source code (and custom software to ensure Ricoh's experts could compile the code) available now for over 46 weeks.[16] This produced source code includes each and every item requested by Ricoh herein: Design Compiler, HDL Compiler for Verilog, VHDL Compiler, Design Ware Foundation libraries (also known as Design Compiler Basic Library, DesignWare Building Block IP, and synthetic libraries), Presto, Physical Compiler, and Module Compiler.[17] In addition, Synopsys provided the standard target technology libraries, link libraries, and symbol libraries that are provided to customers, who usually replace them with their own.[18] Synopsys provided the source code for the Physical Compiler and Module Compiler which allowed Ricoh to review these products. During the source code discovery to

---

[16] Ricoh complains that it has only had "periodic access" to the source code. Yet, other than the time when a new machine had to be purchased and configured because of an unexpected system failure (which occurred on August 26, 2004, the day before the intial review period was due to expire, with Synopsys offering to procure an upgraded machine on August 31, 2004 – 5 days later, not the "several months" Ricoh has concocted), Ricoh has had continuous access to the source code for more than a year. However, Ricoh has not done **any** review of the source code since March 4, 2005, and does not plan to recommence its review until July 11, 2005, because of the purported unavailability of its expert.

[17] Synopsys does not have a product called Design Ware Expert Libraries, and therefore did not provide it.

[18] Design libraries may be created automatically during an intermediate step as part of the input process. Therefore, Synopsys has no such libraries to provide, though Ricoh can generate them if it wishes.

18

date, Ricoh never requested a license key to run the Physical Compiler or Module Compiler products included with the production and one was not originally provided. Synopsys is willing to install license keys for those products—additionally Synopsys can install sample scripts and physical libraries not normally shipped to customers to aid in running Physical Compiler—prior to Ricoh's recommencement of its source code review on July 11, 2005.

Synopsys made two versions of the code available: 1) the earliest version of the code that it had in its possession (version 2.0 from the period around 1990 or 1991) and the most recent version of the code that it had at the time it began the production (version 2003.12). Synopsys provided Ricoh with a printer and 5000 sheets of paper so that it could print any portions of the code it wished. Synopsys also indicated that it would provide the history on any particular portions or modules of the code that Ricoh requested. Ricoh made no such requests. Furthermore, Synopsys offered to answer any questions that Ricoh had about the code, if they provided them in writing. Ricoh did not submit any such questions. In addition to the source code, Synopsys has also produced the product User Manuals.[19]

Ricoh asserts herein that Synopsys has not provided all of the source code for the products identified in its preliminary infringement charts. It is unclear what Ricoh means by "all of the source code." If Ricoh is not referring to the source code for the products that Synopsys has already provided, as addressed above, perhaps Ricoh is referring to the different releases of the software. Since 1997,[20] on average there have been at least two major releases of the Synopsys Logic Synthesis Product per year and several more minor releases. At a minimum, there were at least 18 major releases of the Synopsys Logic Synthesis Product during the potential damage period. Since it takes approximately 30 days on the part of a full time equivalent engineer to provide each buildable version of the software, it is not practicable or reasonable to expect that Synopsys will produce source code for every major release of the product from 1997 to the present. It is also unimaginable how long the trial would take or the

---

[19] In order to comply with Ricoh's request, Synopsys produced the 2002.05 version of the User Manuals, which were the current manuals at the time of production. During the meet and confer regarding this Joint Statement, Synopsys' counsel agreed to produce the 2003.12 version of the manuals as well.

[20] This assumes that Ricoh can claim damages for 6 years prior to the filing of its suit against the Customer Defendants in February 2003.

19

1  verdict forms would have to be if Ricoh is required to prove infringement of every major release of the

2  Synopsys Logic Synthesis Product, let alone if the minor releases are also considered.  In order to

3  narrow the issues for trial and the scope of discovery, Synopsys and the Customer Defendants propose

4  that they enter a stipulation that the infringement liability for the entire damage period be based upon the

5  2003.12 source code release.[21]

6  **Synopsys Supports Consolidation of the Liability Cases if Ricoh Agrees that its**

7  **Infringement Allegations are Based Upon Verilog or VHDL Input and No Third Party Products**

8  **are Included.**  The customer defendants are willing to investigate entering into a stipulation that they

9  provide input to Design Compiler in the form of Verilog or VHDL descriptions, as do the vast majority

10  of Synopsys' customers, if Ricoh will agree that this is the form of input it believes infringes the '432

11  patent, and will also agree that it will not pursue any infringement theories that include a non-Synopsys

12  synthesis software (i.e., any third party software that performs similar or the same functions to Design

13  Compiler).  In that case, Synopsys supports consolidation of the liability phase of the cases, with the

14  much simplified discovery it would entail.[22]  However, if Ricoh continues to allege that the customer

15  defendants do more than the "ordinary use" of Design Compiler or that infringement may be based upon

16  the use of software other than Design Compiler, Synopsys is opposed to consolidation.  Synopsys wants

17  and is entitled to the earliest possible adjudication of whether the ordinary use of the Synopsys Logic

18  Synthesis Product infringes.  If it does not, Synopsys will be free of the cloud confronting its business,

19  free of its indemnity obligations to the Customer Defendants and to all of its customers with respect to

20  infringement allegations by Ricoh.  To the extent any issues remain, Synopsys will withdraw from its

21  involvement in and control of the Customer Defendants suit.

22  Although there is identity of the patent claims at issue in the two suits, they may not be

23

24

25  [21] Synopsys acknowledges that the oldest version of the source code produced (version 2.0) has
    segments that no longer exist in the source code and did not exist in the 2003.12 release version.  That is

26  why Synopsys communicated that it would provide the history with respect to specific segments or
    modules of the code at Ricoh's request, but no such requests have been made.

27

28  [22] Synopsys and the customer defendants believe that the liability phase of the cases could be
    consolidated under these circumstances.  However, as discussed in more detail below, Synopsys and the
    customer defendants suggest that the trial is bifurcated into separate liability and damages phases.

coextensive in a number of other respects. First, although it has never identified anything other than the ordinary use of Design Compiler, in its description of the case, Ricoh contends "the activities that infringe certain of the process claims of the '432 patent involve more than the 'ordinary use' of a Synopsys product called Design Compiler." Second, as stated above, as of yet, it is not clear that the Customer Defendants' case is limited to the Synopsys product as opposed to including also logic synthesis products of its competitors. Third, given the ambiguities of Ricoh's preliminary infringement contentions it is theoretically possible that Ricoh is focused on something that the Customer Defendants do in providing input, for example using an additional software product or graphical user interface, that would translate a flowchart into an RTL specification that could then be input into Design Compiler.[23]

If the Court consolidates the two cases, Synopsys believes that the Court should bifurcate the issues of liability and damages.[24] While the question of liability does involve some issues that are common to each of the defendants in Ricoh's case against the customers, and to the declaratory judgment Synopsys seeks, the question of damages is complicated, does not involve Synopsys, and should be reserved for a separate trial. The question of damages is complicated and particular to each of the Defendants, and, will require specific inquiry into each product alleged to have been designed using the infringing process. Ricoh contends that it is entitled to a portion of the revenue stream from each such product. The Customer Defendants expect to contend that the ASIC products designed using the allegedly infringing process could have been designed using non-infringing alternative techniques and that Ricoh's recovery must, therefore, be limited to the difference in cost of the two design techniques. Proving or disproving each of these damages theories will require delving into the particulars of each design alleged to have been produced by the infringing method, and will be quite time consuming.

---

[23] This last point would be obviated if Ricoh would unambiguously state that its infringement theory is related to the input of Verilog or VHDL descriptions by the Customer Defendants to Design Compiler.

[24] The Customer Defendants request that with the exception of limited discovery sufficient to show the types of input the customers have used in conjunction with Synopsys' product when designing ASICs, the damages discovery should be stayed.

21

**2. Principal factual and legal issues in dispute.**

### a. Ricoh's Description

*Ricoh's statement of disputed factual issues:*

a.     Whether the ASIC Defendants, or someone on their behalf, practice the process disclosed in the '432 patent.

b.     Whether the ASIC Defendants infringe the '432 patent.

c.     The amount of damages to be awarded to Ricoh.

d.     Whether the ASIC Defendants acted willfully in infringing the '432 patent.

*Ricoh's statement of disputed legal issues:*

e.     Whether ASIC Defendants can prove by clear and convincing evidence that the '432 patent is not valid.

f.     Whether the ASIC Defendants can prove their affirmative defenses of estoppel and laches that would preclude Ricoh from enforcing its '432 patent against them, or limit Ricoh's right to damages.

### b. Description of Synopsys and the ASIC Defendants

Defendants agree that the issues identified in b – f are presented in this case. Additional factual issues are in dispute:

g.     Whether the '432 patent is invalid.

h.     Whether Ricoh is barred, under a theory of laches or estoppel, from enforcing its '432 patent against some or all of the allegedly infringing activities.

i.     Whether the actions that Ricoh identifies as the basis of its infringement allegations are anything other than ordinary steps involved in use of the Synopsys Logic Synthesis Product, and whether that ordinary use of the Synopsys Logic synthesis Product infringes the '432 patent.

j.     Whether this action should be stayed pending resolution of the *Synopsys, Inc. v. Ricoh Company, Ltd.* Declaratory Judgment action.

Additionally, the following legal issue is presented in this case:

k.     Whether the design activities claimed in the asserted method claims of Ricoh's '432 patent can serve as the basis of an allegation of infringement under 35 U.S.C. § 271(g).

3.  **The other factual issues which remain unresolved:**

      a.  **Ricoh's Description**

Ricoh believes that the principal issues are set forth above in Ricoh's description.

      b.  **Description of Synopsys and the ASIC Defendants**

Synopsys and the Customer Defendants believe that there are none.

4.  **Parties which have not been served:**

None.

On April 6, 2004, this Court granted Ricoh's motion to amend its Complaint to, *inter alia*, add as a party Aeroflex Colorado, and counsel for Aeroflex agreed to accept service for all Defendants on April 12, 2004.  The Amended Complaint was filed and served on April 12, 2004.

5.  **The additional parties which the parties intend to join and the intended time frame for such joinder:**

None.

6.  **The following parties consent to assignment of this case to the United States Magistrate Judge for trial:**

Neither party consents to assignment to a Magistrate Judge for trial.

**ALTERNATIVE DISPUTE RESOLUTION**

7.  **The parties have not filed a Stipulation and Proposed Order Selecting an ADR process and the ADR process to which the parties jointly (or separately) request referral:**

      a.  **Ricoh's Position**

During the pendency of this litigation, Ricoh and Synopsys have occasionally discussed settlement of Ricoh's infringement claims against the ASIC Defendants, but the ASIC Defendants have not engaged in any negotiations with Ricoh.  As noted above, in July 2004, all of the parties were able to enter into a stipulation to narrow the scope of Synopsys' declaratory judgment claims to be congruent with Ricoh's theory that the ASIC Defendants are infringing claims 13-17 of the '432 patent.  Ricoh has invited the ASIC Defendants to negotiate with respect to a license, but the ASIC Defendants have refused.  Ricoh is willing to enter into ADR with the ASIC Defendants.  Ricoh is also willing to have

23

Synopsys participate in such an ADR. Ricoh believes that conducting an ADR at this time may be fruitful since the Court recently has issued its claim construction ruling. Ricoh would prefer either having a settlement conference with the Court (Judge Jenkins), or if the Court is unavailable, then a mediation by a knowledgeable patent attorney, who also may be qualified to serve as an early neutral evaluator.

### b. Description of Synopsys and the ASIC Defendants

The Customer Defendants do not believe that there is any purpose to settlement negotiations between them and Ricoh. Settlement of this case is most likely if there is a global settlement negotiated between Ricoh and Synopsys. Synopsys disputes the fact as stated by Ricoh that "the parties have occasionally discussed settlement, but have not engaged in negotiations." To the contrary, at Synopsys' urging there have been a total of four settlement meetings between Synopsys and Ricoh, three in Tokyo and one in San Francisco. The second meeting resulted in the significant narrowing of the case and amended pleadings that took place in July 2004. At the third and fourth meetings, Synopsys made specific cash and non-cash offers of settlement, but the parties were unable to agree. Following the receipt of the Court's claim construction ruling, by letter dated April 24, 2005, Synopsys made another offer of settlement, which was rejected by Ricoh in a letter dated May 2, 2005. Ricoh's response made it obvious that the parties are still at an impasse.

Until Ricoh provides its Final Infringement Contentions and details at a minimum how it is reading the non-input claim elements of its asserted claims on the Synopsys Logic Synthesis Product source code, the Customer Defendants and Synopsys do not believe that an ADR procedure will be productive. Once such contentions have been provided, Synopsys and the Customer Defendants request referral to the Court's ENE ADR process, preferably with a knowledgeable patent attorney.

### DISCLOSURES

**8. The parties certify that they have made the following disclosures:**

### a. Ricoh's Position

In May 2003, Ricoh served its initial disclosures in the Delaware action and produced documents identified therein.

The ASIC Defendants also served an initial disclosure in May 2003, later admitted that the disclosure was "inartfully drafted," and after Ricoh filed a motion to compel, the ASIC Defendants belatedly amended their disclosure in January 2004.  The ASIC Defendants have refused to adequately identify many of the individuals in the disclosure, and Ricoh has been unable to locate or contact approximately ten of the individuals listed.

With respect to document production, Ricoh believes that the ASIC Defendants have still not produced all of the documents identified by the categories of their initial disclosures.

### b.  Position of Synopsys and the ASIC Defendants

The Defendants served an initial disclosure statement on May 30, 2003, and an amended version of their initial disclosure statement on January 20, 2004.  Defendants have produced documents described in their amended initial disclosure statement, including prior art that they believe demonstrates the invalidity of the patent and manuals describing Synopsys' Design Compiler product that demonstrate that Design Compiler does not practice Ricoh's patents.

### DISCOVERY

**9.  The parties have presented the following discovery plans:**

On March 24, 2004, Magistrate Judge Chen ordered that parties to submit a discovery plan by no later than April 23, 2004.  A copy of Ricoh's discovery plan is attached as Exhibit 1, and a copy of the Defendants' discovery plan is attached as Exhibit 2.  These discovery plans summarize the discovery disputes immediately before the stay of discovery on May 4, 2004.

### a.  Ricoh's Position. [25]

In 2003, Synopsys threatened Ricoh that, if Ricoh continued to press its patent claims against the ASIC Defendants, Synopsys would order its counsel (who also represent the ASIC Defendants) to fight on every issue and make the litigation as expensive as possible.  Synopsys specifically stated that it would not produce evidence until ordered to do so by the Court.  Before discovery was stayed in May

---

[25] Ricoh's comments do not address the responsiveness of Aeroflex Colorado Springs as it was added shortly before the discovery stay went into effect.

25

2004, Synopsys followed through on that threat. The Court's irritation at such tactics was noted during the hearing on April 6, 2004.

Attempting to manage the refusal by Synopsys and the ASIC Defendants to participate in discovery, in April 2004, Magistrate Judge Chen required that the parties submit a discovery plan. Each of the parties submitted their discovery plans on April 23, 2004, and they are attached as Exhibits 1 and 2. During the June 2, 2005 conference between counsel, Ricoh attempted to discuss and resolve these discovery issues, but counsel for the ASIC Defendants and Synopsys declined to discuss any of these discovery issues. Thus, the ASIC Defendants and Synopsys are still refusing to comply with their obligations and provide discovery (document, source code, etc.) and to make matters worse, propose an abnormally early October 2005 fact discovery cut-off date. Ricoh believes that a prompt resolution of these discovery issues is essential to meeting the aggressive discovery schedule proposed by the parties.

**Areas of agreement.** As set forth in the discovery plan submitted by Synopsys and the ASIC Defendants on April 23, 2004 (and attached as Exhibit 2), the parties had substantial areas of agreement regarding the production of documents and a process for scheduling depositions. The Court should use those areas of agreement as a starting point. Ricoh requests that Synopsys and the ASIC Defendants immediately complete their production of documents by June 30, 2005, and proceed with depositions on Ricoh's long-standing Rule 30(b)(6) notices in August through November.

Ricoh's proposed schedule is based upon the assumption that discovery will be cooperative. The Court should strongly advise counsel that it will not tolerate the prolonged delays, gamesmanship and incessant motions practice that marked the first stage of discovery.

**Areas of disagreement.** Although Synopsys and the ASIC Defendants concede that discovery should be reopened, at least on a limited basis (*see, e.g.,* footnote 12), it opposes a general reopening of discovery on the merits. Ricoh believes that the Court should reject out of hand the efforts of Synopsys and the ASIC Defendants to impose a series of additional stays on discovery, and should instead put this case on a path for trial on all issues.

With respect to the difference in the parties' April 2004 discovery plans, the following is a summary of Ricoh's understanding of the discovery disputes as they were frozen in time in May 2004:

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

**(i)** **Production of Documents**

**(a) General Production of Documents**

The parties had agreed in principle that all non-privileged documents (other than e-mails) required to be produced pursuant to Rule 26(a) or responsive to document requests should be produced by no later than April 30, 2004.

There are no disputed issues with respect to the scope of Ricoh's document production.

The ASIC Defendants and Synopsys failed to produce all of their documents by April 30, 2004. The documents that they have refused to produce generally fall into the following categories, each of which have been the subject of numerous letters and meet and confer sessions:

(1) Documents in the possession of ASIC Defendants Matrox Graphics and Matrox Electronics relating to the design and manufacture of ASICs. These had defendants contended that they should not be obligated to produce such documents unless and until the Court denied their Rule 12(c) motion for judgment on the pleadings, which the Court denied by Order on April 22, 2004. Nevertheless, at a meet and confer on April 23, 2004, counsel for the ASIC Defendants refused to commit to withdraw this objection and produce the relevant and responsive documents that they are withholding. No further justification for the withholding of these documents has ever been identified.

(2) Synopsys and the ASIC Defendants have limited the scope of their document production to what they call "Design Compiler products." Ricoh's preliminary infringement contentions specifically name additional Synopsys software products that Ricoh contends the ASIC Defendants employ while those defendants practice the process described in the '432 patent. Ricoh contends that Synopsys and the ASIC Defendants should provide discovery with respect to all of the products listed in Ricoh's preliminary infringement contentions, but Synopsys and the ASIC Defendants have refused.[26]

---

[26] Synopsys has made similar objections and limitations in its interrogatory responses. Ricoh believes that the resolution of this issue as it relates to the document production should be equally applicable to the interrogatory responses. The afternoon this CMC was to be filed, Synopsys advised Ricoh that Synopsys may be willing to provide Ricoh access to the "keys" to some but not all of the additional products at issue. Although Synopsys has not identified which versions or the other limitations to this offer, the fact that the offer was made after more than a year and a half after Ricoh first requested this code, shows some progress. It also illustrates why additional discovery is needed, because Synopsys and the ASIC Defendants have yet to produce the underlying manuals, user documents, design

27

The differences are set forth in the following table:

| Ricoh Contention re Products at Issue | Synopsys Contention re Products at Issue |
|---|---|
| Design Compiler[27] | Design Compiler |
| HDL Compiler for Verilog | HDL Compiler for Verilog |
| VHDL Compiler | VHDL Compiler |
| Design Ware Foundation libraries | Design Ware Foundation libraries |
| Presto | |
| Physical Compiler | |
| Module Compiler | |
| Design Compiler Basic Library[28] | |
| DesignWare Expert Libraries | |
| DesignWare Building Block IP | |
| target technology libraries | |
| Design libraries | |
| link libraries | |
| symbol libraries | |
| synthetic libraries | |

(3) The ASIC Defendants have refused to provide documents with respect to any RTL inputs (see earlier question), logic synthesis methods or products other than the Synopsys Design Compiler products. Ricoh contends that it has placed at issue the ASIC Defendants' infringement of the '432 patent without limiting the infringement claim to the use of Design Compiler.

(4) The ASIC Defendants have not identified the ASICs they have actually designed and manufactured using either Synopsys products or otherwise. At one point in early 2004, they said that there were 63 separate ASICs that allegedly were designed and manufactured with Synopsys' Design Compiler products; however, only a few of those ASICs have been actually identified to Ricoh. Ricoh suspects that the number has increased in the past year.

(5) The ASIC Defendants' objections to the discovery requests are unreasonable. For example, they object to the definitions of the terms "ASIC Design," "ASIC Product", and "ASIC Method" as vague, overly broad, unduly burdensome and not reasonably calculated to lead to the

---

documents and the details of the actual use by the ASIC Defendants .

[27] This term includes all variations of Design Compiler, including DC Ultra, DC Ultra Opt, DC Expert, DC Expert Plus, and DC Pro.

[28] This component is also known as the "Standard Library."

28

discovery of admissible information, and incorporate the objection by reference into every response they make.  However, counsel for all parties had agreed that the terms "ASIC Design," "ASIC Product", and "ASIC Method" were limited to methods and products made by a process involving computer assisted design with logic synthesis.  The ASIC Defendants have said that their production of documents are "subject to" these objections, without disclosing whether they are actually withholding documents based upon these and other objections.

(6) The parties cannot agree on when discovery with respect to sales and damages should commence.  Ricoh requests that the ASIC Defendants produce the requested sales and financial documents by July 15, 2005.

(7) Aeroflex has produced a number of CD's that Ricoh cannot read or access.

### (b)  Production of Synopsys' source code

Synopsys has produced some of its source code for occasional periods at a secure Synopsys facility.  However, Synopsys has refused to produce the source code for all of the products listed in Ricoh's preliminary infringement contentions and alleged by Ricoh as being employed by the ASIC Defendants in carrying out the infringing process.  As noted in footnote 26, the afternoon this CMC was to be filed, Synopsys proposed to provide Ricoh with the "keys" to have access to additional source code.  Until Ricoh's experts are able to determine the versions of that code and actually evaluate it, Ricoh cannot determine the scope of this offer.  However, there are still additional version of code that Synopsys and the ASIC Defendants have never produced.  In addition, Ricoh requested, and on June 3, 2005, Synopsys agreed, that the number of experts permitted to review Synopsys' source code be increased from three to five.

### (c)  Production of documents pursuant to Rule 33(d)

As of May 2004, the parties were at an impasse with respect to the ASIC Defendants' production of documents pursuant to Fed. R. Civ. P. 33(d).  On May 30, 2003, Ricoh served 10 interrogatories upon the ASIC Defendants.  In response, the ASIC Defendants objected but often generally promised to produce documents pursuant to Rule 33(d).  However, none of the ASIC Defendants specifically identified those documents by either title or bates number, and Ricoh believes that in most instances no responsive documents have been produced.

29

### **(d) Production of emails**

The parties had agreed that production of e-mails should be completed by no later than May 31, 2004, but no emails were ever produced.  Ricoh believes that these documents should be produced by no later than July 15, 2005.  There may be unresolved issues with respect to other forms of electronic discovery.

### **(e) Production of privilege logs**

In 2004, the parties were at an impasse with respect to the date for production of privilege logs.  Ricoh proposes that privilege logs be exchanged by July 15, 2005.

In April 2004, the parties were also at an impasse with respect to Ricoh's proposal that communications between Ricoh and its trial counsel not be logged.  Ricoh believes that there is no purpose in providing a log of those communications, which relate both to Ricoh's pre-filing investigation as well as its preparation and filing of the complaint.  In 2004, Synopsys and the ASIC Defendants insisted that all pre-filing communications between Ricoh and its trial counsel be logged.  Ricoh believes that there remains an outstanding issue with respect to communications between Synopsys and the ASIC defendants, which have not been produced or logged.

### **(f) Resolution of document discovery issues**

The parties were unable to agree on a schedule or a process for resolving their document discovery disputes.  Ricoh proposes that, consistent with Magistrate Judge Chen's directives, the parties work together, with the Court's assistance as appropriate, to resolve all objections with respect to documents that the parties are seeking pursuant to the currently outstanding discovery requests, by no later than June 30, 2005, and produce by July 15, 2005 all documents that have been the subject of objections but that have not specifically been ordered by the Court not to be produced.

### **(ii)    Responses to Requests for Admission**

Ricoh has responded to all outstanding requests for admissions, and Ricoh is not aware of any outstanding issues with respect to its responses.

In 2004, the parties were at an impasse, however, with respect to the ASIC Defendants' responses.  For example:

(1) The ASIC Defendants have objected to and limited their responses to many of the

requests. Some of the requests include objections over issues that that have been resolved. For example, requests 9-19 related to whether the ASIC Defendants performs certain actions relating to chip design. The ASIC Defendants have objected to the term "ASIC method as being incomprehensible...so broad as to be meaningless" in the objections to these requests. This objection is made even though the parties had previously come to an understanding regarding certain terms, including the term "ASIC method."

(2) The ASIC Defendants have objected to Requests 9-19 as calling for a claim interpretation and a question of law, when in fact it calls for a question of fact. For example, Request No. 17 seeks an admission of whether the "Defendant performs an ASIC Method that includes generating from a netlist mask data required to produce an integrated circuit having a desired function." No substantive responses have been provided.

(3) Some of the Matrox defendants should amend their responses to Request No. 20, which asks whether "The Court has personal jurisdiction over defendant." Matrox Tech has denied that the court (at the time of the response, a Delaware District Court presided over this case) had personal jurisdiction. However by their own admission, Matrox Tech is a company organized under the laws of Delaware. All defendants acceded the personal jurisdiction of this Court as part of the desire to have this case transferred from Delaware to California. Therefore, if true, the Matrox defendants should supplement their response to Request 20 and remove this lingering issue.

### (iii) Rule 30(b)(6) depositions

#### (a) Rule 30(b)(6) discovery of Ricoh

There are no outstanding issues with respect to Ricoh's Rule 30(b)(6) witnesses. Ricoh has responded to every Rule 30(b)(6) deposition notice from either Synopsys or the ASIC Defendants. On July 15, 2003, Ricoh produced a corporate witness in response to the ASIC Defendants' Rule 30(b)(6) notice. During the week of May 30, 2004, Ricoh produced additional corporate designees for depositions in Japan.

#### (b) Ricoh's Rule 30(b)(6) notices to the ASIC Defendants

The parties were at an impasse with respect to scheduling and taking the corporate depositions of the ASIC Defendants pursuant to Ricoh's September 25, 2003 Rule 30(b)(6) notices. The

ASIC Defendants have stated that they may produce twenty (20) or more different corporate designees in response to Ricoh's long-pending Rule 30(b)(6) notices. Ricoh requests that all Rule 30(b)(6) depositions of the ASIC Defendants be completed within three months of the completion of their document production, so follow-up individual depositions may be completed in time for the expert reports.

During the hearing on March 24, 2004, Magistrate Judge Chen instructed the parties to identify actual deposition dates "at least by category if not by witness." The burden is on the ASIC Defendants to identify those dates. They refused to do so.

In particular, on September 25, 2003, Ricoh served identical Rule 30(b)(6) notices upon each of the ASIC Defendants as parties in the *Ricoh v. Aeroflex* litigation. None of the ASIC Defendants ever have proffered *any* dates for *any* of the 30(b)(6) topics.

Ricoh proposes that the ASIC Defendants identify by June 30, 2005 the names of all corporate witnesses, and that the parties cooperate in scheduling the depositions of those witnesses starting in August, after the document production has been accomplished, with completion of the depositions in October. Requiring the ASIC Defendants to identify witnesses, topics and deposition dates is consistent with this Court's instructions during the March 24, 2004 hearing and this Court's Standing Order, and is the most effective way to schedule and complete these corporate depositions.

### (c) Ricoh's Rule 30(b)(6) notices to Synopsys

Ricoh has pending a Rule 30(b)(6) deposition notice to Synopsys that has yet to be scheduled. The parties agree that document discovery should be resolved prior to going forward with depositions.

### (iv) Fact Depositions

In addition to taking Rule 30(b)(6) depositions, Synopsys and the ASIC Defendants have already taken several other depositions, including Dr. James Davis, Mr. Brian Bershader, Dr. Tom Rhyne, Mr. Yamada, and Dr. Kobayashi. Some of these witnesses also were corporate designees of Ricoh.

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

Ricoh proposes that the parties cooperate in scheduling other fact depositions starting in August (after document production is completed) to the end of fact discovery at locations that are convenient for the witnesses and mutually agreeable to the parties.

### (v) Total Deposition Time

With respect to the number of hours for deposition, counsel for all of the parties had agreed before the ASIC Defendants case was transferred from Delaware, that each side would have 240 hours of deposition testimony from fact witnesses. Ricoh has to take depositions of seven ASIC Defendants plus Synopsys, while they have only one opposing party to depose. Ricoh believes that such a modification of the Federal Rules of Civil Procedure is useful here, and there is no reason to deviate from this prior agreement of counsel. There is no question that additional deposition time is needed; since this agreement was established, the ASIC Defendants have identified over thirty (30) people who have relevant factual information in their initial disclosure; another party has been added (Aeroflex Colorado Springs, Inc.); and the ASIC Defendants have indicated that they may produce as many as twenty (20) corporate witnesses in response to Ricoh's Rule 30(b)(6) deposition notice to each defendant. Despite the additional party and many witnesses, Ricoh is willing to abide by the prior agreement of counsel.

With respect to Synopsys' proposal that depositions needing translations "should be treated as 30 minutes against this time limit," Ricoh notes that, in Delaware, the 240 hours of total deposition time was arrived at as a compromise. Then, as now, counsel for Synopsys was proposing 160 hours of total deposition time per side, but also that each hour of depositions of non-English speaking witnesses be counted as only 30 minutes against the total. Ricoh pointed out that this proposal would effectively give the other side almost double the amount of deposition time as Ricoh, as most of Ricoh's witnesses are native Japanese speakers. Rather than adopting the 30 minute proposal, the 240 hour figure was accepted as a compromise. Ricoh does not agree that the depositions of non-English speaking witnesses should effectively last two days each as a matter of right, but, as the parties have agreed with respect to any witness, Ricoh willing to consider requests for more than a full deposition day of non-English speaking witnesses on a case-by-case basis.

### b. Position of Synopsys and the ASIC Defendants

Ricoh's description of the case and its discovery statement above include multiple unjustified and inaccurate assertions that Synopsys and the Customer Defendants have refused to participate in discovery which Synopsys and the Customer Defendants dispute but will not address here. The fact is that Synopsys and the Customer defendants see Ricoh as wanting to engage in a wide-ranging fishing expedition at their expense all without ever defining in any meaningful sense what this case is about. Synopsys and the Customer Defendants are looking to the Court to assist the parties in framing the case and thereby defining the relevant discovery before discovery is reopened so that the discovery process can move forward in a reasonable and expeditious manner. As stated above, given the Court's claim construction ruling and depending upon the Court's view of some of the issues presented herein, Synopsys and the Customer Defendants do not believe that discovery regarding manufacturing processes, any design processes not taking place in the United States, any discovery related to design using logic synthesis software other than that of Synopsys, and discovery related to the ASICs products themselves (except perhaps as it relates to damages, which relevance is also disputed by Synopsys and the Customer Defendants) is relevant. Once the parties have provided their final contentions and the Court has provided guidance with respect to the issues raised herein, the parties should exchange revised discovery plans.

In addition, the Defendants believe that a modification of the deposition time is appropriate in this matter, and believe that a total of 160 hours of deposition time is ample modification from the limits on deposition testimony set in the Federal Rules of Civil Procedure to obtain the discovery necessary in this litigation. Also, because many of Ricoh's witnesses will likely require a translator, each hour of deposition testimony requiring translation should be treated as 30 minutes against this time limit. Furthermore, since the parties have stipulated that testimony taken in this action will be admissible in *Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. CV 03-02289 MJJ (EMC), and vice versa, the total time for deposition testimony in the two actions combined should not exceed this limit. The Defendants are not advocating that the Court give Synopsys 160 hours and grant them an additional 160 hours.

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

# PROPOSED SCHEDULE

**10. A proposed schedule is provided below**

### a. Ricoh's Position

Ricoh asserted an infringement claim with respect to the '432 patent, and agrees that it should be treated as the party claiming infringement of that patent. In July 2004, the parties harmonized the matters in dispute in the two cases, so the declaratory judgment counterclaims in *Ricoh v. Synopsys* are identical in scope with the declaratory judgment claims in *Synopsys v. Ricoh*. The two actions should be consolidated and Ricoh should be treated as the plaintiff.

Because all discovery has been stayed by the Court and will remain stayed until this Court lifts the stay, Ricoh submits that the calculation of dates under the Patent Local Rules based on the date of the Claim Construction Ruling ("CCR") is not appropriate. The Patent Local Rules contemplate that all fact discovery will proceed during the claim construction process but in this case, the Court directed that discovery should be "focused" on claim construction issues in December 2003, and in May 2004, the Court imposed an absolute discovery stay on all issues of liability and damages. Absent such a stay, Ricoh would have had the benefit of at least 13 months of discovery to this point.

Ricoh's proposed schedule allots six months for merits discovery prior to the exchange of final infringement contentions and expert reports. This is an aggressive schedule that depends upon Synopsys and the ASIC Defendants cooperatively engaging in discovery, and avoiding the type of conduct condemned by the Court on April 6, 2004. The proposed schedule obligates the ASIC Defendants and Synopsys to promptly produce all documents that should have been produced pursuant to the May 2003 initial disclosures (suitably updated), as well as all documents responsive to Ricoh's discovery requests, and then establishes subsequent dates based upon that date. The dates proposed below are based on the latter proposal and assume the stay will be lifted the day after the June 14, 2005 status hearing and that the ASIC Defendants and Synopsys produce all initial disclosure documents, documents responsive to Ricoh's discovery requests, and the source code for the identified products by the end of June, 2005.

Synopsys and the ASIC Defendants proposed schedule reinforces their inappropriate insistence that Synopsys's later filed declaratory judgment action should somehow take priority over Ricoh's first filed patent infringement action. This prejudice inculcates every aspect of their proposal, and illuminates their desire to litigate incrementally each of the substantive patent infringement issues. Synopsys' schedule also reinforces its attempt to exclusively and impermissively focus the litigation to matters that Synopsys want to litigate, which are only a biased subset of issues in Ricoh's infringement lawsuit.

Disregarding Ricoh's interest in resolving both the patent infringement and declaratory lawsuits, Synopsys has provided a schedule for resolution of its declaratory judgment lawsuit, but has not provided a similar schedule for the ASIC defendants in the patent infringement lawsuit. Instead, Synopsys desires to waste the Court's resources by first attempting to resolve a limited number of the pending issues of the patent infringement suit. Then when the first "segment" of the lawsuit is completed, Synopsys and the ASIC defendants urge that the Court and parties repeat the case scheduling process by submitting new discovery plans and holding an additional case management conference. Not only does this perpetually delay Ricoh's infringement claims, but this attempt to piecemeal the issues is intended to prevent Ricoh from ever obtaining an injunction against the actual infringers. The ASIC defendants do not even provide a proposed case management schedule, but instead suggest that any schedule is dependant upon the resolution of the later filed declaratory judgment lawsuit and want guidance from the court and how to proceed. The suggestion that Synopsys has the supreme privilege of the earliest possible adjudication is inconsistent with the first rule of the Federal Rules of Civil Procedure to "secure a just, speedy and inexpensive determination of every action."

Synopsys has indicated is agreeable to a shortened discover period (until October 2005), but has not agreed to provide *any* of the requested discovery by that date. Throughout this litigation, Synopsys has unilaterally defined what information it will provide (which is narrower than the issues in Ricoh's lawsuit). Of the information that Synopsys has agreed to produce, it has done so at its own pace and response information is still outstanding. Now, Synopsys seeks an accelerated case management schedule which will mostly likely result in Ricoh not receiving all of the information it is rightfully

36

entitled to receive during the discovery time period with a reasonable time to analyze the information and have the opportunity to follow up on an issue that arise from the information.

### b. Position of Synopsys and the ASIC Defendants

If the customer suit is not limited to Verilog and VHDL inputs, Synopsys and the Customer Defendants seek a stay of the action against the Customer Defendants to allow the underlying dispute to be resolved in the *Synopsys, Inc. v. Ricoh Company, Ltd.* declaratory judgment action. As stated above, once Synopsys establishes that the ordinary use of the Synopsys Logic Synthesis Product does not infringe the '432 patent, the case against the Customer Defendants should be resolved as well. Since Ricoh must show that each element of its asserted claims are infringed, it is indisputable that if the non-input claim elements are not found in the Synopsys Logic Synthesis Product, then the customer defendants do not infringe regardless of the nature of their input.

Synopsys has set forth a time frame for the trial of the Declaratory Judgment case alone or the consolidated liability trial based upon VHDL and Verilog inputs. If the customer case is not so limited and the request for a stay is denied, Defendants believe that trial of the suit against the Customer Defendants should be bifurcated, into separate trials on liability and damages (which would include the question of whether infringement was willful or not) for the reasons stated above. Synopsys also opposes consolidation of the cases. Synopsys and the Customer Defendants do not believe they can submit a schedule for the Customer Defendants' case at this time since any such schedule is dependent upon the resolution of the many issues presented herein. If Ricoh is permitted the unreasonable, wide-ranging discovery it seeks, Ricoh's proposed discovery cut-off is unworkable as there will be at least three months of document discovery before depositions start and will 240 hours of depositions for each side, seventy days of deposition thereafter. Once the parties submit their final contentions and new discovery plans, the Court should hold another status conference and the parties could provide their scheduling proposals then based on the guidance provided by the Court on June 14.

### c. The Parties' Proposed Schedules

| Event | Ricoh's Proposed Dates | Synopsys' Proposed Dates |
|---|---|---|
| Claim Construction Ruling ("CCR") | April 7, 2005 | April 7, 2005 |
| Reopening of discovery | June 15, 2005 | -- |
| ASIC Defendants and Synopsys produce all initial disclosure documents, documents responsive to Ricoh's discovery requests and source code for the identified products | June 30, 2005 | -- |
| Deadline to disclose reliance upon opinion of counsel and produce related documents | June 30, 2005 | -- |
| Final Infringement Contentions | December 15, 2005 | -- |
| Final Invalidity Contentions | January 13, 2006 | -- |
| Fact discovery cut-off | January 20, 2006 | October 7, 2005 |
| Submission of expert reports by party with the burden of proof | January 20, 2006 | -- |
| Submission of responsive expert reports | February 17, 2006 | November 4, 2005 |
| Rebuttal Expert Reports | March 10, 2006 | December 2, 2005 |
| Expert discovery cut-off | March 24, 2006 | December 21, 2005 |
| Dispositive motion cut-off | March 31, 2006 | January 17, 2006 |
| Dispositive Motions Oppositions Due | April 17, 2006 | January 31, 2006 |
| Dispositive Motions Replies Due | April 24, 2006 | February 7, 2006 |
| Dispositive motion hearing date | To be set by the Court on or after May 8, 2006 | February 21, 2006 |
| File motions in limine | April 14, 2006 | March 7, 2006 |
| File oppositions to motions in limine | May 5, 2006 | March 21, 2006 |
| File Joint Proposed Final Pre-trial Order | May 26, 2006 | April 7, 2006 |
| Pre-trial Conference | To be scheduled by Court | April 17, 2006 |
| Trial Date | June 2006 | May 1, 2006 |

## CLAIM CONSTRUCTION HEARING

The Court issued its ruling on April 7, 2005.

## TRIAL

**11. The parties request a trial date as follows**

### a. Ricoh's Position

Ricoh has proposed that trial begin June 2006.

### b. Position of Synopsys and the ASIC Defendants

Synopsys proposes that trial of its declaratory judgment action begin on May 1, 2006.

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

**12. The parties expect that the trial will last for the following number of days**

**a.   Ricoh's Position**

Ten trial days.

**b.   Position of Synopsys and the ASIC Defendants**

Synopsys believes that its declaratory judgment action can be tried in eight trial days.

Synopsys and the Customer Defendants believe that, if the Customer Defendant action is not stayed, and the action is consolidated with the Synopsys case, the questions of liability, including infringement and validity, should be tried first.  This trial could be completed in approximately twelve days.  If liability is established, a separate trial can be scheduled to determine damages.  Defendants believe that such a trial would require approximately two weeks.


Dated:  June 8, 2005                              DICKSTEIN SHAPIRO MORIN & OSHINSKY



                                                  By:   /s/ Gary M. Hoffman
                                                        Gary M. Hoffman
                                                        Kenneth W. Brothers
                                                        Edward A. Meilman
                                                        Eric Oliver

                                                        Attorneys for Ricoh Company, Ltd.



Dated: June 8, 2005                               HOWREY LLP



                                                  By:   /s/ Teresa M. Corbin
                                                        Teresa M. Corbin
                                                        Christopher Kelley
                                                        Attorneys for Plaintiff Synopsys and ASIC
                                                        Defendants

**CASE MANAGEMENT ORDER**

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this order.  In addition the Court orders:

Dated: _____                    _____
                                            HON. MARTIN J. JENKINS

**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SYNOPSYS, INC,

       Plaintiff,

  v.

RICOH COMPANY, LTD,

       Defendant.

_____/

No.   C03-2289 MJJ
       C03-4669 MJ

**2ⁿᵈ AMENDED
PRETRIAL ORDER**

It is hereby **ORDERED** pursuant to F.R.C.P. and the Local Rules of this Court:

**TRIAL DATE**: Monday, **July 24, 2006** at 8:30 a.m., Courtroom 11, 19th floor.
TRIAL LENGTH is estimated to be **3 weeks**. **(X)** jury  () court

**PRETRIAL CONFERENCE DATE**: Tuesday, **July 11, 2006** at 3:30 p.m.
(Counsel who intend to try the case must attend the pretrial conference. Counsel shall be prepared to discuss all aspects of the case, including settlement. Pretrial to conform to the attached instructions.)

DISCOVERY LIMITS:    Depositions:  Pltf.      Def.
                        Interrogs:   Pltf.      Def.
                        Doc. Req.:   Pltf.      Def.
                        Req. Adm.:  Pltf.      Def.

(Per Federal Rules of Civil Procedure and Local Rules, subject to any provisions below)

NON-EXPERT DISCOVERY CUTOFF is: **1/27/2006**

DESIGNATION OF EXPERTS: **2/10/2006**     Pltf.  **4**   Def.  **4**
     EXPERT REPORTS: **2/17/2006**
     DESIGNATION OF SUPPLEMENTAL/REBUTTAL EXPERTS: **3/10/2006**
     SUPPLEMENTAL/REBUTTAL REPORTS:  **3/10/2006**
     Parties shall conform to Federal Rule of Civil Procedure 26(a)(2).

EXPERT DISCOVERY CUTOFF is: **3/31/2006**.

DISPOSITIVE MOTIONS SHALL be **heard** by:   **May 16, 2006.**

SETTLEMENT CONFERENCE shall be held before Magistrate Judge **Spero** and scheduled to take place **June 2006.**

FURTHER STATUS CONFERENCE: at 2:00 p.m.

**ADDITIONAL ORDERS:**
_____
_____

**PLAINTIFF IS ORDERED TO SERVE A COPY OF THIS ORDER ON ANY PARTY SUBSEQUENTLY JOINED IN THIS ACTION.**

Dated: 7/25/2005

_____
MARTIN J. JENKINS
United States District Judge

# PRETRIAL INSTRUCTIONS

Counsel SHALL meet and confer in good faith in advance of complying with the following pretrial requirements for the purpose of preparing for the Pretrial Conference and to discuss settlement.

## A.   20 CALENDAR DAYS PRIOR TO PRETRIAL CONFERENCE

The following shall be accomplished not later than **20 calendar days** prior to the scheduled Pretrial Conference:

1.   **PRETRIAL STATEMENT**:  The parties shall comply in all respects with FRCivP 16(c)(1)(2)(3)(4)(7)(13)(14)(15)(16)

2.   **JURY INSTRUCTIONS**:

a.   Joint Set of Agreed Upon Instructions:  The parties shall jointly prepare a set of agreed upon jury instructions, and shall file an original and two copies of same **20 calendar days** prior to the Pretrial Conference.

b.   Separate Instructions:  Separate instructions may be submitted only as to those instructions upon which the parties cannot agree.  Each separate instruction shall note on its face the identity of the party submitting such instruction.

No later than **10 calendar days** prior to the Pretrial Conference, the party or parties objecting to an instruction shall file a written objection to such instruction.  The form of the objection shall be as follows:

(1) Set forth in full the instruction to which the objection is made;

(2) Provide concise argument and citations to authority explaining why the opposing party's instruction is improper; and

(3) Set forth in full an alternative instruction, if any.

An original and two copies of the separate instructions with objections shall be filed **10 calendar days** prior to the Pretrial Conference.

c.   Substance and Format of Instructions:  The instructions shall cover all substantive issues.  Proposed instructions shall be consecutively numbered.  Each proposed instruction shall be typed in full on a separate page and cover only one subject, to be indicated in the title.  Citations to the authorities upon which the instruction is based shall be included.  Instructions shall be brief, clear, written in plain English and free of argument.  Pattern or form instructions shall be revised to address the particular facts and issues of this case.

d.   Preliminary Statement and Instructions:  If the parties wish to have a preliminary statement read to the jury, and/or preliminary instructions given to the jury, they shall jointly prepare and submit to the Court, **one week** prior to trial, the text of the statement and instructions, clearly marked.

e.   Clean Copies:  The parties shall be prepared to submit two clean copies of instructions without citations, titles or attribution on or before the date trial commences.

3.   **FINDINGS OF FACT and CONCLUSIONS OF LAW**:  In non-jury cases, each party shall serve and lodge with the Court proposed findings of fact and conclusions of law on all material issues.  Proposed findings shall be brief, written in plain English and free of pejorative language and argument.

2

4.     **EXHIBITS**:

a.     <u>Provide Copies of Exhibits to Other Parties</u>:  Each party shall provide every other party with one set of all proposed exhibits, charts, schedules, summaries, diagrams and other similar documentary materials to be used in its case in chief at trial, together with a complete list **(see attached)** of all such proposed exhibits.  Voluminous exhibits shall be reduced by elimination of irrelevant portions or through the use of summaries.  Each item shall be <u>pre-marked with an exhibit sticker</u> **(see attached)**, plaintiff's exhibits with numbers, defendant's exhibits with letters.  If there are numerous exhibits, they should be provided in three-ring binders with marked tab separators.  All exhibits which have not been provided as required are subject to exclusion.

b.     <u>Stipulations re Admissibility</u>:  Prior to the Pretrial Conference, the parties shall make a good faith effort to stipulate exhibits into evidence and be prepared to place their admission on the record at the Pretrial Conference.  If stipulation to admission in evidence is not possible, the parties shall make every effort to stipulate to authenticity and foundation absent a legitimate (not tactical) objection.

c.     <u>Provide Copies of Exhibits to Court</u>:  One set of exhibits shall be provided to the Court on the **one week prior to trial.**.  Each set shall be in binders, tabbed and indexed.

d.     <u>Disposition of Exhibits After Trial</u>:  Upon the conclusion of the trial, each party shall retain its exhibits through the appellate process.  It is each party's responsibility to make arrangements with the Clerk of the Court to file the record on appeal.

5.     **WITNESSES**:

a.     <u>Jury Trials</u>:  The Pretrial Conference Statement shall include a witness list required by FRCivP 16(c)(7).  Expert witnesses shall be listed separately.  In addition, in the case of expert witnesses, the summary shall **clearly state the expert's theories and conclusions and the bases therefor and SHALL be accompanied by a curriculum vitae**; if the expert has prepared a report in preparation for the testimony, a copy thereof shall be furnished to opposing counsel.  Witnesses not included on the list may be excluded from testifying.

b.     <u>Non-Jury Trials</u>:  In non-jury cases, each party shall serve and lodge with the Court a written <u>narrative statement</u> of the proposed direct testimony of each witness under that party's control in lieu of a summary.  Each statement shall be marked as an exhibit and shall be in a form suitable to be received into evidence.

6.     **MOTIONS IN LIMINE**:  Motions in limine are limited to motions to exclude specific items of evidence (i.e. specific testimony or exhibits) on a ground and upon such authority as would be sufficient to sustain an objection to such evidence at trial.  Motions in limine shall be filed and served no later than **ten Court days** prior to the date set for the pretrial conference.  Any party opposing such a motion in limine shall file and serve its opposition papers no later than **five Court days** prior to the pretrial conference.  No reply papers will be considered.

**B.     10 COURT DAYS PRIOR TO PRETRIAL CONFERENCE**

The following shall be accomplished not later than **10 Court days** prior to the Pretrial Conference:

1.     <u>List of Exhibits With Stipulations and Objections</u> - The parties shall file with the Court a list of all exhibits admitted by stipulation; and a list of all exhibits as to which objections have been made, with a brief notation indicating which party objects and for what reason.

2.     <u>Objections to Other Evidence</u> - In addition to exhibit lists, counsel shall confer with respect to any other evidentiary objections in advance of the Pretrial Conference as required by Local Rule.  Each party shall file and serve a statement briefly identifying each item objected to, the grounds for the objection and the position of the offering party as stated at the conference.

     3.    <u>Voir Dire and Verdict Forms</u> - Each party shall serve and file proposed questions for jury voir dire and a proposed form of verdict.

## C.    <u>OTHER PRETRIAL MATTERS</u>

     1.    <u>Citations</u> - In all Pretrial Statements, memoranda of points and authorities and jury instructions, citations shall be as follows:  (1) all United States Supreme Court citations shall be to both the official reporter and to the <u>West Supreme Court Reporter</u>, (2) all citations to California state courts shall be to both the official reporter and to the <u>West California Reporter</u>, and (3) all citations to the courts of any other state shall be to both the official reporter of that state and to the <u>West Regional Reporter</u>.

     2.    <u>Settlement Conferences</u> - Any party utilizing another form of Alternative Dispute Resolution who wishes to arrange a settlement conference before a judge or magistrate judge thereafter may do so by contacting the Courtroom Deputy.

     3.    <u>Copies</u> - Unless otherwise indicated, each document filed or lodged with the Court must be accompanied by a copy for use in the Judge's chambers.  In addition, one copy of the witness and exhibit lists should be furnished to the court reporter.

     4.    <u>Daily Transcripts</u> - If transcripts will be requested during or immediately after trial, arrangements must be made with the court reporter at least **one week** before trial commences.

Attachments

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CASE NO. C-       MJJ                        DATE:

_____ v. _____      EXHIBIT LIST

(  ) Plaintiff                                      (  ) Defendant

| EXHIBIT NUMBER | MARKED | ADMITTED | SPONSORING WITNESS | DESCRIPTION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Case No. _____
**PLNTF** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**DEFT** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**PLNTF** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**DEFT** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**PLNTF** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**DEFT** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**PLNTF** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**DEFT** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**PLNTF** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**DEFT** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**PLNTF** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**DEFT** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**PLNTF** Exhibit No. _____
Date Entered _____
Signature _____

Case No. _____
**DEFT** Exhibit No. _____
Date Entered _____
Signature _____

**EXHIBIT 5**

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
Writer's Direct Dial: (202) 429-2184
E-Mail Address: BrothersK@dsmo.com

July 27, 2005

**Via Facsimile and PDF**

Teresa M. Corbin, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA  94105-2708

            Re:    Ricoh v. Aeroflex, et al.
                   Synopsys v. Ricoh

Dear Terry:

            As you know, on July 22, Judge Jenkins ordered that full merits discovery
should recommence effective immediately in both the Ricoh and the Synopsys DJ cases.
Ricoh has pending a large number of discovery requests that require an immediate
response.  We have previously written to you on multiple occasions – most recently on
July 6, 2005 – with respect to the pending discovery matters.  We also have had
inconclusive meet and confers on discovery matters.  Ricoh reiterates its demand that
each of the Aeroflex defendants and Synopsys immediately produce all responsive
documents, supplement their other discovery responses, and begin scheduling
witnesses for depositions.

            During our meet and confers in the past two months, you had estimated that
the ASIC Defendants and Synopsys would be in a position to produce all relevant and
responsive documents by the end of August.  We expect that you will adhere to that
commitment.  We also ask that you produce documents on a rolling basis instead of
waiting until the end of the month.  Based upon the Court's rejection of your stay
motions and bifurcation efforts, and the Court's directive that all merits discovery
commences immediately, your clients' prior objections of timeliness, scope and
relevance are now moot and we expect that they will be withdrawn.  Please confirm
these commitments and understandings.

            To assist you in your search for production of documents, please note the
following:

    1. We expect the ASIC Defendants to produce the design libraries created during
       synthesis (i.e., stored as design.db files).  By no later than August 15, please
       produce a list of all design libraries that the ASIC Defendants maintain so that
       Ricoh can determine the scope of additional discovery.  For each such design

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

Teresa M. Corbin, Esq.
July 27, 2005
Page 2

library listed, please identify the associated ASIC product/project. Please also provide the specific Design Compiler Family Source Code version used to generate the design library and the platform (e.g., HP, SUN, etc.) on which each listed design library was generated. If there is any form of license key used in connection with such design libraries, we request such key(s) as well. Additionally, to the extent such design libraries may have been destroyed by the ASIC Defendants, please identify such destroyed libraries. We expect that any such destruction ceased upon the filing of the lawsuit, but request that you confirm this in writing.

2. A list of the ASIC Defendants' ASIC products or projects including an express identification for each product or project of the technology library(ies) that are or were used in connection with the product or project. Pursuant to the Court's Order given at the July 22, 2005 Status Hearing, you must provide this list by August 15, 2005.

3. We understand that Synopsys has produced release notes regarding various versions of tools at issue. To the extent that Synopsys or the ASIC Defendants have other version history documentation of Design Compiler Family Source code, please produce those documents by August 15.

4. You have represented that Synopsys, Aeroflex, AMIS and Matrox Tech have produced all Initial Disclosure documents. We expect you to produce all Initial Disclosure documents from Aeroflex Colorado and the other Matrox entities by August 15. We also note that the ASIC Defendants' initial disclosures listed documents that correspond to "where" design work is performed, but there is no indication that other documents regarding the design work will be produced (including, for example, what design work is performed, how it is performed, and what design tools are used). Please clarify and supplement.

5. To date, the ASIC Defendants have failed to provide complete discovery of information highly relevant to your most recent 271(g) motion, such as the ASIC design and production processes that they actually use. These documents include all documents regarding the products referenced in the declarations; all documents related to the design and manufacture of ASICs by the named ASIC defendants and also by other parties referenced in the Motion and documents submitted in support of the Motion, including, for example, discovery on the proximate relationship between the ASIC defendants' design of ASICs and the manufacture of those ASICs; full Fed. R. Civ. P. 26 expert disclosure; and the depositions of all persons with knowledge of facts and circumstances relevant to the motion for partial summary judgment.

6. Confirm that the ASIC Defendants will produce all requested documents regarding marketing and sales of the ASIC chips.

7. Confirm that the ASIC Defendants will engage in discovery relevant to the ASIC Methods used by ASIC Defendants' including (without limitation) input specifications, synthesis libraries (including without limitation, design libraries, synthetic libraries, link libraries, DesignWare Foundation Library,

Teresa M. Corbin, Esq.
July 27, 2005
Page 3

DesignWare Building Block IP Library, DesignWare Expert libraries), netlists, and mask data.

8. Confirm that the ASIC Defendants and Synopsys will engage in discovery related to relevant patent applications assigned to any of them.

9. The following responses to document requests need to be supplemented

   a. Aeroflex's responses to Ricoh's First Set of Document Requests Nos. 9, 12, 14-20, 28, 30, 35).

   b. AMIS' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28, 29, 30, 33, 35, 37).

   c. Matrox Entities' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28-30, 33, 35, 37).

   d. Synopsys' responses to Ricoh first set of Document Requests Nos.2, 14-15, 16-23 and 32).

With respect to initial disclosures, please serve by August 15 supplemental initial disclosures in compliance with Rule 26(a), including the following:

10. Contact information for persons listed in the initial disclosures for whom contact information was not previously provided, including the persons listed as "other individuals."

11. Complete identification (including name and contact information) of the "additional individuals" at different companies.

With respect to the responses to Ricoh's interrogatories:

12. During the parties' recent meet and confers, you committed to supplement in light of the Court's Claim Construction Order and provide additional information for events occurring and/or information gathered during the discovery stay. Please confirm that this supplementation will be served by August 15.

13. As we explained at the CMC, discovery should include software tools, components libraries, interfaces or other elements that are at issue in either the Synopsys v. Ricoh matter or the Ricoh v. Aeroflex et al. matter. State whether Synopsys and the ASIC Defendants will provide complete discovery related to all tools at issue, as set forth on page 28 of the CMC Statement. In addition to the tools at issue listed on page 28 of the CMC Statement, as we explained during the CMC, Ricoh will take discovery of some other tools used in connection therewith (such as discovery of user interfaces, e.g., Design Analyzer and DesignVision). Please confirm that Synopsys and the ASIC Defendants will provide such discovery.

14. The following responses to interrogatories need to be supplemented by August 15; for each interrogatory relying on Fed. R. Civ. Pro. 33(d), Ricoh requests production of all documents that the 33(d) response relies on:

Teresa M. Corbin, Esq.
July 27, 2005
Page 4

    a.    Aeroflex's responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7, 8, 10.

    b.    AMIS' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7, 8, 10.

    c.    The Matrox entities' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 10.

    d.    Matrox Tech has represented in its responses to Ricoh's Requests for Production of Documents that it has no documents, yet its responses to interrogatories rely heavily on Rule 33(d). Matrox Tech must (i) supplement its responses to Ricoh's requests for documents (and produce all responsive documents) and/or (ii) supplement its responses to interrogatories to remove the 33(d) references and provide substantive responses.

With respect to Ricoh's request for admissions, the following responses to requests for admission need to be supplemented by August 15:

15.    Synopsys's responses to Ricoh's Requests For Admission should be supplemented including, without limitation, removal of objections based on purported ambiguity and/or scope of phrases including claim terms construed by the Court. For example: Synopsys objected to Ricoh's Requests For Admission No. 10 because of the language "can utilize an expert system knowledge base"; Synopsys also objected to "the impropriety of the formulation" of Ricoh's Requests For Admission No. 25 because of the following language: "nothing in the description in the Synopsys User Documentation for Design Compiler precludes").

16.    The ASIC Defendants' responses to Ricoh's Requests For Admission should be supplemented including, without limitation, removal of objections based on purported ambiguity and/or scope of terms that the parties previously agreed to use (such as, for example, the term "ASIC Method" (objected to in responses 9-19 as incomprehensible and possibly so broad in scope as to be meaningless).

With respect to depositions:

17.    Please designate by August 15 all witnesses on all of Ricoh's outstanding 30(b)(6) notices.

18.    As you know, the Court has determined that a 30(b)(6) deposition on Design Compiler Family Source Code is appropriate. Ricoh will serve a revised 30(b)(6) notice that sets forth additional topics. Please block out dates for the commencement of that deposition during the week of August 22.

19.    Please begin scheduling depositions of the ASIC Defendants on a rolling basis beginning with the week of September 12. Although we would hope to cooperative schedule these depositions, we expect the scheduling of depositions at least to be consistent with the proposal of Synopsys and the ASIC Defendants as set forth in their April 23, 2004 discovery plan. The initial designees should be prepared to testify regarding the ASIC Defendants'

Teresa M. Corbin, Esq.
July 27, 2005
Page 5

physical and electronic document retention policies; the collection of
responsive physical and electronic documents; corporate organization; the
identification of persons and third parties with knowledge of the allegations in
the Amended Complaint; and communication with others regarding the
subject matter of the litigation.

General understandings regarding discovery:

20.    Although you still have not completely addressed the inconsistency
between your position that there is no such thing as a DesignWare design
library and the Synopsys documentation that expressly references such a
design library,[1] we have understood your representations regarding the
synthetic library to encompass what the Synopsys documentation describes as
a synthetic library and a design library.  In particular, Ricoh notes that you
represented at the July 22, status hearing and in the ASIC Defendants'
declarations that the ASIC Defendants do not either create their own
implementations, or add to, modify, substitute, replace or use anything other
than implementations provided by Synopsys (e.g., there are no additional
implementations corresponding to DesignWare implementations in any
libraries for us to pursue other than what Synopsys already has produced).
Ricoh is relying on the ASIC defendants' averments as well as Mr. Oliver's
representation and to the extent Ricoh has misstated your averments or
representations, we ask that you clarify your position in writing.

21.    Confirmation that all source code and license keys that you now have
agreed to provide for inspection (*see* the table in Ms. Fink's June 27, 2005
letter) have been provided consistent with the preparation made for the source
code and license keys you previously provided for inspection (as described in
Chris Kelley's April 29, 2004 letter).

22.    Details on the 10% of inputs that were unaccounted for in the AMIS
declaration regarding inputs.

23.    Please commit to identify the source of all documents by Bates Numbers
corresponding to the producing party.  For example, Ricoh requests a letter
specifically indicating the producing party and corresponding Bates ranges for
all documents with Bates prefix "DEF" that have been produced to date.
Additionally, going forward, Ricoh request that you not use only a "DEF"
prefix, and that you use a Bates prefix that makes evident the specific
producing party (e.g., "Aeroflex," "Matrox Electronic," "ALL DEF," etc.).

---

[1] Contrary to Ms. Fink's implications, Ricoh's references to a DesignWare design library
are not limited to DesignWare Developer documentation, but instead are found
throughout other DesignWare documentation, including without limitation in the
*DesignWare Building Block IP User Guide* (RCL009357-9448 at Ch 1 pp. 17-18, 20) which
we previously cited to you.

Teresa M. Corbin, Esq.
July 27, 2005
Page 6

24.    Please confirm that all communications between counsel (including letters and service of documents not filed with the court) will be sent via PDF to all attorneys of record.

We look forward to your prompt response confirming your intention to producing this discovery on the dates set forth.  We are prepared to work with you in scheduling discovery; to the extent that we have issues that need to be addressed, we request that you propose times for a meet and confer.

Sincerely,

Kenneth W. Brothers

cc:  Gary M. Hoffman, Esq.

KWB/clh