August 30, 2005

**VIA ELECTRONIC FILING**

Honorable Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94102

Re: Ricoh v. Aeroflex, et al., Case No. CV-03-4669 MJJ (EMC)
Synopsys v. Ricoh, Case No. CV-03-2289 MJJ (EMC)

Dear Judge Chen:

Pursuant to the Court's Order of August 16, 2005, the parties submit the following report on discovery disputes. For simplicity, "defendants" refers to all of the Aeroflex et al. defendants as well as Synopsys.

The parties have met and conferred regarding the discovery disputes set forth in Ricoh's letter of July 27, 2005 (D.I. 315, Ex. 5).[1] The meet and confers regarding the Ricoh issues took place on August 22 and 24, 2005, with the participation of Gary Hoffman, Ken Brothers and DeAnna Allen for Ricoh, and Terry Corbin and Jacky Fink for defendants. The meet and confer was by telephone; the August 22 conference lasted approximately 90 minutes, and the August 24 conference lasted approximately 25 minutes.

## I. INTRODUCTION

1. Ricoh's Position. Ricoh had hoped that, after a long discovery stay, the issuance of a claim construction, two case management conferences before Judge Jenkins in July 2005, and the near-total revamping of defendants' legal team, the parties could avoid the scorched-earth, fight-every-issue defense strategy that marked this litigation in late 2003 and early 2004.[2] Unfortunately, this does not appear to be the

---

[1] All Docket Index citations are to *Ricoh v. Aeroflex, et al.*, Case No. CV-03-4669. A list of all exhibits to this joint letter follows the signature page.

[2] In a meeting in Japan in August 2003 attended by Gary Hoffman, Synopsys' general counsel, Rex Jackson, told Ricoh that if Ricoh did not dismiss its case, Synopsys and its ASIC defendant indemnities would not produce documents unless ordered by the Court, and would make this litigation extremely expensive. This statement has been brought to the Court's attention on prior occasions. *See, e.g.*, Ricoh's April 23, 2004 Discovery Plan, at p. 1, lines 22-27 (attached as Exh. 1 to D.I. 315). Until now, defendants have never disputed it.

case. Defendants repeatedly have stalled on virtually every discovery issue.[3] Even in this joint letter, Defendants have insisted on separate statements on all issues – even the issues that Ricoh understood had been resolved – as well the addition of separate introductions.[4]

Defendants' have insisted that their introduction include a statement of what they believe was "resolved" during the July Case Management Conferences. Defendants' statement is both incomplete (since many additional issues were addressed and resolved), and, with respect to the five issues that defendants identify, inaccurate. For example, the products at issue are *not* Synopsys products, but are the ASIC chips designed and manufactured by the ASIC defendants. The ASIC defendants (but not Synopsys) are being accused of infringing the '432 patent by using the process disclosed in claims 13-17, then the output from this process is used to manufacture the chips.[5] Thus, defendants' repeated characterization of certain Synopsys software as the "products in suit" is simply incorrect.

Following are some of the matters that were discussed and resolved at the CMC:

1. The processes at issue in this litigation are certain processes used by the ASIC manufacturers for designing the ASICs to be manufactured. The particular Synopsys tools that are used in carrying out these processes are Design Compiler, HDL Compiler for Verilog, VHDL Compiler, DesignWare Foundation Library, Module Compiler, and Physical Compiler and other software products listed on Page 28 of the Joint CMC report.

---

[3] While many documents have been produced by the defendants, the majority have been alleged prior art documents.

[4] Upon receipt of this Court's August 16 Order , Ricoh requested that the meet and confer occur the same week. Defendants declined to meet until August 22, and when the meet and confer took place, defendants' counsel stated a need to consult with her client on several issues, causing the meet and confer to be continued to August 24. As ordered by the Court, Ricoh's counsel had full authority to address all matters on the agenda set by Ricoh's July 27 letter.

[5] Defendants Aeroflex and AMI Semiconductor perform this infringement in the United States, so Ricoh's claims against them are based upon §271(a). There is a disputed factual issue of where the Matrox entities have performed their infringing activities; to the extent it is all outside of the U.S., Ricoh's claims against them are based upon §271(g), and at trial Ricoh will be required to show that the infringing process is proximately related to the finished ASIC product. Throughout this joint letter, defendants inappropriately attempt to bootstrap this §271(g) obligation on to all of Ricoh's claims in an attempt limit Ricoh's discovery.

2. The only ASIC products that Ricoh is accusing of infringement are commercial ASICs manufactured by the ASIC defendants that were using one or more of the software tools listed on Page 28 of the CMC, and not ASICs designed using logic synthesis tools from other companies. Since the ASIC manufacturers have refused to disclose to Ricoh what if any logic synthesis tools from other companies they utilize, Ricoh has made no allegations about such any use of such tools in this litigation.

3. The libraries that are relevant to this suit are target technology, synthetic, symbol, link, design, and GTECH libraries for the ASICs products designed using Design Compiler. Pursuant to Judge Jenkins' Order at the July 13 CMC, on July 21 and August 15 and 16, the ASIC defendants submitted declarations that, according to their counsel, include a full and complete list of all such ASICs, and libraries, from 1997 through the present.

4. During the CMC, Judge Jenkins proposed to the ASIC defendants that they wait to refile their motion for partial summary judgment under Section 271(g) after the close of discovery when any other motions are filed. When the ASIC defendants insisted on filing it earlier, the Court granted them permission to refile their motion for partial summary judgment under § 271(g) but only after the deposition of the two declarants submitting affidavits in support were taken.

5. During the CMC on July 13, the ASIC defendants and Synopsys told the Court that 4 months was a sufficient time for all fact discovery. Ricoh informed the Court that 4 months was not feasible but that it believed that it was possible to complete fact discovery in 6 months if the defendants and Synopsys provided their documents and supplement interrogatory responses quickly and that they had promised to do so by the end of August at the latest. The Court then set a 6 months time period for fact discovery.

2. Customer Defendants' Position. Synopsys and the Customer Defendants believe it will be helpful for the Magistrate Judge to have a copy of the latest Joint Case Management Conference Statement, and attach it hereto as Exhibit 1. During the Case Management Conferences, the following issues were resolved:

1. The Synopsys products at issue in this case are Design Compiler, HDL Compiler for Verilog, VHDL Compiler, DesignWare Foundation Library, Module Compiler, and Physical Compiler (hereinafter "products-in-suit").

2. Only designs of ASICs that actually went into commercial production will be the subject of discovery in this suit.

3. The only commercial designs/ASICs that are relevant are those whose front-end design/synthesis (input to netlist) was created using the products-in-suit. Therefore, any designs or chips that were designed using Synopsys' competitors' products are not at issue in this case.

4. The libraries that are relevant to this suit are target technology, synthetic, symbol, link, design, and GTECH libraries for the products listed on the Product Declarations.

5. The Customer Defendants were granted permission to refile their summary judgment motion re: § 271(g) as soon as the deposition of their two declarants were taken. The Court made it clear that the only discovery necessary or allowed in order to hear that motion were these two depositions.

Synopsys and the Customer Defendants respectfully request a hearing on the issues addressed herein. Ricoh provided Synopsys and the Customer Defendants with their portion of this letter on Thursday at 9:42 A.M. PST and Synopsys and the Customer Defendants provided their responses in less than 36 hours at 8:25 P.M. PST. Ricoh provided another version of the letter with substantial changes, additions and new case law at 10:33 a.m. on Monday. Synopsys and the Customer Defendants provided their revised section in response approximately 5 hours later at 3:56 p.m. Ricoh complains that counsel for the Customer Defendants were not available to meet and confer from August 17-19, 2005. The reason counsel was unavailable on those days was because they were visiting customer sites to collect documents. The meet and confer took place the following Monday upon counsel's return. Synopsys and the Customer Defendants disagree with many of the mischaracterizations in Ricoh's new additions to this letter but cannot address each and every one and file this letter today. Synopsys especially takes issue with the false representation regarding alleged statements by Synopsys' General Counsel found at footnote 2 herein. No such statements were made by Synopsys' General Counsel to Ricoh at any time. While Synopsys and the Customer Defendants have refused to produce certain categories of documents that they believe are irrelevant and not likely to lead to the discovery of admissible evidence and Ricoh's unwillingness to withdraw or narrow such discovery has caused the parties to seek guidance from the Court regarding the proper scope of discovery, Defendants have not "stalled on virtually every discovery issue" as stated by Ricoh. Synopsys and the Customer Defendants have met their discovery obligations and even produced documents during the stay when they had no obligation to do so. To date, approximately 200,000 pages of documents have been produced and two versions of the source code for the products-in-suit has been made available to Ricoh for well over one year, all throughout the stay period.

## II. RESOLVED DISCOVERY DISPUTES

The parties reached agreement on several discovery disputes. Those agreements are as follows:

**A. Identification of design libraries created during synthesis.**

1. Ricoh's Position. In response to an order by Judge Jenkins during the CMC on July 13, on July 21, defendants served declarations that they represented identified certain information, including full identification of the design libraries for all of its commercial ASICs designed using Design Compiler.[6] Based upon the representations of defendants' counsel on August 22 that the declarations, which as required by Judge Jenkins were submitted under penalty of perjury, accurately describe all of the relevant design libraries, and that defendants will produce all of their existing design libraries (although the timing of that production remains in dispute), at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants.[7]

---

[6] On July 18, 2005, Ricoh's identified for the defendants the types of libraries it was seeking and cited to documents of the defendants for support for these terms. (Exh 36.) That definition, in turn, references a March 16, 2005 Synopsys document that Ricoh located deep within Synopsys' web site, entitled "DesignWare Building Block IP User Guide," which defines a design library as follows: *"The design library contains the actual circuit implementations that perform the functions you call for when you include DesignWare Building Block IP in your design. The DesignWare Building Block IP concepts of synthetic module and implementation closely correspond to the VHDL concepts of entity and architecture. An implementation can be viewed as an architectural realization of a synthetic module. An implementation can be anything from a technology-specific netlist to a synthesizable RTL-level design description"* (Exh. 37.) Based upon this definition, a design library is an necessary portion of the infringing logic synthesis process. All ASIC designs using Design Compiler and DesignWare use such design libraries (which defendants have called synthetic_library implementations). Ricoh requested, and had understood defendants were going to produce, the design libraries described in the DesignWare documentation, including any alterations, modifications, substitutions for, or additions thereto. Defendants' response to Ricoh's July 18, 2005 letter indicated that the defendants use other kinds of files that they call design libraries. For example, Defendants' July 21, 2005 declarations described these files as an intermediate data format that some of the defendants temporarily save. Defendants repeatedly have referred to such design libraries in submissions to the Court, correspondence between the parties and during the meet and confer conferences. In short, Ricoh seeks production of all such design libraries; if defendants are not producing them, they should explain why.

[7] In their draft received Monday night, August 29, defendants for the first time took issue with the definition of design libraries that had formed the basis of more than a month of negotiations. Until the evening of August 29, Ricoh had understood that defendants had agreed to produce all existing design libraries, including: the design libraries described in DesignWare documentation, including in any alterations, modifications, substitutions for, or additions thereto (what the defendants describe as synthetic_library implementations) (*see supra* note 6); and the design libraries that are generated during synthesis and saved by at least some defendants. (*id.*). Now, however, it appears that defendants unilaterally are attempting to narrow the

Defendants' statement of their "position" on what Ricoh had understood was an agreed-upon issue is both an effort to spin certain issues (e.g., characterizing logic synthesis as "front-end design" and laying the groundwork for attempting to justify their failure to collect documents in June and July), and to inappropriately attempt to argue an issue that remains in dispute – defendants' failure to retain relevant files. See Disputed Issues, Topic G.

2. Customer Defendants' Position. Between the July 13 and July 22 Case Management Conferences ("CMC"), the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis (i.e., front-end design) performed using the products-in-suit, and provided separate Input and Library Declarations on July 21, 2005. Attached as Exhibits 2-11. The Library Declaration included information about design libraries.

During the July 22, 2005 teleconference hearing, the Customer Defendants agreed to provide a list of commercial products for which Design Compiler was used by the named Customer Defendants for logic synthesis, a description of each of these products, and the target technology libraries used. After a significant effort to collect this information, the Product Declarations were provided on August 15 and 16. Attached as Exhibits 12-17.

Synopsys and the Customer Defendants dispute footnotes 6 and 7 in their entirety. Counsel for the parties have wasted substantial time conferring about production of design libraries. From Ricoh's recent revisions to the letter, received today, it is apparent that counsel have been miscommunicating as a result of Ricoh's continued practice of using varied technology to refer to the same items and the use of different terminology from Synopsys. At the CMC, the Court and the parties discussed this issue at length and attempted to reach a common understanding to avoid miscommunications in the future. Synopsys' counsel provided a letter dated July 18, 2005 (Ex. 38) setting forth the terminology used by it and an explanation of the meaning of each term. As can be seen by the letter, Ricoh had used the term design library to refer to at least nine different items, two of which are generally termed "design libraries." Synopsys and the Customer Defendants have already committed to producing the items listed in the chart, with the exception of the "design libraries created during synthesis" (see third row of the chart on page 3) as further delineated below.

With respect to synthetic library implementations addressed by Ricoh in footnote 6, evidence has already been supplied in this case that the Customer Defendants only use Synopsys synthetic libraries and that they do not alter or add to them. As indicated in the July 18, 2005 letter, Synopsys produced the source code for the synthetic libraries—and their respective synthetic library implementation--long ago.

---

definition, perhaps to protect themselves, because they have failed to retain design libraries (Disputed Issue, Topic G, below).

The only remaining issue regarding library data, as far as counsel for Synopsys and the Customer Defendants understands it, relates to intermediate storage formats that are caused to be created by the use of specific commands that not all customers use. Customers do not usually retain such intermediate files on an ongoing basis such as in archived versions of products (because they can be regenerated later when needed from the original inputs). Further, in many cases, the cache directories containing these intermediate files are periodically purged to ensure smooth functioning of the systems. This is analogous to the way that the Internet Explorer browser cache is periodically trimmed in size to prevent it from consuming endless disk space.

The Library Declarations make clear that the only Customer Defendants that use these intermediate files are Matrox Graphics and Matrox Tech (while other Customer Defendants may create them, they do not use them), and only for particularly large chips. While we informed the Customer Defendants of the requirement to retain documents and files relevant to the litigation, we did not believe it was appropriate to require them to modify their design process flow to add the creation (to the extent not used by the customers) or retention of these intermediate files to their scripts. We also do not believe that it is appropriate to require them to create documents that they do not ordinarily create which would grind the ordinary use of their systems to a halt going forward. Any of these intermediate electronic files that exist for the products listed in the Product Declarations will be provided. In addition, since the Customer Defendants will be providing their available inputs and other libraries in electronic format, Ricoh can **create** the exact same files by running the logic synthesis process and, if desired, adding the necessary commands to create and/or save these files. See topic G under Remaining Discovery Disputes.

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, and GTECH libraries for the products listed on the Product Declarations.

**B. A list of the ASIC Defendants' ASIC products and identification of the technology libraries used.**

1. Ricoh's Position. Based upon defendants' representations on August 22 that the declarations they provided on August 15 and 16, which were submitted under penalty of perjury as required by Judge Jenkins, contained a complete and accurate list of all commercial ASICs synthesized using Design Compiler by defendants from February 1997 to the present, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants.

2. Customer Defendants' Position. The Product Declarations provided on August 15 and 16 included information about the target technology libraries or library families used for the logic synthesis of the products listed.

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, and GTECH libraries for the products listed on the Product Declarations.

**C. Production of release notes regarding Synopsys tools at issue.**

1. Ricoh's Position. Based upon defendants' representation on August 22 that all such release notes have been produced, at this time Ricoh is not pursuing this matter. The issue of which versions of Design Compiler were used to produce each of the infringing ASICs is unresolved and is one of the focal points of Ricoh's discovery. Some discovery of the earlier versions of Design Complier will likely be required; however, this issue can be addressed at a later time.

2. Customer Defendants' Position. There have been many different versions of the products-at-issue since February 1997. Synopsys has provided two different versions of source code, version 2.0 and V-2003.12-SP1, to Ricoh. Since 1997, on average there have been at least two major releases of the products-in-suit per year and several more minor releases. At a minimum, there were at least 18 major releases of the products-in-suit during the potential damage period.

It takes approximately 30 days on the part of a full time equivalent engineer to provide each buildable version of the software. It is not practical or reasonable to expect that Synopsys will produce source code for every release of the product from 1997 to the present. It is also unimaginable how long the trial would take or the verdict forms would have to be if Ricoh is required to prove infringement of every release of the products-in-suit.

In the interest of facilitating a stipulation on a representative version of the source code in order to streamline discovery, after Ricoh's request at a June 13, 2005 meet and confer, during the stay Synopsys provided all of the release notes that were located after a reasonable search.

**D. Production of DesignVision and DesignAnalyzer user manuals.**

1. Ricoh's Position. DesignVision and DesignAnalyzer are Synopsys tools that the ASIC defendants use to visualize the design of ASICs, and thus are relevant to Ricoh's claims. Synopsys has committed to produce the user manuals for these products. Ricoh is deferring for now other questions regarding the scope of Synopsys' document production regarding the Design Compiler family of products until after it reviews such manuals.

2. Customer Defendants' Position. During the July 13, 2005 Case Management Conference, Ricoh represented that the only products-at-issue in this case were those listed in the table on page 28 of the Joint Case Management Conference Statement. DesignVision and DesignAnalyzer are not listed as products-at-issue in this case. Nonetheless, Synopsys had previously provided the executables for these products and agreed, during an August 24, 2005 meet and confer session, to provide the

user manuals. Synopsys and the Customer Defendants do not intend to provide any other documents or information regarding these products, as they irrelevant to the issues in this case.

**E. Production of synthetic library documents.**

1. Ricoh's Position. Based upon defendants' representations on August 22 that they will produce all relevant synthetic library documents for all of their commercial ASIC products from February 1, 1997 to the present, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants. Defendants' statement again attempts to justify their failure to collect documents until now, claiming it took "significant time and effort" to collect relevant information. Counsel for Synopsys and the defendants have a large number of attorneys and staff involved in this litigation and also several of the companies have in-house legal staff. There is no reason that this information could not have been collected earlier, and no excuse for failing to collect documents at the same time.

2. Customer Defendants' Position. Between the July 13 and July 22 Case Management Conferences ("CMC"), the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis performed by the named Customer Defendants using the products-in-suit, and provided separate Input and Library Declarations on July 21, 2005. The Library Declaration included information about synthetic libraries.

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, design, and GTECH libraries for the products listed on the Product Declarations.

**F. Production of all source code and license keys.**

1. Ricoh's Position. Based upon Synopsys' representations that, pursuant to Ricoh's discovery requests and the representations to this Court in early 2004, it has produced all source code and license keys for one version of Design Compiler, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after it determines which version of Design Complier was used in the design of the ASIC products at issue and has obtained certain other discovery.

2. Customer Defendants' Position. Even though not obligated to do so, Synopsys produced the object code, source code and license keys for version V2003.12-SP1 of the products-in-suit, as well as for a number of additional products that are not products-in-suit, during the discovery stay period. Additionally, source code to the 2.0 version of Design Compiler was produced.

Prior to Ricoh's recommencing its source code review on July 11, 2005, two new items were loaded onto the computer, (1) an updated FlexLM license key and (2) a

Physical Compiler customer education module which was available when V-2003.12 of Physical Compiler was released. *See* June 27, 2005 letter from Jaclyn Fink to DeAnna Allen, attached hereto as Exhibit 27.

**G. Details on the 10% of inputs that were unaccounted for in the July 21, 2005 declaration from AMIS regarding inputs.**

1. Ricoh's Position. Based upon defendants' representation in their letter of August 12 that this input was VHDL, this issue is resolved.

2. Customer Defendants' Position. In AMI's July 21, 2005 Input Declaration, they indicated that 90% or more of the source inputs for the digital portions of the commercial ASICs designed by them which utilized Design Compiler for logic synthesis were provided as textual Verilog. At Ricoh's request, AMI verified that any other source inputs for the digital portions of the commercial ASICs designed by them which utilized Design Compiler for logic synthesis were provided as VHDL.

**H. Agreement that defendants will properly identify the source of documents.**

1. Ricoh's Position. Defendants have committed to identify the source of all documents by Bates Numbers corresponding to the producing party, a request Ricoh had first made more than two years ago. For previously produced documents, defendants have agreed to provide a letter that identifies the producing party and corresponding Bates ranges for all documents with Bates prefix "DEF". Defendants also have agreed to not use a "DEF" prefix for future productions, but instead use a Bates prefix that makes evident the specific producing party (e.g., "Aeroflex," "AMI," separate designations for each of the Matrox entities, "Synopsys," etc.).

2. Customer Defendants' Position. Since Ricoh has indicated that it wanted separate identification of documents for the different Customer Defendants, we have made such identification in the document production letters. To the extent that such identification has not yet been made for any documents and is available, we will provide it. Going forward, we will provide a separate Bates prefix for each Customer Defendant.

**I. Agreement regarding electronic service and communications.**

1. Ricoh's Position. The parties have agreed that communications between counsel (including letters and service of documents not filed with the court) will be electronically transmitted via PDF to the other side as instructed in writing. Each party has identified the counsel to be so served and has the right to add to or modify the list in the future. Such service shall be considered via U.S. Mail under the Federal Rules.

2. Customer Defendants' Position. At Ricoh's request, we will send communications between counsel that are not unduly large via PDF to Gary Hoffman, Ken Brothers, Ed Meilman, Eric Oliver, Michael Weinstein, and DeAnna Allen. Ricoh

agreed to send such communications via PDF to Terry Corbin and Jacky Fink. Going forward, Synopsys and the Customer Defendants request that all such communications from Ricoh be electronically submitted via PDF to Terry Corbin, Jacky Fink, Bob Laurenson, Elizabeth Fontaine, Tom Crunk, Peter Kasenenko, and Jason Hancock. Since this service will be considered as via U.S. Mail under the Federal Rules, there will be the three days added to the hand service deadlines.

## III. REMAINING DISCOVERY DISPUTES

The parties were not able to reach agreement on the remaining discovery disputes. Those remaining discovery disputes and the parties' respective positions are provided below.

### A. Timing of defendants' production of documents.

1. Ricoh's Position. In April 2004, defendants had committed to produce all of their relevant responsive documents. (D.I. 315, Ex. 1 & 2.) Defendants failed to meet that deadline; their claim that they complied is wrong since, for example, they simply refused to produce documents relating to their infringement, or marketing, sales and damages. On May 4, 2004, Judge Jenkins stayed merits discovery until after he issued his Markman ruling. After the Court issued its April 7, 2005 claim construction ruling, Ricoh urged defendants to produce all of their documents by June 30, 2005. (D.I. 301.) Defendants' counsel stated in response that she would not be able complete the production of all of her clients' documents until "the end of August." After Judge Jenkins lifted the discovery stay and ordered the immediate commencement of all merits discovery on July 22, 2005, Ricoh reminded defendants of their commitment to produce all documents by the end of August. (D.I. 315, Ex. 5.) Now, however, defendants are refusing to commit to produce all of the documents to which they have not made objections until October 7, 2005 and then only to "try" to meet this October date. (D.I. 318, Ex. 1).[8] Defendants claim (in footnote 14) that they need 6 weeks from the date the stay was actually lifted on July 22, but 6 weeks from July 22 is September 2. During the meet and confers on August 22 and 24, defendants' counsel refused to budge from the October 7 date. These documents should have been collected and ready for production in 2004 with defendants now only needing to update the collection process. Even if the documents were not ready in 2004, defendants should have started

[8] While the defendants now complain that various client representatives are on vacation, the scheduling issue is one of their own creation. If the defendants had begun the process in 2004 when they originally committed to do so or even in June 2005 when they again promised to do so then they would not have any scheduling issue at this time. If a problem existed then they should have brought the matter to the Court's attention during the CMC; they were urging the Court to allot only four months for discovery, and knew that Ricoh was relying on defendants' representation that all documents and supplemental interrogatory responses would be provided by the end of August. Based upon defendants' representations, Ricoh urged and the Court scheduled a six month period for fact discovery.

this process in April (after the claim construction ruling was issued) or at the latest by the end of May 2005, when Ricoh conferred with counsel for the defendants and discussed the issue again with them. Any delays in this collection process are the result of defendants' own decisions to delay the process.

The timing of production of documents relates to a large number of the issues set forth in Ricoh's letter of July 27 (D.I. 315 Ex. 5), including Issues 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16. Rather than reiterate each of those individual issues herein, Ricoh seeks an order compelling defendants to produce all documents by no later than September 2, 2005.

The timing of the production of defendants' documents has a cascading effect upon the rest of the discovery schedule. When Judge Jenkins issued the pretrial schedule on July 22, 2005 (D.I. 309), the Court specifically provided that, after receiving the August 15 and 16 declarations (Exhibits 12-17), Ricoh would have at least 60 days of discovery prior to serving its final infringement contentions on October 17, 2005.[9] The Court expressly rejected defendants' request for a discovery stay until after Ricoh served its final infringement contentions. By refusing to produce their documents until a week before the final infringement contentions are due, defendants have essentially granted themselves the discovery stay that Judge Jenkins rejected. Ricoh should receive the benefit of the 60 days of discovery contemplated by the pretrial schedule, and asks that the dates be adjusted accordingly. Defendants had urged Judge Jenkins to set a period of only 4 months for discovery and if they were doing so in good faith they must have been prepared to quickly produce their documents. Believing that a longer period was necessary and that the defendants would honor their prior commitment to produce all documents by the end of August, Ricoh requested 6 months for fact discovery, which is what the Court set.

Defendants' statement below contains several factual errors, perhaps because (with the exception of Ms. Corbin and possibly Ms. Fink), none of the Howrey attorneys who were involved in this case in 2004 and 2005 are still involved in the case. With respect to the source code, it was only recently that Synopsys acknowledged that what it had made available to Ricoh's experts was incomplete. Synopsys also omits to state that it offered and Ricoh accepted a witness for deposition on the source code, then Synopsys revoked the offer and has attempted to block that deposition ever since. Defendants still are refusing to produce a witness in lieu of written responses to Ricoh's questions (e.g., a Rule 31 deposition), which is inconsistent with the Federal Rules and is unacceptable. This same argument to avoid a traditional deposition on the topics was made by the defendants during the CMC on July 13 and rejected by Judge Jenkins.

---

[9] Ricoh requested that the defendants agree to a postponement of the due date for Ricoh's Final Infringement Contentions by 60 days so that the due date would be after the defendants have produced all of the documents. However, the defendants were unwilling to agree to anything more than 28 day postponement.

Defendants also apparently made no effort to collect any emails, and have not disclosed whether they have been retaining their emails or the process by which they intend to search for and produce them.[10] Defendants also launch an irrelevant and erroneous attack regarding Ricoh's preliminary infringement contentions which are not relevant to the issues here; other than noting its disagreement, no response is required.

During the CMC, defendants argued that Ricoh's preliminary infringement contentions were inadequate[11] and that all discovery should be stayed until Ricoh submitted its final infringement contentions. Ricoh explained that discovery was needed before providing the final infringement contentions; Ricoh explained that this discovery included the production of documents and interrogatory responses that the defendants had committed to provide by no later than the end of August and also the deposition of Synopsys under Rule 30(b)(6) on the source code. Defendants' request for a stay of discovery was rejected by Judge Jenkins during the CMC on July 13.

2. Customer Defendants' Position. Contrary to Ricoh's assertions, Synopsys and the Customer Defendants have been diligent toward their discovery obligations.[12] Ricoh's infringement allegations center around Synopsys' logic synthesis products, and Synopsys made the source code for the accused products available on May 10, 2004, first in Maryland and subsequently at its SURF facility in Mountain View, California, and throughout the stay period. Ricoh made very little use of these facilities during the 15 month stay.

Synopsys also provided the documentation for these products during the discovery stay. Though there was no obligation to do so, millions of lines of source code and more than 50,000 pages of documents were produced during the discovery stay, including prior art, Synopsys release notes, and Synopsys product documents. Synopsys also repeatedly offered to respond to written questions under oath regarding the source code, as it believes that given the size of the code (millions of line of code per version of the code) detailed information would be difficult to get by way of deposition testimony. Ricoh declined to take Synopsys up on this offer.

---

[10] During the August 24 meet and confer, defendants obliquely said that they may wish to discuss how they will search for emails, but have proposed nothing substantive. During the August 24 meet and confer, at defendants' request Ricoh's counsel provided some suggestions with respect to the search for emails and other electronic documents. Ricoh expects defendants to timely produce their emails and other electronic documents as required by the Federal Rules pursuant to the dates established by this Court.

[11] While Ricoh disagrees with this attack by the defendants, it is irrelevant to the issues here just as is Ricoh's challenges to the adequacies of the defendants' preliminary invalidity charts and their failure to comply with a prior order of this Court.

[12] Ricoh is blatantly misrepresenting the discovery obligations in effect during the stay. These sorts of misrepresentations and other disputes demonstrate why a court reporter should be allowed at all meet and confer sessions and hearings. See topic H under Remaining Discovery Disputes, below.

In addition, the Customer Defendants substantially complied with the April 2004 deadline for production of documents other than e-mail, subject to their objections to the document requests, including the objections related to the § 271(g) matter. A final set of documents was received from AMI after the discovery stay, and was produced on July 6, 2005. There is an outstanding issue related to e-mail collection, which the parties are still discussing.

The May 5, 2004 discovery stay was put into place precisely to minimize unnecessary discovery. The Customer Defendants were in no way obligated to collect documents during this stay. After the claim construction ruling issued, counsel for the parties confirmed with each other that the stay of discovery would remain in effect until lifted by the Court after the Case Management Conference. During a June 13, 2005 meet and confer session, the Customer Defendants **tentatively** agreed to produce documents by the end of August, based upon the assumption that the discovery stay would be lifted at the scheduled June 14 Case Management Conference ("CMC"), which was postponed until July 13, 2005. This offer was based on the fact that counsel believed that it would take six weeks to collect and process documents once the stay was lifted.

During the July 13 and July 22 CMCs, the proper scope of discovery was identified, and the discovery stay was lifted on July 22, 2005. Between these two CMCs, the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis performed, and provided separate Input and Library Declarations on July 21, 2005. Based upon guidance at the July 22 CMC, the Customer Defendants provided Product Declarations on August 15 and 16, which identify the products for which documents will be collected and produced. The first document collection trip then occurred on August 17 and 18 – immediately after the lists of relevant products had been compiled.

The current document collection effort involves traveling to approximately a dozen locations and collecting documents from more than seventy people. This document collection effort is already underway, with trips to two customer locations already completed, and the remainder of the trips scheduled between now and the end of September.[13] This effort involves the collection, review, and production of four main categories of documents.

The first category of documents is supplementation based upon the passage of time. The last document collection occurred shortly before the discovery stay. A supplemental document collection is occurring for documents generated since that time.

---

[13] At Matrox, approximately 50 individuals have been identified as possibly having responsive documents. Many of these individuals had scheduled vacations in late August and early September and were unavailable prior to September 12. Thus, counsel will be collecting documents from the other Customer Defendants in early September and proceed with the Matrox document collection thereafter.

The second category includes logic synthesis-related documents (including inputs, scripts, designs, specifications, target technology libraries, symbol libraries, synthetic libraries, link libraries, design libraries, GTECH libraries, netlists, outputs, and relevant e-mail and memos) for the commercial products designed by the named Customer Defendants using Design Compiler, as listed in the Customer Defendant Product Declarations.

The third category of documents includes Aeroflex Colorado Springs documents. Aeroflex Colorado Springs was added to the case on April 12, 2004, shortly before the May 5 discovery stay. While we believe that the documents provided by Aeroflex Incorporated were actually Aeroflex Colorado Springs documents, we are confirming that there are no other responsive documents from Aeroflex Colorado Springs that were not produced by Aeroflex Incorporated.

The forth category includes documents from the three Canadian Matrox companies. Due to a dispute as to the appropriate scope of discovery from these Canadian companies, who either do no design work at all (in the case of Matrox International), or do their design work in Canada (in the case of Matrox Electronic Systems and Matrox Graphics), documents were not previously collected from these entities. Although we still dispute whether the inclusion of these companies in this suit is appropriate, as addressed in part by our § 271(g) motion, we are going forward with collecting documents from them.

The volume of documents collected for review is likely to be at least several hundred thousand pages. We are making our best efforts to complete the collection and production of these documents by October 7, 2005,[14] and will produce documents on a rolling basis as they are processed. This is hardly a discovery stay, as alleged by Ricoh.

During an August 22, 2005 meet and confer, Ricoh requested an additional **sixty days** to complete their Final Infringement Contentions after the documents are produced, even though the Local Rules only provide for 30 days from the claim construction order, and Ricoh has had access to the Synopsys code since May 10, 2004. In order to ensure that the contentions contain the requisite specificity for each of the Customer Defendant products,[15] we offered on August 24 to extend the deadline for the

---

[14] Using the same six week interval of time (from the lifting of the stay to the production of documents) that was the basis of the tentative end of August date (which was based on the assumption that the stay would be lifted on June 14, 2005), Synopsys' counsel represented it would use best efforts to produce documents by October 7, 2005.

[15] Ricoh's Preliminary Infringement Contentions were utterly inadequate. Defendants were forced to file a motion to seek more detailed infringement contentions. At two separate hearings on May 27 and June 16, 2004, and by order dated June 17, 2004, this Court made clear that the amended preliminary infringement contentions were to include as much information as Ricoh currently knew about its infringement contentions, that they needed to provide information specific to each defendant on a product by product basis, and that there needed to be an identification of where in each

Final Infringement Contentions from October 17, 2005 to November 14, 2005 (with a related extension for the Final Invalidity Contentions from November 7, 2005 to December 14, 2005). We made this offer despite the fact that it is our belief that Judge Jenkins set the date for Final Infringement Contentions based on source code access and not Customer Defendant discovery.

In summary, Synopsys and the Customer Defendants are making their best efforts to collect and process voluminous documents from a significant number of locations and people as quickly as possible – we simply cannot produce documents that we have not yet collected, making Ricoh's request for an order to compel by September 2, 2005 unrealistic. We agree that a four week extension to the Final Infringement Contentions deadline (with a related extension for the Final Invalidity Contentions deadline) is reasonable, in order to ensure the completeness of the Final Infringement Contentions, but believe that any further extension is overreaching, and will impact the rest of the case schedule.

**B. Timing of defendants' supplementation of their initial disclosures or their responses to Ricoh's interrogatories and requests for admission.**

1. Ricoh's Position. Similar to the timing issue for the production of documents, defendants refuse to supplement their initial disclosures or their responses to Ricoh's written discovery requests prior to October 7, 2005. Defendants' delay effectively prevents Ricoh from timely obtaining discovery as contemplated by Judge Jenkins. Ricoh seeks an order compelling defendants to supplement all written discovery responses by no later than September 2, 2005. In addition, on August 11, 2005, Ricoh served a third set of discovery requests upon all defendants, the responses to which are due on September 13. Defendants claim that it is "outrageous and unreasonable" to be required to produce documents thirty days after receipt of a document request. Because defendants have refused (and continue to refuse) to produce large categories of relevant and responsive documents[16] absent an explicit Court Order (e.g., their promised production is "subject to their objections"),

---

accused product they found each element of the asserted claims. Ricoh's last amended Preliminary Infringement Contentions did not provide that information. For example, Ricoh's Amended Preliminary Infringement Contentions did not specify what in the accused products constitutes the "expert system knowledge base," the "set of rules for selecting," or "architecture independent actions and conditions." Rather, Ricoh stated identical contentions for each defendant stating "[defendant] infringes claim 13 by performing a process . . . in which [it] describes input specifications (using User Interfaces) and synthesizes such specifications using the combination of Design Compiler, HDL Compiler, and the Synthesis Libraries." Synopsys thus finds itself, after more than two years of litigation, and more than 46 weeks of access to the source code by Ricoh, still completely in the dark with respect to how Ricoh reads any of the elements of the claims-at-issue on the products-in-suit.

[16] The vast majority of the documents produced to date by the defendants are documents that they allege constitute prior art.

defendants should be instructed that their responses are to be substantive, and all responsive documents should be produced simultaneously.

With respect to defendants' initial disclosures, there are many individuals and third parties that have not been properly identified and that Ricoh is unable to locate or contact. Defendants' counsel agreed to timely supplement when information came to the attention of their *clients*; however defendants' counsel refuses to supplement when relevant and responsive information is obtained by *counsel* and not the client. Although defendants claim that "Ricoh's counsel is fully capable of conducting its own investigation," it ignores the fact that Ricoh has already tried, and been unable to contact a large number of persons or entities listed in defendants' initial disclosure. If defendants do not disclose anything more than a name of an individual (with no address or other information) or the name of a company, then the entire purpose of the disclosures is defeated. The Court should compel defendants to supplement their initial disclosures with all relevant and responsive information pursuant to Rule 26(e) by September 2.

Attached as Exhibits 28-30 are defendants' responses to Ricoh's interrogatories, many of which need to be supplemented. With respect to many of these interrogatories, the defendants had objected since at the time in 2004 there had not yet been a Markman decision; the Markman claim construction decision however was rendered in April of this year and Ricoh is still waiting for the supplemental responses now that there is a ruling on claim construction.[17] Rather than argue each interrogatory individually (as defendants have done in their response), Ricoh lists below the individual interrogatories and, to the extent discussion is needed, will be prepared to address them at the hearing.[18] For each interrogatory relying on Fed. R. Civ. P. 33(d), Ricoh requests production of all documents that the 33(d) response relies on.

- Aeroflex's responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7, 8, 10.

- AMIS' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7, 8, 10.

---

[17] During none of the meet and confer conferences in June, July, August 22 or August 24 did the defendants raise the objections they now discuss below (other than as to a few specified topics where they refuse to provide any discovery). The issue discussed here is one of timing so that Ricoh at least quickly gets the responses and the documents that the defendants state they are willing to provide and Ricoh can follow up later as necessary on other issues.

[18] By purporting that "deadlines for supplementation" are "reciprocal to all parties," Defendants apparently are attempting to raise for the first time Ricoh's discovery responses. Defendants have not identified any shortcomings with Ricoh's discovery responses, and there has been no meet and confer on the matter nor even any request by the defendants for a meet and confer conference to be held.

- The Matrox entities' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 10.

- Matrox Tech had represented in its responses to Ricoh's Requests for Production of Documents that it has no documents, yet its responses to interrogatories rely heavily on Rule 33(d). Matrox Tech must (i) supplement its responses to Ricoh's requests for documents (and produce all responsive documents) and/or (ii) supplement its responses to interrogatories to remove the 33(d) references and provide full substantive responses.

With respect to Ricoh's request for admissions, defendants' responses should be supplemented to remove objections based on purported ambiguity since they are based on scope of phrases including claim terms have now been construed by the Court, as well as terms that the parties previously agreed to use. See Exh. 31 hereto, 4/29/04 letter between counsel reciting agreements re discovery terms.

The following responses to document requests need to be supplemented

- Aeroflex's responses to Ricoh's First Set of Document Requests Nos. 9, 12, 14-20, 28, 30, 35.

- AMIS' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28, 29, 30, 33, 35, 37.

- Matrox Entities' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28-30, 33, 35, 3).

- Synopsys' responses to Ricoh first set of Document Requests Nos. 2, 14-15, 16-23 and 32.

2. Customer Defendants' Position. This topic includes four separate subtopics that we will address in order. All deadlines for supplementation of initial disclosures, document requests, interrogatories, and requests for admission are understood by Synopsys and the Customer Defendants to be reciprocal to all parties. Synopsys and the Customer Defendants have not received any supplementation by Ricoh, nor any responses to Synopsys' Second Set of Requests for Production, dated July 16, 2004.

Subtopic 1 – Initial disclosures

As we have indicated in several meet and confer sessions to date, we have provided all of the contact information possessed by the Customer Defendants or Synopsys for all individuals and companies referenced in the Initial Disclosures. We have committed to provide contact information for the individuals listed promptly, if Synopsys or the Customer Defendants should come into possession of it. In terms of the companies listed, these were simply an identification of companies that were

involved in the logic synthesis business in the relevant timeframe that might have prior art. We did not have particular contacts at these companies, or particular individuals in mind. We believe that providing contact information for people whom may be identified at these companies through counsel's prior art searches or other work product exceeds the Initial Disclosure obligations. Ricoh's counsel is fully capable of conducting its own investigation.

Subtopic 2 – Interrogatories

The Customer Defendants will supplement their responses to Ricoh's interrogatories as appropriate. In general, many of these responses are related to information that is the subject of the ongoing document collections. We are making best efforts to complete document collection by October 7, 2005, and to supplement the responses at that time, and provide the relevant documents pursuant to Rule 33(d).

Interrogatory numbers 2 through 5, and 8 all deal with product information. The Customer Defendants will provide product information consistent with their Product Declarations. Information relevant to these interrogatories is being collected during current document collection, and the responses will be supplemented after the document collection is complete.

Interrogatory number 7 deals with the response to the complaint. By requiring the Customer Defendants to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has essentially served 100 separate interrogatories and far exceeded the 50 interrogatory limit. Identifying "all persons" having knowledge of the facts set out in Defendant's response to the Complaint is unreasonable and unduly burdensome. In addition, much of the information requested is protected from discovery by the attorney-client privilege and/or the attorney work product doctrine, or is more properly the target of expert discovery. To the extent that this is a contention interrogatory, our investigation and analyses are ongoing, and we reserve the right to supplement at a later date. In addition, to the extent that this interrogatory calls for noninfringement or invalidity contentions, it is entirely premature since Ricoh has yet to produce any meaningful infringement contentions whatsoever,[19] let alone their Final Infringement Contentions., and the Final Infringement Contentions are not yet due Subject to the above objections, to the extent that additional non-privileged information exists, the response will be supplemented.

Interrogatory number 10 deals with the responses to Ricoh's 20 requests for admission. This interrogatory therefore contains impermissible subparts, and by requiring the Customer Defendants to state forth in detail each and every reason of the detail, and the identity of the documents upon which such denial is based, Ricoh has essentially served forty more interrogatories after already exceeding the 50

---

[19] The Amended Preliminary Infringement Contentions Ricoh provided are in violation of this Court's June 17, 2005 order.

interrogatory limit through the subparts of interrogatory 7. Subject to the above objections, to the extent that additional non-privileged information exists, the response will be supplemented.

To the extent that Matrox Tech does not have documents responsive to the interrogatories for which it specified it would provide documents pursuant to Rule 33(d), interrogatory numbers 1 through 5, 8, and 9, it will supplement its response.

Subtopic 3 – Document requests

New document requests

Ricoh's request to have documents responsive to their third set of document requests (served on August 11, 2005) ordered to be produced on the same day as the related objections and responses are due is outrageous and unreasonable.

Previous document requests

Synopsys and the Customer Defendants will supplement their responses to Ricoh's document requests served prior to the discovery stay as appropriate. In general, many of these responses are related to information that is the subject of the ongoing document collections. We are making best efforts to complete document collection by October 7, 2005, and to supplement the responses at that time.

Customer Defendant document request numbers 2 through 5 all deal with product information. The Customer Defendants will provide inputs, scripts, designs, specifications, libraries (target technology, synthetic, symbol, link, design, and GTECH), and netlists for the digital portions of the commercially sold products listed in the Product Declarations, as well as other documents related to logic synthesis of these products. Subject to the above objections, this response will be supplemented as appropriate.

Customer Defendant document request 8 asks for documents concerning any Synopsys product. This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit, as identified at the recent Case Management Conferences. Subject to the above objections, this response will be supplemented as appropriate.

Similarly, Customer Defendant document request 11 asks for documents concerning a list of third party synthesis tools. This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit, as identified at the recent Case Management Conferences. Therefore, we will not produce documents for this request.

Customer Defendant document request 10 asks for all documents concerning Synopsys. This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit, as

identified at the recent Case Management Conferences. Subject to the above objections, this response will be supplemented as appropriate.

Similarly, Customer Defendant document request 13 asks for documents concerning Cadence Design Systems. This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit. Therefore, we will not produce documents for this request.

Customer Defendant document request 33 asks for documents concerning all proprietary or third party hardware or software used by, or on behalf or, or at the direction of the Customer Defendant in the practice of an ASIC method. This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit. Subject to this objection, we will supplement our response, as appropriate.

Customer Defendant document request 9 asks for documents concerning cost savings as a consequence of licensing or using any Synopsys product. This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit. Subject to this objection, we will supplement this response as appropriate.

Similarly, Customer Defendant document request 12 asks for documents concerning cost savings as a consequence of using any of a number of third party products. This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit. Therefore, we will not produce documents for this request.

Customer Defendant document request numbers 14, 15, and 17 through 19 all ask for marketing, sales, and profit information related to the Customer Defendants' ASICs. The information on ASICs is irrelevant to this case, as the result of the method in the relevant claims is design data (either a netlist, in the case of claims 13, and 15-17, or mask data, in the case of claim 14), which is not used directly in the manufacture of an ASIC. Therefore, we will not produce documents for this request, or supplement our responses. See discussion of sales and marketing data under topic C below.

Similarly, Customer Defendant document request number 16 asks for manufacturing information related to the Customer Defendants' ASICs. This information is also irrelevant, for the same reasons specified in the previous paragraph. Therefore, we will not produce documents for this request, or supplement our responses. This issue was discussed extensively at the Case Management Conference and was address in the Joint Case Management Conference Statement. The Court agreed to hear the Customer Defendants' § 271(g) summary judgment motion early in part to avoid this discovery. The claims-at-issue are not related to manufacturing. See discussion of manufacturing related discovery and § 271(g) discovery below under topic C.

Customer Defendant document request number 28 asks for all pending patent applications concerning any ASIC method. This request is overbroad to the extent it purports to require information outside front-end logic synthesis. In addition, pending patent applications from Synopsys and the Customer Defendants are subject to a heightened relevancy requirement that Ricoh has not met. Therefore, we will not produce documents for this request. See topic D below.

Customer Defendant document request number 29 asks for information related to examinations, tests, or studies with respect to any ASIC method. This request is overbroad to the extent it purports to require information outside front-end logic synthesis, as well as vague and ambiguous. In addition, this request is overbroad to the extent that it calls for data related to logic synthesis designs that were never commercialized, as agreed during the Case Management Conference. We are not sure what data Ricoh seeks, so we are unable to supplement at this time.

Customer Defendant document request number 30 asks for information related to analysis of the patent-in-suit, or of infringement or invalidity thereof. This document requests calls for the production of information covered by the attorney-client privilege or work product doctrine. In addition, to the extent that the Customer Defendants decide to rely upon an opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court. Therefore, we will not produce documents for this request.

Customer Defendant document request number 35 asks for information related to indemnification with respect to the patent-in-suit. We object to the extent this request calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, and calls for a legal conclusion. The licenses containing the indemnity provisions have already been produced. We are not aware of any other non-privileged documents related to this subject.

Customer Defendant document request number 37 asks for all documents relied upon or referred to in preparing the response to the Complaint. This request calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. Therefore, we will not produce documents for this request.

Synopsys document request number 2 asks for document retention policies from the issue date of the patent on May 1, 1990. Synopys has already provided responsive documents, and will produce any other non-privileged responsive documents located after a reasonable search.

Synopsys document request numbers 14 through 16 ask for documents related to relationships or agreements between Synopsys and the Customer Defendants. This request is overbroad to the extent that it calls for information about anything outside the products-in-suit. Subject to this objection, Synopsys has already provided responsive documents, and will produce any other non-privileged responsive documents located after a reasonable search.

Synopsys document request numbers 17 through 22 ask for documents related to the design, capabilities, features, functions, operation, use, programming, implementation, documentation, and training of a list of many Synopsys products. This request is overbroad to the extent that it calls for information about anything outside the products-in-suit. Subject to this objection, Synopsys has already provided responsive documents including source code, product manuals, and release notes regarding the products-in-suit, and will produce any other non-privileged responsive documents located after a reasonable search.

Similarly, Synopsys document request 23 asks for documents related to the capabilities, features, functions, operation, and use of the output of Synopsys' ASIC Design Systems. The term "ASIC Design Systems" is vague and ambiguous. In addition, this request is overbroad to the extent that it calls for information about anything outside the products-in-suit. It is also overbroad to the extent it calls for anything other than the netlists, which are the output of claims 13, and 15 through 17, and which we have already agreed to produce. With respect to the output of claim 14 (mask data), we have agreed to provide a stipulation for each product identified in the Product Declarations, as to whether the named Customer Defendants produced mask data. This stipulation is being offered in lieu of any mask data production, since there are no claim elements to be analyzed for infringement. Claim 14 merely requires that, using the netlist resulting from the process described in claim 13, you produce mask data. To the extent Ricoh believes this topic is relevant to the Customer Defendants' § 271(g) motion, see topic C, subtopic 2, discussion below.

Synopsys document request 32 asks for documents concerning semiconductor product royalty rates. This request is not reasonably related to lead to the discovery of admissible evidence. We will not produce documents for this request. See discussion of Customer Defendants' ASIC marketing and sales discovery below under topic C, subtopic 3.

In summary, Synopsys and the Customer Defendants will supplement their discovery responses as appropriate, once the document collection is complete.

**C. Defendants' refusal to produce relevant and responsive documents.**

1. Ricoh's Position. Defendants have taken the position that there should be no merits discovery whatsoever on a wide range of issues relating to Ricoh's infringement claims until Judge Jenkins rules on a pending motion for partial summary judgment. Judge Jenkins had proposed to the defendants that this motion should be held until after the end of all discovery, but the defendants insisted in filing it earlier; the hearing on this motion is set for November 1. Defendants are refusing to produce documents relating to the proximate relationship between the ASIC defendants' design of ASICs and the manufacture of those ASICs, or any documents regarding marketing and sales of the ASIC chips. On July 13, 2005, Judge Jenkins rejected defendants' request for such a stay of discovery on these topics, and ordered merits discovery on all issues to proceed immediately. For this reason, defendants' current attempt to repeat

this request should be denied and they should be ordered to produce all relevant and responsive documents immediately.

Even if the Court was willing to again consider the basis for defendants' refusal to produce documents, however, it makes no sense. Defendants apparently contend that the resolution of their motion for partial summary judgment may narrow the scope of discovery, because if the motion is granted Ricoh's claims would be limited to §271(a). But §271(a) is the broadest infringement claim, and implicates all of defendants' infringing conduct. All of the defendants have substantial operations in the U.S. Thus, even if the motion was granted, Ricoh would still be entitled to widespread discovery regarding all of the defendants' design, manufacture and sale of ASICs. Under §271(a) and §284, Ricoh is entitled to at least "a reasonable royalty for the use made of the inventions *by the infringer*" – in other words, a royalty on the sales of ASICs received by the ASIC defendants as a result of their use of the patented process.[20] Thus, even if the motion was granted, Ricoh would still be entitled to damages discovery regarding all of the defendants' design, manufacture and sale of ASICs, and the scope of discovery would not be narrowed. This discovery should be produced immediately.[21]

---

[20] *Tec Air v. Denso*, 192 F.3d 1353, 1362 (Fed. Circ. 1999) (holding that when an infringer uses a patented process to create a product, "The entire market value rule is appropriate where both the patented and unpatented components together are 'analogous to components of a single assembly,' 'parts of a complete machine,' or constitute a functional unit' but not where the unpatented components 'have essentially no functional relationship to the patented invention and...may have been sold with the infringing device as a matter of convenience or business advantage.'" quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995)); *see also Schaefer Fan Co., v. J & D Manf.*, 265 F.3d 1282,1290 (Fed. Cir. 2001) (court can assess damages based on the entire functional unit, not just a patented portion); *King Instruments Corp. v. Perego*, 65 F.3d 941,950 (Fed. Cir. 1995) ("As long as the patentee receives a proper economic return of its investment in the acquisition of the patent, the Act does not require that return to come form the sale of the patented products"); *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983) (upholding use of the sales price of a finished unpatented product as the basis for computing damages for infringement of a process for making the product); *Wallace Business Forms, Inc. v. Uarco Inc.*, 1988 U.S. Dist. LEXIS 11191, at *28-29 (N.D. Ill. 1988) (determining a reasonable royalty to be 6% of the revenue the infringer received for sale of products made by a patented process); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 1988 U.S. Dist. LEXIS 15910, at *27 (E.D. Tenn. 1988) ("Where a process or method patent is involved, the damage award may be based upon sales of products, made by the infringing process."), *aff'd in relevant part and vacated in part,* 883 F.2d 1573 (Fed. Cir. 1989), *aff'd*, 948 F.2d 1573 (Fed. Cir. 1991).

[21] During the August 22 meet and confer, defendants argued that Ricoh's measure of damages should be no greater than the ASIC defendants' cost of the Synopsys licenses. Defendants' counsel has confused Synopsys' indemnity obligations to the ASIC defendants with Ricoh's recoverable damages under 35 U.S.C. §284. Defendants have not cited any case saying the a reasonable royalty should be based on a cost paid by the infringer to another party. Contrary to *Riles v. Shell Exploration and Production Co.*, 298

Defendants also have refused to produce any documents relating to the relationship between the design and the ultimate production of the ASICs. If the motion under 271(g) is denied, then the issue of proximate relationship between design and production remains an issue for trial. Defendants erroneously argue that no additional discovery should be taken because Ricoh's counsel said that, if required, Ricoh could respond to the partial summary judgment motion without it. Ricoh has already responded to the motion (D.I. 320), but Ricoh's discovery requests are relevant to Ricoh's obligation to prove at trial the proximate relationship between design and manufacture. Ricoh asked defendants to agree that if their motion under Section 271(g) is denied then will they stipulate that there is a proximate relationship; the defendants refused and instead indicted that Ricoh must still address the issue at trial. There is no reason to allow the defendants to unilaterally impose a stay discovery on this subject, especially since Judge Jenkins refused to grant them that requested stay during the CMC conferences. Yet, the defendants refuse to provide discovery on the topic.

In their statement of their position below, defendants are essentially seeking summary judgment precluding Ricoh from pursuing its damages theory, arguing that "Ricoh cannot collect damages on the sale of ASICs." While Ricoh of course sharply disputes this argument, defendants' argument at this stage is inappropriate; the discovery issue is whether Ricoh's discovery of the relationship between design an manufacturing, and sale and marketing, is reasonably calculated to lead to admissible evidence – and the answer is yes. It is noteworthy that, as reflected in the CMC (D.I. 315, Exh. 3), defendants argued strenuously for a discovery stay of these topics, and the Court rejected the request and ordered all discovery to proceed immediately.

Likewise, defendants are refusing to produce emails and other internal documents relating to the ASIC Methods used by defendants, including their input specifications, netlists and mask data. One of the fact issues that exists in light of the

---

F.3d 1302 (Fed. Cir. 2002) cited by the defendants, there has been no dispute that here the ASICs that are alleged to be designed by the process of the claims in issue are the ones for which Ricoh seeks damages based on their sales. The *Riles* court did not hold, as defendants argue, that the cost of the finished platform is "completely irrelevant" to a damages determination, but instead held that the proposed royalty measure must not include costs of manufacture unrelated to the method. Indeed, later in the *Riles* opinion, the Federal Circuit explicitly recognized as proper the defendant's use of the difference in cost to manufacturer the product using infringing and non-infringing methods as a basis for calculating damages. *Id*. at 1313. (recognizing that the cost savings the Defendants would have realized by using a non-infringing method is relevant to the damages inquiry). Defendants cite to *Embrex Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1349-1350 (Fed. Cir. 2000). *Embrex* held: "Royalties for infringement are ordinarily computed based upon *the sales of a patented product or process.*" This decision actually supports Ricoh's position since it shows that reasonable royalties must be based on the sales by the infringer and the ASIC defendants are the only accused infringer in this litigation. The decision does not otherwise support defendants' arguments. Defendants continue to refuse to provide any discovery as to their costs and sales.

claim construction order is whether the nature of defendants' inputs use a form of RTL that is disclosed in the '432 patent, or whether it is a form of RTL that is described in the prior art Darringer patent. On August 22, defendants stated that they would only produce the inputs themselves, and none of the emails or other internal documents relating to those inputs. Likewise, they are refusing to produce any of the emails or other internal documents relating to the outputs, such as the documents showing the connection between design and manufacturing. These issues are hotly contested, but defendants are simply refusing to collect and produce all of the documents.[22]

2. Customer Defendants' Position. This topic includes four separate subtopics that we will address in order.

Subtopic 1 – Discovery regarding manufacturing

Many of the disputes between the parties center around the relevance of ASIC manufacturing to this case. With the exception of the § 271(g) issues that are addressed below in subtopic 2, manufacturing related documents and information are irrelevant to this case because the claims-at-issue deal with methods of **designing** an ASIC and do not address manufacturing in any way. In fact, in its claim construction ruling, the Court determined that the "computer-aided design process" described in claim 13 of the '432 patent "does not include a manufacturing process for ASICs." Claim Construction Order at 7-8.

Despite the fact that this information is irrelevant to the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence, Ricoh has propounded numerous discovery requests on this topic. *See*, *e.g.*, Document Request No. 5 to all Customer Defendants ("Produce all documents concerning the conception, design, development, manufacture, or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.").

Several of the Customer Defendants are foundries. Thus vast amounts of their documents will be related to manufacturing. The Customer Defendants should not be put through the overwhelming burden and expense of collecting and producing these documents given their complete lack of relevance to this case.

Subtopic 2 – § 271(g) motion

---

[22] Although defendants claim that they did not refuse to produce these documents, during the August 22 and 24 meet and confers, they flatly refused production, and a careful review of their portion of the joint letter reveals no commitment to produce them. They also claim that the parties are continuing to meet and confer regarding a potential stipulation, but at the August 24 meet and confer, they said that no stipulation would be forthcoming. And as noted above in Section A, defendants' obligation to produce emails has never been modified by any meet and confer.

During the July 13, 2005 Case Management Conference, Judge Jenkins asked Gary Hoffman if Ricoh needed any discovery other than the depositions of the declarants in order to oppose our § 271(g) motion. Mr. Hoffman indicated that Ricoh did not. The depositions of the declarants have already taken place, and Ricoh has, in fact, already filed its opposition.

Contrary to Ricoh's mischaracterizations, Judge Jenkins agreed to hear this summary judgment motion early, prior to the May hearing date set for dispositive motions, precisely in order to limit the outrageously broad discovery Ricoh seeks (particularly as it relates to the subjects of manufacturing and damages), and that we believe will be made irrelevant based upon our successful motion.[23] Several of the Matrox entities have either no design facilities at all or design facilities only in Canada, such that they may be eliminated from the suit, or at the very least the products that are designed entirely outside the United States may no longer be relevant.

One issue the Court must determine in ruling on the § 271(g) motion is the relationship between the claimed method, which is directed to one aspect of the design of ASICs, and the accused ASICS themselves. Specifically, the Court must decide whether the claimed process is used **directly** in the manufacture of ASICs. If not, the process claims cannot support a § 271(g) claim.

As articulated in our § 271(g) motion and its supporting declarations, the output of the patented processes is a netlist (claims 13 and 15-17) or mask data (claim 14). Neither a netlist nor mask data can be used to **directly** manufacture an ASIC. Instead, after many steps, the mask data created from the patented process of claim 14 can be used to generate photomasks. It is these photomask that are used in the manufacturing process, which also has many steps, to generate ASICs. Because the output of the patented process is **not** used directly in the manufacture of ASICs, it does **not** have the requisite proximity to the ASIC end product, and cannot support a § 271(g) claim.

In addition, if the § 271(g) motion is successful, discovery into the proximate relationship between the claimed design methods and the accused ASICs will be completely unnecessary. Therefore, any manufacturing discovery will also be

[23] In fact, Judge Jenkins had indicated that this motion could be put right back onto the motion practice calendar noticed for any date we wanted after the depositions were completed. No other related discovery was contemplated. In fact, Judge Jenkins made it clear he would not entertain an F.R.C.P. Rule 56(f) motion in connection with the motion. Ricoh again mischaracterizes the events by suggesting that a stay was denied. The Court and the Customer Defendants intended that this motion would be heard promptly precisely so that the Customer Defendants would not have to engage in irrelevant discovery. Unfortunately, when the Customer Defendants renoticed the motion for September 13, 2005, that date was unavailable, and the hearing date for the motion was postponed to November 1, 2005.

unnecessary. The Court should not require us to produce manufacturing discovery as it relates to this issue unless the Court denies our § 271(g) motion.

Subtopic 3 – Customer Defendants' ASIC sales and marketing data

Ricoh's argument regarding its entitlement to documents related to the Customer defendants' ASIC marketing and sales data is premised on the notion that it ultimately will be entitled to recover a reasonable royalty on defendants' ASIC sales pursuant to 35 U.S.C. §271(a). Defendant is wrong,[24] and on this basis alone, Defendants' request for this burdensome and highly proprietary discovery should be denied.

Ricoh has asserted only method claims. Damages for infringement of a method or process can only be awarded based on the value of the use of the process. 35 U.C.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the *use made of the invention by the infringer"*); *see also Embrex Inc. v. Service Engineering Corp*., 216 F.3d 1343, 1349-1350 (Fed. Cir. 2000). "Royalties for infringement are ordinarily computed based upon *the sales of a patented product or process." Id.* (reversing and remanding damages award for calculation of a reasonable royalty tied to use of the infringing process).[25]

---

[24] In support of its assertion, Ricoh ignores all recent Federal Circuit authority on this issue, and instead cites a 1983 Federal Circuit case and two unreported and nonbinding district court cases. This alone should raise great suspicion about Ricoh's argument. Not surprisingly, Ricoh's cases are inapposite. *Central Soya* is a lost profits case. The Court found that Hormel converted 80% of Central Soya's customers through its use of the patented method and, thus, damages were awarded as a reasonable percentage of the lost business – not as a reasonable royalty. This is not a lost profits case, which would require as a prerequisite that Ricoh be in direct competition with Synopsys in the logic synthesis software market, which it is not. Nor do any ASICs manufactured by Ricoh compete directly with the Customer Defendants' ASICs designed with the products-in-suit. *State Industries* and *Wallace Business Forms* are both cases in which the claimed method directly resulted in the product on which royalties were awarded. Here, an ASIC does not result from use of the claimed method.

[25] Synopsys and the Customer Defendants believe that the entire market value rule cited in Plaintiff's section above has no applicability to this case. That rule applies where an infringing product is a component of another product and the two together are "analogous to components of a single assembly," are "parts of a complete machine," or they "contribute a functional unit." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 at 1550. Such is not the case here. The processes of the claims-in-suit result in design data, not a physical product.

Indeed, the Federal Circuit recently has reversed a damages award based on the value of the product produced as a result of practicing a method as opposed to the value of the use of the method. In *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302 (Fed. Cir. 2002), the patent at issue was a method of offshore oil installation. A jury found the patent infringed, and awarded damages. The defendant appealed the damages award, and the Federal Circuit reversed the award because there was no evidentiary basis for the award that was linked to the **use** of the infringing method.

In *Riles*, the patentee argued that the award could be supported based on: (1) a reasonably royalty applied to the value of the platform built using the infringing method; (2) a reasonable royalty applied to the value of the petroleum producing using the platform built using the infringing method; and (3) a combination of both. The Federal Circuit rejected all attempts to support the award, finding instead that damages must be tied to the value of the use of the method. *Id.* at 1313 ("Under either theory of patent damages, the market would pay Riles only for his product - a method of anchoring offshore oil rigs without mud mats. Mr. Dry's model does not associate his proposed royalty with the value of the patented method at all, but with the unrelated cost of the entire Spirit platform, which includes much more than the cost of anchoring without mud mats."). The Court found that the Plaintiff's damage theory was based on the incorrect assumption it could collect a reasonable royalty based on the value of the platform built using the infringing method because it could successfully enjoin use of the platform. The Federal Circuit unequivocally rejected this theory, which applies with equal force here.

As discussed above in subtopic 2, the method at issue here is a method for producing a netlist or mask data – steps in the design process (not the manufacturing process) that is far removed from the ultimate production of the ASIC. The result of using Ricoh's patented method (claim 13) is essentially, a list of the cells to be used and their interconnections – like a blueprint. The netlist is not used to manufacture ASICs. Rather, through many steps, the netlist is used to create mask data. This mask data is used in the creation of photomasks, not ASICs. The photomasks are then used in the many other manufacturing steps for the production of ASICs. Notably, Ricoh does not – either here or in its opposition to Defendants § 271(g) motion – assert that practicing the patented method alone results in an ASIC.

In accordance with *Riles* and *Embrex*, Ricoh can accordingly only collect damages on the *value of the use of the patented method.* The patent at issue in *Riles* claimed a "method of anchoring offshore oil rigs without mud mats," the end result of which was an installed oil rig. Notwithstanding this, the Federal Circuit rejected damages theories based on the value of the rig or the production of the rig because the patentee would not be entitled to an injunction as use of the rig. As in *Riles*, Ricoh could not enjoin the use of ASICs, the sale of ASICs, or even the use of the masks. Therefore, Ricoh cannot collect damages on the sale of ASICs.

Because the discovery that Ricoh seeks is irrelevant as a matter of law, Ricoh's request for this discovery should be denied. To the extent that the Court is inclined to permit this discovery, the Customer Defendants request an opportunity to separately

brief this issue on a normal briefing schedule. The Customer Defendants have had less than 48 hours to provide their section of this letter which is addressed to a multitude of issues.

Subtopic 4 – Documents related to ASIC Methods

Contrary to Ricoh's assertion, we did not indicate a blanket refusal to produce email and other documents related to "ASIC Methods" used by the Customer Defendants. Instead, we indicated that the term "ASIC Methods" was overly broad, and that the collection and production of documents would be limited to those that relate specifically to logic synthesis using the products-in-suit. Documents related to back-end design (after the netlist) are irrelevant, since the claims at issue do not require any specifics other than that mask data is generated. As stated above, we are meeting and conferring regarding appropriate stipulations regarding the same. Collecting documents related to Ricoh's broad definition of ASIC methods, including back-end design as well as manufacturing, would be an excessive burden for production of documents that are neither relevant nor likely to lead to discovery of admissible evidence.

We intend to produce relevant email. We are meeting and conferring with Ricoh's counsel regarding search terms that may be utilized in searching for responsive email.

**D. Defendants' refusal to produce or even to identify their patents and patent applications relating to ASICs and logic synthesis.**

1. Ricoh's Position. Ricoh has requested that defendants produce their patents and patent applications worldwide relating to ASICs and logic synthesis. See Exh. 32, Ricoh's 5/30/03 document request to all ASIC defendants, nos. 7 and 28; Exh. 33, Ricoh's 10/23/03 document request to Synopsys, no. 3. These documents are reasonably calculated to lead to discovery of admissible evidence because those patents and patent applications are likely to contain useful statements distinguishing prior art (including the prior art that defendants have identified in their preliminary invalidity contentions); explaining how their ASICs are designed and manufactured; and describing the logic synthesis process that Ricoh contends is infringing. Defendants, however, refuse to produce either the patents or patent applications, or to produce even a list of those patents and applications, let alone an abstract of the patents and applications. Defendants argue that Ricoh should first demonstrate that the patents and applications are relevant; however, it is unduly burdensome (in the case of some of the patents) or impossible (in the case of other patents and most applications) for Ricoh to obtain a complete list of all of the U.S. and foreign patents and applications. Ricoh does not know even every country where the defendants filed for patents. The defendants insist that Ricoh should bear the burden of searching data bases throughout the world in hopes that the records are accurate and complete, that Ricoh picks the right countries, that the patents and applications show the name of the assignee and that the files are publicly available. Ricoh cannot search for patents where the assignment to the defendant is not apparent, and cannot search applications that have not been published.

However, all of these files are readily available in defendants' files, all they need to do is open up a file drawer, make a list and produce the copies; obviously the burden on the defendants is minimal at most. These documents are reasonably calculated to lead to discoverable evidence and should be promptly produced.[26] Defendants' concerns regarding confidentiality is satisfied by the stipulated protective order.

2. Customer Defendants' Position. Ricoh is not entitled to obtain the patents and patent applications of the Customer Defendants. Ricoh has propounded an extraordinarily overbroad request for every patent and patent application Synopsys and each of the Customer Defendants has obtained or filed anywhere in the world which deals with ASICs and methods of designing ASICs.

In the first instance, the subject matter of the request is excessively overbroad to the extent it relates to anything other than logic synthesis – the subject matter of the claims at issue. Second, Ricoh is unable to articulate any specific need for this information — rather, it speculates that the documents are "likely to contain useful statements distinguishing prior art. . . ; explaining how their ASICs are designed and manufactured; and describing the logic synthesis process that Ricoh contends is infringing." Given the broad nature of its request, the burden on the Customer Defendants to provide this information, the ability of Ricoh to search the public patent records, and the Congressional policy of protecting the confidentiality of nonpublished patent applications, Ricoh is not entitled to any of this information.

In addition, Ricoh has the burden of obtaining for itself the publicly-available patents and patent applications it seeks. As for publicly-available information, Ricoh claims that the Customer Defendants must provide the requested information because it is unduly burdensome "for Ricoh to obtain a complete list of all of the U.S. and foreign patents and applications [it has requested]." This is simply untrue.

Ricoh is perfectly able to search databases of every single issued patent and published patent application using free search engines provided by patent offices the world over. *See, e.g.*, http://www.uspto.gov/patft/index.html (USPTO);

---

[26] In *Mushroom Associates et al. v. Monterey Mushrooms, Inc., et al.*, 1992 WL 442898, at *2 (N.D. Cal. 1992), the Court ordered production of patents and "all other patent application pertaining to mushroom processing....this court finds that the plaintiff's request satisfied the broad definition of relevance established by the federal rules." The court added that the patent applications are directly relevant to the plaintiff's case for willful infringement. *See also Paper Converting Machine Co. v. Magna-Graphics Corp.*, 207 U.S.P.Q. 1136, 1137 (E.D. Wis. 1980) (compelling discovery of a patent application and file history); *Bott v. Four Star Corp.*, 675 F. Supp. 1069, 1075 (E.D.Mich. 1987) (approving of interrogatory requiring identification of "all other patents and patent applications (worldwide) owned or controlled by the Plaintiff … relating to the subject matter of the Patents"). Even defendants' cited cases agree that discovery of patents and patent applications are relevant; defendants' refusal to provide even a list and abstract of the patents and applications simply reflects their fight every issue mentality.

http://patents1.ic.gc.ca/intro-e.html (Canada); https://publications.european-patent-office.org/PublicationServer/search.jsp (Europe); http://www.wipo.int/ipdl/en/ (PCT applications). Moreover, for reasonable fees, Ricoh can pay a service to undertake this search for it. *See, e.g.*, http://www.faxpat.com/productinfoS.html.

Ricoh suggests that the burden on the Customer Defendants is "minimal at most" because "all they need to do is open up a file drawer, make a list, and produce the copies." This is not true. Because of the overbroad and vague nature of the request (all patents "relating to ASICs and logic synthesis") Ricoh wants the Customer Defendants to divine exactly what patents Ricoh seeks. Because Ricoh has multiple, minimally-burdensome ways to locate the exact patents it wishes to locate, it must do so rather than shift the burden of a worldwide search to the Customer Defendants. *See Allen v. Howmedica Leibinger, Inc.*, 190 F.R.D. 518, 525 (D. Tenn. 1999) (refusing to compel discovery where "information similar to that sought by Dr. Allen seems to be publicly available from sources that are more convenient, less burdensome, or less expensive, without subjecting Danek to undue burden. . . .").

Ricoh has not provided any basis for obtaining the confidential patent applications of the Customer Defendants. Ricoh also wishes to obtain non-public patent applications filed by the Customer Defendants and Synopsys which are maintained by the U.S. Patent and Trademark Office in confidence pursuant to 35 U.S.C. § 122. Although the statute is not binding on the courts, *Fischer Imaging Corp. v. Lorad Corp.*, 148 F.R.D. 273, 274 (D. Colo. 1993), courts further the Congressionally-mandated policy of confidentiality by requiring a showing beyond Rule 26 relevance before ordering the disclosure of confidential patent applications. *See, e.g.*, *ICU Medical, Inc. v. B. Braun Medical, Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002) ("In determining whether or not to permit discovery of a pending patent application, the courts have uniformly recognized that a heightened relevancy standard must be applied to patent applications and materials related thereto."). "The Court must weigh the requesting party's interest in materials against the objector's legitimate interest in secrecy." *Id.*

Under this heightened relevancy standard, a confidential patent application is discoverable when: (i) the patent is within the family tree of a patent-in-suit, *see Central Sprinkler Co. v. Grinnell Corp.*, 897 F. Supp. 225, 229 (E.D. Pa. 1995) ("[M]any courts apparently routinely order disclosure of applications stemming from the patents in suit."); or (ii) there is a **specific** showing of **direct** relevance or particularized need, *see Fischer*, 148 F.R.D. at 275 (denying discovery of defendant's patent applications where "[n]o specific showing of direct relevance or particularized need has been made"). Because the Customer Defendants and Synopsys do not have any patents-in-suit, Ricoh must make a specific showing of direct relevance or particularized need in order to obtain the requested patent applications. It has not done so.

Ricoh's sole argument as to why the patent applications are relevant is that they are "likely to contain useful statements distinguishing prior art. . . ; explaining how their ASICs are designed and manufactured; and describing the logic synthesis process

that Ricoh contends is infringing."[27] Courts have routinely found that such non-specific or speculative arguments are insufficient to satisfy the heightened relevancy standard for patent applications. For instance, in *Ideal Toy Corp. v. Tyco Industries, Inc.*, 478 F. Supp. 1191 (D. Del. 1979), the defendant claimed that it "needs to search the file wrappers for admissions that could tend to invalidate the remaining patents in suit. . . ." *Id.* at 1195. The court found that this was "not sufficient to pierce the secrecy inherent in patent proceedings [because] the probative value of such admissions generally does not outweigh the intrusion into matters generally kept secret." *Id.* The same result has been reached by other courts where the relevance of the patent applications sought was wholly speculative.[28] *See, e.g.*, *Fischer*, 148 F.R.D. at 275 (denying production when only presented with "generalized arguments that the patent applications contain information which may be probative on the questions of infringement and validity"); *ICU Medical*, 224 F.R.D. at 462 ("Defendant has not made a sufficient showing to overcome the protection afforded to Plaintiffs pending patent applications.")

Ricoh simply has not explained adequately why the broad range of patent applications it seeks is relevant. It has therefore failed to overcome the heightened relevancy standard applicable to confidential patent applications. *Cf. Central Sprinkler*, 897 F. Supp. at 229 (noting that the request the court granted was limited only to

[27] It bears noting that Ricoh can obtain a description of how ASICs are designed and manufactured and the logic synthesis process (to the extent it needs such information) more appropriately (and more directly) through deposition testimony or targeted interrogatories. Claiming that confidential patent applications are required to obtain such information borders on the frivolous.

[28] The cases cited by Ricoh are not to the contrary. In those cases, the party seeking discovery was either able to provide a specific showing of direct relevance of the requested patent applications (and these patent applications were specifically related to the subject matter of the patent-in-suit), or the requested applications were related to the patents-in-suit. In *Mushroom Associates*, the plaintiff obtained, through other discovery, evidence that the patent-in-suit had been cited to the defendant during the prosecution of the '110 patent application. 25 U.S.P.Q.2d 1304, 1992 WL 442898 at *2. The court therefore held that, due to the claim of willful infringement , "[t]he fact that one portion of the '110 prosecution history refers to the 1832 patent makes the '110 prosecution history relevant to this litigation." *Id.* In *Paper Converting*, the parties apparently agreed that the application at issue contained "a full description of the allegedly infringing machine. . . ." 207 U.S.P.Q. 1136, 1137. Therefore, the court found that "the plaintiff has a right to discovery of the patent application because of its direct relevance to the matters at issue in this suit." Finally, in *Bott*, the court, in the equitable estoppel phase of a patent case, merely noted that an interrogatory propounded in a prior phase of the case "would have disclosed a continuation in the chain of applications. . . ." 675 F. Supp. 1069, 1075. Because Ricoh has made no specific showing of relevant information in the requested patent applications, unlike the requesting parties in *Mushroom Associates* and *Paper Converting*, nor could it show that it would obtain information on patents in the family tree of the patents-in-suit (as in *Bott*), these cases are inapposite to the present facts.

applications related to the patents-in-suit and did not cover "applications concerning sprinkler systems in general or any other broad category").

**E. Defendants' refusal to schedule depositions, or even commit to follow the process that they proposed in April 2004 for deposition discovery.**

1. Ricoh's Position. Deposition discovery will be complex and fast-moving. In September 2003, Ricoh served each of the defendants with detailed Rule 30(b)(6) deposition notices. (Those notices are summarized at the end of Exh. 1 to D.I. 315.) On Aug. 17, 2005, Ricoh issued a supplemental Rule 30(b)(6) Notice to each of the ASIC defendants. Ricoh also has served Rule 30(b)(6) notices to Synopsys. In early 2004, defendants indicated that there may be more than 30 designees in response to those notices. In April 2004, the parties were close to an agreement on the process for scheduling those depositions – the parties' competing proposals are set forth in their respective discovery plans, attached as Exhibits 1 and 2 to D.I. 315. In brief, the parties agreed to schedule and take depositions on a rolling basis so that at any given time there would be between six and nine Rule 30(b)(6) depositions scheduled. The parties' differences centered on the number of depositions that would be scheduled at any given time (Ricoh, of course, wanted more, defendants less) and the amount of time between depositions (defendants wanted up to 40 days; Ricoh wanted them faster). At the August 22 and 24 meet and confers, however, defendants twice refused to even discuss the process for scheduling depositions, and refused to say when they would start offering witnesses for deposition. Only in today's letter have they addressed the scheduling on the merits[29] Ricoh requests that the Court order defendants to comply with the process proposed by Ricoh in the April 2004 discovery plan (D.I. 315, Exh. 1, at pp. 7-9). Since currently there is only 5 months of fact discovery remaining, defendants should begin producing witnesses by no later than September 19, 2005. Ricoh already has identified its preferred priority of witnesses. See Exh. 34 hereto, Brothers 8/24/05 letter to Corbin.

2. Customer Defendants' Position. Synopsys and the Customer Defendants have objected and responded to the 30(b)(6) deposition notices issued prior to the discovery stay, and are currently in the process of identifying witnesses for these topics, as well as determining the availability for these witnesses. Synopsys has provided objections and responses to Ricoh's most recent 30(b)(6) deposition notice on August 26, 2005, and is identifying witnesses and determining their availability for these topics. The Customer Defendants received additional 30(b)(6) deposition notices on August 17,

[29] In their responsive portion, defendants have finally adopted a position and say that they will follow their April 23, 2004 proposal. This is some progress; however, because defendants have identified as many as 70 potential witnesses, it does not work. Defendants' proposal, if applied, would forbid having more than six depositions scheduled at any time, and having a 40-day turnaround between depositions effectively guarantees that Ricoh will be only be able to depose, 18 witness at most, or barely two per defendant, and many important witnesses will be missed. For this reason, the Court should adopt Ricoh's proposal, as set forth in its April 23, 2004 discovery plan.

2005, and will provide their objections and responses on September 6. They will identify witnesses and determine their availability shortly.

Synopsys and the Customer Defendants agree to use best efforts to utilize the process for scheduling depositions set forth in their April 23, 2003 Discovery Plan, whereby they will designate witnesses and provide proposed dates for deposition on a rolling basis. At any given time, they will have set dates for 6 different witnesses. Within 10 days of completion of a deposition, Synopsys and the Customer Defendants will identify proposed dates for at least one subsequent witness. The dates offered will fall within 40 days of the date of the previously completed deposition.

Synopsys will provide the identity of 30(b)(6) witnesses, and their availability, beginning no later than September 15, 2005. The Customer Defendants will provide the identify of 30(b)(6) witnesses, and their availability, beginning no later than September 15, 2005 for topics 1 through 11 of the original 30(b)(6) notice, which are the topics that Ricoh identified as being highest priority, and that would not require the document collection to be complete. It is our understanding that Ricoh has agreed that no witness deposed prior to the completion of the document collection will be required to testify more than once on a single topic due to later produced documents, and we are providing witnesses on that basis. The Customer Defendants will provide 30(b)(6) witnesses on all other topics beginning after the completion of the document collection.

**F. Defendants' refusal to commit to produce documents in a manner that Ricoh's counsel can access.**

1. Ricoh's Position. Defendants have indicated that they are collecting and will produce a million pages of documents, including some in electronic format, but have refused to identify at this time the necessary hardware and software needed to access the electronic files. Ricoh is concerned that, given the shortened discovery schedule, it will be virtually impossible for Ricoh to timely access and interpret this data. (In early 2004, Aeroflex produced certain electronic files on CD, and it took more than a year for defendants disclose how some of those files could be accessed.) Defendants acknowledge that the files can be printed, and Ricoh is of course prepared to pay for its copy. Ricoh seeks an order instructing defendants to produce all documents in either hard copy, or in electronic format that is readily accessible using widely available programs such as Excel, Access, Adobe or text editors.

2. Customer Defendants' Position. Synopsys and the Customer Defendants are collecting and producing documents as they are kept in the ordinary course of business. The logic synthesis design information is kept electronically, in the format appropriate to the logic synthesis and consequent design tools. To the extent it is even possible to print such files, if Ricoh desires a paper copy of this electronic information, which we anticipate would be quite voluminous, it should bear the costs of printing it.

We believe that the majority of this information is contained in viewable text files, with the rest of the information being in files that are readable by the products-at-issue. Such files may have been created for or by versions of the products-at-issue other

than 2003.12, the version on the current source code review machine. Synopsys has indicated that it believes that files from other versions should be able to be read by the 2003.12, perhaps with minor modifications.

**G. Defendants' failure to preserve relevant documents, and refusal to instruct their clients to preserve those documents going forward.**

1. Ricoh's Position. A key issue is the logic synthesis process of the ASIC chips. During logic synthesis, the Design Compiler software creates intermediate files called design libraries (and stored as design.db files). Ricoh long has sought the production of those design libraries. See Exh. 32, Ricoh's 5/30/03 document request to all ASIC Defendants, definitions 16-18; requests nos. 4, 5 and 8. In the declarations provided on August 15 and 16, 2005, defendants identified for the first time those design libraries. During the meet and confer process, defendants' counsel disclosed for the first time that most of the ASIC defendants had not been saving those design libraries, but instead were routinely destroying those files. Defendants' counsel further conceded that she had never instructed her clients to retain those files, and refused Ricoh's request to instruct her clients to retain those files going forward. Ricoh seeks an order compelling defendants to immediately cease the destruction of those design libraries and an accounting of the destruction process and why such destruction did not cease upon the filing of this litigation two and a half years ago.[30]

2. Customer Defendants' Position. Ricoh again mischaracterizes this issue to suggest that the Customer Defendants are actively deleting relevant files. That is just not true.

First, the intermediate files called design libraries are not stored as design .db files. Design libraries in the sense referred to by Ricoh are intermediate storage formats that are caused to be created by the use of specific commands that not all customers use. Customers do not usually retain such intermediate files on an ongoing basis such as in archived versions of products (because they can be regenerated later when needed from the original inputs). Further, in many cases, the cache directories containing these intermediate files are periodically purged to ensure smooth functioning of the systems.

---

[30] Defendants inconsistently respond that the files were not created, or that they were created but not used, or that they were created and used but not retained, or that a few files were created, used, retained and will be produced. Based upon Synopsys' own documents (quoted in footnote 6), it is clear that all ASIC defendants create and use design libraries, which are relevant discoverable electronic documents within the meaning of the Federal Rules. Even if those files are analogous to cache files, they should have been retained since this action was filed. There is no undue burden associated with retaining these electronic documents – putting them on a CD would have been fast and painless – and although defendants have claimed (without explanation) that Ricoh can accurately recreate these files (an assertion Ricoh does not agree with), defendants have not addressed the evidentiary problems, and cannot justify their failure to comply with their discovery obligations under the rules.

This is analogous to the way that the Internet Explorer browser cache is periodically trimmed in size to prevent it from consuming endless disk space.

The Library Declarations make clear that the only Customer Defendants that use these intermediate files are Matrox Graphics and Matrox Tech (while other Customer Defendants may create them, they do not use them), and only for particularly large chips. While we informed the Customer Defendants of the requirement to retain documents and files relevant to the litigation, we did not believe it was appropriate to require them to modify their design process flow to add the creation (to the extent not used by the customers) or retention of these intermediate files to their scripts. We also do not believe that it is appropriate to require them to create documents that they do not ordinarily create or to grind their ordinary use of their systems to a halt going forward. Any of these intermediate electronic files that exist for the products listed in the Product Declarations will be provided. In addition, since the Customer Defendants will be providing their available inputs and other libraries in electronic format, Ricoh can **create** the exact same files by running the logic synthesis process and, if desired, adding the necessary commands to create and/or save these files. See topic G under Remaining Discovery Disputes.

Ricoh's footnote number 30 again reflects the confusion caused by Ricoh's inconsistent terminology usage. The synthetic library implementations referred to by Ricoh are provided to customers by Synopsys and the source code has already been produced. See discussion at II.A.2 above. Thus, contrary to Ricoh's mischaracterization, there has been no document destruction or spoliation of evidence. Moreover, to the extent Ricoh believes design library (in the sense discussed in Exhibit 38 at page 3, third row) files are relevant, Ricoh can recreate them.

**H. Different understandings as to agreements reached, and Ricoh's refusal to allow transcripts.**

1. Customer Defendants' Position. Unfortunately, the parties in this case have a history of different understandings of the agreements reached during meet and confers, as well as in hearings. These discrepancies began more than a year ago. In fact, in a June 22, 2004 letter from Ken Brothers to Tom Mavrakakis attached hereto as Exhibit 18, Mr. Brothers responded to Mr. Mavrakakis' suggestion that all future meet and confer sessions be transcribed by saying that it would be beneficial. This issue was also discussed in a June 24, 2004 letter from Tom Mavrakakis to Ken Brothers, attached hereto as Exhibit 19.

This pattern continues to this day. For instance, there was no court reporter at the July 13, 2005 Case Management Conference ("CMC"). The parties exchanged no less than **five** communications, attached hereto as Exhibits 20 – 24, in attempting to simply summarize the agreements from the CMC, and were still unable to agree.

Another example is related to the Customer Defendant Product Declarations. During the July 22, 2005 teleconference hearing, the Customer Defendants agreed to provide a list of commercial products for which Design Compiler was used by the

named Customer Defendants for logic synthesis, a description of the product, and the libraries used. After the Product Declarations were provided, Ricoh complained in an August 17, 2005 letter, attached hereto as Exhibit 25, that the Customer Defendants had agreed to produce additional information. The Customer Defendants reiterated the actual agreement in an August 19, 2005 letter, attached hereto as Exhibit 26.

As these examples demonstrate, the reality of the situation is that without a record the parties are reduced to inefficient "he said" and "she said" disputes. Having a court reporter transcribe the meet and confers (as well as the hearings) would alleviate this problem.

Synopsys and the Customer Defendants requested to have a court reporter transcribe the August 22, 2005 discovery meet and confer. Ricoh objected to this request. The parties have exchanged several emails addressing Ricoh's concerns, including the details of the speaker phones to be used, how parties will identify themselves verbally, going off and on the record for sidebars, and transcripts, on this issue.

2. Ricoh's Position. This issue is outside of the scope of the Court's August 16, 2005 Order. This item was never on the agenda for the meet and confers on August 22 or 24, but was raised by the defendants during the August 24 conference call; Ricoh explained to the defendants what its concerns were and requested certain information. Hence the issue is still under discussion, and on Friday, August 26, counsel for the defendants sent Ricoh's counsel an email specifically stating this issue would not be raised in this letter to the Court. (Exhibit 35.) At that time, the defendants provided information that Ricoh had requested and Ricoh is now reviewing the matter. Ricoh submits that the issue is premature and should not be heard by the Court.

Even if the Court was prepared to consider the issue, and aside from the unseemingly aspects of transcribing all communications between counsel, Ricoh has several concerns. First, contrary to the representations by the defendants, the speaker phones used by counsel do not permit a court reporter to hear when one party is speaking, then is interrupted by another. During the August 22 and 24 meet and confers, Ricoh's counsel experienced multiple occasions when their comments were not heard because opposing counsel had interrupted and talked over them. Because of this technological obstacle, a court reporter would be unable to make a complete record. Second, there is no agreement of when an ordinary telephone call rises to the level of a transcribed meet and confer. Ricoh's counsel does not want to be prevented from picking up the phone to clarify a point, then having the call refused because no reporter is present. Third, the whole matter is unseemingly. Judge Jenkins refused defendants' counsel's request for a reporter at the CMC hearings; Ricoh's counsel suggests that we ought to follow the Court's lead.

Sincerely,

/s/ Kenneth W. Brothers

Gary M. Hoffman
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN
& OSHINSKY, LLP
2101 L Street, NW
Washington, DC 20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Attorneys for Ricoh

/s/ Teresa M. Corbin

Teresa M. Corbin
HOWREY LLP
525 Market Street
Suite 3600
San Francisco, CA 94105-2708
Phone: (415) 848-4944
Fax: (415) 848-4999

Attorneys for Defendants

INDEX TO EXHIBITS TO JOINT LETTER

**Defendants' Exhibits**

| Exh. # | Description |
|---|---|
| 1 | Joint Case Management Conference Statement, dated June 8, 2005. |
| 2 | Declaration of Robert B. Smith in Support of Defendants' Stipulation to Input Format. |
| 3 | Declaration of Robert B. Smith in Support of Defendants' Stipulation to Design Libraries. |
| 4 | Declaration of Brandon Coco in Support of Defendants' Stipulation to Design Libraries. |
| 5 | Declaration of Brandon Coco in Support of Defendants' Stipulation to Input Format. |
| 6 | Declaration of Eric Boisvert in Support of Defendants' Stipulation to Input Format. |
| 7 | Declaration of Eric Boisvert in Support of Defendants' Stipulation to Design Libraries. |
| 8 | Declaration of David Chiappini in Support of Defendants' Stipulation to Input Format. |
| 9 | Declaration of David Chiappini in Support of Defendants' Stipulation to Design Libraries. |
| 10 | Declaration of David Chiappini in Support of Defendants' Stipulation to Input Format. |
| 11 | Declaration of David Chiappini in Support of Defendants' Stipulation to Design Libraries. |
| 12 | Declaration of Robert B. Smith of AMI in Support of Defendants' Stipulation to Representative Products. |
| 13 | Declaration of Brandon Coco of Aeroflex in Support of Defendants' Stipulation to Representative Products. |
| 14 | Declaration of Eric Boisvert of Matrox Electronic Systems in Support of Defendants' Stipulation to Representative Products. |
| 15 | Declaration of David Chiappini of Matrox Graphics in Support of Defendants' Stipulation to Representative Products. |
| 16 | Declaration of Eric Boisvert for Matrox Tech in Support of Defendants' Stipulation to Representative Products. |
| 17 | Declaration of David Chiappini for Matrox Tech in Support of Defendants' Stipulation to Representative Products. |
| 18 | Letter from Kenneth W. Brothers to Tom Mavrakakis, dated June 22, 2004. |
| 19 | Letter from T. Mavrakakis to Kenneth W. Brothers, dated June 24, 2004. |
| 20 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated July 14, 2005. |
| 21 | E-mail from Gary Hoffman to Teresa M. Corbin, dated July 15, 2005. |
| 22 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated July 18, 2005. |
| 23 | Letter from DeAnna Allen to Jaclyn C. Fink, dated July 19, 2005. |
| 24 | Letter from Jaclyn C. Fink to DeAnna Allen, dated July 20, 2005. |
| 25 | Letter from Gary M. Hoffman to Teresa M. Corbin, dated August 17, 2005. |
| 26 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated August 19, 2005. |
| 27 | Letter from Jaclyn C. Fink to DeAnna Allen, dated June 27, 2005. |
| 38 | Letter from Jaclyn C. Fink to DeAnna Allen dated July 18, 2005 |

**Ricoh's Exhibits**

| Exh. # | Description |
|---|---|
| 28 | AMI Semiconductor, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 29 | Aeroflex Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 30 | Matrox Tech, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 31 | Letter from Edward A. Meilman to Katharine L. Altemus, dated April 29, 2004. |
| 32 | Ricoh's first set of document requests to all Defendants, dated May 30, 2003. |

33 Ricoh's first set of document requests to Synopsys, dated October 23, 2003.
34 Letter from Kenneth W. Brothers to Teresa M. Corbin, dated August 24, 2005.
35 E-mail from J. Fink to Gary Hoffman, dated August 25, 2005.
36 Letter from DeAnna Allen to Teresa M. Corbin, dated July 18, 2005
37 Excerpts from Synopsys document titled: "DesignWare Building Block IP User Guide," dated March 16, 2005, located at http://www.synopsys.com/products/designware/docs/doc/dwf/manuals/dwug.pdf

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
Eric Oliver (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
& OSHINSKY, LLP
2101 L Street, NW
Washington, DC 20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
& OSHINSKY, LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN
& DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
HOWREY LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for ASIC Defendants and Synopsys, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD,<br>Plaintiff,<br>vs.<br>AEROFLEX ET AL.,<br>Defendants | Case No. C- 03-04669 MJJ (EMC)<br>Case No. C-03-02289 MJJ (EMC)<br><br>COMBINED JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED ORDER |
| SYNOPSYS, INC.,<br>Plaintiff,<br>vs.<br>RICOH COMPANY, LTD.,<br>Defendant. | Date: June 14, 2005<br>Time: 2:00 p.m.<br>Courtroom: 11 |

Pursuant to FRCP 26(f) and L.R. 16-9, Ricoh Company, Ltd. and Aeroflex, Inc. et al. in Case No. C-03-04669, and Synopsys, Inc. and Ricoh Company, Ltd. in Case No. C-03-02289, jointly and collectively submit this Joint Case Management Conference Statement and Proposed Order.

**DESCRIPTION OF THE CASE**

**1. A brief description of the events underlying the action:**

**a. Ricoh's Description**

The Court is already acquainted with the events underlying this action, as set forth in this Court's order of September 22, 2003, the Case Management Conference Statement and Proposed Order, dated April 26, 2004, and the Claim Construction issued by the Court on April 7, 2005.

**Ricoh's claims against the ASIC Defendants.** In January 2003, Ricoh Company, Ltd.("Ricoh") sued several designers and manufacturers of computer chips in the District of Delaware (C.A. No. 03-103-GMS) for patent infringement, alleging that those Defendants, Aeroflex, Inc. et al (hereinafter the "ASIC Defendants"), were using the steps recited in the process claims of Ricoh's 4,922,432 patent ("'432 patent"). The '432 patent describes a highly advanced technical process used in designing and producing certain types of computer chips called ASICs. In carrying out their infringement of the patented process, the ASIC Defendants use software supplied by Synopsys, Inc. ("Synopsys"), and perhaps other suppliers, as part of their process in producing ASICs that they sell. Ricoh has never accused Synopsys itself of infringing the '432 patent and has stated that it will not bring any action for infringement of the '432 patent against Synopsys with respect to Synopsys' past or current software products. Further information about the infringing activities of the ASIC Defendants has been set out in Ricoh's preliminary infringement contentions, served on March 12, 2004.

Contrary to the ASIC Defendants' representations, the activities that infringe certain of the process claims of the '432 patent involve more than the "ordinary use" of a Synopsys product named Design Compiler. Indeed, the ASIC Defendants refuse to represent (even in the absence of discovery) in this submission that they have not changed that which Synopsys calls the "ordinary use" of Design Compiler, and thus effectively are telling the Court that they are not doing what Synopsys calls "ordinary use". Ricoh is seeking in its Complaint damages based upon the ASIC Defendants' revenue derived from their use of the patented process, including the sale of the ASICs made utilizing this

process. The ASIC Defendants are obligated to defend against Ricoh's infringement claims without limitation to particular equipment they may employ when so acting. On August 29, 2003, the Delaware court granted the ASIC Defendants' motion to transfer that action to this Court. On December 11, 2003, this Court denied the ASIC Defendants motion to stay, finding that "Ricoh has a 'separate interest' in litigating against Defendants in the first-filed action."

Resorting to hyperbole, Synopsys and the ASIC defendants claim that they are "totally in the dark" as to the issues in this case. Ricoh's Amended Preliminary Infringement Contentions, which were prepared consistent with the guidelines articulated by Magistrate Judge Chen regarding both the infringement and invalidity contentions, demonstrate explicitly how Ricoh is reading each ASIC Defendants' usage of Synopsys products in the design and production of ASICs. With respect to the "storing in an expert system knowledge base" limitation, for example, the Amended Preliminary Infringement Contention (PIC) states: "This element is met when the ASIC Designer stores, installs or loads HDL Compiler, Design Compiler, and Synthesis Libraries in computer memory of a computer system." The "expert system knowledge base" referenced in the claim element is therefore found in the HDL Compiler, Design Compiler, and Synthesis Library components of the Synopsys products. Even if it were somehow required to do so to prove infringement, it is only because of Synopsys' own deficiencies in the relevant discovery that Ricoh cannot further pinpoint which module(s) in these components contains the "expert system knowledge base."

Regarding the limitation "applying to the specified definition of the action or condition to be performed, a set of cell selection rules," the PICs specifically identify:

> both HDL Compiler and Design Compiler as they are used in conjunction with the Synthesis Libraries, cell selection rules are applied to the synthetic operators ("specified definitions of the action[s] or conditions[s]") to perform the selection of the implementations ("selection of hardware cells") that perform the desired functions of the proposed ASIC.

This passage clearly identifies the manner in which Ricoh is reading the claim limitation on the ASIC Defendants' use of Synopsys products. To the extent that Ricoh was unable to further define the precise module or subcomponent that may be responsible for performing this claim limitation is a

direct result of the failure by Synopsys and the ASIC Defendants to adequately produce the relevant discovery.[1]

**The Declaratory Judgment Action.** Although Synopsys chose not to try to intervene in the Delaware case, it had indemnified the ASIC Defendants; Synopsys' attorneys assumed control of the defense and have filed multiple declaratory judgment counterclaims against Ricoh. After months of litigating the Delaware case, Synopsys filed a declaratory judgment action in this Court with respect to the '432 patent and another patent (the 5,197,016 patent ("016 patent")) that Ricoh did not assert in the Delaware case. Ricoh has never accused Synopsys itself of infringing the '432 patent or the '016 patent and has issued a written commitment that it will not bring any action for infringement of the '432 patent or the '016 patent against Synopsys with respect to Synopsys' past or current software products. Ricoh has advised others of the availability of a license under the '016 patent but has not threatened anyone with infringement of that patent. On September 22, 2003, this Court denied Ricoh's motion to dismiss Synopsys' declaratory judgment action.

**Discovery in late 2003 and early 2004.** In late 2003 and early 2004, this case was marked by constant bickering between counsel and multiple delays. For example, when Ricoh moved to amend its complaint in early 2004, the motion was opposed by the ASIC Defendants, even though they admitted there was no prejudice in the amendment. At an April 6, 2004 hearing on the ASIC Defendants' opposition to Ricoh's motion to amend the complaint, this Court expressed its frustration at counsel for the ASIC Defendants for continually delaying the proceedings:

> It struck me from day one in this case, and I don't know what is going on, motions to strike, invalidity contentions, I mean, it's just ridiculous. And it's not the way this case is going to get litigated. And I'm going to tell you now . . . I don't have the resources, and no one else around here does, to deal with a case where you want to take it upon yourself to not discuss matters that you can resolve without the Court's intervention.

(April 6, 2004 Tr. at 3.)

[1] Amazingly, the ASIC Defendants also fault Ricoh with not issuing a Preliminary Infringement Contention applicable to software about which the ASIC Defendants have refused, and continue to refuse, to reveal whether or not they use.

4

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

Pursuant to the instructions of Magistrate Judge Chen, on April 23, 2004, the parties submitted their respective discovery plans detailing how each side believed discovery should proceed. Ricoh's discovery plan (attached as Exhibit 1) detailed a wide range of areas where the ASIC Defendants and Synopsys had refused to participate in discovery. For example:

- The ASIC Defendants and Synopsys have not produced all of the documents identified in their initial disclosures.
- The ASIC Defendants and Synopsys have not produced the source code for all of the software identified in Ricoh's preliminary infringement charts.
- Although the ASIC Defendants and Synopsys agreed to produce all documents (other than e-mails) by April 30, 2004, they did not do so, and have produced no documents since May 4, 2004. There remains pending a large volume of documents that have never been produced by Synopsys and the ASIC Defendants.
- The ASIC Defendants and Synopsys have objected to a wide range of Ricoh's discovery requests, for example, refusing to produce documents regarding all of the processes and products that Ricoh contends infringe the '432 patent or disclosing the process they actually practice.
- The ASIC Defendants have refused to produce many documents that include source code, inputs, cell libraries and related documentation that is vital to Ricoh's infringement claims.

**The discovery stay.** During the May 4, 2004 Case Management Conference, this Court stated that there should be a stay of discovery related to the merits (e.g., infringement and invalidity). On May 13, 2004, Magistrate Judge Chen issued an Order reaffirming the stay of all discovery not related to claim construction. Consequently, the dates for all actions in this case, other than those related to the Markman process, were suspended pending the Court's claim construction ruling.

The parties nonetheless proceeded with certain depositions in Japan during the discovery stay, and Synopsys permitted Ricoh's experts to have periodic access to some of Synopsys' source code during the discovery stay. Synopsys does not deny withholding access to the source code of many of the products (e.g., Module Compiler, Physical Compiler, etc.) at issue in this case, and it produced only the

source code for its Design Compiler product (and its corresponding user interface and compiler components). Synopsys unilaterally decided what it considered to be the "Synopsys Logic Synthesis Product" that would be produced. (See footnote 5). Synopsys has produced a single modified version of the Synopsys Logic Synthesis Product even though up a dozen or more versions have been used by the ASIC Defendants to infringe the '432 patent. Ricoh has explicitly placed at issue many other products beyond Synopsys' unilateral product definition; however, Synopsys refuses to permit Ricoh access to that source code or other documentation.

Synopsys has made discovery of its Design Compiler source code difficult by refusing to turn over the source code in the manner in which it was kept and insisting it be examined only at inconvenient Synopsys locations under the constant monitoring of Synopsys personnel and under the strict procedures limiting availability and access, using "custom software" Synopsys wrote for that purpose.[2] While Synopsys several times mentions that it made the code "available" for 34 or 46 weeks, it fails to reveal that the source code had over 21 million lines of code that incorporated tens of thousands of source files, many of which were not humanly readable. Months into Ricoh's review, Synopsys admitted that of the tens of thousands of source code files provided, many were for products not at issue in the case and thus irrelevant. Synopsys initially required Ricoh to use a workstation computer that was at least five orders of magnitude slower than an ordinary personal computer. That workstation suffered multiple outages, each requiring the scheduling of a service call with an off-site Synopsys technician with attendant losses in inspection time. The workstation ultimately experienced a catastrophic failure and it took several months for Ricoh to convince Synopsys to permit Ricoh to buy a higher speed computer workstation for use in connection with code inspection after Synopsys decided to change the inspection site from Maryland to California.

---

[2] Synopsys has only now admitted that it has not provided a typical environment in which the source code would operate. Instead, it created, at its own expense and initiative, custom software for Ricoh's experts to use when accessing the code, when in fact, the source code must have been initially accessible in its native environment. This new and unique software has not worked, which explains some of the problems detailed in the main text that Ricoh encountered. Likewise, Ricoh has not been using Design Complier for 17 years – indeed, Design Compiler has not existed in its present form for even a fraction of that time – and Ricoh's use of Design Compiler as a customer is no substitute for a proper inspection of the closely-guarded source code by experts.

There has been virtually no merits discovery for more than 13 months.

**The Markman briefing, hearing and claim construction ruling.** Between March and August 2004, the parties exchanged claim constructions and filed Markman briefs. Between October 2004 and January 2005, the Court conducted several hearings related to claim construction. On April 7, 2005, the Court issued its Order construing the claims.

**Stipulation narrowing the claims at issue.** During the stay period, in June and July 2004, the parties negotiated and the Court entered a Stipulated Order that had the effect of dismissing all claims and counterclaims except those relating Ricoh's allegations that the ASIC Defendants infringe claims 13-17 of the '432 patent. All other claims relating to the '432 patent, and all issues relating to the '016 patent, were dismissed by Court Order in the *Ricoh v. Aeroflex* litigation on July 8, 2004. A similar stipulation and order was entered in the *Synopsys v. Ricoh* litigation on July 7, 2004, making those two cases congruent with respect to the patent claims at issue.

**Consolidation vs. stay and/or bifurcation**. A threshold issue is whether the earlier-filed *Ricoh v. Aeroflex* infringement action should be consolidated with the later-filed *Synopsys v. Ricoh* declaratory judgment action. There are no patent infringement claims or counterclaims in the declaratory judgment action. The declaratory judgment claims in the *Synopsys v. Ricoh* litigation are identical in scope and language to the declaratory judgment counterclaims in this litigation. Ricoh believes that consolidation is appropriate, with Ricoh, the first filer and patent owner, as the plaintiff.

Synopsys and the ASIC Defendants claim that they will consent to consolidation if Ricoh blindly waives any right to proceed with its infringement claims based upon how the ASIC Defendants input specifications into Design Compiler. In a stunning admission of how little their attorneys know about their own client's business, counsel for the ASIC Defendants write (at p. 13) that "it is most probable that the customer defendants use the same forms of input to Design Compiler that the vast majority of Synopsys' customers use–Verilog and VHDL . . . ." The fact that the attorneys for the ASIC Defendants do not know what kinds of inputs their clients use, while simultaneously conditioning their consent for consolidation upon an uninformed demand for a stipulation to that effect, is stunning. It would most irresponsible for Ricoh to even consider such an informed request.

7

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

Thus, Synopsys and the ASIC Defendants effectively oppose consolidation and refuse to participate in setting a schedule for discovery on Ricoh's infringement claims. Synopsys and the ASIC Defendants instead propose breaking up the dispute before this Court into tiny segments, each of which to be handled as if it were a separate case: a trial on their affirmative defenses first, then a trial on the infringement merits, then separate damages trials.[3] The ASIC Defendants claim that they will be bound by a validity ruling but leave unresolved all other issues including Ricoh's infringement claims and all damage issues. Thus, the ASIC defendants want to narrowly define the accused products and then try only their affirmative defenses while ignoring the merits. With respect to the narrow scope of the products, there are two fundamental problems: first, they do not want to try all of the products that Ricoh has accused of infringement. Second, of their self-defined Synopsys Logic Synthesis Product that there were at least 12 major revisions of the Design Compiler source code during the infringement period before the first-filed case began, but the ASIC defendants propose limiting the possibility of infringement to only one, the "2003.12 source code release," which they have arbitrarily chosen from the releases after the first-filed case was begun and even though Synopsys has produced manuals which related to a different release (2002.05; see footnote 19 infra).[4] Synopsys and the ASIC Defendants also propose bifurcating damages with respect to each of the seven defendants, implying that multiple additional trials will become necessary. Ricoh opposes such bifurcation as unnecessary and wasteful of this Court's resources. While there may be separate calculations for each group of defendants, as there are in any multiple defendant action, Ricoh believes that the Court should approach damages in a consistent manner regardless of the identity of the defendant under consideration.

Synopsys and the ASIC Defendants also announce their intention to renew the stay motion, which has already been denied by both the Delaware court and this Court. In December 2003, this Court

---

[3] It seems incongruous that the ASIC defendants would oppose consolidation and propose that the cases be bifurcated in that the ASIC defendants could find themselves liable beyond any indemnification provisions provided by Synopsys. The ASIC defendants, however, have ceded complete control of this litigation, so it appears their separate interests are not being independently addressed.

[4] Therefore, Synopsys desire to resolve Ricoh's infringement claim by selecting one particular version of one self-designated product, Design Compiler, without regard to any other version of Design Compiler or any product beyond Design Compiler.

8

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

ruled that "Ricoh has a 'separate interest' in litigating against the [ASIC] Defendants in the first-filed action." The ASIC Defendants do not identify why that "separate interest" finding is no longer applicable. As shown below, the ASIC defendants have refused to respond to discovery regarding their infringing activities. They refuse to represent (even in the absence of discovery) in this submission that they have not changed that which Synopsys calls the "ordinary use" of Design Compiler, and have conceded that they have done so. Thus, the ASIC Defendants effectively have told this Court that the case against them will continue even should Synopsys prevail, ending its obligation to defend them (see footnote 5 infra) and leaving the ASIC Defendants to their own devices.

Synopsys and the ASIC Defendants propose the stay of Ricoh's infringement action begun in January 2003 remain in effect until a decision is rendered sometime after their proposed May 2006 trial against Synopsys in the second-filed case, at which time discovery could begin again, resulting in a trial in, perhaps 2008 (assuming that there are no issues that are sought to be appealed). There is no valid reason for a stay.[5] Ricoh, in its first filed action, is entitled to have a resolution to its outstanding conflict with the ASIC defendants within a reasonable time.

Finally, Synopsys and the ASIC Defendants claim that they want to file an additional summary judgment motions, even though both sides agree that the deadline should be after close of fact discovery. For example, they claim an intent to renew a prior motion for partial summary judgment that some, but not all, of the ASIC Defendants had filed under 35 U.S.C. 271(g). When that earlier 271(g) motion was made, Ricoh asked for discovery pursuant to Fed.R.Civ.P. 56(f) since the ASIC Defendants had mostly refused to produce discovery designed to reveal what they actually did. An extremely limited deposition of a Matrox defendant revealed that contrary to representations found in Matrox declarations, activities had been conducted within the United States. After that discovery, the ASIC Defendants hastily withdrew their pending motion for partial summary judgment. Ricoh disagrees with the statement by Synopsys and the ASIC Defendants that any attempt to renew that motion will be

[5] The argument proffered by Synopsys' and the ASIC defendants to litigate the Synopsys DJ action first and then, and only then, commence the ASIC defendant litigation is unreasonable and akin to a defendant in a patent infringement action arguing that the action should be litigated element by element, where litigation one element does not commence until the litigation has been completed on a prior element.

9

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

limited to expert issues; instead, Ricoh will require additional discovery on the "proximate relationship" between the '432 patented invention and the ASICs produced by the ASIC Defendants. That relationship is best seen in claim 14 of the '432 patent. This Court noted (at footnote 4, page 8 of the Markman Order) that at least a portion of the invention (i.e., generation of mask data) was required to produce an integrated circuit and was a distinct process apart from the design steps (as recited in claim 13) that culminated in the generation of a netlist. This fact shows that the claimed process, at least as recited in claim 14, is in a "proximate relationship" to the production of ASICs. While the ASIC Defendants would like to assert that there is no relationship between the '432 patent and the manufacture of ASICs, Ricoh maintains that neither the patent, nor the claim construction, nor the facts, support the defendants' argument. In any event, even with this proposed partial summary judgment motion, the ASIC Defendants effectively concede that the case against them would still continue.

The dispositive motion cut off proposed by the parties is rapidly approaching (both are during the first quarter of next year). There is no good reason to consider permit piecemeal motions of a dispositive nature before that time.

**Final infringement contentions.** Ricoh understood the Court's May 2004 discovery stay to suspend all obligations imposed by the court's scheduling orders and the local rules until a new schedule was established after the claim construction ruling was issued. After the claim construction ruling was issued on April 7, 2005, lead counsel for the parties spoke by telephone on April 21, 2005, and Ricoh's counsel understood the parties to agree that all dates and obligations were suspended until a new schedule was established. Since merits discovery had been stayed at that time for about 11 months (now about 13 months), and because the ASIC Defendants and Synopsys have not provided all of the documents and source code for the products identified in Ricoh's preliminary infringement charts, Ricoh believes that it should obtain discovery and have time to analyze it prior to the submission of its final infringement contentions. If the ASIC defendants and Synopsys had not withheld discovery and if discovery had not been stayed, then Ricoh would have obtained discovery needed for it to proceed with presenting its final infringement contentions.

On May 31, 2005, however, counsel for the ASIC Defendants and Synopsys served what purported to be the final invalidity contentions of Synopsys and the ASIC Defendants, with a footnote

10

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

asserting that Ricoh did not timely present its final infringement contentions "and its opportunity to do so has passed."[6]  This position by the ASIC Defendants and Synopsys came as a surprise to Ricoh, because it is inconsistent with the suspension of all due dates other than those relating to the Markman process, inconsistent with the agreement between counsel that new dates for presenting such charts needed to be set in the schedule, and because counsel for the ASIC Defendants and Synopsys never informed Ricoh of their apparent belief to the contrary, either before or after the purported date for the final infringement contentions.  In a telephone conference on June 2, 2005, counsel for the ASIC Defendants and Synopsys maintained their position but said that they would consider extending the time for Ricoh to submit its final infringement contentions to 30 days after the CMC hearing.  As noted above, however, Ricoh has been denied discovery on most of the products and source code identified in Ricoh's preliminary infringement contentions and the ASIC Defendants and Synopsys continue to withhold documents because of the stay of discovery and suspension of the due dates for the past 13 months.  Ricoh should have a fair opportunity to receive and analyze such discovery prior to the submission of its final infringement contentions.  Therefore, Synopsys' and the ASIC defendants' proposal of Ricoh's submission of the contentions 30 days after the CMC is inappropriate.  If discovery is limited or not permitted until after such contentions are filed, as suggested, it will inevitably lead to unnecessarily burdening the Court with numerous vigorously contested motions to amend the contentions.  Ricoh believes it is more appropriate to provide the final infringement contentions in accordance with the time schedule noted below.

**b.  Description of Synopsys and the ASIC Defendants**

Although this case has been pending for more than two years, the Court has issued its claim construction ruling, and three of Ricoh's experts have had 46 weeks of access to the source code for the Synopsys Logic Synthesis Product[7] (although they have only utilized 34 weeks), Synopsys and the

---

[6] Counsel for Ricoh did not receive any communication from the counsel for Synopsys and the ASIC defendants inquiring whether Ricoh intentionally failed to provide the final infringement contentions.

[7]   The "Synopsys Logic Synthesis Product" is defined in Paragraph 18 of Synopsys' Amended Complaint For Declaratory Judgment as "Design Compiler® software, HDL Compiler™ for Verilog, VHDL Compiler® and DesignWare Foundation libraries . . ."

customer defendants are still totally in the dark with respect to how Ricoh reads any of the elements of the claims at issue on the Synopsys Logic Synthesis Product.[8] For example, Ricoh has never articulated in its Amended Preliminary Infringement Contentions, or elsewhere, where it finds an "expert system," "knowledge base" or a "set of cell selection rules" in the Synopsys Logic Synthesis Product.[9] As a result, Synopsys still finds itself in the compromised commercial position of not being able to clear the cloud over its most important product and to quickly establish that the ordinary use of the Synopsys Logic Synthesis Product does not infringe Ricoh's '432 patent.

Once Synopsys establishes that the ordinary use of its product does not infringe the '432 patent it will be relieved of any indemnity obligation to its customers and will be free of the cloud over its business.[10] If Ricoh fails to show that all of the non-input related claim elements[11] are present in the Synopsys Logic Synthesis Product, the customers would also be in a position to have their case

---

[8] Despite the fact that the Court entered a stay of discovery, in the interests of disposing of this case as soon as possible, Synopsys has made its source code for the Synopsys Logic Synthesis Products available to Ricoh's experts for 46 weeks. Synopsys did not merely turn over the source code in the manner in which it was kept, which it was entitled to do, but instead, at its own expense, wrote custom software for the source code produced to ensure that Ricoh's experts would be able to compile it. It took the equivalent of one full time engineer over 30 days to get the system up and running. In addition to the source code and custom software listed above, which is all Synopsys committed to provide, Synopsys also produced the source code for Presto, Physical Compiler, and Module Compiler, as well as the standard target technology libraries, link libraries, and symbol libraries. Therefore, all subsequent use of the term "Synopsys Logic Synthesis Product" in this statement will also include these items. Thus, even if the Court deems it appropriate to include these other Synopsys products in the customer suit, Ricoh has had nearly a year of access to the source code for these products as well. Recently, Ricoh requested that they be permitted to increase the number of experts with access to the source code from three to five and Synopsys readily agreed that they could do so. In addition to the source code, Synopsys produced the product manuals for the Synopsys Logic Synthesis Product.

[9] The descriptions provided in Ricoh's section of this Statement simply serve to demonstrate the inadequacy and vagueness of Ricoh's position. Ricoh simply repeatedly points at the grouping of the HDL Compiler, Design Compiler, and Synthesis Library components as fulfilling each claim element. These generalized contentions do not satisfy Ricoh's burden of showing where each claim element is found in the accused instrumentality.

[10] The Synopsys Logic Synthesis Product accepts only certain types of input. If the ordinary use of the Synopsys Logic Synthesis Product, including those specific input types, do not infringe, Synopsys is relieved of its indemnity obligations to its customers.

[11] Non-input related claim elements include for example: "expert system," "knowledge base," and the "selecting" step.

dismissed because the only accused instrumentality requires use of the Synopsys Logic Synthesis Product. In other words, Ricoh vaguely alleges that it is the customer defendants' input together with the Synopsys Logic Synthesis Product that infringes its '432 Patent claims. Since Ricoh must show that each element of its asserted claims are infringed, it is indisputable that if the non-input claim elements are not found in the Synopsys Logic Synthesis Product, then the customer defendants do not infringe regardless of the nature of their input.

Ricoh vaguely alleges that there are activities by the customer defendants that involve more than the "ordinary use" of Design Compiler. In fact, Ricoh incredibly states that the customer defendants have conceded that they are not doing what Synopsys calls "ordinary use." It is telling that Ricoh does not point to **anything** to support this completely false assertion, because there is simply no support for it either in the record or in fact. In fact, it is most probable that the customer defendants use the same forms of input to Design Compiler that the vast majority of Synopsys' customers use–Verilog and VHDL–and they may be willing to stipulate to that fact if Ricoh will identify those inputs as the ones that it believes infringe the '432 patent. If Ricoh is saying that the customer defendants' input of Verilog or VHDL infringes the '432 patent, then that is the "ordinary use" of Design Compiler, and trial of the Declaratory Judgment case should resolve both cases.

If Ricoh truly alleges that there is some other activity that the customer defendants do that involves more than the "ordinary use" of Design Compiler, neither Synopsys nor the customer defendants can adequately respond to this allegation since Ricoh has provided no specifics as to this "more than ordinary use." More than two years into this case, it is time for Ricoh to provide detailed contentions of what it believes the customer defendants do that infringes the '432 patent. If there actually is "more than ordinary use" of Design Compiler by the customer defendants that Ricoh can articulate, Synopsys and the customer defendants believe that the customer suit should be stayed pending the outcome of the Declaratory Judgment trial. Synopsys' Declaratory Judgment suit should proceed to trial with all due haste. Synopsys has set forth a time frame for the trial of the Declaratory Judgment case. The Customer Defendants have already agreed and reiterate here that they will be bound by any adjudication respecting the validity of the patents as well as any finding that the ordinary use of the Synopsys Logic Synthesis Product infringes the '432 patent. The trial of the declaratory

judgment case will therefore, either eliminate the need for a trial of the Customer case at all, or substantially narrow the issues for trial.[12]

Synopsys and the Customer Defendants identify below several key issues that they believe must be addressed in order to provide a proper framework for determining 1) whether the customer case should be stayed, 2) and if not stayed, whether the cases should be consolidated, 3) whether damages issues should be bifurcated, and 4) the proper scope of discovery in either case.

**Claim Construction Ruling.** The Customer Defendants would like to renew their summary judgment motion of noninfringement of the ‘432 Patent under 35 U.S.C. Section 271(g). In its claim construction ruling, the Court determined that the “computer aided design process” described in Claim 13 of the ‘432 Patent “does not include a manufacturing process for ASICs.” Resolution of this issue will narrow the issues in the case, eliminate parties, narrow the relevant discovery and enhance the potential for settlement which is frustrated at this moment by the parties’ differing positions on whether the relevant economic measure for damages is the revenue on ASIC sales or merely software licensing fees.

Contrary to Ricoh’s suggestion, the 271(g) motion will **not** require voluminous additional discovery from the customer defendants on the “proximate relationship” between the ‘432 patented invention and the ASICs produced. All that will be required is expert opinion. Ricoh is simply attempting to conduct yet another fishing expedition to collect damages-related information from the customer defendants.

If the Section 271(g) claims are eliminated from the case, the foreign defendants can move to be dismissed from the case and relevant discovery will exclude, among other things, any manufacturing processes, any design processes not taking place in the United States, and discovery related to the ASIC products themselves (except perhaps as it relates to damages, which relevance is also disputed by Synopsys and the Customer Defendants).

---

[12] With guidance from the Court, the customer defendants are willing to provide limited discovery sufficient to show the types of input they have used in connection with the Synopsys Logic Synthesis Product in designing ASICs.

**Final Infringement Contentions.** Ricoh has not served any Final Infringement Contentions. Since the date provided for serving such final contentions has passed, pursuant to the Local Rules, Ricoh would now be foreclosed from revising its infringement contentions absent a showing of good cause and an order of the Court. Synopsys and the Customer Defendants served timely Final Invalidity Contentions on May 31, 2005.

Ricoh asserts that it understood the Court's stay of discovery to include a suspension of the parties' Local Rules obligations. This was never Synopsys' or the Customer Defendants' understanding. There is no Court order or other statement of the Court at any hearing, of which Synopsys and the Customer Defendants are aware, and Ricoh has pointed to none, that indicates a suspension of the Local Rules requirements was contemplated. Moreover, Ricoh has blatantly mischaracterized the conversation between counsel on April 21, 2005. Not only was there no agreement that dates for presenting final contentions were suspended and needed to be set in the schedule, that issue was never discussed at all. Rather, there was a query and a confirmation that the stay entered by the Court was continuing until the status conference. The entire purpose of the call was to determine whether the parties should jointly request that a status conference be scheduled. Ricoh's counsel never raised the Local Rules or the final contentions at all and never informed Synopsys' counsel that Ricoh understood the Local Rules obligations to be suspended as part of the stay. Ricoh's counsel certainly never asked Synopsys' and the Customer Defendants' counsel to agree to suspend the Local Rules obligations and, in any event, that is not something that Synopsys' and the Customer Defendants' counsel understands can be done by agreement of the parties without approval from the Court.

Synopsys and the Customer Defendants have been prejudiced by Ricoh's failure to provide adequate infringement contentions because it is those contentions which should provide the framework within which the Court considers the issues of stay, consolidation and the scope of discovery and their absence has had the effect of delaying the case yet again. Given that Ricoh has represented that it was its belief that the Local Rules obligations were suspended, Synopsys and the Customer Defendants urge the Court to set a deadline for the submission of Ricoh's Final Infringement contentions as early as possible but in no event later than 30 days from the date of the Status

Conference.[13] Synopsys and the Customer Defendants should then have an additional 20 days to provide their Final Invalidity Contentions.[14] The court should set another status conference as soon as possible after submission of the parties' final contentions to address the schedule and other issues herein.[15] Once the Final Contentions are submitted, neither side should be able to amend absent a showing of good cause and order of the Court.

Synopsys requests that the court provide guidance with respect to the detail required for the final contentions. Ricoh's Preliminary Infringement Contentions were utterly inadequate. Defendants were forced to file a motion to seek more detailed infringement contentions. At two separate hearings on May 27 and June 16, 2004, and by order dated June 17, 2005, Judge Chen made clear that the amended preliminary infringement contentions were to include as much information as Ricoh currently knew about its infringement contentions, that they needed to provide information specific to each defendant on a product by product basis and that there needed to be an identification of where in each accused product they found each element of the asserted claims. Ricoh's last amended Preliminary Infringement Contentions did not provide that information. For example, Ricoh's Amended Preliminary Contentions did not specify what in the accused products constitutes:

- the "expert system knowledge base,"
- the "set of rules for selecting," or
- "architecture independent actions and conditions."

Rather, Ricoh stated identical contentions for each defendant stating "[defendant] infringes claim 13 by performing a process . . . in which [it] describes input specifications (using User Interfaces) and synthesizes such specifications using the combination of Design Compiler, HDL Compiler, and the Synthesis Libraries."

---

[13] The Local Rules provided Ricoh with 30 days after the claim construction ruling to submit its final contentions.

[14] The Local Rules provide the alleged infringer 50 days after the claim construction to submit its final contentions.

[15] The stay entered by the Court should remain in place until the final contentions of the parties are submitted and the Court holds the next status conference.

Ricoh is a Synopsys customer and has used the Design Compiler Product for approximately 17 years, so it should be very familiar with its functions, features and the types of input it will accept. Now, having the benefit of the Court's claim construction ruling, 34 weeks of access to the source code for the Synopsys Logic Synthesis Product, and many more weeks than that to review the product manuals, Ricoh's Final Infringement Contentions should set forth with specificity where it is alleging each element of each asserted claim is met in the accused products or combination of products, and specifically how it is reading the non-input claim elements on the Synopsys Logic Synthesis Product source code.

Synopsys and the Customer Defendants know that the Synopsys Logic Synthesis Product does not include the required elements. They believe the case is ripe for bringing summary judgment motions with respect to some of these terms as soon as possible to achieve an early disposition of this case. Synopsys would like to discuss at the status conference whether the Court will entertain summary judgment motions at this juncture.

**The Customer Defendants' Case Should Be Limited to Synopsys' Logic Synthesis Software.** In Ricoh's portion of this statement entitled "Ricoh's claims against the ASIC Defendants," it twice makes reference to the fact that it believes this case is potentially about logic synthesis software provided by suppliers other than Synopsys. Ricoh states "In carrying out their infringement of the patented process, the ASIC Defendants use software supplied by Synopsys, *and perhaps other suppliers*, as part of their process in producing ASICs that they sell." Ricoh also states that "The ASIC Defendants are obligated to defend against Ricoh's infringement claims *without limitation to particular equipment they may employ* when so acting."

Synopsys and the Customer Defendants request that the Court limit the discovery and the issues to be tried in this case to the Customer Defendants' use of Synopsys' products. In other words, all non-input claim elements must be met by Synopsys' products, not the logic synthesis products of any of its competitors. At the outset of the case, when the Customer Defendants asked on what basis they had been sued, they were told that they were sued because they used Synopsys' Design Compiler product. Ricoh's Preliminary Infringement Contentions reference Synopsys' products only. It appears from discovery taken prior to the stay, that Ricoh's pre-filing "analysis" was limited to a review of the

capabilities of the Synopsys Design Compiler product and evidence that Ricoh believed indicated that each of the defendants utilize Design Compiler. No analysis of competing software tools was done, and there is no basis for the suggestion in Ricoh's description of the case that its scope ought to be expanded to include other software products beyond the Synopsys Logic Synthesis Product. The case has been pending for more than two years, the claim construction is in place, and all the parties have indicated that they do not intend to join any additional parties. Since the customers would not have source code for any logic synthesis software they use, and no other logic synthesis software suppliers are parties to this case, the discovery in this case and the issues to be tried should be limited to design in connection with the Synopsys Logic Synthesis Product.

**Source Code Production and Proposed Stipulations re Same.** Contrary to Ricoh's suggestion that there has been virtually no merits discovery for more than 13 months, Synopsys has made its source code (and custom software to ensure Ricoh's experts could compile the code) available now for over 46 weeks.[16] This produced source code includes each and every item requested by Ricoh herein: Design Compiler, HDL Compiler for Verilog, VHDL Compiler, Design Ware Foundation libraries (also known as Design Compiler Basic Library, DesignWare Building Block IP, and synthetic libraries), Presto, Physical Compiler, and Module Compiler.[17] In addition, Synopsys provided the standard target technology libraries, link libraries, and symbol libraries that are provided to customers, who usually replace them with their own.[18] Synopsys provided the source code for the Physical Compiler and Module Compiler which allowed Ricoh to review these products. During the source code discovery to

---

[16] Ricoh complains that it has only had "periodic access" to the source code. Yet, other than the time when a new machine had to be purchased and configured because of an unexpected system failure (which occurred on August 26, 2004, the day before the intial review period was due to expire, with Synopsys offering to procure an upgraded machine on August 31, 2004 – 5 days later, not the "several months" Ricoh has concocted), Ricoh has had continuous access to the source code for more than a year. However, Ricoh has not done **any** review of the source code since March 4, 2005, and does not plan to recommence its review until July 11, 2005, because of the purported unavailability of its expert.

[17] Synopsys does not have a product called Design Ware Expert Libraries, and therefore did not provide it.

[18] Design libraries may be created automatically during an intermediate step as part of the input process. Therefore, Synopsys has no such libraries to provide, though Ricoh can generate them if it wishes.

date, Ricoh never requested a license key to run the Physical Compiler or Module Compiler products included with the production and one was not originally provided. Synopsys is willing to install license keys for those products—additionally Synopsys can install sample scripts and physical libraries not normally shipped to customers to aid in running Physical Compiler—prior to Ricoh's recommencement of its source code review on July 11, 2005.

Synopsys made two versions of the code available: 1) the earliest version of the code that it had in its possession (version 2.0 from the period around 1990 or 1991) and the most recent version of the code that it had at the time it began the production (version 2003.12). Synopsys provided Ricoh with a printer and 5000 sheets of paper so that it could print any portions of the code it wished. Synopsys also indicated that it would provide the history on any particular portions or modules of the code that Ricoh requested. Ricoh made no such requests. Furthermore, Synopsys offered to answer any questions that Ricoh had about the code, if they provided them in writing. Ricoh did not submit any such questions. In addition to the source code, Synopsys has also produced the product User Manuals.[19]

Ricoh asserts herein that Synopsys has not provided all of the source code for the products identified in its preliminary infringement charts. It is unclear what Ricoh means by "all of the source code." If Ricoh is not referring to the source code for the products that Synopsys has already provided, as addressed above, perhaps Ricoh is referring to the different releases of the software. Since 1997,[20] on average there have been at least two major releases of the Synopsys Logic Synthesis Product per year and several more minor releases. At a minimum, there were at least 18 major releases of the Synopsys Logic Synthesis Product during the potential damage period. Since it takes approximately 30 days on the part of a full time equivalent engineer to provide each buildable version of the software, it is not practicable or reasonable to expect that Synopsys will produce source code for every major release of the product from 1997 to the present. It is also unimaginable how long the trial would take or the

---

[19] In order to comply with Ricoh's request, Synopsys produced the 2002.05 version of the User Manuals, which were the current manuals at the time of production. During the meet and confer regarding this Joint Statement, Synopsys' counsel agreed to produce the 2003.12 version of the manuals as well.

[20] This assumes that Ricoh can claim damages for 6 years prior to the filing of its suit against the Customer Defendants in February 2003.

verdict forms would have to be if Ricoh is required to prove infringement of every major release of the Synopsys Logic Synthesis Product, let alone if the minor releases are also considered. In order to narrow the issues for trial and the scope of discovery, Synopsys and the Customer Defendants propose that they enter a stipulation that the infringement liability for the entire damage period be based upon the 2003.12 source code release.[21]

**Synopsys Supports Consolidation of the Liability Cases if Ricoh Agrees that its Infringement Allegations are Based Upon Verilog or VHDL Input and No Third Party Products are Included.** The customer defendants are willing to investigate entering into a stipulation that they provide input to Design Compiler in the form of Verilog or VHDL descriptions, as do the vast majority of Synopsys' customers, if Ricoh will agree that this is the form of input it believes infringes the '432 patent, and will also agree that it will not pursue any infringement theories that include a non-Synopsys synthesis software (i.e., any third party software that performs similar or the same functions to Design Compiler). In that case, Synopsys supports consolidation of the liability phase of the cases, with the much simplified discovery it would entail.[22] However, if Ricoh continues to allege that the customer defendants do more than the "ordinary use" of Design Compiler or that infringement may be based upon the use of software other than Design Compiler, Synopsys is opposed to consolidation. Synopsys wants and is entitled to the earliest possible adjudication of whether the ordinary use of the Synopsys Logic Synthesis Product infringes. If it does not, Synopsys will be free of the cloud confronting its business, free of its indemnity obligations to the Customer Defendants and to all of its customers with respect to infringement allegations by Ricoh. To the extent any issues remain, Synopsys will withdraw from its involvement in and control of the Customer Defendants suit.

Although there is identity of the patent claims at issue in the two suits, they may not be

---

[21] Synopsys acknowledges that the oldest version of the source code produced (version 2.0) has segments that no longer exist in the source code and did not exist in the 2003.12 release version. That is why Synopsys communicated that it would provide the history with respect to specific segments or modules of the code at Ricoh's request, but no such requests have been made.

[22] Synopsys and the customer defendants believe that the liability phase of the cases could be consolidated under these circumstances. However, as discussed in more detail below, Synopsys and the customer defendants suggest that the trial is bifurcated into separate liability and damages phases.

coextensive in a number of other respects. First, although it has never identified anything other than the ordinary use of Design Compiler, in its description of the case, Ricoh contends "the activities that infringe certain of the process claims of the '432 patent involve more than the 'ordinary use' of a Synopsys product called Design Compiler." Second, as stated above, as of yet, it is not clear that the Customer Defendants' case is limited to the Synopsys product as opposed to including also logic synthesis products of its competitors. Third, given the ambiguities of Ricoh's preliminary infringement contentions it is theoretically possible that Ricoh is focused on something that the Customer Defendants do in providing input, for example using an additional software product or graphical user interface, that would translate a flowchart into an RTL specification that could then be input into Design Compiler.[23]

If the Court consolidates the two cases, Synopsys believes that the Court should bifurcate the issues of liability and damages.[24] While the question of liability does involve some issues that are common to each of the defendants in Ricoh's case against the customers, and to the declaratory judgment Synopsys seeks, the question of damages is complicated, does not involve Synopsys, and should be reserved for a separate trial. The question of damages is complicated and particular to each of the Defendants, and, will require specific inquiry into each product alleged to have been designed using the infringing process. Ricoh contends that it is entitled to a portion of the revenue stream from each such product. The Customer Defendants expect to contend that the ASIC products designed using the allegedly infringing process could have been designed using non-infringing alternative techniques and that Ricoh's recovery must, therefore, be limited to the difference in cost of the two design techniques. Proving or disproving each of these damages theories will require delving into the particulars of each design alleged to have been produced by the infringing method, and will be quite time consuming.

---

[23] This last point would be obviated if Ricoh would unambiguously state that its infringement theory is related to the input of Verilog or VHDL descriptions by the Customer Defendants to Design Compiler.

[24] The Customer Defendants request that with the exception of limited discovery sufficient to show the types of input the customers have used in conjunction with Synopsys' product when designing ASICs, the damages discovery should be stayed.

**2. Principal factual and legal issues in dispute.**

**a. Ricoh's Description**

*Ricoh's statement of disputed factual issues:*

a. Whether the ASIC Defendants, or someone on their behalf, practice the process disclosed in the '432 patent.

b. Whether the ASIC Defendants infringe the '432 patent.

c. The amount of damages to be awarded to Ricoh.

d. Whether the ASIC Defendants acted willfully in infringing the '432 patent.

*Ricoh's statement of disputed legal issues:*

e. Whether ASIC Defendants can prove by clear and convincing evidence that the '432 patent is not valid.

f. Whether the ASIC Defendants can prove their affirmative defenses of estoppel and laches that would preclude Ricoh from enforcing its '432 patent against them, or limit Ricoh's right to damages.

**b. Description of Synopsys and the ASIC Defendants**

Defendants agree that the issues identified in b – f are presented in this case. Additional factual issues are in dispute:

g. Whether the '432 patent is invalid.

h. Whether Ricoh is barred, under a theory of laches or estoppel, from enforcing its '432 patent against some or all of the allegedly infringing activities.

i. Whether the actions that Ricoh identifies as the basis of its infringement allegations are anything other than ordinary steps involved in use of the Synopsys Logic Synthesis Product, and whether that ordinary use of the Synopsys Logic synthesis Product infringes the '432 patent.

j. Whether this action should be stayed pending resolution of the *Synopsys, Inc. v. Ricoh Company, Ltd.* Declaratory Judgment action.

Additionally, the following legal issue is presented in this case:

k. Whether the design activities claimed in the asserted method claims of Ricoh's '432 patent can serve as the basis of an allegation of infringement under 35 U.S.C. § 271(g).

**3. The other factual issues which remain unresolved:**

**a. Ricoh's Description**

Ricoh believes that the principal issues are set forth above in Ricoh's description.

**b. Description of Synopsys and the ASIC Defendants**

Synopsys and the Customer Defendants believe that there are none.

**4. Parties which have not been served:**

None.

On April 6, 2004, this Court granted Ricoh's motion to amend its Complaint to, *inter alia*, add as a party Aeroflex Colorado, and counsel for Aeroflex agreed to accept service for all Defendants on April 12, 2004. The Amended Complaint was filed and served on April 12, 2004.

**5. The additional parties which the parties intend to join and the intended time frame for such joinder:**

None.

**6. The following parties consent to assignment of this case to the United States Magistrate Judge for trial:**

Neither party consents to assignment to a Magistrate Judge for trial.

**ALTERNATIVE DISPUTE RESOLUTION**

**7. The parties have not filed a Stipulation and Proposed Order Selecting an ADR process and the ADR process to which the parties jointly (or separately) request referral:**

**a. Ricoh's Position**

During the pendency of this litigation, Ricoh and Synopsys have occasionally discussed settlement of Ricoh's infringement claims against the ASIC Defendants, but the ASIC Defendants have not engaged in any negotiations with Ricoh. As noted above, in July 2004, all of the parties were able to enter into a stipulation to narrow the scope of Synopsys' declaratory judgment claims to be congruent with Ricoh's theory that the ASIC Defendants are infringing claims 13-17 of the '432 patent. Ricoh has invited the ASIC Defendants to negotiate with respect to a license, but the ASIC Defendants have refused. Ricoh is willing to enter into ADR with the ASIC Defendants. Ricoh is also willing to have

Synopsys participate in such an ADR. Ricoh believes that conducting an ADR at this time may be fruitful since the Court recently has issued its claim construction ruling. Ricoh would prefer either having a settlement conference with the Court (Judge Jenkins), or if the Court is unavailable, then a mediation by a knowledgeable patent attorney, who also may be qualified to serve as an early neutral evaluator.

**b. Description of Synopsys and the ASIC Defendants**

The Customer Defendants do not believe that there is any purpose to settlement negotiations between them and Ricoh. Settlement of this case is most likely if there is a global settlement negotiated between Ricoh and Synopsys. Synopsys disputes the fact as stated by Ricoh that "the parties have occasionally discussed settlement, but have not engaged in negotiations." To the contrary, at Synopsys' urging there have been a total of four settlement meetings between Synopsys and Ricoh, three in Tokyo and one in San Francisco. The second meeting resulted in the significant narrowing of the case and amended pleadings that took place in July 2004. At the third and fourth meetings, Synopsys made specific cash and non-cash offers of settlement, but the parties were unable to agree. Following the receipt of the Court's claim construction ruling, by letter dated April 24, 2005, Synopsys made another offer of settlement, which was rejected by Ricoh in a letter dated May 2, 2005. Ricoh's response made it obvious that the parties are still at an impasse.

Until Ricoh provides its Final Infringement Contentions and details at a minimum how it is reading the non-input claim elements of its asserted claims on the Synopsys Logic Synthesis Product source code, the Customer Defendants and Synopsys do not believe that an ADR procedure will be productive. Once such contentions have been provided, Synopsys and the Customer Defendants request referral to the Court's ENE ADR process, preferably with a knowledgeable patent attorney.

**DISCLOSURES**

**8. The parties certify that they have made the following disclosures:**

**a. Ricoh's Position**

In May 2003, Ricoh served its initial disclosures in the Delaware action and produced documents identified therein.

The ASIC Defendants also served an initial disclosure in May 2003, later admitted that the disclosure was "inartfully drafted," and after Ricoh filed a motion to compel, the ASIC Defendants belatedly amended their disclosure in January 2004. The ASIC Defendants have refused to adequately identify many of the individuals in the disclosure, and Ricoh has been unable to locate or contact approximately ten of the individuals listed.

With respect to document production, Ricoh believes that the ASIC Defendants have still not produced all of the documents identified by the categories of their initial disclosures.

**b. Position of Synopsys and the ASIC Defendants**

The Defendants served an initial disclosure statement on May 30, 2003, and an amended version of their initial disclosure statement on January 20, 2004. Defendants have produced documents described in their amended initial disclosure statement, including prior art that they believe demonstrates the invalidity of the patent and manuals describing Synopsys' Design Compiler product that demonstrate that Design Compiler does not practice Ricoh's patents.

**DISCOVERY**

**9. The parties have presented the following discovery plans:**

On March 24, 2004, Magistrate Judge Chen ordered that parties to submit a discovery plan by no later than April 23, 2004. A copy of Ricoh's discovery plan is attached as Exhibit 1, and a copy of the Defendants' discovery plan is attached as Exhibit 2. These discovery plans summarize the discovery disputes immediately before the stay of discovery on May 4, 2004.

**a. Ricoh's Position.**[25]

In 2003, Synopsys threatened Ricoh that, if Ricoh continued to press its patent claims against the ASIC Defendants, Synopsys would order its counsel (who also represent the ASIC Defendants) to fight on every issue and make the litigation as expensive as possible. Synopsys specifically stated that it would not produce evidence until ordered to do so by the Court. Before discovery was stayed in May

25 Ricoh's comments do not address the responsiveness of Aeroflex Colorado Springs as it was added shortly before the discovery stay went into effect.

25

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

2004, Synopsys followed through on that threat. The Court's irritation at such tactics was noted during the hearing on April 6, 2004.

Attempting to manage the refusal by Synopsys and the ASIC Defendants to participate in discovery, in April 2004, Magistrate Judge Chen required that the parties submit a discovery plan. Each of the parties submitted their discovery plans on April 23, 2004, and they are attached as Exhibits 1 and 2. During the June 2, 2005 conference between counsel, Ricoh attempted to discuss and resolve these discovery issues, but counsel for the ASIC Defendants and Synopsys declined to discuss any of these discovery issues. Thus, the ASIC Defendants and Synopsys are still refusing to comply with their obligations and provide discovery (document, source code, etc.) and to make matters worse, propose an abnormally early October 2005 fact discovery cut-off date. Ricoh believes that a prompt resolution of these discovery issues is essential to meeting the aggressive discovery schedule proposed by the parties.

**Areas of agreement.** As set forth in the discovery plan submitted by Synopsys and the ASIC Defendants on April 23, 2004 (and attached as Exhibit 2), the parties had substantial areas of agreement regarding the production of documents and a process for scheduling depositions. The Court should use those areas of agreement as a starting point. Ricoh requests that Synopsys and the ASIC Defendants immediately complete their production of documents by June 30, 2005, and proceed with depositions on Ricoh's long-standing Rule 30(b)(6) notices in August through November.

Ricoh's proposed schedule is based upon the assumption that discovery will be cooperative. The Court should strongly advise counsel that it will not tolerate the prolonged delays, gamesmanship and incessant motions practice that marked the first stage of discovery.

**Areas of disagreement.** Although Synopsys and the ASIC Defendants concede that discovery should be reopened, at least on a limited basis (*see, e.g.,* footnote 12), it opposes a general reopening of discovery on the merits. Ricoh believes that the Court should reject out of hand the efforts of Synopsys and the ASIC Defendants to impose a series of additional stays on discovery, and should instead put this case on a path for trial on all issues.

With respect to the difference in the parties' April 2004 discovery plans, the following is a summary of Ricoh's understanding of the discovery disputes as they were frozen in time in May 2004:

26

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

**(i) Production of Documents**

**(a) General Production of Documents**

The parties had agreed in principle that all non-privileged documents (other than e-mails) required to be produced pursuant to Rule 26(a) or responsive to document requests should be produced by no later than April 30, 2004.

There are no disputed issues with respect to the scope of Ricoh's document production.

The ASIC Defendants and Synopsys failed to produce all of their documents by April 30, 2004. The documents that they have refused to produce generally fall into the following categories, each of which have been the subject of numerous letters and meet and confer sessions:

(1) Documents in the possession of ASIC Defendants Matrox Graphics and Matrox Electronics relating to the design and manufacture of ASICs. These had defendants contended that they should not be obligated to produce such documents unless and until the Court denied their Rule 12(c) motion for judgment on the pleadings, which the Court denied by Order on April 22, 2004. Nevertheless, at a meet and confer on April 23, 2004, counsel for the ASIC Defendants refused to commit to withdraw this objection and produce the relevant and responsive documents that they are withholding. No further justification for the withholding of these documents has ever been identified.

(2) Synopsys and the ASIC Defendants have limited the scope of their document production to what they call "Design Compiler products." Ricoh's preliminary infringement contentions specifically name additional Synopsys software products that Ricoh contends the ASIC Defendants employ while those defendants practice the process described in the '432 patent. Ricoh contends that Synopsys and the ASIC Defendants should provide discovery with respect to all of the products listed in Ricoh's preliminary infringement contentions, but Synopsys and the ASIC Defendants have refused.[26]

---

[26] Synopsys has made similar objections and limitations in its interrogatory responses. Ricoh believes that the resolution of this issue as it relates to the document production should be equally applicable to the interrogatory responses. The afternoon this CMC was to be filed, Synopsys advised Ricoh that Synopsys may be willing to provide Ricoh access to the "keys" to some but not all of the additional products at issue. Although Synopsys has not identified which versions or the other limitations to this offer, the fact that the offer was made after more than a year and a half after Ricoh first requested this code, shows some progress. It also illustrates why additional discovery is needed, because Synopsys and the ASIC Defendants have yet to produce the underlying manuals, user documents, design

The differences are set forth in the following table:

| Ricoh Contention re Products at Issue | Synopsys Contention re Products at Issue |
|---|---|
| Design Compiler[27] | Design Compiler |
| HDL Compiler for Verilog | HDL Compiler for Verilog |
| VHDL Compiler | VHDL Compiler |
| Design Ware Foundation libraries | Design Ware Foundation libraries |
| Presto | |
| Physical Compiler | |
| Module Compiler | |
| Design Compiler Basic Library[28] | |
| DesignWare Expert Libraries | |
| DesignWare Building Block IP | |
| target technology libraries | |
| Design libraries | |
| link libraries | |
| symbol libraries | |
| synthetic libraries | |

(3) The ASIC Defendants have refused to provide documents with respect to any RTL inputs (see earlier question), logic synthesis methods or products other than the Synopsys Design Compiler products. Ricoh contends that it has placed at issue the ASIC Defendants' infringement of the '432 patent without limiting the infringement claim to the use of Design Compiler.

(4) The ASIC Defendants have not identified the ASICs they have actually designed and manufactured using either Synopsys products or otherwise. At one point in early 2004, they said that there were 63 separate ASICs that allegedly were designed and manufactured with Synopsys' Design Compiler products; however, only a few of those ASICs have been actually identified to Ricoh. Ricoh suspects that the number has increased in the past year.

(5) The ASIC Defendants' objections to the discovery requests are unreasonable. For example, they object to the definitions of the terms "ASIC Design," "ASIC Product", and "ASIC Method" as vague, overly broad, unduly burdensome and not reasonably calculated to lead to the

---

documents and the details of the actual use by the ASIC Defendants .

[27] This term includes all variations of Design Compiler, including DC Ultra, DC Ultra Opt, DC Expert, DC Expert Plus, and DC Pro.

[28] This component is also known as the "Standard Library."

discovery of admissible information, and incorporate the objection by reference into every response they make. However, counsel for all parties had agreed that the terms "ASIC Design," "ASIC Product", and "ASIC Method" were limited to methods and products made by a process involving computer assisted design with logic synthesis. The ASIC Defendants have said that their production of documents are "subject to" these objections, without disclosing whether they are actually withholding documents based upon these and other objections.

(6) The parties cannot agree on when discovery with respect to sales and damages should commence. Ricoh requests that the ASIC Defendants produce the requested sales and financial documents by July 15, 2005.

(7) Aeroflex has produced a number of CD's that Ricoh cannot read or access.

**(b) Production of Synopsys' source code**

Synopsys has produced some of its source code for occasional periods at a secure Synopsys facility. However, Synopsys has refused to produce the source code for all of the products listed in Ricoh's preliminary infringement contentions and alleged by Ricoh as being employed by the ASIC Defendants in carrying out the infringing process. As noted in footnote 26, the afternoon this CMC was to be filed, Synopsys proposed to provide Ricoh with the "keys" to have access to additional source code. Until Ricoh's experts are able to determine the versions of that code and actually evaluate it, Ricoh cannot determine the scope of this offer. However, there are still additional version of code that Synopsys and the ASIC Defendants have never produced. In addition, Ricoh requested, and on June 3, 2005, Synopsys agreed, that the number of experts permitted to review Synopsys' source code be increased from three to five.

**(c) Production of documents pursuant to Rule 33(d)**

As of May 2004, the parties were at an impasse with respect to the ASIC Defendants' production of documents pursuant to Fed. R. Civ. P. 33(d). On May 30, 2003, Ricoh served 10 interrogatories upon the ASIC Defendants. In response, the ASIC Defendants objected but often generally promised to produce documents pursuant to Rule 33(d). However, none of the ASIC Defendants specifically identified those documents by either title or bates number, and Ricoh believes that in most instances no responsive documents have been produced.

**(d) Production of emails**

The parties had agreed that production of e-mails should be completed by no later than May 31, 2004, but no emails were ever produced.  Ricoh believes that these documents should be produced by no later than July 15, 2005.  There may be unresolved issues with respect to other forms of electronic discovery.

**(e) Production of privilege logs**

In 2004, the parties were at an impasse with respect to the date for production of privilege logs.  Ricoh proposes that privilege logs be exchanged by July 15, 2005.

In April 2004, the parties were also at an impasse with respect to Ricoh's proposal that communications between Ricoh and its trial counsel not be logged.  Ricoh believes that there is no purpose in providing a log of those communications, which relate both to Ricoh's pre-filing investigation as well as its preparation and filing of the complaint.  In 2004, Synopsys and the ASIC Defendants insisted that all pre-filing communications between Ricoh and its trial counsel be logged.  Ricoh believes that there remains an outstanding issue with respect to communications between Synopsys and the ASIC defendants, which have not been produced or logged.

**(f) Resolution of document discovery issues**

The parties were unable to agree on a schedule or a process for resolving their document discovery disputes.  Ricoh proposes that, consistent with Magistrate Judge Chen's directives, the parties work together, with the Court's assistance as appropriate, to resolve all objections with respect to documents that the parties are seeking pursuant to the currently outstanding discovery requests, by no later than June 30, 2005, and produce by July 15, 2005 all documents that have been the subject of objections but that have not specifically been ordered by the Court not to be produced.

**(ii)     Responses to Requests for Admission**

Ricoh has responded to all outstanding requests for admissions, and Ricoh is not aware of any outstanding issues with respect to its responses.

In 2004, the parties were at an impasse, however, with respect to the ASIC Defendants' responses.  For example:

(1) The ASIC Defendants have objected to and limited their responses to many of the

requests. Some of the requests include objections over issues that that have been resolved. For example, requests 9-19 related to whether the ASIC Defendants performs certain actions relating to chip design. The ASIC Defendants have objected to the term "ASIC method as being incomprehensible…so broad as to be meaningless" in the objections to these requests. This objection is made even though the parties had previously come to an understanding regarding certain terms, including the term "ASIC method."

(2) The ASIC Defendants have objected to Requests 9-19 as calling for a claim interpretation and a question of law, when in fact it calls for a question of fact. For example, Request No. 17 seeks an admission of whether the "Defendant performs an ASIC Method that includes generating from a netlist mask data required to produce an integrated circuit having a desired function." No substantive responses have been provided.

(3) Some of the Matrox defendants should amend their responses to Request No. 20, which asks whether "The Court has personal jurisdiction over defendant." Matrox Tech has denied that the court (at the time of the response, a Delaware District Court presided over this case) had personal jurisdiction. However by their own admission, Matrox Tech is a company organized under the laws of Delaware. All defendants acceded the personal jurisdiction of this Court as part of the desire to have this case transferred from Delaware to California. Therefore, if true, the Matrox defendants should supplement their response to Request 20 and remove this lingering issue.

**(iii) Rule 30(b)(6) depositions**

**(a) Rule 30(b)(6) discovery of Ricoh**

There are no outstanding issues with respect to Ricoh's Rule 30(b)(6) witnesses. Ricoh has responded to every Rule 30(b)(6) deposition notice from either Synopsys or the ASIC Defendants. On July 15, 2003, Ricoh produced a corporate witness in response to the ASIC Defendants' Rule 30(b)(6) notice. During the week of May 30, 2004, Ricoh produced additional corporate designees for depositions in Japan.

**(b) Ricoh's Rule 30(b)(6) notices to the ASIC Defendants**

The parties were at an impasse with respect to scheduling and taking the corporate depositions of the ASIC Defendants pursuant to Ricoh's September 25, 2003 Rule 30(b)(6) notices. The

ASIC Defendants have stated that they may produce twenty (20) or more different corporate designees in response to Ricoh's long-pending Rule 30(b)(6) notices. Ricoh requests that all Rule 30(b)(6) depositions of the ASIC Defendants be completed within three months of the completion of their document production, so follow-up individual depositions may be completed in time for the expert reports.

During the hearing on March 24, 2004, Magistrate Judge Chen instructed the parties to identify actual deposition dates "at least by category if not by witness." The burden is on the ASIC Defendants to identify those dates. They refused to do so.

In particular, on September 25, 2003, Ricoh served identical Rule 30(b)(6) notices upon each of the ASIC Defendants as parties in the *Ricoh v. Aeroflex* litigation. None of the ASIC Defendants ever have proffered *any* dates for *any* of the 30(b)(6) topics.

Ricoh proposes that the ASIC Defendants identify by June 30, 2005 the names of all corporate witnesses, and that the parties cooperate in scheduling the depositions of those witnesses starting in August, after the document production has been accomplished, with completion of the depositions in October. Requiring the ASIC Defendants to identify witnesses, topics and deposition dates is consistent with this Court's instructions during the March 24, 2004 hearing and this Court's Standing Order, and is the most effective way to schedule and complete these corporate depositions.

**(c) Ricoh's Rule 30(b)(6) notices to Synopsys**

Ricoh has pending a Rule 30(b)(6) deposition notice to Synopsys that has yet to be scheduled. The parties agree that document discovery should be resolved prior to going forward with depositions.

**(iv) Fact Depositions**

In addition to taking Rule 30(b)(6) depositions, Synopsys and the ASIC Defendants have already taken several other depositions, including Dr. James Davis, Mr. Brian Bershader, Dr. Tom Rhyne, Mr. Yamada, and Dr. Kobayashi. Some of these witnesses also were corporate designees of Ricoh.

32

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

Ricoh proposes that the parties cooperate in scheduling other fact depositions starting in August (after document production is completed) to the end of fact discovery at locations that are convenient for the witnesses and mutually agreeable to the parties.

**(v) Total Deposition Time**

With respect to the number of hours for deposition, counsel for all of the parties had agreed before the ASIC Defendants case was transferred from Delaware, that each side would have 240 hours of deposition testimony from fact witnesses. Ricoh has to take depositions of seven ASIC Defendants plus Synopsys, while they have only one opposing party to depose. Ricoh believes that such a modification of the Federal Rules of Civil Procedure is useful here, and there is no reason to deviate from this prior agreement of counsel. There is no question that additional deposition time is needed; since this agreement was established, the ASIC Defendants have identified over thirty (30) people who have relevant factual information in their initial disclosure; another party has been added (Aeroflex Colorado Springs, Inc.); and the ASIC Defendants have indicated that they may produce as many as twenty (20) corporate witnesses in response to Ricoh's Rule 30(b)(6) deposition notice to each defendant. Despite the additional party and many witnesses, Ricoh is willing to abide by the prior agreement of counsel.

With respect to Synopsys' proposal that depositions needing translations "should be treated as 30 minutes against this time limit," Ricoh notes that, in Delaware, the 240 hours of total deposition time was arrived at as a compromise. Then, as now, counsel for Synopsys was proposing 160 hours of total deposition time per side, but also that each hour of depositions of non-English speaking witnesses be counted as only 30 minutes against the total. Ricoh pointed out that this proposal would effectively give the other side almost double the amount of deposition time as Ricoh, as most of Ricoh's witnesses are native Japanese speakers. Rather than adopting the 30 minute proposal, the 240 hour figure was accepted as a compromise. Ricoh does not agree that the depositions of non-English speaking witnesses should effectively last two days each as a matter of right, but, as the parties have agreed with respect to any witness, Ricoh willing to consider requests for more than a full deposition day of non-English speaking witnesses on a case-by-case basis.

**b. Position of Synopsys and the ASIC Defendants**

Ricoh's description of the case and its discovery statement above include multiple unjustified and inaccurate assertions that Synopsys and the Customer Defendants have refused to participate in discovery which Synopsys and the Customer Defendants dispute but will not address here. The fact is that Synopsys and the Customer defendants see Ricoh as wanting to engage in a wide-ranging fishing expedition at their expense all without ever defining in any meaningful sense what this case is about. Synopsys and the Customer Defendants are looking to the Court to assist the parties in framing the case and thereby defining the relevant discovery before discovery is reopened so that the discovery process can move forward in a reasonable and expeditious manner. As stated above, given the Court's claim construction ruling and depending upon the Court's view of some of the issues presented herein, Synopsys and the Customer Defendants do not believe that discovery regarding manufacturing processes, any design processes not taking place in the United States, any discovery related to design using logic synthesis software other than that of Synopsys, and discovery related to the ASICs products themselves (except perhaps as it relates to damages, which relevance is also disputed by Synopsys and the Customer Defendants) is relevant. Once the parties have provided their final contentions and the Court has provided guidance with respect to the issues raised herein, the parties should exchange revised discovery plans.

In addition, the Defendants believe that a modification of the deposition time is appropriate in this matter, and believe that a total of 160 hours of deposition time is ample modification from the limits on deposition testimony set in the Federal Rules of Civil Procedure to obtain the discovery necessary in this litigation. Also, because many of Ricoh's witnesses will likely require a translator, each hour of deposition testimony requiring translation should be treated as 30 minutes against this time limit. Furthermore, since the parties have stipulated that testimony taken in this action will be admissible in *Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. CV 03-02289 MJJ (EMC), and vice versa, the total time for deposition testimony in the two actions combined should not exceed this limit. The Defendants are not advocating that the Court give Synopsys 160 hours and grant them an additional 160 hours.

**PROPOSED SCHEDULE**

**10. A proposed schedule is provided below**

**a. Ricoh's Position**

Ricoh asserted an infringement claim with respect to the '432 patent, and agrees that it should be treated as the party claiming infringement of that patent. In July 2004, the parties harmonized the matters in dispute in the two cases, so the declaratory judgment counterclaims in *Ricoh v. Synopsys* are identical in scope with the declaratory judgment claims in *Synopsys v. Ricoh*. The two actions should be consolidated and Ricoh should be treated as the plaintiff.

Because all discovery has been stayed by the Court and will remain stayed until this Court lifts the stay, Ricoh submits that the calculation of dates under the Patent Local Rules based on the date of the Claim Construction Ruling ("CCR") is not appropriate. The Patent Local Rules contemplate that all fact discovery will proceed during the claim construction process but in this case, the Court directed that discovery should be "focused" on claim construction issues in December 2003, and in May 2004, the Court imposed an absolute discovery stay on all issues of liability and damages. Absent such a stay, Ricoh would have had the benefit of at least 13 months of discovery to this point.

Ricoh's proposed schedule allots six months for merits discovery prior to the exchange of final infringement contentions and expert reports. This is an aggressive schedule that depends upon Synopsys and the ASIC Defendants cooperatively engaging in discovery, and avoiding the type of conduct condemned by the Court on April 6, 2004. The proposed schedule obligates the ASIC Defendants and Synopsys to promptly produce all documents that should have been produced pursuant to the May 2003 initial disclosures (suitably updated), as well as all documents responsive to Ricoh's discovery requests, and then establishes subsequent dates based upon that date. The dates proposed below are based on the latter proposal and assume the stay will be lifted the day after the June 14, 2005 status hearing and that the ASIC Defendants and Synopsys produce all initial disclosure documents, documents responsive to Ricoh's discovery requests, and the source code for the identified products by the end of June, 2005.

Synopsys and the ASIC Defendants proposed schedule reinforces their inappropriate insistence that Synopsys's later filed declaratory judgment action should somehow take priority over Ricoh's first filed patent infringement action. This prejudice inculcates every aspect of their proposal, and illuminates their desire to litigate incrementally each of the substantive patent infringement issues. Synopsys' schedule also reinforces its attempt to exclusively and impermissively focus the litigation to matters that Synopsys want to litigate, which are only a biased subset of issues in Ricoh's infringement lawsuit.

Disregarding Ricoh's interest in resolving both the patent infringement and declaratory lawsuits, Synopsys has provided a schedule for resolution of its declaratory judgment lawsuit, but has not provided a similar schedule for the ASIC defendants in the patent infringement lawsuit. Instead, Synopsys desires to waste the Court's resources by first attempting to resolve a limited number of the pending issues of the patent infringement suit. Then when the first "segment" of the lawsuit is completed, Synopsys and the ASIC defendants urge that the Court and parties repeat the case scheduling process by submitting new discovery plans and holding an additional case management conference. Not only does this perpetually delay Ricoh's infringement claims, but this attempt to piecemeal the issues is intended to prevent Ricoh from ever obtaining an injunction against the actual infringers. The ASIC defendants do not even provide a proposed case management schedule, but instead suggest that any schedule is dependant upon the resolution of the later filed declaratory judgment lawsuit and want guidance from the court and how to proceed. The suggestion that Synopsys has the supreme privilege of the earliest possible adjudication is inconsistent with the first rule of the Federal Rules of Civil Procedure to "secure a just, speedy and inexpensive determination of every action."

Synopsys has indicated is agreeable to a shortened discover period (until October 2005), but has not agreed to provide *any* of the requested discovery by that date. Throughout this litigation, Synopsys has unilaterally defined what information it will provide (which is narrower than the issues in Ricoh's lawsuit). Of the information that Synopsys has agreed to produce, it has done so at its own pace and response information is still outstanding. Now, Synopsys seeks an accelerated case management schedule which will mostly likely result in Ricoh not receiving all of the information it is rightfully

entitled to receive during the discovery time period with a reasonable time to analyze the information and have the opportunity to follow up on an issue that arise from the information.

**b. Position of Synopsys and the ASIC Defendants**

If the customer suit is not limited to Verilog and VHDL inputs, Synopsys and the Customer Defendants seek a stay of the action against the Customer Defendants to allow the underlying dispute to be resolved in the *Synopsys, Inc. v. Ricoh Company, Ltd.* declaratory judgment action. As stated above, once Synopsys establishes that the ordinary use of the Synopsys Logic Synthesis Product does not infringe the ‘432 patent, the case against the Customer Defendants should be resolved as well. Since Ricoh must show that each element of its asserted claims are infringed, it is indisputable that if the non-input claim elements are not found in the Synopsys Logic Synthesis Product, then the customer defendants do not infringe regardless of the nature of their input.

Synopsys has set forth a time frame for the trial of the Declaratory Judgment case alone or the consolidated liability trial based upon VHDL and Verilog inputs. If the customer case is not so limited and the request for a stay is denied, Defendants believe that trial of the suit against the Customer Defendants should be bifurcated, into separate trials on liability and damages (which would include the question of whether infringement was willful or not) for the reasons stated above. Synopsys also opposes consolidation of the cases. Synopsys and the Customer Defendants do not believe they can submit a schedule for the Customer Defendants’ case at this time since any such schedule is dependent upon the resolution of the many issues presented herein. If Ricoh is permitted the unreasonable, wide-ranging discovery it seeks, Ricoh’s proposed discovery cut-off is unworkable as there will be at least three months of document discovery before depositions start and will 240 hours of depositions for each side, seventy days of deposition thereafter. Once the parties submit their final contentions and new discovery plans, the Court should hold another status conference and the parties could provide their scheduling proposals then based on the guidance provided by the Court on June 14.

**c. The Parties' Proposed Schedules**

| Event | Ricoh's Proposed Dates | Synopsys' Proposed Dates |
|---|---|---|
| Claim Construction Ruling ("CCR") | April 7, 2005 | April 7, 2005 |
| Reopening of discovery | June 15, 2005 | -- |
| ASIC Defendants and Synopsys produce all initial disclosure documents, documents responsive to Ricoh's discovery requests and source code for the identified products | June 30, 2005 | -- |
| Deadline to disclose reliance upon opinion of counsel and produce related documents | June 30, 2005 | -- |
| Final Infringement Contentions | December 15, 2005 | -- |
| Final Invalidity Contentions | January 13, 2006 | -- |
| Fact discovery cut-off | January 20, 2006 | October 7, 2005 |
| Submission of expert reports by party with the burden of proof | January 20, 2006 | -- |
| Submission of responsive expert reports | February 17, 2006 | November 4, 2005 |
| Rebuttal Expert Reports | March 10, 2006 | December 2, 2005 |
| Expert discovery cut-off | March 24, 2006 | December 21, 2005 |
| Dispositive motion cut-off | March 31, 2006 | January 17, 2006 |
| Dispositive Motions Oppositions Due | April 17, 2006 | January 31, 2006 |
| Dispositive Motions Replies Due | April 24, 2006 | February 7, 2006 |
| Dispositive motion hearing date | To be set by the Court on or after May 8, 2006 | February 21, 2006 |
| File motions in limine | April 14, 2006 | March 7, 2006 |
| File oppositions to motions in limine | May 5, 2006 | March 21, 2006 |
| File Joint Proposed Final Pre-trial Order | May 26, 2006 | April 7, 2006 |
| Pre-trial Conference | To be scheduled by Court | April 17, 2006 |
| Trial Date | June 2006 | May 1, 2006 |

**CLAIM CONSTRUCTION HEARING**

The Court issued its ruling on April 7, 2005.

**TRIAL**

**11. The parties request a trial date as follows**

**a. Ricoh's Position**

Ricoh has proposed that trial begin June 2006.

**b. Position of Synopsys and the ASIC Defendants**

Synopsys proposes that trial of its declaratory judgment action begin on May 1, 2006.

38

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

**12. The parties expect that the trial will last for the following number of days**

**a. Ricoh's Position**

Ten trial days.

**b. Position of Synopsys and the ASIC Defendants**

Synopsys believes that its declaratory judgment action can be tried in eight trial days.

Synopsys and the Customer Defendants believe that, if the Customer Defendant action is not stayed, and the action is consolidated with the Synopsys case, the questions of liability, including infringement and validity, should be tried first. This trial could be completed in approximately twelve days. If liability is established, a separate trial can be scheduled to determine damages. Defendants believe that such a trial would require approximately two weeks.

Dated: June 8, 2005

DICKSTEIN SHAPIRO MORIN & OSHINSKY

By: /s/ Gary M. Hoffman
Gary M. Hoffman
Kenneth W. Brothers
Edward A. Meilman
Eric Oliver

Attorneys for Ricoh Company, Ltd.

Dated: June 8, 2005

HOWREY LLP

By: /s/ Teresa M. Corbin
Teresa M. Corbin
Christopher Kelley
Attorneys for Plaintiff Synopsys and ASIC Defendants

**CASE MANAGEMENT ORDER**

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this order. In addition the Court orders:

Dated: ________________

________________________________
HON. MARTIN J. JENKINS

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
& OSHINSKY, LLP
2101 L Street, NW
Washington, DC 20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
& OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., Plaintiff, vs. AEROFLEX INCORPORATED, et al., Defendants | **CASE NO. C-03-2289-MJJ (EMC)**<br>**CASE NO. C-03-4669-MJJ (EMC)**<br><br>**DISCOVERY MATTER** |
| SYNOPSYS, INC., Plaintiff, vs. RICOH COMPANY, LTD., Defendant. | **RICOH'S DISCOVERY PLAN SUBMITTED PURSUANT TO COURT ORDER OF MARCH 25, 2004**<br><br>**Date: None**<br>**Time: None**<br>**Courtroom:**<br>**Judge: Magistrate Judge Chen** |

Pursuant to Magistrate Judge Chen's Order of March 25, 2004, plaintiff and counter-defendant Ricoh Company Ltd. ("Ricoh") hereby submits its discovery plan. Although the parties have been able to resolve many of their differences, at 12:54 pm today, counsel for defendants Aeroflex et al. (the "ASIC defendants") and declaratory judgment plaintiff Synopsys ("Synopsys") advised counsel for Ricoh that they would not agree to a joint submission, and refused to send the final version of their proposed plan to Ricoh for review and comment.

During the March 24 hearing, the Court instructed the parties to

> work out a schedule. I know that there are some preliminary issues – sounds like with respect to scope and designees – but I would like you all to work out, at least a schedule, for resolution or not. If you cannot get it resolved by meet-and-confer, you can submit it to me.

3/24/2004 Tr. at 84.

In response to counsel's question of whether the plan should include "a framework for when documents are going to be produced, and blocks of weeks, in which witnesses are going to be made available for deposition, on certain topics," the Court said, "Yes, that is what I was thinking of." (*Id.* at 85.) The Court continued:

> In 30 days, I would expect an agreed upon plan, of both resolution of any issues that are currently outstanding with respect to these depositions, and the actual sort of discovery plan – at least by category if not by witnesses, et cetera – some benchmark in terms of time, so we can see how we are doing. *At that point, if you cannot resolve it, again in that letter, tell me what is at issue, briefly, and then maybe we can talk on the phone and see what we need to do to facilitate that.*

(*Id.* at 87, emphasis added.) Unfortunately, counsel for the ASIC defendants and Synopsys refused to meet and confer with respect to many of the discovery "issues that are currently outstanding" or to include in a joint discovery plan a list of the discovery issues where the parties are at an impasse.

Last year, Synopsys threatened Ricoh that, if Ricoh continued to press its patent claims against the ASIC defendants, Synopsys would order its counsel (who also represent the ASIC defendants) to fight on every issue and make the litigation as expensive as possible. Synopsys specifically stated that it would not produce evidence until ordered to do so by the Court. It appears that Synopsys is substantially following through on that threat.

In this submission, Ricoh attempts to set forth its understanding of the parties' agreements

and disagreements up to the point that the ASIC defendants and Synopsys broke off negotiations. Ricoh is prepared to participate in a telephone hearing with the Court at any time to address the issues where the parties are at an impasse.

**A. Production of Documents**

**1. Production of documents by April 30**

The parties agree in principle that all non-privileged documents (other than e-mails) required to be produced pursuant to Rule 26(a) or responsive to document requests should be produced by no later than April 30, 2004.

There are no disputed issues with respect to the scope of Ricoh's document production.

The parties are an impasse, however, on the refusal of the ASIC defendants and Synopsys to produce several categories of documents requested by Ricoh.[1] These unresolved issues are the exceptions that swallow the rule of the foregoing "agreement" that all documents be produced by April 30. These documents generally fall into the following categories, each of which have been the subject of numerous letters and meet and confer sessions:

(1) Documents in the possession of ASIC defendants Matrox Graphics and Matrox Electronics relating to the design and manufacture of ASICs. These defendants contend that they should not be obligated to produce such documents unless and until the Court denies their Rule 12(c) motion for judgment on the pleadings. Ricoh contends that such stalling makes no sense because the actions of those defendants are inextricably intertwined with the actions of their U.S. subsidiaries, and because the Court has already granted Ricoh leave to file its amended complaint, so even if the motion is granted, those defendants will not be dismissed and production of the documents will be necessary. Moreover, on April 22, 2004, Judge Jenkins denied the ASIC defendants' Rule 12(c) motion. At a meet and confer on April 23, however, counsel for the ASIC defendants refused to commit to withdraw this objection

---

[1] On March 2, 2004, counsel for the ASIC defendants committed to complete their document production by April 2, 2004, with a limited exception of certain documents from AMI. They did not meet this deadline. In addition, they have now changed their position as to what documents they were committed to produce. For instance, counsel for the ASIC defendants indicated in a letter dated March 19, 2004, that documents responsive to requests 11, 13 and 37 would be produced but now refuse such production.

and produce the relevant and responsive documents that they are withholding.

(2) Synopsys and the ASIC defendants have limited the scope of their document production to what they call "Design Compiler products." Ricoh's preliminary infringement contentions specifically name additional Synopsys software products that Ricoh contends the ASIC defendants employ while those defendants practice the process described in the '432 patent. Ricoh contends that Synopsys and the ASIC defendants should provide discovery with respect to all of the products listed in Ricoh's preliminary infringement contentions, but Synopsys and the ASIC defendants have refused.[2]

(3) The ASIC defendants have refused to provide documents with respect to any logic synthesis methods or products other than the Synopsys Design Compiler products. Ricoh contends that it has placed at issue the ASIC defendants' infringement of the '432 patent, regardless of how they actually conduct their infringement.

(4) The ASIC defendants have not sufficiently identified the ASICs they have actually designed and manufactured using either Synopsys products or otherwise. Although they contend that they have identified 63 separate ASICs that allegedly were designed and manufactured with Synopsys' Design Compiler products, they have not provided such a list to Ricoh.

(5) The ASIC defendants' objections to the discovery requests are unreasonable. For example, they object to the definitions of the terms "ASIC Design," "ASIC Product", and "ASIC Method" as vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible information, and incorporate the objection by reference into every response they make. However, counsel for all parties had agreed that the terms "ASIC Design," "ASIC Product", and "ASIC Method" were limited to methods and products made by a process involving computer assisted design with logic synthesis. The ASIC defendants have said that their production of documents are "subject to" these objections, without disclosing whether they are actually withholding documents based upon these and other objections.

(6) The parties cannot agree on when discovery with respect to sales and damages should

---

[2] Synopsys has made similar objections and limitations in its interrogatory responses. Ricoh believes that the resolution of this issue as it relates to the document production should be equally applicable to the interrogatory responses.

commence. Judge Jenkins instructed the parties to focus first on claim construction issues. Ricoh has proposed that the defendants produce the requested sales and financial documents within 10 days of the completion of the claim construction hearing (which likely will be in September or October 2004). The ASIC defendants refused this request and also refused to identify an alternative date, instead favoring an indefinite postponement.

(7) Aeroflex has produced a number of CD's that Ricoh cannot read or access.

**2. Production of Synopsys' source code**

The parties have agreed that some of Synopsys' source code will be produced on May 10, 2004. However, Synopsys has refused to produce the source code for all of the products listed in Ricoh's preliminary infringement contentions and alleged by Ricoh as being employed by the ASIC defendants in carrying out the infringing process.

**3. Production of documents pursuant to Rule 33(d)**

The parties are at an impasse with respect to the ASIC defendants' production of documents pursuant to Fed. R. Civ. P. 33(d). On May 30, 2003, Ricoh served 10 interrogatories upon the ASIC defendants. In response, the ASIC defendants objected but often generally promised to produce documents pursuant to Rule 33(d). However, none of the ASIC defendants specifically identified those documents by either title or bates number, and Ricoh believes that in most instances no responsive documents have been produced.

**4. Production of emails**

The parties agree that production of e-mails should be completed by no later than May 31, 2004. Ricoh notes that Synopsys and the ASIC defendants have imposed the same limitations on emails as identified in Section A(1), categories 1-5, above.

**5. Production of privilege logs**

The parties are at an impasse with respect to the date for production of privilege logs. Ricoh proposes that privilege logs be exchanged by June 7, 2004, *e.g.,* within seven days of the completion of document production. Synopsys and the ASIC defendants propose that privilege logs be exchanged on May 7, 2004, before document production is completed.

The parties are also at an impasse with respect to Ricoh's proposal that communications between Ricoh and its trial counsel not be logged. Ricoh believes that there is no purpose in providing a log of those communications, which relate both to Ricoh's pre-filing investigation as well as its preparation and filing of the complaint. Synopsys and the ASIC defendants insist that all pre-filing communications between Ricoh and its trial counsel be logged.

**6. Resolution of document discovery issues**

The parties cannot agree on a schedule or a process for resolving their document discovery disputes. Ricoh proposes that, consistent with Magistrate Judge Chen's directives, the parties work together, with the Court's assistance as appropriate, to resolve all objections with respect to documents that the parties are seeking pursuant to the currently outstanding discovery requests, by no later than May 15, 2004, and produce by June 7 all documents that have been the subject of objections but that have not specifically been ordered by the Court not to be produced. Synopsys and the ASIC defendants declined to accept this process, but have not proposed an alternative.

**B. Responses to Requests for Admission**

Ricoh has responded to all outstanding requests for admissions, and Ricoh is not aware of any outstanding issues with respect to its responses. The parties are at an impasse, however, with respect to the ASIC defendants' responses. For example:

(1) The ASIC defendants have objected to and limited their responses to many of the requests. Some of the requests include objections over issues that that have been resolved. For example, requests 9-19 related to whether the defendants performs certain actions relating to chip design. The ASIC defendants have objected to the term "ASIC method as being incomprehensible…so broad as to be meaningless" in the objections to these requests. This objection is made even though the parties had previously come to an understanding regarding certain terms, including the term "ASIC method."

(2) The ASIC defendants have objected to Requests 9-19 as calling for a claim interpretation and a question of law, when in fact it calls for a question of fact. For example, Request No. 17 seeks an admission of whether the "Defendant performs an ASIC Method that includes generating from a netlist mask data required to produce an integrated circuit having a desired function." No substantive

responses have been provided.

(3) Some of the Matrox defendants should amend their responses to Request No. 20, which asks whether "The Court has personal jurisdiction over defendant." Matrox Tech has denied that the court (at the time of the response, a Delaware District Court presided over this case) had personal jurisdiction. However by their own admission, Matrox Tech is a company organized under the laws of Delaware. All defendants acceded the personal jurisdiction of this Court as part of the desire to have this case transferred from Delaware to California. Therefore, if true, the Matrox defendants should supplement their response to Request 20.

**C. Rule 30(b)(6) depositions**

**1. Rule 30(b)(6) discovery of Ricoh**

There are no outstanding issues with respect to Ricoh's Rule 30(b)(6) witnesses. Ricoh has responded to every Rule 30(b)(6) deposition notice from either Synopsys or the ASIC defendants. On July 15, 2003, Ricoh produced a corporate witness in response to the ASIC defendants' Rule 30(b)(6) notice. In response to another notice, additional corporate designees are to be deposed during the last week of May 2004 in Japan.

**2. Ricoh's Rule 30(b)(6) notices to the ASIC Defendants**

The parties are at an impasse with respect to scheduling and taking the corporate depositions of the ASIC defendants pursuant to Ricoh's September 25, 2003 Rule 30(b)(6) notices. The ASIC defendants have stated that they may produce twenty (20) or more different corporate designees in response to Ricoh's long-pending Rule 30(b)(6) notices. Ricoh has requested that those depositions be completed by September, so follow-up individual depositions may be completed in time for the expert reports, which all parties have agreed should be exchanged in November and December 2004.

**a. Option 1: Identify all witnesses by May 14, 2004**

During the hearing on March 24, this Court instructed the parties to identify actual deposition dates "at least by category if not by witness." The burden is on the ASIC defendants to identify those dates. Defendants have refused to do so.

In particular, on September 25, 2003, Ricoh served identical Rule 30(b)(6) notices upon each of the ASIC defendants as parties in the *Ricoh v. Aeroflex* litigation. As of April 23, 2004, *none* of the

ASIC defendants have proffered *any* dates for *any* of the 30(b)(6) topics.[3] Attached as Exhibit 1 is a list of the topics and the status on each topic.

Ricoh proposes that the ASIC defendants identify by May 14 the names of all corporate witnesses, and that the parties cooperate in scheduling the depositions of those witnesses starting in July, after the document production has been accomplished, with completion of the depositions in September. Requiring the ASIC defendants to identify witnesses, topics and deposition dates is consistent with this Court's instructions during the March 24 hearing and this Court's Standing Order, and is the most effective way to schedule and complete these corporate depositions.

**b. Option 2: Identify nine witnesses by May 14, and the rest on a rolling basis.**

Alternatively, the parties discussed a process by which the ASIC defendants would identify a large number of their corporate designees in May, and provide additional deposition dates n a rolling basis. On April 19 the ASIC defendants proposed in a draft discovery plan that "AMI and Aeroflex are to provide identification and proposed dates for a first set of approximately two to four witnesses a piece by May 14." The Matrox defendants would identify its witnesses by May 31. Counsel for the parties discussed this proposal in some detail at a meet and confer on April 21, but negotiations abruptly ceased when Ricoh proposed changing the "two to four witnesses" per party to the three witnesses per party. Ricoh pointed out that there was likely insufficient time to complete the depositions by September if only six corporate deposition days were identified at a time, as the second round of six would not be completed until August and the third not until October.

The ASIC defendants' proposal unreasonably limits the number of witnesses they will identify for corporate depositions at any given time. Their proposal indicates that the identification of an the first few witnesses will be made, and only after the first set of deposition are underway will any additional witnesses (or deposition days of the same designees by proposed, which may not occur until 40 days later. This pace is not sufficient, as the ASIC defendants have predicted that there will be more

---

[3] On February 3, 2004, ASIC defendants Matrox Tech and Matrox International produced a corporate designee for deposition on topics limited to those parties' since-withdrawn motion for summary judgment, but that deposition was *not* on any of the topics in Ricoh's September 25, 2003 Rule 30(b)(6) deposition notices.

than 20 individuals deposed, some for multiple days. It must be remembered that these witnesses are corporate designees, with provides the ASIC defendants with considerable latitude who to designate and on what topics. There is no undue burden in requiring the ASIC defendants to identify their corporate designees many months after the notices have been served.

If, however, the Court is prepared to entertain a variation of this proposal, following is Ricoh's proposal. Ricoh understands that, with the exception of the initial number of witnesses, the ASIC defendants and Synopsys do not object to the following process:

(1) For purposes of this scheduling, the ASIC defendants are divided into three groups: AMI; Aeroflex and its subsidiary, Aeroflex Colorado Springs, Inc. (collectively "Aeroflex"); and Matrox Graphics, Matrox Electronic Systems, Matrox International and Matrox Tech (collectively "Matrox").

(2) By no later than May 14, AMI, Aeroflex and Matrox will each identify deponents and topics for three deposition days each (e.g., a total of nine deposition dates). These initial deposition dates shall be no more than 45 days in the future (e.g., by June 30), and initially shall be focused upon threshold topics, such as corporate organization, identification and collection of documents, and identification of persons with knowledge. The next topics shall relate to the infringement claims and affirmative defenses. The final topics to be offered shall relate to the issues of marketing, sales and damages.

(3) Within ten (10) days of the completion of a deposition day, the party who was being deposed (e.g., AMI, Aeroflex or Matrox) shall identify another corporate designee, topic(s) and deposition date no more than 30 days in the future (e.g., no later than a total of 40 days after the completion of the prior deposition day).

(4) If the initial proposed deposition date is not acceptable, the parties shall work together in good faith for an alternative date within the same time frame. The parties shall work together to complete the ASIC defendant Rule 30(b)(6) depositions by September 2004.

(5) The parties will also work together to resolve or present before Magistrate Judge Chen any disputes regarding the scope of these particular depositions so that they can be quickly and efficiently resolved.

**D. Fact Depositions**

In addition to taking Rule 30(b)(6) depositions, Synopsys and the ASIC defendants have already taken three other depositions (Dr. James Davis, Brian Bershader, and Dr. Tom Rhyne); have another deposition set on April 23, 2004 (of Mr. Yamada); and have four others in Japan during the last week of May 2004 (Dr. Kobayashi, Dr. Nakayama, Mr. Takada and Mr. Oka), some of whom are corporate designees of Ricoh.

Ricoh proposes that the parties cooperate in scheduling other fact depositions starting in July (after document production is completed) to the end of fact discovery at locations that are convenient for the witnesses and mutually agreeable to the parties. Although Synopsys and the ASIC defendants have not requested any other depositions of Ricoh employees, to the extent that they are able to provide advance notice of at least 90 days, Ricoh will inquire whether it is possible to schedule the depositions in the United States and, if so, will reasonably cooperate in the scheduling of those deponents.

**E. Total Deposition Time**

With respect to the number of hours for deposition, in Delaware, counsel for all of the parties agreed that each side would have 240 hours of deposition testimony from fact witnesses. Ricoh believes that such a modification of the Federal Rules of Civil Procedure is useful here, and there is no reason to deviate from this prior agreement of counsel. There is no question that additional deposition time needed. Since this agreement was established, the ASIC defendants have identified over thirty (30) people who have relevant factual information in their initial disclosure; another party has been added (Aeroflex Colorado Springs, Inc.); and the ASIC defendants have indicated that they may produce as many as twenty (20) corporate witnesses in response to Ricoh's Rule 30(b)(6) deposition notice to each defendant. Despite the additional party and many witnesses, Ricoh is willing to abide by the prior agreement of counsel.

Dated: April 23, 2004

Respectfully submitted,

Ricoh Company, Ltd.

By: Kenneth W. Brothers

Gary M. Hoffman
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 896-5471
Facsimile: (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Attorneys for Ricoh Company, Ltd.

**EXHIBIT 1**

**30(b)(6) Deposition Notices to ASIC Defendants**

*Note: On September 25, 2003, Ricoh served substantially identical deposition notices upon each of the ASIC defendants. As of April 23, 2004, no witnesses have been offered for deposition, and only AMI and Aeroflex have responded to the notices. This Exhibit identifies each topic and summarizes the responses of each ASIC defendant. For the purposes of this review, Ricoh has not recited the objections by AMI or Aeroflex that impermissibly purport to limit the scope of the deposition notice.*

1. The organizational structure of [defendant], including, but not limited to those groups, divisions, teams and other organizations having any involvement in [defendant]'s ASIC Method at any time, and the identity of all individuals who can testify about such organization.

| | |
|---|---|
| Status of Aeroflex: | Have agreed to produce a witness, but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Have agreed to produce a witness, but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

2. The identification of any business entity that designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], any ASIC Product.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

3. The identification of any business entity that uses the ASIC Method to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], including, but not limited to, the date(s) such steps or other

activity occurred, and, where such step or activity is not performed by [defendant], the person or entity performing such step or activity.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

4. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture any ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], and identification of the individual's activity concerning such involvement.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

5. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in performing an ASIC Method for any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant]; identification of the ASIC Products for which such ASIC Method was performed; and identification of the acts of each individual that contributed to performing the ASIC Method.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh |

| | |
|---|---|
| | objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

6. Any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and [defendant].

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

7. Any product, including, but not limited to any software or ASIC Design System product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided to [defendant].

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

8. Any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to [defendant] (or from [defendant] to Synopsys),

including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

9. Any product designed or otherwise made by [defendant], using any ASIC Design System, including, but not limited to, products designed or made using Design Compiler (or any product that includes Design Compiler).

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

10. The identification of any ASIC Design System including, but not limited to, the manufacturer, product name, and version, used by [defendant] to design or otherwise make any product.

| | |
|---|---|
| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |

| Status of Matrox Tech: | Has not agreed to offer a witness. |
|---|---|

11. The identification of any software library, cell library, and database used by [defendant] with any ASIC Design System, including, but not limited to, Design Compiler.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

12. The user interface to any ASIC Design System for designing, making or using ASIC Products, including, but not limited to, the user interface for designing, making or using products designed or made using Design Compiler (or any product that includes Design Compiler), and the forms and methods of user input used by or on behalf of [defendant] (whether such input is Verilog, VHDL, HDL, or any other form of input).

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

13. The output or netlist (and use thereof) of ASIC Design Systems used by or on behalf of [defendant] to fabricate any product designed or otherwise made, using any ASIC Design System, including, but not limited to, the output or netlist used to fabricate any ASIC Products designed or otherwise made using Design Compiler (or any product that includes Design Compiler).

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh |

| | objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

14. The identification of the steps or other activities making up the ASIC Method used to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by [defendant], the person or entity performing such step or activity. Such steps or other activities include, but are not limited to, the use of ASIC Design Systems in: defining a library of available hardware cells; selecting hardware cells based on input specifications; and generating an output or netlist of hardware cells needed to achieve the intended function of an ASIC Product.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

15. Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of [defendant], including, but not limited to the identification for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by [defendant] (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

| Status of Aeroflex: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
|---|---|
| Status of AMI: | Agreed to produce a witness for a limited part of this topic (Ricoh objects to this limitation) but has not identified who the witness is or the date of the deposition. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |

| Status of Matrix International: | Has not agreed to offer a witness. |
|---|---|
| Status of Matrox Tech: | Has not agreed to offer a witness. |

16. The use by [defendant] of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS'), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by [defendant].

| Status of Aeroflex: | Will not produce a witness. |
|---|---|
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

17. The cost savings (actual or potential) by [defendant] as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

| Status of Aeroflex: | Will not produce a witness. |
|---|---|
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

18. The marketing of any product designed, sold, or otherwise made by [defendant] using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

| Status of Aeroflex: | Will not produce a witness. |
|---|---|
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

19. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in [defendant]'s marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each [defendant] product.

| Status of Aeroflex: | Will not produce a witness. |
|---|---|
| Status of AMI: | Will not produce a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

20. The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

| Status of Aeroflex: | Will defer the production of a witness. |
|---|---|
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

21. The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by [defendant] of each of [defendant]'s ASIC Products.

| Status of Aeroflex: | Will defer the production of a witness. |
|---|---|
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

22. The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by [defendant] of [defendant]'s ASIC Products, including how [defendant] defines each item of cost deducted from gross revenue to calculate gross and net profits.

| Status of Aeroflex: | Will defer the production of a witness. |
|---|---|
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |

| Status of Matrox Tech: | Has not agreed to offer a witness. |
|---|---|

23. The sales by [defendant] of each ASIC Product produced by an ASIC Method.

| Status of Aeroflex: | Will defer the production of a witness. |
|---|---|
| Status of AMI: | Will defer the production of a witness. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

24. All facts related to any infringement or non-infringement of the patent-in-suit.

| Status of Aeroflex: | Will provide discovery on its non-infringement contentions at an appropriate time in accordance with a schedule set by the court. |
|---|---|
| Status of AMI: | Will provide discovery on its non-infringement contentions at an appropriate time in accordance with a schedule set by the court. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

25. All facts related to the validity or invalidity of the patent-in-suit.

| Status of Aeroflex: | Will provide discovery on its invalidity contentions at an appropriate time in accordance with a schedule set by the court. |
|---|---|
| Status of AMI: | Will provide discovery on its invalidity contentions at an appropriate time in accordance with a schedule set by the court. |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

26. All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

| Status of Aeroflex: | Will provide discovery on its enforceability contentions at an appropriate time in accordance with a schedule set by the court. |
|---|---|
| Status of AMI: | Will provide discovery on its enforceability contentions at an appropriate time in accordance with a schedule set by the court. |

| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| --- | --- |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

27. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

| Status of Aeroflex: | Is not aware of anyone |
| --- | --- |
| Status of AMI: | Is not aware of anyone |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

28. Knowledge by [defendant] of the patent-in-suit prior to January 20, 2003.

| Status of all ASIC defendants: | Stated there is no such knowledge |
| --- | --- |

29. The identification of each individual from [defendant] (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

| Status of all ASIC defendants: | No response required based on their response to #28. |
| --- | --- |

30. Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

| Status of Aeroflex: | Is not aware of anyone |
| --- | --- |
| Status of AMI: | Is not aware of anyone |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix | Has not agreed to offer a witness. |

| International: | |
|---|---|
| Status of Matrox Tech: | Has not agreed to offer a witness. |

31. Any communications within [defendant] concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

32. The identification of all documents concerning all materials presented to any of [defendant]'s personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

33. Any communications between [defendant] and any other defendant concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

34. Any communications between [defendant] and Synopsys concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |

| Status of Matrox Electronics: | Has not agreed to offer a witness. |
|---|---|
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

35. Any communications between [defendant] and any person or entity other that the other defendants and Synopsys concerning the patent-in-suit.

| Status of Aeroflex: | Is not aware of any non-privileged communications |
|---|---|
| Status of AMI: | Is not aware of any non-privileged communications |
| Status of Matrox Graphics: | Has not agreed to offer a witness. |
| Status of Matrox Electronics: | Has not agreed to offer a witness. |
| Status of Matrix International: | Has not agreed to offer a witness. |
| Status of Matrox Tech: | Has not agreed to offer a witness. |

CaCase5:03-3v-02289-9MJJ DoDocument 259-21 Filed 06/08/2005 Page 61 of 67

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Erik K. Moller (SBN 147674)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Plaintiff SYNOPSYS, INC. and
Defendants AEROFLEX INCORPORATED, ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RICOH COMPANY, LTD.,<br>Defendant. | Case No. C03-02289 MJJ (EMC)<br><br>Case No. CV 03-04669 MJJ (EMC)<br><br>DISCOVERY MATTER |
| RICOH COMPANY, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTESM, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC.,<br><br>Defendants. | **SUBMISSION OF AEROFLEX, AMI, MATROX COMPANIES AND SYNOPSYS TO MAGISTRATE JUDGE CHEN REGARDING A DISCOVERY PLAN** |

Pursuant to instructions from Magistrate Judge Chen during a March 24 hearing, the parties met and conferred on several occasions to try to find common ground on a schedule for discovery. Certain agreements, outlined below, were reached. The parties were, however, unable to agree on the

HOWREY SIMON ARNOLD & WHITE

Submission of Aeroflex, AMI, Matrox Companies and Synopsys to Magistrate Judge Chen Regarding A Discovery Plan
Case Nos. C03-02289 MJJ (EMC) and CV03-04669 MJJ (EMC)

1

form of a joint submission to the Court. Ricoh insisted, improperly in our view, on inserting complaints about the scope of Defendants' document production efforts and responses to requests for admission into what was supposed to be a joint submission concerning scheduling.

Despite the Defendants' repeated argument that the Court was seeking a plan that contained the parties' *agreements* on discovery, Ricoh's proposed "Discovery Plan"[1] is largely a motion to compel on a large number of discovery issues without a proper meet and confer process or briefing. A review of the transcript from the Court's March 24, 2004 hearing relevant to this matter shows that the Court was in fact responding to the Ricoh's lengthy complaint regarding its Rule 30(b)(6) depositions only:

> In 30 days, I would expect an agreed upon plan, of both resolution of any issues that are currently outstanding with respect to these depositions, and the actual sort of discovery plan - at least by category if not by witnesses, et cetera. - some benchmark in terms of time, so we can see how we are doing.

Hearing Transcript from March 24, 2004, at 87:3-8.

This passage followed almost ten pages of discussion regarding the scope of Synopsys' and the Defendants' designation and production of Rule 30(b)(6) deponents. The Court did not order the parties to present what is in fact a motion to compel on the issues of document production, interrogatories, or requests for admissions.

The discovery disputes raised by Ricoh in the draft submissions that it has shared with counsel for Defendants raise disputed questions of fact about: i) what scope of discovery from Defendants is proper, and ii) the extent of which Defendants and Synopsys have produced responsive and relevant documents. The parties have been contending over the first question since last summer, and indeed the issues that Ricoh raises were originally presented in August of 2003 to Judge Sleet when this matter was pending in Delaware. The parties have argued at length in correspondence about what limits, if any, the Delaware Court placed on discovery, and what bounds are appropriate for discovery. The factual allegations raised by Ricoh in its draft submission are conclusory and provably false. Because

---

[1] Defendants and Synopsys have seen draft versions of Ricoh's proposed submission, and base these comments on that draft. We are, of course, unable to predict the form of the document that Ricoh will ultimately submit

HOWREY SIMON ARNOLD & WHITE

Submission of Aeroflex, AMI, Matrox Companies and Synopsys to Magistrate Judge Chen Regarding A Discovery Plan
Case Nos. C03-02289 MJJ (EMC) and CV03-04669 MJJ (EMC)

2

of the sweeping nature of the allegations made by Ricoh and the complicated procedural history, Defendants intend to present substantial documentary evidence to rebut Ricoh's allegations. This matter is, therefore, not suited for resolution in a telephonic conference and Defendants' request that the Magistrate Judge set Ricoh's motion for full briefing and an in-person hearing.

Regarding scheduling of discovery, the parties were able to agree on the following:

(1) The parties agreed on an April 30, 2004 date for completion of document production, save for production of e-mails.

(2) The parties agreed on the following mechanical procedure for setting depositions. Defendants and Synopsys will designate witnesses and provide proposed dates for deposition on a rolling basis. At any given time, Defendants and Synopsys will make have set dates for some number "N" different witnesses. Within 10 days of completion of a deposition, Defendants and Synopsys will identify proposed dates for an at least one subsequent witness. The dates offered must fall within 40 days of the date of the previously completed deposition.

The parties will work cooperatively to stage deposition discovery in the order requested by Ricoh, to the extent possible.

(3) The parties agreed that Defendants and Synopsys will attempt to provide advance notification of the depositions of Ricoh personnel that it wishes to conduct and Ricoh will attempt to schedule those depositions within the United States.

(4) Defendants and Synopsys agreed to identify a first set of "N" deposition dates by May 15.

With respect to the scheduling of discovery, the following points of disagreement remained:

(a) With regard to paragraph 2, above, Ricoh contended that an appropriate number for "N" was 9. Defendants and Synopsys contend that this number should be 6.

(b) Defendants and Synopsys believe that the privilege logs should be completed by May 7. We do not expect that the Defendants e-mail production is likely to include any privileged communications, but should that be incorrect, we will supplement. We do not believe that preparation of Ricoh's privilege log should be fixed to the date for completion of

HOWREY SIMON ARNOLD & WHITE

Submission of Aeroflex, AMI, Matrox Companies and Synopsys to Magistrate Judge Chen Regarding A Discovery Plan
Case Nos. C03-02289 MJJ (EMC) and CV03-04669 MJJ (EMC)

3

production of any e-mail from the Defendants. Ricoh proposed that the party's exchange privilege logs on a common date, set after production of the Defendants' e-mail.

(c) The parties disagreed about a suitable date for completion of production of any relevant and responsive e-mail from Defendants. Defendants and Synopsys proposed May 31. Ricoh proposed May 15 (in effect May 17, given the Calendar).

Dated: April 23, 2003

Respectfully submitted,

HOWREY SIMON ARNOLD & WHITE, LLP

By: /s/ Christopher L. Kelley
Attorneys for Plaintiff SYNOPSYS, INC. and Defendants AEROFLEX INCORPORATED, ET AL.

HOWREY SIMON ARNOLD & WHITE

Submission of Aeroflex, AMI, Matrox Companies and Synopsys to Magistrate Judge Chen Regarding A Discovery Plan
Case Nos. C03-02289 MJJ (EMC) and CV03-04669 MJJ (EMC)

4



Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.<br><br>Defendants. | Case No. C03-04669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**DECLARATION OF ROBERT B. SMITH IN SUPPORT OF DEFENDANTS' STIPULATION TO INPUT FORMAT** |
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RICOH COMPANY, LTD.,<br><br>Defendant. | |

I, Robert B. Smith, declare as follows:

1. I am the Director of Technology Administration of AMI Semiconductor, Inc. ("AMIS"). I have been an employee of AMIS from April 19, 1976 to April 14, 1980 and since November 15, 1982, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, sometimes the engineers utilize Synopsys' Design Compiler software, which includes HDL Compiler for Verilog, VHDL Compiler, the Design Compiler Basic Libraries, and DesignWare Foundation Libraries.

3. AMI has only been using logic synthesis tools for its commercial ASICS since 1999.

4. We have never, from 1999 through the present, used Synopsys' Module Compiler in the design of our commercial ASICs.

5. While we once had a license to Synopsys' Physical Compiler, we did not use it for front end design (RTL to placed gates). Instead, we used it for back end design (gates to placed gates).

6. It is my understanding that the standard input formats supported by Design Compiler from 1999 to the present are:

| Format | Description | Keyword | Extension |
|---|---|---|---|
| .db | Synopsys internal database format | db | .db |
| EDIF | Electronic Design Interchange Format | edif | .edif |
| equation | Synopsys equation format | equation | .eqn |
| LSI | LSI Logic Corporation (NDL) netlist format | lsi | .NET |
| MIF | Mentor Intermediate Format | mif | .mif |
| PLA | Berkeley (Espresso) PLA format | pla | .pla |
| State table | Synopsys state table format | st | .st |
| TDL | Tegas Design Language netlist format | tdl | .tdl |
| Verilog | Verilog Hardware Description Language | verilog | .v |
| VHDL | VHSIC Hardware Description Language | vhdl | .vhd |
| XNF | Xilinx netlist format | xnf | .xnf |

7. Since 1999, the inputs for the digital portions of our commercial ASICs designed by us and which utilized the Design Compiler software have not included any input formats to Design Compiler other than those listed in the table above.

8. More specifically, since 1999, looking at all of the commercial ASICs designed by us and which utilized the Design Compiler software for synthesis, 90% or more of the source inputs to Design Compiler for the digital portions of the same, were provided as textual Verilog descriptions. For the same time period, source inputs from our customers were provided as either textual Verilog or VHDL.

9. Further, since 1999, all of the Verilog descriptions for our designs created by AMIS engineers have been directly entered using a text editor.

10. Since 1999, we have not used a software product to translate a flow chart or other functional description into the input to Design Compiler.

11. In some circumstances, customers provide the design for ASICs or certain portions of an ASIC, almost exclusively as netlists; in rare circumstances, they are provided as schematics. In those cases, we do not know and do not control what type of inputs are used to create the netlists or schematics.

12. In other circumstances, third parties design our ASICs or certain portions of them and provide them to us, almost exclusively as netlists; in rare circumstances, they are provided as schematics. In those cases, we do not know and do not control what type of inputs these third parties use to create the netlists or schematics.

13. In some cases, our commercial ASICs include purchased off the shelf components that we obtain in the form of netlists from third parties. We have no information as to, or control over, how such netlists are generated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Pocatello, Idaho on July 20, 2005.

Robert B. Smith

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.<br><br>Defendants. | Case No. C03-04669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**DECLARATION OF ROBERT B. SMITH IN SUPPORT OF DEFENDANTS' STIPULATION TO DESIGN LIBRARIES** |
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RICOH COMPANY, LTD.,<br><br>Defendant. | |

I, Robert B. Smith, declare as follows:

1. I am the Director of Technology Administration of AMI Semiconductor, Inc. ("AMIS"). I have been an employee of AMIS from April 19, 1976 to April 14, 1980 and since November 15, 1982, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. AMI has only been using logic synthesis for its commercial ASICs since 1999. The following table summarizes our use of the different types of libraries from 1999 through April 2004 for our commercial ASICs:

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | AMI'S USAGE OF THESE ITEMS |
|---|---|---|---|
| A | Target libraries and technology libraries | `target_library` | A large number of `target_library` values that we specify correspond to proprietary libraries that we develop based on the target foundry and prepare for usage with Design Compiler. These include:<br>• AMIS 0.35μ process (includes the following standard cell libraries from AMI: ami350 family; also includes the following standard cell libraries licensed from ST Microelectronics: mtc45000 family (AMI internal library name for the ST Microelectronics libraries)<br>• AMIS 0.5μ process (includes the following standard cell libraries |

HOWREY LLP
Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -2-
SMITH DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES
DM_US\8229197.v1

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | AMI'S USAGE OF THESE ITEMS |
|---|---|---|---|
| | | | from AMI: ami500 family)<br><br>Additionally, we have obtained third party libraries for the following foundry-process nodes:<br>• TSMC 0.25µ process (includes the following standard cell libraries from Avant! (purchased by Synopsys in 2002): amia250 family (AMI internal library name for the Avant! libraries)) |
| B | Symbol libraries | `symbol_library` | To the extent we have used, or created, any items for use as "`symbol_library`," they are stored with, or were provided to us with, the corresponding "`target_library`" item identified above. |
| C | Synthetic libraries (includes Basic library, DesignWare Foundation and Building Block IP Libraries, Design Libraries) | `synthetic_library` (includes, in order, `standard.sldb`; `dw_foundation.sldb`; and `synthetic_library` implementations. | The items we have used are the `standard.sldb` and `dw_foundation.sldb` libraries provided by Synopsys.<br><br>Depending on the time period in which a design was created, we may have used the subset versions of `dw_foundation.sldb`, identified by using the subset versions of what is now `dw_foundation.sldb`: `dw01.sldb`, `dw02.sldb`, `dw03.sldb`, `dw04.sldb`, `dw05.sldb`, `dw06.sldb`, `dw07.sldb`, and `dw08.sldb`. |
| D | Link libraries | `link_library` | There are no items unique to this category that are not of the type in Rows A and C. We |

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | AMI'S USAGE OF THESE ITEMS |
|---|---|---|---|
| | | | have enumerated any items of those types that were used as the value for this variable based on our knowledge in the respective rows. |
| E | Design libraries created during synthesis | Design libraries | This is an internal data format for intermediate results of Design Compiler. We do not save or maintain this data for any purposes. |
| F | GTECH | GTECH | I understand that this is exclusively provided by Synopsys. |

4. In summary, the only "library" items AMI provides to Design Compiler that are not provided by Synopsys are of the type identified in Row A. To the extent there are any items meeting the description in Row B, they would be stored with the items identified in Row A.

5. It is my understanding that all items of the type identified in Row A for use by Design Compiler must be a Synopsys Liberty format library that has been converted to ".db" format for use by Design Compiler.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Pocatello, Idaho on July 20, 2005.

[signature]
Robert B. Smith



Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,

Plaintiff,

vs.

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.

Defendants.

Case No. C03-04669 MJJ (EMC)

Case No. C03-2289 MJJ (EMC)

**DECLARATION OF BRANDON COCO IN SUPPORT OF DEFENDANTS' STIPULATION TO DESIGN LIBRARIES**

---

SYNOPSYS, INC.,

Plaintiff,

vs.

RICOH COMPANY, LTD.,

Defendant.

---

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
COCO DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES

DM_US\8228893.v1

I, Brandon Coco, declare as follows:

1. I am the Principal ASIC Engineer of Aeroflex, Inc., which includes Aeroflex Colorado Springs, Inc. ("Aeroflex"). I have been an employee of Aeroflex since September 1990, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. The following table summarizes our use of the different types of libraries from 1997 through the present for our commercial ASICS:

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | AEROFLEX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| A | Target libraries and technology libraries | `target_library` | A large number of `target_library` values that we specify correspond to proprietary libraries that we develop based on the target foundry and prepare for usage with Design Compiler.<br><br>On information and belief, we have created libraries that comply with the manufacturing standards for the following foundry processes:<br>• BAE Manassas 0.8µ CMOS<br>• AMIS 0.6µ CMOS<br>• TSMC 0.25µ CMOS<br>• National Semiconductor 0.25µ CMOS-8<br>• For other 0.5µ and 0.6µ processes, a self-created scalable 0.5µ and 0.6µ micron library is customized |

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | AEROFLEX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| | | | for each foundry process<br><br>Additionally, we have obtained third party libraries for the following foundry-process nodes:<br>• MagnaChip 0.35µ HL35EFL process library, at this point, this library is maintained by Aeroflex<br>• Artisan (now ARM) library for DongbuAnam 0.18µ MS180BB and GL180BB processes, only a single cell library is used |
| B | Symbol libraries | `symbol_library` | To the extent we have used, or created, any items for use as "`symbol_library`", they are stored with, or were provided to us with, the corresponding "`target_library`" item identified above. |
| C | Synthetic libraries (includes Basic library, DesignWare Foundation and Building Block IP Libraries, Design Libraries) | `synthetic_library` (includes, in order, `standard.sldb`; `dw_foundation.sldb`; and `synthetic_library` implementations. | The items we have used are the `standard.sldb` and `dw_foundation.sldb` libraries provided by Synopsys.<br><br>Depending on the time period in which a design was created, we may have used the subset versions of `dw_foundation.sldb`, identified by using the subset versions of what is now `dw_foundation.sldb`: `dw01.sldb`, `dw02.sldb`, `dw03.sldb`, `dw04.sldb`, `dw05.sldb`, `dw06.sldb`, |

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | AEROFLEX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| | | | dw07.sldb and dw08.sldb. |
| D | Link libraries | link_library | There are no items unique to this category that are not of the type in Rows A and C. We have enumerated any items of those types that were used as the value for this variable based on our knowledge in the respective rows. |
| E | Design libraries created during synthesis | Design libraries | This is an internal data format for intermediate results of Design Compiler. We do not save or maintain this data for any purposes. |
| F | GTECH | GTECH | I understand that this is exclusively provided by Synopsys. |

4. In summary, the only "library" items Aeroflex provides to Design Compiler that are not provided by Synopsys are of the type identified in Row A. To the extent there are any items meeting the description in Row B, they would be stored with the items identified in Row A.

5. It is my understanding that all items of the type identified in Row A for use by Design Compiler must be a Synopsys Liberty format library that has been converted to ".db" format for use by Design Compiler.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Colorado Springs, Colorado on July 21, 2005.

Brandon Coco

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., Plaintiff, vs. AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC. Defendants. | Case No. C03-04669 MJJ (EMC) Case No. C03-2289 MJJ (EMC) **DECLARATION OF BRANDON COCO IN SUPPORT OF DEFENDANTS' STIPULATION TO INPUT FORMAT** |
| SYNOPSYS, INC., Plaintiff, vs. RICOH COMPANY, LTD., Defendant. | |

I, Brandon Coco, declare as follows:

1. I am the Principal ASIC Engineer of Aeroflex, Inc., which includes Aeroflex Colorado Springs, Inc. ("Aeroflex"). I have been an employee of Aeroflex since September 1990, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, sometimes the engineers utilize Synopsys' Design Compiler software, which includes HDL Compiler for Verilog, VHDL Compiler, the Design Compiler Basic Libraries, and DesignWare Foundation Libraries.

3. We have never, from February 1997 through present, used Synopsys' Module Compiler in the design of our commercial ASICs.

4. We have never, from February 1997 through present, used Synopsys' Physical Compiler in the design of our commercial ASICs.

5. It is my understanding that the standard input formats supported by Design Compiler from February 1997 to the present are:

| Format | Description | Keyword | Extension |
|---|---|---|---|
| .db | Synopsys internal database format | db | .db |
| EDIF | Electronic Design Interchange Format | edif | .edif |
| equation | Synopsys equation format | equation | .eqn |
| LSI | LSI Logic Corporation (NDL) netlist format | lsi | .NET |
| MIF | Mentor Intermediate Format | mif | .mif |
| PLA | Berkeley (Espresso) PLA format | pla | .pla |
| State table | Synopsys state table format | st | .st |
| TDL | Tegas Design Language netlist format | tdl | .tdl |
| Verilog | Verilog Hardware Description Language | verilog | .v |
| VHDL | VHSIC Hardware Description Language | vhdl | .vhd |
| XNF | Xilinx netlist format | xnf | .xnf |

6. Since February 1997, the inputs for the digital portions of our commercial ASICs designed by us and which utilized the Design Compiler software have not included any input formats to Design Compiler other than those listed in the table above.

7. More specifically, since February 1997, looking at all of the commercial ASICs designed by us and which utilized the Design Compiler software for synthesis, 99% or more of the source inputs to Design Compiler for the digital portions of the same, were provided as textual Verilog, or VHDL, descriptions. Of the 99% of inputs that are textual Verilog or VHDL, 75 to 80% of that is VHDL, with the balance, 20 to 25%, being Verilog.

8. Further, since February 1997, all of the Verilog or VHDL descriptions for our designs created by Aeroflex engineers have been directly entered using a text editor.

9. Since February 1997, we have not used a software product to translate a flow chart or other functional description into the input to Design Compiler.

10. In some circumstances, customers provide Aeroflex with designs for ASICs or portions of ASICs, generally as netlists, and occasionally as textual Verilog or VHDL descriptions. In those cases, we do not know, or control, how these netlists and descriptions are generated.

11. In other circumstances, third parties design our ASICs or certain portions of them and provide them to us, as netlists. In those cases, we do not know, or control, how these inputs are generated.

12. In some cases, our commercial ASICs include purchased off the shelf components that we obtain in the form of netlists or textual Verilog or VHDL format from third parties. In those cases, we do not know, or control, how these inputs are generated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Colorado Springs, Colorado on July 21, 2005.

Brandon Coco

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., Plaintiff, vs. AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC. Defendants. | Case No. C03-04669 MJJ (EMC)<br>Case No. C03-2289 MJJ (EMC)<br>**DECLARATION OF ERIC BOISVERT IN SUPPORT OF DEFENDANTS' STIPULATION TO INPUT FORMAT** |
| SYNOPSYS, INC., Plaintiff, vs. RICOH COMPANY, LTD., Defendant. | |

I, Eric Boisvert, declare as follows:

1. I am the Vision Processor Product Line Supervisor of Matrox Electronic Systems, Ltd. for the Imaging division ("Matrox"). I have been an employee of Matrox since January 1994, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, sometimes the engineers utilize Synopsys' Design Compiler software, which includes HDL Compiler for Verilog, VHDL Compiler, the Design Compiler Basic Libraries, and DesignWare Foundation Libraries.

3. We have never, from February 1997 through present, used Synopsys' Module Compiler in the design of our commercial ASICs.

4. We have never, from February 1997 through present, used Synopsys' Physical Compiler in the design of our commercial ASICs.

5. It is my understanding that the standard input formats supported by Design Compiler from February 1997 to the present are:

| Format | Description | Keyword | Extension |
|---|---|---|---|
| .db | Synopsys internal database format | db | .db |
| EDIF | Electronic Design Interchange Format | edif | .edif |
| equation | Synopsys equation format | equation | .eqn |
| LSI | LSI Logic Corporation (NDL) netlist format | lsi | .NET |
| MIF | Mentor Intermediate Format | mif | .mif |
| PLA | Berkeley (Espresso) PLA format | pla | .pla |
| State table | Synopsys state table format | st | .st |
| TDL | Tegas Design Language netlist format | tdl | .tdl |
| Verilog | Verilog Hardware Description Language | verilog | .v |
| VHDL | VHSIC Hardware Description Language | vhdl | .vhd |
| XNF | Xilinx netlist format | xnf | .xnf |

6. Since February 1997, the inputs for the digital portions of our commercial ASICs designed by us and which utilized the Design Compiler software have not included any input formats to Design Compiler other than those listed in the table above.

7. More specifically, since February 1997, looking at all of the commercial ASICs designed by us and which utilized the Design Compiler software for synthesis, more than 95% of the source inputs to Design Compiler for the digital portions of the same, were provided as textual Verilog or VHDL descriptions, with more than 95% of these being VHDL. The majority of the rest of the source inputs were in the EDIF format, which is a netlist format.

8. Further, since February 1997, all of the VHDL descriptions for our designs created by Matrox engineers have been directly entered using a text editor.

9. Since February 1997, we have not used a software product to translate a flow chart or other functional description into the input to Design Compiler.

10. Customers do not provide Matrox with designs for ASICs or portions of ASICs.

11. In some circumstances, third parties design a portion of an ASIC and provided it to us, in VHDL format.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on July 21, 2005.

Eric Boisvert ing., M.Sc.A.

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., Plaintiff, vs. AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC. Defendants. | Case No. C03-04669 MJJ (EMC)<br>Case No. C03-2289 MJJ (EMC)<br>**DECLARATION OF ERIC BOISVERT IN SUPPORT OF DEFENDANTS' STIPULATION TO DESIGN LIBRARIES** |
| SYNOPSYS, INC., Plaintiff, vs. RICOH COMPANY, LTD., Defendant. | |

HOWREY LLP
Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
BOISVERT DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES
DM_US\8229187.v1

I, Eric Boisvert, declare as follows:

1. I am the Vision Processor Product Line Supervisor of Matrox Electronic Systems, Ltd, for the Imaging division ("Matrox"). I have been an employee of Matrox since January 1994, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. The following table summarizes our use of the different types of libraries from February 1997 through the present for our commercial ASICs:

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | MATROX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| A | Target libraries and technology libraries | `target_library` | A large number of `target_library` values that we specify correspond to proprietary libraries that we used based on the target foundry and prepare for usage with Design Compiler.<br><br>We have obtained third party libraries for the following foundry-process nodes:<br>LSI .50 um<br>LSI .35 um<br>AMI .35 um<br>Toshiba .14 um |
| B | Symbol libraries | `symbol_library` | To the extent we have used, or created, any items for use as "`symbol_library`", they are stored with, or were provided to us with, the corresponding "`target_library`" item identified above. |
| C | Synthetic libraries (includes Basic library, | `synthetic_library` (includes, in order, | The items we have used are the `standard.sldb` and |

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | MATROX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| | DesignWare Foundation and Building Block IP Libraries, Design Libraries) | standard.sldb; dw_foundation.sldb; and synthetic_library implementations) | dw_foundation.sldb libraries provided by Synopsys.<br><br>Depending on the time period in which a design was created, we may have used the subset versions of dw_foundation.sldb, identified by using the subset versions of what is now dw_foundation.sldb: dw01.sldb, dw02.sldb, dw03.sldb, dw04.sldb, dw05.sldb, dw06.sldb, dw07sldb, and dw08.sldb. |
| D | Link libraries | link_library | There are no items that fall into this category that were not already enumerated on Rows A and C. |
| E | Design libraries created during synthesis | Design libraries | This is an internal data format for intermediate results of Design Compiler. We do not save or maintain this data for any purposes. |
| F | GTECH | GTECH | I understand that this is exclusively provided by Synopsys. |

4. In summary, the only items Matrox provides that are not provided by Synopsys are identified in Row A. To the extent there are any items meeting the description in Row B, they would be stored with the items identified in Row A.

5. It is my understanding that all items of the type identified in Row A for use by Design Compiler must be a Synopsys Liberty format library that has been converted to ".db" format for use by Design Compiler.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -3-
BOISVERT DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES

DM US\8229187.v1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on July 21, 2005.

Eric Boisvert ing., M.Sc.A.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -4-
BOISVERT DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES
DM US\8229187.v1

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., Plaintiff, vs. AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC. Defendants. | Case No. C03-04669 MJJ (EMC)<br>Case No. C03-2289 MJJ (EMC)<br>**DECLARATION OF DAVID CHIAPPINI IN SUPPORT OF DEFENDANTS' STIPULATION TO INPUT FORMAT** |
| SYNOPSYS, INC., Plaintiff, vs. RICOH COMPANY, LTD., Defendant. | |

I, David Chiappini, declare as follows:

1. I am the ASIC Project Director of Matrox Graphics Inc. ("Matrox"). I have been an employee of Matrox since May 1996, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, sometimes the engineers utilize Synopsys' Design Compiler software, which includes VHDL Compiler, HDL Compiler for Verilog, the Design Compiler Basic Libraries, and DesignWare Foundation Libraries.

3. We have never, from February 1997 through present, used Synopsys' Module Compiler in the design of our commercial ASICs.

4. While we have, and have had, a license to Synopsys' Physical Compiler, we do not, and have not, used it for front end design (RTL to placed gates). Instead, we use, and have used, it only for back end design (gates to placed gates).

5. It is my understanding that the standard input formats supported by Design Compiler from February 1997 to the present are:

| Format | Description | Keyword | Extension |
|---|---|---|---|
| .db | Synopsys internal database format | db | .db |
| EDIF | Electronic Design Interchange Format | edif | .edif |
| equation | Synopsys equation format | equation | .eqn |
| LSI | LSI Logic Corporation (NDL) netlist format | lsi | .NET |
| MIF | Mentor Intermediate Format | mif | .mif |
| PLA | Berkeley (Espresso) PLA format | pla | .pla |
| State table | Synopsys state table format | st | .st |
| TDL | Tegas Design Language netlist format | tdl | .tdl |
| Verilog | Verilog Hardware Description Language | verilog | .v |
| VHDL | VHSIC Hardware Description Language | vhdl | .vhd |
| XNF | Xilinx netlist format | xnf | .xnf |

6. Since February 1997, the inputs for the digital portions of our commercial ASICs designed by us and which utilized the Design Compiler software have not included any input formats to Design Compiler other than those listed in the table above.

7. More specifically, since February 1997, looking at all of the commercial ASICs designed by us and which utilized the Design Compiler software for synthesis, more than 75% of the source inputs to Design Compiler for the digital portions of the same, were provided as textual Verilog or VHDL descriptions, with more than 95% of these being VHDL. The majority of the rest of the source inputs were in the EDIF format, which is a netlist format.

8. Further, since February 1997, all of the VHDL descriptions for our designs created by Matrox engineers have been directly entered using a text editor.

9. Since February 1997, we have not used a software product to translate a flow chart or other functional description into the input to Design Compiler.

10. Customers do not provide Matrox with designs for ASICs or portions of ASICs.

11. In some circumstances, third parties design our ASICs or certain portions of them and provide them to us, in Verilog or VHDL format. In those cases, we do not know, or control, how these inputs are generated.

12. In some cases, our commercial ASICs include purchased off the shelf components that we obtain in the form of GDS II files from third parties. We have no information as to, or control over, how such files are generated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec, on July 21, 2005.

For: David Chiappini and this further to his acceptance of the contents herein and in his absence.

Signed by Eric Boisvert

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -3-
CHIAPPINI DECL IN SUPPORT OF STIPULATION AS TO INPUT

DM_US\8225725.v1

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,

Plaintiff,

vs.

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.

Defendants.

---

SYNOPSYS, INC.,

Plaintiff,

vs.

RICOH COMPANY, LTD.,

Defendant.

---

Case No. C03-04669 MJJ (EMC)

Case No. C03-2289 MJJ (EMC)

**DECLARATION OF DAVID CHIAPPINI IN SUPPORT OF DEFENDANTS' STIPULATION TO DESIGN LIBRARIES**

I, David Chiappini, declare as follows:

1. I am the ASIC Project Director of Matrox Graphics Inc. ("Matrox"). I have been an employee of Matrox since June 1996, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. The following table summarizes our use of the different types of libraries from February 1997 through the present for our commercial ASICs:

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | MATROX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| A | Target libraries and technology libraries | `target_library` | A large number of `target_library` values that we specify correspond to third party libraries based on the target foundry and prepare for usage with Design Compiler.<br><br>On information and belief, we have obtained third party libraries for the following foundry-process nodes:<br>• NEC 0.35u<br>• NEC 0.25u<br>• UMC 0.18u<br>• UMC 0.15u<br><br>Additionally, we have created libraries that comply with the manufacturing standards for the following foundry processes:<br>• NEC 0.35u<br>• NEC 0.25u<br>• UMC 0.18u<br>• UMC 0.15u |
| B | Symbol libraries | `symbol_library` | To the extent we have used, or created, any items for use |

HOWREY LLP
Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -2-
CHIAPPINI DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES
DM_US\8229187.v1

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | MATROX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| | | | as "symbol_library", they are stored with, or were provided to us with, the corresponding "target_library" item identified above. |
| C | Synthetic libraries (includes Basic library, DesignWare Foundation and Building Block IP Libraries, Design Libraries) | synthetic_library (includes, in order, standard.sldb; dw_foundation.sldb; and synthetic_library implementations) | The items we have used are the standard.sldb and dw_foundation.sldb libraries provided by Synopsys.<br><br>Depending on the time period in which a design was created, we may have used the subset versions of dw_foundation.sldb, identified by using the subset versions of what is now dw_foundation.sldb: dw01.sldb, dw02.sldb, dw03.sldb, dw04.sldb, dw05.sldb, dw06.sldb, dw07sldb, and dw08.sldb. |
| D | Link libraries | link_library | There are no items that fall into this category that were not already enumerated on Rows A and C. |
| E | Design libraries created during synthesis | Design libraries | This is an internal data format for intermediate results of Design Compiler. Usually for large designs we temporarily save partially compiled portion of the design that will be used later on by design compiler to complete synthesis. |
| F | GTECH | GTECH | I understand that this is exclusively provided by Synopsys. |

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -3-
CHIAPPINI DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES
DM_US\8229187.v1

4. In summary, the only items Matrox provides that are not provided by Synopsys are identified in Row A. To the extent there are any items meeting the description in Row B, they would be stored with the items identified in Row A.

5. It is my understanding that all items of the type identified in Row A for use by Design Compiler must be a Synopsys Liberty format library that has been converted to ".db" format for use by Design Compiler.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval/Quebec on July 21, 2005.

For: David Chiappini further to his acceptance of the contents and in his absence.

Signed by: Eric Boisvert

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,

Plaintiff,

vs.

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.

Defendants.

SYNOPSYS, INC.,

Plaintiff,

vs.

RICOH COMPANY, LTD.,

Defendant.

Case No. C03-04669 MJJ (EMC)

Case No. C03-2289 MJJ (EMC)

**DECLARATION OF DAVID CHIAPPINI IN SUPPORT OF DEFENDANTS' STIPULATION TO INPUT FORMAT**

I, David Chiappini, declare as follows:

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
CHIAPPINI DECL IN SUPPORT OF STIPULATION AS TO INPUT

DM_US\8225725.v1

1. I am the ASIC Project Director of Matrox Graphics Inc. ("Matrox"). I have been an employee of Matrox since May 1996, and I am familiar with Matrox Tech facilities from February 1997 to the present.

2. I have worked closely with the design office of Matrox Tech ("Tech") as well as supervised some of the projects at Tech. Moreover, the realized projects at Tech are derived from projects that were realized at Matrox Graphics and therefore I am familiar with the methodology used at Tech.

3. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

4. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, sometimes the engineers utilize Synopsys' Design Compiler software, which includes VHDL Compiler, HDL Compiler for Verilog, the Design Compiler Basic Libraries, and DesignWare Foundation Libraries.

5. We have never, from February 1997 through present, used Synopsys' Module Compiler in the design of our commercial ASICs.

6. While we have, and have had, a license to Synopsys' Physical Compiler, we do not, and have not, used it for front end design (RTL to placed gates). Instead, we use, and have used, it only for back end design (gates to placed gates).

7. It is my understanding that the standard input formats supported by Design Compiler from February 1997 to the present are:

| Format | Description | Keyword | Extension |
|---|---|---|---|
| .db | Synopsys internal database format | db | .db |
| EDIF | Electronic Design Interchange Format | edif | .edif |
| equation | Synopsys equation format | equation | .eqn |
| LSI | LSI Logic Corporation (NDL) netlist format | lsi | .NET |
| MIF | Mentor Intermediate Format | mif | .mif |
| PLA | Berkeley (Espresso) PLA format | pla | .pla |
| State table | Synopsys state table format | st | .st |
| TDL | Tegas Design Language netlist format | tdl | .tdl |
| Verilog | Verilog Hardware Description Language | verilog | .v |
| VHDL | VHSIC Hardware Description Language | vhdl | .vhd |
| XNF | Xilinx netlist format | xnf | .xnf |

8. Since February 1997, the inputs for the digital portions of our commercial ASICs designed by us and which utilized the Design Compiler software have not included any input formats to Design Compiler other than those listed in the table above.

9. More specifically, since February 1997, looking at all of the commercial ASICs designed by us and which utilized the Design Compiler software for synthesis, more than 75% of the source inputs to Design Compiler for the digital portions of the same, were provided as textual Verilog or VHDL descriptions, with more than 95% of these being VHDL. The majority of the rest of the source inputs were in the EDIF format, which is a netlist format.

10. Further, since February 1997, all of the VHDL descriptions for our designs created by Matrox engineers have been directly entered using a text editor.

11. Since February 1997, we have not used a software product to translate a flow chart or other functional description into the input to Design Compiler.

12. Customers do not provide Matrox with designs for ASICs or portions of ASICs.

13. In some circumstances, third parties design our ASICs or certain portions of them and provide them to us, in Verilog or VHDL format. In those cases, we do not know, or control, how these inputs are generated.

14. In some cases, our commercial ASICs include purchased off the shelf components that we obtain in the form of GDS II files from third parties. We have no information as to, or control over, how such files are generated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on July 21, 2005.

For: David Chiappini, further to his acceptance of the contents and in his absence.

Signed by Eric Boisvert

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.<br><br>Defendants. | Case No. C03-04669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**DECLARATION OF DAVID CHIAPPINI IN SUPPORT OF DEFENDANTS' STIPULATION TO DESIGN LIBRARIES** |
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RICOH COMPANY, LTD.,<br><br>Defendant. | |

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
CHIAPPINI DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES
DM_US\8229187.v1

I, David Chiappini, declare as follows:

1. I am the ASIC Project Director of Matrox Graphics Inc. ("Matrox"). I have been an employee of Matrox since June 1996, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. I have worked closely with the design office of Matrox Tech ("Tech") as well as supervised some of the projects at Tech. Moreover, the realized projects at Tech are derived from projects that were realized at Matrox Graphics and therefore I am familiar with the methodology used at Tech.

3. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

4. The following table summarizes our use of the different types of libraries from February 1997 through the present for our commercial ASICs:

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | MATROX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| A | Target libraries and technology libraries | `target_library` | A large number of `target_library` values that we specify correspond to third party libraries based on the target foundry and prepare for usage with Design Compiler.<br><br>On information and belief, we have obtained third party libraries for the following foundry-process nodes:<br>• NEC 0.35u<br>• UMC 0.15u<br><br>Additionally, we have created libraries that comply with the manufacturing standards for the following foundry processes:<br>• NEC 0.35u<br>• UMC 0.15u |

| ROW | RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | MATROX'S USAGE OF THESE ITEMS |
|---|---|---|---|
| B | Symbol libraries | symbol_library | To the extent we have used, or created, any items for use as "symbol_library", they are stored with, or were provided to us with, the corresponding "target_library" item identified above. |
| C | Synthetic libraries (includes Basic library, DesignWare Foundation and Building Block IP Libraries, Design Libraries) | synthetic_library (includes, in order, standard.sldb; dw_foundation.sldb; and synthetic_library implementations) | The items we have used are the standard.sldb and dw_foundation.sldb libraries provided by Synopsys.<br><br>Depending on the time period in which a design was created, we may have used the subset versions of dw_foundation.sldb, identified by using the subset versions of what is now dw_foundation.sldb: dw01.sldb, dw02.sldb, dw03.sldb, dw04.sldb, dw05.sldb, dw06.sldb, dw07sldb, and dw08.sldb. |
| D | Link libraries | link_library | There are no items that fall into this category that were not already enumerated on Rows A and C. |
| E | Design libraries created during synthesis | Design libraries | This is an internal data format for intermediate results of Design Compiler. Usually for large designs we temporarily save partially compiled portion of the design that will be used later on by design compiler to complete synthesis. |
| F | GTECH | GTECH | I understand that this is exclusively provided by Synopsys. |

5. In summary, the only items Matrox provides that are not provided by Synopsys are identified in Row A. To the extent there are any items meeting the description in Row B, they would be stored with the items identified in Row A.

6. It is my understanding that all items of the type identified in Row A for use by Design Compiler must be a Synopsys Liberty format library that has been converted to ".db" format for use by Design Compiler.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on July 21, 2005.

For: David Chiappini further to his acceptance of the contents and in his absence.

Signed by Eric Boisvert

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -4-
CHIAPPINI DECL IN SUPPORT OF STIPULATION AS TO DESIGN LIBRARIES

DM_US\8229187.v1

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.<br><br>Defendants. | Case No. C03-04669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**DECLARATION OF ROBERT B. SMITH OF AMI IN SUPPORT OF DEFENDANTS' STIPULATION TO REPRESENTATIVE PRODUCTS** |
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RICOH COMPANY, LTD.,<br><br>Defendant. | |

I, Robert B. Smith, declare as follows:

1. I am the Director of Technology Administration of AMI Semiconductor, Inc. ("AMIS"). I have been an employee of AMIS from April 19, 1976 to April 14, 1980 and since November 15, 1982, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. Since February 1997, we have used Design Compiler for logic synthesis of the following commercial products, using the specified technology libraries:

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| 1 | 11241 | Telecom chip | Unknown |
| 2 | 0QJBW-001 | Industrial chip | STM 0.35µ standard cell AMIS 0.35u memory |
| 3 | 11636-501 | Sound processing chip for model trains | AMIS 0.5µ standard cell |
| 4 | 11885-501 | Unknown | AMIS 0.35µ standard cell and memory |
| 5 | 14062-501 | Telecom chip | AMIS 0.35µ standard cell |
| 6 | 14167-001 | Lighting chip | AMIS 0.5µ standard cell |
| 7 | 14241-501 | Telecom chip | AMIS 0.5µ standard cell and memory |
| 8 | 14257-501 | Telecom chip | AMIS 0.35µ standard cell |
| 9 | 14948-501 | Automotive chip | AMIS 0.5µ standard cell |
| 10 | 14974-501 | Telecom chip | AMIS 0.35µ standard cell |
| 11 | 14984-001 | Telecom chip | AMIS 0.5µ standard cell |
| 12 | 15007-028 | TV chip | Unknown |
| 13 | 15088-501 | LCD display chip | Unknown |
| 14 | 15096-502 | PC chip | AMIS 0.35µ |

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| | | | standard cell |
| 15 | 15123-501 | Military chip | AMIS 0.35μ standard cell |
| 16 | 15124-502 | Medical chip | AMIS 0.35μ standard cell |
| 17 | 15145-501 | Telecom chip | Avant! 0.25μ Standard Cell |
| 18 | 19007-001 | Medical chip | AMIS 0.5μ standard cell |
| 19 | 19075-001 | Unknown | AMIS 0.5μ standard cell |
| 20 | 19320-001 | Medical chip | AMIS 0.5μ standard cell |
| 21 | 19349-001 | Industrial controls chip | AMIS 0.35μ standard cell |
| 22 | 19350-001 | Industrial controls chip | AMIS 0.35μ standard cell |
| 23 | 19361-001 | Card reader chip | AMIS 0.5μ standard cell |
| 24 | 19371-001 | Bar code scanner chip | AMIS 0.5μ standard cell |
| 25 | 19402-001 | Automotive analyzer chip | AMIS 0.5μ standard cell |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Pocatello, Idaho on August 12, 2005.

RB Smith

Robert B. Smith

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -3-

SMITH DECL IN SUPPORT OF STIPULATION TO REPRESENTATIVE PRODUCTS

DM_US\8239526.v1

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,

Plaintiff,

vs.

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.

Defendants.

---

SYNOPSYS, INC.,

Plaintiff,

vs.

RICOH COMPANY, LTD.,

Defendant.

---

Case No. C03-04669 MJJ (EMC)

Case No. C03-2289 MJJ (EMC)

**DECLARATION OF BRANDON COCO OF AEROFLEX IN SUPPORT OF DEFENDANTS' STIPULATION TO REPRESENTATIVE PRODUCTS**

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
COCO DECL IN SUPPORT OF STIPULATION TO REPRESENTATIVE PRODUCTS
DM_US\8236049.v1

I, Brandon Coco, declare as follows:

1. I am the Principal ASIC Engineer of Aeroflex, Inc., which includes Aeroflex Colorado Springs, Inc. ("Aeroflex"). I have been an employee of Aeroflex since September 1990, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design, and/or perform turnkey services (which includes taking customer designs and synthesizing them) for, application specific integrated circuits (ASICs). In designing ASICs, or performing turnkey services, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. Since February 1997, we have used Design Compiler for logic synthesis of the following commercial products, using the specified technology libraries:

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| 1 | UTCAM-Engine / UT100CE 02 JAA | Database search engine with SSRAM/SDRAM controller | Samsung STD90 0.35um, Samsung library |
| 2 | YA04 / YA13 | Security chip | MagnaChip HL35EFL 0.35um, EXD library |
| 3 | JW01 | Photo-diode array detector | AMI C5 0.5um, AMI library |
| 4 | YB01 | Photo-diode array detector | MagnaChip HL35EFL 0.35um, EXD library |
| 5 | DA01 | Photo-diode array detector | DongbuAnam MS180BB 0.18 um, Artisan library |
| 6 | DA02 | Photo-diode array detector | DongbuAnam MS180BB 0.18um, Artisan library |
| 7 | JE01A | Environmental control | AMI 0.6um process, Aeroflex libraries |
| 8 | KD08A | Military program | AMI 0.6um process, Aeroflex libraries |
| 9 | KD15A | Military program | AMI 0.6um process, Aeroflex libraries |
| 10 | KB11A | Military program | AMI 0.6um process, Aeroflex libraries |
| 11 | KD12A | Scientific research module | AMI 0.6um process, Aeroflex libraries |
| 12 | KB10A | Scientific research module | AMI 0.6um process, Aeroflex libraries |
| 13 | KM01A | Scientific research module | AMI 0.6um process, Aeroflex libraries |
| 14 | KB07A | Space Station monitor | AMI 0.6um process, Aeroflex libraries |
| 15 | KD01A | SIA controller | AMI 0.6um process, Aeroflex libraries |
| 16 | KD11A | Communications satellite | AMI 0.6um process, Aeroflex libraries |
| 17 | JD05A | Serial communications controller | AMI 0.6um process, Aeroflex libraries |
| 18 | KJ01A | Military Friend or Foe (FOF) | AMI 0.6um process, Aeroflex libraries |
| 19 | KJ02A | Military FOF | AMI 0.6um process, Aeroflex libraries |

HOWREY LLP
Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -2-
COCO DECL IN SUPPORT OF STIPULATION TO REPRESENTATIVE PRODUCTS
DM_US\8236049.v1

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| 20 | KJ03A | Military FOF | AMI 0.6um process, Aeroflex libraries |
| 21 | KJ04A | Military FOF | AMI 0.6um process, Aeroflex libraries |
| 22 | KD22A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 23 | KD23A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 24 | KD24A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 25 | KD25A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 26 | KD26A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 27 | KD28A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 28 | KD31A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 29 | KD32A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 30 | KD33A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 31 | KD34A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 32 | KD35A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 33 | KD36A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 34 | KD37A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 35 | KD38A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 36 | KD39A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 37 | KD41A | Military satellite | AMI 0.6um process, Aeroflex libraries |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Colorado Springs, Colorado on August 12, 2005.

Brandon Coco

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -3-
COCO DECL IN SUPPORT OF STIPULATION TO REPRESENTATIVE PRODUCTS

DM_US\8236049.v1

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.<br><br>Defendants. | Case No. C03-04669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**DECLARATION OF ERIC BOISVERT OF MATROX ELECTRONIC SYSTEMS IN SUPPORT OF DEFENDANTS' STIPULATION TO REPRESENTATIVE PRODUCTS** |
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RICOH COMPANY, LTD.,<br><br>Defendant. | |

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
BOISVERT DECL IN SUPPORT OF STIPULATION TO REPRESENTATIVE PRODUCTS
DM_US\8236049.v1

I, Eric Boisvert, declare as follows:

1. I am the Vision Processor Product Line Supervisor of Matrox Electronic Systems, Ltd, for the Imaging division ("Matrox Electronic"). I have been an employee of Matrox Electronic since January 1994, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at our company design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. Since February 1997, we have used Design Compiler for logic synthesis of the following commercial products, using the specified technology libraries:

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| 1 | VIA/0 | Video interface ASIC | LSI 0.5um |
| 2 | OASIS | Odyssey ASIC | Toshiba 0.14um |
| 3 | SIB | System interface bridge | Toshiba 0.14um |
| 4 | VIA/1 | Video interface ASIC | AMI 0.35um |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on August 16, 2005.

Eric Boisvert ing., M.Sc.A.

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,

Plaintiff,

vs.

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.

Defendants.

Case No. C03-04669 MJJ (EMC)

Case No. C03-2289 MJJ (EMC)

**DECLARATION OF DAVID CHIAPPINI OF MATROX GRAPHICS IN SUPPORT OF DEFENDANTS' STIPULATION TO REPRESENTATIVE PRODUCTS**

---

SYNOPSYS, INC.,

Plaintiff,

vs.

RICOH COMPANY, LTD.,

Defendant.

---


I, David Chiappini, declare as follows:

1. I am the ASIC Project Director of Matrox Graphics Inc. ("Matrox Graphics"). I have been an employee of Graphics since June 1996, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. Engineers at Matrox Graphics design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

3. Since February 1997, we have used Design Compiler for logic synthesis of the following commercial products, using the specified technology libraries:

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| 1 | Cyclone | Graphics processing unit | NEC 0.5um |
| 2 | Mistral | Graphics processing unit | NEC 0.35um |
| 3 | Eclipse | Graphics processing unit | NEC 0.35um |
| 4 | EclipsePCI | Graphics processing unit | NEC 0.35um |
| 5 | Calao | Graphics processing unit | NEC 0.25um |
| 6 | Toucan | Graphics processing unit | NEC 0.25um |
| 7 | Maven | Video co-processing unit | NEC 0.25um |
| 8 | Condor | Graphics processing unit | UMC 0.18um |
| 9 | Condor Plus | Graphics processing unit | UMC 0.18um |
| 10 | Parhelia | Graphics processing unit | UMC 0.15um |
| 11 | Sundog | Graphics processing unit | UMC 0.15um |
| 12 | Parhelia8x | Graphics processing unit | UMC 0.15um |
| 13 | Sunex | Graphics processing unit | UMC 0.15um |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on August 15, 2005.

FOR David Chiappini further to his acceptance and in his absence

David Chiappini

Nathalie Lizcalla
Senior Legal Counsel
MES.

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., Plaintiff, vs. AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC. Defendants. | Case No. C03-04669 MJJ (EMC)<br>Case No. C03-2289 MJJ (EMC)<br>**DECLARATION OF ERIC BOISVERT FOR MATROX TECH IN SUPPORT OF DEFENDANTS' STIPULATION TO REPRESENTATIVE PRODUCTS** |
| SYNOPSYS, INC., Plaintiff, vs. RICOH COMPANY, LTD., Defendant. | |

I, Eric Boisvert, declare as follows:

1. I am the Vision Processor Product Line Supervisor of Matrox Electronic Systems, Ltd, for the Imaging division ("Matrox Electronic"). I have been an employee of Matrox Electronic since January 1994, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. I have worked closely with the design office of Matrox Tech. Moreover, some of the realized projects at Matrox Tech are derived from projects that were realized at Matrox Electronic, and therefore I am familiar with the methodology used at Matrox Tech.

3. Engineers at Matrox Tech design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

4. Since February 1997, we have used Design Compiler for logic synthesis of the following commercial products, using the specified technology libraries:

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| 1 | NOA | Neighbourhood operation accelerator | LSI 0.35 um |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on August 16, 2005.

Eric Boisvert ing., M.Sc.A.



Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC. and for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,

Plaintiff,

vs.

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.

Defendants.

SYNOPSYS, INC.,

Plaintiff,

vs.

RICOH COMPANY, LTD.,

Defendant.

Case No. C03-04669 MJJ (EMC)

Case No. C03-2289 MJJ (EMC)

**DECLARATION OF DAVID CHIAPPINI FOR MATROX TECH IN SUPPORT OF DEFENDANTS' STIPULATION TO REPRESENTATIVE PRODUCTS**

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
CHIAPPINI DECL. IN SUPPORT OF STIPULATION TO REPRESENTATIVE PRODUCTS
DM_US\8237812.v1

I, David Chiappini, declare as follows:

1. I am the ASIC Project Director of Matrox Graphics Inc. ("Matrox Graphics"). I have been an employee of Graphics since June 1996, and I am familiar with our operations and facilities from February 1997 to the present. I make this Declaration of my personal knowledge, and if called as a witness, I could and would testify competently to the statements contained herein.

2. I have worked closely with the design office of Matrox Tech, as well as supervised some of the projects at Matrox Tech. Moreover, the realized projects at Matrox Tech are derived from projects that were realized at Matrox Graphics, and therefore I am familiar with the methodology used at Matrox Tech.

3. Engineers at Matrox Tech design application specific integrated circuits (ASICs). In designing ASICs, our engineers use various types of libraries in association with the Design Compiler® software from Synopsys.

4. Since February 1997, we have used Design Compiler for logic synthesis of the following commercial products, using the specified technology libraries:

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---|---|---|
| 1 | Rainbow Runner | Video co-processing unit | NEC 0.35um |
| 2 | Twister | Graphics processing unit | NEC 0.35um |
| 3 | Parhelia | Graphics processing unit | UMC 0.15um |
| 4 | Sundog | Graphics processing unit | UMC 0.15um |
| 5 | Parhelia8x | Graphics processing unit | UMC 0.15um |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Quebec on August 16, 2005.

David Chiappini

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC) -2-
CHIAPPINI DECL IN SUPPORT OF STIPULATION TO REPRESENTATIVE PRODUCTS
DM_US\8237817.v1

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 429-2184
E-Mail Address: BrothersK@dsmo.com

June 22, 2004

**BY FACSIMILE and US Mail**

Tom Mavrakakis, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA 94025

Re: Ricoh v. Aeroflex et al.

Dear Tom:

As I told you on June 16, your letter of June 15 contains inaccurate and gratuitous statements that are not helpful to a measured discussion in resolving our client's differences with respect to the '016 patent and claims 1-12 and 18-20 of the '432 patent. Please note our disagreement with your allegations.

During our telephone conference yesterday, you accused me of misrepresenting a telephone conversation with your partner on Friday, even though you were not a party to that conversation, and even though you admitted that you had not spoken with him regarding that conversation. You also stated the agreement between Chris Kelley and myself would not be honored. Your refusal to honor the prior agreements of counsel unfortunately has become an all-too-common occurrence.

You threatened to require that all future meet and confer sessions be transcribed. You also implied that this was a condition of your willingness to comply with the local rules. Although that is an extraordinary step, we believe that it would be beneficial in view of your course of conduct. We will agree that you should do it provided that your clients bear the cost of arranging the reporter; the identity and presence of the reporter is announced at the start of the conversation; and we are able to obtain a transcript. Alternatively, we are willing to tape record all future conversations with your advance agreement.

Sincerely,

Kenneth W. Brothers

KWB/ncz
cc: Christopher Kelley, Esq.
Gary Hoffman, Esq.
Edward Meilman, Esq.
Jeffrey Demain, Esq.

# FAX TRANSMISSION

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

**DATE:** June 22, 2004

**CLIENT NO.:** R2180.0171

**MESSAGE TO:** Thomas Mavrakakis

**COMPANY:** Howrey Simon Arnold & White LLP

**FAX NUMBER:** (650) 463-8400

**PHONE:** (650) 463-8100

**FROM:** Kenneth W. Brothers

**PHONE:** (202) 429-2184

**PAGES (Including Cover Sheet):** 2 **HARD COPY TO FOLLOW:** X **YES** ____ **NO**

| SENT BY: | | DATE/TIME: | |
|---|---|---|---|

**MESSAGE:**

If your receipt of this transmission is in error, please notify this firm immediately by collect call to our Facsimile Department at 202-861-9106, and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

THOMAS C. MAVRAKAKIS
PARTNER
650.463.8169
mavrakakist@howrey.com

June 24, 2004

***VIA FACSIMILE AND U.S. MAIL***

Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street NW
Washington, D.C. 20037

***RE:*** ***Synopsys, Inc. v. Ricoh Company, Ltd.***
***Case No. C03-02289 MJJ (EMC) and***
***Ricoh Company, Ltd. v. Aeroflex***
***Case No. C03-04669 MJJ (EMC)***

Dear Mr. Brothers:

Your letter of June 22, 2004 is not accurate. I asked if you would agree to a court reporter for future meet and confers and you agreed. I made clear that Ricoh could obtain a copy of any transcripts by agreeing to pay for half of the cost of the court reporter. Your attempt now to force my client to bear the entire cost is not reasonable. Contrary to your attempt to create a false record, yet again, I never "implied" anything about our willingness to comply with the local rules.

Please let me know whether Ricoh will agree to have a court reporter at future meet and confers. We think that it is appropriate for the court reporter's presence to be made known before any such meet and confers. We do not agree with the other conditions in your letter. We also are not agreeable to your tape recording of future conversations since we believe that a court reporter is the appropriate means for creating a record of future meet and confers.

If you will not agree to this reasonable request, then we will seek an order from the Court granting us such relief.

Very truly yours,

Thomas C. Mavrakakis

tcm:sjc

cc: Edward A. Meilman, Esq.
Gary M. Hoffman, Esq.

DM_US\8032479.v1

HOWREY SIMON ARNOLD & WHITE
HOWREY LLP
ATTORNEYS AT LAW

301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

# FACSIMILE COVER SHEET

**DATE:** June 24, 2004

**TO:**

1. NAME: Kenneth W. Brothers, Esq. COMPANY: Dickstein Shapiro Morin & Oshinsky
   CITY: Washington, DC FAX #: (202) 887-0689 PHONE #:
2. NAME: Edward A. Meilman, Esq. COMPANY: Dickstein Shapiro Morin & Oshinsky
   CITY: New York, NY FAX #: (212) 997-9880 PHONE #:
3. NAME: Gary M. Hoffman, Esq. COMPANY: Dickstein Shapiro Morin & Oshinsky
   CITY: Washington, DC FAX #: (202) 887-0689 PHONE #:
4. NAME: COMPANY:
   CITY: FAX #: PHONE #:
5. NAME: COMPANY:
   CITY: FAX #: PHONE #:

**FROM:** NAME: Susan Crane for Tom Mavrakakis

DIRECT DIAL NUMBER: (650) 463-8124 USER ID: 4099

NUMBER OF PAGES, INCLUDING COVER: 2 CHARGE NUMBER: 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER:

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Please see attached letter of this date from Tom Mavrakakis.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

* * * COMMUNICATION RESULT REPORT ( JUN. 24. 2004 2:34PM ) * * *

FAX HEADER 1:
FAX HEADER 2:

TRANSMITTED/STORED : JUN. 24. 2004 2:30PM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|---|
| 1423 | MEMORY TX | | G3 :2#184#912028870689 | OK | 2/2 |
| | | | G3 :2#184#912129979880 | OK | 2/2 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-2) BUSY
E-3) NO ANSWER
E-4) NO FACSIMILE CONNECTION
E-5) MAIL SIZE OVER

301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** June 24, 2004

**TO:**

1. *NAME:* Kenneth W. Brothers, Esq. *COMPANY:* Dickstein Shapiro Morin & Oshinsky
   *CITY:* Washington, DC *FAX #:* (202) 887-0689 *PHONE #:*

2. *NAME:* Edward A. Meilman, Esq. *COMPANY:* Dickstein Shapiro Morin & Oshinsky
   *CITY:* New York, NY *FAX #:* (212) 997-9880 *PHONE #:*

3. *NAME:* Gary M. Hoffman, Esq. *COMPANY:* Dickstein Shapiro Morin & Oshinsky
   *CITY:* Washington, DC *FAX #:* (202) 887-0689 *PHONE #:*

4. *NAME:* *COMPANY:*
   *CITY:* *FAX #:* *PHONE #:*

5. *NAME:* *COMPANY:*
   *CITY:* *FAX #:* *PHONE #:*

**FROM:** *NAME:* Susan Crane for Tom Mavrakakis

*DIRECT DIAL NUMBER:* (650) 463-8124 *USER ID:* 4099

*NUMBER OF PAGES, INCLUDING COVER:* 2 *CHARGE NUMBER:* 06816.0060.000000

☒ ***ORIGINAL WILL FOLLOW VIA:***

☒ *REGULAR MAIL* ☐ *OVERNIGHT DELIVERY* ☐ *HAND DELIVERY* ☐ *OTHER:*

☐ ***ORIGINAL WILL NOT FOLLOW***

***SUPPLEMENTAL MESSAGE:***

Please see attached letter of this date from Tom Mavrakakis.

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*



525 Market Street
Suite 3600
San Francisco, CA 94105-2708
T 415.848.4900
F 415.848.4999
www.howrey.com

July 14, 2005

***BY FACSIMILE & U.S. MAIL***

Gary M. Hoffman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037

***RE: Synopsys, Inc v. Ricoh Company, Ltd.
Case No. CV 03-02289 MJJ (EMC)
Ricoh Company, Ltd. v. Aeroflex, Inc.
Case No. CV 03-04669 MJJ (EMC)***

Dear Gary:

As we agreed, I am writing to summarize the key points from our Case Management Conference with Judge Jenkins yesterday. Our understanding of the key points is:

1. There are no logic synthesis products at issue other than the Synopsys products.
2. The Synopsys products at issue are limited to those from the chart on page 28 of the Joint CMC Statement, as confirmed by my June 27, 2005 letter.
3. Ricoh agreed to limit the time frame for Design Libraries to 2000 through the present.
4. Ricoh will provide the definitions of the Design Libraries it considers to be at issue, along with document name and page citation, to Synopsys by 9 AM California time on Monday, July 18, 2005.
5. The Customer Defendants will provide declarations/stipulations related to the identified Design Libraries to Ricoh by 11 AM California time on Thursday, July 21, 2005.
6. Synopsys will provide input-related declarations/stipulations to Ricoh by 11 AM California time on Thursday, July 21, 2005.

HOWREY LLP

7. Ricoh will provide Synopsys with a schedule for Final Infringement Contentions with source code cites (for each of the claim elements, Ricoh will provide the specific functions in the source code that infringe the element either literally, or by equivalents, and the associated path and file name containing that function) by 11 AM California time on Thursday, July 21, 2005. Note that providing this information in advance of the conference call was not discussed, but Synopsys would like a chance to consider Ricoh's proposal in advance of the call, and recommends the same date and time as for the other information being provided.
8. Synopsys will provide Ricoh with the availability for depositions of Olson and Heynes re: the 271(g) motion; the 271(g) briefing is stayed until after these depositions.
9. There will be a conference call hearing at 2 PM California time on Friday, July 22, 2005 to discuss the above issues. You will initiate the call.
10. Discovery remains stayed except as outlined above.

Please confirm that this is your understanding as well.

Very truly yours,

Jaclyn C. Fink /pW

Jaclyn C. Fink

* * * COMMUNICATION RESULT REPORT ( JUL. 14. 2005 1:34PM ) * * *

TTI HOWREY SIMON ARNOLD & WHITE

TRANSMITTED/STORED JUL. 14. 2005 1:33PM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|---|
| 3423 | MEMORY TX | | #606912028870689 | OK | 3/3 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-2) BUSY
E-3) NO ANSWER
E-4) NO FACSIMILE CONNECTION

# HOWREY LLP

525 MARKET STREET
SUITE 3600
SAN FRANCISCO, CA 94105-2708
PHONE: 415.848.4900 • FAX: 415.848.4999

## FACSIMILE COVER SHEET

**DATE:** July 14, 2005

**TO:**
- **NAME:** Gary M. Hoffman, Esq.
- **COMPANY:** Dickstein Shapiro Morin & Oshinsky LLP
- **FAX NUMBER:** 202.887.0689 **PHONE NUMBER:** 202.785.9700
- **CITY:** Washington, DC

**FROM:**
- **NAME:** Jaclyn C. Fink, Esq.
- **DIRECT DIAL NUMBER:** 415.848.4916 **USER ID:** 2590

**NUMBER OF PAGES, INCLUDING COVER:** 3 **CHARGE NUMBER:** 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER:

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Please see the attached.

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

# HOWREY LLP

525 MARKET STREET
SUITE 3600
SAN FRANCISCO, CA 94105-2708
PHONE: 415.848.4900 • FAX: 415.848.4999

**FACSIMILE COVER SHEET**

**DATE:** July 14, 2005

**TO:**
NAME: Gary M. Hoffman, Esq.
COMPANY: Dickstein Shapiro Morin & Oshinsky LLP
FAX NUMBER: 202.887.0689 PHONE NUMBER: 202.785.9700
CITY: Washington, DC

**FROM:**
NAME: Jaclyn C. Fink, Esq.
DIRECT DIAL NUMBER: 415.848.4916 USER ID: 2590

NUMBER OF PAGES, INCLUDING COVER: 3 CHARGE NUMBER: 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER: ______

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Please see the attached.

FAXED
2005 JUL 14 PM 2:08

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 415.848.4900.

## Fink, Jacky

**From:** Hoffman, Gary [HoffmanG@dsmo.com]
**Sent:** Friday, July 15, 2005 11:56 AM
**To:** Corbin, Terry
**Cc:** Fink, Jacky; Allen, DeAnna
**Subject:** RE: Your fax of yesterday

Terry,

We have revised the 10 points you had listed in your letter of yesterday so as to accurately reflect the agreements that were reached and the comments that we made during the CMC on Wednesday, July 13. Also, we have added in some comments so as to provide you with additional information.

1. The "backbone" of the logic synthesis products at issue are those from Synopsys.

2. The Synopsys products at issue are those listed in the chart on page 28 of the Joint CMC Statement as confirmed by our June 27, 2005 letter.

3. Ricoh indicated that it is willing to consider limiting the time frame for certain Design Libraries to 2000 through the present after Ricoh obtains and reviews the list of all of the libraries from each of the defendants. -- An example of the design libraries referred to in this paragraph are those design libraries that Synopsys indicates are generated during synthesis (*see* Case Management Statement p. 18). These do not include the DesignWare libraries that are described in Synopsys literature as Design Libraries (*see, e.g.*, DesignWare IP Family Quick Reference Guide (RCL008947-9306 at pp. 27-29)).

4. Ricoh will provide references to the types (i.e. categories) of libraries it considers to be at issue, along with document name and page citations, to the ASIC Defendants by 9 AM California time on Monday, July 18, 2005.

5. Each of the ASIC Defendants will provide to Ricoh by 11 AM California time on Thursday, July 21, 2005 declarations/stipulations listing all of the libraries (whether from Synopsys, another party, or internally created) that have been used by such defendants and are within or related to each type of libraries.

6. Each of the ASIC Defendants will provide declarations/stipulations to Ricoh by 11 AM California time on Thursday, July 21, 2005 indicating each type of input that has been used by each such Defendant (and others acting on their behalf or to whom they subcontract out part of the logic synthesis process) and the best approximation of the percentage of sales volume related to each type of input.

7. Ricoh will provide the ASIC Defendants with a schedule for Final Infringement Contentions during the telephone conference call with the Court on July 22. It will aid Ricoh in setting a schedule

if prior to July 22 each of the ASIC Defendants separately confirms for each tool and library listed on page 28 of the Case Management Statement whether or not such defendant has used the tool since 1997.

8. By Thursday, 11 AM California time, Synopsys and the ASIC Defendants will provide Ricoh with the dates of the availability for depositions of Olson and Heynes re: the 271(g) motion; the parties will then try before the Friday conference call with the Court to agree to a schedule for briefing and a hearing on the motion. The 271(g) briefing is stayed until after these depositions. (We have proposed several possible dates to Ms. Corbin and await a response as to dates for these depositions.)

9. There will be a conference call hearing with the Court at 2 PM California time on Friday, July 22, 2005 to discuss the above issues. Ricoh will initiate the call.

10. Discovery, other than the provision and review of source codes, and completion of production of initial disclosure documents not yet produced, remains stayed except as outlined above.

Gary

Gary M. Hoffman

Dickstein Shapiro Morin & Oshinsky LLP

Tel No. (202) 828-2228

hoffmang@dsmo.com

-----Original Message-----
**From:** Corbin, Terry [mailto:CorbinT@Howrey.com]
**Sent:** Thursday, July 14, 2005 5:18 PM
**To:** Hoffman, Gary; Corbin, Terry
**Cc:** Allen, DeAnna; Fink, Jacky
**Subject:** RE: Your fax of today

Ok. We will wait for your letter. Terry

-----Original Message-----
**From:** Hoffman, Gary [mailto:HoffmanG@dsmo.com]
**Sent:** Thursday, July 14, 2005 2:04 PM
**To:** Corbin, Terry
**Cc:** Allen, DeAnna
**Subject:** Your fax of today

Terry,

I just received your fax setting forth your position of what was agreed to. While some of the items are accurate, unfortunately others are not and in fact only set out what Synopsys asked for but not what was agreed to. We will be responding to the letter, hopefully tomorrow.

Gary

-----------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

=================================================

-----------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee (s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

=================================================



525 Market Street
Suite 3600
San Francisco, CA 94105-2708
T 415.848.4900
F 415.848.4999
www.howrey.com

July 18, 2005

***BY FACSIMILE & U.S. MAIL***

Gary M. Hoffman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037

***RE: Synopsys, Inc v. Ricoh Company, Ltd.***
***Case No. CV 03-02289 MJJ (EMC)***
***Ricoh Company, Ltd. v. Aeroflex, Inc.***
***Case No. CV 03-04669 MJJ (EMC)***

Dear Gary:

We have some comments regarding your July 15, 2005 email, in which you revised our summary of the key points from the July 13, 2005 Case Management Conference. We provide your points as reference, along with our comments:

1. The "backbone" of the logic synthesis products at issue are those from Synopsys.

   Your statement that "the 'backbone' of the logic synthesis products at issue are those from Synopsys" is vague. We need clear confirmation in writing that there are no third party synthesis products at issue in this case, or we intend to take the issue up with Judge Jenkins during the July 22, 2005 conference. Please clarify.

3. Ricoh indicated that it is willing to consider limiting the time frame for certain Design Libraries to 2000 through the present after Ricoh obtains and reviews the list of all of the libraries from each of the defendants. An example of the design libraries referred to in this paragraph are those design libraries that Synopsys indicates are generated during synthesis (*see* Case Management Statement p. 18). These do not include the DesignWare libraries that are described in Synopsys literature as Design Libraries (*see, e.g.,* DesignWare IP Family Quick Reference Guide (RCL008947-9306 at pp. 27-29)).

   While we believe that Ricoh agreed to limit the time frame for the Design Libraries to 2000 through the present, and that will be the focus of the collection efforts, the Customer Defendants will not limit their collection efforts to that time frame. The

Customer Defendants will collect as much information as possible by the Thursday deadline.

6. Each of the ASIC Defendants will provide declarations/stipulations to Ricoh by 11 AM California time on Thursday, July 21, 2005 indicating each type of input that has been used by each such Defendant (and others acting on their behalf or to whom they subcontract out part of the logic synthesis process) and the best approximation of the percentage of sales volume related to each type of input. The Customer Defendants will provide declarations/stipulations related to the identified Design Libraries to Ricoh by 11 AM California time on Thursday, July 21, 2005.

   There was no agreement that the Customer Defendants would provide information from others acting on their behalf or subcontractors. In fact, the Customer Defendants do not have information about the inputs that these parties would use. Also, there was no discussion that Customer Defendants would provide an approximation of the percentage of sales volume related to each type of input; the Customer Defendants do not agree to provide this information.

7. Ricoh will provide the ASIC Defendants with a schedule for Final Infringement Contentions during the telephone conference call with the Court on July 22. It will aid Ricoh in setting a schedule if prior to July 22 each of the ASIC Defendants separately confirms for each tool and library listed on page 28 of the Case Management Statement whether or not such defendant has used the tool since 1997.

   In the interest of fairness, since we are providing Ricoh with our information by Thursday, July 21, 2005 at 11 AM California time, we request that Ricoh provide the schedule for the Final Infringement Contentions by the same time. While we reject any condition tying the provision of the Customer Defendants' tool/library information to Ricoh's disclosure of the Final Infringement Contentions, and note that there was no agreement on this topic, we will provide this information to Ricoh. Synopsys believes that the Final Infringement Contentions need to be at a level of specificity that includes code cites – i.e., for each of the claim elements, Ricoh should provide the specific functions in the source code that infringe the element either literally, or by equivalents, and the associated path and file name containing that function. This level of specificity is consistent with Magistrate Chen's directions.

10. Discovery, other than the provision and review of source codes, and completion of production of initial disclosure documents not yet produced, remains stayed except as outlined above.

    We did not agree to provide initial disclosure documents for the Matrox entities or Aeroflex Colorado Springs before the discovery stay is lifted.

HOWREY LLP

Gary M. Hoffman, Esq.
July 18, 2005
Page 3

The rest of your points are generally consistent with our understanding.

Very truly yours,

Jaclyn C. Fink

DM_US\8228309.v1

P. 1

* * * COMMUNICATION RESULT REPORT ( JUL. 18. 2005 12:37PM ) * * *

TTI HOWREY SIMON ARNOLD & WHITE

TRANSMITTED/STORED JUL. 18. 2005 12:35PM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|---|
| 3463 | MEMORY TX | | #065912028870689 | OK | 4/4 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-3) NO ANSWER
E-2) BUSY
E-4) NO FACSIMILE CONNECTION

# HOWREY LLP

525 MARKET STREET
SUITE 3600
SAN FRANCISCO, CA 94105-2708
PHONE: 415.848.4900 • FAX: 415.848.4999

## FACSIMILE COVER SHEET

**DATE:** July 18, 2005

**TO:**
NAME: Gary M. Hoffman, Esq.
COMPANY: Dickstein Shapiro Morin & Oshinsky LLP
FAX NUMBER: 202.887.0689 PHONE NUMBER: 202.785.9700
CITY: Washington, DC

**FROM:**
NAME: Jaclyn C. Fink, Esq.
DIRECT DIAL NUMBER: 415.848.4916 USER ID: 2590

NUMBER OF PAGES, INCLUDING COVER: 3 CHARGE NUMBER: 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER: 4

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Please see the attached.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.



525 MARKET STREET
SUITE 3600
SAN FRANCISCO, CA 94105-2708
PHONE: 415.848.4900 • FAX: 415.848.4999

**FACSIMILE COVER SHEET**

*DATE:* July 18, 2005

*TO:* *NAME:* Gary M. Hoffman, Esq.

*COMPANY:* Dickstein Shapiro Morin & Oshinsky LLP

*FAX NUMBER* 202.887.0689 *PHONE NUMBER:* 202.785.9700

*CITY:* Washington, DC

*FROM:* *NAME:* Jaclyn C. Fink, Esq.

*DIRECT DIAL NUMBER:* 415.848.4916 *USER ID:* 2590

*NUMBER OF PAGES, INCLUDING COVER:* 3 *CHARGE NUMBER:* 06816.0060.000000

☒ ***ORIGINAL WILL FOLLOW VIA:***

☒ *REGULAR MAIL* ☐ *OVERNIGHT DELIVERY* ☐ *HAND DELIVERY* ☐ *OTHER:* 4

☐ ***ORIGINAL WILL NOT FOLLOW***

***SUPPLEMENTAL MESSAGE:***

Please see the attached.

2005 JUL 18 PM 12: 50

FAXED

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

***IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 415.848.4900.***

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 572-2656
E-Mail Address: AllenD@dsmo.com

July 19, 2005

Jaclyn C. Fink
Howrey
525 Market Street
Suite 3600
San Francisco, CA 94105

Dear Jaclyn:

This letter replies to your July 18, 2005 letter to Gary Hoffman regarding the summary of key points from the July 13, 2005 Case Management Conference. Below are our comments to the points raised in your letter.

> 1. The term "backbone" used in Gary Hoffman's email of July 15 is the same term that was used by both parties at the Case Management Conference, and refers to the base product used in the logic synthesis process which is Synopsys' Design Compiler or other corresponding products (e.g., Physical Compiler).[1] Regarding "third party synthesis products," Ricoh has not alleged the ASIC Defendants' use of any backbone logic synthesis products from other companies that provide the basic logic synthesis function of Design Compiler in the performance of the patented process.[2] Since the ASIC Defendants refuse to tell Ricoh what, if any, other backbone logic synthesis products from other companies they have used, Ricoh cannot assess the relevance of any such additional products that the ASIC Defendants may have used. Without such information, Ricoh cannot make a representation regarding whether such unknown products may infringe any of the claims of the '432 patent; consequently no allegations or admissions are

[1] Other products are used in conjunction with the aforementioned backbone product (e.g., HDL Compiler for Verilog/VHDL Compiler and the additional accused Synthesis Libraries).

[2] However, the ASIC Defendants do use some products (e.g., certain libraries) of third parties in conjunction with the backbone logic synthesis product.

made regarding such unknown products except that they are not part of Ricoh's allegations in the present litigation.

3. It is Ricoh's position that your focus of the collection efforts should not center on only 2000 to the present, and we disagree that any date limitation as to design libraries (as the term has been used by either party) was reached during the Case Management Conference. While your July 18 letter takes issue with Ricoh's position, we understand from your letter that you will not limit identification of the libraries to the period of 2000 to the present, and you will provide the list of libraries by the Court's Thursday, July 21, 2005 deadline.

6. It is Ricoh's position that for each ASIC designed using the logic synthesis tools and libraries at issue, the ASIC Defendants are to identify to Ricoh all of the inputs the Defendants know about, including what they can reasonably find out about. Such identification is to include the actual inputs that the engineers (or users of the logic synthesis process) have used for (or on behalf of, or under a subcontract for) each Defendant. To the extent an ASIC Defendant does not know (and cannot reasonably find out) about the actual inputs used, then it is Ricoh's position that the ASIC Defendant must identify both the ASIC products for which the information on the inputs is lacking and the persons and entities who have or may have knowledge of such inputs.

Regarding the percentages related to each type of input, you raised the issue of percentages during the Case Management Conference. We agreed to consider whether we would be willing not to pursue inputs that only generate a very small percentage of each ASIC Defendants' revenue. The percentages of each ASIC Defendants' revenue associated with a given type of input is relevant to Ricoh's consideration of whether it may be willing to limit the issues with respect to the inputs.

7. During the Case Management Conference, Ricoh agreed that at the upcoming Status Hearing (set for Friday, July 22, 2005) it would provide a schedule for its infringement contentions. Until Ricoh

has the information that you are to provide, it can not commit to providing you with a date before the Status Hearing. However, if possible Ricoh will try to provide the infringement contentions schedule prior to the Friday Status Hearing.

Regarding the level of specificity to be included in Ricoh's infringement contentions, Ricoh will provide the level of specificity required by the Patent Local Rules, the Court and legal precedent. While we are unsure of exactly what your July 18, 2005 letter is requesting in this regard, we note that the applicable rules and law do not require identification of specific lines of code for each claim element.

Additionally, since Synopsys' invalidity contentions should meet at least the same level of specificity that Synopsys and the ASIC Defendants are demanding of Ricoh's invalidity contentions, please let us know if you are willing to commit to providing the level of specificity that you seem to be requesting of Ricoh.

Sincerely,

DeAnna Allen

DA/da

cc: Teresa Corbin
Gary Hoffman
Edward Meilman



# MULTIPLE FAX TRANSMISSION

DICKSTEIN
SHAPIRO
MORIN &
OSHINSKY
LLP

DATE 7/19/05 SENDER D. Allen
CLIENT # R2180.0171 SENDER # X2654

MESSAGE TO Jaclyn Fink
COMPANY Howrey
FAX NUMBER 415-848-4999
CONFIRM # 415-848 4900

MESSAGE TO Teresa Corbin
COMPANY Howrey
FAX NUMBER (415-848-4999)
CONFIRM # (415-848-4900)

MESSAGE TO
COMPANY
FAX NUMBER
CONFIRM #

MESSAGE TO
COMPANY
FAX NUMBER
CONFIRM #

MESSAGE TO
COMPANY
FAX NUMBER
CONFIRM #

PAGES (Including Cover Sheet): 4

| Sent by: | Time/Date: |
|---|---|
| | |

MESSAGE:

2005 JUL 20 AM 8:56

If your receipt of this transmission is in error, please notify this firm immediately by collect call to our Facsimile Department at 202-861-9106, and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited.

2101 L Street NW Washington, DC 20037-1526 Tel 202-785-9700 Fax 202-887-0689



525 Market Street
Suite 3600
San Francisco, CA 94105-2708
**T** 415.848.4900
**F** 415.848.4999
www.howrey.com

July 20, 2005

***BY FACSIMILE AND U.S. MAIL***

DeAnna Allen, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037

***RE: Synopsys, Inc v. Ricoh Company, Ltd., Case No. CV 03-02289 MJJ (EMC)***
***Ricoh Company, Ltd. v. Aeroflex, Inc., Case No. CV 03-04669 MJJ (EMC)***

Dear DeAnna:

I am writing in response to your July 19, 2005 letter related to the Case Management Conference summary, and the agreements made. We disagree with many of your points, and believe that you have misrepresented our communications. We will take up the outstanding issues with Judge Jenkins during our teleconference on July 22, 2005.

Very truly yours,

Jaclyn C. Fink

DM_US\8229715.v1

* * * COMMUNICATION RESULT REPORT ( JUL. 20. 2005 3:31PM ) * * *

TTI HOWREY SIMON ARNOLD & WHITE

TRANSMITTED/STORED JUL. 20. 2005 3:30PM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|---|
| 3531 | MEMORY TX | | #574912028870689 | OK | 2/2 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-3) NO ANSWER
E-2) BUSY
E-4) NO FACSIMILE CONNECTION

# HOWREY LLP

525 MARKET STREET
SUITE 3600
SAN FRANCISCO, CA 94105-2708
PHONE: 415.848.4900 • FAX: 415.848.4999

## FACSIMILE COVER SHEET

DATE: July 20, 2005

TO:
NAME: DeAnna Allen, Esq.
COMPANY: Dickstein Shapiro Morin & Oshinsky
FAX NUMBER 202.887.0689 PHONE NUMBER: 202.785.9700
CITY: Washington, DC

FROM:
NAME: Jaclyn C. Fink, Esq.
DIRECT DIAL NUMBER: 415.848.4916 USER ID: 2590

NUMBER OF PAGES, INCLUDING COVER: 2 CHARGE NUMBER: 06816.0060.000000

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER:

☐ ORIGINAL WILL NOT FOLLOW

SUPPLEMENTAL MESSAGE:

Please see the attached.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 415.848.4900.

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
Phone: 415.848.4900 • Fax: 415.848.4999

## Facsimile Cover Sheet

2005 JUL 20 PM 3:46

FAXED

| | | | | |
|---|---|---|---|---|
| DATE: | July 20, 2005 | | | |
| TO: | NAME: | DeAnna Allen, Esq. | | |
| | COMPANY: | Dickstein Shapiro Morin & Oshinsky | | |
| | FAX NUMBER | 202.887.0689 | PHONE NUMBER: | 202.785.9700 |
| | CITY: | Washington, DC | | |
| FROM: | NAME: | Jaclyn C. Fink, Esq. | | |
| | DIRECT DIAL NUMBER: | 415.848.4916 | USER ID: | 2590 |
| NUMBER OF PAGES, INCLUDING COVER: | | 2 | CHARGE NUMBER: | 06816.0060.000000 |

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER: ____________

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Please see the attached.

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

***IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 415.848.4900.***

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 828-2228
E-Mail Address: HoffmanG@dsmo.com

August 17, 2005

Via Facsimile and PDF

Teresa M. Corbin, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA 94105-2708

Re: Ricoh v. Aeroflex, et al.
Synopsys v. Ricoh

Dear Terry:

We have reviewed the Product Identification Declarations from the ASIC Defendants, as sent to us on August 15 and 16. The declarations do not comply with the directives of Judge Jenkins and are inadequate to provide meaningful disclosure. Following are examples of some of the deficiencies.

1. Failure to list every ASIC developed by each Defendant. The declarations do not identify all of the ASICs developed by each defendant. For example, a list of the current ASIC products developed by AMIS, as it appears on AMIS' website (see attached Exh. 1), shows a dramatic difference in the ASIC products listed on the website and those listed in the AMIS Declaration. The websites and other publicly available information for the other ASIC defendants likewise reflect serious deficiencies between the list of ASICs in the declarations and the ASICs identified in the declarations. The Declaration for each ASIC Defendant should identify each and every ASIC product developed by the Defendant, and identify the particular synthesis tool (by exact name, model, version, and date of design) used, whether Design Compiler or any other Synopsys product was used in any portion of the design of that ASIC.

2. Failure to identify the Design Compiler Family Products used in designing each listed product. There is no indication which version and variation (e.g., DC Expert, DC Ultra, DC Ultra Opt, DC Expert Plus, DC Professional, etc.) of Design Compiler was used for each listed ASIC product. Nor is there any indication (for each listed ASIC product) which

form of HDL Compiler (e.g., for Verilog, VHDL, etc.) was used for each listed ASIC product.

3. Failure to sufficiently identify the technology library used. The Declarations merely list generic categories (e.g., "Aeroflex libraries") for the libraries without detail sufficient to identify the actual library used. For example, we cannot determine from the Aeroflex Declaration whether one product (e.g., " JE01A") uses the same or a different library as that used by another product (e.g., "KD08A").

4. Use of the term "Representative Products" in the title of each Declaration. Although Ricoh agreed to consider narrowing the scope of discovery to representative target (technology) libraries, Ricoh never agreed to limit the scope of discovery to representative "products." To the extent that you have limited the disclosure in the Declarations to only "representative" products, please reissue them providing all of the ASIC (and other IC) products.

5. Failure to cover all target libraries listed in the parties' Stipulations to Design Libraries. The Declarations do not cover all of the technology libraries for the foundry processes that the parties listed in the Stipulations to Design Libraries provided on July 21, 2005. For example, a comparison of Aeroflex Colorado's list of products to Declaration of Brandon Coco In Support of Defendants' Stipulation to Design Libraries reveals differences between the technology libraries.

This information should have been included in the declarations and served on August 15. We demand that you immediately cure these deficiencies and reissue the Declarations by no later than August 22.

In addition, we reiterate our request that you comply with your obligation to produce the marketing and sales information for each ASIC product listed pursuant to the long outstanding discovery requests issued in this case.

Very truly yours,

Gary M. Hoffman

cc: Jaclyn C. Fink, Esq.
Kenneth W. Brothers, Esq.

EXHIBIT 1

08/17/2005 15:44 FAX 202 887 0689 U S M & O 005/008
Product Library
Page 1 of 4

About AMIS | Investor Relations | Contact Us | Technical Resources | Site Map | Search

AMIS
AMI SEMICONDUCTOR

## Technical Resources

Products | Applications | Services | News | Careers | MY AMIS

Home
Technical Resources
Product Library
Analog Capabilities
Intellectual Property
DSP Tech Papers
Design Resources
Databooks
Packaging

### Product Library

- Transceivers
- Motor Controllers
- Timers and Clocks
- Drivers
- Structured ASICs
- Process Specifications
- Modem

**Transceivers:**

| Part Number | Description | Feature Sheet | Data Sheet | App I |
|---|---|---|---|---|
| AMIS-30600 | LIN Transceiver | View | View | |
| AMIS-30660 | CAN High Speed Transceiver | View | View | |
| AMIS-30663 | CAN High Speed Transceiver | View | View | |
| AMIS-4168x | Fault Tolerant CAN Transceiver | View | View | |
| AMIS-42665 | High-Speed Low Power CAN Transceiver | View | View | |
| AMIS-42700 | Dual High-Speed CAN Transceiver | View | View | |
| AMIS-52000 | Single-Chip Transceiver | View | View | |
| | - Users Guide | | | Vie |
| | - Sniff Mode | | | Vie |
| | - Extending the AMIS-52000 Beyond the 433MHz Target | | | Vie |
| | - Quick Start Crystal Oscillator | | | Vie |
| | - Register Description | | | Vie |

http://www.amis.com/tech_resources/Product_Library.html 8/17/2005

| AMIS-52100 | Single Chip Transceiver | View | View | |
|---|---|---|---|---|
| | - Clock and Data Recovery | | | Vie |
| | - Sniff Mode | | | Vie |
| | - Data Slicing Modes | | | Vie |
| | - Users Guide | | | Vie |
| | - Extending to Frequencies Outside the 403MHz Target | | | Vie |
| | - Quick Start Crystal Oscillator | | | Vie |
| | - Register Definition and Functions | | | Vie |
| AMIS-52x00 | - Antenna Impedance | | | Vie |
| AMIS-5XX00 | I2C Multiple Read | | | Viev |
| A5191HRT | HART Modem | | View | Viev |

**Motor Controllers:**

| Part Number | Description | Feature Sheet | Data Sheet |
|---|---|---|---|
| AMIS-30621 | LIN Microstepping Motordriver | View | View |
| AMIS-30622 | I2C Microstepping Motordriver | View | View |

**Timers and Clocks:**

| Part Number | Description | Feature Sheet | Data Sheet |
|---|---|---|---|
| AMIS-70020 | Power Failure Elapsed Time Counter | View | View |
| FS6128-04 | PLL Clock Generator IC with VCXO | | View |
| FS6128-04g | PLL Clock Generator IC with VCXO | | View |
| FS6128-07 | PLL Clock Generator IC with VCXO | | View |
| FS6131-01<br>FS6131-01g | Programmable Line Lock Clock Generator IC | | View |
| FS6322-05 | Three-PLL Clock Generator IC | | View |
| FS6370-01<br>FS6370-01g | EEPROM Programmable 3-PLL Clock Generator IC | | View |
| FS6377-01 | Programmable 3-PLL Clock Generator IC | | View |

| | | | |
|---|---|---|---|
| FS6377-01g | | | |
| FS7140-01<br>FS7140-01g | Programmable PLL Clock Generator IC | | View |

**Drivers:**

| Part Number | Description | Feature Sheet | Data Sheet |
|---|---|---|---|
| AMIS-70050 | Octal High Side Driver With Protection | View | View |

**Structured ASICs:**

| Part Number | Description | Feature Sheet | Data Sheet |
|---|---|---|---|
| XPressArray | 0.18μm Hybrid Structured ASIC | View | View |
| XPressArray-HD | 0.18μm Hybrid Structured ASIC | View | View |
| XPressArray-II | 0.15μm Hybrid Structured ASIC | View | View |

**Process Specifications:**

| Part Number | Description | | Spec Sheet |
|---|---|---|---|
| C3 | Process Technology 0.3μm | | View |
| C5 | Process Technology 0.5μm | | View |
| I3T25 | Process Technology I3T25 | | View |
| I3T50 | Process Technology I3T50 | | View |
| I3T80 | Process Technology I3T80 | | View |
| I2T30 | Process Technology I2T30 | | View |
| I2T100 | Process Technology I2T100 | | View |

**Modem:**

| Part Number | Description | | Data Sheet |
|---|---|---|---|
| AMIS-30585 | S-FSK PLC Modem | | View |

08/17/2005 15:45 FAX 202 887 0689 D S M & O 008/008
Product Library
Page 4 of 4

© Copyright 2005 AMI Semiconductor. All rights reserved.

http://www.amis.com/tech_resources/Product_Library.html
8/17/2005

# MULTIPLE FAX TRANSMISSION

DICKSTEIN
SHAPIRO
MORIN &
OSHINSKY

*Legal Innovators*

| DATE: | 8/17/05 | SENDER: | Solomon Seyoum, Paralegal |
|---|---|---|---|
| CLIENT #: | R2180.0171 | SENDER #: | (202) 828-4834 |

| | | | |
|---|---|---|---|
| MESSAGE TO: | Teresa M. Corbin, Esq. | FAX NUMBER: | (415) 848-4999 |
| COMPANY: | HOWREY LLP | CONFIRM #: | (415) 848-4900 |
| MESSAGE TO: | Jaclyn C. Fink, Esq. | FAX NUMBER: | (415) 848-4999 |
| COMPANY: | HOWREY LLP | CONFIRM #: | (415) 848-4900 |
| MESSAGE TO: | | FAX NUMBER: | |
| COMPANY: | | CONFIRM #: | |
| MESSAGE TO: | | FAX NUMBER: | |
| COMPANY: | | CONFIRM #: | |

Additional recipients (if any) on following page.

| PAGES (Including Cover Sheet): 8 | SENT BY: | TIME/DATE: |
|---|---|---|

2005 AUG 17 PM 12: 49

MESSAGE:

If your receipt of this transmission is in error, please notify this firm immediately by collect call to our Facsimile Department at 202-861-9106, and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited.

2101 L Street NW Washington, DC 20037-1526 Tel 202-785-9700 Fax 202-887-0689

DSMDB.1957551.1



525 Market Street
Suite 3600
San Francisco, CA 94105-2708
T 415.848.4900
F 415.848.4999
www.howrey.com

August 19, 2005

***BY E-MAIL & U.S. MAIL***

Gary M. Hoffman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037

***RE: Synopsys, Inc v. Ricoh Company, Ltd.***
***Case No. CV 03-02289 MJJ (EMC)***
***Ricoh Company, Ltd. v. Aeroflex, Inc.***
***Case No. CV 03-04669 MJJ (EMC)***

Dear Gary:

I am writing in response to your letter of August 17, 2005, regarding the Customer Defendant product declarations. Unfortunately, your letter mischaracterizes the scope of the information we agreed to provide.

In hopes of narrowing the scope of customer discovery through a stipulation to representative products, we agreed to provide a list of the Customer Defendants' commercial products for which logic synthesis with Design Compiler was used, the type of product, and the target technology library, and that is the information we provided. Contrary to your assertions, we simply did not agree to: 1) provide a list of every ASIC developed by each Defendant, 2) identify the "Design Compiler Family Products" used, or 3) provide more detailed information related to the target technology libraries. Therefore, we will not be reissuing these declarations.

We will address the marketing and sales information during our meet and confer on Monday.

Very truly yours,

Jaclyn C. Fink

cc: Kenneth Brothers, Esq. (e-mail only)
Edward Meilman, Esq. (e-mail only)
Eric Oliver, Esq. (e-mail only)
DeAnna Allen, Esq. (e-mail only)
Michael Weinstein, Esq. (e-mail only)



525 MARKET STREET
SUITE 3600
SAN FRANCISCO, CA 94105-2708
PHONE 415.848.4900
FAX 415.848.4999
A LIMITED LIABILITY PARTNERSHIP

June 27, 2005

***BY FACSIMILE AND U.S. MAIL***

DeAnna Allen, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037

***RE: Synopsys, Inc v. Ricoh Company, Ltd., Case No. CV 03-02289 MJJ (EMC)***
***Ricoh Company, Ltd. v. Aeroflex, Inc., Case No. CV 03-04669 MJJ (EMC)***

Dear DeAnna:

I am writing to confirm that Ricoh still intends to recommence its source code review on July 11, 2005, for 3 consecutive weeks. Please let me know if that is the case as soon as possible, and no later than July 1. Please also provide us the names of the individuals who will be arriving on July 11 so that we can ensure badges are ready and waiting in the security office of Building C. Also, if you have identified future source code review dates, I would appreciate that information as well, so that Synopsys can plan accordingly and reserve the space in the SURF facility.

In order to alleviate the confusion regarding what source code has been provided, following is a list of the products for which source code and licenses have already been made available. Note that this code has already been available for your review since May 10, 2004.

To be clear, there are only two new items being loaded onto the computer, (1) an updated FlexLM license key and (2) a Physical Compiler customer education module which was available when V-2003.12 of Physical Compiler was released.

HOWREY SIMON ARNOLD & WHITE HOWREY LLP ATTORNEYS AT LAW

| **Products at issue per Ricoh**[1] | **Source provided May 2004?** | **Key Provided May 2004?** |
|---|---|---|
| Design Compiler[2] | Yes. | Yes. |
| HDL Compiler for Verilog | Yes. | Yes. |
| VHDL Compiler | Yes. | Yes. |
| Design Ware Foundation libraries | Yes.<br><br>We believe this refers to dw_foundation.sldb, see letter of July 19, 2004 (Hocker to Brothers) explaining DesignWare | Yes. |
| Presto | Yes. | Yes. |
| Physical Compiler | Yes. | No.<br><br>License key will be present starting July 11 |
| Module Compiler | Yes. | Yes—for use as MC inside Design Compiler.<br><br>No—for standalone use.<br><br>License key will be present starting July 11 for standalone use and use inside Design Compiler. |
| Design Compiler Basic Library | Yes.<br><br>We believe this is standard.sldb, see letter of July 19, 2004 (Hocker to Brothers) explaining DesignWare.. | Yes. |
| DesignWare Expert Libraries | No such product. | N/A – no such item |
| DesignWare Building Block IP | Duplicate.<br><br>This is duplicative of the standard.sldb and dw_foundation.sldb files, see letter of July 19, 2004 (Hocker to Brothers) explaining DesignWare. | Duplicate |
| target technology libraries | Yes. | N/A – not keyed |

[1] From most recently filed CMC Statement.

[2] This term includes all variations of Design Compiler, including DC Ultra, DC Ultra Opt, DC Expert, DC Expert Plus, and DC Pro.

HOWREY SIMON ARNOLD & WHITE HOWREY LLP ATTORNEYS AT LAW

Again, the source code to still other products not listed in the CMC have previously been provided. See letter of July 27, 2004 (Hocker to Allen) explaining that the source code to `common_shell_exec` was provided, this includes other products not at issue including, *inter alia*, DFT Compiler, Behavioral Compiler, and Power Compiler. (In the interests of avoiding disputes, license keys for these products will be provided on July 11; no new source code is being loaded.)

Also note that for Design Compiler the standard target technology libraries, link libraries, and symbol libraries that are provided to customers, who usually replace them with their own, are also provided, and have been previously available for your review.

Thus, aside from the additional license keys the only new item is a customer education module that will facilitate use of Physical Compiler. The customer education module is versioned 2003.06, but was current with the V-2003.12 source code provided. The customer education module includes the necessary libraries and examples to enable Ricoh to better understand how Physical Compiler operates. The documentation accompanying the customer education module is being produced separately with Bates numbers.

I look forward to receiving your confirmation shortly.

Very truly yours,

Jaclyn C. Fink

cc: Edward Meilman, Esq.

P. 1

* * * COMMUNICATION RESULT REPORT ( JUN. 27. 2005 10:47AM ) * * *

TTI HOWREY SIMON ARNOLD & WHITE

TRANSMITTED/STORED JUN. 27. 2005 10:46AM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|---|
| 3196 | MEMORY TX | | #291912028870689 | OK | 4/4 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL E-2) BUSY
E-3) NO ANSWER E-4) NO FACSIMILE CONNECTION

# HOWREY

525 MARKET STREET
SUITE 3600
SAN FRANCISCO, CA 94105-2708
PHONE: 415.848.4900 • FAX: 415.848.4999

## FACSIMILE COVER SHEET

**DATE:** June 27, 2005

**TO:**
NAME: DeAnna Allen, Esq.
COMPANY: Dickstein Shapiro Morin & Oshinsky LLP
FAX NUMBER: 202 887 0689 PHONE NUMBER: 202 785 9700
CITY: Washington, D.C.

**FROM:**
NAME: Jaclyn C. Fink, Esq.
DIRECT DIAL NUMBER: 415 848 4916 USER ID: 2590

NUMBER OF PAGES, INCLUDING COVER: 4 CHARGE NUMBER: 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER:

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

DM_US\8220890.V1

JAN. 9. 2004 2:24PM HOWREY SIMON ARNOLD NO. 7148 P. 2/15

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
Erik K. Moller (SBN 147674)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Defendants Aeroflex Inc., AMI Semiconductors, Inc., Matrox Electronics Systems Ltd., Matrox Graphics Inc., Matrox Int'l, Inc., and Matrox Tech, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC.,<br><br>Defendants. | Case No. CV 03-04669 MJJ<br><br>**DEFENDANT AMI SEMICONDUCTOR, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1-10)** |

PROPOUNDING PARTY: Plaintiff, Ricoh Company, Ltd.

RESPONDING PARTY: Defendant, AMI Semiconductor, Inc.

SET NO.: One (Nos. 1-10)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant AMI Semiconductor, Inc. ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-04669 MJJ

HOWREY SIMON ARNOLD & WHITE

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable privilege as to that information or document or any other document identified or produced by Defendant.

## GENERAL OBJECTIONS

1. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party. Without third party permission, Defendant will not provide such information unless required by the Court.

JAN. 9. 2004 2:25PM HOWREY SIMON ARNOLD NO. 7'48 P. 4/15

5. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6. Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

11. Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.

3
AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:26PM HOWREY SIMON ARNOLD NO. 7148 P. 5/15

Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

12. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

13. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

14. Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions. Defendants reserve the right to supplement these Responses as discovery progresses.

**SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS**

1. Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2. Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3. Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:26PM HOWREY SIMON ARNOLD NO. 7143 P. 6/15

5. Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

**DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES**

Interrogatory No. 1:

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
5
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:27PM HOWREY SIMON ARNOLD NO. 7143 P. 7/15

Response to Interrogatory No. 2:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

AMI employed computer-assisted logic synthesis in connection with the development of the following design projects:

- device number 11241, a project for Cidco in 1997,
- a project for Adaptive in 1999,
- a project for Protel in 2000,
- a project for ITT in 2000,
- a project for Sony in 2000,
- device number 14940, a project for Insound Medical in 2000,
- device number 11636, a project for QSI in 2000,
- 3 projects for Lucent in 2001,
- 2 projects for Cisco in 2001,
- 2 projects for Ericsson in 2001,
- device number 13722, a project for Nanogen in 2001,
- 3 projects for Nortel in 2002,
- 2 projects for EMC in 2002,

6
AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:27PM HOWREY SIMON ARNOLD NO. 7'43 P. 8/15

- device number 14257 for Lucent in 2002,
- device number 14062 for Lucent in 2002,
- 1 additional project for Lucent in 2002,
- 1 project for 1 Limited in 2002,
- device 143202-505 for AMI Semiconductor in 2002,
- device 15125 for Plasom in 2002,
- device 14919 for DSC in 2002,
- device 14167-501 for Linet Oy in 2002,
- 1 device for Agilent in 2002,
- device 13639 for Scientific Atlanta in 2003,
- device 13640 for Scientific Atlanta in 2003,
- 1 device for Ericsson in 2003,
- 1 device for TRW in 2003,
- 1 device for Plasmon in 2003,
- device 15063 for AutoXray in 2003,
- device 15028-510 for AMI Semiconductor in 2003,
- device 15124 for Dexcom in 2003,
- device 14956 for De Ameretek in 2003,
- device 14088 for Sarif in 2003,
- device 15152-501 for Valeo in 2003,
- 1 device for Medisense in 2003, and
- device 15148 for Matshushita in 2003.

Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

7

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:27PM HOWREY SIMON ARNOLD NO. 7'48 P. 9/15

design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Response to Interrogatory No. 4:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

8

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO
RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:23PM HOWREY SIMON ARNOLD NO. 7143 P. 10/15

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

Response to Interrogatory No. 5:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

9

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:28PM HOWREY SIMON ARNOLD NO. 7148 P. 11/15

Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.

Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id. See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents

10

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:29PM HOWREY SIMON ARNOLD NO. 7148 P. 12/15

supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.

Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant incorporates by reference its response to Interrogatory No. 2.

Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

11
AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:29PM HOWREY SIMON ARNOLD NO. 7148 P. 13/15

Response to Interrogatory No. 9:

Defendant incorporates by reference its General Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1,

12
AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:30PM HOWREY SIMON ARNOLD NO. 7143 P. 14/15

1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses included laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent.

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.

Dated: January 9, 2003

HOWREY SIMON ARNOLD & WHITE, LLP

By: [signature]

Erik K. Moller
Attorneys for Defendants Aeroflex Inc., AMI Semiconductors, Inc., Matrox Electronics Systems Ltd., Matrox Graphics Inc., Matrox Int'l, Inc., and Matrox Tech, Inc.

13

AMI SEMICONDUCTOR, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss.:
COUNTY OF SAN MATEO )

I am employed in the County of San Mateo, State of California. I am over the age of 18 and not a party to the within action. My business address is 301 Ravenswood Avenue, Menlo Park, California 94025.

On January 9, 2004, I served on the interested parties in said action the within:

**DEFENDANT AMI SEMICONDUCTOR, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1-10)**

by placing an original thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at Meno Park, California.

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10026-2714

Facsimile No.: 212/997-9880

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Facsimile No.: 202/887-0689

Jeffrey B. Demain
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108

Facsimile No.: 415/362-8064

☒ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☒ (FACSIMILE) I caused the foregoing document to be served by facsimile transmission to each interested party at the facsimile machine telephone number shown as stated above.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on January 9, 2004, at Menlo Park, California.

Gayle L. Jacob
(Type or print name)

(Signature)

301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

---

**DATE:** January 9, 2004

**TO:**

1. NAME: Edward A. Meilman COMPANY: Dickstein Shapiro, et al.
   CITY: New York, NY FAX #: (212) 997-9880 PHONE #: (212) 835-1400

2. NAME: Gary M. Hoffman COMPANY: Dickstein Shapiro, et al.
   CITY: Washington, DC FAX #: (202) 887-0689 PHONE #: (202) 785-9700

3. NAME: Jeffrey Demain COMPANY: Altshuler, Berzon, Nussbaum, et al.
   CITY: San Francisco FAX #: (415) 362-8064 PHONE #: (415) 421-7151

4. NAME: ______ COMPANY: ______
   CITY: ______ FAX #: ______ PHONE #: ______

5. NAME: ______ COMPANY: ______
   CITY: ______ FAX #: ______ PHONE #: ______

**FROM:** NAME: Erik Moller

DIRECT DIAL NUMBER: (650) 463-8175 USER ID: 1680

NUMBER OF PAGES, <u>INCLUDING</u> COVER: 14 CHARGE NUMBER: 06816.0060.000000

☒ ***ORIGINAL WILL FOLLOW VIA:***

☒ *REGULAR MAIL* ☐ *OVERNIGHT DELIVERY* ☐ *HAND DELIVERY* ☐ *OTHER:* ______

☐ ***ORIGINAL WILL NOT FOLLOW***

**SUPPLEMENTAL MESSAGE:**

AMI's Supplemental Responses to Plaintiff's First Set of Interrogatories to All Defendants (Nos. 1-10)

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

JAN. 9. 2004 2:54PM HOWREY SIMON ARNOLD NO. 7150 P. 2/14

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
Erik K. Moller (SBN 147674)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Defendants Aeroflex Inc., AMI Semiconductors, Inc., Matrox Electronics Systems Ltd., Matrox Graphics Inc., Matrox Int'l, Inc., and Matrox Tech, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., Plaintiff, v. AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC., Defendants. | Case No. CV 03-04669 MJJ<br>**DEFENDANT AEROFLEX INCORPORATED'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1-10)** |

PROPOUNDING PARTY: Plaintiff, Ricoh Company, Ltd.

RESPONDING PARTY: Defendant, Aeroflex Incorporated

SET NO.: One (Nos. 1-10)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Aeroflex Incorporated ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-04669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:55PM HOWREY SIMON ARNOLD NO. 7'50 P. 3/14

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable privilege as to that information or document or any other document identified or produced by Defendant.

## GENERAL OBJECTIONS

1. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party. Without third party permission, Defendant will not provide such information unless required by the Court.

2

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:55PM HOWREY SIMON ARNOLD NO. 7150 P. 4/14

5. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6. Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

11. Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

3

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:56PM HOWREY SIMON ARNOLD NO. 7150 P. 5/14

Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

12. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

13. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

14. Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions. Defendants reserve the right to supplement these Responses as discovery progresses.

**SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS**

1. Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2. Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3. Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:56PM HOWREY SIMON ARNOLD NO. 7150 P. 6/14

5. Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

**DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES**

Interrogatory No. 1:

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
5
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:57PM HOWREY SIMON ARNOLD NO. 7150 P. 7/14

Response to Interrogatory No. 2:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Aeroflex employed computer-assisted logic synthesis in connection with the development of the following design projects:

- device YA01 for Rainbow Technologies, Inc. in 2000,
- device YA02 for Symbol Technologies, Inc. in 2000,
- device YA04 for Sandia National Laboratory in 2001,
- device JW01 for Phillips in 1999,
- device UTCAM in 1997,
- device JA01 for in 1998,
- device JD02A in 1998, and
- device JD05A in 1998.

Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
6
HOWREY SIMON ARNOLD & WHITE

design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Response to Interrogatory No. 4:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

HOWREY
SIMON
ARNOLD &
WHITE

JAN. 9. 2004 2:58PM HOWREY SIMON ARNOLD NO. 7150 P. 9/14

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

Response to Interrogatory No. 5:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

8
AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:58PM HOWREY SIMON ARNOLD NO. 7150 P. 10/14

Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.

Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id. See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents

9

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:59PM HOWREY SIMON ARNOLD NO. 7'50 P. 11/14

supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.

Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant incorporates by reference its response to Interrogatory No. 2.

Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

10

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:59PM HOWREY SIMON ARNOLD NO. 7150 P. 12/14

Response to Interrogatory No. 9:

Defendant incorporates by reference its General Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1,

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

11

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 3:00PM HOWREY SIMON ARNOLD NO. 7156 P. 13/14

1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses included laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent.

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.

Dated: January 9, 2003

HOWREY SIMON ARNOLD & WHITE, LLP

By: [signature]

Erik K. Moller
Attorneys for Defendants Aeroflex Inc., AMI Semiconductors, Inc., Matrox Electronics Systems Ltd., Matrox Graphics Inc., Matrox Int'l, Inc., and Matrox Tech, Inc.

12

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 3:00PM HOWREY SIMON ARNOLD NO. 7150 P. 14/14

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss.:
COUNTY OF SAN MATEO )

I am employed in the County of San Mateo, State of California. I am over the age of 18 and not a party to the within action. My business address is 301 Ravenswood Avenue, Menlo Park, California 94025.

On January 9, 2004, I served on the interested parties in said action the within:

**DEFENDANT AEROFLEX INCORPORATED'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1-10)**

by placing an original thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at Meno Park, California.

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10026-2714

Facsimile No.: 212/997-9880

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Facsimile No.: 202/887-0689

Jeffrey B. Demain
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108

Facsimile No.: 415/362-8064

[X] (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[X] (FACSIMILE) I caused the foregoing document to be served by facsimile transmission to each interested party at the facsimile machine telephone number shown as stated above.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on January 9, 2004, at Menlo Park, California.

Gayle L. Jacob
(Type or print name)

(Signature)

HOWREY SIMON ARNOLD & WHITE

AEROFLEX INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

-13-

301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** January 9, 2004

**TO:**

| | | | | | |
|---|---|---|---|---|---|
| 1. NAME: | Edward A. Meilman | | | COMPANY: | Dickstein Shapiro, et al. |
| CITY: | New York, NY | FAX #: | (212) 997-9880 | PHONE #: | (212) 835-1400 |
| 2. NAME: | Gary M. Hoffman | | | COMPANY: | Dickstein Shapiro, et al. |
| CITY: | Washington, DC | FAX #: | (202) 887-0689 | PHONE #: | (202) 785-9700 |
| 3. NAME: | Jeffrey Demain | | | COMPANY: | Altshuler, Berzon, Nussbaum, et al. |
| CITY: | San Francisco | FAX #: | (415) 362-8064 | PHONE #: | (415) 421-7151 |
| 4. NAME: | | | | COMPANY: | |
| CITY: | | FAX #: | | PHONE #: | |
| 5. NAME: | | | | COMPANY: | |
| CITY: | | FAX #: | | PHONE #: | |

**FROM:** NAME: Erik Moller

DIRECT DIAL NUMBER: (650) 463-8175 USER ID: 1680

NUMBER OF PAGES, INCLUDING COVER: 14 CHARGE NUMBER: 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER:

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Aeroflex's Supplemental Responses to Plaintiff's First Set of Interrogatories to All Defendants (Nos. 1-10)

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
Erik K. Moller (SBN 147674)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Defendants Aeroflex Inc., AMI Semiconductors, Inc., Matrox Electronics Systems Ltd., Matrox Graphics Inc., Matrox Int'l, Inc., and Matrox Tech, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC.,<br><br>Defendants. | Case No. CV 03-04669 MJJ<br><br>**DEFENDANT MATROX TECH, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1-10)** |

PROPOUNDING PARTY: Plaintiff, Ricoh Company, Ltd.

RESPONDING PARTY: Defendant, Matrox Tech, Inc.

SET NO.: One (Nos. 1-10)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Matrox Tech, Inc. ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

JAN. 9. 2004 2:47PM HOWREY SIMON ARNOLD NO. 7149 P. 3/14

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable privilege as to that information or document or any other document identified or produced by Defendant.

## GENERAL OBJECTIONS

1. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party. Without third party permission, Defendant will not provide such information unless required by the Court.

2
MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:47PM HOWREY SIMON ARNOLD NO. 7149 P. 4/14

5. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6. Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

11. Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
3
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:48PM HOWREY SIMON ARNOLD NO. 7149 P. 5/14

Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

12. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

13. Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

14. Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions. Defendants reserve the right to supplement these Responses as discovery progresses.

**SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS**

1. Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2. Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3. Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:49PM HOWREY SIMON ARNOLD NO. 7149 P. 6/14

5. Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

**DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES**

Interrogatory No. 1:

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

5
MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:49PM HOWREY SIMON ARNOLD NO. 7149 P. 7/14

Response to Interrogatory No. 2:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
6
HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:50PM HOWREY SIMON ARNOLD NO. 7149 P. 8/14

Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Response to Interrogatory No. 4:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method

7
MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ
HOWREY SIMON ARNOLD & WHITE

for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

Response to Interrogatory No. 5:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged documents relating to the computer-assisted logic synthesis operations performed by Defendant for those ASICs for which the Defendants' design processes include a computer-assisted logic synthesis step that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.

JAN. 9. 2004 2:51PM HOWREY SIMON ARNOLD NO. 7149 P. 10/14

Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id. See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

9

HOWREY SIMON ARNOLD & WHITE

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

JAN. 9. 2004 2:51PM HOWREY SIMON ARNOLD NO. 7149 P. 11/14

James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.

Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant incorporates by reference its response to Interrogatory No. 2.

Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Response to Interrogatory No. 9:

Defendant incorporates by reference its General Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

10

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:52PM HOWREY SIMON ARNOLD NO. 7149 P. 12/14

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1, 1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses included laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent.

11

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:52PM HOWREY SIMON ARNOLD NO. 7149 P. 13/14

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.

Dated: January 9, 2003

HOWREY SIMON ARNOLD & WHITE, LLP

By: [signature]

Erik K. Moller
Attorneys for Defendants Aeroflex Inc., AMI Semiconductors, Inc., Matrox Electronics Systems Ltd., Matrox Graphics Inc., Matrox Int'l, Inc., and Matrox Tech, Inc.

12

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES
Case No. CV 03-004669 MJJ

HOWREY SIMON ARNOLD & WHITE

JAN. 9. 2004 2:52PM HOWREY SIMON ARNOLD NO. 7149 P. 14/14

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss.:
COUNTY OF SAN MATEO )

I am employed in the County of San Mateo, State of California. I am over the age of 18 and not a party to the within action. My business address is 301 Ravenswood Avenue, Menlo Park, California 94025.

On January 9, 2004, I served on the interested parties in said action the within:

**DEFENDANT MATROX TECH, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1-10)**

by placing an original thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at Meno Park, California.

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10026-2714

Facsimile No.: 212/997-9880

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Facsimile No.: 202/887-0689

Jeffrey B. Demain
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108

Facsimile No.: 415/362-8064

[X] (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[X] (FACSIMILE) I caused the foregoing document to be served by facsimile transmission to each interested party at the facsimile machine telephone number shown as stated above.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on January 9, 2004, at Menlo Park, California.

Gayle L. Jacob
(Type or print name)

(Signature)

HOWREY SIMON ARNOLD & WHITE

MATROX TECH, INC.'S SUPP. RESPONSES TO RICOH'S FIRST SET OF INTERROGATORIES -13-
Case No. CV 03-004669 MJJ



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

# FACSIMILE COVER SHEET

**DATE:** January 9, 2004

**TO:**

1. NAME: Edward A. Meilman COMPANY: Dickstein Shapiro, et al.
   CITY: New York, NY FAX #: (212) 997-9880 PHONE #: (212) 835-1400
2. NAME: Gary M. Hoffman COMPANY: Dickstein Shapiro, et al.
   CITY: Washington, DC FAX #: (202) 887-0689 PHONE #: (202) 785-9700
3. NAME: Jeffrey Demain COMPANY: Altshuler, Berzon, Nussbaum, et al.
   CITY: San Francisco FAX #: (415) 362-8064 PHONE #: (415) 421-7151
4. NAME: COMPANY:
   CITY: FAX #: PHONE #:
5. NAME: COMPANY:
   CITY: FAX #: PHONE #:

**FROM:** NAME: Erik Moller

DIRECT DIAL NUMBER: (650) 463-8175 USER ID: 1680

NUMBER OF PAGES, INCLUDING COVER: 14 CHARGE NUMBER: 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER:

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Matrox Tech, Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories to All Defendants (Nos. 1-10)

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

April 29, 2004

**BY FACSIMILE AND U.S. MAIL**
**650-463-8400**

Katharine L. Altemus, Esq.
Howrey Simon Arnold & White
301 Ravenswood Avenue
Menlo Park, Ca 94025-3434

Re: Ricoh Company, Ltd. v. Aeroflex Inc., et al.
Case No. CV 03-04669 MJJ (EMC)
Our Ref.: R2180.0171

Dear Ms. Altemus:

We have received the objections dated April 28, 2004 to Ricoh's deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(6) to Matrox Tech, Matrox Graphics, Matrox International and Matrox Electronic Systems. The Federal Rules do not provide for any objection to such a notice and it is improper to attempt to limit any deposition taken pursuant to Rule 30(b)(6) in the absence of a protective order issued by the Court. In light of Judge Jenkins direction, however, we will defer deposition topics 18-23 relating to sales and marketing until a later time. The Notices, however, are not being withdrawn.

The attempt to limit the deposition topics to areas in which the process includes use of Synopsys Design Compiler is improper and we will not agree to any such limitation. We call your attention to the fact that the complaint in this case is not limited to use of Synopsys Design Compiler.

We also call your attention to the fact that the definitions of ASIC Product, ASIC Method and ASIC Design Systems have been limited, by agreement, to products and procedures which involve computer aided design employing logic synthesis. None of the Matrox companies has ever unequivocally represented that it has not used any computer assisted design involving logic synthesis from an entity other than Synopsys. Until it does so, there is no reason to even consider limiting deposition topics 2-6, 9 and 11-17 to Synopsys products. Even as to the Synopsys products, it is improper to limit the deposition topics to Design Compiler, especially in light of the statement in Specific Objection 6 that each of the Matrox defendants considers other Synopsys software to have been accused of infringement.

Given the fact that the Complaint alleges infringement under 35 U.S.C. § 271(a) and § 271(g), the attempt to limit the depositions to activity in the United States is also improper. The depositions will not be so limited.

In addition, while the substance of documents and communications may be subject the attorney-client-privilege at work product doctrine, the identity of those documents and communications is not. Given the fact that none of the Matrox defendants has provided a sufficient disclosure of the identity of such documents and communications as required under the Federal Rule of Civil Procedure, the taking of a deposition to identify the documents and communications in sufficient detail to show the claim of privilege is valid constitutes a proper deposition topic. Accordingly, the companies must produce a witness on deposition topics 31-34.

Ricoh's deposition notices were issued a very long time ago. Promptly scheduling the corporate witnesses for all of the defendants, not just Aeroflex and AMI, for all topics (other than 18-23), is required. Please provide proposed dates for all of those depositions not currently scheduled.

Very truly yours,

Edward A. Meilman

EAM/hc

cc: Gary Hoffman, Esq.
Kenneth Brothers, Esq.
Jeffrey Demain, Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICOH COMPANY, LTD., Plaintiff, v. AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC. Defendants. | ) | C.A. No. 03-103-GMS |

**PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS**

**PLEASE TAKE NOTICE** that plaintiff demands, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that the defendants produce documents pursuant to the following document requests on the 30th day after service of these requests.

**DEFINITIONS AND INSTRUCTIONS**

(1) **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2) **Document.** The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data or data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

(3) **Identify (with respect to persons).** When referring to a person, "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In any response where more than one individual is identified, identify which three individuals have the most knowledge or information concerning the subject and among those three individuals, identify the individual having the most knowledge and the individual having the least knowledge concerning the subject.

(4) **Identify (with respect to documents).** When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5) **Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, partners, corporate parent, subsidiaries or affiliates. Where a discovery request does not request a response limited to a specific named defendant, the request shall be construed as seeking knowledge and information concerning all of the defendants named in the caption of this discovery request.

(6) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) **All/Each.** The terms "all" and "each" shall be construed as all and each.

(9) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

(10) **Number.** The use of the singular form of any word includes the plural and vice versa.

(11) **Privilege.** Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

(a) Identify the nature of the privilege (including but not limited to work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(b) Provide the following information:

(1) For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and (v) identify any other person to whom the document was displayed or to whom any of its contents were revealed;

(2) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; (iii) the general subject matter of the communication and (iv) identify any other person to whom any aspect of the communication was revealed.

(12) **Destroyed Documents.** Where a document has been destroyed or alleged to have been destroyed, state the date thereof and the reason for its destruction, identify each person having knowledge of its destruction, identify each person responsible for its destruction, provide the information set forth in paragraph (11)(b)(1) above and describe the content of the document to the extent possible.

(13) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

(14) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise denoted in defendant's communications as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

(15) **ASIC PRODUCT**. The term "ASIC Product" refers to any integrated circuit product or item that is designed for a specific application, and/or a product or item that includes

such an integrated circuit product that is manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(16) **ASIC Method.**  As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes which have been used by, on behalf of, or otherwise at the direction of defendant on or after May 1, 1990 (unless another date is specifically identified) in the computer-aided design of any ASIC Product (as defined above) designed, developed, manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(17) **Limitations.**  Each discovery request shall be construed independently and no discovery request shall limit the scope of any other discovery request.

(18) **Supplementation.**  Each defendant is reminded of the continuing duty to supplement discovery responses set forth in rule 26(e) of the Federal Rules of Civil Procedure.

(19) **Design.**  The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

**DOCUMENT REQUESTS**

Document Request No. 1: Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Document Request No. 2: With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Document Request No. 3: Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

Document Request No. 4: Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Document Request No. 5: Produce all documents concerning the conception, design, development, manufacture or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

Document Request No. 6: Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Document Request No. 7: Produce all patents and patent applications, whether U.S. or foreign, and whether issued, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Document Request No. 8: Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Document Request No. 9: Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

Document Request No. 10: Produce all documents concerning Synopsys Inc.

Document Request No. 11: Produce all documents concerning Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by defendant.

Document Request No. 12: Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

Document Request No. 13: Produce all documents concerning Cadence Design Systems, Inc.

Document Request No. 14: Produce all documents concerning the annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each of defendant's ASIC Products.

Document Request No. 15: Produce all documents concerning the annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by defendant of defendant's ASIC Products, including how defendant defines each item of cost deducted from gross revenue to calculate gross and net profits.

Document Request No. 16: Produce all documents concerning the manufacture of each ASIC Product designed using an ASIC Method.

Document Request No. 17: Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Document Request No. 18: Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

Document Request No. 19: Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

Document Request No. 20: Produce all documents concerning the validity of the patent-in-suit.

Document Request No. 21: Produce all documents concerning the enforceability of the patent-in-suit.

Document Request No. 22: Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

Document Request No. 23: Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

Document Request No. 24: Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

Document Request No. 25: Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Document Request No. 26:  Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Document Request No. 27:  Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

Document Request No. 28:  Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the Untied States or elsewhere.

Document Request No. 29:  Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

Document Request No. 30:  Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

Document Request No. 31:  Produce all documents concerning any infringement of the patent-in-suit by anyone.

Document Request No. 32:  Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

Document Request No. 33: Produce all documents concerning all proprietary or third party hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in the practice of an ASIC Method, including technical reference manuals, user manuals, installation manuals, training manuals, tutorials, overviews, summaries, advertising material, contracts, proposals, licenses, purchase agreements, indemnification agreements, and communications with third parties.

Document Request No. 34: Produce all documents concerning the patent-in-suit.

Document Request No. 35: Produce all documents relating to any indemnification or other hold-harmless agreement given to you (or by you) with respect to the patent-in-suit.

Document Request No. 36: Produce all documents identified or relied upon in response to Plaintiff's First Set of Interrogatories.

Document Request No. 37: Produce all documents relied upon or referred to in preparing the response to the Complaint.

Document Request No. 38: Produce all documents concerning defendant's affirmative defense of laches.

Document Request No. 39: Produce all documents referring to plaintiff.

Document Request No. 40: Produce all documents relating to your first knowledge of the patent-in-suit.

Document Request No. 41: Produce all documents relating to communications, whether to or from suppliers or customers or any other person, that relate to the subject matter of the patent-in-suit.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
1177 Avenue of the America
New York, New York 10036
(212) 896-5471

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICOH COMPANY, LTD.,

Plaintiff,

v.

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC.

Defendants.

C.A. No. 03-103-GMS

**NOTICE OF SERVICE**

PLEASE TAKE NOTICE that true and correct copies of Plaintiff's First Set of Document Requests to all Defendants were served on May 30, 2003 on counsel of record in the manner indicated:

**VIA HAND DELIVERY**
Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1220 Market Street
P. O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
1177 Avenue of the America
New York, New York 10036
(212) 896-5471

Dated: May 30, 2003

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of May 2003, true and correct copies of the foregoing were caused to be served on counsel of record at the following addresses as indicated:

**BY HAND DELIVERY:**
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz, LLP
1220 Market Street
P.O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Steven J. Fineman (#4025)

Gary M. Hoffman, pro hac vice
Kenneth W. Brothers, pro hac vice
Eric Oliver, pro hac vice
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, NW
Washington, DC 20037-1526
Phone: (202) 785-9700
Fax: (202) 887-0689

Edward A. Meilman, pro hac vice
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Phone: (212) 835-1400
Fax: (212) 992-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Attorneys for the Defendant Ricoh Company, Ltd.

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SYNOPSYS, INC., Plaintiff, vs. RICOH COMPANY, LTD, Defendant. | Case No. C03-02289 MJJ (Judge Jenkins) RICOH'S FIRST SET OF DOCUMENT REQUESTS TO SYNOPSYS |

**Please take notice** that the Ricoh Company, Ltd. demands, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that Synopsys produce documents pursuant to the following document requests on the 30th day after service of these requests.

**DEFINITIONS AND INSTRUCTIONS**

a) **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

b) **Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data or data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

c) **Identify** (with respect to persons). When referring to a person, "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In any response where more than one individual is identified, identify which three individuals have the most knowledge or information concerning the subject and among those three individuals, identify the individual having the most knowledge and the individual having the least knowledge concerning the subject.

d) **Identify** (with respect to documents). When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

e) **Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

f) **Ricoh.** The term "Ricoh" as well as a Ricoh Company, Ltd.'s full name or abbreviated name or a pronoun referring to Ricoh Company, Ltd. means Ricoh, the defendant in the instant

action, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

g) **Synopsys.** The term "Synopsys" as well as a Synopsys, Inc.'s full name or abbreviated name or a pronoun referring to Synopsys, Inc. means Synopsys, the plaintiff in the instant action, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

h) **Aeroflex et al.** The term "Aeroflex et al" means any of the defendants named in a related action (i.e., Ricoh v. Aeroflex et al, Case No. C03-4669-PVT, N.D. California) including Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

i) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

j) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

k) **All/Each.** The terms "all" and "each" shall be construed as all and each.

l) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of discovery all that might otherwise be construed to be outside of its scope.

m) **Number.** The use of the singular form of any word includes the plural and vice versa.

n) **Privilege.** Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

1.  Identify the nature of the privilege (including but not limited to work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

2.  Provide the following information:

    a.  For documents:

    (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and (v) identify any other person to whom the document was displayed or to whom any of its contents were revealed;

    b.  For oral communications:

    (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; (iii) the general subject matter of the communication; and (iv) identify any other person to whom any aspect of the communication was revealed.

    o)  **Destroyed Documents**. Where a document has been destroyed or alleged to have been destroyed, state the date thereof and the reason for its destruction, identify each person having

knowledge of its destruction, identify each person responsible for its destruction, provide the information set forth in paragraph (11)(b)(1) above and describe the content of the document to the extent possible.

p) **Sale/Sold/Offered for Sale**. As used herein, "sale," "sold" and "offered for sale" shall include "license," "licensed" and "offered for license."

q) **'432 Patent.** As used herein, "'432 patent" refers to United States Letters Patent Number 4,922,432.

r) **'016 Patent.** As used herein, "'016 patent" refers to United States Letters Patent Number 5,197,016.

s) **Patents-in-suit.** As used herein, "patents-in-suit" refers to United States Letters Patent Numbers 4,922,432 and 5,197,016.

t) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise known by Synopsys as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

u) **ASIC Product**. The term "ASIC Product" refers to any ASIC or integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured by a computer aided design process including logic synthesis.

v) **ASIC Design System.** As used herein, "ASIC Design System" refers to any and all software, hardware, database library or other components making up or otherwise contributing to systems, modules, tools or products which have been sold, offered for sale, or distributed, provided, or made available by, or on behalf of, or otherwise at the direction of Synopsys for use in any part of a computer-aided design of any ASIC Product including logic synthesis (as defined

above). ASIC Design Systems include but are not limited to Synopsys software, hardware, database libraries or other components known as Design Compiler, Knowledge Consultant, Behavioral Compiler, Module Compiler, DesignWare Library/DesignWare Foundation Library, CoCentric System C Compiler, HDL Compiler Family, VHDL Compiler, HDL Compiler for Verilog, and DC Shell.

w) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes that use ASIC Design Systems in the computer-aided design including logic synthesis of any ASIC Product (as defined above).

x) **Limitations.** Each listed subject area shall be construed independently and no listed subject area shall limit the scope of any other listed subject area.

y) **Design.** The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

z) **Supplementation.** Synopsys is reminded of the continuing duty to supplement discovery responses set forth in rule 26(e) of the Federal Rules of Civil Procedure.

aa) **Time period** Unless otherwise specified, the time period for these topics is from May 1, 1990 to the present.

**Document Requests**

Document Request No. 1: Produce all documents concerning Synopsys' corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 2: Produce all documents concerning Synopsys' policies regarding the retention or destruction of documents on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 3: Produce all patents and patent applications, whether U.S. or foreign, and whether issued, pending or abandoned, which at any time were owned or controlled by Synopsys and concern an ASIC Method used by, on behalf of, or otherwise under the direction of Synopsys, without regard to any time period.

Document Request No. 4: Produce all documents relating to Synopsys' first knowledge of the patents-in-suit, including, but not limited to, the identification of each individual (including their full name, address, telephone number, job title and description, and employer) who was aware of the patents-in-suit prior to January 20, 2003.

Document Request No. 5: Produce all documents relied upon or referred to in preparing the Complaint without regard to time.

Document Request No. 6: Produce all documents concerning conversations, communications, correspondence, discussions or meetings involving Synopsys concerning the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 7: Produce all documents concerning communications between Synopsys and Aeroflex et al concerning the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 8: Produce all documents concerning communications between Synopsys and any other person or entity, other than Aeroflex et al, concerning the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 9: Produce all documents concerning all materials presented to the Board of Directors of Synopsys and all agendas or notes of Board meetings which refer to, mention or discuss the patents-in-suit or any possible infringement thereof on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 10: Produce all documents concerning all materials presented to any of Synopsys' personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patents-in-suit or any possible infringement thereof on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 11: Produce all documents concerning any analysis by Synopsys or any person concerning the possibility of infringement of the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 12: Produce all documents concerning any analysis by Synopsys or any person concerning the validity or invalidity of the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 13: Produce all documents concerning any analysis by Synopsys or any person concerning the enforceability of the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 14: Produce all documents concerning any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and Aeroflex et al including, but not limited to, any sales or other financial transactions on or after January 1, 1997.

Document Request No. 15: Produce all documents concerning any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to any person, including, but not limited to Aeroflex et al, including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue on or after January 1, 1997.

Document Request No. 16: Produce all documents concerning any and all products, including, but not limited to any software, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided by Synopsys, to Aeroflex et al on or after January 1, 1997.

Document Request No. 17: Produce all documents concerning the identity of the person or persons that participated in the design of any and all of Synopsys':

1. ASIC Design Systems,
2. Socrates system,
3. Behavioral Compiler,
4. CoCentric System C Compiler,
5. Module Compiler,
6. cell libraries (e.g., DesignWare Library and DesignWare Foundation Libraries),
7. Design Compiler,
8. hardware cell selection components, software and processes used by Design Compiler, and
9. ASIC Design System user interface, including (without limitation) the components, software and processes used to interface between the user (using such input as HDL, VHDL, Verilog, or any other form) and ASIC Design Systems.

Document Request No. 18: Produce all documents concerning the design, capabilities, features, functions, operation, and use of any and all of Synopsys':

a. ASIC Design Systems,
b. Socrates system,
c. Behavioral Compiler,
d. CoCentric System C Compiler,
e. Module Compiler,
f. cell libraries (e.g., DesignWare Library and DesignWare Foundation Libraries),
g. Design Compiler,
h. hardware cell selection components, software and processes used by Design Compiler, and
i. ASIC Design System user interface, including (without limitation) the components, software and processes used to interface between the user (using such input as HDL, VHDL, Verilog, or any other form) and ASIC Design Systems.

Document Request No. 19: Produce all documents concerning the identity of the person or persons that participated in the programming, or implementation of any and all of Synopsys':

a. ASIC Design Systems,
b. Socrates system,
c. Behavioral Compiler,
d. CoCentric System C Compiler,
e. Module Compiler,
f. cell libraries (e.g., DesignWare Library and DesignWare Foundation Libraries),
g. Design Compiler,
h. hardware cell selection components, software and processes used by Design Compiler, and
i. ASIC Design System user interface, including (without limitation) the components, software and processes used to interface between the user (using such input as HDL, VHDL, Verilog, or any other form) and ASIC Design Systems.

Document Request No. 20: Produce all documents concerning the programming, or implementation of any and all of Synopsys':

a. ASIC Design Systems,
b. Socrates system,
c. Behavioral Compiler,
d. CoCentric System C Compiler,
e. Module Compiler,
f. cell libraries (e.g., DesignWare Library and DesignWare Foundation Libraries),
g. Design Compiler,
h. hardware cell selection components, software and processes used by Design Compiler, and
i. ASIC Design System user interface, including (without limitation) the components, software and processes used to interface between the user (using such input as HDL, VHDL, Verilog, or any other form) and ASIC Design Systems.

Document Request No. 21: Produce all documents that concern the identity of the person or persons that wrote, or participated in the writing of manuals, user guides, technical papers, or training materials, describing the use of any and all of Synopsys':

a. ASIC Design Systems,
b. Socrates system,
c. Behavioral Compiler,
d. CoCentric System C Compiler,
e. Module Compiler,
f. cell libraries (e.g., DesignWare Library and DesignWare Foundation Libraries),
g. Design Compiler,
h. hardware cell selection components, software and processes used by Design Compiler, and
i. ASIC Design System user interface, including (without limitation) the components, software and processes used to interface between the user (using such input as HDL, VHDL, Verilog, or any other form) and ASIC Design Systems.

Document Request No. 22: Produce all manuals, user guides, technical papers, or training materials describing the use of any and all of Synopsys':

a. ASIC Design Systems,
b. Socrates system,
c. Behavioral Compiler,
d. CoCentric System C Compiler,
e. Module Compiler,
f. cell libraries (e.g., DesignWare Library and DesignWare Foundation Libraries),
g. Design Compiler,
h. hardware cell selection components, software and processes used by Design Compiler, and
i. ASIC Design System user interface, including (without limitation) the components, software and processes used to interface between the user (using such input as HDL, VHDL, Verilog, or any other form) and ASIC Design Systems.

Document Request No. 23: Produce all documents concerning the capabilities, features, functions, operation, and use of the output of any and all of Synopsys' ASIC Design Systems, including but not limited to the netlist output in an ASIC Method.

Document Request No. 24: Produce all documents concerning the identification of each individual of Synopsys (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip

Corporation or Knowledge Based Silicon Corporation referring, relating or regarding, directly or indirectly, the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 25: Produce all documents concerning any discussions, communications, correspondence, or other contact by Synopsys with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring, relating or regarding, directly or indirectly, the patents-in-suit on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 26: Produce all documents concerning the identification of each individual (including their full name, address, telephone number, job title and description, and employer) who has knowledge of the factual basis for Count V (Declaratory Judgment Barring Ricoh From Recovery Under the Doctrine of Laches).

Document Request No. 27: Produce all documents concerning the factual basis for Count V (Declaratory Judgment Barring Ricoh From Recovery Under the Doctrine of Laches).

Document Request No. 28: Produce all documents concerning the identification of each individual (including their full name, address, telephone number, job title and description, and employer) who has knowledge of the factual basis for Count VI (Declaratory Judgment Barring Ricoh From Recovery Under the Doctrine of Equitable Estoppel).

Document Request No. 29: Produce all documents concerning the factual basis for Count VI (Declaratory Judgment Barring Ricoh From Recovery Under the Doctrine of Equitable Estoppel).

Document Request No. 30: Produce all documents concerning any change in position by Synopsys or prejudice to Synopsys as a consequence of any action or lack of action by International Chip Corporation or Knowledge Based Silicon Corporation or Ricoh which forms the basis of the laches and estoppel assertions on or after the issue date of the '432 patent of May 1, 1990.

Document Request No. 31: Produce all documents concerning Synopsys products that do not infringe the '016 patent on or after January 1, 1997.

Document Request No. 32: Produce all documents concerning semiconductor product royalty rates on or after January 1, 1997.

Dated: October 23, 2003

Respectfully submitted,

Ricoh Company, Ltd.

By: [signature]

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Gary M. Hoffman
Kenneth W. Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 896-5471
Facsimile: (212) 997-9880

Attorneys for Ricoh Company, Ltd

**PROOF OF SERVICE**

**CASE:** *Synopsys, Inc. v. Ricoh Company, Ltd.*

**CASE NO:** U.S. District Court, N.D. Cal., No. C03-2289 MJJ

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within action; my business address is 177 Post Street, Suite 300, San Francisco, California 94108. On October 23, 2003, I served the following document(s):

**RICOH'S FIRST SET OF DOCUMENT REQUESTS TO SYNOPSYS**

on the parties, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below for service as designated below:

By Messenger Service: I caused each such envelope to be delivered to a courier employed by **WESTERN MESSENGER,** with whom we have a direct billing account, who personally delivered each such envelope to the office of the address on the date last written below.

| **ADDRESSEE** | **PARTY** |
|---|---|
| Christopher L. Kelley, Esq.<br>Erik K. Moller, Esq.<br>Teresa M. Corbin, Esq.<br>Howrey Simon Arnold & White LLP<br>301 Ravenswood Avenue<br>Menlo Park, CA 94025<br>Facsimile: 650/463-8400 | Attorneys for Plaintiff<br>Synopsys, Inc. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this October 23, 2003, at San Francisco, California.

Edward Lin

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 429-2184
E-Mail Address: BrothersK@dsmo.com

August 24, 2005

**Via PDF**

Teresa M. Corbin, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA 94105-2708

Re: Ricoh v. Aeroflex, et al.
Synopsys v. Ricoh

Dear Terry:

As stated during our August 22 and 24 meet and confers, Ricoh needs a firm commitment that Synopsys and the ASIC defendants will begin offering witnesses on Ricoh's Rule 30(b)(6) topics. Pursuant to your request, this letter summarizes the current status of Ricoh's 30b(6) notices.

I. Ricoh's Rule 30(b)(6) Notices of Deposition to Synopsys

A. Ricoh's 30(b)(6) Deposition Notice of August 9, 2005

Synopsys needs to designate witnesses immediately on all topics set forth in this notice, and offer dates for such witnesses availability for deposition so that the depositions can be completed by September 30, 2005.

B. Ricoh's Rule 30(b)(6) Deposition Notices from 2003

Synopsys identified some witnesses and produced them for deposition; however, as set forth below, most of those depositions were not completed due to inadequate preparation of the witnesses. Synopsys did not offer deponents on the following topics: topics 4-5, sub-topics c-e of topics 6-11, and topics 15-19. In addition, on other topics, Synopsys designated witnesses with unacceptable limitations, such as topics 1-3 (for which Synopsys designated Ms. Pieper on limited subject matter); and sub-topics a and g-i of topics 6-11 (for which Synopsys designated of Messrs. Gregory and Moore limited to "pre-1993 versions of GE's, Optimal Solution's and Synopsys' synthesis software, including Socrates, Logic Compiler and Design Compiler." Synopsys should offer dates for such witnesses availability for deposition so that the depositions can be completed by September 30, 2005.

1177 Avenue of the Americas • New York, NY 10036-2714 • Tel (212) 835-1400 • Fax (212) 997-9880
10866 Wilshire Boulevard • Suite 300 • Los Angeles, CA 90024-4350 • Tel (310) 441-8460 • Fax (310) 441-8470
DSMDB.1971672.2
www.DicksteinShapiro.com

With respect to the Pieper, Gregory and Moore and Kranen depositions:

Pieper. Synopsys needs to provide Karen Pieper's availability for deposition, so that her deposition can be completed by September 30, 2005 on all topics for which she has been designated, including: topics 1-3 (for the technical characteristics of Design Compiler and DesignWare Library software); topics 6-11 with respect to sub-topics f-i, and a (to the extent sub-topic a recapitulates sub-topics f-i); and topic 12. *See* C. Kelley 11/19/03 letter to E. Meilman.

Gregory & Moore. Synopsys needs to provide Messrs. Gregory and Moore's availability for deposition so that the depositions can be completed by September 30, 2005) on all topics for which each has been designated, including: sub-topics a and g-i of topics 6-11. *See* C. Kelley 4/15/04 letter to K. Brothers; E. Oliver 4/14/04 letter to M. Hocker.

Messrs. Gregory and Moore previously testified on sub-topic b of topics 6-11. However, neither witness was adequately prepared to testify fully; therefore, Synopsys needs to provide September dates for deposition of a fully prepared witness on sub-topic b.

Kranen. Mr. Kevin Kranen was previously designated on topics 13-14 and 20-23, but was not adequately prepared to testify fully to these topics; therefore, Synopsys needs to provide September dates for continued deposition of a fully prepared witnesses on these topics.

II. Ricoh's Deposition Notices To Each Of The ASIC Defendants

A. Ricoh's September 25, 2003 Rule 30(b)(6) Deposition Notices

None of the ASIC Defendants have designated witnesses or provided any deposition dates for Ricoh's 30(b)(6) notices of September 25, 2003. The status of each of those depositions was summarized at the end of Ricoh's April 23, 2003 discovery plan (attached as Exhibit 1 to Ricoh's August 11 letter to Magistrate Judge Chen). A largely identical notice was served for Aeroflex UTMC on April 29, 2004; no response has been received to that notice.

Ricoh is prepared to proceed immediately with the topics 1-10 (especially topics 3, 7, 8, 9 and 10) on each of those notices. Please designate witnesses immediately and provide such witnesses' availability for deposition so that the depositions on these topics can be completed by September 30, 2005.

B. Ricoh's August 17, 2005 Rule 30(b)(6) Deposition Notices

Ricoh is prepared to proceed immediately with the topics 1, 2 and 3 on each of Ricoh's notices of August 17, 2005. Please designate witnesses immediately and provide such witnesses' availability for deposition so that the depositions on these topics can be completed by September 30, 2005.

We are hopeful that you will promptly respond and confirm that witnesses will be designated and depositions dates set as requested above. As we indicated during the August 22 and 24 meet and confers, based upon your refusal to provide such a response and confirmation, we intend to include this issue in our August 26 letter to Magistrate Judge Chen.

Sincerely,

Kenneth W. Brothers

cc: Jaclyn Fink, Esq.
Gary M. Hoffman, Esq.

KWB/dda

-----Original Message-----
From: Fink, Jacky [mailto:FinkJ@Howrey.com]
Sent: Thu 8/25/2005 6:08 PM
To:   Hoffman, Gary; Fink, Jacky
Cc:   Corbin, Terry; Brothers, Kenneth; Allen, DeAnna
Subject:      RE: 08.24.05 Fink Letter to Hoffman re Court Reporter Transcripti on o f Meet
& Confer Sessions
Gary,

My IT person assures me that our conference phone is two way - full duplex. Perhaps we had
you on hold when we were having a sidebar, such that we didn't answer some questions.  We
were still able to hear you in that circumstance, but you would not have been able to hear
us.  With a court reporter, that issue would be addressed by a party going off the record
prior to having a sidebar.

Here are three links to the Polycom website for the EX model, all of which I have been
able to use successfully from this email:
http://www.polycom.com/common/pw_cmp_printScreen/0,,pw-3058,FF.html
http://www.polycom.com/company_info/1,,pw-590-3058,FF.html
http://www.polycom.com/common/pw_cmp_updateDocKeywords/0,1687,980,00.pdf

The product we have is discontinued so you won't find much more than what we've provided
already.  Searching the web (i.e., Google) provides the following information:

http://www.twacomm.com/info/SoundStation.htm?sid=C5DEA00A249B9B6BA8518A5BAB1
84326

http://www.engr.wisc.edu/services/ems/rental/pdfs/soundstation.pdf

Text from Amazon.com description taken from
http://www.amazon.com/exec/obidos/tg/detail/-/B00002SX0O/104-3792137-9146307
?v=glance:

Product Description
Amazon.com Product Description
Meet all your teleconferencing needs with the full-duplex Polycom SoundStation EX, which
includes two external microphones for extra coverage--ideal for medium- to large-sized
rooms. With conventional, half-duplex speakerphones, only one party can speak at a time
without clipping off the other party's voice. Echoes and howling can further disrupt your
conversations and lead to costly misunderstandings. But because of the SoundStation's
full-duplex operation, you can speak naturally and hear both sides of the conversation
clearly.

The SoundStation EX ensures high sound quality with three microphones and a digitally
tuned speaker for 360-degree coverage of an office or conference room. This EX model also
has two external microphones on either side of the console for more than double the
coverage of standard conference phones. The microphones come with two 6-foot round cables
for connecting to the console.


Polycom's Acoustic Clarity Technology uses digital signal processing with analog telephone
lines to eliminate the clipping and fading that plague most speakerphones. This technology
improves speaker and microphone performance over the full bandwidth of the telephone line,
300 Hz to 3,500 Hz. Other features that boost sound quality include dynamic telephone-line

echo cancellation and dynamic room-echo cancellation, signal depression, microphone switching, and digital filtering of voice signals.

The SoundStation EX has a full alphanumeric keypad for dialing with a mute button and flash key to access functions like hold, conference, and transfer. There is also an extra jack to plug in a tape recorder. Dual-colored LEDs signal phone status, and other controls include a ringer volume, speaker volume, and microphone mute.

The SoundStation EX works with any analog phone system, or with an adapter (sold separately) for digital phone systems. It comes with a wall module, 25-foot power cable, 7-foot telephone cable, and a one-year warranty.

Product Description
Polycoms patented acoustic clarity technology full duplex for simultaneous natural conversation 360° room coverage ensures all participants can hear and be heard Base unit has three microphones and a powerful speaker for two-way conversation; features echo cancellation and suppression. Integrated keypad works like a standard telephone and includes adjustable ringer, mute button and speaker volume control. Mute buttons/dual color LED status lights. Easy to usejust plug in, dial the number and go. Requires analog telephone line. Two additional external mics with a 6-ft. reach allow even the far ends of the table to be heard; for medium to large-size rooms and up to 12 participants. PCY220000696001 PCY-220000696001 610807480754 1080748075

***

We dispute your characterization of the agenda, and the communication regarding the court reporter, as we had indicated that we wanted to discuss your objections. However, we will not raise this issue with Magistrate Judge Chen at this point.

Jacky

-----Original Message-----
From: Hoffman, Gary [mailto:HoffmanG@dsmo.com]
Sent: Thursday, August 25, 2005 1:23 PM
To: Fink, Jacky
Cc: Corbin, Terry; Brothers, Kenneth; Allen, DeAnna
Subject: RE: 08.24.05 Fink Letter to Hoffman re Court Reporter Transcripti on o f Meet & Confer Sessions

Jacky,

    If this was the conference phone that you were using during our calls on Monday and Wednesday of this week, then it is not two way.

    Also, we have had the Polycom Soundstation speaker phones for several years and they are definitely one way speaker phones.

    I could not find any information on the Polycom web site about any EX model that seemed to fit what you are talking about in your email or the one page document you sent to me.

    Please send me further information about the speaker phones and the specific model numbers of the Polycom conference phones you have in your office.

    As I have indicated we need this information in order to consider your request.

    With respect to the second paragraph of your email, there clearly was an agenda for our meet and confers this week, the agenda was the topics in our July 27 letter as indicated by Judge Chen in his order. The following is a copy of my email to Terry Corbin setting the agenda:

************************************************************
  From: Hoffman, Gary <HoffmanG@dsmo.com>
To: Corbin, Terry <CorbinT@Howrey.com>
CC: Fink, Jacky <FinkJ@Howrey.com>; Brothers, Kenneth <BrothersK@dsmo.com>; Meilman, Edward <MeilmanE@dsmo.com>

Sent: Tue Aug 16 15:24:54 2005
Subject: Judge Chen's Order of August 16

Terry,

Pursuant to Judge Chen's Order of today, we need to conduct another meet and confer on the unresolved issues raised in our July 27 letter to you. Please let me know when you are available to conduct such a meet and confer this week.

Gary
*************************************************************************
************************

Unfortunately, the issue of the Court reporter was not raised until our actual conversation on Wednesday. While you had sent an earlier letter on the topic, we had objected to a Court reporter being present in the Monday conference and indicated that we had several concerns and questions that first needed to be addressed. Consequently, there has not yet been a proper meet and confer on this issue.

Gary

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
Tel No. (202) 828-2228
hoffmang@dsmo.com

-----Original Message-----
From: Fink, Jacky [mailto:FinkJ@Howrey.com]
Sent: Thursday, August 25, 2005 1:50 PM
To: Hoffman, Gary
Cc: Corbin, Terry
Subject: RE: 08.24.05 Fink Letter to Hoffman re Court Reporter Transcripti on o f Meet & Confer Sessions

Gary,

For the Monday and Wednesday conference calls, we used the two-way Polycom SoundStation EX identified in my August 24, 2005 letter to you. I am attaching a copy of the web page I referenced.

We dispute that this issue was not on "the agenda" (to the extent that one even existed - nothing was distributed) for the meet and confers, as during our email correspondence on this issue last week we indicated that we wanted to discuss this issue further.

Jacky

-----Original Message-----
From: Hoffman, Gary [mailto:HoffmanG@dsmo.com]
Sent: Thursday, August 25, 2005 7:17 AM
To: Fink, Jacky; Corbin, Terry
Cc: Brothers, Kenneth; Meilman, Edward; Oliver, Eric; Allen, DeAnna
Subject: RE: 08.24.05 Fink Letter to Hoffman re Court Reporter Transcription o f Meet & Confer Sessions

Jacky and Terry,

We have received your letter regarding the issue of transcribing our meet and confer sessions. However, there are still some questions.

First, on Monday and yesterday during our conference calls, what types of speaker phones were being utilized in your offices since it was clear that they were not two way phones.

Second, the web site address that you sent us did not work. Hence please send us the materials that you were referring to in your letter so that we can review them.

Third, while this issue was not on the agenda for our meet and confers this week, we still agreed to preliminarily discuss it with you yesterday, Wednesday, August 24. However, as we indicated once we have all of the information, we will need to review it and then discuss the matter with our client. After that if we have not yet resolved the matter, then we can have a meet and confer on this topic. Contrary to your comment there has not yet been a proper meet and confer on this topic.

Gary

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
Tel No. (202) 828-2228
hoffmang@dsmo.com

-----Original Message-----
From: Kasenenko, Peter [mailto:KasenenkoP@Howrey.com]
Sent: Wednesday, August 24, 2005 5:42 PM
To: Hoffman, Gary
Cc: Brothers, Kenneth; Meilman, Edward; Oliver, Eric; Allen, DeAnna; Weinstein, Michael
Subject: 08.24.05 Fink Letter to Hoffman re Court Reporter Transcription o f Meet & Confer Sessions

Attached is correspondence from Ms. Fink to Mr. Hoffman. The original follows via U.S. Mail. <<08.24.05 Fink Ltr to Hoffman re Court Reporter Transcription of Meet & Confer Sessions.pdf>>

Peter L. Kasenenko
Secretary to Denise De Mory,
Rick Chang & Jaclyn Fink
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708
Direct Dial: 415.848.4976
Facsimile: 415.848.4999

-----------------------------------------------------------------------------------------------------------------------

This email and any attachments contain information from the law firm of Howrey LLP, which may be confidential and/or privileged. The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this email is prohibited.
If you receive this email in error, please notify us by reply email immediately so that we can arrange for the retrieval of the original documents at no cost to you.

---------------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP http://www.DicksteinShapiro.com

========================================================================
====
==

--------------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP http://www.DicksteinShapiro.com
============================================================================
==

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 572-2656
E-Mail Address: AllenD@dsmo.com

July 18, 2005

**BY FACSIMILE AND U.S. MAIL**

Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA 94025

Re: Ricoh v. Aeroflex et al.

Dear Terry:

In accordance with Judge Jenkins' directive provided at the July 13, 2005 Case Management Conference, we provide (i) the following list of the types of libraries we are seeking to have fully identified in the list to be provided by each ASIC Defendant and (ii) citations showing examples of Synopsys documents using the library nomenclature that Ricoh has used.

- Target libraries and technology libraries (*see, e.g.*, SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59911-14; SP60165-60461 Introduction & Overview, Chip Synthesis (2003) at SP60241-242)

- Symbol libraries (*see, e.g.*, SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59934)

- Link libraries (*see, e.g.*, SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59916-59919, SP59923); *DesignWare IP Family Quick Reference Guide* (RCL008947-9306) at p. 28)

- Basic library (*see, e.g.*, *DesignWare IP Family Quick Reference Guide* (RCL008947-9306) at p. 27)

- DesignWare Foundation and Building Block IP libraries (*see, e.g.*, *DesignWare Building Block IP User Guide* (RCL009357-9448); *DesignWare IP Family Quick Reference Guide* (RCL008947-9306) at pp. 27-28)

- Synthetic libraries (*see, e.g., DesignWare Developer's Guide* (RCL009449-9622) at Ch. 4, pp. 61-64; *DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1 pp. 17-20)
- Design libraries (*see, e.g., DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1 pp. 17-18, 20); *DesignWare Developer's Guide* (RCL009449-9622) at 23-24, 146)
- Any libraries used by or made by (or behalf of) an ASIC Defendant as a replacement or substitute for any of the above libraries (*see, e.g.*, the comments of the ASIC Defendants in the CMC at Page 18, lines 17-19)

Ricoh understands that other libraries are used by the ASIC Defendants in the Synopsys synthesis flow for the tools and libraries at issue (see p. 28 of the Case Management Statement for Ricoh's list of tools and libraries at issue). For example, Synopsys has stated there are design libraries created during synthesis and Ricoh seeks discovery from the ASIC Defendants' for such design libraries (*see* Case Management Statement p. 18 (Synopsys' discussion of design libraries)).[1]

Additionally, it is Ricoh's understanding that to the extent there are additional libraries that are not included in the foregoing list of libraries, but that are used by the tools at issue (e.g., any separate libraries of GTECH cells[2]), then such other libraries (including source code and documentation) have been produced as part of the currently on-going source code production. However, if Ricoh's understanding is incorrect, then Ricoh also seeks a list of such libraries (e.g., GTECH libraries).

---

[1] Note that while Synopsys has used the term "design library" to refer to a library generated during synthesis, Ricoh has used the term "design library" to mean the DesignWare design library that Synopsys documentation describes as housing DesignWare implementations. (*See, e.g., DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1 pp. 17-18, 20; *DesignWare Developer's Guide* (RCL009449-9622) at 23-24, 146). It appears to Ricoh that the parties may be using the same term (i.e., design library) to describe two different kinds of libraries. As indicated herein, Ricoh seeks discovery of both kinds of libraries.

[2] *See*, e.g., SP60165-60461 Introduction & Overview, Chip Synthesis (2003) at SP60214 (describing GTECH db); SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59898 (describing GTECH components).

Ricoh is seeking discovery related to the above list of libraries as provided by Synopsys, as well as any additions to, modifications to, or substitutions/replacements for any of the foregoing libraries made by the ASIC Defendants (e.g., such as by use of DesignWare Developer).[3]

As directed by Judge Jenkins, by 11 A.M. Pacific Time on Thursday, July 21, 2005, you are to provide us, for each ASIC Defendant, the list of libraries that each Defendant has used.

Sincerely,

DeAnna Allen

DA/ncz

cc: Jonathan Weissglass, Esq.
Gary Hoffman, Esq.
Edward Meilman, Esq.

[3] The term DesignWare Expert libraries, as Ricoh has used it, is encompassed by the DesignWare synthetic libraries, DesignWare design libraries, and any other DesignWare components used by or created by (or on behalf of) the ASIC Defendants. Thus, to the extent that DesignWare synthetic libraries and DesignWare design libraries (as well as any modifications, additions, or replacements/substitutions used by or made by (or on behalf of) the ASIC Defendants to these libraries) are produced, then there is no need for a separate designation by Ricoh of DesignWare Expert libraries.

SYNOPSYS®

# DesignWare Building Block IP User Guide

To search the entire manual set, press this toolbar button. For help, refer to intro.pdf.

March 16, 2005

Your HDL Source Code
Z <= X + Y
Operator Inference
Synthetic Operator
+
timing-constrained design
area-constrained design
Automatic Implementation Selection Based on Overall Design Constraints
Appropriate Implementation Selected in Each Case
cla
rpl

**Figure 2: Implementation Selection**

## The Structure of the Supporting Libraries

The DesignWare Building Block IP has two parts, a *design library*, and a *synthetic library* (Figure 3):

- A design library is a UNIX directory that contains circuit descriptions for the various IP architectures. These are usually parameterizable.
- A synthetic library is a binary file (with a `.sldb` filename extension) that links the circuits in a design library to the Synopsys synthesis tools.

.sldb
Design Library
Synthetic Library

**Figure 3: Supporting Libraries**

The circuit descriptions in a design library are stored in binary formats immediately usable by the Synopsys tools. The circuits can vary from a technology-specific netlist or hard macro that will not be altered by synthesis, up to a full hierarchical description of a parameterizable, optimizable design.

The synthetic library contains the information that enables the synthesis tools to perform high-level optimizations, including implementation selection.

Connections between your source code, synthetic libraries, and design libraries are established by means of a hierarchy of abstractions (Figure 4). *HDL operators* are associated with *synthetic operators*, which are in turn bound to *synthetic modules*. Each synthetic module can have multiple architectural realizations called *implementations*.

Another class of DesignWare Building Block IP are *subblocks*, which have only one implementation and are only instantiated. Subblocks are useful for large parts, such as the error checking and correction IP, that do not have multiple implementations. As a result, subblocks do not use the same hierarchy of abstractions as described in Figure 4.



**Figure 4: DesignWare Building Block IP Hierarchy**

### HDL Operators

An *HDL operator* is a VHDL or Verilog language construct that manipulates input values to produce output values. Some operators are built into the language, like `+`, `-`, and `*`; user-defined subprograms (functions and procedures) are also considered HDL operators.

DesignWare Building Block IP implement many of the built-in HDL operators. These operators include `+`, `-`, `*`, `<`, `>`, `<=`, `>=`, `/`, and the operations defined by `if` and `case` statements. Each operator has a definition written in HDL. Each definition contains a simulatable specification for the operator behavior, and, optionally, a `map_to_operator` pragma that links the HDL operator to an equivalent synthetic operator. The "/" operator is required for the DesignWare license.

Many HDL operators, including most of the built-in infix operators, are mapped by default to synthetic operators in the Synopsys standard synthetic library, `standard.sldb`.

### Synthetic Libraries

A synthetic library contains definitions for synthetic operators, synthetic modules, and bindings. It also contains declarations that associate synthetic modules with their implementations. The implementations themselves reside in the corresponding design library.

- *Synthetic operator* – Represents the operation called for by the HDL operator. The synthesis tools perform high-level optimizations like arithmetic optimization and resource sharing by manipulating synthetic operators.
- *Synthetic module* – Defines a common interface for a family of implementations. All implementations of a given module have the same ports and the same input-output behavior. (This term is not to be confused with the term "module" in Verilog.)
- *Bindings* – Associate synthetic operators with synthetic modules. For example, a binding associates the synthetic operator for addition with the adder module (you can also say that the synthetic addition operator is *bound* to the adder module). More than one synthetic operator can be bound to a given synthetic module, and each operator can be bound to more than one module.
- *Implementation declarations* – Link synthetic modules to implementations in a design library. Implementation declarations thus connect the synthetic library with the design library.

### Design Library

The design library contains the actual circuit implementations that perform the functions you call for when you include DesignWare Building Block IP in your design.

The DesignWare Building Block IP concepts of *synthetic module* and *implementation* closely correspond to the VHDL concepts of *entity* and *architecture*. An implementation can be viewed as an architectural realization of a synthetic module. An implementation can be anything from a technology-specific netlist to a synthesizable RTL-level design description.

## How Do I Use DesignWare Building Block IP?

You determine which IP libraries are available to the tools by setting certain `dc_shell-t` variables. These setup variables are discussed in Chapter 2 on page 23.

You include IP in a design either through *operator inference* or *component instantiation*. In operator inference, synthetic operators are automatically inferred from the presence of particular operators in your HDL code. In component instantiation, your HDL code explicitly instantiates a synthetic module. Detailed procedures for inference and instantiation are given in Chapter 2 on page 23.

HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
T 415.848.4900
F 415.848.4999
www.howrey.com

July 18, 2005

*BY FACSIMILE AND U.S. MAIL*

DeAnna Allen, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037

***RE: Synopsys, Inc v. Ricoh Company, Ltd., Case No. CV 03-02289 MJJ (EMC)***
***Ricoh Company, Ltd. v. Aeroflex, Inc., Case No. CV 03-04669 MJJ (EMC)***

Dear DeAnna:

I am writing in response to your July 18, 2005 letter, in which you request library information from the ASIC Defendants.

The following table summarizes our understanding of your request:

| RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | COMMENTS |
|---|---|---|
| Target libraries and technology libraries | Items identified by users via the `target_library` variable (hereinafter "`target_library`"). | These are the items sometimes called "foundry libraries" and were the items that Mr. Oliver was referring to at the CMC, e.g., TSMC 0.13μ CMOS low-power.<br><br>Samples of items usable as "`target_library`" were provided with the source code.<br><br>Production libraries are generally provided directly to customers by the foundries because the samples provided with Design Compiler are not suitable for modern commercial usage. |

HOWREY LLP

| RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | COMMENTS |
|---|---|---|
| Symbol libraries | Items identified by users via the symbol_library variable (hereinafter "symbol_library"). | These items are not inputs; rather, they are a visualization tool for the Design Vision and Design Analyzer products, which are not at issue in this case.<br><br>Samples of items usable as "symbol_library" were provided with the source code.<br><br>To the extent customers have any items that are specified as "symbol_library," they would be distributed with the respective "target_library," e.g., they would be provided by the foundry. |
| Link libraries | Items identified by users via the link_library variable (hereinafter "link_library"). | The "link_library" variable is used to refer to the same items that the "target_library" and "synthetic_library" variables specify.<br><br>Accordingly, there are no items that fall into this category that do not fall into one of the other two. |
| Synthetic libraries | Items identified by users via the synthetic_library variable (hereinafter "synthetic_library"). | The only two items at issue are standard.sldb and dw_foundation.sldb.<br><br>Both of these items which are specifiable as "synthetic_library" were provided with the source code.<br><br>We are confirming the customer defendants do not have or use any other such items. |
| Basic library | This refers to the specific "synthetic_library" contained in the file standard.sldb. | This is solely supplied by Synopsys. Source code was provided. |

HOWREY LLP

| RICOH TERMINOLOGY | SYNOPSYS TERMINOLOGY | COMMENTS |
|---|---|---|
| DesignWare Foundation and Building Block IP Libraries | This refers to the specific "synthetic_library" contained in the file dw_foundation.sldb. | This is solely supplied by Synopsys. Source code was provided. |
| Design libraries | synthetic_library implementations. | These are one aspect of a "synthetic_library," therefore we do not believe it is possible or meaningful to refer to these items apart from the relevant "synthetic_library."<br><br>To the extent the only two "synthetic_library" items at issue, standard.sldb and dw_foundation.sldb, are being discussed, the relevant implementation source code was provided. |
| Design libraries created during synthesis (FN 1) | Design libraries. | Synopsys' use of this term in the CMC statement was referring to an intermediate storage format used temporarily during a run of Design Compiler.<br><br>There are no user inputs to be provided or identified for this item. |
| GTECH libraries | GTECH. | This is solely supplied by Synopsys. Source code was provided. |

For your convenience, we are also providing a summary of the items listed in Ricoh's CMC statement together with the appropriate Synopsys names and part numbers for the products. For each item, we identified whether the customer defendants (by corporate family - e.g., Matrox, AMI, Aeroflex) have the given product. The previously provided discovery has a greater level of detail.[1]

[1] Discovery on this matter was previously provided to Ricoh in the form of sales records that provided a greater level of detail. This summary chart is a convenience only.

HOWREY LLP

| RICOH NAME | COMMENT | MATROX | AMI | AEROFLEX |
|---|---|---|---|---|
| Design Compiler | Includes DC Ultra, DC Ultra Opt, DC Expert, DC Expert Plus, DC Pro.<br><br>Source code is in `common_shell_exec`.<br><br>Presently customer sellable parts include 2661-0 (Expert), 2663-0 (Ultra), and 3228-0 (Ultra Opt – must have purchased 2663-0).<br><br>Customer must buy one of part 2671-0 (HDL Compiler for Verilog) or part 2681-0 (VHDL Compiler) for a working product.<br><br>Colloquially, when customers talk about buying "Design Compiler" they are invariably talking about buying one of part 2661-0 or part 2663-0 and one of part 2671-0 or part 2681-0. | Yes | Yes | Yes |
| HDL Compiler for Verilog | Source code is in `common_shell_exec`.<br><br>HDL Compiler for Verilog is part 2671-0. | No | Yes | Yes |
| VHDL Compiler | Source code is in `common_shell_exec`.<br><br>VHDL Compiler is part 2681-0. | Yes | Yes | Yes |
| Presto | This is not a product, but rather a code name for a project that became the shipping versions of VHDL Compiler and HDL Compiler for Verilog. | N/A | N/A | N/A |

HOWREY LLP

| RICOH NAME | COMMENT | MATROX | AMI | AEROFLEX |
|---|---|---|---|---|
| Physical Compiler | Source code is in common_shell_exec.<br><br>Physical Compiler is part 2682-0, and the Physical Compiler Add-on is part 2683-0 (which requires part 2663-0 or parts 2661-0 and 3228-0). | Yes | Yes | No |
| Module Compiler | Source code is not in common_shell_exec, but was provided. | No | No | No |
| Design Compiler Basic Library | This is standard.sldb. There is no separate part number, as it ships with parts 2661-0 or 2663-0. Source code was provided. | Yes | Yes | Yes |
| DesignWare Expert Libraries | There is no such Synopsys product to our knowledge. | N/A | N/A | N/A |
| DesignWare Foundation Libraries | This is dw_foundation.sldb. Source code was provided.<br><br>This is part 2925-0. | Yes | Yes | Yes |
| DesignWare Building Block IP | There is no part number associated with this term. It appears to be duplicative of dw_foundation.sldb. | N/A | N/A | N/A |
| Target technology libraries, link libraries, symbol libraries | See table above. | See table above. | See table above. | See table above. |

Hopefully this summary will allow us to have more consistent terminology. Please let me know if you have any questions, or require clarification.

Very truly yours,

Jaclyn C. Fink