November 7, 2005

<u>VIA ELECTRONIC FILING</u>

Honorable Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA  94102

      Re:    Ricoh v. Aeroflex, et al., Case No. CV-03-4669 MJJ (EMC)
             Synopsys v. Ricoh, Case No. CV-03-2289 MJJ (EMC)

Dear Judge Chen:

      The parties submit this joint letter on a discovery dispute.

**1.  Ricoh's Position.**

      Ricoh has requested that Synopsys permit Ricoh's experts and attorneys to access an on-line customer-oriented knowledge base named "SolvNet."  SolvNet contains multiple applications and data that are available to Synopsys customers including the SolvNet Knowledge Base of self-help documents and online product documentation.  SolvNet is routinely used by ASIC designers, such as the Aeroflex defendants, as a resource to optimize their use of the Synopsys software that has been placed at issue in this litigation.  ASIC designers are able to search the online repository of information to quickly find solutions to technical issues arising during synthesis.  SolvNet contains a large volume of information that Ricoh believes will be very helpful to Ricoh's experts and attorneys developing the issues in this case.

      As an authorized licensee of Synopsys, Ricoh has full access to the SolvNet knowledge base.  In addition, one of Ricoh's consulting experts, Mr. David C. Black, has had full access to SolvNet for many years; nevertheless, Mr. Black has stated under oath that he not used SolvNet for purposes of this litigation without express permission, which was the genesis of this dispute.  As set forth in the accompanying declaration attached as Exhibit 1, Mr. Black's access to SolvNet is important to his livelihood.  His use of SolvNet has been limited to his participation in the Synopsys User's Group, or "SNUG."  Mr. Black actively participates in SNUG; he held the first Technical Chair position, and has been a member of the Technical Committee for nearly ten years.  As a member of that Committee, Mr. Black reviews papers that will be presented at upcoming SNUG conferences and has personally presented papers at six SNUG conferences.  *Id.* ¶ 4.  This review work continued after Ricoh disclosed in May 2004 that he was a consulting expert on this case.  About two weeks ago, defendant Aeroflex produced for the first time the actual product code for some (but not all) of the Aeroflex ASIC chips at issue.  The ASIC Defendants' actual product code for some of the AMI

Honorable Edward M. Chen
November 7, 2005
Page 2

and Matrox chips should be produced in the next few weeks.[1]  After initially reviewing that product code, Mr. Black and Ricoh's counsel believe that access to SolvNet will substantially assist in their development of their analysis of that code and preparation of the Final Infringement Contentions.  As set forth below, Ricoh believes that our access to and review of SolvNet will assist Ricoh to (1) quickly and efficiently search a highly relevant existing knowledge base of data that is used by the ASIC Defendants to design the infringing ASIC products; (2) enable Ricoh to determine the backwards compatibility of the source code to the product code; (3) give Ricoh and its experts access to the same tools and information that was available to the accused infringers; and (4) more quickly and efficiently compile and analyze the code for the infringing ASIC products with the same data and tools that were used to create the infringing ASICs.

While the ASIC defendants recently have produced some actual product code in hard copy, this code has not been produced in native file format.  Ricoh has received "hard copy" images of the original files, devoid of original file names and directory structures.  Ricoh cannot synthesize and compile the hard copy of this code, which is inhibiting Ricoh's infringement analysis.  Until the ASIC Defendants produce synthesizable product code, Ricoh will be hard pressed to debug the compiled code.  Because Synopsys has refused to produce the actual versions of Design Compiler that were used to create most of the infringing chips (instead representing that the current version is fully representative), Ricoh's synthesis and analysis will occur using a different version of Synopsys synthesis tools than those used by the ASIC defendants.[2]  When these inevitable errors occur, the fastest and most efficient method of resolving the errors will be to use SolvNet.  Notably, Synopsys's opposition does not say why it is inappropriate for Ricoh to have access to the same tools available to the engineers who originally developed the ASICs at issue.  On Monday, October 17, 2005, Ricoh's counsel sent an email requesting "consent for our expert and attorneys to have full search and read access to SolvNet."[3]  During meet and confer sessions on October 20 and 26,

---

[1] Synopsys and the Aeroflex defendants did not meet their target date of October 7 for the completion of the document production, and are currently unable to provide a firm estimate of when they will complete the production of responsive documents.  The parties continue to negotiate regarding the case schedule, including new dates for the Final Infringement Contentions, and anticipate that they will provide a revised schedule to the Court in the near future.  Another status conference regarding these matters would likely advance these discussions.

[2] Synopsys has only produced the v.2003.12 version of its modern synthesis software.  Because Synopsys has refused to produce any other versions used during the infringing period,  Ricoh is obligated to synthesize the product packages using the v.2003.12 versions rather than older versions that were used by the ASIC Defendants.  Synopsys' software code commands are sometimes changed or replaced over time.  SolvNet contains articles on the replacement commands and documents errors that occur when using an old command.  Additionally, other features have changed from version to version.  SolvNet provides a quick and readily accessible solution to understanding the differences between the versions.

[3] See Exhibit 2.  SolvNet contains multiple applications that are available for Synopsys customers who have a support maintenance agreement with Synopsys.  These applications include SolvNet Search, Enter a Support Call, Support Case Tracker, Customer Site Info, Scout Newsletter, Release Notes, Request a

Honorable Edward M. Chen
November 7, 2005
Page 3

counsel for Ricoh explained that, even though it and one of its experts already had access to SolvNet for other purposes unrelated to this litigation, we believed that it was appropriate to formally request access for purposes of this litigation. We made clear that our access would be to review existing information only, and that we would not submit new queries or otherwise try to add or modify the content of the SolvNet knowledge base. We made clear that Dr. Black had not accessed SolvNet for purposes of this litigation. Unfortunately, counsel for Synopsys flatly refused our request, and refused to reconsider it.[4] After our second meet and confer on this issue, counsel for Synopsys sent a letter that not only confirmed its refusal, but unilaterally announced that *Synopsys was terminating Dr. Black's access to SolvNet* for any purpose including his work unrelated to this litigation. See Exhibit 3. In addition, on November 1, Synopsys sent Mr. Black the following email:

> Hi David,
>
> Well, I'm afraid I must terminate your membership to the SNUG technical committee. Of course, this is nothing personal. *I've been instructed by legal to do so.* I will let the team know. Once this is over, we can see about getting you re-instated. Thanks for all the years of contribution.
>
> Joanne Wegener, Manager, Synopsys Users Group

(Exhibit 4, emphasis added.) By explicitly acknowledging that its legal department has instructed the SNUG manager to terminate Mr. Black's participation in the user's group, Synopsys has admitted that it is retaliating against an expert who it has known has been working with Ricoh for more than 16 months on this case.

Now that the ASIC defendants are finally starting to produce the code for the actual accused ASIC products, Ricoh believes that it should have access to SolvNet to assist its analysis of the product packages and to make Ricoh's final infringement contentions more precise. Ricoh should have the same tools and information available to it as was available to the ASIC defendants while they were developing the accused ASICS. Ricoh should not be forced to reinvent the wheel, particularly when Ricoh does not have the system knowledge base of Synopsys as set forth in the SolvNet database.

Although Synopsys never explained during the meet and confers why it refused to permit Ricoh's experts and counsel access to SolvNet, in this joint letter Synopsys argues that access to SolvNet is not needed because it will produce excerpts

---

SmartModel Build, and Electronic Software Transfer. While SolvNet contains all of these applications, Ricoh has only requested access to the searchable and readable portions of the system, such as SolvNet Search, online documentation, Scout Newsletter, and Release Notes. Ricoh does not request access to ask questions or in any other way communicate with Synopsys employees through SolvNet.

[4] Synopsys' counsel accuses Ricoh of failing to adequately meet and confer, even though counsel twice personally discussed the issue. Synopsys' counsel repeatedly stated that this issue would have to be resolved by the Court.

Honorable Edward M. Chen
November 7, 2005
Page 4

from SolvNet that it considers to be relevant. This is a poor substitute, for several reasons. First, Synopsys has never disclosed the parameters of its search. Second, to date it has not produced many SolvNet documents. Third, forcing Ricoh to rely on an abstract or subset of the documents is grossly inefficient. SolvNet allows a user to search by date, version of code, and keywords. It is a useful tool for drilling down and finding specific answers to technical questions. For example, if there is a compatibility issue with different versions of Synopsys software, it is unlikely that Synopsys will have searched for and produced those documents, and even if it had, without access to SolvNet, it would be very difficult for Ricoh to quickly find the relevant information. Synopsys' argument that Ricoh should only look at the production of a subset of SolvNet documents ignores the fact that those documents are not indexed or searchable as are the SolvNet documents.[5]

Balancing the relative burdens shows that Ricoh's request should be granted. The burden of providing access to Synopsys is virtually non-existent; Ricoh already has access (*see* footnote 16, *infra*), and (until it was abruptly withdrawn), so did Ricoh's expert. Synopsys allows access to users who provide a user name and password and supply a Synopsys issued key. Synopsys can easily grant access to Ricoh's attorneys and experts. On the other hand, as explained above, denying Ricoh access creates a significant burden for Ricoh.

Separate and apart from the issue of Ricoh's access is Synopsys' heavy-handed termination of Mr. Black's access to SolvNet and sudden prohibition on his ongoing participation in SNUG. Despite Ricoh's forthright request for permission and repeated assurances that Mr. Black has not used SolvNet for this case, either Synopsys' legal department or its outside counsel decided that Mr. Black should be punished for having agreed to consult with Ricoh.[6] If Synopsys is permitted to succeed in its punishment of Mr. Black for consulting with Ricoh, it will severely handicap his ability to participate in SNUG, detrimentally impact his career (see Exhibit 1, ¶ 6), and subvert the integrity of the judicial system.

---

[5] Synopsys' suggestion that Ricoh should be satisfied with documents that have been printed from SolvNet, scanned, OCR'd, coded, loaded onto another server, then searched, misses the point, for multiple reasons. First, Synopsys has not produced many of the SolvNet documents, and has not said when it will do so. Second, OCR scanning is *never* 100% accurate; there always are "artifacts" that make it less accurate than the original, which in this case is already in digital form on an existing database. Third, it takes a considerable amount of time and money to generate the proper indexing, coding and loading of the documents, and even then it is a far cry from the original. Fourth, this argument fails to acknowledge that Synopsys is not producing all SolvNet documents; indeed, Synopsys suggests that, to the extent that Ricoh has concerns about the admittedly incomplete production, it raise the issue at that time, even though by that time discovery will essentially be over.

[6] This is not the first time that Synopsys has intimidated experts on this matter. Dr. Thomas, the expert retained by Ricoh and then improperly persuaded to switch sides (until this Court ordered Synopsys to terminate its agreement) has advised Ricoh that, based upon his experience with Synopsys and comments made by Synopsys, he wants nothing more to do with this case. Ricoh has been told by other consultants that Synopsys has a reputation for punishing experts who do not toe the Synopsys line.

Honorable Edward M. Chen
November 7, 2005
Page 5

      **2. Synopsys' Position**

      With regard to discovery, Ricoh behaves more like a kid in a candy store than a patent infringement plaintiff that has a clear theory of its case. This is not trivial, and must be stopped. Ricoh's approach to discovery in this case is costing the parties significant sums of money. Ricoh's grab bag of discovery complaints and its mudslinging obscure the sole issue presently before the Court: Ricoh's demand for direct SolvNET access. Ricoh's request for unfettered SolvNet access should be denied because:

1.     Relevant documents from SolvNET (including documents not available through the web interface to which Ricoh seeks access) have been collected and are in the process of being produced *en toto* in a fully searchable form to at least the same degree as the online equivalent;

2.     Ricoh has wholly failed to meet its meet and confer obligations. Had Ricoh bothered to meet and confer on this issue, or even review the documents that have been produced, there would have been no need to waste party and judicial resources.

3.     Footnote 3 in the most recent version of Ricoh's portion of the joint letter identifies for the first time what Ricoh wants: SolvNet Search,[7] online documentation, Scout Newsletter, and Release Notes.[8] All of this information, with the possible exception of the Scout Newsletter, has already been produced by Synopsys, the Customer Defendants, and Ricoh itself. Synopsys produced all available release notes during the discovery stay. *See* SP102060-SP103089. Ricoh has produced on-line

---

[7] If Ricoh had adequately met and conferred, a number of compromises to address its alleged concerns about searchability and OCR accuracy could perhaps be addressed. In particular, Synopsys could have directed Ricoh to all the information it already has. In addition, in the interests of moving past this issue, Synopsys hereby offers simultaneous electronic production of a native format CD of the collected SolvNET materials—including the SolvNET materials not on the web—as well as Bates stamped copies provided Ricoh agrees to refer to the documents by their Bates stamped versions only.

[8] Ricoh's representation of the history of this dispute is inaccurate. Ricoh first requested access to SolvNET via Exhibit 2. Notably, Ricoh did not mention at that time that Mr. Black already had access. The issue was again raised in an oral meet and confer on October 20, 2005. This was the first time that Ricoh mentioned that Mr. Black already had access. On October 26, 2005, Synopsys' counsel informed Ricoh that Synopsys would not allow access and was in fact terminating Mr. Black's access to SolvNET. Ricoh's counsel cautioned that Synopsys' counsel should be "careful" in any written confirmation because it intended to immediately escalate this issue. Written confirmation was sent by Synopsys' counsel on October 26, 2005. Ricoh sent its portion of the draft letter (which is substantially different that what is attached here, and specifically did not include Footnote 3 that lists for the first time what Ricoh wants) on October 28, 2005. See Exh. 5. No other discussions took place. In particular, Ricoh never indicated which portions of SolvNET it was interested in, or that it would not modify the content of SolvNET.

Honorable Edward M. Chen
November 7, 2005
Page 6

documentation regarding different versions of the products in suit. See, e.g., RCL 000610-001329. The Customer Defendants have produced all on-line documentation, manuals, release notes, and all SolvNET articles that were used in conjunction with synthesis of the ASICs at issue with any of the Synopsys product-in-suit during this case. Indeed, hundreds of thousands of pages of such materials have been produced in a searchable format. For example, Aeroflex is in the process of producing approximately 175,000 pages of Synopsys On-line Documentation (also known as SOLD and accessible via SolvNET). *See* Exhibit 6. If Ricoh wants relevant Scout Newsletters, all it needed to do was ask.

4.      Given the extensive documentation that Ricoh already has (but apparently has not reviewed), the Court might wonder what the issue is. The issue is quite significant. Synopsys sells several *hundred* software products *not at issue in this case*, and Ricoh offers no theory on why it should be permitted unfettered access to those items that are clearly *not relevant.* Information regarding these hundreds of products is confidential and proprietary, and Ricoh can offer zero justification for access to it. Since SolvNET access cannot easily be restricted, SolvNET access would provide Ricoh with an opportunity for an endless fishing expedition to query hundreds of software products not at issue and generate confusion by accessing, (re)producing, and selectively quoting from endless versions and materials and manuals that may not even be for products at issue in the litigation without any ability for Synopsys to be aware of the materials that were accessed by Ricoh until the documents are sprung on Synopsys in depositions or other settings.[9]; and

5.      Ricoh has wholly failed to describe with any specificity additional documents it seeks; set forth document requests to which its present request would be responsive; or identified any inadequacies in Synopsys' or the Customer Defendants' production.

At this point, and despite the limited nature of the patent claims at issue (specific inputs, specific processing, and specific outputs), Synopsys and the Customer Defendants have collected and are producing well in excess of 3,000,000 pages of documents[10] – excluding two versions of the Synopsys source code that Ricoh has had

---

[9]  Not only would this be inappropriate, but it will make the job of preparing for the depositions unwieldy and extremely expensive, and as a result will likely also relate in collateral litigation regarding whether witnesses were appropriately prepared if Ricoh is in a position to show a witness any document on any product that it independently locates on SolvNET. The Court must impose limits on the discovery process here – particularly given Ricoh's abject failure to specify what infringes the remaining claims at issue almost three years into this litigation.

[10] Because of the volume of documents that Ricoh insisted needed to be produced in this litigation, the production has taken longer than expected almost exclusively because of the technological limitations of the e-discovery vendors. To process the information that Ricoh has requested is consuming massive

Honorable Edward M. Chen
November 7, 2005
Page 7

for over a year (which would amount to approximately 400,000 pages if printed) and e-mail, which at this point the Customer Defendants estimate will be at least a million e-mails.[11]

Notably, and significantly, a search for relevant and responsive SolvNET documents has been included in the document production. Synopsys searched for documents responsive to Ricoh's document requests, and produced them. Ricoh does not make any complaints about Synopsys' production (some of which it does not have), but rather simply says that it "Ricoh believes will be very helpful to Ricoh's experts and attorneys developing the issues in this case." We are almost three years into this litigation. Ricoh has had the code at issue for over a year, and now has the inputs, and literally mountains of documentation, and Ricoh has been using the very tools at issue for over a decade. It is frustrating, to say the least, for Ricoh to continue to make limitless requests for information in the hopes that it may some day develop a case. Ricoh has wholly failed set forth any grounds on which this Court can or should compel the relief it requests. Ricoh has not: (1) specified the additional documents it seeks; (2) set forth the requests that the documents would be responsive to; or (3) identified any inadequacies in Synopsys' or the Customer Defendants' production. Based of these three grounds alone, Ricoh's motion to compel should be summarily denied.

To the extent that the Court considers Ricoh's request, it should be denied for the additional reasons that Ricoh failed to: (1) forthrightly address the technological considerations that make what has been delivered to Ricoh equally as accessible, or perhaps more accessible, as access to SolvNET; (2) evidenced any understanding of what is accessible on SolvNET versus what is already being produced; or (3) otherwise justify the extraordinary relief it requests that will only further complicate discovery in this case and result in additional collateral disputes as well as further compromise Synopsys' confidential and proprietary information relating to hundreds of products not at issue in this case.

Ricoh's request is based entirely on faulty premises. Most importantly, Synopsys is already producing more relevant and responsive documents than Ricoh could access on SolvNET. Ricoh does not know this only because Ricoh never asked, but instead opted to escalate this issue.[12] Synopsys searched for and produced all

---

amounts of data processing time plus extensive labor costs. Ricoh, Synopsys, and the Customer Defendants are in the process of negotiating a new case schedule in view of the discovery situation. To date, excluding the source code and e-mails, over 1.2 million pages have been produced; another 2.1 million pages have been delivered to vendors.

[11] If they are single-page e-mails, another one million pages will be produced; but if they are multi-page e-mails with attachments (the more likely scenario), several million additional pages will be produced.

[12] Ricoh snipes that "Synopsys has never disclosed the parameters of its search." This is a ridiculous position, and clearly evidences Ricoh's extremely burdensome and entirely unfocused fishing expedition. The Court will undoubtedly not be surprised to hear that Synopsys is searching for documents responsive to Ricoh's document requests – a scope set by Ricoh and as to which there have been limits imposed through negotiations. Moreover, Ricoh never asked Synopsys a single question about the scope

Honorable Edward M. Chen
November 7, 2005
Page 8

articles relating to synthesis– including documents contractually accessible by ASIC designers on SolvNET as well as documents only accessible internally at Synopsys. Thus, Ricoh already has access to all relevant documents available on SolvNET plus internally available documents that it could not access on SolvNET.

Ricoh cannot justify its need for unfettered access. Synopsys has several hundred software products that it sells, but only approximately a half dozen of those products are accused on infringement.

With regard to Ricoh's concern about "abstracts" and general concerns about what will be produced, these concerns are both unfounded and not ripe. The Synopsys collection has been complete for some time, but production to Ricoh has not yet been completed. If Ricoh has specific concerns about what was produced, it can raise them after it has reviewed the production. Until then, this dispute is not even ripe, and we should not be wasting Court resources. With regard to the abstract issue, Synopsys will be producing full articles, not abstracts.

SolvNET access is provided to customers only under a written license agreement that provides that the contents of SolvNET are confidential and that their use of the information must be for purposes of exercising their license grants. Ricoh's access--like all customers--is under a limited license solely for the exercise of their rights in the software. Access for other purposes would be contrary to the terms permitting access to SolvNET by Ricoh.

With regard to David Black issue, this is irrelevant, and is frankly, a tempest in a teapot. First, Mr. Black declares that participation in SNUG is important to him, and that limiting his access to SolvNET will detrimentally impact his career. But, notably, Mr. Black does not even list his participation in SNUG on his resume, and thus, when Synopsys' lawyers reviewed his resume, they were unaware of his on-going involvement in SNUG. Exh. 7. In addition, access to SolvNET could hardly be significant to Mr. Black's endeavors, including his involvement in SNUG, because he only accessed it two times in 2005, and on three different days in 2004. Mr. Black, however, has accessed SolvNet three times since he was retained by Ricoh, and on several occasions immediately before his retention became known to Synopsys. See Exh. 8.

Moreover, Mr. Black's failure to list his SNUG involvement on his resume is significant. When Synopsys lawyers learned of Mr. Black's retention by Ricoh as an expert in this case, Synopsys raised objections. See Exh. 9. Synopsys was informed that Mr. Black was being retained as an employee of Eklectic Ally, the name of his consulting firm at the time he was retained. See Exh. 10. Synopsys investigated Eklectic Ally's on-going involvement with Synopsys and Synopsys competitors, and did not learn about his SolvNET access because he obtained access using his alternate company

---

if its search of SolvNET. Instead, it asked for unfettered access, which was refused. Ricoh then circulated its portion of the joint brief.

Honorable Edward M. Chen
November 7, 2005
Page 9

"hldwizard.com," which is not disclosed on his resume either.  Synopsys' recent activities are administrative cleanups that would have happened in conjunction with the other termination notices it provided back in June of 2004 had Mr. Black's resume disclosed his true involvement with Synopsys.  Indeed, Synopsys only withdrew its objections to Mr. Black based on representations that we would honor his past obligations to protect confidential information that had already been provided to him and as to which he had executed confidentiality agreements.  Exh. 11.

Mr. Black has even continued to abuse his access to Synopsys during the pendency of this very dispute.  On Monday or Tuesday of this week, Mr. Black telephoned current Synopsys employee Ms. Joanne Wegener, head of SNUG, from the Synopsys SURF facility at which Mr. Black is being provided access to the Synopsys source code.  Ms. Wegener was totally unaware of Mr. Black's retention by Ricoh when he called, and agreed to meet Mr. Black at Synopsys.  Mr. Black informed Ms. Wegener for the first time during this encounter that he was working for Ricoh.  Mr. Black, however, assured Ms. Wegener that he only undertook the Ricoh engagement as a business proposition and after investigating the case and assuring himself that Synopsys would come out of this dispute all right.[13]  Synopsys is not interfering with Mr. Black's livelihood, Mr. Black is causing his own problems.

Finally, the other discovery issues raised by Ricoh are entirely premature as well.  Ricoh directly raised the issue of providing native access to the customer designs (what Ricoh labels "ASIC code") on October 26, 2005.  The request is being explored from a technological perspective and Synopsys and the Customer Defendants expect to respond to Ricoh's request imminently.   With regard to the Source Code issue, Ricoh began receiving the Customer Defendant designs several weeks ago, but has *not once* raised the 2003.12 compatibility issue, or access to other source code, or sought Synopsys' input or assistance.  If this is what the dispute is about, this should be discussed between counsel before being raised with the Court.[14]

In sum, Ricoh's request should be summarily denied because Ricoh has not articulated with any specificity why it should have unfettered access to Synopsys' proprietary and confidential information on SolvNET about hundreds of products not in this case that will undoubtedly confound and complicate resolution of the actual issues in this case.  Synopsys and the Customer Defendants have searched for and produced documents from SolvNET that are responsive to Ricoh's documents requests

---

[13] This is not the first time Mr. Black has attempted to play both sides of the fence in this litigation.  He previously approached another Synopsys employee and told him that he has already explained to Ricoh that he could not find infringement, but Ricoh told him to keep looking.  And, in view of Mr. Black's repeated comments in this regard, his access to SolvNET immediately before being retained is quite troubling.

[14] Ricoh misrepresents the code it has.  It actually has two full versions of the code at issue.  In addition, if this is the real issue, this is a non-trivial issue, and further demonstrates why some limits need to be placed here.  During the damages period, Synopsys issued at approximately 30 different versions of the products at issue, each comprising approximately 20 million lines of code.

Honorable Edward M. Chen
November 7, 2005
Page 10

and that are used by the Customer Defendants.  If Ricoh believes this production is inadequate, it can inquire, but until then, this motion is premature, at a minimum.  Further, Ricoh's attempt to insert other discovery issues into this letter is inappropriate and should be ignored and given no weight by this court.

###### 3.  Ricoh's Reply

The parties agreed that, in lieu of Ricoh revising its initial submission to respond to Synopsys' statements, Ricoh would submit a brief response.

*Synopsys has not produced the SolvNet documents.*  Synopsys claims that it has collected (but not yet produced) certain documents from SolvNet, but acknowledges that it has not collected all relevant documents.  Granting Ricoh's experts and counsel access to the SolvNet knowledge base would eliminate future disputes over the sufficiency of Synopsys' production of SolvNet documents.

*Ricoh's request is limited to the ASIC products at issue using the Synopsys tools that were identified last summer.*  Ricoh has no interest in going on a "fishing expedition" into other issues; Ricoh has neither the time nor the inclination, and even if it did, it would be unable to amend its pleadings.  Synopsys does not dispute the core premise of Ricoh's request – that access to SolvNet will help resolve the thorny problem of attempting to compile and debug the product code from each of the ASIC defendants.

*Synopsys ignores the backwards compatibility problem.*  Synopsys states (at footnote 14) that there has been "approximately 30 different versions of the products at issue, each comprising approximately 20 million lines of code."  Synopsys also concedes that it has not produced 28 versions of that code and that virtually all of accused ASIC chips were created using code that has never been produced.[15]  Synopsys, however, has not stipulated that the code it has produced is fully backwards compatible.  Ricoh already knows there will be compatibility problems; its request for access to SolvNet is one of the fastest and most efficient ways to get information necessary to solve the compatibility issues; that is how Synopsys customers solve compatibility issues.  Synopsys' refusal to permit access to SolvNet is symptomatic of its ongoing stonewalling on its refusal to resolve the requirement that the parties stipulate on the code issue.

*Ricoh adequately met and conferred.*  At two separate meet and confers (October 20 and 26), Synopsys' counsel twice explicitly and unconditionally refused Ricoh's request.  Synopsys' counsel refused to explain its refusal, and agreed that the issue was

---

[15] Synopsys has represented in its portion of the letter to the Court that it has produced two versions of the code.  Although Synopsys produced a 2.0 version of code on CD, Synopsys produced only the 2003.12 version for inspection at its Mountain View facility.

Honorable Edward M. Chen
November 7, 2005
Page 11

ripe for this Court.[16]  Synopsys then twice escalated the dispute, by terminating Mr. Black's SolvNet access, and barring his further participation in SNUG.[17]

    *Mr. Black is being punished by Synopsys.*  Synopsys does not deny that, on instructions from its legal department, it is punishing Mr. Black; its only response is that it should have done it earlier.  Synopsys' statement that "Mr. Black is causing his own problems" by consulting for Ricoh is a bald acknowledgment that Synopsys has a practice of punishing witnesses that do not toe the company line.[18]  Intimidating witnesses, however, is never appropriate, and merits the strongest sanction.

    Synopsys makes several unsubstantiated allegations about statements supposedly made by Mr. Black about opinions he allegedly held before his involvement in analyzing the Synopsys source code.  These statements misrepresent the actual content of those discussions.  However, even if such statements were accurate, they are irrelevant for at least two reasons:  first, any opinions he held before or at the beginning of his project for Ricoh were before the Court construed the claims; second, they were before Mr. Black analyzed the source code in view of the Court's claim construction.

    Mr. Black's involvement in SNUG is public knowledge.  Mr. Black's Curriculum Vitae, which was sent to the attorneys for Synopsys in May 2004, lists multiple publications that he authored within SNUG.  Additionally, more than a year ago, Mr. Black informed Ms. Wegener (whom Synopsys indicates is the head of SNUG) that he was involved in legal matters concerning Synopsys, but he was keeping this involvement separate from SNUG.  This arrangement was acceptable to Synopsys until its legal department recently ordered Ms. Wegener to retaliate against Mr. Black.

---

[16] As a Synopsys customer, Ricoh has access to SolvNet.  Such access, however, is for purposes not related to this litigation.

[17] At footnote 8, Synopsys implies Ricoh did not state what specific discovery it was seeking.  However, on October 17, 2005, Ricoh specifically requested "full search and read access to SolvNet." (Exhibit 2).  Synopsys is well aware that Ricoh did not request the ability to modify the contents of SolvNet.  Ricoh again specifically stated what it was seeking at footnote 2 of its October 28, 2005 draft of this letter brief to the Court.  (Exhibit 5).  Nevertheless, Synopsys' footnote 8 accuses Ricoh of not having done so.  Footnote 2 of Ricoh's October 28, 2005 draft (Exhibit 5) is identical to footnote 3, *supra*, of the final letter brief.

[18] Synopsys does not deny that it also threatened Dr. Thomas so that he would not cooperate with Ricoh.

DSMDB.2001777.3

Honorable Edward M. Chen
November 7, 2005
Page 12


Sincerely,


/s/
Gary M. Hoffman
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Attorneys for Ricoh

/s/
Teresa M. Corbin
Denise M. De Mory
HOWREY LLP
525 Market Street
Suite 3600
San Francisco, CA  94105-2708
Phone: (415) 848-4944
Fax: (415) 848-4999

Attorneys for Synopsys

1   Gary M. Hoffman (*Pro Hac Vice*)
    Kenneth W. Brothers (*Pro Hac Vice*)
2   DICKSTEIN SHAPIRO MORIN
      & OSHINSKY, LLP
3   2101 L Street, NW
    Washington, DC  20037-1526
4   Phone (202) 785-9700
    Fax (202) 887-0689
5
    Edward A. Meilman (*Pro Hac Vice*)
6   DICKSTEIN SHAPIRO MORIN
      & OSHINSKY, LLP
7   1177 Avenue of the Americas
    New York, New York  10036-2714
8   Phone (212) 835-1400
    Fax (212) 997-9880
9
    Jeffrey B. Demain, State Bar No. 126715
10  Jonathan Weissglass, State Bar No. 185008
    ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
11  177 Post Street, Suite 300
    San Francisco, California  94108
12  Phone  (415) 421-7151
    Fax (415) 362-8064
13
14  Attorneys for Plaintiff Ricoh Company, Ltd.

15              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
16               SAN FRANCISCO DIVISION

17

18  SYNOPSYS, INC.,                          )
                                             )   **CASE NO. C-03-2289-MJJ**
19                 Plaintiff,                 )
                                             )   **CASE NO. C-03-4669-MJJ**
20          vs.                               )
                                             )
21  RICOH COMPANY, LTD.,                     )
                                             )
22                 Defendant.                 )
                                             )
23  RICOH COMPANY, LTD.,                     )   **DECLARATION OF DAVID BLACK**
                                             )
24                 Plaintiff,                 )
                                             )
25          vs.                               )
                                             )
26  AEROFLEX INCORPORATED, et al.,           )
                                             )
27                 Defendants                 )
                                             )
28

1    I, David C. Black, state and declare under penalty of perjury:

2        1.   I am a consulting expert to Dickstein, Shapiro, Morin & Oshinsky LLP in the above-

3    captioned litigation.  My consulting work on this matter was disclosed to Synopsys and the Aeroflex

4    defendants in May 2004 with no objection.

5        2.   I am a former employee of Synopsys, and currently am a consultant for companies that

6    have requested my assistance with respect to Synopsys products and services.

7        3.   I am personally familiar with Synopsys SolvNet.  I have only used Synopsys SolvNet for

8    authorized purposes in conjunction with my participation in the Synopsys Users' Group, SNUG.  SNUG

9    is a Synopsys-sponsored consortium of Synopsys employees, former employees, end users and

10   consultants who have a common professional interest in Synopsys products and services.

11       4.   Synopsys is aware of my participation in SNUG.  I was the first Technical Chair of

12   SNUG.  Since that time, I have been on the Technical Committee that reviews and edits the papers that

13   will be presented at SNUG Boston and San Jose.  I have personally presented papers at six SNUG

14   conferences.

15       5.   Synopsys has granted me access to Solvnet for the express purpose of continued

16   participation in SNUG.  I do not receive any remuneration for my participation in SNUG.  I participate

17   in SNUG to maintain relationships with the electronic design community and stay current with

18   technology trends.

19       6.   My participation in SNUG is important to me personally and professionally.  Limiting

20   my access to SolvNet will severely handicap my ability to participate in SNUG and detrimentally impact

21   my career.

22       7.   I have never accessed Synopsys SolvNet for the purpose of the Ricoh litigation or for any

23   other improper purpose.

24                                    Dated:  October 28, 2005

25

26                                    By:  _David C. Black_____

27

28

DSMDB.1999547.1

**Brothers, Kenneth**

| | |
|---|---|
| **From:** | Brothers, Kenneth |
| **Sent:** | Monday, October 17, 2005 12:22 PM |
| **To:** | DeMory, Denise; 'Fink, Jacky' |
| **Subject:** | Stipulation, production, Solvnet, TFC |

Denise and Jacky:

Have you been able to look at the proposed stipulation re the FIC's? The original date (set in July) was today, and although we have agreed to a postponement, we need to get something on file with the court confirming it, so please confirm the proposal that I sent you last week is OK to file.

We also have some questions re the document production, and would like your consent for our expert and attorneys to have full search and read access to Solvnet (https://solvnet.synopsys.com).

Are you available for a telephone call at about 2 pm PT/5 pm ET today?

Thanks, Ken

Ken Brothers
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington DC 20037
phone (202) 429-2184
fax (202) 887-0689

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

**Denise M. De Mory**
Partner
T 415.848.4983
F 415.848.4999
demoryd@howrey.com
File 06816.0060.000000

October 26, 2005

**VIA PDF & U.S. MAIL**

Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037-1526

> Re:  *Synopsys v. Ricoh Company, Ltd.,*
>       **Case No. C03-2289 MJJ (EMC)**
>       *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.,*
>       **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

Please be advised the Synopsys denies your request for Synopsys to allow David Black access to SolvNet for purposes of this litigation. As I informed you, Synopsys will produce relevant and responsive materials from the SolvNet site.

In addition, please be advised that Mr. Black's access to SolvNet has been terminated, and Synopsys in investigating Mr. Black's access to SolvNet during the pendancy of this litigation. If Mr. Black accessed SolvNet for purposes of this litigation, he breached his access agreement with Synopsys. If you directed him to do so, or were aware that he did so, you participated in the breach. If Synopsys discovers that such a breach occurred, it will pursue all permissible remedies. Please provide a copy of this correspondence to Mr. Black, and his company, and inform me if you are aware of any such breach.

Regards,

Denise M. De Mory

DMD:plk

cc:   Gary Hoffman, Esq. (via e-mail only)
      Edward Meilman, Esq. (via e-mail only)
      Eric Oliver, Esq. (via e-mail only)
      DeAnna Allen, Esq. (via e-mail only)
      Michael Weinstein, Esq. (via e-mail only)
      Seymour Seyoum (via e-mail only)

AMSTERDAM  BRUSSELS  CHICAGO  HOUSTON  IRVINE  LONDON
LOS ANGELES  MENLO PARK  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  WASHINGTON, DC

DM_US\8269896.v1

REDACTED

Begin forwarded message:

> From: "Joanne Wegener" <Joanne.Wegener@synopsys.com>
> Date: November 1, 2005 1:04:06 PM CST
> To: "David C Black" <dcblack@eslx.com>
> Subject: Tech Committee membership
>
> Hi David,
> Well, I'm afraid I must terminate your membership to the SNUG
> technical
> committee.  Of course, this is nothing personal.  I've been instructed
> by legal to do so.
>
> I will let the team know.  Once this is over, we can see about getting
> you re-instated.
>
> Thanks for all the years of contribution.
> Joanne
>
>
> Joanne Wegener
> Manager, Synopsys Users Group
> Synopsys, Inc.
> 700 E Middlefield Rd
> Mountain View, CA 94043
> (650) 584 1557
> joanne.wegener@synopsys.com
>

David C Black
Your innovative SystemC design professional
http://www.ESLX.com
Work: +1512.288.3783 Skype:dcblack
FAX/message: +1888.467.4609

## DeMory, Denise

| | |
|---|---|
| **From:** | Brothers, Kenneth [BrothersK@dsmo.com] |
| **Sent:** | Friday, October 28, 2005 10:25 AM |
| **To:** | HowreyRicoh432 |
| **Cc:** | _Hoffman, Gary; _Allen, DeAnna; McCandless, Douglas |
| **Subject:** | Draft joint letter re SolvNet |

Denise and Jacky:

As we have discussed during our meet and confer sessions, enclosed is our portion of the joint letter to the Court re the SolvNet issue. Please provide your comments to us by 4 pm ET on Monday 10/31.

Thanks, Ken

Ken Brothers
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington DC 20037
phone (202) 429-2184
fax (202) 887-0689

---------------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com
==================================================================================

11/3/2005

October __, 2005

**VIA ELECTRONIC FILING**

Honorable Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94102

     Re:    Ricoh v. Aeroflex, et al., Case No. CV-03-4669 MJJ (EMC)
              Synopsys v. Ricoh, Case No. CV-03-2289 MJJ (EMC)

Dear Judge Chen:

        The parties submit this joint letter on a discovery dispute.

    **1. Ricoh's Position.**

        Ricoh has requested that Synopsys permit Ricoh's experts and attorneys to access an on-line customer-oriented knowledge base named "SolvNet". SolvNet contains multiple applications that are available to Synopsys customers including the SolvNet Knowledge Base of self-help documents and online product documentation. SolvNet is routinely used by ASIC designers, such as the Aeroflex defendants, as a resource to optimize their use of the Synopsys software that has been placed at issue in this litigation. ASIC designers are able to search the online repository of information to quickly find solutions to technical issues arising during synthesis. SolvNet contains a large volume of information that Ricoh believes will be very helpful to Ricoh's experts and attorneys developing the issues in this case.

        As an authorized licensee of Synopsys, Ricoh has full access to the SolvNet knowledge base. In addition, one of Ricoh's consulting experts, Mr. David C. Black, has had full access to SolvNet for many years; nevertheless, Mr. Black has not used SolvNet for purposes of this litigation without express permission, which was the genesis of this dispute.

        About two weeks ago, defendant Aeroflex produced for the first time the actual product code for some (but not all) of the Aeroflex ASIC chips at issue. The ASIC actual product code for some of the AMI and Matrox chips should be produced in the next few weeks.[1] After initially reviewing that product code, Mr. Black and Ricoh's counsel believe that access to SolvNet will substantially assist in their development of their analysis of that code and preparation of the Final Infringement Contentions.

---

[1] Synopsys and the Aeroflex defendants did not meet their target date of October 7 for the completion of the document production, and are currently unable to provide a firm estimate of when they will complete the production of responsive documents. The parties continue to negotiate regarding the case schedule, including new dates for the Final Infringement Contentions, and anticipate that they will provide a revised schedule to the Court in the near future.

Honorable Edward M. Chen
October __, 2005
Page 2

On Monday, October 17, 2005, Ricoh's counsel sent an email requesting "consent for our expert and attorneys to have full search and read access to SolvNet."[2] During meet and confer sessions on October 20 and 26, counsel for Ricoh explained that, even though it and one of its experts already had access to SolvNet for other purposes unrelated to this litigation, we believed that it was appropriate to formally request access for purposes of this litigation. We made clear that our access would be to review existing information only, and that we would not submit new queries or otherwise try to add or modify the content of the SolvNet knowledge base. We made clear that Dr. Black had not accessed SolvNet for purposes of this litigation. Unfortunately, counsel for Synopsys flatly refused our request, and refused to reconsider it. After our second meet and confer on this issue, counsel for Synopsys sent a letter that not only confirmed its refusal, but unilaterally announced that *Synopsys was terminating Dr. Black's access to SolvNet* for any purpose including his work unrelated to this litigation. See Exhibit __.

Now that the ASIC defendants are finally starting to produce the code for the actual accused ASIC products, Ricoh believes that it should have access to SolvNet to assist its analysis of the product packages and to make Ricoh's final infringement contentions more precise. Ricoh should have the same tools and information available to it as was available to the ASIC defendants while they were developing of the accused ASICS. Ricoh should not be forced to reinvent the wheel, particularly when Ricoh does not have the system knowledge base of Synopsys as set forth in the SolvNet database.

Although Synopsys has not explained why it is refusing to permit Ricoh's experts and counsel access to SolvNet, Synopsys may argue that it will produce excerpts from SolvNet that it considers to be relevant. This is a poor substitute, for several reasons. First, Synopsys has never disclosed the parameters of its search. Second, to date it has not produced the documents. Third, forcing Ricoh to relay on an abstract is grossly inefficient. SolvNet allows a user to search by date, version of code, and keywords. It is a useful tool for drilling down and finding specific answers to technical questions. For example, if there is a compatibility issue with different versions of Synopsys software, it is unlikely that Synopsys will have searched for and produced those documents, and even if it had, without access to SolvNet, it would be very difficult for Ricoh to quickly find the relevant information.

Balancing the relative burdens shows that Ricoh's request should be granted. The burden of providing access to Synopsys is virtually non-existent; Ricoh already has access, and (until it was abruptly withdrawn) so did Ricoh's expert. Synopsys allows access to users who provide a user name and password and supply a Synopsys issued key. Synopsys can easily grant access to Ricoh's attorneys and experts. On the other hand, as explained above, denying Ricoh access creates a significant burden for Ricoh.

---

[2] See Exhibit __. SolvNet contains multiple applications that are available for Synopsys customers who have a support maintenance agreement with Synopsys. These applications include SolvNet Search, Enter a Support Call, Support Case Tracker, Customer Site Info, Scout Newsletter, Release Notes, Request a SmartModel Build, and Electronic Software Transfer (EST). While SolvNet contains all of these applications, Ricoh has only requested access to the searchable and readable portions of the system, such as SolvNet Search, online documentation, Scout Newsletter, and Release Notes. Ricoh does not request access to ask questions or in any other way communicate with Synopsys employees through SolvNet.

Honorable Edward M. Chen
October __, 2005
Page 3

Separate and apart from the issue of Ricoh's access it Synopsys' heavy-handed termination of Mr. Black's access to SolvNet. Despite Ricoh's forthright request for permission and repeated assurances that Mr. Black has not used SolvNet for this case, either Synopsys or its attorneys decided that Mr. Black should be punished, apparently for having agreed to consult with Ricoh.[3] As set forth in the accompanying declaration attached as Exhibit __, Mr. Black's access to SolvNet is important to his livelihood. His use of SolvNet has been limited to his participation in the Synopsys User's Group, SNUG. Mr. Black actively participates in SNUG; he held the first Technical Chair position, and has been a member of the Technical Committee for nearly ten years. As a member of that Committee, Mr. Black reviews papers that will be presented at upcoming SNUG conferences and has personally presented papers at six SUNG conferences. If Synopsys is permitted to succeed in its punishment of Mr. Black for consulting with Ricoh, it will severely handicap his ability to participate in SNUG, detrimentally impact his career, and subvert the integrity of the judicial system.

## 2. Synopsys' Position

Sincerely,

Gary M. Hoffman
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Attorneys for Ricoh

Teresa M. Corbin
Denise DeMory
HOWREY LLP
525 Market Street
Suite 3600
San Francisco, CA  94105-2708
Phone: (415) 848-4944
Fax: (415) 848-4999

Attorneys for Synopsys

---

[3] This is not the first time that Synopsys has intimidated experts on this matter. Dr. Thomas, the expert retained by Ricoh and then improperly persuaded to switch sides (until this Court ordered Synopsys to terminate its agreement) has advised Ricoh that, based upon his experience with Synopsys and comments made by Synopsys, he wants nothing more to do with this case. Ricoh has been told by other consultants that Synopsys has a reputation for punishing experts who do not toe the Synopsys line.

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

**Denise M. De Mory**
Partner
T 415.848.4983
F 415.848.4999
demoryd@howrey.com
File 06816.0060.000000

November 3, 2005

**VIA PDF & U.S. MAIL**

Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037-1526

> Re: *Synopsys v. Ricoh Company, Ltd.*,
>     **Case No. C03-2289 MJJ (EMC)**
>     *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.*,
>     **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

Here is an update on the state of the document production. We expect that with the exceptions set forth below the document production will be substantially complete as of Friday of this week. The first exception is approximately 175,000 pages of SOLD documentation from Aeroflex. We expect that these documents will be largely duplicative of documents already produced by the Customer Defendants. Our target date for production of these documents in next Friday, November 11, 2005. The second exception is the remaining product data for the Matrox entities. We estimate that there are approximately 1,000,000 pages of product data yet to be produced. We expect that this production will be complete by November 23, 2005. Given that we have set up the schedule such that the Matrox depositions can be taken in January, and your contentions will not be due until February, we do not believe this should be a problem. The final exception is the remainder of the e-mail production. By this Friday, you will have received the remainder of the Synopsys e-mail production. You also have already received some e-mail from the Customer Defendants. We are still investigating production options (as to which I hope to make a proposal to you tomorrow), and until the production issues are resolved, I cannot give you a firm estimate at this time. I am hopeful that we can reach closure on this issue by the end of the week. Although I am not certain about the state of the e-mail production, for purposes of evaluating the scheduling proposal, assume that at the outside, all non-Matrox e-mail will be produced in a searchable form by December 9, 2005, and that the Matrox e-mail will be produced in a searchable form by January 6, 2006.

I remind you that at this point your contentions are still due on November 16, 2005. I am hopeful that we can reach resolution on this issue in the near future.

Regards,

Denise M. De Mory

AMSTERDAM  BRUSSELS  CHICAGO  HOUSTON  IRVINE  LONDON
LOS ANGELES  MENLO PARK  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  WASHINGTON, DC

**HOWREY**

Kenneth W. Brothers, Esq.
November 3, 2005
Page 2

DMD:plk

cc:    Gary Hoffman, Esq. (via e-mail only)
       Edward Meilman, Esq. (via e-mail only)
       Eric Oliver, Esq. (via e-mail only)
       DeAnna Allen, Esq. (via e-mail only)
       Michael Weinstein, Esq. (via e-mail only)
       Seymour Seyoum (via e-mail only)

# DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 429-2184*
*E-Mail Address: BrothersK@dsmo.com*

May 27, 2004

**VIA FACSIMILE**
**(650) 463-8400**

Christopher Kelley, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA 94025

Re: Ricoh v. Aeroflex: Undertaking

Dear Chris:

Attached please find the curriculum vitae of Mr. David Black along with signed acknowledgements of the protective order in each the Ricoh v. Aeroflex et al. and Synopsys v. Ricoh cases. Please let us know whether you have any objection to Mr. Black on or before Monday, June 7, 2004.

Sincerely,

DeAnna Allen

DA/bh

cc:  Tom Mavrakakis
     Gary Hoffman
     Eric Oliver
     Edward Meilman

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

1776420 v1; 121X8011.DOC

# DAVID C. BLACK
## Curriculum Vitae
### Page 1

## Summary

Mr. David C. Black is a well-known logic designer who has successfully created reuseable components in state-of-the-art technologies using advanced methodologies, design automation, and high level design practices. System level designs described with executable specifications have enabled first time success on digital design projects. With a diversity of hardware and software backgrounds, he has successfully integrated new EDA tools and improved methodology while mentoring team members. He has received recognitions as an excellent teacher from students who were taught effective digital design methods including implementation and verification using EDA tools.

As a consultant, he has worked with companies such as: Nortel Networks; ARM; Cadence; Datacube; Texas Instruments; Lockheed-Martin; Northrup-Gruman; Compaq Computers; Conexant; PMC Sierra; Teradyne; and Tundra Semi.

Mr. Black has a strong understanding of the entire ASIC design process from specification through verification, implementation, synthesis, layout and test generation, with an excellent understanding of methodologies. This includes a deep understanding of verification and implementaton in multiple technologies. He has on-the-job proficiency with multiple EDA tools, and a working knowledge of many programming and implementation languages.

- CoCentric SystemStudio
- C, C++, STL
- bash, ksh, csh, sh
- Sun OS, Solaris
- BehavioralCompiler
- SystemC
- Unix utilities awk, sed
- HPUX
- DesignCompiler, PhyicalCompiler
- Verilog1995, 2001, SystemVerilog
- FORTH
- Linux
- Microsoft Office
- PrimeTime, Motive

- VHDL
- Assembly
- Mac OS X
- Test Compiler, TetraMax
- Perl, Perl5
- HTML
- DOS
- Verilog-XL, NC, VCS, MTI
- TCL, Tk
- SignalScan, Undertow, DeBussy
- Windows
- Vera, e-Specman
- nfs, samba, ftp, rsync
- ssh, pgp, gpg, crypt, des

# DAVID C. BLACK
Curriculum Vitae
Page 2

## Professional Experience

**EKLECTIC ALLY INC.**, Austin, Texas
**Chief Technical Officer and Consultant, 2003 - present**
Focus on effective hardware, software co-design methodologies including higher levels of modeling and reuse.

**SYNOPSYS INC.**, Austin, Texas
**Staff Professional Consultant, 2001 - 2002**
Assigned to teaching, methodology, behavioral compiler technology and general design/verification issues for customers. Worked with clients performing verification using SystemC co-simulating with VHDL, synthesis of IP including Power Compiler, DFT Compiler, Physical Synthesis and TetraMax technologies.

**QUALIS DESIGN CORP.**, Austin, Texas
**Principal Engineer, 1997 - 2001**
Assigned to teaching, methodology, behavioral compiler technology and general design/verification issues for customers. Worked with clients on large (8M gates) designs in multiple areas of technology (IC test, T1 communications, multimedia, ATM and graphics processing). Responsibilities ranged from methodology to implementation to verification. Aided clients understanding issues migrating from one simulator to another. Provided automated regression environments for both verification and synthesis. Taught numerous classes in Verilog HDL for both verification and synthesis. Learned Verisity's e Specman Elite for verification. Studied System C and Vera. Established the first remote office for Qualis in Austin. Participated in corporate planning and cultural dynamics.

**APPLE COMPUTER INC.**, Austin, Texas
**Mutlti-media Design Scientist, 1994 - 1997**
Hardware/ASIC design engineer on Set Top Box and Multi-media product development. Synthesized multi-media ASIC (0.65 micron CMOS 50K gate array 240PQFP 40MHz) including full scan test. Designing Video/Graphics ASICs. 100K+ embedded array using Synopsys Behavioral Compiler and synthesis tools. Design includes full scan and JTAG. Responsible for setup and maintenance of EDA environment (HP & Sun UNIX workstations).

**TANDEM COMPUTERS INC.** (acquired by Compaq), Austin, Texas
**Staff Engineer, 1988 - 1994**
Assigned to S2 Integrity development, a fault-tolerant RISC based UNIX platform. Assigned physical design of large ASIC (0.5 micron CMOS 200K cell-array 391CPGA 50MHz). Responsibilities included Synopsys synthesis, Cadence Preview floor planning, Synopsys test generation and back-end processing for vendor.

# DAVID C. BLACK
**Curriculum Vitae**
**Page 3**

Provided key tools and advice to other four ASIC design groups on project. As project specific tool smith/ASIC advisor promoted, learned, taught and augmented a large set of heterogeneous CAE tools on Sun/HP workstations. Key player in development of ASIC design methodology. Tools included Verilog, Synopsys, Compass, Motive, Valid, Allegro, IKOS.

Major role in the development of a large ASIC (1 micron CMOS 50K gate-array 25MHz) using synthesized HDL methodology with full internal scan and JTAG boundary scan. Independently designed (on Dazix) a small ASIC and second source (1st pass success). Qualified ethernet controllers. Implemented I/O interface including scan based PAL.

**ROLM CORPORATION** (acquired by IBM and subsequently Siemens), Austin, Texas
**Advisory Engineer, 1981 - 1988**
Assigned to Telephone Products R&D. Hardware/system engineer on ISDN product development. Architect for large ASIC (10,000+ gate standard cell) project to cost reduce/enhance existing product. Developed DFT methodology.

Project Engineer/Project Engineer on product cost reduction effort, also Project/Design Engineer on new ASIC ( Application Specific Integrated Circuit) of 2,000+ gate standard cell with unqualified first time success. Proposed/architected highly successful RP244 product. Three patents granted.

Designed ASIC (1200 gates) using standard cell methodology had first time success. Substantial CAE (Daisy et al) experience. Directed university co-op students' projects. Investigated and directed implementation (MSI TTL) of several architectures for PBX data communications networking.

Designed and implemented firmware (Intel 8051) for data communications product used in all ROLM desktop products (Intel 8088 based). Designed telephone and data communications hardware (Intel 8051 & 80C49) for Cypress; product (design was subsequently reused successfully in Cedar; and Juniper; products). Recognized as ROLM Outstanding Contributor 1985.

**DATA GENERAL CORPORATION** (acquired by Storage Technology), Austin, Texas
**Engineer I, 1980 - 1981**
Assigned to alphanumeric CRT terminals R&D. Worked on firmware (Motorola 6800 assy) for color alphanumeric terminal marketed as Dasher; D280C. Designed software tool (Pascal) to aid use of redefineable character set feature in new terminals. Continuing engineering of advanced terminal (Motorola 6809 based). CAE (TEGAS) class.

# DAVID C. BLACK
### Curriculum Vitae
### Page 4

## Publications

*System C: From the Ground Up*, Publisher: Kluwer-Academic Publishers, 2004.

"Avoiding Verilog Nightmares during Verification," *SNUG*, March 2000.

"Pushing the Limits with Behavioral Compiler," *SNUG* March 1999.

"LOGSCAN: A Configurable Error Management Utility," *SNUG* March 1998

"Designing a 100-kgate Set-Top Box ASIC Using Behavioral Compiler with Verilog," *Integrated System Design*, June 1996.

## Patents

USPN 5,345,495 "Data diagnostics with LEDs on the face of a telephone," Sept. 6, 1994.

USPN 5,008,902 "Automatic Baud Rate Detection," April 16, 1991.

USPN 4,928,306 "Dynamically configurable telephone," May 22, 1990.

## Education

B.S.E.E. and B.A.C.S., Rice University, Houston, Texas 1980
Emphasis in digital electronics and computer science. Minor in biomedical electrical engineering.



EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

SYNOPSYS, INC.,                          ) CASE NO. C03-2289-MJJ (EMC)
                                         )
            Plaintiff,                   )
                                         )
vs.                                      )
                                         )
RICOH COMPANY, LTD.,                     )
                                         )
            Defendant.                   )

## UNDERTAKING

My name is **David C Black**. I hereby acknowledge that I have been provided with a copy of, have read, and am fully familiar with, the terms of the Stipulated Protective Order entered in this action on **May 27**, 2004. I agree to be bound by, and to comply fully with, the terms of the Stipulated Protective Order. I agree not to disclose or disseminate any "Confidential Information," as defined by the Stipulated Protective Order, except as permitted therein.

I hereby submit myself to the jurisdiction of the United States District Court for the Northern District of California, San Francisco Division in connection with the enforcement of the Stipulated Protective Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **May 27**, 2004.

*David C Black*

Digitally signed by David C Black
DN: CN = David C Black, C = US, O
= Silicon Ally, Inc., OU = Texas
Corporation
Location: Austin, TX
Date: 2004.05.27 08:36:49 -05'00'

[PROPOSED] STIPULATED PROTECTIVE ORDER
CASE NO. C03-2289 MJJ (EMC)

1

EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,       )
                           )
          Plaintiff,       )      Case No. C03-04669 MJJ (EMC)
                           )
     vs.                   )
                           )
AEROFLEX ET AL.,           )
                           )
          Defendants.      )
                           )

## UNDERTAKING

My name is  David C. Black  . I hereby acknowledge that I have been provided with a copy of, have read, and am fully familiar with, the terms of the Stipulated Protective Order entered in this action by the United Stated District Court for the District of Delaware on June 9 , 2003. I agree to be bound by, and to comply fully with, the terms of the Protective Order. I agree not to disclose or disseminate any "Confidential Information," as defined by the Stipulated Protective Order, except as permitted therein.

I hereby submit myself to the jurisdiction of the United States District Court for the Northern District of California, San Francisco Division in connection with the enforcement of the Stipulated Protective Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 27 , 2004.

CASE NO. C03-04669 MJJ (EMC)

STIPULATED PROTECTIVE ORDER - Page 1

# FAX TRANSMISSION

**DATE:** May 27, 2004

**CLIENT NO.:** R2180.0171

**MESSAGE TO:** Christopher Kelley, Esq.

**cc:**

**COMPANY:** Howrey Simon Arnold & White

**FAX NUMBER:** (650) 463-8400

**PHONE:** (650) 463-8100

**FROM:** DeAnna Allen

**PHONE:** (202) 572-2656

**PAGES (Including Cover Sheet):** ___8___  **HARD COPY TO FOLLOW:** _____ YES ___x___ NO

| | SENT BY: | | DATE/TIME: | |
|---|---|---|---|---|

**MESSAGE:**

If your receipt of this transmission is in error, please notify this firm immediately by collect call to our Facsimile Department at 202-861-9106, and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated

1786557 v1; 11V5T011.DOC

RECEIVED TIME MAY. 27. 2:37PM

```
CN Telnet jan                                                           _ □ X
> hostname
jan.synopsys.com
> sqlplus ods@dsphere

SQL*Plus: Release 8.1.7.0.0 - Production on Thu Nov 3 12:29:11 2005

(c) Copyright 2000 Oracle Corporation.  All rights reserved.

Enter password:

Connected to:
Oracle8i Enterprise Edition Release 8.1.7.4.0 - Production
With the Partitioning option
JServer Release 8.1.7.4.0 - Production

SQL> set pagesize 100;
SQL> select to_char(start_time, 'YYYY/MM/DD HH24:MI:SS') from r_access a, r_logi
n l where a.seq = l.seq and a.username = 'dcblack';

TO_CHAR(START_TIME,
-------------------
2003/01/13 19:06:07
2003/03/06 19:26:41
2003/03/11 14:01:10
2003/03/26 17:59:20
2003/03/26 19:52:43
2003/07/14 12:30:29
2003/07/15 20:40:39
2003/08/07 16:40:33
2003/09/03 15:34:53
2003/08/30 05:26:11
2004/03/05 16:50:37
2004/03/05 16:58:05
2004/03/05 17:19:26
2004/03/12 09:20:32
2004/11/16 07:43:35
2005/02/24 10:43:51
2005/04/18 14:39:06

17 rows selected.

SQL>
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

June 4, 2004

**VIA FACSIMILE AND U.S. MAIL**

Kenneth W. Brothers
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street NW
Washington, D.C.  20037

Re:  *Synopsys, Inc v. Ricoh Company, Ltd.*
     Case No. CV 03-02289 MJJ (MCC)
     *Ricoh Company, Ltd. v. Aeroflex, Inc.*
     Case No. CV 03-04669 MJJ (MCC)

Dear Ken:

  We are continuing our investigation regarding Ricoh's proposed retention of Mr. David C. Black as an expert consultant in these matters, but require additional information in order to make a determination whether it is necessary to move for a protective order preventing Mr. Black from having access to documents and information designated confidential under the protective order.

  First, while Ricoh has sought to have Mr. Black entered under the protective order individually, it is apparent that he is an employee of Eklectic Ally, Inc. ("Eklectic").  Please clarify if Mr. Black will be consulting in his personal capacity, or if Ricoh has engaged Mr. Black's employer Eklectic to assist Ricoh.  If Ricoh has engaged Eklectic, please identify all individuals within Eklectic to whom Ricoh intends to provide confidential documents and information.

  Second, Eklectic identifies numerous competitors of Synopsys as allies on its webpage. In order to determine whether or not Ricoh's proposed retention of Eklectic puts Synopsys' trade secrets and other confidential information at risk of disclosure to its competitors we need to know the current status of Eklectic's relationship with the following companies and the nature of any work done for these companies for the past two years, including all individuals within Eklectic who worked for these companies:

   1) Cadence Design Systems, Inc.
   2) CoWare, Inc.

AMSTERDAM BRUSSELS CHICAGO HOUSTON IRVINE LONDON LOS ANGELES MENLO PARK SAN FRANCISCO WASHINGTON, DC

**HOWREY**
ATTORNEYS AT LAW

Kenneth W. Brothers
June 4, 2004
Page 2

    3)  Forte Design Systems
    4)  Summit Design, Inc.
    5)  Willamette HDL

        After we have the above information, we will be able to make a determination whether it is necessary to move for a protective order.

        It is my understanding that Mr. Mavrakakis spoke with you regarding the need for additional time to complete our investigation regarding Mr. Black before filing a motion under the terms of the protective order, if necessary, and that you would let us know today if you would agree to an extension.

                        Very truly yours,

                        Erik K. Moller

EKM:gj

cc:    Edward A. Meilman
        Gary M. Hoffman

```
* * *  COMMUNICATION RESULT REPORT ( JUN.  4. 2004 12:24PM )  * * *
                                                                    TTI
TRANSMITTED/STORED  JUN.  4. 2004 12:23PM
FILE MODE        OPTION               ADDRESS            RESULT    PAGE
--------------------------------------------------------------------------------
5010 MEMORY TX                        912028870689       OK        3/3


--------------------------------------------------------------------------------
   REASON FOR ERROR
      E-1) HANG UP OR LINE FAIL              E-2) BUSY
      E-3) NO ANSWER                         E-4) NO FACSIMILE CONNECTION
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:**   June 4, 2004

**TO:**

1. **NAME:** Ken Brothers, Gary Hoffman    **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** Washington, DC    **FAX #:** (202) 887-0689    **PHONE #:** (202) 785-9700

2. **NAME:** Edward A. Meilman    **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** New York, NY    **FAX #:** (212) 997-9880    **PHONE #:** (212) 835-1400

3. **NAME:** _____    **COMPANY:** _____
   **CITY:** _____    **FAX #:** _____    **PHONE #:** _____

4. **NAME:** _____    **COMPANY:** _____
   **CITY:** _____    **FAX #:** _____    **PHONE #:** _____

5. **NAME:** _____    **COMPANY:** _____
   **CITY:** _____    **FAX #:** _____    **PHONE #:** _____

**FROM:**    **NAME:**    Erik K. Moller

**DIRECT DIAL NUMBER:** (650) 463-8175    **USER ID:** 1680

**NUMBER OF PAGES, INCLUDING COVER:** 3    **CHARGE NUMBER:** 06816.0060 and .0061

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER: _____

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 650.463.8105.

```
x  x  x   COMMUNICATION RESULT REPORT ( JUN. 4.2004 12:26PM )  x  x  x
                                                          T T I
TRANSMITTED/STORED  JUN. 4. 2004 12:23PM
FILE MODE            OPTION              ADDRESS                    RESULT    PAGE
--------------------------------------------------------------------------------
5011 MEMORY TX                           912129979880               OK       3/3



-----------------------------------------------------------------------------
     REASON FOR ERROR
     E-1) HANG UP OR LINE FAIL                  E-2) BUSY
     E-3) NO ANSWER                             E-4) NO FACSIMILE CONNECTION
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** June 4, 2004

**TO:**

1. **NAME:** Ken Brothers, Gary Hoffman   **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** Washington, DC   **FAX #:** (202) 887-0689   **PHONE #:** (202) 785-9700

2. **NAME:** Edward A. Meilman   **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** New York, NY   **FAX #:** (212) 997-9880   **PHONE #:** (212) 835-1400

3. **NAME:**   **COMPANY:**
   **CITY:**   **FAX #:**   **PHONE #:**

4. **NAME:**   **COMPANY:**
   **CITY:**   **FAX #:**   **PHONE #:**

5. **NAME:**   **COMPANY:**
   **CITY:**   **FAX #:**   **PHONE #:**

**FROM:**   **NAME:** Erik K. Moller

   **DIRECT DIAL NUMBER:** (650) 463-8175   **USER ID:** 1680

**NUMBER OF PAGES, INCLUDING COVER:** 3   **CHARGE NUMBER:** 06816.0060 and .0061

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL   ☐ OVERNIGHT DELIVERY   ☐ HAND DELIVERY   ☐ OTHER: _____

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** June 4, 2004

**TO:**

1. **NAME:** Ken Brothers, Gary Hoffman **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** Washington, DC **FAX #:** (202) 887-0689 **PHONE #:** (202) 785-9700

2. **NAME:** Edward A. Meilman **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** New York, NY **FAX #:** (212) 997-9880 **PHONE #:** (212) 835-1400

3. **NAME:** **COMPANY:**
   **CITY:** **FAX #:** **PHONE #:**

4. **NAME:** **COMPANY:**
   **CITY:** **FAX #:** **PHONE #:**

5. **NAME:** **COMPANY:**
   **CITY:** **FAX #:** **PHONE #:**

**FROM:** **NAME:** Erik K. Moller

**DIRECT DIAL NUMBER:** (650) 463-8175 **USER ID:** 1680

**NUMBER OF PAGES, INCLUDING COVER:** 3 **CHARGE NUMBER:** 06816.0060 and .0061

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL ☐ OVERNIGHT DELIVERY ☐ HAND DELIVERY ☐ OTHER:

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 650.463.8103.

# DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 572-2656*
*E-Mail Address: AllenD@dsmo.com*

June 17, 2004

Erik Moller, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA  94025

      Re:  <u>Ricoh v. Aeroflex et al./Synopsys v. Ricoh</u>

Dear Erik:

This letter responds to your letters of June 4, 2004 and June 7, 2004 regarding Synopsys' objection to Ricoh's engagement of Mr. David Black under the protective orders in the above-referenced litigations. Ricoh has engaged Mr. Black as an employee of Eklectic Ally, Inc. ("Eklectic"). Mr. Black is the only employee of Eklectic who will have access to confidential documents of Synopsys, the ASIC Defendants or third parties under the protective order.

The status of Mr. Black's relationship with Cadence Design Systems, Inc., as well the nature of any work done in the past two years with Cadence was provided to you in my letter of June 9, 2004. The nature of Eklectic's relationship with Cadence is the same as that set forth in my June 9 letter regarding Mr. Black. Although Eklectic has discussed the possibility of future business with Cadence whereby Eklectic would provide training in languages for simulation and verification tools, no consulting relationship has materialized as of yet.

We provide below the information you requested regarding Eklectic and the additional companies named in your letter of June 4, 2004.

<u>CoWare, Inc.</u>
- Current status of Mr. Black and Eklectic's relationship: Eklectic currently has a strategic relationship with CoWare pursuant to which Eklectic provides consultants for training in SystemC simulation tool specification languages. However, Eklectic is not providing such consultation/training at the present time.
- Nature of Work done by Mr. Black and Eklectic in the past two years: Eklectic has trained a limited number of CoWare employees on SystemC languages for use with simulation and verification tools and, in exchange, Eklectic has been given the ability to use these simulation and verification tools.

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

1783208 v1; 127XK01!.DOC

Erik Moller, Esq.
June 17, 2004
Page 2

- Eklectic employees who have provided such consultation/training: Jack
  Donovan conducted the training.

Forte Design Systems
- Current status of Mr. Black and Eklectic's relationship: There is an on-going
  relationship whereby Eklectic evaluates the ways in which Forte's SystemC tools
  are used. Such evaluations are from a user perspective, not a source code
  developer perspective. Neither Mr. Black nor Eklectic have access to or are
  involved in the development or modification to source code for any Forte tools.
- Nature of Work done by Mr. Black and Eklectic in the past two years: Same as
  the "Current Status."
- Eklectic employees who have provided such consultation: Messrs. Black and
  Donovan have both provided such evaluations for Forte.

Summit Design, Inc.
- Current status of Mr. Black's and Eklectic's relationship: Summit has allowed
  Eklectic access to their SystemC simulation tools to learn how to use them with
  the future possibility that Eklectic will provide training on how to use such tools.
  Eklectic has not been engaged to provide consultants for training on the Summit
  tools.
- Nature of Work done by Mr. Black and Eklectic in the past two years: Neither
  Mr. Black nor Eklectic has done any work for Summit in the past two years.
- Eklectic employees who have provided such consultation: N/A (none)

Willamette HDL
- Current status of Mr. Black's and Eklectic's relationship: There is an on-going
  relationship whereby Eklectic has paid Willamette for the use of their materials.
  Eklectic uses these materials to train third parties on specification languages for
  use with simulation tools. For example, Eklectic has used Willamette materials
  to provide consultation/training to CoWare on simulation tools.
- Work done in the past two years: Same as the "Current Status."
- Eklectic employees who have provided such consultation: Messrs. Black &
  Donavan have used Willamette materials to train third parties on SystemC
  languages for simulation.

Erik Moller, Esq.
June 17, 2004
Page 3

      We trust that this resolves your concerns regarding Mr. Black and Eklectic, and that your objection to Mr. Black will be removed promptly.

                        Sincerely,

                        DeAnna Allen

DA/bh

cc:    Tom Mavrakakis, Esq.
       Gary Hoffman
       Ken Brothers

# FAX TRANSMISSION



**DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP**

**DATE:** June 17, 2004

**CLIENT NO.:** R2180.0171

**MESSAGE TO:** Erik K. Moller

**COMPANY:** Howrey Simon Arnold & White LLP

**FAX NUMBER:** (650) 463-8400

**PHONE:** (650) 463-8100

**FROM:** DeAnna Allen

**PHONE:** (202) 572-2656

**PAGES (Including Cover Sheet):** 4  **HARD COPY TO FOLLOW:** X YES _____ NO

| SENT BY: | | DATE/TIME: | |
|---|---|---|---|

**MESSAGE:**

If your receipt of this transmission is in error, please notify this firm immediately by collect call to our Facsimile Department at 202-861-9106, and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated

1783219 v1; 127X8011.DOC



June 21, 2004

**VIA FACSIMILE AND U.S. MAIL**

Kenneth W. Brothers
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street NW
Washington, D.C. 20037

    Re:   *Synopsys, Inc v. Ricoh Company, Ltd.*
           Case No. CV 03-02289 MJJ (MCC)
           *Ricoh Company, Ltd. v. Aeroflex, Inc.*
           Case No. CV 03-04669 MJJ (MCC)

Dear Ken:

    We received DeAnna Allen's letter of June 17, 2004 regarding Ricoh's proposed retention of Mr. David C. Black as a consultant in these matters.

    Based on Ricoh's representations regarding Mr. Black's contacts with the companies identified in Ms. Allen's letter, Synopsys will not contest Ricoh's retention of Mr. Black as a consultant in these matters. Synopsys reserves the right to review its decision to allow Mr. Black access to confidential information in this matter should changed circumstances warrant it.

    Synopsys' decision does not affect Mr. Black's pre-existing obligations under the agreements he has signed with Synopsys to prevent the disclosure of Synopsys confidential information. Synopsys expects Mr. Black to continue to honor his obligations to prevent such disclosures.

                      Very truly yours,

                      Erik K. Moller

EKM:gj

cc:    Edward A. Meilman
        Gary M. Hoffman

## Jacob, Gayle

**From:** send@mail.efax.com
**Sent:** Monday, June 21, 2004 12:55 PM
**To:** jacobg@howrey.com
**Subject:** Successful transmission to 12028870689. Re: Synopsys v. Ricoh and Ricoh v. Aeroflex, et al.

Dear Gayle Jacob,

Re: Synopsys v. Ricoh and Ricoh v. Aeroflex, et al.

The 3 page fax you sent through eFax Solutions to 12028870689 was successfully transmitted at 2004-06-21 19:53:46 (GMT).

The length of transmission was 123 seconds.

The receiving machine's fax ID: unknown.

If you need additional assistance, please visit our online help center at https://www.j2corporate.com/corp/twa/page/corpFAQ. Thank you for using the eFax Solutions service.

Best Regards,
eFax Solutions

Customer Service
Online Help: https://www.j2corporate.com/corp/twa/page/corpFAQ
Tel: 1-323-817-3202
Email: corporatesupport@mail.efax.com

1

# Confirmation Report — Memory Send

Date & Time: Jun-21-2004  11:14am
Tel line   :
Machine ID :

| | | |
|---|---|---|
| Job number | : | 933 |
| Date & Time | : | Jun-21 11:13am |
| To | : | 912129979880 |
| Number of pages | : | 002 |
| Start time | : | Jun-21 11:14am |
| End time | : | Jun-21 11:14am |
| Pages sent | : | 002 |
| Status | : | OK |

Job number   : 933          *** SEND SUCCESSFUL ***

## HOWREY
WHERE LEADERS GO™

301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

### FACSIMILE COVER SHEET

DATE:   June 21, 2004
TO:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | NAME: | Kenneth W. Brothers and Gary M. Hoffman | COMPANY: | Dickstein Shapiro, et al. | | |
| | CITY: | Washington, DC | FAX #: | (202) 887-0689 | PHONE #: | (202) 785-9700 |
| 2. | NAME: | Edward A. Mellman | COMPANY: | Dickstein Shapiro, et al. | | |
| | CITY: | New York, NY | FAX #: | (212) 997-9880 | PHONE #: | (212) 835-1400 |
| 3. | NAME: | | COMPANY: | | | |
| | CITY: | | FAX #: | | PHONE #: | |
| 4. | NAME: | | COMPANY: | | | |
| | CITY: | | FAX #: | | PHONE #: | |
| 5. | NAME: | | COMPANY: | | | |
| | CITY: | | FAX #: | | PHONE #: | |

FROM:    NAME:        Erik K. Moller

DIRECT DIAL NUMBER:    (650) 463-8175        USER ID:        1680

NUMBER OF PAGES, INCLUDING COVER:   3        CHARGE NUMBER:    06816.0060 and 06816.0061

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER:

☐ ORIGINAL WILL NOT FOLLOW

SUPPLEMENTAL MESSAGE:

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED
ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS
COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN
THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 650.463.8103.



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** June 21, 2004

**TO:**

1. **NAME:** Kenneth W. Brothers and Gary M. Hoffman    **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** Washington, DC    **FAX #:** (202) 887-0689 *822-9162*  **PHONE #:** (202) 785-9700

2. **NAME:** Edward A. Meilman    **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** New York, NY    **FAX #:** (212) 997-9880    **PHONE #:** (212) 835-1400

3. **NAME:** _____    **COMPANY:** _____
   **CITY:** _____    **FAX #:** _____    **PHONE #:** _____

4. **NAME:** _____    **COMPANY:** _____
   **CITY:** _____    **FAX #:** _____    **PHONE #:** _____

5. **NAME:** _____    **COMPANY:** _____
   **CITY:** _____    **FAX #:** _____    **PHONE #:** _____

**FROM:**    **NAME:** Erik K. Moller

**DIRECT DIAL NUMBER:** (650) 463-8175    **USER ID:** 1680

**NUMBER OF PAGES, INCLUDING COVER:** 3    **CHARGE NUMBER:** 06816.0060 and 06816.0061

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER: _____

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.