1 | Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
2 | Jaclyn C. Fink (SBN 217913)
HOWREY LLP
3 | 525 Market Street, Suite 3600
San Francisco, California  94105
4 | Telephone:  (415) 848-4900
Facsimile:  (415) 848-4999
5 |
Attorneys for Plaintiff SYNOPSYS, INC.
6 | and for Defendants AEROFLEX INCORPORATED,
AEROFLEX COLORADO SPRINGS, INC., AMI
7 | SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD.,
8 | MATROX GRAPHICS, INC.,
MATROX INTERNATIONAL CORP.,
9 |  and MATROX TECH, INC.

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13 | RICOH CORMPANY, LTD.,

Case No.  C03-04669 MJJ (EMC)
C03-02289 MJJ (EMC)

14 | Plaintiff,

15 | vs.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND ANSWERS**

16 | AEROFLEX INCORPORATED, et al.,

Judge:  Hon. Martin J. Jenkins

17 | Defendants.

Date:    December 13, 2005
Time:    9:30 a.m.

18 | SYNOPSYS, INC.

Ctrm:    Courtroom 11, 19th Floor

19 | Plaintiff,

20 | vs.

21 | RICOH COMPANY, LTD.,

22 | Defendant.

23 |

24 |     In its opposition, Ricoh claims that:  (1) "good cause" is required to permit amendment; (2) the

25 | Customer Defendants have failed to show "good cause;" and (3) Ricoh will be prejudiced by the

26 | amendment.  There is ample justification not to apply the "good cause" standard here, and there is no

27 | prejudice to Ricoh.  But in any event, because "good cause" exists, leave to amend should be granted –

28 | regardless of whether the Court applies Federal Rule of Civil Procedure 15 or Rule 16.

1       Ricoh argues that the time to amend has passed, and thus, absent a showing of good cause,

2   leave to amend should be denied.  There is justification for not applying the "good cause" standard in

3   view of the stay that was entered in this case in May of 2004.  Because the stay had the practical effect

4   of eliminating substantive activity aside from claim construction discovery and briefing,[1] the Customer

5   Defendants assert that Court has discretion not to apply the "good cause" standard here because the

6   time for leave to amend lapsed during the stay.

7       However, should the Court determine that "good cause" is required, "good cause" exists.

8   Notably, Ricoh concedes that the Rule 15 factors discussed in the Customer Defendants' moving

9   papers are relevant to the motion (undue delay, bad faith or dilatory motive, repeated failure to cure

10  deficiencies by previous amendments,[2] undue prejudice, and futility) even if Rule 16 is held to apply.

11  Ricoh Opposition at 4:22-24.  Indeed, Ricoh's lack of "good cause" argument is that "a consideration

12  of the relevant factors show that there is no good cause," and thus, in sum, Ricoh's opposition amounts

13  to a disagreement as to who bears the burden of demonstrating the presence or lack of these factors.

14  Regardless of whether the Customer Defendants misstated who bears the burden, the Customer

15  Defendants certainly met the high "good cause" standard.  Leave to amend should be granted for good

16  cause.

17      First, there was no undue delay; i.e., the Customer Defendants acted reasonably diligently.[3]

18  Ricoh has long resisted identifying the specific ASICs it now claims are the "accused products" or

19  _____

20      [1] Notably, Ricoh's argument regarding time for leave to amend is directly contrary to the position it took in the June 8, 2005 Joint Case Management Conference in which Ricoh described the stay as follows:

21      **The discovery stay.**  During the May 4, 2004 Case Management Conference, this Court stated that there would be a

22  stay of discovery related to the merits (e.g., infringement and invalidity).  On May 13, 2004, Magistrate Judge Chen issued an Order reaffirming the stay of discovery not related to claim construction.  Consequently, the dates for all

23  other actions in this case, other than those related to the Markman process, were suspended pending the Court's claim construction ruling.

24      [2] In its opposition, Ricoh recounts several amendments that were made before transfer, apparently to suggest that the Customer Defendants did not act diligently in identifying the 1498 issue or that the Customer defendants repeatedly failed

25  to cure deficiencies.  These amendments, however, were made pursuant to negotiated agreements after discussions regarding potential motion practice regarding the answers (i.e., the Customer Defendants dropped or clarified claims

26  instead of engaging in motion practice), but were not repeated amendments aimed at curing deficiencies.

27      [3] Although Ricoh does not address this issue, courts also look at reasonable diligence in determining whether there is "good cause" for leave to amend.  *Helus v. Equitable Life Assur. Soc'y of the United States*, 309 F. Supp. 2d 1170, 1175 (N.D.

28  Cal. 2004) ("When the deadline set by a pretrial scheduling order has passed, leave to amend is granted only when there is
                                                            (Continued...)

1    "accused ASICs."  As the Court is well aware, the parties have long disputed the products that are

2    actually at issue in this case.  In the forty (40) page June 8, 2005 Joint Case Management Conference

3    Statement, the parties recounted their various positions regarding the products actually in dispute in

4    this litigation, the state of Ricoh's infringement contentions (including whether or not Ricoh was

5    accusing non-Synopsys products), and the state of discovery as to the accused products.  Notably,

6    although Ricoh had indicated that it intended to base its damages theory on sales of ASICs designed

7    using the accused method, Ricoh failed to identify a single specific accused ASIC in its Preliminary

8    Infringement Contentions, or Amended Infringement Contentions.  As a result of the July Case

9    Management Conferences, however, the Court forced Ricoh to take a position on the Synopsys

10   products at issue, as well as other issues, which thereafter enabled the Customer Defendants to identify

11   the actual ASICs at issue.  Discovery commenced in earnest in September and October after Ricoh

12   finally articulated what it claimed were the "accused products."  It was during the process of producing

13   information about the now "accused ASICs" on an ASIC by ASIC basis[4] that the Customer Defendants

14   focused on the government sales and the implications of those sales.  Indeed, after the Customer

15   Defendants notified third party customers who purchase the "accused ASICs" of their intention to

16   produce documents related to specific ASICs, one customer directly raised the 28 U.S.C. § 1498 issue,

17   and two others raised a related issue relating to confidentiality of documents relating to government

18   sales.  *See* Declaration of Denise M. De Mory in Support of Reply to Motion for Leave to Amend ("De

19   Mory Decl."), Exhs 1 & 2 (ITT & Boeing letter).

20        After the identification of the accused products, and the attendant government sales, the

21   Customer Defendants promptly approached Ricoh regarding its proposed amendments.  During the

22

23   (...Continued)

24   "good cause." Fed. R. Civ. P. 16(b). The "good cause" inquiry "primarily considers the diligence of the party seeking the
     amendment," but "the existence or degree of prejudice to the party opposing the modification" may also be considered.)

25   Reasonable diligence, particularly in view of the stay, is demonstrated herein.

26   [4] The process of collecting documents relating to the now over 100+ "accused ASICs" was time consuming and
     burdensome.  The process involved trips to a dozen locations and interviews of over seventy witnesses to (1) correctly

27   identify commercial ASICs synthesized during the alleged damages period using the recently identified Synopsys products-
     in-suit, and to thereafter identify and produce relevant documents.  At this point, over 4,000,000 pages of documents have
     been produced since September.

28

1  meet and confer, when the issue of amendment was first raised, Ricoh indicated that it might well

2  agree to the amendment, and did not raise the alleged timeliness issue, even after reviewing the

3  proposed amendment.  Thus, given the lack of any substantive activity except claim construction for

4  thirteen months, coupled with Ricoh's failure to actually properly identify (or provide enough

5  information to enable the Customer Defendants to identify) the ASICs at issue, the Customer

6  Defendants did exercise reasonable diligence.[5]  Good cause exists for allowing leave to amend.

7        Second, the alleged prejudice is not adequate grounds to deny leave.   With regard to all of the

8  amendments, Ricoh's primary prejudice argument is that it has exhausted its available interrogatories.

9  This assertion is patently false.  Recently, on September 22, 2005, Judge Chen ruled that Ricoh could

10  serve 50 interrogatories on each Customer Defendant.  To date, Ricoh has served from 17 to a

11  maximum of 43 interrogatories (on AMI).  Thus, Ricoh has at least 7 and up to 33 interrogatories per

12  party available.  In addition, Ricoh wholly fails to address the fact that, other than the § 271(g) related

13  depositions of Matrox, not a single Customer Defendant deposition has been taken.  Thus, Ricoh can

14  address these issues as necessary at the Customer Defendant depositions, which, at this point, are not

15  even scheduled to begin until mid-January.  Third, Ricoh was well aware at the time it submitted its

16  opposition that the parties had agreed to reform the schedule, and extend discovery until May.  Thus,

17  Ricoh's claim that discovery will end in a month – when it still has not served its Final Infringement

18  Contentions or taken a single deposition since the stay was lifted – is entirely disingenuous.

19        With regard to the prejudice and futility issues Ricoh raises with regard to the individual

20  claims, Ricoh's position is equally without merit.  With regard to the 28 U.S.C. section 1498 claim,

21

22  _____

23  [5] Ricoh may argue that because the Customer Defendants knew they had some government sales of some ASICs, they
should have asserted the defense earlier.  Any such argument, however, should be rejected.  It has long been incumbent

24  upon Ricoh – the plaintiff – to identify both the synthesis and ASIC products at issue.  Ricoh long resisted making any
specific allegations about synthesis products (including refusing to eliminate non-Synopsys products), and has yet (except

25  implicitly by agreeing to limit discovery to the products identified in the Customer Defendants product declarations)
identified specific ASICs that are at issue.  The Customer Defendants accordingly exercised reasonable diligence under the

26  circumstances – particularly in light of the stay.  To the extent that Ricoh relies on this generalized knowledge in the
absence of identification of specific products at issue, then good cause exists to grant leave to amend because Ricoh too had

27  such knowledge.  Indeed, documents produced by Ricoh early in the case show that Ricoh was aware that Aeroflex sold
some products to defense contractors.  De Mory Decl., Exh. 4.  At a minimum, Ricoh's knowledge eliminates any claim of

28  prejudice due to injecting new facts into the case.

Case No.  C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)          -4-
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE
TO AMEND ANSWERS
DM_US\8284540 v1

1  Ricoh misstates the nature of the issue and intentionally confuses the case law.  Ricoh attempts to

2  create the illusion that 28 U.S.C. section 1498 is an intensely factual issue, subject to extensive

3  discovery, because "authorization and consent" can be either express, or implied.  While that may be

4  true the "authorization and consent" can be express or implied, that is of little or no concern here.  As

5  demonstrated by the document attached for exemplary purposes to the De Mory Declaration as Exhibit

6  3 at page 4 (ln. 33),[6] the "authorization and consent" provisions at issue here are express provisions.

7  Thus, at this point, for the products that have been identified as subject to government contracts (which

8  definitely include sales by Aeroflex and AMI, and may include sales by the Matrox entities),[7] the issue

9  is a straightforward apportionment issue, or the elimination of damages, in their entirety, for certain

10  chips identified in the Customer Defendants production declarations.  *See, e.g.*, *TM Patents v. IBM*,

11  107 F. Supp. 2d 352, 354 (S.D.N.Y. 2000) (allowing motion for leave to amend to add 1498 claim

12  after the close of discovery because it was a straight apportionment of damages issue).[8]  Thus, Ricoh

13  will need to conduct little, if any discovery, and if it chooses to conduct such discovery, has ample

14  means and time to do so.

---

[6] Exhibit 1 is a print out from the Boeing website relating to a product sold to Boeing from Aeroflex pursuant to a government contract.

[7] Locating specific contractual provisions relating to specific sales of specific ASICs is nontrivial.  First, the "accused ASICs" first had to be identified or identifiable, which, as described above, only recently became possible because of Ricoh's failure to identify its claims.  Thereafter, because in almost every case, the Customer Defendants are sub-contractors to the direct contractors with the United States, such as Boeing, Honeywell, Lockheed Martin, and others, the Customer Defendants had to investigate issues with these third parties.  For each specific ASIC, the Customer Defendants must identify all purchase orders for each of the chip sales, identify the applicable contract number, and then either locate or request from the direct contractor a copy of the applicable contract provisions, very possibly from classified contracts.  Given that there are now over 200 ASICs at issue and that some of the sales at issue were eight years ago at this point, this process has proven very time consuming, and some issues are still being investigated.  Given that the Customer Defendants bear the burden of proof on this issue, if they are able to come forward with such proof, this is a strict damages apportionment issue.  To the extent they are not, it is expected that Ricoh can challenge the Customer Defendants apportionment claims.

[8] Ricoh's assertions about this case are highly misleading.  Although discovery had taken place (in fact it had closed), there was no assertion that any discovery had been taken on the 1498 issue.  In fact the opposite can be inferred from the following language from the case:  "Frankly, I find TM's assertion that it would have altered its discovery strategy had it been made aware of IBM's assertion of a § 1498 affirmative defense to be ludicrous. We are not talking about an issue of infringement, but of damages. IBM can proffer an accounting for its Government sales at the same time it files its amended answer, which shall be within 30 days of the date of this opinion."  *Id.* at 353-54.

HOWREY LLP

Case No.  C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)                    -5-
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE
TO AMEND ANSWERS
DM_US\8284540.v1

1    With regard to the other three proposed revisions, Ricoh's arguments likewise are

2 unpersuasive.  With regard to separating out estoppel, Ricoh recently conceded that both laches and

3 estoppel were at issue.  In the Joint Case Management Conference Statement filed on June 8, 2005,

4 Ricoh listed the following issue in the "Principal legal and factual issues in dispute" section of their

5 portion of the statement:  "Whether the ASIC Defendants can prove their affirmative defenses of

6 estoppel and laches that would preclude Ricoh from enforcing its '432 patent against them, or limit

7 Ricoh's right to damages." June 8, 2005 Statement at 22.  Thus, it is unreasonable for it now to assert

8 that this clarifying amendment should not be granted.[9]  In addition, Ricoh concedes that prosecution

9 history estoppel and the statute of limitations are already at issue in this case, and thus there is no harm

10 in dealing with these clarifying amendments at this time either.

11    Finally, other than spurious insinuations, there are no allegations of bad faith or dilatory

12 motives.  In fact, as set forth in detail above, the Customer Defendants acted diligently.

13    Accordingly, the Customer Defendants respectfully request that leave to amend be granted.

14 Dated:  November 29, 2005                    Respectfully submitted,

15                                             HOWREY LLP

17    By:  _____/s/Denise M. De Mory_____
18                     Denise M. De Mory
     Attorneys for Plaintiff
19   SYNOPSYS, INC. and for Defendants
     AEROFLEX INCORPORATED,
20   AEROFLEX COLORADO SPRINGS,
     INC., AMI SEMICONDUCTOR, INC.,
21   MATROX ELECTRONIC SYSTEMS,
     LTD., MATROX GRAPHICS, INC.,
22   MATROX INTERNATIONAL CORP.,
     and MATROX TECH, INC.

[9] The estoppel amendment is not futile.  As Ricoh is well aware, the Customer Defendants can  and intend to rely on Ricoh's actions with regard to Synopsys as the basis for their estoppel defense.

HOWREY LLP

Case No.  C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)      -6-
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE
TO AMEND ANSWERS