Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Defendants AEROFLEX INCORPORATED, AEROFLEX COLORADO SPRINGS, INC., AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>  Plaintiff,<br><br>  vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.<br><br>  Defendants. | Case No. C03-4669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY**<br><br>Judge: Hon. Martin J. Jenkins<br><br>Date: April 19, 2006<br>Time: 9:00 a.m.<br>Ctrm: 11, 19th Floor |
| SYNOPSYS, INC.,<br><br>  Plaintiff,<br><br>  vs.<br><br>RICOH COMPANY, LTD.,<br><br>  Defendant. | |

HOWREY LLP

Case No. C03-4669 MJJ (EMC)
REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY

## **TABLE OF CONTENTS**

|     |     |                                                                                                                                                                                                                       | Page |
| --- | --- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---- |
| I.  |     | INTRODUCTION                                                                                                                                                                                                          | 1    |
| II. |     | ARGUMENT                                                                                                                                                                                                              | 3    |
|     | A.  | Ricoh Grossly Misstates The Miles Left To Travel; If $15,000,000 Has Been Spent, At Least $15,000,000 Can Potentially Be Saved – Plus Tremendous Court Resources.                                                      | 3    |
|     | B.  | Mr. Hoffman's Claim Regarding An "Effective" Admission By The Attorney Who Filed The Reexamination Request Is False And Ricoh Is Wrong About What Might Motivate An Anonymous Filing Or the Effects Of Such A Filing | 6    |
|     | C.  | Even If Synopsys Had Filed The Petition, There Is No Evidence Of Bad Faith Or Lack Of Merit Based On The Delay In Filing                                                                                              | 9    |
|     | D.  | Ricoh Is Wrong About The Statistics; The Reexamination Will Proceed Quickly.                                                                                                                                          | 10   |
|     | E.  | Ricoh Is Wrong About The Likely Effect Of The Reexamination                                                                                                                                                           | 11   |
|     | F.  | Ricoh Is Not Prejudiced; It Is Ricoh Who Unduly Delayed And Has Increased The Cost Of This Litigation                                                                                                                 | 13   |
|     | G.  | For The Foregoing Reasons, All Of The Cases Ricoh Cites Are Inapposite                                                                                                                                                | 13   |
| III.|     | CONCLUSION                                                                                                                                                                                                            | 14   |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dravco Manufacturing Corp. v. Peninsular Diesel, Inc.*,
    128 F.R.D. 91 (N.D. Ohio 1989) ........................................................................... 7, 8

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) ............................................................................... 12

*In re American Academy of Science Tech. Center*,
    367 F.3d 1359 (Fed. Cir. 2004) ................................................................................ 8

*In re Bond*,
    910 F.2d 831 (Fed. Cir. 1990) .................................................................................. 8

*In re Hyatt*,
    211 F.3d 1367 (Fed. Cir. 2000) ................................................................................ 8

*In re Morris*,
    127 F.3d 1048 (Fed. Cir. 1997) ................................................................................ 9

*In re Yamamoto*,
    740 F.2d 1569 (Fed. Cir. 1984) ............................................................................ 8, 9

*In re Zietz*,
    893 F.2d 319 (Fed. Cir. 1989) .................................................................................. 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*), *cert. Denied*, 2006 U.S.
    Lexis 1154 (U.S., Feb. 21, 2006) ............................................................................. 9

## I. INTRODUCTION

It is a virtual certainty that the claims at issue here, claims 13-17 of the '432 patent, will be changed in the re-examination that has been granted. In fact, recent PTO statistics confirm that, in 96% of the *ex parte* re-examinations that were granted in 2005, the claims were either changed or canceled. Given these statistics, it makes no sense to continue this litigation and waste the resources of this court and the parties, as it will all have to be redone with changed claims, if any, that survive re-examination. Because Ricoh cannot legitimately dispute the facts, or argue prejudice, Ricoh's opposition is replete with its typical allegations of bad faith tactics. As explained below, its bad faith allegations are false, and based on a faulty understanding of Patent Office procedure. But in any event, the determinative facts here are quite simple, and no allegations of bad faith can change them. The two determinative facts that compel granting a stay here, which Ricoh cannot dispute, are as follows:

> 1. **There is a 74% (using Ricoh's numbers) to a 96% (using the 2005 PTO statistics) chance that claim 13, the broadest claim, will be amended. When this happens, the case will almost certainly be resolved by settlement or dismissal with minimal (or no) Court intervention. Ricoh's argument that cancellation is the only way out of this case is a red herring.**

Claim 13 is the broadest claim; as such, it is the most likely to be amended as a result of prior art or arguments not previously considered by the PTO. Because all of the other claims at issue depend from claim 13, if the PTO ultimately requires claim 13 to be amended, then the damages period will be reset for all five claims at issue. Due to intervening rights, Ricoh will only be able to recover for acts of infringement that occur after the reissue, and even then, because of equitable intervening rights, only in the Court's discretion. Ricoh agrees that this is the result if the claims are amended (and in fact, only asserts that all five would need to be amended to reach this conclusion – but forgets, or intentionally hides, that when claim 13 is amended, all five are amended).

Currently, the damages period dates back to 1997. If claim 13 is amended, the damages period will not commence until some time in 2007, which will be, at most, months before the patent expires. Regardless of the merits of the claims, because so little will then be at stake at that point, the case will finally at long last be in a posture to settle. Contrary to Ricoh's position, this is not the damages tail

wagging the infringement dog, but instead is an economically efficient way to resolve what matters in this case: determining how much money is at stake.[1]

Similarly, if the flowchart editor input is added as a limitation to claim 13 (which this Court agreed during claim construction could very well have been what the examiner and the applicant originally intended and agreed), then this case would go away altogether, as Ricoh has already agreed that the Synopsys products do not have a flowchart editor. Similar amendments to other elements would similarly result in quick resolution. Any amendment, in the off chance that the parties do not resolve the case, will require new claim construction in any event. Thus, Ricoh's arguments about what has been invested in claim construction are not persuasive given that there is a 70+% chance the Court ultimately would have to re-do the claim construction in any event.

Thus, even absent cancellation of the claims – Ricoh's red herring that it argues again and again throughout its brief – this case will likely be resolved via the reexamination without the need to waste additional resources. Moreover, there is a cognizable chance – which even according to Ricoh is in the 5% to 10% range – that the claims will be canceled, which would also immediately end this case without further Court intervention.

Finally, contrary to Ricoh's assertions, the only outcome that would not substantially resolve or eliminate this case is if the Patent Office confirms all claims, which happens only 4% of the time according to the recent statistics for 2005 that actually reflect the PTO reforms; even under the statistics cited by Ricoh that predate the reforms, confirmation of all claims occurs only 30% of the time.

2. **Ricoh's Claims Of Prejudice Ring Hollow; Ricoh Waited Thirteen Years To File Suit Notwithstanding The Fact That It Has Been A Synopsys Design Compiler Customer For That Entire Period Of Time!**

Ricoh has been a co-owner of the '432 patent from the time of its initial filing in January of 1988. Ricoh remained a co-owner up until 2001 when it purportedly exercised its rights to buy the entire right, title and interest in the patent. Ricoh has also been a Synopsys user and licensee almost

---

[1] Indeed, Ricoh is intent on trying to avoid having to address the "infringement dog" at all. In its recently filed sanctions motion, it seeks to proceed directly to the "damages tail" without ever having to prove infringement.

HOWREY LLP

-2-

since the date on which the patent issued. Ricoh has continuously had a license to Design Compiler and HDL Compiler, the products at issue in this litigation, since at least as early as June 1, 1990.

Ricoh delayed **thirteen years, of the 17 ½ year life of this patent, to file suit** after it knew or should have known about the alleged infringement by Synopsys' customers. During that entire time, not only did it know how HDL Compiler and Design Compiler worked and were used, it knew that Synopsys was licensing its products to many other customers, who, like Synopsys, were investing millions in the products. Ricoh even delayed two years after allegedly purchasing full rights to the patent to file suit.

Even in the context of this litigation, Ricoh has agreed to delays. As recently as last November of 2005, notwithstanding the fact that the case had already been delayed from the October trial 2004 date set in Delaware, Ricoh, Synopsys, and the Customer Defendants entered into a stipulation moving the trial from July to November of 2006 – an additional four and a half month delay.

While Ricoh makes greatly exaggerated claims based on anecdotal evidence about how long the reexamination will take, Ricoh ultimately agrees that it will take about sixteen to twenty-one months, two of which have already passed. Ricoh's exaggeration is already belied by the short history of the reexamination petition at issue. Although the Patent Office has 90 days to pass on the petition, it granted the petition in about thirty-five days. Thus, it appears this reexamination will move quickly.

Finally, neither Ricoh nor any of its purported licensees (to whom Ricoh paid money in cross-license situations and who pay no royalties to Ricoh) are competitors with any of the defendants or with Synopsys, and even Ricoh concedes there is no injunctive threat. Given that the petition will likely resolve this case without the need for further Court intervention, and Ricoh's claims of prejudice regarding an additional eighteen month delay are belied by its own **thirteen year delay**, equity and preservation of party and judicial resources militate heavily in favor of a stay.

## II.    ARGUMENT

### A.    Ricoh Grossly Misstates The Miles Left To Travel; If $15,000,000 Has Been Spent, At Least $15,000,000 Can Potentially Be Saved – Plus Tremendous Court Resources.

Ricoh overstates the amount of discovery that has occurred, and grossly understates the miles left to travel. There is a very long way to go here, both financially and in terms of Court resources,

1  that Ricoh's simplistic characterization of this case as seven months from trial, or three years old, or
2  nearing the close of discovery, simply does not ring true.

3        In some respects, Ricoh's description of the number of discovery requests served is generally
4  correct, but it neglects to mention the parties on whom the burden has fallen, and will continue to fall:
5  Synopsys and the Customer Defendants. Approximately 180 hours of deposition have occurred – not
6  300. De Mory Decl., ¶2. Ricoh has taken 150 hours. *Id.* Synopsys and the Customer Defendants,
7  collectively, have taken about 30 hours. *Id.* Well over 8,000,000 pages of documents have been
8  produced; Synopsys and the Customer Defendants have produced well over 8,000,000 pages, and
9  Ricoh still wants more; Ricoh has produced about 11,000 pages. *Id.*, ¶3. Dozens of sets of written
10 discovery have been propounded; Synopsys and the Customer Defendants have substantively
11 responded to all Ricoh's requests, including over 250 fifty interrogatories. *Id.*, ¶4. Ricoh, in contrast,
12 has substantively responded to approximately 20 interrogatories, and has steadfastly refused to answer
13 even the first 35 interrogatories served in 2003 regarding basic concepts such as conception date. *Id.*
14 Well over 700 requests for admissions have been served; the Customer Defendants and Synopsys have
15 substantively responded to over 100; Ricoh has substantively responded to only five, refusing to
16 answer over 500, including simple requests like: Admit that Ricoh has used Design Compiler since as
17 early as 1990 – arguing that "used" and "Design Compiler" are vague. *Id.*, ¶5.

18       In addition, just yesterday, Ricoh sent a meet and confer request acknowledging that it wanted
19 to take the following depositions: (1) deposition of Matrox relating to sales; (2) deposition of Matrox
20 related to marketing; (3) AMI deposition regarding financials; (4) AMI continued 30(b)(6) on
21 products; (5) an Aeroflex deposition on four 30(b)(6) topics; (6) continued deposition of Coco of
22 Aeroflex; (7) continued deposition of Milliken of Aeroflex; (8) Synopsys 30(b)(6) on four topics; (9)
23 individual deposition of Robert Walker of Synopsys; (10) individual deposition of Bharat Kalyanpur of
24 Synopsys; and (11) additional continuations of the Synopsys 30(b)(6) technical depositions. *Id.*, ¶6.
25 Synopsys and the Customer Defendants rest assured that Ricoh's list will grow; it always has. Ricoh
26 has failed to conclude more than one or two depositions, and has requested the depositions of other
27 individuals as to which it has yet to confirm if it wants to pursue. No damages or invalidity or expert

28

HOWREY LLP

-4-

depositions have been taken. Ricoh alone will likely take at least another 20 depositions, and it is notable that the deponents are located all over North America.

Synopsys and the Customer Defendants, in contrast, have requested 8 depositions, 5 of which Ricoh has refused, prompting Synopsys and the Customer Defendants to seek relief from Judge Chen. *Id.*, ¶7. Synopsys and the Customer Defendants also will serve this week subpoenas on various third parties relating to invalidity. *Id.*, ¶8. It is expected that follow-up depositions will be taken on invalidity. And, of course, Synopsys and the Customer Defendants will take damages and expert depositions as well. *Id.*, ¶9. It is anticipated that Synopsys and the Customer Defendants will likely take 10-12 additional depositions. In total at least 30 additional depositions need to be taken, including potentially some in Japan in a trip that has been scheduled for mid-April.

These facts regarding discovery are notable in view of Ricoh's claims of Synopsys' bad faith. In addition to its claims that Synopsys filed this motion and the reexamination in bad faith, both of which are wrong, Ricoh, even here, repeats its mantra that Synopsys simply wants to drive up the cost of this litigation. In view of the foregoing, that is ludicrous. It is Ricoh that has single-handedly increased the cost of discovery by requesting more and more and more, but refusing to provide anything, forcing Synopsys and the Customer Defendants to litigate and spend hours and hours meeting and conferring on ridiculous things like what it means to "use Design Compiler." Indeed, it is three years into this litigation; Ricoh has taken massive amounts of discovery, and yet it has still not provided any meaningful infringement contentions. It claims that it will do so on March 24, 2006, but based on its pattern of conduct to date,[2] those contentions will likely only serve to further drive up litigation costs because undoubtedly they will be inadequate.

The preceding discussion only brings us up through May 30, the close of fact discovery. Thereafter, expert reports and expert discovery will commence. Then, dispositive motions will need to be prepared and filed. The Court can certainly anticipate a large number of dispositive motions from

---

[2] Not surprisingly, Ricoh repeats its claims of sanctionable conduct in its opposition. As set forth in the Customer Defendants' opposition to Ricoh's sanctions motion, there is no merit to its request for sanctions. Its sanctions motion is yet another example of its conscious choice to drive up litigation costs.

1  the eight parties in this case. Thereafter, pretrial activities will commence in earnest, culminating in a
2  three week trial. At this point, Synopsys and the Customer Defendants are aware of at least eight and
3  possibly ten Dickstein lawyers who are devoting their full time attention to this case; and certainly
4  there are many more. A tremendous amount of resources can be saved by a stay.

5  It is also notable that, although some discovery occurred prior to the stay of merits discovery
6  from 2004 to late 2005, it is minimal compared to what has occurred since the stay was lifted. The
7  discovery that has occurred since then has happened in an approximately five month period that got off
8  to a slow start. A large amount of document discovery occurred in October and November, but
9  depositions did not commence until mid-December. Most of the discovery has occurred thereafter, and
10  it has been one-sided because of Ricoh's refusal to respond to discovery. Synopsys' and Customer
11  Defendants' discovery is commencing in earnest while Ricoh's continues unabated at the same pace.
12  Thus, it can be anticipated that the costs will escalate at an exceptional rate over the last three months
13  of discovery, and beyond into expert reports, summary judgment, and trial.

14  If Ricoh is correct in its estimate that $15,000,000 has been spent on this litigation for (1) claim
15  construction, (2) claim construction discovery, (3) the minimal discovery prior to the non-claim
16  construction discovery stay, and (4) the discovery since the stay was lifted, then at least another
17  $15,000,000, and probably more, will be spent between now and the time of trial because more
18  discovery remains to be completed that has already occurred; and there are many miles left to travel in
19  this case. In addition, the parties will increasingly begin to consume Court resources as they approach
20  trial. Thus, contrary to Ricoh's allegations of bad faith, even if Synopsys filed the reexamination
21  petition as Ricoh assumes, the filing of the petition could be more aptly described as a meritorious and
22  efficient way to move this case closer to resolution, not a bad faith tactic.

23  **B.    Mr. Hoffman's Claim Regarding An "Effective" Admission By The Attorney Who Filed The Reexamination Request Is False And Ricoh Is Wrong About What Might Motivate An Anonymous Filing Or the Effects Of Such A Filing**

25  Mr. Hoffman declares under penalty of perjury that the attorney who signed the reexamination
26  petition "effectively acknowledged to him that it had been filed at the behest of Synopsys." This
27  allegation is patently false. Mr. DeLuca did receive a call from Mr. Hoffman on the pretense that Mr.
28  Hoffman was calling regarding service of future papers. DeLuca Declaration, ¶2. After making small

HOWREY LLP

-6-

talk, Mr. Hoffman told Mr. DeLuca that he assumed the request had been filed on behalf of Synopsys. *Id.*, ¶¶ 2-3. Mr. DeLuca specifically informed Mr. Hoffman that the request was filed anonymously, and that he was not at liberty to disclose the identify of the requestor on whose behalf the request had been filed. *Id.*, ¶¶ 5-6. Mr. DeLuca indicated during the call that he could not stop Mr. Hoffman from making any assumptions, but never disclosed during the call – effectively or otherwise—the identity of his client. *Id.*

Indeed, consistent with the provisions that allow for anonymous filing, and the case law protecting the identity of an anonymous filer, Mr. DeLuca's firm has a policy to protect the identity of the person on whose behalf a petition was filed, which he followed steadfastly here. *Id.*, ¶7.

In particular, 35 U.S.C. § 301, which is subsumed within 35 U.S.C. § 302, the section concerning requests for reexamination, specifically provides that "[a]t the written request of the person citing the prior art, his or her identity will be excluded from the patent file and kept confidential." Moreover, a section of the PTO's policy manual, MPEP § 2212, specifically provides for the preservation of confidentiality by filing anonymously through an attorney. As MPEP § 2212 states, "[s]ome persons likely to use reexamination are . . . attorneys without identification of their real client in interest."

Courts have taken the above provisions to mean that the real client in interest has a presumption of confidentiality. In *Dravco Manufacturing Corp. v. Peninsular Diesel, Inc.,* 128 F.R.D. 91 (N.D. Ohio 1989), for example, defendant moved to compel plaintiff to respond to an interrogatory regarding plaintiff's involvement in a request for reexamination filed by an attorney. Citing § 301, MPEP § 1212 and a variety of public policies, such as the public policy of encouraging people to use the reexamination mechanism, the Court denied plaintiff's motion to compel, finding the requestor's presumption of confidentiality outweighed the marginal relevance of the information sought. *Id.* At 92.

As indicated by the foregoing, there is absolutely nothing untoward about anonymous requests for reexamination. Indeed, as the *Dravco* court specifically found, confidentiality has three laudable objectives, "to encourage people to use the reexamination mechanism, to provide certainty in the validity of patent rights and to provide a faster, less expensive remedy than litigation when the validity

-7-

of a patent is at issue." *Id.* Without a presumption of confidentiality, requestors could be deterred from filing requests for reexamination because of the possibility of retaliation by the patent owner.

Here, Ricoh's vague insinuations about Synopsys' involvement in the reexamination are improper and should be ignored as they are inconsistent with the presumption of confidentiality protecting the requestor's identity. In fact, they represent the very type of retaliatory conduct the presumption of confidentiality is designed to prevent.

And, finally, anonymous filings need not be made to avoid an allegation that the requestor is proposing a claim construction in the reexamination that differs from that in the litigation. In fact, the standard for claim construction during reexamination differs markedly from that during litigation. During reexamination, the Patent Office, under controlling authority, is obligated to give each claim term its broadest reasonable interpretation consistent with the specification. More specifically, 37 CFR § 1.555(b)(2)(ii) states in pertinent part:

> A *prima facie* case of unpatentability of a claim pending in a reexamination proceeding is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.
> (underlining added; italics in original).

Moreover, the Federal Circuit has specifically held that, during reexamination, "claims . . . are to be given their broadest reasonable interpretation consistent with the specification, and . . . claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re American Academy of Science Tech. Center*, 367 F.3d 1359, 1364 (Fed. Cir. 2004) (quoting *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990)); *see also In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

Such a procedure "serves the public interest by reducing the possibility that claims, finally allowed, will be given broader scope than is justified." *Yamamoto*, 740 F.2d at 1571; *see also In re Hyatt*, 211 F.3d 1367, 1372 (Fed. Cir. 2000); *In re Zietz*, 893 F.2d 319, 322 (Fed. Cir. 1989). It also "promotes the development of the written record before the PTO that provides the requisite written notice to the public as to what the applicant claims as the invention." *In re Morris*, 127 F.3d 1048,

1054 (Fed. Cir. 1997). This procedure is fair to the patentee, which always has the opportunity to amend the claims during reexamination. *See Yamamoto*, 740 F.2d at 1571-72.

In contrast, during litigation, the standard for claim construction is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 2006 U.S. Lexis 1154 (U.S., Feb. 21, 2006).

Because of this difference, a claim construction proposed by the requestor in a reexamination under the "broadest reasonable construction" standard is irrelevant in a litigation, where the standard is "the person or ordinary skill" standard.

### C. Even If Synopsys Had Filed The Petition, There Is No Evidence Of Bad Faith Or Lack Of Merit Based On The Delay In Filing

Based on Ricoh's assumption that Synopsys caused the petition to be filed, Ricoh asserts that the delay constitutes a (1) bad faith litigation tactic to gain a tactical advantage and/or (2) signals a known lack of merit to the claim. Both arguments, even if Synopsys had caused the reexamination petition to be filed, lack merit.

As explained above, Ricoh has caused this litigation to spin out of control. If Synopsys or one of the Customer Defendants, or all of them, caused this reexamination to be filed, it could certainly be explained by a desire for an expeditious and economically efficient forum in which to resolve these claims in view of Ricoh's wasteful litigation strategy. Moreover, the petition, on its face, discusses the positions that Ricoh took during claim construction, and the construction by the Court, including the Court's unwillingness to limit the claim 13 to a flowchart editor. Thus, the timing of the petition might more easily be explained by reference to these proceedings than some dilatory tactic.

Moreover, the timing of the petition does not signify a lack of merit of the arguments made in the petition. The petition on its face has merit. Indeed, the fact that each of three senior Examiners, after a careful and critical review of the cited Kowalski prior art, signed off on the order granting the request shows it has merit. Laurenson Decl., ¶ 12, Exh. 4. Moreover, its claim construction ruling, the Court acknowledged the merit of Synopsys' and the Customer Defendants' position on issues such as whether or not the patentee and the examiner agreed to limit claim 13 to a flowchart editor. Because

of a lack of unequivocal evidence, the Court did not rule in Synopsys and the Customer Defendants' favor on this issue at the Markman hearing; however, the reexamination is likely to result in unequivocal evidence on this issue.

Likewise, the inequitable conduct claim has merit. Contrary to Ricoh's assertions, Synopsys and the Customer Defendants do not point blindly to the petition for support of this accusation. Rather they point to a portion of the petition that discusses an article by the named inventors that was published early during the pendency of the patent application. The Kobayashi and Shindo article cites the Kowalski work cited in the reexamination, and distinguishes the Kowalski work solely on the basis of the flowchart input. The Kowalski work, however, was never disclosed to the PTO, and by the inventors' own admissions, was material.

**D.    Ricoh Is Wrong About The Statistics; The Reexamination Will Proceed Quickly.**

In the first instance, Ricoh's reliance on anecdotal evidence should be ignored. Mr. Hoffman does not declare that any of the petitions he references in his declaration were filed in a litigation context. However, when in a litigation context, the petition must be handled with "special dispatch" as has been ordered by the Examiner here. Moreover, all the proceedings Mr. Hoffman references predate the institution of the new reexamination reforms. And, even more significantly, Mr. Hoffman's cases are obviously outlier situations. The statistics attached as Exhibit 5 to Mr. Hoffman's declaration evidence that the average time from filing to resolution is just over 21 months.

In addition, in accordance with the new procedures, a panel of three senior Examiners is now being assigned to review reexaminations. Indeed, as indicated earlier, three senior Examiners signed off on the reexamination petition granted in this case. Laurenson Decl., ¶ 13, Exh. 4. The Director of the PTO has made public assurances that it would continue to improve the expediency of reexamination proceedings. Laurenson Decl., ¶¶ 10-11, Exhs. 2-3.

Moreover, there is objective evidence in this case that the new procedures are working. The first reexamination request was filed on January 17, 2006 and granted on February 28, just six weeks later even though the PTO statutorily has 90 days to consider the petition. In addition, James Dwyer, from the PTO, has confirmed that the backlog is diminishing, and the PTO is making good on its promises to complete reexaminations in less than twenty months. Laurenson Decl., ¶ 8.

HOWREY LLP

-10-

Ricoh is also wrong about the likely outcome of the reexamination. Ricoh relies on statistics from the end of 2004 that cover a twenty year period. Even these statistics, it must be noted, support Synopsys' and the Customer Defendants' position. Pursuant to these statistics, 70% of the time, all claims are cancelled or changed when a petition is filed by a third party requestor.

The statistics have changed with the institution of the new procedures. For 2005, 96% of all granted reexamination petitions resulted in cancellation or amendment of the claims. Laurenson Decl., Exh. 1, ¶ 9. Thus, there is a 70% to 96% chance the claims at issue here will be amended or cancelled.

E.  **Ricoh Is Wrong About The Likely Effect Of The Reexamination**

In view of these statistics, the question then becomes, what happens when the claims are amended or cancelled. If the claims are cancelled, the litigation obviously ends with little Court intervention.

If the claims are amended, intervening rights will reset the damages clock. Ricoh does not dispute this. In fact, it acknowledges that 35 U.S.C. § 252 provides that unless the claims that survive reexamination are identical to the claims asserted prior to reexamination, it cannot recover damages for any period prior to the reexamination certificate.[3] Ricoh's Opposition at page 3, lines 11-17. When

---

[3] 35 U.S.C. § 252 applicable to reexaminations by virtue of 35 U.S.C. § 307(b) provides as follows:

> ... but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.
>
> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using offering for sale, or selling of such thing infringes a valid claim of the reissued patent which as in the original patent. The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

Thus, unless claim 13 survives in a substantially identical form to the form in which it exists today. Ricoh cannot recover damages prior to the reissue date.

HOWREY LLP

-11-

this occurs, little time will be left in the damages period, and the case would likely be resolved by settlement.

While Ricoh does not dispute the effect of amendment, it asserts that all claims would have to be amended to limit damages as the Customer Defendants and Synopsys suggest. While this is technically correct, this will in fact occur if and when claim 13 – the broadest claim – is amended because all the other claims depend from claim 13.

Alternatively, if the claims are further limited, and in particular limited through addition of the flowchart editor requirement, the case would end because Ricoh has already conceded that Synopsys and the Customer Defendants do not have or use flowchart input. If an amendment did not immediately end the case, then the Court would need to re-do the claim construction. Can Ricoh reasonably justify pushing this case forward in view of the fact that there is a 70 or more percent chance that the Court will ultimately have to re-do the claim construction anyhow? The answer is no.

Finally, Ricoh contends that, pursuant to MPEP § 2286, once this Court rules, the PTO "will immediately terminate the reexamination because this court will have evaluated the same prior art." In the first instance, this presumes that the Motion to Stay will be denied, and thus, is a *non sequitur* in terms of its arguments against a stay. In the second instance, it is just plain wrong, which militates in favor of a stay. In *Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988), the Federal Circuit held that the former portion of MPEP § 2286 that authorized the PTO to stay reexamination proceedings in favor of Court proceedings was contrary to law, and therefore, could not be applied by the Commissioner to stay reexamination proceedings. In addition, the *Ethicon* Court went on to hold: "[t]o the extent that MPEP § 2286 states that the PTO is bound by a Court's decision upholding a patent's validity, it is incorrect. On the other hand, if a court finds that a patent is invalid, and that decision is not upheld on appeal, or not appealed, the PTO may discontinue the reexamination proceeding." *Id.* at 1429. Thus, regardless of what the Court does on this motion, the reexamination petition is going to proceed. The PTO will not be bound, even if this Court finds the patent valid. In fact, the PTO will only consider discontinuing the reexamination if this Court were to find the patent invalid and that ruling was to become final. The Court should stay this action in favor of the reexamination proceeding, which is going to continue regardless of how many resources the Court and

the parties invest in this case – unless the Court invalidates the patent in a final and determinative fashion.

### F. Ricoh Is Not Prejudiced; It Is Ricoh Who Unduly Delayed And Has Increased The Cost Of This Litigation

Ricoh contends that a stay would be tantamount to a free pass to continue infringing Ricoh's patent with impunity. However, it is Ricoh's delay that has caused the alleged infringement to continue as long as it has, not whatever incidental additional delay will be proposed by the requested stay. Even as presently scheduled, any alleged infringement will continue until the patent expires. Under no circumstances will a resolution on the merits occur prior to the expiration of the patent in early 2008. Thus, this argument is entirely disingenuous.

As explained above, Ricoh has long known of the alleged infringement. If Ricoh was legitimately concerned about its rights being trampled, it should have brought suit sooner. Moreover, Ricoh is disingenuous in its assertion that the case needs to proceed for the sake of its licensees.

Finally, Ricoh acknowledges that this case is all about money and that there is no injunctive threat. Because Ricoh can always recover for damages through expiration of the patent should its claims survive reexamination unchanged, there will be little or no prejudice flowing from a stay.

### G. For The Foregoing Reasons, All Of The Cases Ricoh Cites Are Inapposite

Ricoh cites a series of cases that it claims this Court should follow. However, this Court has discretion to grant this stay, as none of the cases cited by Ricoh is controlling. Indeed, not one of the cases deals with a patent that is on the verge of expiring, nor a patent belatedly asserted after thirteen years of awareness of the alleged infringement, nor a patent asserted by a patent owner that is neither a competitor of the defendants, nor a licensor to any competitor of the defendants. Moreover, none of the cases dealt with the situation here, where significant resources must still be expended to get this case ready for trial. In view of the foregoing, Ricoh's cases do not apply; the factors to be considered do weigh in favor of Synopsys and the Customer Defendants; and the Court should exercise its discretion by staying this proceeding.

HOWREY LLP

-13-

Case No. C03-4669 MJJ (EMC)
REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY

### III. CONCLUSION

For the foregoing reasons, Synopsys' and the Customer Defendants respectfully request that this Court stay this action during the pendency of the reexamination proceedings.

Dated: March 21, 2006

Respectfully submitted,

HOWREY LLP

By: _____/s/*Denise M. De Mory*_____
Denise M. De Mory
Attorneys for Plaintiff
SYNOPSYS and Defendants AEROFLEX INCORPORATED, AEROFLEX COLORADO SPRINGS, INC., AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC.

HOWREY LLP

-14-