Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC 20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | |
| Plaintiff, | **CASE NO. C-03-4669-MJJ (EMC)** |
| vs. | **CASE NO. C-03-2289-MJJ (EMC)** |
| AEROFLEX INCORPORATED, et al., | **RICOH'S RESPONSE TO DEFENDANTS'** |
| Defendants | **NOTICE OF MOTION AND CORRECTED** |
| | **MOTION TO COMPEL DISCOVERY** |
| SYNOPSYS, INC., | |
| Plaintiff, | |
| vs. | |
| RICOH COMPANY, LTD., | |
| Defendant. | |

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)

2102392.02

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY .................................................................... 1

    A.    SUMMARY OF RESOLVED ISSUES ........................................................ 2

    B.    SUMMARY OF ISSUES IN DISPUTE ...................................................... 3

II.   CONTROLLING LAW ...................................................................................... 8

III.  ARGUMENT ...................................................................................................... 9

    A.    BECAUSE DEFENDANTS HAVE SERVED THOUSANDS OF
        INTERROGATORIES AND REQUESTS FOR ADMISSION, THE
        MOTION SHOULD BE DENIED. ............................................................. 9

    B.    THE KOBAYASHI DEPOSITION ISSUE IS ADDRESSED IN
        RICOH'S MOTION TO QUASH ............................................................. 10

    C.    RICOH'S PRIVILEGE LOG IS APPROPRIATE ...................................... 11

        1.    The parties previously agreed that Ricoh need not log
            communications between it and its counsel ...................................... 11

        2.    Ricoh's log is sufficiently descriptive ............................................. 13

        3.    The Takada memo is properly privileged ......................................... 14

        4.    The internal prosecution files are privileged and there is no basis
            for defendants' crime/fraud argument .............................................. 15

    D.    THE MOTION REGARDING DOCUMENT ISSUES IS WITHOUT
        MERIT ................................................................................................... 16

        1.    Ricoh has conducted an adequate search for responsive
            documents ........................................................................................ 16

        2.    Ricoh has no obligation to search for documents that are not in
            Ricoh's possession, custody or control ........................................... 17

    E.    THE UNRESOLVED ISSUES RELATING TO RICOH'S RESPONSES
        TO THE REQUESTS FOR ADMISSION AND INTERROGATORIES .... 19

        1.    Are Ricoh's responses to the technical requests by incorporating
            its 1700 pages of infringement contentions and expert reports
            appropriate, especially when defendants have done the same
            thing? .............................................................................................. 19

        2.    Is Ricoh obligated to provide information not in its possession? ...... 20

        3.    Has Ricoh sufficiently identified documents and other evidence in

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)

2102392.02

its responses? ....................................................................................21

4.    Is Ricoh obligated to respond to defendants' requests that have a missing or undefined premise? .........................................................21

5.    Is Ricoh obligated to respond to requests that are inartfully drafted or incomprehensible? ...........................................................22

IV.    CONCLUSION...........................................................................................22

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)

2102392.02

**TABLE OF AUTHORITIES**

*Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004) ........................................... 9

*Dole v. Milonas*, 889 F.2d 885, 888-90 (9th Cir. 1989) ................................................................................ 13

*Granberry v. Jet Blue Airways*, 228 F.R.D. 647, 649 (N.D. Cal. 2005) (Chen, J.) ........................................ 8

*Hynix Semiconductor, Inc. v. Rambus Inc.*, 2006 U.S. Dist. LEXIS 30690, *78 (N.D. Cal. 2006) .......................... 15

*In re Assisted Living Concepts, Inc., Securities Litigation*, 2001 U.S. Dist. LEXIS 12864, *4 (D. Or. 2001) ............ 8

*In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir. 1992) ............................................................ 11

*In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000) ................................................... 14

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) ................................ 15

*L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 932 (9th Cir. 2002) ...................................................... 8

*MPT, Inc. v. Marathon Labels, Inc.*, 2006 U.S. Dist. LEXIS 4998, *15 ......................................................... 15

*Total Containment, Inc. v. Dayco Prods., Inc.*, 2001 U.S. Dist. LEXIS 5971, *59 (E.D. Penn. 2001) ...................... 8

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)

2102392.02

1    **I.    INTRODUCTION AND SUMMARY**

2    Since the motion to compel of the Aeroflex defendants and Synopsys (collectively "defendants"

3    unless otherwise indicated) was filed, the parties have made considerable progress in narrowing the

4    issues. Ricoh's negotiations with opposing counsel have been most difficult, since defendants have

5    delayed in identifying which specific discovery requests they even consider to be at issue. It was not

6    until five days after defendants filed their motion that defendants identified for the first time the actual

7    requests that they considered to be at issue. These remaining issues (summarized in Exhibit A to this

8    brief) come down to a fundamental difference in approaches to the end of discovery. Ricoh believes

9    that, during fact and expert discovery, it is obligated to identify all relevant facts and produce all

10    relevant, responsive non-privileged documents in its possession, custody or control. Defendants believe

11    that they are entitled to obtain from Ricoh facts and documents that Ricoh does not have, and to obtain

12    expert opinions and conclusions that will be fully disclosed during expert discovery, and that Ricoh

13    should waive its attorney-client and work product privileges.

14    The majority of the issues in Defendants' motion were raised for the first time after general

15    discovery closed on May 30, and in the middle of the defendants complying the Court's May 8 Order to

16    produce deposition witnesses on their newly disclosed ASICs. Even though defendants had deliberately

17    back-loaded the discovery schedule by scheduling thirteen depositions between May 31 and June 14, in

18    response to defendants' eleventh-hour discovery complaints, Ricoh's counsel collectively spent more

19    than 200 hours reviewing defendants' concerns, analyzing the discovery record, engaging in a dozen

20    meet and confer sessions, negotiating with defendants to obtain extensive clarification and narrowing of

21    their requests, extensively supplementing almost all of Ricoh's written discovery responses, and

22    resolving (or so Ricoh thought) the majority of the outstanding issues. As a result, Ricoh believed that

23    virtually all of the "issues" set forth in defendants' motion were resolved pursuant to the meet and

24    confer process in advance of defendants' filing.

25    The fact that Defendants elected to wait until the absolute last minute to present an omnibus

26    motion to the Court strongly suggests that the motivation for the motion is something other than a desire

27    to obtain discovery. Defendants' unfocused motion to compel reveals a strategy intended to force still

28

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)   Page 1

2102392.02

1    another delay of the trial.  By waiting until after discovery is closed and then throwing in every possible

2    discovery issue, whether real or imaginary, defendants hope to create a basis for still another motion to

3    delay.[1]  The Court should see through this strategy and force defendants to focus on a few laser-specific

4    issues.

5           **A.    Summary Of Resolved Issues**

6           Ricoh understand that the following items alluded to in defendants' papers are no longer at issue:

7           **Supplemental responses to discovery requests.**  As Ricoh promised during the meet and

8    confers on June 2, 5 and 6, between June 8 and 13 it responded to and/or supplemented its responses to

9    Defendants' interrogatories and requests for admission.  See Brothers Dec. Ex. 1-10.  These responses

10   and supplemental responses were served within six business days of Defendants' counsel first raising the

11   issues, and after hundreds of man-hours of work by Ricoh's counsel.  Thus, all of the written discovery

12   requests identified in defendants' exhibit B to its motion have had responses or supplements served.

13   Brothers Dec. ¶ 2.  The fact that it took Ricoh between three and six business days to supplement

14   responses to hundreds of discovery requests is hardly a basis for condemnation, as defendants suggest,

15   but rather reflects a commendable effort on Ricoh's part, especially considering that Ricoh's lead

16   counsel on all discovery matters was out of the office for much of that time, and that there were thirteen

17   depositions in the case between May 31 and June 14.

18          **Withdrawn requests.**  As a result of Ricoh's negotiations and supplementations, defendants

19   have withdrawn from their motion virtually all of their interrogatories that are not tied to a request for

20   admission.  They also have withdrawn a number of their requests for admission.  See Appendix A.

21          **Virtually all Ricoh document production issues have been addressed.**  Ricoh has researched

22   all of the document issues raised in defendants' June 2, 2006 letter (De Mory Dec. Ex. 1B) and

23   reiterated in defendants' motion, as summarized by their Exhibit B.  Ricoh provided a detailed response

24

25   _____

26   [1] Defendants have extensive discovery failures, but Ricoh has continued to negotiate rather than file an omnibus motion,
     knowing that if defendants refuse to produce the required documents, this Court will not punish Ricoh for negotiating before
27   filing, and estop defendants from complaining about delays that they had created.  For example, pursuant to the May 8 Order,
     defendants are required to produce financial spreadsheets in 'native' format, and without Ricoh having to ask for the
28   documents.  Defendants repeatedly delayed the production of those documents, and as of the filing of this opposition,
     defendants still have failed to make a full production.

1    on June 8.  Brothers Dec. Ex. 11.  As set forth in detail in that June 8 letter, Ricoh and its counsel have

2    made repeated comprehensive searches at multiple locations in Japan and the U.S., including both hard

3    copy and electronic, and have produced all relevant responsive non-privileged documents.  Brothers

4    Dec. ¶ 3.  Thus, Ricoh has met its obligations under the Federal Rules.  During the recent meet and

5    confers, Ricoh's counsel has repeatedly reiterated this, but defendants refuse to accept it.  In fact, during

6    a meet and confer on June 15, defendants' counsel expressly acknowledged Ricoh's representation that

7    it had repeatedly searched for and produced all such documents, but refused to withdraw that portion of

8    its motion and instead insisted that Ricoh respond to the motion.  Brothers Dec. ¶ 4.  Defendants counsel

9    said that it would wait until its reply brief to decide whether it would withdraw the Ricoh-related

10    document issues.  *Id.*  This Court should rightly condemn such sharp practice.

11    **Other issues not in defendants' motion.**  Even though defendants' omnibus paper contains a

12    number of additional insinuations, innuendo and red herrings, a careful review reveals that defendants

13    are not moving on those other issues.  For example, although defendants claim that Ricoh's Rule

14    30(b)(6) designees did not testify regarding privileged communications, they never quote any of the

15    depositions or ask the Court to again produce any witnesses.  Likewise, although defendants state (at p.

16    1) that Ricoh has "utterly ignored its discovery obligations," the documents that they pursue are quite

17    discrete.  Tellingly, after repeated threats of filing a motion to compel on Ricoh's use of Design

18    Compiler to support their purported laches defense, defendants have finally conceded that Judge Jenkins

19    had explicitly rejected their efforts to expand their laches defense to include Ricoh's use of Design

20    Compiler, and are not moving on that issue.

21    **B.    Summary Of Issues In Dispute**

22    The parties are at an impasse with respect to only a few issues regarding Ricoh's discovery

23    obligations.  Most of these issues have been known to defendants for months.  Ricoh's understanding of

24    the issues where the parties remain at an impasse is as follows:

25    **1.  Have Defendants Served Too Many Discovery Requests?**  On page 2, lines 11-12 of their

26    motion, Defendants blatantly misrepresent the number of interrogatories, requests for admission and

27    document requests that they have served upon Ricoh.  Defendants' own Exhibit A contradicts their tally

28

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)  Page 3

2102392.02

1    in their brief, but even that summary is low.  In fact, defendants have served in excess of 450 numbered

2    interrogatories, 900 numbered requests for admission, and hundreds of document requests.  Brothers

3    Dec. ¶ 5.  Counting subparts and multiplied on a product by product basis, these comprise thousands

4    upon thousands of requests.  *Id.*  Many of these requests were served in bad faith, knowing they were so

5    abusive that they would not sustained, but withdrawn only after Ricoh responded.  For example, on

6    December 30 and 31, 2005, defendants served 626 numbered requests for admission, which actually

7    contained more than ten thousand requests.  *Id.*  Only after Ricoh responded to those excessive requests,

8    and after prolonged negotiations, did defendants eventually withdraw them, then served an additional

9    274 requests.  *Id.*  Although Ricoh has objected to this abusive discovery, Ricoh nevertheless has

10   attempted to respond to the extent reasonably possible, thereby satisfying its obligations under the rules.

11   **2. The Kobayashi deposition.**  Defendants seek to compel Dr. Kobayashi's deposition for a

12   fourth day, despite this Court's March 30, 2006 Order that limited it to three total days.  Defendants'

13   clear disregard of the Court's order has already been briefed in Ricoh's motion to quash, filed on June 7,

14   2006, and will not be reiterated here.

15   **3. Has Ricoh Provided An Adequate Privilege Log?**  Scattered throughout the motion are

16   allegations that Ricoh has somehow concealed privileged documents.  Stripped of the rhetoric, these

17   assertions fall into four categories:

18   a.    Whether Ricoh's privilege log should have included communications between

19   Ricoh and its outside counsel, even though the parties had expressly agreed that such

20   communications need not be logged.  Counsel for all of the parties have excluded all

21   communications between client and counsel from their logs; now defendants appear to be

22   reneging on that agreement.

23   b.    Whether Ricoh's privilege log is sufficient, given that Ricoh's log discloses the

24   date, subject matter and identity of author, recipients and cc's of every communication, and

25   especially where Ricoh's descriptions are more detailed that those of defendants.

26   c.    Whether a memo that Ricoh's trial counsel (Mr. Hoffman) asked his client (Mr.

27   Takada, from Ricoh's legal department) to prepare and send to him summarizing Mr. Takada's

28

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)  Page 4

2102392.02

1    impressions of a meeting with him, Mr. Hoffman and former Ricoh employee Mr. Shindo is

2    protected by the attorney-client and work product privileges, especially when that memo also

3    discussed Ricoh's trial strategy and other clearly privileged details.

4         d.    Whether the internal patent prosecution files, which defendants admit are

5    privileged, should nonetheless be produced because defendants speculate that they may reflect

6    evidence of a crime or fraud. Defendants have come forward with absolutely no evidence to

7    support their suppositions, and the case law does not support their fishing expedition.

8    **4. Two specific document issues.**  On June 8, Ricoh provided a detailed explanation of the

9    document issues that defendants had raised during their June 2 meet and confer and appeared to reiterate

10   in their June 6 motion. Brothers Dec. Ex. 11. Although Ricoh addressed virtually all of the open issues

11   in that letter, defendants still are pressing many issues; the day before this brief was due, defendants

12   provided a list of 21 different document issues. Brothers Dec. Ex. 12. Despite acknowledging that

13   Ricoh had produced all relevant responsive non-privileged documents, defendants refused to withdraw

14   the issue. Fortunately, the 21 document issues can be boiled down to two categories:

15        a.    Has Ricoh performed an adequate search for its documents? Ricoh repeatedly

16   searched for responsive documents and had advised defendants of this fact. Ricoh is not

17   withholding any relevant, responsive non-privileged documents in its possession, custody or

18   control. See Brothers Dec. ¶ 6.

19        b.    Is Ricoh obligated to again search for and produce documents that defendants

20   obtained pursuant to third party subpoenas, and which documents are not in Ricoh's possession

21   custody or control? The first-named inventor, Dr. Kobayashi, created a company named

22   International Chip Corporation ("ICC"), which later was renamed Knowledge Based Silicon

23   Corporation, or KBSC. Defendants issued several subpoenas to Dr. Kobayashi and his

24   companies, and a large volume of documents were produced. Those documents have always

25   been in KBSC's possession, custody and control, not Ricoh's. To the extent further production

26   of KBSC documents is sought, defendants should have sought to enforce the subpoenas, but did

27   not.

28

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)  Page 5

2102392.02

1    **5. Has Ricoh Sufficiently Responded To Defendants' Interrogatories and Requests For**

2    **Admission?**  This is the most diffuse subject in defendants' motion, and has been the most difficult

3    subject for Ricoh to determine what is really at issue.  Despite repeated requests from Ricoh's counsel

4    and from the Court's law clerks, defendants still have not provided a comprehensive list of which

5    interrogatories and requests are at issue.  As recently as the evening of June 15, defendants' counsel

6    could not say whether a large number of interrogatories were still at issue.  Brothers Dec. ¶ 7.  Instead of

7    focusing their efforts, defendants are insisting that Ricoh provide facts that are not in its possession,

8    custody or control, and that Ricoh disclose its expert opinions and conclusions before expert disclosures

9    are due.  Virtually all of the information that defendants seek is information that Ricoh itself does not

10   have and has never had; such knowledge would require a comprehensive review of defendants'

11   confidential information and considerable expert analysis.  No Ricoh employee could ever attest to such

12   information.

13        Ricoh believes that the pending interrogatories and requests for admission may be divided into

14   the following categories:

15        **Request for admissions and companion interrogatories.**  Despite being excessively numerous,

16   Ricoh has responded to virtually all of the requests with either admissions or denials.  To the extent that

17   the requests are denied, Ricoh has explained why in either the response to the request or in the

18   companion interrogatory response.   Virtually all of defendants requests and companion interrogatories

19   the premature disclosure of expert opinions and conclusions.  To the extent that there are facts upon

20   which the experts will rely, they have been disclosed in Ricoh's infringement contentions.  The patent

21   local rules were put into place to avoid such contention interrogatories that defendants are now pressing.

22   Ricoh has offered to supplement its responses to these requests after expert discovery, but defendants

23   have refused.[2]  Ricoh's supplemental infringement contentions and expert reports will be served on June

24   23, 2006, which will disclose all facts and expert opinions and conclusions upon which Ricoh is relying.

25        There are a few other categories in which defendants' remaining requests fall.  For example:

---

27   [2] Defendants repeatedly have refused to provide details in response to Ricoh's interrogatories until expert discovery.  *See,*

28   *e.g.*, Brothers Dec. Ex. 13, Synopsys May 17, 2006 Response to Defendant's Ricoh's Second set of Interrogatories, No. 7.
     "Plaintiff will provide additional details in its expert reports."

- Ricoh has no obligation to respond to requests for admission that call for or are based on information not in the possession of Ricoh, and which has not been provided by defendants.

- Ricoh cannot fully respond to defendants' poorly drafted requests for admissions using terms that are not defined by defendants; Ricoh had tried to respond by providing its own definitions, but defendants are unhappy with those responses.

**Other interrogatories.** Aside from the companion interrogatories to the foregoing requests for admission, Ricoh understands that the other interrogatories that remain at issue fall into three categories:

- In response to defendants' interrogatories that ask for a description of the roles of various Ricoh employees in connection with the '432 patent and the joint development of a knowledge based silicon compiler, Ricoh properly provided a narrative response, then referred Ricoh's Rule 30(b)(6) testimony, as well as the deposition of Dr. Kobayashi, but defendants think this is improper.

- Some of defendants' interrogatories have a missing or undefined premise. For example, for defendants' interrogatories regarding Ricoh's testing or evaluation of any preferred embodiment, Ricoh has not conducted an evaluation to determine what, if any, preferred embodiment of the '432 patent exists. Likewise, the interrogatory that asks about infringement by the "ordinary use" of Synopsys Design Compiler is defective because that phrase has never been defined – *ever* – by defendants, despite Ricoh's multiple meet and confers. Ricoh properly responded by referring to its detailed infringement contentions, which have 1700 pages of detail of the factual basis for Ricoh's claims.

- Finally, there are a few interrogatories that are so broad that they are unanswerable as phrased. Ricoh responded by objecting and narrowing the scope, for example, to the damage period of 1997 to the present for damages-related information.

Thus, Ricoh has done the best job it could given the tens of thousands of requests imposed by defendants, the exceptionally short amount of time to supplement since these issues were first raised on June 2, 2006, and the opaque nature of defendants' omnibus motion. The motion should be denied

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)  Page 7

2102392.02

1    outright.  Even if there are a handful of issues that remain in dispute, Ricoh believes that at any further

2    meet and confer, the Court should strictly limit the number of requests that may be raised; instruct the

3    defendants to define their terms; apply its rulings to all parties; and avoid make-work by permitting the

4    parties to rely upon its expert analysis.

5    **II.    CONTROLLING LAW**

6        At the end of discovery, remaining requests should be rifle-shot specific and not speculative

7    fishing expeditions.  In *Granberry v. Jet Blue Airways*, 228 F.R.D. 647, 649 (N.D. Cal. 2005) (Chen, J.),

8    this Court held that "production of [requested reports] may be unduly burdensome on Jet Blue in light of

9    the fact that their relevance is indirect and limited."  The Court ordered parties to meet and confer so the

10   requests could be further narrowed.  Despite Ricoh's efforts to narrow the requests, defendants have

11   resisted, perhaps because it would take away from their strategy to further delay trial.  At this stage,

12   however, defendants must make a "particularized showing of relevance" in order to obtain such

13   burdensome discovery.  In *In re Assisted Living Concepts, Inc., Securities Litigation*, 2001 U.S. Dist.

14   LEXIS 12864, *4 (D. Or. 2001), the Court denied plaintiff's motion to compel because "[a]bsent a

15   particularized showing of relevance . . . the requests will cause undue burden and expense."

16       If defendants' requests are vague, then Ricoh's objections are proper.  For example, in *L.A. News*

17   *Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 932 (9th Cir. 2002), the Ninth Circuit sustained the district

18   court's exclusion of an admission because the term "used" was vague and ambiguous.  *See also Total*

19   *Containment, Inc. v. Dayco Prods., Inc.*, 2001 U.S. Dist. LEXIS 5971, *59 (E.D. Penn. 2001) (affirming

20   denial of motion to deem requests admitted because "the requests for admission were vague, misleading,

21   and could lead to an admission which would constitute a 'half truth.'").  As a result of the meet and

22   confers where defendants clarified many of their requests, Ricoh provided supplemental responses, but

23   where defendants declined to further explain or clarify their requests, Ricoh is unable to properly

24   provide an admission that effectively would constitute a 'half truth.'

25

26

27

28

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)   Page 8

2102392.02

## III.    ARGUMENT

### A.    Because Defendants Have Served Thousands Of Interrogatories and Requests For Admission, The Motion Should Be Denied.

In this case, defendants have served 294 numbered interrogatories, 900 numbered requests for admission, and 174 numbered document requests. Brothers Dec. ¶ 5. After Ricoh objected to this abusive discovery, defendants unilaterally withdrew eighteen numbered interrogatories and 624 requests for admission. *Id.* Defendants then propounded 253 new numbered interrogatories and 274 numbered requests for admission. *Id.* Those interrogatories and requests form the bulk of defendants' instant motion, and are addressed below in section III.E.[3] Defendants' 274 new numbered requests for admission actually comprise thousands of requests, because each of them purports to cover hundreds of products in a single request. For example, request no. 22 states:

> Admit that the inputs for the accused ASICS that the Customer Defendants have produced in this litigation are either VHDL or Verilog.

Brothers Dec. Ex. 1. This request explicitly applies to *each* of the accused products from the seven defendants. Counting the products that were disclosed for the first time in May of this year pursuant to this Court's May 8, 2006 Order, there are now 452 different accused ASIC products at issue. Brothers Dec ¶ 8. This Court has already ruled that discovery requests that cover different products are different requests for each product.

> [A]bsent a demonstration that the products are directly related (*e.g.*, different versions of the same product), the interrogatory consists of discrete subparts for each ASIC product. *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004) (rejecting argument that interrogatory that asked about 26 different accused products did not have 26 discrete subparts).

D.I. 338, 9/30/05 Order, at 6-7. Thus, request no. 22 is actually 452 different requests for admission. There are numerous other requests for admission that address multiple products, or multiple applications of functions, or are similarly compound. Ricoh estimates that there are over more than *ten thousand* different requests for admissions embedded within defendants' 274 numbered requests.

---

[3] Ricoh has objected to the numerousity of the propounded interrogatories. In an effort to try and work through these discovery disputes, Ricoh supplemented its responses despite its numerosity objections. Ricoh has not waived its objections to the excessive number of interrogatories that have been propounded by the defendants.

1       Likewise, defendants' interrogatories are far more numerous than the numbering reflects.

2   Including subparts, the interrogatories consist of more than 450 interrogatories. *See, e.g.*, Brothers Dec.,

3   Ex. 20 at 8 ("Identify all writings, including, but not limited to, opinions of counsel, that indicate,

4   reflect, or comment upon whether any product, including, but not limited to Aeroflex's products,

5   infringes or does not infringe [claim 13] of the '432 patent . . ."). For example, according to the

6   computation of the defendants in its Exhibit A, Aeroflex's restated interrogatories 1-9 consists of nine

7   requests. These interrogatories, however, have multiple subparts (e.g., no. 2: "state each fact", 'the

8   identification of documents', and the "identification of persons…most knowledgeable").[4]

9       Although defendants' requests are vastly excessive in number, Ricoh has attempted to

10  reasonably respond to the extent it could understand the requests. See Brothers Dec. Exs. 1-10. Ricoh

11  thus has more than satisfied its obligations under the rules. In reviewing this motion, the Court should

12  be mindful that defendants have served tens of thousands of discovery requests, and of Ricoh's good

13  faith in responding to those thousands of individual requests. The Court would be more than justified in

14  denying the motion outright based solely on the excessive number of requests.

15  **B.      The Kobayashi Deposition Issue Is Addressed In Ricoh's Motion To Quash**

16      Defendants seek to compel Dr. Kobayashi's deposition for a fourth day, despite this Court's

17  March 30, 2006 Order that limited it to three total days. This issue has already been briefed in Ricoh's

18  motion to quash, filed on June 7, 2006, and will not be reiterated here.

19  **C.      Ricoh's Privilege Log is Appropriate**

20      Defendants raise several issues relating to the sufficiency of Ricoh's privilege log. The Ninth

21  Circuit has held that the deciding factors for assessing an attorney-client privilege involve content and

22  context, including the following eight elements of attorney-client privilege: "(1) Where legal advice of

23  any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications

24  relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently

25

26  _____

27

28  [4] This computation does not address all the numbered parts and unnumbered subparts of interrogatories that had been served
    by defendants, responded to by Ricoh, and then unilaterally withdrawn by the defendants.

protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir. 1992).

### 1.    The parties previously agreed that Ricoh need not log communications between it and its counsel

Ricoh had sought a mutual exchange of privilege logs for years.  For example, in the April 26, 2004 discovery plans submitted by the parties, Ricoh proposed a mutual exchange of privilege logs, but also proposed that the parties not log communications between client and counsel.  D.I. 182, at 4-5. Defendants refused to exchange logs, and shortly thereafter the stay was imposed.  In the June 2005 CMC statement, Ricoh again proposed procedures for exchanging logs and reiterated its proposal, but defendants ignored the issue and refused to discuss it for nearly a year.  D.I. 301 at 30.  Earlier this year, defendants finally agreed to mutually exchange privilege logs in April 2006.  The parties have agreed that the delay in exchanging logs was not a waiver of the privilege, and defendants do not make that argument in their papers.  Brothers Dec ¶ 9.

As part of the discussions that led to the exchange of the logs, the parties agreed that communications between clients and counsel need not be logged.  *Id.*  As a result, counsel for all of the parties have excluded all communications between client and counsel from their logs.  *Id.*  For example, the privilege log of defendants and Synopsys contains a total of 40 entries, and none are between opposing counsel and their clients.  Brothers Dec. Ex. 14.  Just today, Ricoh learned from a deposition of third party Texas Instruments that TI had multiple discussions with Synopsys regarding Ricoh's '432 patent in 2000.  Brothers Dec. ¶10.  The TI corporate designee understood that Synopsys was having internal discussions regarding the patent (which almost certainly resulted in the creation of emails and other documents), but Synopsys has *never* produced or logged any Synopsys documents regarding either its discussions with TI or its internal review and analysis of the '432 patent.  *Id.*

Nor have defendants logged their communications between themselves regarding the '432 patent or this litigation, even though some of those communications have been voluntarily produced.  Brothers Dec. ¶ 11.  Even when privileged documents were inadvertently produced, they were never logged; when defendants produced (unlogged) emails between counsel and client regarding the July 2005 court-ordered declarations, those documents were never logged, even after this Court ordered that they be

1     returned. *Id.* Defendants, however, appear to be demanding that Ricoh now log communications

2     between counsel and client, despite their prior agreement that those documents would not be logged and

3     their refusal to log such communications. This Court should reject this last-minute argument.[5]

4         Even if the parties are required to log their communications with counsel, defendants do not

5     contend that such a log is reasonably calculated to lead to discovery of admissible evidence.

6     Defendants' motion appears to be nothing more than make-work. They have offered no justification for

7     their demands or for their reneging on their agreement, and have not followed the same standards that

8     they are attempting to apply to Ricoh. For example, defendants have not logged any of their

9     communications with their outside counsel (or even their in-house counsel), even though they have

10     voluntarily produced some of the communications between or among them, and have presented

11     witnesses to testify about some of those communications. Brothers Dec. Ex. 15 (reflecting substantive

12     post-filing communications between the defendants and Synopsys regarding the litigation). Defendants

13     have never explained why they have produced some such communications, and not others, and have not

14     logged any of the withheld communications. Likewise, defendants have not logged their counsel's work

15     product, including documents reflecting their communications with third parties. Their demands that

16     Ricoh's counsel produce such work product is not only inconsistent with their own actions, but it is

17     inconsistent with the parties' agreement that such communications need not be logged. In any event,

18     they do not identify which requests on which those demands are based. Defendants' agreement with

19     Ricoh, as well as their own conduct, estops them from complaining about Ricoh's privilege log.[6]

20         **2.    Ricoh's log is sufficiently descriptive**

21         Ricoh's privilege log discloses the date, subject matter and identity of author, recipients and cc's.

22     Brothers Dec. Ex. 16. As such, it is sufficient under Ninth Circuit law and this Court's chamber rules,

23

24

25

26

[5] The parties left open the issue of whether the parties' pre-filing communications should be logged; however, defendants'
motion does not appear to address that issue, because it addresses privileged documents that were created both before and
after the commencement of litigation. Even if it was an issue, because defendants have refused to log their pre-filing
communications, they cannot claim that Ricoh was wrong to also do so.

27

28

[6] To the extent that the Court rules that Ricoh should log their communications with counsel, Ricoh cross-moves that
defendants should do likewise. Ricoh did not file a motion on this issue because it understood that the parties had an
agreement that did not require such logs, but if the Court supersedes that agreement, then all parties should be held to the
same standard.

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)   Page 12

2102392.02

1   especially when Ricoh's descriptions are more detailed that those of defendants.   In *Dole v. Milonas*,

2   889 F.2d 885, 888-90 (9th Cir. 1989), the Ninth Circuit held that a privilege log containing the following

3   elements is satisfactory to establishing an attorney client privilege: (a) the attorney and client involved,

4   (b) the nature of the document, (c) all persons or entities shown on the document to have received or

5   sent the document, (d) all persons or entities known to have been furnished the document or informed of

6   its substance, and (e) the date the document was generated, prepared or dated.   *Id.*   A log that contains

7   these elements is sufficient to meet the burden of demonstrating the applicability of the attorney-client

8   privilege through a privilege log.   This Court's chamber rules are consistent with *Dole*.

9         Ricoh's log meets the *Dole* requirements.   It identifies all of the parties involved with the

10   document; the document date; and the nature of the document.   Brothers Dec. Ex. 16.   It states the basis

11   for the privilege claim.   *Id.*   Apparently, defendants contend that there should be a more detailed

12   description of the content of the documents, but this is not required by *Dole*, and risks the revelation of

13   the content – the very thing the log is intended to protect.   Ricoh's description is more detailed than the

14   description provided by defendants.   For example, Synopsys's first three logged items are described as

15   "Email from corporate counsel regarding agreement," "Email from general counsel regarding legal

16   issue" and "Email regarding legal issue."   Brothers Dec. Ex. 14.

17               **3.    The Takada memo is properly privileged**

18         Mr. Shindo is a long-retired former Ricoh employee who was a co-inventor of the '432 patent.

19   Mr. Shindo was identified by all parties in their Rule 26 disclosures as a person with knowledge.   In

20   January 2004, Ricoh advised defendants that Mr. Shindo had declined to voluntarily appear for a

21   deposition.   Brothers Dec. Ex. 17.   Mr. Shindo will not appear at trial.   Instead of seeking the deposition

22   testimony from this supposedly "critical" witness pursuant to Rule 28(b), defendants did nothing for

23   more than two years.   On March 30, 2006, this Court ruled that defendants' inaction effectively had

24   precluded them from obtaining testimony from Mr. Shindo.   D.I. 414 at 3.   These facts sharply refute

25   defendants' sudden, suspicious and unsupported insistence that Mr. Shindo's testimony somehow is

26   central to this case.

27

28

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)   Page 13

2102392.02

1    Prior to the commencement of the litigation, as part of Ricoh's pre-filing investigation into the

2    patent, Ricoh's trial counsel (Mr. Hoffman) and a senior Ricoh representative from one of Ricoh's legal

3    departments (Mr. Takada) met with Mr. Shindo.  Mr. Hoffman asked Mr. Takada to prepare and send to

4    him a summary of Mr. Takada's impressions of the meeting.  Brothers Dec. ¶ 12.  This memo clearly is

5    protected by the attorney-client and work product privileges.  The memo was never shown to Mr.

6    Shindo.  *Id.*  It discussed Ricoh's legal strategy and communications between Mr. Hoffman and Mr.

7    Takada.  *Id.*  There is no basis whatsoever for defendants to argue that the document is not protected by

8    the attorney-client privilege.  These facts repeatedly were made known to defendants, *id.*, yet they still

9    assert, with no basis, that the memo is not privileged.  Such arguments only impair defendants'

10   credibility, and should be rejected.

11        The memo also is protected by the work product doctrine, because it was prepared at the request

12   of counsel in anticipation of litigation, and reflects Ricoh's legal strategy.  *Id.*  Defendants have not

13   made a sufficient showing that they are entitled to the memo, especially when (1) defendants sat on their

14   rights for more than two years to seek the deposition of Mr. Shindo pursuant to Rule 28(b), leading to

15   this Court's March 30 order that Mr. Shindo would not be deposed; and (2) defendants have had plenty

16   of other discovery regarding Mr. Shindo, including three days of testimony from Dr. Kobayashi, from

17   Ricoh's Rule 30(b)(6) designees, and written responses to interrogatories.  There simply has been no

18   showing of need to penetrate the work product privilege on this memo.[7]

19        **4.    The internal prosecution files are privileged and there is no basis for
             defendants' crime/fraud argument**

20

21        Federal Circuit case law firmly sustains the privilege relating to internal communications

22   between inventors and prosecution counsel.  *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800,

23   806 (Fed. Cir. 2000) ("since Spalding's invention record was prepared and submitted primarily for the

24   purpose of obtaining legal advice on patentability and legal services in preparing a patent application,

25   ——————————————

26   [7] Following the meeting between Mr. Hoffman, Mr. Takada and Mr. Shindo, and after Mr. Takada sent Mr. Hoffman the
27   privileged memo, Mr. Hoffman sent Mr. Shindo a letter prepared by Mr. Hoffman summarizing the meeting.  At the time this
     letter was sent, Ricoh had a common interest with Mr. Shindo, and was expecting Mr. Shindo would cooperate in the
28   litigation.  Thus, that letter is protected from disclosure by the common interest doctrine.  The fact that Mr. Shindo later
     declined to cooperate with Ricoh or defendants and declined to voluntarily sit for a deposition does not alter that privilege.

1   we conclude that it is privileged in its entirety."); *Hynix Semiconductor, Inc. v. Rambus Inc.*, 2006 U.S.

2   Dist. LEXIS 30690, *78 (N.D. Cal. 2006) ("documents such as notes of interviews with the inventors

3   and draft responses to the patent examiner . . . would probably be privileged and not been

4   discoverable"). Defendants apparently concede that those communications are privileged. Def. Mot. at

5   22, ll. 12-13 ("documents contained in the prosecution history are privileged").

6           Nevertheless, defendants speculate that those obviously privileged communications should still

7   be produced because they may relate to an unexplained crime or fraud. This obnoxious supposition has

8   absolutely no basis in fact, as defendants concede. Def. Mot. at 21, ll. 18-20 (arguing that, because the

9   memory of witnesses have faded, "only disclosure of the withheld prosecution history files will allow

10  Synopsys *to determine whether* inequitable conduct occurred") (emphasis added). In other words,

11  defendants admit that they have no evidence that there was any inequitable conduct. The Federal Circuit

12  has held that "[i]nequitable conduct resides in failure to disclose material information, or submission of

13  false material information, with an intent to deceive, and those two elements, materiality and intent,

14  must be proven by clear and convincing evidence." *Kingsdown Medical Consultants, Ltd. v. Hollister*

15  *Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). Defendants have absolutely no evidence of that 1) anything

16  was withheld; 2) even if anything was withheld, that it was material; or 3) that there was any intent to

17  deceive. Defendants' last-minute speculation cannot support either a waiver of the privilege, or even

18  justify an in-camera inspection of these undisputedly privileged documents. Before finding a privilege

19  has been waived or ordering an in-camera inspection, there must be some reasonable basis to believe

20  that the documents may not be privileged. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806

21  (Fed. Cir. 2000) (holding that it is not "necessary to dissect the document to separately evaluate each of

22  its components. It is enough that the overall tenor of the document indicates that it is a request for legal

23  advice or services"); *MPT, Inc. v. Marathon Labels, Inc.*, 2006 U.S. Dist. LEXIS 4998, *15 (N.D. Ohio

24  2006) (relying on *In re Spalding* in rejecting a request for in camera review as there had been no

25

26

27

28

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)  Page 15

2102392.02

1  showing that the privilege had been waived).[8]  This Court should reject defendants' unsupported

2  speculation and deny the motion.

3  **D.    The motion regarding document issues is without merit**

4  **1.    Ricoh has conducted an adequate search for responsive documents**

5  Ricoh has conducted repeated comprehensive searches for responsive documents.  As

6  documented in the Brothers declaration, Ricoh repeatedly searched for documents in all locations where

7  it had reason to believe there may be responsive documents.[9]  As part of Ricoh's searches, it contacted a

8  large number of Ricoh employees who Ricoh reasonably considered my have knowledge of or

9  possession of relevant documents.  Brothers Dec. ¶ 13.  Guided by Ricoh's legal department and Ricoh's

10  outside counsel, more than a dozen Ricoh employees were tasked to conduct these interviews and search

11  for documents.  *Id.*  All potentially relevant responsive documents were copied and subjected to another

12  level of review for responsiveness and privilege.  *Id.*  Those documents were then processed and

13  produced.  *Id.*

14  In response to defendants' insistence that Ricoh "certify" that is has conducted a reasonable

15  search for responsive documents, in the past 48 hours, Ricoh reviewed the list of 21 categories of

16  documents identified by defendants in June 14, 2006.  Brothers Dec. Ex. 14.  With respect to each of

17  those categories, Ricoh and its counsel once again confirm that Ricoh repeatedly has searched for,

18  collected and produced all relevant, responsive non-privileged documents that are in Ricoh's possession,

19  custody and control.

20

21

22

23

24

---

25  [8] Of course, if the Court finds that there is a valid basis for an in-camera inspection, Ricoh will submit the documents, but
26  defendants have failed to make the required threshold showing.

27  [9] Defendants have demanded that Ricoh and its counsel "certify" that they have conducted a comprehensive search for and
production of documents.  Ricoh and its counsel are mindful of their professional obligations when making such
representations to opposing counsel and the Court, and believe that any further "certification" is unnecessary.  Nevertheless,
28  Ricoh has offered to enter into such a "certification" if defendants and their counsel do likewise, but defendants have refused.

### 2.    Ricoh has no obligation to search for documents that are not in Ricoh's possession, custody or control

Defendants apparently seek an order compelling Ricoh to produce documents in the possession of third party KBSC.[10]  Ricoh is not obligated to again search for and produce documents that defendants obtained pursuant to third party subpoenas, and which documents are not in Ricoh's possession custody or control.

All of the documents in this category are referred to as "KBSC" documents, which also includes dealings that KBSC may have had with a company named Paradyne.  In the 1980s, the first-named inventor, Dr. Kobayashi, created a company named International Chip Corporation ("ICC"), which he later was renamed Knowledge Based Silicon Corporation, or KBSC.  KBSC is a separate company that is not a party to this case.  This company was never owned or controlled by Ricoh.  Brothers Dec. ¶ 14.  Defendants issued several subpoenas to Dr. Kobayashi and his companies, and a large volume of documents were produced from locations in South Carolina and California.  *Id*.  Those documents have always maintained and controlled by KBSC, not Ricoh.  *Id*.

During a meet and confer on June 12, Ricoh's counsel explained to defendants' counsel that the KBSC documents were not in Ricoh's possession, custody or control.  The KBSC documents were produced pursuant to several third party subpoenas from defendants.  *Id*.  To the best of Ricoh's understanding, most of the KBSC documents are located in a locked KBSC storage facility located in Mountain View, California, and have been for years.  *Id*.  Ricoh understands that a few KBSC documents may also have been stored in a South Carolina condominium to which Dr. Kobayashi has access.  *Id*.  Neither Ricoh nor its counsel has access to either of those facilities.  *Id*.  Access to those documents is controlled by KBSC's officers, all of whom have been deposed in this action.  *Id*.

Ricoh understands that, in 2003, Dr. Kobayashi and another KBSC officer named Brian Bershader, in response to defendants' subpoenas, reviewed and selected documents that they considered to be potentially responsive.  Brothers Dec. ¶ 15.  Ricoh's counsel did not participate in the review and

---

[10] On June 15, defendants' counsel confirmed that the only third party documents that were at issue in the motion were the KBSC documents.  Brothers Dec. ¶ 14.

1    selection of those documents. *Id.* Instead, Dr. Kobayashi and Mr. Bershader reviewed and selected

2    documents that they considered to be responsive to the subpoenas, then delivered them to Ricoh's

3    counsel for processing and production to defendants. *Id.* All KBSC documents were separately

4    identified and separately labeled with a "KBSC" bates number. *Id.* The KBSC documents that had been

5    sent to Ricoh's counsel were all returned to KBSC. *Id.* Dr. Kobayashi and Mr. Bershader were both

6    deposed in 2004 and were asked about their search for and production of documents pursuant to those

7    subpoenas. Brothers Dec. Ex. 18. Since that time, defendants have not issued any additional subpoenas

8    to KBSC, and have made no effort to move to compel with respect to those subpoenas. Brothers Dec. ¶

9    15. To the extent defendants believed further production may have been in order, defendants should

10    have sought to enforce the subpoenas, but they did not. If defendants have problems with the production

11    of documents from third parties, it should have long ago raised those issues with the respective third

12    parties, but defendants did not. Because those documents are not in the possession, custody or control of

13    Ricoh, the motion should be denied.

14        **E.**     **The Unresolved Issues Relating To Ricoh's Responses To The Requests For Admission and Interrogatories**

15

16       Defendants' motion apparently takes issue with virtually every discovery response from Ricoh,

17    even if the requests and responses were served in 2003 and the parties had long ago moved on.

Defendants' strategy apparently is to move on every issue instead of focusing on the things that really

18

19    matter. By moving on everything, defendants' papers diffuse their impact. It is virtually impossible for

Ricoh to respond to all of the issues, or for the Court to sort through it all.

20

21       When defendants attempted to raise some of the issues in a meet and confer on June 2, Ricoh

22    spent hundreds of man-hours conferring with defendants' counsel to obtain clarification of the requests,

reviewing a huge amount of information, conferring with Ricoh, and supplementing Ricoh's

23

24    responses.[11] On June 15, defendants agreed to withdraw a number of requests and interrogatories, as set

25

26

27

28

[11] During a meet and confer on Monday, June 12, 2006, Defendants' counsel was unprepared to discuss Ricoh's supplemental responses or agree upon this narrowed list. To the extent that defendants contend that there may be other issues, Ricoh does not waive its arguments but reserves the right to supplement its response either in writing or at the hearing.

1  forth in Exhibit A. Ricoh understands that the only remaining issues regarding Ricoh's written

2  discovery responses are as follows.

3  **1.    Are Ricoh's responses to the technical requests by incorporating its 1700
4  pages of infringement contentions and expert reports appropriate, especially
   when defendants have done the same thing?**

5  *Defendant's Request for Admissions* 22-26, 28-29, 33-39, 41-45, 50-54, 56-57, 60-63, 74, 77-83,
6  and 95-96
   *Interrogatories Matrox Electronic Systems Nos. 42-47, Matrox Tech Nos. 5-7, 9,10, 12, 14, 18,*
7  *24*

8  This case will turn on expert testimony. Virtually all of the defendants' requests for admission

9  and companion interrogatories relate to matters that will be addressed in the expert reports and

10  depositions. Ricoh's experts are presently completing their work on their expert disclosures, which will

11  fully set forth all of Ricoh's technical analysis. Brothers Dec. ¶ 16. These expert reports on

12  infringement and damages will be served on June 23, 2006. Not only are defendants' requests and

13  interrogatories inconsistent with the local rules, then, but they are both premature and make-work.

14  Ricoh repeatedly had advised defendants that it is willing to supplement these written discovery

15  responses after Ricoh's expert reports are issued.

16  Likewise, many of defendants' request and companion interrogatories require disclosure of

17  Ricoh's expert analysis of the invalidity defenses. Brothers Dec. Ex. 1 at 14 ("Admit that Verilog for

18  the accused ASICs that the customer defendants have produced in this litigation are register transfer

19  level descriptions as described in U.S. Patent No. 4,702,435 at Col. 5:27-34."). Defendants of course

20  bear the burden of proof those defenses, yet their own interrogatory responses refuse to provide the

21  required information until expert discovery. For example, Synopsys May 17, 2006 Response to

22  Defendant's Ricoh's Second set of Interrogatories, No. 7. states that Synopsys "will provide additional

23  details in its expert reports." Brothers Dec. Ex. 19. Ricoh realizes that there is no point is requiring the

24  parties to supplement these responses at this time, when they are only going to be further supplemented

25  and modified by expert discovery. Perhaps the Court needs to help defendants arrive at the same

26  realization.

27

28

Ricoh's counsel repeatedly has asked defendants' counsel why the parties should not simply incorporate their expert reports, especially when defendants have done the same thing in their responses. Defense counsel has never provided an adequate response. Ricoh submits that the burden to provide such responses far outweighs whatever benefit might be derived, especially when all of the relevant facts and analysis will already have been disclosed to defendants in Ricoh's infringement contentions and expert discovery.

### 2.    Is Ricoh obligated to provide information not in its possession?

*Defendants Request for Admissions 55, 85-94, 103-126, and 137-144*
*Interrogatories Matrox Tech Nos. 2-4, 15, 20-23*

A large number of requests for admission and the companion interrogatories call for or is based on information or testimony that is not in the possession of Ricoh, and which has not been provided by defendants. For example, Ricoh's employees have been unable to review any of the Synopsys source code because it has been declared confidential. In addition, Ricoh has no factual basis to respond to a large number of other requests. To the extent that there is factual information available, it is "off limits" to Ricoh. Thus, no Ricoh employee is in a position to review and verify the responses that include such factual information.

### 3.    Has Ricoh sufficiently identified documents and other evidence in its responses?

*Interrogatories Matrox Int'l's Nos. 3-11*

Ricoh's responses to, which asked for a description of the roles of various Ricoh employees in connection with the '432 patent and the joint development of a knowledge based silicon compiler Ricoh provided a narrative response, then referred Ricoh's Rule 30(b)(6) testimony, as well as the deposition of Dr. Kobayashi.[12] Thus, Ricoh has properly responded and disclosed all relevant facts of which it is currently aware.

---

[12] Ricoh is uncertain of whether defendants are continuing to move in connection with Ricoh's response to Aeroflex Colorado Interrogatory No. 1, which requests identification of certain prior art. Ricoh responded by citing specific documents by bates number pursuant to Rule 33(d). On June 13, defendants said this was still at issue but erroneously claimed that the response only generally identified documents.

4.    **Is Ricoh obligated to respond to defendants' requests that have a missing or undefined premise?**

*Interrogatories Aeroflex Colorado Nos. 3,4, Matrox Int'l 12-16*

Many of defendants' requests have a missing or undefined premise.  For example, for Matrox Int'l Interrogatories 12-13, regarding Ricoh's testing or evaluation of any preferred embodiment, Ricoh has not conducted an evaluation to determine what, if any, preferred embodiment of the '432 patent exists, so Ricoh cannot provide a more detailed response.  Aeroflex Colorado's interrogatory no. 3 asks about infringement by the "ordinary use" of Synopsys Design Compiler, but that phrase has never been defined – ever – by defendants, despite multiple meet and confers.  As a result, Ricoh responded by referring to its detailed infringement contentions, which have 1700 pages of detail of the factual basis for Ricoh's claims.  In several other interrogatory responses regarding Ricoh's infringement theory, Ricoh has provided responses that incorporate its infringement contentions, but defendants apparently want Ricoh to cut-and-paste those contentions into these responses.  This makes no sense.  Defendants already have all the relevant facts.

5.    **Is Ricoh obligated to respond to requests that are inartfully drafted or incomprehensible?**

*Defendants Request for Admissions 151-156, 163-213, 218-274*
*Interrogatories Aeroflex Nos. 12-19, Aeroflex Coloado Nos. 7-46,  AMI Nos. 6-37, 42-50,*

Many of defendants' request for admissions lack foundation, are vague, inartfully drafted, or simply incomprehensible.  For example, request no. 163 states

> Admit that the terms of Tooru Ozeki participated in the development of the software that was delivered to Ricoh in or about August of 1987 pursuant to the terms of KBSC 000001 - 0000003.

Brothers Dec. Ex. 3.  There are nine such requests, all demanding that Ricoh "admit that the terms of [name of individual] participated in the development of the software . . ."  See id. nos. 163-71.  This request is objectionable for multiple reasons:  First, these requests ask about actions by a non-party (KBSC) of which Ricoh has no knowledge, so there is no basis for Ricoh to admit or deny.  Second, even if Ricoh did have knowledge, the phrase "that the terms" makes no sense, and despite multiple meet and confers, defendants have never clarified it.  Third, the phrase "participated" is undefined, and is so loose as to be meaningless.

1   Another example is found in defendants' request no. 64 that Ricoh "admit that *any* IF-THEN

2   statement is "rule" as defined in the Court's April 7, 2006 claim construction order."  (Emphasis added).

3   Ricoh has no way of knowing how encompassing defendants intended to be.  Ricoh did not have

4   knowledge of what kind of IF-THEN statements in order to be knowledgeable enough to respond.

5   Finally, there are a few interrogatories that are so broad that they are unanswerable.  Ricoh

6   responded by narrowing the scope, for example, to the damage period of 1997-present for damages-

7   related information.

8   **IV.   CONCLUSION**

9   In sum, Ricoh has done the best job it could given the tens of thousands of requests imposed by

10   defendants.  Should the Court believe that a further meet and confer or supplementation is necessary, it

11   should (1) set a hard limit on the number of requests, (2) instruct the defendants to define their terms; (3)

12   permit Ricoh to rely upon its expert analysis; and (4) apply the same standards to all parties.

14   Dated: June 16, 2006                    Ricoh Company, Ltd.

15                                           By: /s/ Kenneth W. Brothers

16   Jeffrey B. Demain, State Bar No. 126715    Gary M. Hoffman
     Jonathan Weissglass, State Bar No. 185008    Kenneth W. Brothers
17   Altshuler, Berzon, Nussbaum, Rubin &      DICKSTEIN SHAPIRO MORIN &
     Demain                                        OSHINSKY LLP
18   177 Post Street, Suite 300               2101 L Street NW
19   San Francisco, California  94108         Washington, D.C.  20037-1526
     Telephone:  (415) 421-7151               Telephone: (202) 785-9700
20   Facsimile:  (415) 362-8064               Facsimile: (202) 887-0689

21                                            Edward A. Meilman
                                              DICKSTEIN SHAPIRO MORIN &
22                                                OSHINSKY LLP
23                                            1177 Avenue of the Americas
                                              New York, New York  10036
24                                            Telephone:  (212) 896-5471
                                              Facsimile:  (212) 997-9880
25                                            Attorneys for Ricoh Company, Ltd.

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)   Page 22

2102392.02

# Appendix A

<u>Written Discovery Requests at Issue</u>

Defendants' Request for Admissions:

> 22-26, 28-29, 33-39, 41-45, 50-57, 60-63, 74, 77-83, 85-96, 103-126, 137-144, 151-156, 163-213, and 218-274.

Interrogatories:

> Aeroflex Nos. 12-19
> Aeroflex Colorado. Nos. 3,4, 7-46
> AMI Nos. 6-37, 42-50,
> Matrox Electronic. Sys. Nos. 42-47,
> Matrox Tech Nos. 2-7, 9,10, 12,14, 15, 18, 20-24
> Matrox Int'l.'s Nos. 3-16

RICOH'S RESPONSE TO DEFENDANTS' NOTICE OF MOTION AND CORRECTED MOTION TO COMPEL DISCOVERY
CASE NOS. C-03-2289-MJJ (EMC) & CV-03-4669-MJJ (EMC)   Page 23

2102392.02