

Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
Ethan B. Andelman (SBN 209101)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS and
Defendants AEROFLEX INCORPORATED,
AEROFLEX COLORADO SPRINGS, INC.,
AMI SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP., and MATROX
TECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | Case No. C03-4669 MJJ (EMC) |
| Plaintiff, | Case No. C03-2289 MJJ (EMC) |
| vs. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY** |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC., | **REDACTED PUBLIC VERSION** |
| Defendants. | |
| SYNOPSYS, INC., | |
| Plaintiff, | |
| vs. | |
| RICOH COMPANY, LTD., | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   RICOH'S REPRESENTATIONS REGARDING THE COMPLETENESS OF ITS DOCUMENT PRODUCTION ARE FALSE. ...................................... 4

III.  RICOH HAS ABUSED THE ABILITY TO WITHHOLD DOCUMENTS BASED ON PRIVILEGE.................................................................................. 8

    A.   There Was No Agreement Not To Log Communications Between Clients And Counsel Prior To The Filing Of The Suit........................... 8

    B.   Ricoh has waived privilege in many documents withheld on privilege grounds through its failure to place these documents on a privilege log. ............................................................................................ 10

    C.   The Shindo memo — and newly revealed Hoffman-Shindo document — are relevant, not privileged, and must be produced. ................. 11

    D.   Ricoh should be ordered to produce the vast majority of its prosecution files for an *in camera* review to determine if the documents are privileged. ........................................................................ 14

IV.   RICOH MUST PROVIDE ALL DOCUMENTS WITHIN ITS POSSESSION, CUSTODY OR CONTROL, INCLUDING THE KBSC AND KOBAYASHI DOCUMENTS. .................................................................. 17

V.    RICOH'S BELATED SUPPLEMENTATION OF ITS DISCOVERY RESPONSES WAS INADEQUATE. ............................................................. 22

    A.   Ricoh has still failed to meet the substance of virtually all of Defendants' Requests for Admission. ................................................... 23

        1.   Incorporation by reference has no role in responses to requests for admission. ......................................................... 24

        2.   Ricoh must provide answers to requests where Ricoh's attorneys have the knowledge necessary to respond. ........................... 25

        3.   Ricoh cannot take refuge in a typographical error to avoid responding. ............................................................................... 26

        4.   Ricoh has twice failed to properly respond to requests for admissions regarding prior art, and those requests should now be deemed admitted. ......................................................... 26

    B.   Ricoh's interrogatory answers remain woefully deficient. .................... 27

        1.   Ricoh cannot answer interrogatories by generally referencing testimony or litigation filings. ........................... 27

        2.   Ricoh's Belated Responses to Matrox Tech Inc.'s Interrogatories Nos. 2-7 and 9-25 Are Insufficient. .................. 29

1

VI.    CONCLUSION .................................................................................................... 30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A. Farber & Ptnrs., Inc. v. Garber,*
234 F.R.D. 186, 189-190 (C.D. Cal. 2006) ................................................. 6, 7

*American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n.,*
107 F.R.D. 258 (N.D. Ill. 1985) ................................................................... 3

*Asea, Inc. v. S. Pac. Transp.,*
669 F.2d 1242 (9th Cir. 1981) ................................................................... 24

*Beach v. City of Olathe,*
203 F.R.D. 489 (D. Kan. 2001) ................................................................. 29

*Buchanan v. Consolidated Stores Corp.,*
206 F.R.D. 123 (D. Md. 2002) ..................................................................... 6

*Burlington Northern & Santa Fe Ry. Co. v. District Court,*
408 F.3d 1142 (9th Cir. 2005) ................................................................... 10

*Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton,*
136 F.R.D. 682 (D. Kan. 1991) ............................................................. 26, 28

*DiPietro v. Jefferson Bank,*
144 F.R.D. 279, 282 (E.D. Pa. 1992) ........................................................ 28

*Frazier v. Layne Christensen Co.,*
2005 WL 372253 (W.D.Wis. Feb. 11, 2005) ............................................. 26

*Genentech, Inc. v. Insmed Inc.,*
233 F.R.D. 556 (N.D. Cal. 2006) ......................................................... 16, 17

*Hagemeyer North America, Inc. v. Gateway Data Sciences Corporation,* 222
F.R.D. 594, 603 (E.D. Wisc. 2004) ............................................................. 6

*Humphreys v. Regents of the Univ. of Cal.,*
2006 U.S. Dist. LEXIS 20148 (N.D. Cal. Apr. 3, 2006) ........................... 11

*In re Sealed Case,*
29 F.3d 715 (D.D.C. 1994) ....................................................................... 14

*Innovative Piledriving Products, LLC v. Oy,*
2005 U.S. Dist. LEXIS 14745 (N.D. Ind. July 21, 2005) ........................ 6, 7

*InterTrust Techs. Corp. v. Microsoft Corp.,*
2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) .......................................... 25

*Johnson & Johnston v. R.E. Service Co. Inc.,*
2004 U.S. Dist. LEXIS 26973 (N.D. Cal. Nov. 2, 2004) .......................... 29

*M.L.C., Inc. v. North Am. Phillips Corp.,*
109 F.R.D. 134 (S.D.N.Y. 1986) .............................................................. 21

Case No.  C03-4669 MJJ (EMC)/C03-2289 MJJ (EMC)
REPLY TO MOTION TO COMPEL

1  *Marchand v. Mercy Med. Center,*
2      22 F.3d 933 (9th Cir. 1994) .................................................................. 24

3  *Miniace v. Pac. Mar. Ass'n,* 2006 U.S. Dist.
       LEXIS 17127 (N.D. Cal. Feb. 13, 2006) .............................................. 20

4  *Monster Cable Prods., Inc. v. The Quest Group,*
5      2005 U.S. Dist. LEXIS 23466 (N.D. Cal. Oct. 13, 2005) .................... 11

6  *National Ass'n of Radiation Survivors v. Turnage,*
       115 F.R.D. 543 (N.D. Cal. 1987) ............................................................ 7

7  *PostX Corp. v. Secure Data in Motion, Inc.,*
8      2004 U.S. Dist. LEXIS 24869 (N.D. Cal. June 9, 2004) ...................... 11

9  *Rainbow Pioneer #44-18-04A v. Hawaii-Nevada Investment Corp.,*
       711 F.2d 902 (9th Cir. 1983) .............................................................. 28

10  *S.E.C. v. Elfindepan, S.A.,*
11      206 F.R.D. 574 (M.D.N.C. 2002) ........................................................ 28

12  *Sanders v. Canal Ins., Co.,*
       1996 U.S. Dist. LEXIS 14854 (D. Or. Oct. 2, 1996) .......................... 11

13  *Scott v. Arex,*
14      124 F.R.D. 39 (D. Conn. 1988) ............................................................ 20

15  *Securities and Exchange Comm'n v. Micro-Moisture Controls, Inc.,*
       21 F.R.D. 164 (S.D.N.Y. 1957) .......................................................... 25

16  *Sony Computer Entm't Am., Inc. v. Great Am. Ins. Co.,*
17      229 F.R.D. 632 (N.D. Cal. 2005) ........................................................ 13

18  *Uniden Am. Corp. v. Ericsson, Inc.,*
       181 F.R.D. 302 (M.D.N.C. 1998) ........................................................ 20

19  *United States v. Skeddle,*
20      176 F.R.D. 258 (N.D. Ohio 1997) ...................................................... 20

21  *United States v. Zolin,*
       491 U.S. 554 (1989) ...................................................................... 14, 15

22  **RULES**

23  Fed. R. Civ. P. 26(b)(5) ...................................................................... 11

24  Fed. R. Civ. P. 33(b)(4) ...................................................................... 29

25  Fed. R. Civ. P. 33(d) ...................................................................... 28, 29

26  Fed. R. Civ. P. 36(a) ...................................................................... 23, 27

27

28

# I.    INTRODUCTION

Ricoh is a master of revisionist history.  In Ricoh's world, glimpsed in its "response" to Defendant's motion, it is eminently reasonable and responds to discovery appropriately, while Defendants are overbearing, unwilling to compromise, and quick to file unnecessary motions.

Unfortunately for Ricoh, the record belies its spin on events.  Without going into detail to rebut every misstatement, mischaracterization, and fabrication contained in Ricoh's "response," several simple, undisputable facts regarding some of the core issues raised in Defendants' motion clearly demonstrate that Ricoh has prevented Defendants from obtaining relevant discovery:

- After Dickstein Shapiro represented, on more than one occasion, that "it was unaware of the existence of" documents relating to the TI license negotiations (by virtue of which the '432 was licensed to TI):
  - Last week after the instant motion was filed and after much meet and confer, some of the "nonexistent" documents were produced by Ricoh.
  - A significant number of those documents were drafted by Dickstein Shapiro lawyers.
  - It is clear that other documents are still missing (i.e., a number of the documents request specific changes to specific provisions of draft agreement, even though Ricoh's 30(b)(6) deponent has testified that ███████████).
  - And, Dickstein Shapiro is withholding *allegedly privileged but unlogged* documents relating to the TI negotiations, which are undoubtedly relevant;
  - And, even worse, Mr. Takada, Ricoh's 30(b)(6) designee on the TI license testified to many facts, including that ████████████████ ████████████████████████████████ ████████████████████ ██████was aided in his testimony by Gary Hoffman's, Ricoh's lead lawyer, ████████ █████████, that the newly produced documents now reveal to be false.
- Defendants regularly learn of the existence of new *allegedly* privileged documents, including the bombshell Hoffman-Shindo document disclosed for the very first time in

1    footnote 7 of Ricoh's opposition. Ricoh previously claimed it withheld (and did not

2    log) only communications with trial counsel relating to pre-filing communications and

3    documents relating to the preparation of the Complaint (a position which, as discussed

4    below, cannot be supported by this Court and was never agreed to by Defendants).

5    Now Defendants learn that counsel has also withheld communications with others – not

6    just Ricoh, and has failed to log those documents as well.  Even if this is Hoffman-

7    Shindo documents is privileged, which as set forth below, it is not, Ricoh simply hid

8    the existence of this document until the filing of the motion to compel notwithstanding

9    the lengthy discussions about the Shindo memo.

10    • Last week, Ricoh's counsel confirmed that it had moved KBSC documents from the

11    KBSC warehouse to an air-conditioned room where Dickstein Shapiro lawyers

12    reviewed the documents.  Yet Mr. Brothers' declaration omits this fact, and now claims

13    that instead, while the documents were produced by Dickstein Shapiro lawyers, he

14    "believes" that Ricoh has no control over the KBSC documents.  Indeed, it appears to

15    be Ricoh's claim that because the documents were returned to the warehouse after

16    review by its lawyers, they do not have control because Ricoh does not have the "key"

17    to the warehouse.  However, it is clear that Ricoh asked for and obtained all of the

18    KBSC documents, reviewed them, selectively produced them, and returned them to

19    KBSC in a sham, providing Ricoh the cover it needs to argue that it has no ability to

20    produce the most damaging documents from the KBSC files.  Moreover, as set forth

21    below, the documents were not produced in response to a subpoena.  In any event,

22    Dickstein Shapiro represents all these entities – it is doublespeak for it to now claim

23    "Ricoh" does not have the "key."  If Dickstein Shapiro has the key, Ricoh has it too.

24    • Ricoh engaged in a wholesale supplementation of its discovery requests beginning the

25    day after Defendants' Motion to Compel was filed.  However, the supplemental

26    responses remain woefully inadequate, and suffer from many of the same defects as

27    Ricoh's original responses.

28    The above show that Ricoh's charges that this is a make-work motion are more Orwellian

doublethink.  This is a serious case, with serious consequences.  Ricoh chose to bring this case against seven different defendants, accusing 452 different products of infringement.  It seeks hundreds of millions of dollars from Defendants, and possibly *billions* of dollars from Synopsys through threatened follow-up cases.  Despite these huge stakes, and despite its voluntary decision to bring this case (thus subjecting itself to the Federal Rules), Ricoh has steadfastly refused to comply with its discovery obligations.  This motion is the only way to force Ricoh to fully provide the legitimate and critical discovery Defendants need to defend this case.

Secondarily, Ricoh should be forced to take positions that it must live with at trial.  For the past three years, Ricoh's allegations have been incomprehensible and constantly changing, and it shows no indication that it will clarify or finalize its allegations prior to the beginning of trial (if even then).  One of the key reasons discovery was instituted when the Federal Rules were adopted in 1937 was precisely to prevent this type of litigation-by-ambush.  *See American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n.*, 107 F.R.D. 258, 260 (N.D. Ill. 1985) ("Discovery under the Rules changed the entire concept of litigation from a cards-close-to-the-vest approach to an open-deck policy.  It seeks to facilitate open and evenhanded development of the facts underlying a dispute, so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems.").  A hundred years ago, Ricoh's tactics would have been acceptable.  In the twenty-first century, its reliance on deception, obfuscation and fiction is well beyond the bounds of reason.

Defendants are keenly aware that the Court strongly prefers parties to resolve discovery disputes informally, without Court intervention.[1]  They have tried as hard as possible to do just this with the disputes contained in their motion, but, unfortunately, the meet and confer process in this case is broken.  Ricoh routinely represents that it will respond to Defendants' concerns, but it never does.

---

[1] Indeed, Defendants have done precisely that when Ricoh has approached them with supposed disputes — since the close of discovery, Ricoh has asked for a meet and confer on well more than a dozen separate items.  Every one of those issues, save for the Kobayashi subpoena and the Matrox Maven issue, have been resolved to Ricoh's satisfaction, as evidenced by Ricoh's minimal motion practice related to discovery.  Defendants have produced at least 11.5 million pages of documents, provided electronic access to 10 million lines of Synopsys code, given more than the 240 hours of deposition testimony permitted by Court order, and substantively answered 286 interrogatories.  For Ricoh to argue that Defendants have not complied with their discovery obligations, in the face of this massive production of documents, is another example of Ricoh's doublethink.

1    Defendants respectfully suggest that further meet and confers (at least without direct Court

2    supervision) will be fruitless and will merely serve to delay (and not eliminate) the day when the Court

3    will have to rule on the issues at hand. [2] This Court should not further tolerate Ricoh's litigation

4    tactics. Ricoh should be ordered to detail its allegedly reasonable search for documents, provide all

5    non-logged documents withheld on alleged privilege grounds, produce the KBSC and Kobayashi

6    documents (to which Ricoh has access and control), and provide forthright answers to discovery

7    requests that meet the substance of the requests.

8    **II.    RICOH'S REPRESENTATIONS REGARDING THE COMPLETENESS OF ITS**

9    **DOCUMENT PRODUCTION ARE FALSE.**

10        Ricoh's counsel represented that Ricoh has undertaken a thorough search for responsive

11   documents and produced everything it found. Supp. De Mory Decl., Exh. 1 (5/5/06 ltr from Brothers

12   to De Mory); Brothers Decl., ¶3. Given the recent history of Ricoh's document production, it is clear

13   that Ricoh does not really mean what it says. The reason for Defendants' skepticism about Ricoh's

14   representation is simple – it is demonstrably false. Ricoh's actions related to documents from Texas

15   Instruments, Inc. ("TI") clearly demonstrate that Ricoh has been brazenly deceptive regarding its

16   document production. For months, Defendants have repeatedly asked Ricoh for copies of any drafts of

17   the cross-licensing agreement between Ricoh and TI ("TI license") and any correspondence between

18   Ricoh and TI related to the TI license. Ricoh has repeatedly denied the existence of any such drafts.

19   At deposition, Mr. Takada originally testified that ████████████████████████████████████

20   immediately took a break from the deposition. Supp. De Mory Decl., Exh. 2 (Takada Dep. 212:3-6).

21   After discussions with counsel during his break, Mr. Takada testified accordingly:



22
23
24
25
26

27   [2] Defendants do not wish to waste the Court's time with an exhaustive list of the actions that have led to this point (since they have no bearing on this motion), but one relevant example is the sudden appearance of the TI-related documents, which Ricoh said multiple times did not exist. *See infra*, Part II.

28



*Id.* (Takada Dep. 212:17-213:15.)  As apparent from his testimony, Mr. Takada

After the Takada deposition, Defendants reiterated their request for document relating to the TI negotiations, which are relevant because under *Georgia-Pacific* they could shed light on the value, or lack thereof, placed on the '432 patent by TI or Ricoh in the negotiations (which the agreement alone, a broad cross-license, does not evidence).  On, May 3, 2006, Ricoh responded to Defendants' request for documents relating to the TI negotiations as follows: "[w]e are unaware of any such documents in existence." Supp. De Mory Decl, Exh. 1 at 2.

Defendants made great efforts to obtain the drafts of the TI license through a series of letters and meet and confer efforts with Ricoh.  *See* Supp. De Mory Decl., Exh. 3 at ¶ J.  (6/2 letter from De Mory to Brothers); Exh. 4. (6/4 M&C email chain from De Mory/Brothers).  In response to these, Ricoh ultimately responded on June 8, 2006 by saying that "Ricoh has searched for but does not have the documents you have identified."  Supp. De Mory Decl., Exh.5. (6/8 Letter from Brothers to De Mory).

After repeatedly denying for months that documents related to the TI license existed, Ricoh finally admitted that it had possession of these documents and agreed to produce them.  *See* Supp. De Mory Decl., Exh. 6 (6/14 Brothers letter).  In this June 14, production, Ricoh produced hundreds of pages of documents related to the TI license.  This is shocking enough, but more amazingly, Synopsys and Customer Defendants discovered that Ricoh's counsel in this suit, Dickstein Shapiro Morin & Oshinsky LLP, drafted a significant number of the documents – including documents that directly refute Mr. Takada's 30(b)(6) testimony.  *See* Supp. De Mory Decl., Exh. 7 (RCL011784 – 90) (RCL

HOWREY LLP

Case No.  C03-4669 MJJ (EMC)/C03-2289 MJJ (EMC)
REPLY TO MOTION TO COMPEL

1   11867-75) (RCL011876-94).[3]  Ricoh's counsel had for months denied the existence of documents that

2   it had itself drafted!  And, these documents directly refute Mr. Takada's testimony that ▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Compare*

4   Supp. De Mory Decl, Exh. 2 (Takada at 217:8-25; 218:10-15) *with* (RCL 11867-75) ▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮ *and* (RCL011876-94) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7       Accordingly, Ricoh assertions in its Response to Defendants' Motion to Compel Discovery that

8   it has "conducted repeated comprehensive searches for responsive documents" and that "Ricoh

9   repeatedly searched for documents in all locations where it had reason to believe there may be

10  responsive document" ring hollow.  (Ricoh's Opp. at 16.)  Ricoh also states that "Ricoh and its counsel

11  are mindful of their professional obligations when making . . . representations to opposing counsel and

12  the Court."  *Id.* n.9.  In view of these facts regarding TI as well as the Shindo memo and new Hoffman-

13  Shindo communication discussed below, Defendants have good reason to be skeptical, and instead

14  believe that discovery to Ricoh and its counsel has been a grand hide the ball game that has forced

15  Defendants to bring these issues to the attention of the Court.

16      A Court may order that a party provide an affidavit detailing the results of a search for

17  documents, as well as the time and money spent.  *Hagemeyer North America, Inc. v. Gateway Data*

18  *Sciences Corporation*, 222 F.R.D. 594, 603 (E.D. Wisc. 2004); *see also Buchanan v. Consolidated*

19  *Stores Corp.*, 206 F.R.D. 123, 125-126 (D. Md. 2002) (ordering production of an affidavit describing

20  efforts made to locate responsive documents); *Innovative Piledriving Products, LLC v. Oy*, 2005 U.S.

21  Dist. LEXIS 14745, *7 (N.D. Ind. July 21, 2005) (ordering execution of an affidavit stating under oath

22  that there are no documents in possession, custody, or control that are responsive to these requests,

23  other than those already produced); *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 189-190 (C.D.

24  Cal. 2006) (ordering affidavits on a request-by request basis to account for collection and production of

25

26

27

28

---

[3] These documents all bear a footer that is clearly the Dickstein Shapiro footer.

1  responsive information, as well as declaration under oath for each request defendant contends has been

2  fully responded to).

3    *Innovative* is particularly instructive.  In that case, the plaintiff moved to compel production of

4  documents in a patent case, including those relating to the patent, validity, product sales, and

5  warranties. *Innovative*, 2005 U.S. Dist. LEXIS 14745 at *5-6.  The court found that defendants'

6  production was likely inadequate, since defendant simply provided a single chronological file that

7  defendants maintained on plaintiffs. *Id.* at *6.  Defendants were ordered to either supplement their

8  response, or to execute an affidavit that there were no other documents in their possession, custody, or

9  control that were responsive to the requests, other than those already produced. *Id.* at *7.

10    *Farber* is also on point.  In *Farber*, the defendant had produced only 666 pages of documents

11  in response to almost 200 document requests, and the Court remarked that the "paucity" of defendant's

12  response was "astounding!" *Farber*, 234 F.R.D. at 189.  After stating that it was clear that the

13  defendant had not conducted a reasonable search, the court cited *National Ass'n of Radiation Survivors*

14  *v. Turnage*, 115 F.R.D. 543, 554-556 (N.D. Cal. 1987) for the definition of a reasonable search:

15        [A] reasonable inquiry into the factual basis of [a party's] discovery responses . . .
16        require[s], at a minimum, a reasonable procedure to distribute discovery requests to all
          employees and agents of the [party] potentially possessing responsive information, and to
17        account for the collection and subsequent production of the information to [the opposing party].

18    *Farber*, 234 F.R.D. at 190.  The *Farber* court ultimately required the defendant to submit

19  declarations or affidavits on a request-by-request basis as to the "reasonable inquiry" he had

20  undertaken. *Id.*  In addition, the Court ordered the defendant to submit a declaration **under oath** as to

21  each specific request he contended he had fully responded to. *Id.*

22    As with the defendants' productions in *Innovative* and *Farber*, it is likely that Ricoh's

23  production is inadequate.  Especially given the sudden appearance of the TI documents last week, after

24  multiple representations that they did not exist, neither the Court nor Defendants can be assured that

25  Ricoh has, indeed, performed a reasonable search for documents, and that it has provided all

26  responsive documents in its possession, custody, or control.  Based on its conduct, Ricoh should be

27  required to explain to this Court and Defendants its search process in much greater detail than simply

28  saying it contacted a "large number of Ricoh employees who Ricoh reasonably considered may have

1  knowledge of or possession of relevant documents." (Brothers Decl., ¶ 13.)[4] Apparently, a dozen

2  Ricoh employees interviewed witnesses (*id.*) — Ricoh should produce the notes of these interviews, or

3  at least compile them into a comprehensive declaration regarding its document search.

4  **III.    RICOH HAS ABUSED THE ABILITY TO WITHHOLD DOCUMENTS BASED ON**

5  **PRIVILEGE.**

6  **A.    There Was No Agreement Not To Log Communications Between Clients And**

7  **Counsel Prior To The Filing Of The Suit.**

8  Ricoh's assertion that the parties agreed that communications between clients and counsel need

9  not be logged is false. Defendants have consistently maintained the position that pre-filing

10 communications between Ricoh and its counsel need to be logged. Ricoh has likewise consistently

11 maintained its position that they do not. The parties have been at an impasse on this issue since 2004,

12 and it has never been fully resolved.

13 Discussions and proposed case management statements exchanged between the parties in 2004

14 reflect the original disagreements. De Mory Decl. Exh. 9 [April 19, 2004 Kelley letter to Brothers;

15 April 22, 2004 Brothers email to Kelley and Moller]. The parties' joint case management statements

16 submitted to the court on June 8, 2005 confirms that "[i]n April 2004, the parties were also at an

17 impasse with respect to Ricoh's proposal that communications between Ricoh and its trial counsel not

18 be logged." Ricoh Docket No. 301 at 30:7-15.

19 The scope of the privilege logs issue lay relatively dormant until February, 2005. On February

20 15, 2006 Defendants asked Ricoh for its privilege log for document production. Supp. De Mory Decl.

21 Exh. 10 [February 15, 2006 De Mory letter to Brothers]. Ricoh acknowledged that substantive issues

22 with respect to the logs remained to be addressed. *Id.* After subsequent discussions, the parties agreed

23 that post-filing communications between Ricoh and its litigation counsel did not have to be logged;

24

25

26  [4] For example, a critical percipient witness to the development of the KBSC system testified that ████████████

27  ████████████████████████████████████. Supp. De Mory Decl., Exh. 8 (Oka Depo at 104:1-8) (█████

28  ████████████████████ KBSC ████████████████████████████.

HOWREY LLP

-8-

1 that was the full extent of the agreement. Supp. De Mory Decl. Exh. 11 [May 2, 2006 De Mory letter

2 to Brothers]. The issue with respect to logging pre-filing communications remained unsettled. *Id.*

3      Without any type of agreement between the parties in place concerning re-filing

4 communications, however, Ricoh produced a privilege log on April 24, 2006 that omitted such

5 communications. Ricoh's failure to log those communications was discussed in subsequent meet and

6 confers. *Id.* Defendants confirmed that the parties had agreed not to seek a log of post-filing

7 communications between Ricoh and its counsel, but that Ricoh's obligations to include pre-filing

8 communications were not excused. *Id.* Ricoh insinuated that because Defendants were aware of

9 Ricoh's position that pre-filing communications should not be logged since 2004, its failure to log pre-

10 filing communications was justified. Supp. De Mory Decl., Exh. 12 (May 3, 2006 Brothers letter to

11 De Mory). Ricoh's opposition maintains this same unfounded position, and extends it by explicitly

12 stating that the parties had reached agreement on the issue. There has *never* been any agreement

13 between the parties concerning pre-filing communications being placed on a privilege log as is evident

14 by the failure to support this claim with any writings, or anything other than a vague statement in the

15 Brothers' declaration.

16      Moreover, even Ricoh's characterization of its position regarding what it would and would not

17 log was highly deceiving. Indeed, who could even imagine that Ricoh would withhold such

18 documents – and not log them – under the guise that it was not going to log communications between

19 trial counsel and Ricoh regarding "pre-filing investigation and documents relating to preparation of the

20 complaint." Ricoh Docket 301 at 40. Thus, a log of pre-filing communications has been proven to

21 have been necessary to elicit Ricoh's full disclosure. It is now too late for such measures. Ricoh

22 should be found to have waived privilege for failing to log documents that it has improperly withheld

23 on privilege grounds. Accordingly, Ricoh's production of all improperly withheld documents should

24 be ordered.[5] At the absolute minimum, Ricoh should be forced to identify all withheld documents in a

25 complete privilege log.

26

27 [5] And Defendants should be allowed to take additional Ricoh and third party depositions based on these and any other

28 documents the Court orders Ricoh to produce as a result of this motion.

HOWREY LLP

Case No.  C03-4669 MJJ (EMC)/C03-2289 MJJ (EMC)
REPLY TO MOTION TO COMPEL

**B.    Ricoh has waived privilege in many documents withheld on privilege grounds through its failure to place these documents on a privilege log.**

Although, as discussed above, Ricoh turns a blind eye to the relevant documents it has, when it becomes aware of relevant documents that it does not want to turn over to Defendants, Ricoh has developed a insidious method for hiding those documents — it classifies the documents as privileged and unilaterally deems them to be documents that do not have to be placed on a privilege log. Thus, Ricoh never needs to alert Defendants to the documents' existence. This practice has led to the gradual discovery — by sheer luck — of at least two categories of documents that Ricoh is improperly withholding on privilege grounds: (1) documents related to Mr. Shindo; and (2) documents related to the TI negotiations. Defendants moved to compel the production of each of these categories of documents in its motion to the extent that they were aware of those documents at the time.

Incredibly, the privileged documents keep coming out of the woodwork. For example, in Ricoh's production of documents related to its license agreement discussions with Texas Instruments, Ricoh stated explicitly that it was withholding additional documents as privileged, but failed to provide any indication of what those documents are, and explicitly refused to provide a privilege log on these documents. Supp. De Mory Decl. Exh. 6. And Ricoh's opposition discloses *for the very first time* the existence of a document that Mr. Hoffman sent to Mr. Shindo. (Opp. at 14 n.7.) Defendants believe that this document is not a "letter," as characterized in Ricoh's filing, but who knows what was intended? Regardless of its exact nature, it "summariz[es] the meeting," and is thus highly relevant to this case (and unlikely to be privileged). This is the entire reason the Federal Rules and this Court's standing order require full and complete privilege logs — to prevent parties from hiding highly relevant documents without any notice to the opposing side simply by making (possibly exaggerated) claims of privilege. This game has gone on long enough. Ricoh has unilaterally decided to only log its prosecution documents; it should now live with the consequences of that decision.

Waiver of privilege is an appropriate sanction where a party fails to provide requisite notice of withheld documents on a privilege log. *Burlington Northern & Santa Fe Ry. Co. v. District Court*, 408 F.3d 1142, 1146 (9th Cir. 2005) (upholding a finding of waiver where a privilege log was not provided for five months). Indeed, the Ninth Circuit in *Burlington Northern* noted that the advisory committee

1  notes of Rule 26(b)(5) state that "[t]o withhold materials without such notice is contrary to the rule,

2  subjects the party to sanctions under Rule 37(b)(2), and *may be viewed as a waiver of the privilege or*

3  *protection*." *Id.* at 1147, *quoting* Fed. R. Civ. P. 26(b)(5), Advisory Committee's Note, 1993

4  Amendments (emphasis added). Ricoh has failed to abide by its obligation to identify withheld

5  documents — an obligation that exists even in the absence of requests to provide a log. *Humphreys v.*

6  *Regents of the Univ. of Cal.*, 2006 U.S. Dist. LEXIS 20148, *5 (N.D. Cal. Apr. 3, 2006) ("[t]he duties

7  Federal Rule of Civil Procedure 26(b)(5) places on a party that withholds documents based upon an

8  assertion of privilege are not dependent upon the opposing party's request for the information"); *PostX*

9  *Corp. v. Secure Data in Motion, Inc.*, 2004 U.S. Dist. LEXIS 24869, at *6 (N.D. Cal. June 9, 2004)

10  (granting motion to compel production of privilege logs containing all pre- and post-filing documents

11  being withheld on privilege grounds). The Court should find that, by failing to log allegedly privileged

12  documents, Ricoh has waived its right to claim privilege, and it should order that Ricoh immediately

13  produced these unlogged documents.[6]

14      **C.**    **The Shindo memo — and newly revealed Hoffman-Shindo document — are**

15                    **relevant, not privileged, and must be produced.**

16        Even if the Court does not order wholesale production of non-logged documents due to waiver,

17  the Shindo memo and Hoffman-Shindo document should be produced. Production of these

18  documents, which apparently memorialize Mr. Shindo's discussions with Mr. Takada and Mr.

19  Hoffman, remains the lone way for Defendants to gain evidence of Mr. Shindo's contributions to the

20  '432 patent and his knowledge about it. Mr. Shindo's knowledge is integral to claims and defenses in

21  this case because he is a named co-inventor of the '432 and has unique knowledge of the

---

23  [6] Ricoh strives to gloss over its failure to log documents by claiming that Defendants have also failed to log privileged
24  documents. This is nonsense — unlike Ricoh, who has communications relating to this patent back to 1986, Defendants
(with the exception of Synopsys, whose knowledge of the patent is irrelevant because it is not a defendant) had no
forewarning of the '432 patent prior to the filing of the instant lawsuit. Thus, it is not surprising that there are no pre-filing
25  communications to log. As to Synopsys, one document was inadvertently omitted from its log, but that has been corrected.
26  Regardless, discovery is not a game of tit for tat — Ricoh's own obligation is separate and apart from any obligation
Defendants may have. *Sanders v. Canal Ins., Co.*, 1996 U.S. Dist. LEXIS 14854, *5-6 (D. Or. Oct. 2, 1996); *Monster*
*Cable Prods., Inc. v. The Quest Group*, 2005 U.S. Dist. LEXIS 23466, *19-20 (N.D. Cal. Oct. 13, 2005). Because the
27  deadline to move on these issues was June 7, the Court should not entertain Ricoh's purported "cross-motion" to have
Defendants log additional documents. (Opp. at n.5.) The current local rules do not provide for a cross-motion.

1    circumstances surrounding the invention it claims. Defendants sought discovery from Mr. Shindo, but,

2    as has been recounted in detail in other pleadings, Mr. Shindo is uncooperative with either Ricoh or

3    Defendants.

4         Each of Defendants' efforts to probe Mr. Shindo's knowledge or gain information through

5    other avenues about his contributions to the '432 patent have been rebuffed. Defendants have tried to

6    obtain discovery concerning Mr. Shindo's contributions and knowledge in every conceivable way.

7    Defendants even attempted to procure Mr. Shindo's deposition testimony, contrary to Ricoh's claims,

8    but were unable to depose Mr. Shindo due to Ricoh's claimed lack of control over him,[7] the

9    idiosyncrasies of Japanese law, and an insufficient time period to complete a cumbersome Rule 28

10   process with a relatively uncooperative foreign government. Questions posed to Dr. Kobayashi about

11   Mr. Shindo's role in the development of the '432 patent were ███████████████████████

12   ████████████████████████ See, e.g., Kobayashi Dep. Tr. Vol. III, p. 365-71.

13   Interrogatories concerning Mr. Shindo's involvement were answered with a boilerplate recitation that

14   ████████████████████████████████████████████████████████

15   Original De Mory Decl. Exh. 33.

16        The Shindo memorandum and Hoffman-Shindo document, therefore, are the only pieces of

17   discoverable evidence known right now that might provide insight into Mr. Shindo's own knowledge

18   regarding his contributions to the '432 patent and when the invention encompassed by it was first

19   offered for sale. The fact that Ricoh has succeeded thus far in keeping Mr. Shindo's contributions and

20   knowledge in the shadows is disturbing, and must be recified.

21        Ricoh has inappropriately failed to disclose the existence of these important documents. At the

22   very least, they should have been included on Ricoh's privilege log, although the parties disagree as to

23   whether there is any privilege involved. Instead, Defendants first became aware of the Shindo memo

24   during an April 2006 30(b)(6) deposition of Mr. Takada. Incredibly, Ricoh only disclosed the

25   existence of the Hoffman-Shindo letter in footnote 7 of Ricoh's opposition to this motion to compel.

26

27   ────────────────

     [7] Mr. Shindo is contractually obligated to provide litigation support in the same manner as Dr. Kobayashi because of the
28   assignment agreement they both signed.

1    Ricoh's claim of privilege for the Takada memo is spurious.  Mr. Takada indicated that ▮▮▮▮

2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮.  Takada De. Tr. Vol. II, p. 142, l. 23 – p. 144, l. 14.  ▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5    ▮▮▮▮▮▮▮▮.  *Id.* at p. 149, l. 23 – p. 150, l. 4.  Mr. Takada then testified that ▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮.  *Id.* at p. 148, ll. 14-22.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id.* at p. 148, l. 24 – p. 149, l. 21.

11   Ricoh's approach to this issue, like many others, is shifting sand.  During the Takada

12   deposition, even though ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  In a May 5, 2006 letter from Ken Brothers to

15   Denise De Mory, Ricoh claims that this document is protected by the attorney client privilege or work

16   product privilege because "Mr. Takada was requested to make notes during the meeting for purposes

17   of follow up discussions with Mr. Hoffman."  During a June 2, 2006 in person meet and confer, Mr.

18   Brothers represented that the memo was withheld because it contains work product of Mr. Hoffman.

19   Supp. De Mory Decl., ¶ ___.  Then, for the first time, it its opposition to the motion to compel, Ricoh

20   asserts that this memo, documenting a meeting from several years before this litigation commenced,

21   includes trial strategies, and reflects non-laywer Mr. Takada's thoughts and mental impressions.

22   As explained in the Motion, these documents are, at best, factual work product.  Ricoh has

23   provided no evidence whatsoever, and does not even claim, that Mr. Shindo was represented by

24   counsel at the time of the meeting.  Thus, the attorney-client privilege was destroyed by Mr. Shindo's

25   presence at the meeting, and Ricoh has failed to meet its burden of demonstrating the confidentiality of

26   that meeting.  *See Sony Computer Entm't Am., Inc. v. Great Am. Ins. Co.*, 229 F.R.D. 632, 634 (N.D.

27   Cal. 2005).  Facts, such as what was discussed at a non-privileged meeting, do not become privileged

28   through their inclusion into a document sent to counsel.  Thus, the memo written by Mr. Takada is

HOWREY LLP

-13-

1 presumptively non-privileged itself. Further, there is no admissible evidence to support the attorney

2 argument that Mr. Hoffman directed Mr. Takada to compose the memorandum.[8] Moreover, as

3 explained in the Motion, the substantial need for the memorandum overcomes the work product

4 protection because the memorandum remains the only avenue for obtaining information regarding Mr.

5 Shindo's knowledge.

6       Ricoh's claim of protection for the just-disclosed Hoffman-Shindo document under the

7 common interest doctrine is little more than a post hoc justification for a bad-faith withholding of this

8 incredibly relevant document. Mr. Shindo did not at the time (and does not now) have an interest in

9 common with Ricoh. Ricoh has all the rights in the '432 patent — Mr. Shindo assigned his rights to

10 Ricoh. Further, Mr. Shindo is not a party to this litigation. He simply has no interest that would be

11 served by this litigation, a conclusion borne out by Mr. Shindo's decision to refrain from becoming

12 involved in this case. Without a common interest, there can be no common interest privilege.

13 Moreover, the common interest privilege protects communications between an attorney and two or

14 more *clients* regarding a matter of common interest. *In re Sealed Case*, 29 F.3d 715, 719 (D.D.C.

15 1994) (emphasis added). Mr. Shindo was not a client of Ricoh's counsel at the time of his discussion

16 with Messrs. Takada and Hoffman, nor at the time Mr. Hoffman sent his document to Mr. Shindo.

17 Ricoh should be required to produce this document.

18     **D.**     **Ricoh should be ordered to produce the vast majority of its prosecution files for an**

19                 ***in camera* review to determine if the documents are privileged.**

20       The only documents Ricoh actually bothered to place on its privilege log apparently relate to

21 the prosecution of the '432 patent. Because there is a significant question regarding whether the

22 inventors and/or prosecuting attorneys committed inequitable conduct on the Patent and Trademark

23 Office, and because the only inventor who has testified cannot recall a single relevant detail about the

24 prosecution, this Court should exercise its discretion to order an *in camera* review of these allegedly

25 privileged documents under *United States v. Zolin*, 491 U.S. 554 (1989).

26

27      [8] Ricoh provides a declaration from Mr. Brothers, who testifies that Mr. Hoffman requested Mr. Takada write the memo.
(Brothers Decl., ¶ 12.) This is hearsay and should be excluded.
28

1    As the Court is aware, *Zolin* permits a court to review allegedly privileged material *in camera*

2  to determine the applicability of the crime-fraud exception where there is a "showing of a factual basis

3  adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials

4  may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572.  Once

5  the factual showing is made, the court decides whether to order an *in camera* review "in light of the

6  facts and circumstances of the particular case, including, among other things, the volume of materials

7  the district court has been asked to review, the relative importance to the case of the alleged privileged

8  information, and the likelihood that the evidence produced through in camera review, together with

9  other available evidence then before the court, will establish that the crime-fraud exception does

10 apply." *Id.*

11    The factual showing required by *Zolin* is contained in Defendants' moving papers.  (Motion at

12 21:9-22:2.)  To recap, the named inventors (Dr. Kobayashi and Mr. Shindo), in conjunction with Mr.

13 Suehiro (a subordinate of Mr. Shindo), published a paper in 1989 that cited a reference by Kowalski.

14 Supp. De Mory Decl., Exh. 14.  The Kowalski reference, though it was not cited during the

15 prosecution of the '432 patent, has been found by the U.S. Patent and Trademark Office to raise a new

16 issue of patentability of the '432 patent, and thus, the patent is in reexamination.  Supp. De Mory

17 Decl., Exh. 15.  These two facts alone are strong evidence that, during the pendency of the '432 patent

18 application, the inventors were aware of a material reference that they failed to disclose to the patent

19 office, thus committing inequitable conduct.  Therefore, an *in camera* review under *Zolin* is

20 appropriate.

21    However, there is another significant fact that weighs in favor of an *in camera* review — Dr.

22 Kobayashi ██████████████████████████████████████████████.  When asked

23 whether he provided prior art to the prosecuting attorney, Dr. Kobayashi stated ██████████████████

24 █████████████████████████████████████████  Supp. De Mory Decl., Exh. 14

25 (Kobayashi 297:9-10.)  When asked to name a single thing he did to comply with his duty of candor to

26 the patent office, Dr. Kobayashi said ████████████████████████████████████ *Id.*

27 at 297:17-18.  Dr. Kobayashi ████████████████████████████████ (*id.* at

28 301:5-13), but ██████████████████████████ (*id.* at 301:16-18).

HOWREY LLP

Case No.  C03-4669 MJJ (EMC)/C03-2289 MJJ (EMC)
REPLY TO MOTION TO COMPEL

1    In *Genentech, Inc. v. Insmed Inc.*, 233 F.R.D. 556 (N.D. Cal. 2006) (Chen, J.), this Court found

2   that, where an inventor professed a lack of recollection regarding prosecution, "contemporaneous or

3   other documentation probative to his state of mind could prove critical to the case." *Id.* at 562.  It

4   therefore ordered an *in camera* review of the documents.  Given ██████████████████████

5   ████████████████████and the clear evidence that he was aware of the Kowalski

6   reference during prosecution, the same should happen here.  Did Dr. Kobayashi or Mr. Shindo send

7   counsel their article?  The Kowalski reference?  Did they mention to counsel that they were writing an

8   article that related to the '432 patent?  Did counsel inform them that they should provide any articles

9   they wrote?  The only way to find answers to these questions is for the Court to review the withheld

10  documents.

11   As to the factors the Court should weigh as to whether it should order an *in camera*

12  examination, Defendants request that the Court review 56 documents, totaling 196 pages.  This

13  includes all documents listed on Ricoh's privilege log that are either undated or dated prior to the

14  issuance of the '432 patent on May 1, 1990.[9]  Defendants recognize that this is a relatively large

15  number of documents for the Court to review (certainly compared with the two documents at issue in

16  *Genetech*).  However, as noted in Defendants' motion, Ricoh's privilege log is deficient in describing

17  the withheld documents with sufficient specificity to enable Defendants to whittle their request down

18  further — the subject mater of every single entry save one refers to "attorney's legal services re US

19  Patent 4,922,432."  It is impossible, given Ricoh's free-form logging, to determine whether these

20  documents relate to the issued patent, the pending application, or something else entirely.[10]

21   The information contained in the allegedly privileged documents is quite important, if not

22  critical, to the case.  Dr. Kobayashi and Mr. Shindo knew of the Kowalski reference during the

23  pendency of the patent.  The patent office did not.  Given ██████████████████████████and

24

25

[9] Specifically, the documents are Nos. 1, 3-4, and 17-68 on Ricoh's privilege log.  (Brothers Decl., Ex. 16.)

26

27  [10] For purposes of an *in camera* review, the Court may wish to require Ricoh to produce a privilege log with sufficient detail to allow Defendants to assess whether the privilege is applicable, including appropriate detail about the subject matter of the withheld documents. *See, e.g.*, Standing Order ¶ 13.  If such an appropriate log were produced, Defendants would be in a position to narrow its request for *in camera* review.

28

1  Mr. Shindo's unavailability, the only way to determine what happened is to review the withheld

2  prosecution documents. There is certainly more than "at least a chance" that these documents, along

3  with other facts, will establish the defense of inequitable conduct. *See Genentech*, 233 F.R.D. at 562.

4  The Court should exercise its discretion and order an *in camera* review of Ricoh's prosecution

5  documents.

6  **IV.    RICOH MUST PROVIDE ALL DOCUMENTS WITHIN ITS POSSESSION, CUSTODY**

7  **OR CONTROL, INCLUDING THE KBSC AND KOBAYASHI DOCUMENTS.**

8      In 2003, Ricoh produced a limited number of documents from Knowledge Based Silicon

9  Corporation ("KBSC"). The testimony regarding this document production, from witnesses Dickstein

10  Shapiro represented at deposition, establishes that (i) KBSC voluntarily provided documents to Ricoh;

11  (ii) Ricoh reviewed these documents and selectively produced them to Defendants; and (iii) Ricoh

12  returned the documents to KBSC. Now, Ricoh claims that it cannot provide additional KBSC

13  documents to Defendants because these documents are not within its "possession, custody, or control."

14  Brothers Decl., ¶¶ 14-15. Once again, Ricoh engages in some serious and troubling revisionist history.

15  Whatever could be said about possession or custody, Ricoh clearly has control over the documents; —

16  it has the ability to obtain access to the documents and it has done so in this litigation. Ricoh has

17  exercised this control once before to produce documents it believed would help its case. It now must

18  exercise this control and produce all KBSC documents responsive to Defendants' requests for

19  production, including any damaging documents.[11]

20      The Defendants First Set of Requests for Production of Documents, served on June 5, 2003,

21  defined Ricoh to include "Ricoh's predecessors in interest in the '432 patent, International Chip Corp.

22  and Knowledge Based Silicon Corp." Original De Mory Decl. Exh. 2. In its response to the requests,

23  *Ricoh agreed to produce documents and things relating to its predecessors in interest in the '432*

24  *patent to the extent those documents were within Ricoh's possession, custody and control. Id.* Sure

---

[11] Defendants suspect, for example, that the KBSC documents contain information relating to the prior offer for sale to Paradyne, lab notebooks and other documents that prove the Kobayashi and Shindo were not the sole named inventors, documents relating to potential claims that ICC never owned the invention, even if Dr. Kobayashi invented some of the invention, as well as other invalidity related documents.

1  enough, Ricoh produced KBSC documents to Defendants on September 11, 2003 as part of its rolling

2  production of documents.  Supp. De Mory Decl. Exh.16 [September 11, 2003 McCandless letter to

3  Kelley].   Moreover, Ricoh continued to produce KBSC documents within its "possession custody or

4  control" as part of its rolling production.  Id.[12]  Thus, in accordance with its responses to the document

5  requests, Ricoh admitted at the time that it had control of the KBSC.[13]

6          Ricoh now states that the 2003 production of KBSC documents was made by KBSC in

7  response to a subpoena.  (Brothers Decl., ¶ 14-15.)  This is patently false.  The only subpoenas to

8  which Ricoh could possibly be referring are subpoenas to Knowledge Edge and Brian Bershader,

9  which were served on September 2 and 4 respectively.[14]  These subpoenas, however, did not call for

10  production of documents until October 3, 2003.  (Supp. De Mory Decl., Exhs. 18 - 19.)   Dickstein

11  Shapiro did not even respond to these subpoenas, as counsel for the deponents until September 12,

12  2003, after the first production of KBSC documents was made by Ricoh.  (Supp. De Mory Decl., Exh.

13  20.)  Moreover, Dickstein Sharpiro unequivocally confirmed in a letter on October 20, 2003, that the

14  documents were NOT produced in response to these subpoenas.  (Supp. De Mory Decl., Exh. 21.)

15  Indeed, on October 20, 2003, Dickstein Shapiro not only indicated that the KBSC documents were not

16  produced in response to these subpoenas, but in fact, **no documents** had been produced in response to

17  the subpoenas

18          Your statement that Bershader was required to produce responsive documents [sic] on
           October 20, 2003 in connection with the Ricoh v. Aeroflex subpoena is not correct.  A
19         proper objection pursuant to the provisions of 45(c)(2)(B) was made on September 12,
           2003 (and you never made any response to the objection).  The objection eliminated any
20         obligation of Mr. Bershader to produce documents on October 3 (or any other date).

21

22  _____

    [12] Each of these production letters say that Ricoh is producing the KBSC documents as part of its rolling production "as a
23  courtesy" and NOT that they are being produced  in response to a subpoena.

    [13] Indeed, prior to this motion, Ricoh did not dispute that these documents were within its control and produced by Ricoh.
24  On October 31, 2003, Defendants wrote a letter to Ricoh's counsel inquiring as follows:  "**Ricoh produced a series of
    documents that appear to be from ICC and/or KBSC with production numbers that begin with KBSC.**  Please let us
25  know what the source of these materials was."  Supp. De Mory Decl., Exh. 17.  In response to this letter, Ricoh did not take
    issue with the characterization of the documents of as part of the Ricoh production (because it could not) and instead said
26  specifically responded that the documents originated with KBSC.  De Mory Decl., Exh. 22 (11/4/03 Meilman letter to
    Moller).

27  [14] The only other subpoenas that were issued prior to the date of production were to Shindo (as to which Ricoh refused to
    accept service), Kobayashi (who had nothing to do with the production of documents from the KBSC warehouse), and
28

*Id.*

The evidence regarding the KBSC production demonstrates that it was made as an integral part of Ricoh's overall document production. KBSC maintains a warehouse in Mountain View, which contains between ten and one hundred banker's boxes full of documents. (Original De Mory Decl., Exh. 41, Bershader Depo. 48:19-49:4.) Mr. Bershader of KBSC has testified that ███████████ ████████████████████████████████████████████████████████.[15] (*Id.* at 46:9-21.) ███████████████████████████████████████████████████████████████████████ ████████████████████████████████. (*Id.* at 89:5-9.) In addition, Dr. Kobayashi testified that ███████████████████████████. (Supp. De Mory Decl., Exh. 13 at ____.) Those documents have not shown up at all.

For its part, Ricoh admits to receiving KBSC documents "for processing and production to defendants." (Brothers Decl., ¶ 15.) But what does Ricoh mean here by "processing?" It suggests that this was nothing more than a pass-through production, that Ricoh was merely acting as a conduit for the documents KBSC had decided to produce. But a careful reading of Ricoh's artfully phrased declaration — a prime example of the half-truth — shows that Ricoh was much more active in determining what ultimately got produced to Defendants. Ricoh states that it separately identified and labeled the KBSC documents. (*Id.*) However, it fails to state that it produced to Defendants *all* of the documents that KBSC provided Ricoh. Indeed, Ricoh essentially admits otherwise when it states that "[t]he KBSC documents that had been sent to Ricoh's counsel were all returned to KBSC." (Brothers Decl., ¶ 15.) If Ricoh had produced all of the KBSC documents to Defendants, why would it be relevant that it returned all of those documents to KBSC? Indeed, it would not even be true that Ricoh returned *all* of the documents to KBSC given that Ricoh presumably kept a copy of the KBSC documents it produced to Defendants, — unless, that is, ***Ricoh reviewed the KBSC documents itself and made its own determination of what documents were relevant and responsive***. Ricoh's counsel admitted in meet and confer last week a key fact omitted from Ricoh's declaration — Ricoh's counsel

---

[15] Ricoh provides testimony from its attorney, Mr. Brothers, regarding its "understanding" of how the KBSC documents are stored and how the documents Ricoh ultimately produced to Defendants were selected by KBSC. (Brothers Decl., ¶¶ 14-15.) This testimony is obvious hearsay and should be excluded.

1   arranged for the KBSC documents to be sent to an air-conditioned room, presumably so Ricoh's

2   counsel could review the documents in comfort, and further indicated that the documents were

3   reviewed by Dickstein Shaprio lawyers.  (Supp. De Mory Decl., ¶ 6.)  Furthermore, the volume of

4   KBSC documents produced to Defendants — 1185 pages — is well short of even ██████████

5   ████████████████████████████████████████████████████████████████████████of

6   ████████████████████████████████████.[16]  Ricoh obviously treated the KBSC

7   documents not as a third-party production, but as part of its own document production.  Having

8   previously accessed and treated the KBSC documents as its own for purposes of this litigation, Ricoh

9   cannot now claim it has no control over the documents.  *See United States v. Skeddle*, 176 F.R.D. 258

10  (N.D. Ohio 1997) (requiring the government to retrieve and produce a corporate third party's

11  documents that were once in the government's possession, but that were returned to the third party's

12  custody, on grounds that the government's past access indicated its ability to obtain the documents on

13  demand).[17]

14  Even if this were not enough, Ricoh has control over the KBSC documents as that term is used in Rule

15  34(a).  The word "control" as used in Rule 34(a) "is to be broadly construed."  *Scott v. Arex*, 124

16  F.R.D. 39, 41 (D. Conn. 1988).  Accordingly, a "party controls documents that it has the right,

17  authority, or ability to obtain on demand."  *Scott*, 124 F.R.D. at 39; *Miniace v. Pac. Mar. Ass'n*, 2006

18  U.S. Dist. LEXIS 17127, *6 (N.D. Cal. Feb. 13, 2006).  Where a party corporation's control over a

19  related corporation's documents is at issue, courts consider the nonparty's connection to the transaction

20  at issue and relationship to the party.  *See Uniden Am. Corp. v. Ericsson, Inc.*, 181 F.R.D. 302, 306

21  (M.D.N.C. 1998); *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) ("If the

22  producing party has the legal right or the practical ability to obtain the documents, then it is deemed to

23

24

[16] One banker's box can hold approximately 3000 pages, so the KBSC documents produced by Ricoh is less than half a box.

25

[17] The court in *Skeddle* considered the scope of the phrase "possession, custody, and control" found in Federal Rule of Criminal Procedure 16(a)(1)(C), and stated that "[t]here is no reason to believe that the drafters of the procedural rules did not intend this phrase to have the same meaning in both civil and criminal cases." *Id.* at 26, n.5. The court further cited civil cases delineating the scope of "possession, custody, and control" under Federal Rule of Procedure 34(a). *Id.* Thus, *Skeddle* is almost directly on all fours with this case.

26

27

28

1   have 'control,' even if the documents are actually in the possession of a non-party."), *cited in In re*

2   *Flag Telecom Holdings, Ltd. Sec. Litig.*, 2006 U.S. Dist. LEXIS 22528 (S.D.N.Y. April 19, 2006).

3   Ricoh obtained the documents previously. They have provided no explanation, other than they are not

4   in possession of a key to the storage facility, as to why they lack the practical ability to obtain them

5   again.

6         Ricoh's inferred control over KBSC's documents is evident. ████████████████████████████

7   ████████████████████████████ (Original De Mory Decl. Exh. 41 at p. 8, ll. 18-25, p. 9, ll. 1-

8   10.) ██████████████████████████████████████████████████████████████████████████████

9   ██████████████████████████████████ 8 (Supp. De Mory Decl. Exh. 13 at p. 23, ll. 14-15.) ████

10  ██████████████████████████████████████████████ (Supp. De Mory Decl.

11  Exh. 23.) ████████████████████████████████████████████████ *(Id.* at

12  KBSC0000001 – KBSC0000003.) KBSC's documents related to the KBSC software were generated

13  at Ricoh's behest, for its benefit, with its funding, and with its extensive cooperation.

14        In regard to the third factor for determining control, Ricoh has also had unfettered access to

15  KBSC's materials in the past. Ricoh's actions in 2003 confirmed its ability to obtain KBSC

16  documents with ease, which supports a finding of control. *See M.L.C., Inc. v. North Am. Phillips*

17  *Corp.*, 109 F.R.D. 134, 138 (S.D.N.Y. 1986) (finding of control supported by defendants' ability to

18  "easily obtain" the documents when it was in their interest to do so).

19        In regard to the fourth factor, KBSC's materials certainly serve Ricoh's interests in this case,

20  and Ricoh's attempt to use the concept of "control" as both a sword and a shield is untenable. Ricoh

21  cannot be permitted to produce select documents helpful to its case, and then shield the remainder of

22  responsive documents by claiming a lack of control over the same set of documents reviewed prior to

23  the original production.

24        Thus, Ricoh has control over the KBSC documents. If KBSC refuses to permit further access

25  to Ricoh at this point, Defendants should be permitted to serve another Rule 45 subpoena on KBSC for

26

27  ───────────────────
    18 ████████████████████████ ICC, and only the ████████████████████ 199 ████ (Original De Mory Decl. Exh.

28  41 [Bershader Dep. Tr. p. 10, ll. 24-25, p. 11, ll. 1-2].)

1    the production of documents so that gamesmanship does not preclude the discovery of documents that

2    are obviously relevant and responsive.

3    **V.    RICOH'S BELATED SUPPLEMENTATION OF ITS DISCOVERY RESPONSES WAS**

4    **INADEQUATE.**

5         A perfect example of the incredible and untenable situation in which Defendants find

6    themselves is Ricoh's wholesale supplementation of its discovery responses beginning *the morning*

7    *after* Defendants filed their Motion to Compel.  Although Ricoh predictably paints its supplementation

8    as a reasonable approach to the matter and strongly suggests that Defendants' motion was made

9    prematurely and in bad faith, Ricoh fails to note that Defendants' Motion to Compel was filed on the

10   deadline *set by Court Order* for motions to compel.  *See Ricoh* Dkt. No. 347.  Ricoh knew of this

11   deadline, as well as the sheer number of responses that would be at issue — in fact, nearly all of the

12   responses Ricoh served on May 30 (the discovery cutoff and six days before the motion deadline) were

13   merely objections without any substance.  Yet in consecutive meet and confers on June 2, 5, 6, and 7,

14   Ricoh never once suggested that it would be willing to seek to move the motion deadline so

15   Defendants could obtain and review Ricoh's supplemental responses before deciding whether to move

16   to compel — the approach any reasonable party planning on actually addressing the issues raised in

17   meet and confer would take.  As a result, once it became clear that Ricoh was not abiding by its

18   promise, made on June 2, to provide full supplemental answers *before* the deadline to file the motion

19   to compel, Defendants were forced to pull their motion together in very short time.  The Court should

20   view Ricoh's tactic of supplementing its answers only after the Motion was filed for what it is — yet

21   another way Ricoh has found to drive up Defendants' litigation costs, although, in this instance,

22   Ricoh's tactics have imposed an unfortunate cost on the Court as well.

23        Even though Ricoh belatedly supplemented most of its discovery responses, it failed to address

24   the deficiencies noted in Defendants' Motion.[19]  As requested by the Court's clerk, Defendants have

25   _____

26   [19] Ricoh is incorrect regarding the reason Defendants did not move on requests for admission relating to laches — an issue
     not even mentioned in the motion, yet gratuitously raised in Ricoh's opposition.  It is not because Defendants have "finally
27   conceded" that they cannot raise their laches defense (Opp. at 3:18-19) — it is because Defendants believe they have all the
     evidence necessary to prove laches already, as they explicitly told Ricoh.  As it has so many other times, Ricoh simply
28   ignores what Defendants have said, in favor of creating its own reality.

1    attempted to narrow the specific requests at issue.  Unfortunately, there remain a large number of

2    requests at issue, which are set forth in Appendix A.[20]

3        **A.    Ricoh has still failed to meet the substance of virtually all of Defendants' Requests**

4            **for Admission.**

5        As common sense would dictate, Ricoh's claim that Defendants have asked over 10,000

6    requests for admission is overblown and plain wrong.  There are 274 requests, no more,[21] and fewer

7    than the 280 requests that the parties agreed Defendants could propound.[22]  Ricoh arrives at its

8    staggering figure by misapplying the *interrogatory* subpart rule to requests for admission.  There is no

9    basis for this.  A request for admission can be properly denied if *any* part of it is not true — to take

10   Ricoh's example, Request No. 22 can be denied if *any single ASIC* has an input that is not either

11   VHDL or Verilog.  Thus, Request No. 22 is not 452 different requests for admission, as Ricoh claims.

12   It is a single request, which Ricoh must admit if (as Defendants contend) the input to every single

13   ASIC is either VHDL or Verilog.

14       But Ricoh doesn't even address the substance of the requests head-on, as Rule 36 requires.

15   Fed. R. Civ. P. 36(a) ("A denial shall fairly meet the substance of the requested admission. . . .")

16   Rather, it purports to incorporate other pleadings by reference, objects that the requests seek expert

17   testimony, and relies on typographical errors to avoid providing substantive responses.  It also

---

[20] Defendants' list includes many requests that are missing from Ricoh's list.  Defendants did *not* withdraw the requests that Ricoh indicated in its motion.

[21] Ricoh claims that the RFAs (and interrogatories) Defendants have withdrawn should count against Defendants' totals.  This defies logic — why would Defendants have withdrawn *all* 624 RFAs they initially propounded only to propound 274 additional requests if there was no agreement in place that the withdrawn requests would not count against the agreed-upon total of 35 requests per party?  Although there is no formal written agreement on this issue, Ricoh did send a letter in which it did not count withdrawn requests when counting the total number of requests propounded.  *See* Exhibit __ {2/10/06 Brothers letter re rogs}.  Morever, Defendants only withdrew their requests after becoming exhausted by Ricoh's failure to substantively respond or reasonably negotiate.  Notably, Ricoh did not substantively respond to one of these requests for admissions.  Rater, Ricoh simply included the same boilerplate objection in response to each request first quoting the full request (which were provided in a Word document and thus easily word processed) and saying it was vague and ambiguious, and then saying there were too many.  In the absence of a single substantive response, even to the first 25 for each party, it is ridiculous for Ricoh to now say it was burdened by these requests.

[22] Even though there is no limit on requests for admission in the Federal Rules, the Local Rules, or the Court's standing order, Ricoh insisted on imposing a limit.  Rather than burden the Court with motion practice on this issue, Defendants agreed to limit themselves to 280 aggregate requests — 35 per named party, plus Synopsys.

1 continues to play word games to avoid providing admissions it knows it must — admissions that will

2 greatly simplify the trial of this case and possibly lead to summary judgment. *See Asea, Inc. v. S. Pac.*

3 *Transp.*, 669 F.2d 1242, 1245 (9th Cir. 1981) (Requests for admission "expedite trial by establishing

4 certain material facts as true and thus narrowing the range of issues for trial."). Ricoh's obligation

5 under the Rules is to admit to the fullest extent possible, and "explain in detail why other portions of a

6 request may not be admitted." *Marchand v. Mercy Med. Center*, 22 F.3d 933, 938 (9th Cir. 1994).

7 Discovery is now over. Ricoh simply cannot continue to leave all avenues of argument open — it

8 must admit where it cannot, in good faith and meeting the substance of the request, deny.

9           **1.**     **Incorporation by reference has no role in responses to requests for**

10                 **admission.**

11     In its supplemental responses to the vast majority of Defendants' requests for admission on

12 infringement-related issues (Defendants' Requests for Admission Nos. 22-26, 28-100, 103-128, and

13 137-144), Ricoh states that █████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████████████████████████

15 ████████████████████████████ *See, e.g.,* [Ricoh's supp. response to RFAs 1-

16 144, at 13]. This response is no response at all. The very purpose of the requests is to seek

17 clarification of the allegations made by Ricoh in its Final Infringement Contentions ("FICs") in order

18 to narrow the issues at trial.[23] But Ricoh only further obscures the issues by making a generalized and

19 highly ambiguous statement that █████████████████████████████████████████████

20 ██████████████████████████████████████████████████Such reference

21 inherently creates ambiguity, the antithesis of the purpose of propounding requests for admission. *Cf.*

---

23 [23] For example, Ricoh states in its FICs that █████████████████████████████████████████

24 ████████████████████████████████████████ *See* 3/24/06 Ricoh's Patent Final

25 Contentions Pursuant to Patent L.R. 3-6, Ex. 1 at 2-3. This statement in the FICs is highly ambiguous in several respects. For example, it is unclear from this statement ███████████████████████████████████████

26 ██████████████████████████████████████████████This same ambiguity exists ███████████████████████████████████ In order to obtain clarification on this issue,

27 Defendants propounded discovery requests such as Request for Admission No. 30, which asks Ricoh to "[a]dmit that synthetic operators are not 'architecture independent . . . conditions' as set forth in Claim 13 of U.S. Patent No. 4,922,432."

28 (Original De Mory Decl. Ex. 9.)

1   *Securities and Exchange Comm'n v. Micro-Moisture Controls, Inc.*, 21 F.R.D. 164, 166 (S.D.N.Y.

2   1957) (holding that incorporation by reference is improper in requests because "it unjustly casts upon

3   the defendants the burden of determining at their peril what portions of the incorporated material

4   contain relevant matters of fact which must either be admitted or denied").  Ricoh cannot require

5   Defendants (and the Court) to traipse through the thousands of pages of the FICs and soon-to-be-

6   served expert reports in order to figure out whether the request is admitted or denied.  It must clearly

7   and unambiguously admit the request or deny the request, or explain *precisely* what it is admitting or

8   denying, without reference to other documents.

9           **2.        Ricoh must provide answers to requests where Ricoh's attorneys have the**

10                              **knowledge necessary to respond.**

11          Ricoh's objections to Defendants' infringement and invalidity-related requests for admission

12  (Original De Mory Decl. Ex. 9, Defendants' Requests for Admission Nos. 22-26, 28-100, 103-128,

13  137-144, 172-213, and 218-274) cannot excuse's Ricoh's failure to provide substantive responses to

14  these requests.  Ricoh objects to several requests on the ground that they seek the premature disclosure

15  of expert opinions.  They do not.[24]  These requests merely ask for clarification regarding positions that

16  Ricoh has already taken in its FICs, or for the positions that Ricoh is taking regarding prior art.

17  Defendants are entitled to this clarification, as Defendants have the right to know the particulars

18  regarding Ricoh's infringement and invalidity allegations.  *See, e.g., InterTrust Techs. Corp. v.*

19  *Microsoft Corp.*, 2003 WL 23120174, at *3 (N.D. Cal. Dec. 1, 2003) (ordering plaintiff to amend its

20  final infringement contentions to correct deficiencies in the plaintiff's disclosure because the local

21  patent rules "require a plaintiff to crystalize its theory of the case and patent claims.").

22          Ricoh's argument that Defendants' requests for admission improperly seek information that is

23  not in the possession of Ricoh employees is also baseless.  Defendants are not asking that Ricoh

24

25  _____

26  [24] To the extent that the Court determines that any of Defendants' requests for admission (whether they are directed towards infringement or invalidity issues) require the disclosure of expert opinions, by the time this motion comes before the Court for oral argument, the parties will be in the middle of expert reports and expert discovery.  Thus, Ricoh should be

27  ordered to supplement its answers to clearly and unambiguously admit the request or deny the request, or explain *precisely* what it is admitting or denying, without reference to other documents.

28

1  employees engage in any substantive analysis in order to answer any of Defendants' requests for

2  admission. Rather, Defendants want Ricoh's counsel to clarify Ricoh's position regarding its

3  infringement and invalidity contentions. It is commonly understood that discovery requests relating to

4  infringement and invalidity contentions should be answered by a party's counsel, not its employees.

5  *See, e.g., Frazier v. Layne Christensen Co.*, 2005 WL 372253, at *10 (W.D.Wis. Feb. 11, 2005)

6  (recognizing that it does not matter which employee within a corporation verifies responses to

7  infringement contention interrogatories "because the answers to the contention interrogatories

8  regarding infringement would have to be prepared by an attorney skilled in patent law."). Thus, Ricoh

9  (through its counsel) must provide an answer to these interrogatories.

10             **3.    Ricoh cannot take refuge in a typographical error to avoid responding.**

11         Ricoh objects that it was wholly unable to understand certain requests for admission, and thus,

12  cannot answer them. (*See* Request Nos. 163-171.) This is a specious claim. Failure to answer on such

13  a hollow basis does not comport with the requirement that Ricoh fairly meet the substance of the

14  requests. Ricoh chose to highlight in its opposition interrogatories that, upon a moment's reflection,

15  Ricoh should have realized contained a minor typographical error — the inclusion of the phrase "terms

16  of." Counsel advised Ricoh of the typographical error but still Ricoh refused to appropriately respond.

17  Ricoh cannot avoid responding on those grounds, and should be required to provide answers to these

18  requests. *See Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 688

19  (D. Kan. 1991). (Court grants motion to compel as to requests answered inadequately because of

20  "mere technicalities")

21             **4.    Ricoh has twice failed to properly respond to requests for admissions**

22                    **regarding prior art, and those requests should now be deemed admitted.**

23         In the motion, Defendants complained that Ricoh refused to answer requests for admission

24  regarding whether claim elements are present in prior art references because it claimed it could not

25  understand the requests. Although Ricoh has withdrawn its vagueness objections to these requests, it

26  still fails to fairly meet the substance of the requests. Ricoh now denies the requests because the

27  precise "quoted" claim language of the '432 patent does not appear in the prior art. (Request Nos. 172-

28  213 & 218-274.) This is absurd. Ricoh knows full well what these requests are seeking — whether

1 specific claim elements are found in specific prior art references. It knows that there is no requirement

2 that the precise claim language of the patent appear in the prior art, the same way that there is no

3 requirement that the precise claim language of the patent appear in the accused devices to prove

4 infringement. Ricoh simply does not want to provide admissions because, on several pieces of prior

5 art, it would become clear that only one or two elements are at issue, and Ricoh does not want to limit

6 the issues Defendants must prove at trial.

7    Rather than answer the requests fairly, Ricoh has twice played sophomoric semantic games.

8 Rule 36(a) contemplates that an evasive denial may be deemed an admission. Fed. R. Civ. P. 36(a)

9 ("If the court determines that an answer does not comply with the requirements of this rule, it may

10 order . . . that the matter is admitted. . . ."). Ricoh's two-time disregard of its discovery obligations

11 should not be condoned, and this Court should deem the requests relating to prior art admitted.

12 Although two times should be sufficient, if the Court does provide Ricoh with another opportunity to

13 respond to these requests, it should make clear that any failure on Ricoh's part to fairly meet the

14 substance of the requests will result in the requests being deemed admitted.[25] Anything less would

15 undermine the entire purpose for this form of discovery.

16    **B.    Ricoh's interrogatory answers remain woefully deficient.**

17    Ricoh's supplemental interrogatory answers suffer from the same defects as before. It still

18 improperly references vast swaths of documents without proper reference, and improperly incorporates

19 testimony and litigation filings, thus leaving Defendants with no assurances as to precisely what

20 Ricoh's answer is. Moreover, although Ricoh has finally answered Matrox Tech's Second Set of

21 Interrogatories (which were outstanding for over 7 weeks), it suffers from many of the same maladies.

22    **1.    Ricoh cannot answer interrogatories by generally referencing testimony or**

23

24

---

25 [25] Ricoh's response to many of the interrogatories that seek the basis for a denial to a request for admission is that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ *See, e.g.,* Ricoh's Restated

26 Responses to Aeroflex, Inc.'s Second Set of Interrogatories, Nos. 12-19; Ricoh's Restated Responses to AMI Semiconductor, Inc.'s Third Set of Interrogatories, Nos. 6-50; Ricoh's Restated Responses to Aeroflex Colorado, Inc.'s

27 Second Set of Interrogatories; Nos. 7-46; and Ricoh's Restated Responses to Matrox Graphics, Inc.'s Second Set of Interrogatories, Nos. 42-50. Should Ricoh be required to provide real answers to the requests for admission, it must

28 supplement these interrogatory responses.

1    **litigation filings.**

2        Answers to interrogatories should generally be complete in and of themselves. *DiPietro v.*

3  *Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992).  However, Rule 33(d) provides a limited

4  exception:

5

6          Where the answer to an interrogatory may be derived or ascertained from the business
           records of the party upon whom the interrogatory has been served . . . it is a sufficient

7          answer to such interrogatory to specify the records from which the answer may be
           derived or ascertained. . . .  A specification shall be in sufficient detail to permit the
           interrogating party to locate and to identify, as readily as can the party served, the

8          records from which the answer may be ascertained.

9  Fed. R. Civ. P. 33(d).  Thus, Rule 33(d) applies to "business records from which raw data and facts can

10 be discovered" and not "deposition transcripts, documents or writings that were generated, or

11 discovered, respectively, *during the course of prior discovery in the same case*, only *portions* of which

12 may be *relevant* to the issues for trial."  *Continental Illinois Nat'l Bank & Trust Co. of Chicago v.*

13 *Caton*, 136 F.R.D. 682, 687 (D. Kan. 1991) (emphasis in original); *see also DiPietro,* 144 F.R.D. at

14 282.  Moreover, the documents must be specified with sufficient detail to permit the interrogating party

15 to readily locate and identify them.  *See Rainbow Pioneer #44-18-04A v. Hawaii-Nevada Investment*

16 *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983) (Court held that response did not fulfill business record rule

17 where it did not specify where in the records the answers could be found, but instead merely recited

18 that the answers could be found in a list of types of documents); *S.E.C. v. Elfindepan, S.A.*, 206 F.R.D.

19 574, 576 (M.D.N.C. 2002) ("Document dumps or vague references to documents do not suffice" to

20 meet the specificity requirement of Rule 33(d)).

21        Although nearly every interrogatory response at issue purports to utilize Rule 33(d), Ricoh

22 misuses the rule in nearly every instance.  First, Ricoh routinely cites to documents other than its own

23 business records.  For instance, it cites to ▉▉▉▉▉▉▉▉▉▉▉▉,26 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

24 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  Second, when referencing deposition

25 transcripts and the FICs, as well as referencing its own business records, Ricoh simply makes a general

26

27 ─────────────────

28 [26] *See* Ricoh's Restated Responses to Matrox International Corp.'s Third set of Interrogatories, Nos. 3-11.

1  reference, without pincites, as required by Rule 33(d). These responses are therefore deficient, and

2  Ricoh should be compelled to provide proper answers that either give a narrative response or utilize

3  Rule 33(d) to specifically reference Ricoh's business records from which an answer may be

4  ascertained.

5       **2.    Ricoh's Belated Responses to Matrox Tech Inc.'s Interrogatories Nos. 2-7**

6           **and 9-25 Are Insufficient.**

7       On June 8, 2006, the day after the filing of this motion to compel, Ricoh finally provided

8  responses to Matrox Tech Inc.'s ("MTI") Interrogatories Nos. 2-25. As an initial matter, these

9  interrogatories were initially served on Ricoh on April 17, 2006 – over seven weeks prior to Ricoh's

10  responses. Because of Ricoh's untimely response to these interrogatories, Ricoh has waived any and

11  all objections to these interrogatories. *See* Fed. R. Civ. P. 33(b)(4).

12       Ricoh's responses to MTI Interrogatories Nos. 2-7 and 9-25 are not only untimely, they are also

13  incomplete. These interrogatories all seek clarification of Ricoh's FICs. MTI Interrogatories Nos. 2-4

14  ask Ricoh to identify the source code associated with the portions of Design Compiler that Ricoh

15  asserts as infringing; MTI Interrogatories Nos. 5-7 seek clarification of the term "generic operator" that

16  Ricoh uses in its FICs; and MTI Interrogatories Nos. 9-25 ask Ricoh to explain why it denies certain of

17  the requests for admission relating to Ricoh's FICs discussed above.

18       Ricoh fails to provide any substantive response whatsoever to MTI Interrogatories Nos. 16, 17,

19  and 25 on the basis that the requests are vague and ambiguous. Even ignoring the untimeliness of this

20  objection, Ricoh cannot refuse to answer these interrogatories based on a "vague and ambiguous"

21  objection. *See, e.g., Beach v. City of Olathe*, 203 F.R.D. 489, 497 (D. Kan. 2001) ("A party

22  responding to discovery requests 'should exercise reason and common sense to attribute ordinary

23  definitions to terms and phrases utilized in interrogatories.") (citations omitted); *see also Johnson &*

24  *Johnston v. R.E. Service Co. Inc.*, 2004 U.S. Dist. LEXIS 26973, *5 (N.D. Cal. Nov. 2, 2004) ("Given

25  the broad scope of discovery in federal cases, a party objecting to discovery on the basis of vagueness,

26  overbreadth, oppression or burden must state specific facts in support of its objection").

27       With respect to MTI Interrogatories Nos. 9, 10, 12, 14, 15, and 18-24, Ricoh apparently relies

28  on ███████ as its response to these interrogatories under Fed. R. Civ. P. 33(d). Such reliance is

HOWREY LLP

-29-

1  improper, however, as noted above.  Ricoh should be compelled to provide substantive narrative

2  answers to MTI Interrogatories Nos. 9, 10, 12, 14, 15, and 18-24.

3        With respect to MTI Interrogatories Nos. 11 and 13, these interrogatories should be

4  supplemented to the extent that the Court finds that Ricoh's responses to Defendants' Requests for

5  Admission Nos. 30 and 40, to which these interrogatories relate, must be supplemented.

6  **VI.    CONCLUSION**

7        Obviously, any litigation will be contentious, but it should still be conducted at a professional

8  level.  In view of the poor relationship between counsel — a relationship that has been poisoned by

9  continual accusations[27] and sharp litigation practices — Defendants respectfully request that the Court

10 rule on the disputes before it, without requiring the parties to engage in yet another meet and confer

11 process.  These disputes have now been fully briefed to the Court, and Defendants request that the

12 Court order Ricoh to produce an affidavit detailing its document collection efforts, provide all

13 documents withheld on privilege grounds, including the Shindo-related documents, produce the KBSC

14 and Kobayashi documents, and properly answer the discovery requests discussed herein within 15

15 days.

16 Dated:  June 21, 2006                        Respectfully submitted,

17                                              HOWREY LLP

18

19

20                                    By:  _____/s/Denise M. De Mory_____
                                                  Denise M. De Mory
21                                           Attorneys for Plaintiff
                                             SYNOPSYS, INC. and for Defendants
22                                           AEROFLEX INCORPORATED,
                                             AEROFLEX COLORADO SPRINGS,
23                                           INC., AMI SEMICONDUCTOR, INC.,
                                             MATROX ELECTRONIC SYSTEMS,
24                                           LTD., MATROX GRAPHICS, INC.,
                                             MATROX INTERNATIONAL CORP.,
25                                           and MATROX TECH, INC.

26  _____
    [27]  This litigation has deteriorated to a point where Ricoh's counsel accused the undersigned and other Howrey attorneys of
27  sanctionable, contumacious, or unprofessional conduct at least 4 times in one recent thirty hour period. (Supp. De Mory
    Decl., Exh. 24.)  Not surprisingly, not a single motion for sanctions or for contempt has been filed by Ricoh on any of these
28  alleged violations.

# Appendix A

## Discovery Requests Remaining at Issue

**Requests for Production:**

Defendants' Requests for Production

Synopsys' Requests for Production

Aeroflex Colorado Springs, Inc.'s Requests for Production

**Requests for Admissions:**

Defendants' Requests for Admissions Nos. 22-26, 28-100, 103-128, 137-144, 151-156, 163-213, and 218-274

**Interrogatories:**

Aeroflex, Inc.'s Interrogatory Nos. 4, 6-7, 12-19

Aeroflex Colorado Springs, Inc.'s Interrogatory Nos. 3-4, 7-46

AMI Semiconductor, Inc.'s Interrogatory Nos. 6-37, 42-50

Matrox Electronic Systems, Inc.'s Interrogatory Nos. 3-23, 33-49

Matrox Graphics, Inc.'s Interrogatory Nos. 5-50

Matrox International Corp.'s Interrogatory Nos. 2, 3-16, and 21-33

Matrox Tech, Inc.'s Interrogatory Nos. 2-7, 9-25

## Other Documents Remaining at Issue

1) The Shindo memorandum.

2) The Hoffman-Shindo document.

3) KBSC documents that have not been produced.

4) Dr. Kobayashi's documents related to the '432 patent, including those contained in the prosecution history file of the '432 patent.

5) License agreement drafts between Ricoh and any third parties concerning the '432 patent.

6) Pre-filing communications between Ricoh and its counsel.

7) All documents withheld on privilege grounds that have not been placed on a privilege log.

HOWREY LLP

Case No.  C03-4669 MJJ (EMC)/C03-2289 MJJ (EMC)
REPLY TO MOTION TO COMPEL
DM_US\8258840.1