| | |
|---|---|
| 1 | Teresa M. Corbin (SBN 132360) |
| | Denise M. De Mory (SBN 168076) |
| 2 | Ethan B. Andelman (SBN 209101) |
| | Jaclyn C. Fink (SBN 217913) |
| 3 | HOWREY LLP |
| | 525 Market Street, Suite 3600 |
| 4 | San Francisco, California 94105 |
| | Telephone: (415) 848-4900 |
| 5 | Facsimile: (415) 848-4999 |

Attorneys for Plaintiff SYNOPSYS and Defendants AEROFLEX INCORPORATED, AEROFLEX COLORADO SPRINGS, INC., AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | Case No. C03-4669 MJJ (EMC) |
| Plaintiff, | Case No. C03-2289 MJJ (EMC) |
| vs. | **AMENDED NOTICE OF ERRATA TO SUPPLEMENTAL DECLARATION OF DENISE M. DE MORY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY** |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC., | |
| Defendants. | |
| SYNOPSYS, INC., | |
| Plaintiff, | |
| vs. | |
| RICOH COMPANY, LTD., | |
| Defendant. | |

**HOWREY LLP**

Case No. C03-4669 MJJ (EMC)/C03-2289 MJJ (EMC)
AMENDED NOTICE OF ERRATA TO SUPPL DE MORY DECL ISO
REPLY TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
DM_US\8359351.v1

1     Plaintiff Synopsys, Inc. and Defendants Aeroflex Incorporated, Aeroflex Colorado Springs, Inc., AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc. (collectively, "Synopsys and the Customer Defendants") submit this Amended Errata to the Supplemental Declaration of Denise M. De Mory in Support of Defendants' Motion to Compel Discovery ("Supp. De Mory Decl."), filed June 21, 2006.

    Synopsys and the Customer Defendants inadvertently submitted incorrect Exhibit No. 1. The correct Exhibit 1 (May 5, 2006 Letter to Denise M. De Mory from Kenneth W. Brothers) is attached hereto.

Dated: June 22, 2006

Respectfully submitted,

HOWREY LLP

By:     */s/Jaclyn C. Fink*
    Jaclyn C. Fink
Attorneys for Plaintiff
SYNOPSYS, INC. and for Defendants
AEROFLEX INCORPORATED,
AEROFLEX COLORADO SPRINGS,
INC., AMI SEMICONDUCTOR, INC.,
MATROX ELECTRONIC SYSTEMS,
LTD., MATROX GRAPHICS, INC.,
MATROX INTERNATIONAL CORP.,
and MATROX TECH, INC.

**HOWREY LLP**

Case No. C03-4669 MJJ (EMC)/C03-2289 MJJ (EMC)
AMENDED NOTICE OF ERRATA TO SUPPL DE MORY DECL ISO
REPLY TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
DM_US\8359351.v1

1

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689

Writer's Direct Dial: (202) 429-2184
E-Mail Address: BrothersK@dsmo.com

May 5, 2006

**Via PDF**

Denise De Mory, Esq.
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708

Re:   Ricoh v. Aeroflex, et al.
      Synopsys v. Ricoh

Dear Denise:

I write in response to your letter of May 2, 2006 regarding Ricoh's recent 30(b)(6) depositions and the upcoming continued depositions of Messrs. Takada, Oka, and Ishijima on various Rule 30(b)(6) topics.

Your May 2 letter raises issues with respect to the Takada, Oka, and Ishijima depositions last month in Japan. For ease of reference, I have listed your requests followed by our response.

Regarding Mr. Takada's deposition:

Your point: Mr. Takada's drafts of the January 15, 1987 agreement between Ricoh and ICC (KBSC000001-03). Ricoh's response: Mr. Takada, at pages 52-53, did not indicate that any drafts of the documents were saved. We are unaware of any such drafts in existence.

Your point: Documents from Ricoh's accounting department regarding the approval of any payments by Ricoh to ICC. Ricoh's response: Mr. Takada indicated, at pages 224-225, that the documents, if they existed, were likely discarded as it was past their retention period. We are unaware of any such documents in existence.

Your point: Invoices from Ricoh's sales and marketing department and summary documents showing the payments made by third parties to Ricoh for licenses to Ricoh's RCAD software. Ricoh's response: Mr. Takada did not indicate that invoices did in fact exist. We are unaware of any such documents in existence.

Your point: Mr. Takada's 1990 compilation of information regarding licenses granted on the KBSC software. Ricoh's response: Mr. Takada did not indicate that his compilation was made final, nor that this report was retained. We are unaware of any such documents in existence.

1177 Avenue of the Americas • New York, NY 10036-2714 • Tel (212) 835-1400 • Fax (212) 997-9880
10866 Wilshire Boulevard • Suite 300 • Los Angeles, CA 90024-4350 • Tel (310) 441-8460 • Fax (310) 441-8470
2074674.1                          www.DicksteinShapiro.com

Denise De Mory, Esq.
May 5, 2006
Page 2

Your point: Mr. Takada's memo regarding his meeting in Japan with Mr. Shindo and Mr. Hoffman. Ricoh's response: At the very least, these documents are protected under Attorney-Client and/or Work-Product Privilege. Mr. Takada was requested to make notes during the meeting for purposes of follow up discussions with Mr. Hoffman.

Your point: Drafts of the April 1, 2001 agreement between Ricoh and KBSC (RCL8925-38), including electronic drafts on the hard drive of Mr, Takada's personal computer. Ricoh's response: Mr. Takada did not confirm that any drafts existed on his computer and further that his computer had broken down, so that he could not look on this computer. Mr. Takada further indicated that he did look for hard copies of the drafts and even if any drafts still existed they would be protected by the attorney-client privilege and work product due to the involvement of DSMO.

Your point: Drafts of the patent portfolio cross-licensing agreement between Texas Instruments and Ricoh (RCL9664-96) and correspondence between Texas Instruments and Ricoh regarding the agreement. Ricoh's response: Mr. Takada did not indicate that there were any draft agreements or that these agreements were maintained. As he indicated on page 200, "to the best of my recollection, to the best of my knowledge now, I don't think there's anything other than the original agreements kept in that file." As you may recall, Mr. Takada testified that much of the negotiation was done orally. We are unaware of any such documents in existence.

A reasonable search was already conducted by Ricoh for these documents that you have requested. We will again ask Ricoh to look further for non-privileged, relevant documents that you have identified.

Regarding Mr. Oka's deposition:

Your point: The source code for the ICC software that was delivered to Ricoh around August 1987. Ricoh's response: It is our understanding that Ricoh no longer has this source code, and leaving aside our continued objection to any relevance of the source code, we will again request that Ricoh check for the code.

Your point: Communications between Ricoh and ICC regarding changes made by Ricoh to the software delivered by ICC around August 1987. Ricoh's response: It is our understanding that to the extent that any written communications around 1987 between Ricoh and ICC regarding changes to the software delivered by ICC around August 1987, were not retained. But we will request that Ricoh check its files.

Your point: Papers, articles, and other publications reviewed by Mr. Oka in investigating logic synthesis and algorithms that optimize logic for Ricoh prior to the December 1986 meeting between Ricoh and ICC. Ricoh's response: Mr. Oka testified that he had started an investigation, but did not recall providing that information to anyone.

Denise De Mory, Esq.
May 5, 2006
Page 3


  Your point: Reports submitted by Mr. Oka on his investigation of logic synthesis and algorithms that optimize logic for Ricoh. Mr. Oka did not testify that he did submit a report. Ricoh's response: To the contrary, Mr. Oka testified, at page 198, that he believed that "[he] had not reached the level at which a report should be made yet."

  Your point: Notes taken by Mr. Oka of the December 1986 meeting between Ricoh and ICC and summaries drafted of the meeting. Ricoh's response: It is our understanding that Mr. Oka did not take notes during this meeting. We will, however, again request that Ricoh check its files.

  Your point: Mr. Oka admitted that he never attempted to locate any documents relating to his involvement with ICC or the KBSC software. Ricoh's response: Mr. Oka left his Japanese office of Ricoh to move to a Chinese office of Ricoh and he did not take any files with him regarding KBSC/ICC. Any files he would have had regarding this issue would have been placed in Ricoh's files. A search of those files have not revealed any additional relevant documents.

Regarding Mr. Ishijima's deposition:

  Many of your areas of inquiry delved into communications protected by attorney-client and/or work product privilege. Additionally, the scope of Mr. Ishijima's testimony was limited by objections served over two years ago. As such, the witness had no obligation to prepare for topics outside the scope of his deposition, for example, events that occurred after January 13, 1988. You are now unilaterally suggesting that he should have been prepared on issues that there has been no agreement on the scope. As such, we will not agree to make any representation as to Mr. Ishijima's preparedness to areas that have been outside the scope for many years and to areas that are protected by attorney-client or work product privilege. Contrary to your suggestion, Mr. Hoffman did not limit the witness' testimony regarding issues outside of the scope, and as to issues regarding privileged information, Mr. Hoffman only provided advice to the witness. Although Mr. Ishijima was designated on only a few limited topics, you chose to question him on areas beyond the scope of his designation. Although there recently had been several meet and confers between Mr. Andelman and Mr. Meilman regarding this deposition, no agreement had been reached other than the parties agreeing to proceed and Ricoh preserving its right to object.

  Given the current record and the fact that Mr. Ishijima has already been deposed twice on his limited topics, our agreement to produce him for a third time reflect Ricoh's commitment to resolve these matters amicably. We trust that you will proceed in the same spirit.

                Sincerely,

                Kenneth W. Brothers

cc:  Howrey distribution list