August 10, 2006

Hon. Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94012

        **Re:**   ***Synopsys v. Ricoh Company, Ltd.*,**
               **Case No. C03-2289 MJJ (EMC)**
               ***Ricoh Company, Ltd. v. Aeroflex, Inc., et al.*,**
               <u>**Case No. C03-4669 MJJ (EMC)**</u>

Dear Judge Chen:

      On July 19, 2006, Ricoh served its Supplemental Privilege Log ("Supplemental Log," Exhibit 1 hereto), in accordance with Paragraph 1(b) of the Court's July 5 Stipulated Order Resolving Portions of Defendants' Motion to Compel and Ricoh's Motion to Quash (*Synopsys* Dkt. No. 384).[1]  On August 1, 2006, Ricoh served a revised Supplemental Privilege Log ("Revised Supplemental Log," Exhibit 2 hereto).  Ricoh also served a KBSC Privilege Log on July 28, 2006 ("KBSC Log," Exhibit 3 hereto).  A dispute has arisen between the parties as to whether Ricoh has properly asserted privilege in a number of documents.  The parties have met and conferred via letter and teleconference in an effort to resolve this dispute, but no resolution has been reached.[2]  The parties submit this joint letter, and request that the Court resolve this dispute.

---

[1] The parties agreed that service of Ricoh's privilege log by July 19 would be timely under Paragraph 1(b).

[2] The parties have exchanged three letters regarding this issue.  Exhibits 4-6 [July 20, 2006 Andelman letter to Brothers, July 21, 2006 Brothers letter to Andelman, July 25, 2006 Andelman letter to Brothers].  On July 28, 2006, counsel for Ricoh (Mr. Brothers) and counsel for Synopsys and the Customer Defendants (Mr. Andelman) conducted a two-hour meet and confer on this and other issues.  Exhibits 7-8 [July 31, 2006 Brothers to Andelman; July 31, 2006 Andelman to Brothers].  Mr. Brothers and Mr. Andelman also conducted additional meet and confers via telephone on August 3, 4, and 7, 2006.  Although the parties were able to resolve several issues, including certain issues related to the privilege logs, they were not able to resolve the issues relating to the documents described herein.

Hon. Edward M. Chen
August 10, 2006
Page 2

**<u>Statement of Synopsys and the Customer Defendants</u>:**

Ricoh's Supplemental Log, Revised Supplemental Log, and KBSC Log confirm what Synopsys and the Customer Defendants alleged in their Motion to Compel filed on June 7, 2006 — Ricoh has been improperly hiding the existence of clearly relevant and responsive documents for years with absolutely no excuse.

With regard to the deficiencies in its privilege log, Ricoh previously claimed that its deficiencies were excused because it put Synopsys and the Customer Defendants on notice that it was not going to log attorney-client communications regarding Ricoh's alleged pre-filing investigation. That explanation was proven to fall far short of explaining why Ricoh hid the existence of the TI negotiation documents (which were not attorney client communications) and the Hoffman letter to Shindo (again not an attorney client communications) by not producing or logging these documents. But for Synopsys and the Customer Defendants' diligence, the existence of these documents would not even have ever been discovered, despite Ricoh's affirmative duty to produce or log the documents. Now, this category of improperly withheld (and until recently unlogged) documents has greatly expanded. What is worse: Ricoh still is improperly withholding them under the guise of privilege.

First, Ricoh's logs demonstrate that Ricoh is withholding a string of admitted "negotiations" between Ricoh and KBSC regarding Ricoh's purchase of KBSC's interest in the '432 patent — documents 79-91, 94-99, and 104 ("Negotiation Documents"). The Negotiation Documents are generally described on the Supplemental Log as relating to negotiations between Ricoh and KBSC concerning jointly-owned patents, and they appear to chronicle the negotiations between Ricoh and KBSC regarding Ricoh's purchase of KBSC's interest in the '432 patent — negotiations that are relevant to damages because they will explain the value that KBSC and Ricoh placed on the '432 patent. Ricoh asserts that these documents are covered by the common interest doctrine (through the attorney/client privilege).

Second, the logs show that Ricoh is withholding documents exchanged between the named inventors of the '432 patent which reflect the inventors' discussions to prepare for meeting with counsel (and not their actual discussions with counsel) — document 102A on the Ricoh log, and document 5 on the KBSC log ("Pre-Meeting Documents"). Document 102A is a memorandum written by the co-inventors regarding a meeting the held the day before meeting with their counsel, and it is thus relevant to many issues in the case, including validity. According to Ricoh, this document is covered by the common interest doctrine and attorney/client privilege because the discussions reflected in Document 102A formed the basis for discussions with the prosecuting attorneys, as reflected by Document 102B. Ricoh similarly asserts that KBSC Document 5 — a letter between the co-inventors described as regarding "preparation of KBSC patent application & planning a Ricoh-ICC meeting re KBSC patent application" — is covered by the attorney/client privilege because it also formed the basis for future discussions with prosecuting attorneys.

Synopsys and the Customer Defendants challenge Ricoh's assertion of privilege in the Negotiation Documents and the Pre-Meeting Documents. On the face of the log, Ricoh has

failed to justify the withholding of any of these documents, and Synopsys and the Customer Defendants request that the Court order them to be produced. At the very least, Synopsys and the Customer Defendants request that the Court review these withheld documents *in camera* to determine whether the documents have been properly withheld.

### A. Ricoh has the burden of proving that the withheld documents are privileged.

It is axiomatic that "[t]he party asserting the privilege must make a *prima facie* showing the privilege protects the information the party intends to withhold." *United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (Jenkins, J.). In the Ninth Circuit, the attorney-client privilege is applicable only "where legal advice of any kind is sought from a professional legal adviser in his capacity as such, and the communication relates to that purpose, is made in confidence, by or for the client." *Id.*

There is no dispute that all of the challenged documents were exchanged between Ricoh and ICC/KBSC, a third party. Thus, any attorney-client privilege has been waived unless Ricoh can demonstrate that the common interest (or joint defense) doctrine applies to the documents. The common interest doctrine "applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* at 495. The common interest doctrine is an exception to the rule waiving privilege when an attorney-client communication is shared with a third party, and thus only extends to communications which are otherwise protected by privilege. *See id.* In other words, "[t]he common interest doctrine does not create an independent privilege, but depends upon a proper showing of the other elements of the attorney-client privilege." *Katz v. MCI Telecomm. Corp.*, 191 F.R.D. 433, 437 (E.D. Pa. 2000).

### B. The Negotiation Documents reflect business negotiations, not legal advice.

Ricoh has not met its burden to establish that the Negotiation Documents have been legitimately withheld. First, Ricoh has not shown that attorney-client privilege attaches to the documents. Ricoh's log demonstrates that no attorney was involved in any of the communications; rather, the Negotiation Documents were exchanged between Ricoh and KBSC business people during negotiations in which Ricoh purchased KBSC's interest in the '432 patent. Indeed, at the end of the negotiations, KBSC sold its interest in the '432 patent to Ricoh — the latest document, No. 79, is described as "Letter re Ricoh purchase of KBS' right to patents in 4/1/01 agreement." The descriptions of the documents demonstrate that the purpose of the exchanges were for "negotiation," and not to seek or obtain legal advice regarding the joint assertion of the '432 patent.[3] Given that there is no indication that the attorney-client privilege attaches to these documents, they cannot be withheld.

---

[3] After the initial meet and confer on this dispute, Ricoh revised its description of these documents to assert that the documents were exchanged "between co-owners of '432 patent pursuant to advice of counsel." This addition is meaningless; it does not magically create a privilege. First, there is no dispute that, at the time, Ricoh and KBSC were co-owners of the '432 patent, but this fact does not mean that attorney-client privilege applies to the document.

The Revised Supplemental Log claims that a subset of the Negotiation Documents — documents 81, 82, 86, 90, 91, and 98 — "discuss[] legal strategy and advice of counsel." This claim is missing from the original Supplemental Log (and, of course, the entries are missing from the wildly deficient original log served in this case), and Ricoh should be deemed to have waived this claim. Two opportunities to provide an adequate log are more than. Moreover, based on the context and timing, the latest description appear to be quite specious. These entries appear to relate solely to the negotiation of the deal between Ricoh and ICC, a relationship that would be adversarial, not subject to common interest. At the very least, Ricoh's belated claims of discussion of legal strategy and advice of counsel should be subject to scrutiny via *in camera* review.

Even if Ricoh could show that the Negotiation Documents were, in the first instance, protected by the attorney-client privilege, the nature of the documents and the relationship between KBSC and Ricoh during the period of these documents precludes reliance on the common interest doctrine. Ricoh claims that the communications in the Negotiation Documents were "in connection with potential litigation to enforce the patent." [July 21, 2006 Brothers letter to Andelman]. But this characterization is belied by the document descriptions on the log, which show that the withheld communications between the two entities are dominated by commercial, adversarial discussions between KBSC and Ricoh. The descriptions (both those on the Supplemental Log or the Revised Supplemental Log) show that Ricoh entered ***negotiations*** with KBSC to purchase full rights to the '432 patent in order to permit Ricoh to pursue its own legal interest in enforcing it. Ricoh intended to persuade KBSC to transfer its entire rights to the '432 patent for compensation of some kind, and it did. Thus, both KBSC and Ricoh had a commercial interest during these negotiations rather than a legal one, and were adversaries sitting on opposite side of the negotiation table – not in a common interest. In any event, regardless of what common interest KBSC and Ricoh may have had, the Negotiation Documents were not "designed to further that [common interest]," a requirement of the common interest doctrine. *Bergonzi*, 216 F.R.D. at 495; s*ee also SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 513 (D. Conn. 1976) (holding doctrine inapplicable to negotiations "not directed at advancing the joint interest vis-à-vis the rest of the world"). Indeed, they were designed to destroy that common interest through Ricoh's purchase of KBSC's interest in the patent,[4] and as admitted "negotiations," they were adversarial, not cooperative.

Ricoh's continual emphasis on the joint ownership of the '432 patent misses the point. As noted above, the common interest doctrine acts as an exception to the general rule of waiver

---

Second, privilege does not attach because documents are sent "***pursuant*** to the advice of counsel"; they must (at a minimum) be exchanged **with** counsel or **reflect** the advice of counsel.

[4] The fact that KBSC was once a co-owner of the patent with Ricoh is insufficient to shield the documents from production, even if KBSC were shown to retain some type of financial interest in the outcome of this litigation. *See Johnson Matthey, Inc. v. Research Corp.*, 2002 U.S. Dist. LEXIS 13560, *17 (S.D.N.Y. July 24, 2002) (holding residual economic benefit occurring after transfer of patent rights is "simply a commercial concern" and does not "rise to the level of a common legal interest").

of privilege, not as a privilege in its own right, so the fact that the Negotiation Documents are exchanged among joint owners of the patent does not establish that the documents are privileged in the first instance. Moreover, the Negotiation Documents do not reflect Ricoh's and KBSC's joint interest — rather, they reflect adversarial negotiations that resulted in the purchase of KBSC's interest in the patent. Unless the documents demonstrate actual cooperation toward a common legal goal — which the log confirms is not the case — the common interest doctrine is inapplicable. *Bergonzi*, 216 F.R.D. at 495. Ricoh should be ordered to produce the Negotiation Documents.

### C. The Pre-Meeting Documents do not reflect attorney-client communication.

The Pre-Meeting Documents are not privileged as a matter of law. As discussed above, Ricoh must make a *prima facie* showing that the withheld document is privileged. Ricoh has not established that the Pre-Meeting Documents constitute communications of "*legal advice* ... from a professional *legal adviser* in his or her capacity as such...." *Id.* at 493 (emphasis added). Specifically, no attorney was copied on KBSC Document 5, no attorney was present at the December 7, 1987 meeting memorialized in Document 102A, nor was either document forwarded to any attorney. Although the Revised Supplemental Log says that Document 102A "recit[es] advice of counsel," this description was missing from the original Supplemental Log. It seems unlikely that this description is accurate — Document 102A was made ***in preparation*** for a meeting with counsel. Such a document would not "recit[e]" the advice of counsel; rather it would reflect the discussion occurring in preparation for the meeting with counsel.

Ricoh claims that these documents are protected by the attorney-client privilege because facets of the documents may have ultimately been communicated to the prosecuting attorneys. This is not the law. Only actual communications with attorneys (or communications reflecting legal advice received from attorneys) are protected by the privilege. *E.g.*, *id.* ("The privilege applies where legal advice of any kind is sought from a professional legal adviser in his capacity as such, and the communication relates to that purpose, is made in confidence, by or for the client."). The attorney-client privilege simply does not extend as far as Ricoh claims — to mere preparations for meetings with attorneys, where those documents are never shared with counsel. Ricoh should be ordered to produce the Pre-Meeting Documents.

### <u>Ricoh's Statement</u>:

Defendants' zeal to obtain as many KBSC documents as possible has obscured their presentation of the relevant facts. Instead, defendants recycle old allegations that have already been rejected or resolved by this Court, misstate the controlling case law, and gloss over key facts that are germane to the dispute.

This Court has held that the common interest privilege applies to communications between parties sharing a common legal interest made in the course of advancing the common interest, such as discussions of privileged communications between ICC/KBSC and Ricoh regarding the prosecution and enforcement of the '432 patent. "The common interest privilege,

frequently referred to as the joint defense privilege, applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (Jenkins, J.) (citing *In re Mortg. Realty Trust*, 202 B.R. 649, 653 (Bankr. C.D. Cal. 1997)). The Federal Circuit has made clear that "[a] community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents. [W]hether the legal advice was focused on pending litigation or on developing a patent program that would afford maximum protection, the privilege should not be denied when the common interest is clear." *In re Regents of Univ. of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996). Judge Jenkins also has held that "allied lawyers and clients who are working together in prosecuting or defending a lawsuit or in certain other legal transactions can exchange information among themselves without the loss of privilege." *Bergonzi, 216 F.R.D. at 493* (citing *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 685-8 (1st Cir. 1997)).[5]

### A. The Undisputed Facts Show That Ricoh and ICC/KBSC's Co-Ownership of the '432 Patent Created a Common Legal Interest

To resolve properly this matter, a more complete understanding of the facts is appropriate. The following facts are undisputed:

1.      Employees of Ricoh and ICC (the predecessor to KBS Corp.) were co-inventors of the '432 patent and ICC and Ricoh were each co-owners of the '432 patent. This fact created the common interest that is the basis of the privilege assertion at issue in this joint letter. *Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 167 F.Supp.2d 108, 125-26 (D. Mass. 2001) (finding that co-owners of a patent application "shared a common legal interest" because each co-owner "would have the presumption of ownership of the entire patent" and "would have the power to license rights in the entire patent."). This common interest was in existence from the time the invention was conceived, and was in effect at least until KBSC's assigned its 50% interest in the patent to Ricoh on October 12, 2001 – a time period which covers all of the documents at issue in this joint letter.

2.      Ricoh and ICC/KBSC used the same legal counsel to apply for and obtain the '432 patent. As co-owners in the strictest sense (each party owned 50% of the patent), the parties agreed to cooperate with each other to further their common interest in prosecuting and

---

[5] Defendants assert that the common interest doctrine does not create an independent privilege, and is purely an exception to the waiver doctrine. Several courts, including Judge Jenkins in *Bergonzi*, explicitly refers to the "common interest privilege" when setting out the three part test quoted in the case. The cases cited by Ricoh show that this Court, the Ninth Circuit and Federal Circuit all consider the existence of a common interest sufficient basis to claim privilege. Defendants selectively quote *Bergonzi* to omit the reference to the common interest privilege and instead quote a Pennsylvania court to support their own interpretation. Regardless of whether the common interest doctrine is considered a separate privilege or an exception to waiver of attorney client privilege, both interpretations shield the privileged documents from discovery..

later enforcing their patent.  Their communications with and at the behest of legal counsel were kept confidential, the parties did not publicly disclose their dealings and, unlike the facts of *Bergonzi*, there is nothing in the record to suggest that these dealings, including the privileged documents at issue, might be disclosed to any third party outside the common interest.  The privileged documents, which reflect the advice to counsel in furtherance of the common interest, were kept confidential, and remain confidential.

3.     Defendants have conceded that this common interest between Ricoh and ICC/KBSC was and is a valid basis for the assertion of privilege.  For example, defendants have acknowledged that documents relating to the meetings with the companies' common legal counsel in connection with the joint patent application are properly privileged.  During the meet and confers, defendants' counsel reaffirmed their acknowledgement of that common interest between Ricoh and ICC/KBSC, and do not challenge the status of those documents in this joint letter.

4.     The two so-called "Pre-Meeting Documents" reflect the ongoing communications between the co-inventors with respect to the subject of the common interest – the application for what would become the patent-in-suit.  As reflected by the entries on the privilege log, the documents include legal advice from counsel, and also include an agenda of issues to discuss with counsel during an upcoming meeting with counsel.  The entry for the November 27, 1987 memo states: "Letter re preparation of KBSC patent application & planning a Ricoh-ICC meeting re KBSC patent application."  Exh. 3 (KBSC privilege log, document 5).  The sender, recipient and those copies were all from Ricoh or ICC, and this letter was not otherwise distributed.  During the meet and confers, we explained that this letter referenced advice of counsel, and also set forth a proposed agenda for a meeting with the co-applicants' legal counsel.  Likewise, the entry for the December 9, 1987 memo is as follows:

> Minutes of meeting on 12/7/87 re ICC/Ricoh patent applications, discussing legal strategy and reciting advice of counsel.  Attendees:  Kobayashi, Sugimoto [from ICC], Shindo, Suihiro, Tatsumi [from Ricoh]

Exh. 2 (Ricoh 8/1/06 supplemental privilege log, document 102A).  This document likewise was not distributed outside of the co-owners or their legal counsel.

5.     The so-called "Negotiation Documents" were created as part of a discussion between the co-owners on how the patent should be enforced.  These enforcement discussions included and was predicated on the advice of counsel to the patent owners.  That legal advice regarding enforcement options also was in anticipation of litigation – *this* litigation – and thus protected by the work product doctrine and attorney client privilege.  The entries on the log reflect these facts; representative examples of the descriptions follow:

Document No. 79:  Letter between co-owners pursuant to advice of counsel re Ricoh's purchase of KBS' right to patents in 4/1/01 agreement.[6]

Document No. 81:  Email thread between co-owners of the '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents and discussing legal strategy and advice of counsel.

Exh. 2 (Ricoh 8/1/06 supplemental privilege log, documents 79-91, 94-99, and 104A).  All of these documents were distributed only to the named recipients, who were officers or employees of the co-owners of the '432 patent.  Ricoh submits that these descriptions, on their face, adequately support its claim of privilege.[7]

6.      Defendants contend (at p. 1-2) that the "Negotiation Documents" are "relevant to damages because they will explain the value that KBSC and Ricoh placed on the '432 patent."  Ricoh, however, has already produced the final agreement between Ricoh and KBSC regarding the transfer of KBSC's 50% interest in the '432 patent, and defendants have extensively questioned both Ricoh and KBSC witnesses regarding the transaction.  Defendants' damages expert has already submitted his damages report and did not indicate any desire or need to consider any information that KBSC/ICC and Ricoh may have exchanged with one another.  The expert instead only considered the amount Ricoh paid when it bought KBSC's rights to be relevant and for the amount he set forth, cited a document Ricoh already produced.  The only information which the damages expert felt relevant was information which the defendants already had.  The expert did not even feel the need to note that absence of this information in drafts in which he did list information still needed to complete his report, even after having been made aware of the existence of the privileged documents by defendants' counsel.  Thus, defendants' *only* stated basis for relevance of these documents is not even supported by their own expert.

Under these facts, ICC/KBSC's interest in the '432 patent was as a co-*owner*, not as a licensee.  The most applicable case is *In re Regents of California*, 101 F.3d 1386 (Fed. Cir. 1996), not *Johnson Matthey*, 2002 U.S. Dist. LEXIS 13560, a New York case relied on by Defendants.[8]  In *Regents*, the Federal Circuit held that a patentee and its exclusive licensee share

---

[6] The 4/1/01 agreement, and the final assignment, have been produced.

[7] These descriptions are for more detailed that the generic descriptions in defendant's privilege log regarding the Foo documents, the basis of which is at issue in a companion joint letter.

[8] *Johnson Matthey* relates to a patent owner-*licensee* relationship, not a relationship between co-owners.  Defendants also quote *Johnson Matthey* out of context.  Defendants state in footnote 4 that "residual economic benefit occurring after transfer of patent rights is 'simply a commercial concern' and does not 'rise to the level of a common legal interest.'"  However, the court in *Johnson Matthey* actually states that "[a] shared desire to succeed in an action does not, however, rise to the level of a common legal interest.  The shared desire to maximize royalty income is, instead, simply a commercial concern."  2002 U.S. Dist. LEXIS 13560 at *17   In *Johnson Matthey*, plaintiff "JM contend[ed] that it shared two legal interests with [its licensees] Research and Bristol", but JM "never assigned to

a common legal interest in ensuring that the patent is valid and enforceable. *Regents*, 101 F.3d at 1389. ICC/KBSC and Ricoh's relationship as co-owners of the '432 patent is even more intertwined than that of an owner and exclusive licensee and reflects an even stronger unity of interests in the prosecution and enforcement of the patent. In addition to the legal property interest in the patent itself, co-owner ICC/KBSC had the same right to sue for infringement of the '432 patent as Ricoh, and held the same interest in "ensuring that the patent is valid and enforceable," during both the prosecution of the patent and its enforcement. *Id*. Thus, there is no question that Ricoh and ICC/KBSC have a strong "common legal interest in ensuring that the patent is valid and enforceable." The issue for this Court is whether communications in furtherance of that common legal interest, and which also disclose legal advise and strategy, are properly protected from discovery.

**B.    The Privileged Documents Reflect the Advice of Counsel Regarding the Common Legal Interest in the '432 Patent**

The documents in question were created at a time when Ricoh and ICC/KBSC jointly prosecuted and enforced the '432 patent, were represented by the same counsel, and had the same legal interest regarding the '432 patent. The documents all included and discussed attorney-client communications, were made in the strictest confidence, and directly relate to advancing the common interest between Ricoh and ICC/KBSC in enforcing the '432 patent.

Defendants rely on *Bergonzi* and *MIT* in support of their waiver theory, but in both cases, any attorney-client or common interest privilege was waived by disclosure to a government agency who gave no expectation of confidentiality who did not share a common goal with the disclosing party. *Bergonzi*, 216 F.R.D. at 497-8; *MIT*, 129 F.3d at 683. This is not the case here.

The legal standards set forth in *Regents* and *Bergonzi* support Ricoh's position. Under both cases, it is clear that communications among the co-owners of a patent application regarding attorney advice and preparation in prosecuting that application are protected by the attorney client-privilege and by the common interest privilege. *Bergonzi*, 216 F.R.D. at 495. Defendants attempt to divide up the privileged documents into so called "Pre-Meeting Documents" and "Negotiation Documents," but all of these disputed documents fall squarely within both the attorney-client and common interest privileges, with numerous documents being shielded by the work product doctrine as well. As Ricoh has told defendants during the meet and confer sessions, these documents include communications with and legal advice from counsel, and also includes an agenda of issues to discuss with counsel during an upcoming meeting with counsel.

---

Research any interest in that body of information [at issue . . . and] Bristol, as Research's licensee, also could not have had any shared legal interest in the res." *Id*. The facts of this case are simply not applicable to the ICC/KBSC-Ricoh relationship as co-owners, sharing the same legal rights.

Defendants repeatedly refer to "Negotiation Documents" in an attempt to manufacture an adversarial relationship between KBSC and Ricoh. As co-owners of the '432 patent, however, no such adversarial posture existed. These purported "Negotiation Documents" actually reflect meetings in anticipation of the present litigation, which included advice of counsel to the patent owners, each of whom had full enforcement rights in the '432 patent. Even if there was some adversarial relationship at the time of the discussions, this does not, as defendants suggest, destroy the privilege. Even defendants' own cases make clear that the common interest "privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects." *Bergonzi*, 216 F.R.D. at 495. The privilege has been held to exist even "where a lawsuit between the co-defendants was foreseeable." *Id.* (citing *In re Grand Jury Subpeona Duces Tecum*, 406 F.Supp. 381, 392 (S.D.N.Y. 1975)). The mere fact that KBSC and Ricoh later negotiated a transfer of patent rights reflected in the October 12, 2001 assignment has no bearing on the parties' then-existing common interest in enforcing the '432 patent when the so-called "Negotiation Documents" were created. At least until the actual transfer of the patent rights was completed, both parties retained full enforcement rights in the '432 patent and therefore, had a common legal interest in the '432 patent.[9]

For the above reasons, Ricoh's privilege claims should be sustained, and defendants' requests denied.

**<u>Reply of Synopsys and the Customer Defendants</u>:**

Ricoh's response to this motion misses the point. Ricoh succeeds only in demonstrating two propositions that are not in dispute — that it and ICC were co-owners of the '432 patent and that this co-ownership created a common interest. Ricoh fails to recognize that this common interest, while necessary, is insufficient on its own to withhold documents under the three-part *Bergzoni* test, which both parties agree is the appropriate test to apply. At least one element of the *Bergzoni* test, as well as the predicate to even apply *Bergzoni*, have not been met: (1) it has not been established that the communications were attorney-client privileged communications (the predicate); and (2) the communications were not in furtherance of the common interest

---

[9] Defendants also imply that no privilege exists because an attorney was not copied on all of these communications. As reflected by the descriptions, the documents were all prepared at the advice of counsel, or reflected substantive legal advice from counsel, or both. Such documents are privileged as this Court has already ruled when it sustained defendants' privilege claim to documents that are not between attorney and counsel, ruling in connection with Ricoh's motion to show cause that an entire email between defendants' employees was privileged, even though only one portion contained legal advice. *See also, e.g,. National Educ. Training Group, Inc. v. SkillSoft Corp.*, 1999 U.S. Dist. LEXIS 8680, *9 (S.D.N.Y. 1999) ("Courts have also recognized that intra-corporate distribution of legal advice received from counsel does not necessarily vitiate the privilege, even though the legal advice is relayed indirectly from counsel through corporate personnel.").

(element 2 of *Bergzoni*).[10]  These are the issues to which Defendant's motion was directed, and Ricoh's failure to address the issues should lead to this motion being granted.[11]

Ricoh's entire legal defense to this motion is hidden in a footnote —"the existence of a common interest [is a] sufficient basis to claim privilege."  *Supra*, n.5.  Ricoh's belief that this is the law explains why it spends four pages discussing issues that are not in dispute.  This, however, is not the law; the "common interest privilege" is nothing more than an exception to the general waiver doctrine of attorney-client privilege.  *See, e.g.*, *Katz*, 191 F.R.D. at 437.  Although Ricoh suggests that Judge Jenkins' use of the phrase "common interest privilege" in one portion of *Bergzoni* shows that there is a separate privilege, the later section of the case shows that common interest is an exception to waiver, not a privilege unto itself.  *Bergzoni*, 216 F.R.D. at 495-96 ("The parameters of the ***common interest exception to waiver of the attorney-client/work product privilege*** were recently clarified….") (emphasis added); *see also In Re McKesson HBOC, Inc.*, 2005 U.S. Dist. LEXIS 7098 at *36 n.10 (N.D. Cal. Mar. 31, 2005) ("In the context of the attorney-client privilege, '[t]he common-interest doctrine prevents clients from waiving the attorney-client privilege when attorney-client communications are shared….'") (emphasis added).  Ricoh has not cited a single case that holds otherwise — *Bergzoni* does not, nor does the Federal Circuit *Regents* case.  *See In re Regents of the Univ. of Cal.,* 101 F.3d at 1389 ("[T]he joint client doctrine typically has been applied to ***overcome what would otherwise have constituted a waiver of confidentiality*** because a communication had been shared between two clients….") (emphasis added) (citations omitted)

Other than its entirely flawed legal argument, Ricoh makes unsupported factual assertions about the nature of the withheld documents.  It claims that the Negotiation Documents were created "as part of a discussion between the co-owners on how the patent should be enforced."  But the word "enforcement" does not appear once on any of Ricoh's logs — not the Supplemental Log, and not the Revised Supplemental Log — nor does Ricoh provide any evidence demonstrating that the Negotiation Documents were, indeed, relating to enforcement  The descriptions on the logs show that these documents are about "negotiations" — negotiations between parties on the opposite side of a bargaining table regarding how much and under what terms ICC would sell its remaining rights to Ricoh — not enforcement.  Ricoh's belated and

---

[10] It may well be the case that element 1 of *Bergzoni*— that the communication be made in the course of a matter of common interest — is not met, since the negotiations for Ricoh to purchase ICC's interest in the '432 patent is not "in the course of a matter of common interest."  But because element 2 is clearly not met, Defendants' motion focuses on that element.

[11] Ricoh's failure is simply its strategy for defending against this motion, and is not the product of a faulty meet-and-confer process.  Ricoh made the same inapposite arguments at the first meet and confer, and Defendants explicitly told Ricoh that it "misunderstand[s] our position as to why the documents are not privileged.  Our position is not, as you state, that Ricoh's co-ownership of the '432 patent with KBSC is an insufficient common interest.  Rather, it is that the privilege log does not reflect discussions about co-ownership and how to enforce the patent — it reflects negotiations about purchase of KBSC's interest in the patent by Ricoh, which necessarily place KBSC and Ricoh in an adversarial (not a cooperative) relationship."  (Exhibit 8.)

Hon. Edward M. Chen
August 10, 2006
Page 12

unsupported assertion that documents described as negotiation documents in the log are enforcement documents strains credulity, in light of the descriptions on the logs. The Negotiation Documents were not generated in the furtherance of Ricoh and ICC's common interest, and so, under *Bergzoni*, the common interest doctrine does not apply. Moreover, Ricoh has not addressed the arguments made in the opening section about why there is no attorney-client privilege in the Negotiation Documents in the first place. So, not only is there no privilege, but any privilege that may have existed was waived when the documents were provided to ICC, a party sitting across a negotiating table from Ricoh.

As for the Pre-Meeting Documents, the log demonstrates that they are not protected by the attorney-client privilege in the first instance. The documents are the records of meetings between the co-inventors, without counsel present, to discuss their upcoming patent prosecution. These documents were not communications between attorney and client nor do they reflect legal advice.[12] Ricoh does not provide any caselaw for the proposition that mere preparation for meeting with counsel is protected by the attorney-client privilege. Thus, because these documents do not reflect communication of legal advice from attorney to client, they cannot be withheld under the attorney-client privilege, and the common interest doctrine is inapplicable.

Ricoh does not dispute that it has the burden to show that it has properly withheld the disputed documents. Given its flawed legal argument and its inability to support its factual allegations with actual evidence, Ricoh has failed to shoulder this burden. The Court should therefore order Ricoh to produce the Negotiation Documents and Pre-Meeting Documents as requested above.

Respectfully submitted,

By:___/s/ Ethan B. Andelman_____    By:___/s/ Kenneth W. Brothers_____
    Ethan B. Andelman        Kenneth W. Brothers
    Counsel for SYNOPSYS, INC. and        Counsel for RICOH COMPANY, LTD
    Customer Defendants AEROFLEX
    INCORPORATED, AEROFLEX
    COLORADO SPRINGS, AMI
    SEMICONDUCTOR, INC., MATROX

---

[12] Ricoh asserts, without support, that the documents contain legal advice, even though this is not reflected in the logs originally served — the KBSC Log for Document 5 and Supplemental Log on Document 102A. The Revised Supplemental Log's assertion that Document 102A is "reciting advice of counsel" can be discounted because that description was added only after Defendants raised its concern with the withholding of the document in the first place. Should the Court have any doubts regarding Document 102A, Defendants respectfully request that the Court order an *in camera* examination of this document in order to determine if it is covered by the attorney-client privilege.

Hon. Edward M. Chen
August 10, 2006
Page 13

ELECTRONIC SYSTEMS, LTD.,
MATROX RAPHICS, INC., MATROX
INTERNATIONAL CORP., and
MATROX TECH, INC.

EXHIBIT 1

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-001 | 1/13/1988 | 1 | Front page of file wrapper for application and issuance of US Patent 4,922,432 containing confidential notes and materials re attorney's legal services. | BELL-SELTZER-PARK- &-GIBSON | | |
| RCLPriv-002 | 3/3/1992 | 1 | Client letter re communications regarding patent & trademark issues | KOBAYASHI-HIDEAKI | LINKER-RAYMOND-O.-JR. | DAVIS-JAMES-P, MOORE-BRIAN |
| RCLPriv-003 | - | 1 | Bell Gibson file card re '432 patent containing handwritten notes reflecting confidential communications with client. | BELL-SELTZER-PARK- &-GIBSON | | |
| RCLPriv-004 | - | 1 | Copies of client business cards with handwritten notes of counsel re legal services for '432 patent. | BELL-SELTZER-PARK- &-GIBSON | | |
| RCLPriv-005 | 7/6/1995 | 1 | Counsel letter enclosing name change certificate from ICC to Knowledge Based Silicon Corporation. | LINKER-RAYMOND-O.-JR. | KOBAYASHI-HIDEAKI | NAKAMURA-ISAO |
| RCLPriv-006 | 3/16/1995 | 2 | Counsel letter enclosing name change certificate from ICC to Knowledge Based Silicon Corporation and reporting recordation of assignment for U.S. Patent 5,218,669 from inventors to ICC & Ricoh. | LINKER-RAYMOND-O.-JR. | NAKAMURA-ISAO | KOBAYASHI-HIDEAKI |
| RCLPriv-007 | 1/12/1995 | 2 | Client letter re change of name from International Chip Corporation to Knowledge Based Silicon Corporation for '432 patent application, others. | NAKAMURA-ISAO | LINKER-RAYMOND-O.-JR. | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-008 | 9/18/1993 | 1 | Client letter re maintenance fees & abandonments | MATSUSHITA-A | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-009 | 9/13/1993 | 1 | Counsel letter re '432 patent maintenance fee. | LINKER-RAYMOND-O.-JR. | ITOGA-MICHIYA | |
| RCLPriv-010 | 9/9/1993 | 1 | Counsel letter re '432 patent maintenance fee. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | |
| RCLPriv-011 | 1/27/1992 | 1 | Counsel letter enclosing Certificate of Correction for 432 patent. | LINKER-RAYMOND-O.-JR. | KOBAYASHI-HIDEAKI | MATSUMURA-S. |
| RCLPriv-012 | 6/17/1991 | 1 | Client letter re KBSC-related Japanese patent application, with counsel handwritten reply with legal advice. | 1) BERSHADER-BRIAN 2) LINKER-RAYMOND-O.-JR. | 1) LINKER-RAYMOND-O.-JR. 2) BERSHADER-BRIAN | 1) KOBAYASHI-HIDEAKI |
| RCLPriv-013 | 10/12/1990 | 1 | Counsel letter transmitting copies of '432 patent. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-014 | 10/12/1990 | 1 | Counsel letter transmitting copies of '432 patent. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-015 | 9/17/1990 | 2 | Counsel letter transmitting '432 patent, noting printing errors, giving legal advice. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-016 | 9/17/1990 | 2 | Counsel letter transmitting '432 patent, noting printing errors, giving legal advice. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-017 | 4/19/1990 | 1 | Cover letter transmitting 8/15/89 office action and 11/15/89 response. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | |
| RCLPriv-018 | 4/19/1990 | 2 | Client letter responding to 4/19/90 letter. | MATSUMURA-S. | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-019 | 4/10/1990 | 1 | Attorney letter re forthcoming issuance of '432 patent. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-020 | 1/2/1990 | 1 | Counsel letter to client re new drawings to be forward to patent office. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-021 | 12/15/1989 | 1 | Client letter in response to 12/4/89 letter from counsel. | SHINDO-MASAHIRO | LINKER-RAYMOND-O.-JR. | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-022 | 12/4/1989 | 1 | Counsel letter re formal notice of allowance. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-023 | 11/15/1989 | 1 | Counsel letter enclosing recently filed response and commenting upon examiner interview. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-024 | 8/25/1989 | 2 | Counsel letter forwarding and commenting on office action. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-025 | 4/19/1989 | 2 | Counsel letter forwarding and commenting upon recently filed amendment. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI |
| RCLPriv-026 | 4/6/1989 | 8 | Internal counsel memo re distinguishing prior art. | TAULBEE-GEORGE-M | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-027 | 3/30/1989 | 5 | Client letter reviewing and commenting upon prior art references cited by the examiner. | KOBAYASHI-HIDEAKI | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-028 | 3/10/1989 | 3 | Counsel letter re prior art references cited by the examiner. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-029 | 3/10/1989 | 2 | Counsel letter re original assignments, with 3/13/1989 acknowledgement of receipt by recipient. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-030 | 3/10/1989 | 2 | Counsel letter re original assignments. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-031 | 3/7/1988 | 9 | Client letter commenting upon response to examiner's action. Note: one page of RCLPriv-037 is the fax cover sheet for this memo. | SUGIMOTO-TAI | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-032 | 1/30/1989 | 2 | Counsel letter forwarding certified copies of application. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI HISAO |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-033 | 1/10/1989 | 1 | Client letter re foreign counterparts to the U.S. application. | TATSUMI-HISAO | MCCOY-MICHAEL-D | MATSUMURA-S. |
| RCLPriv-034 | 12/28/1988 | 1 | Client letter re foreign applications. | MATSUMURA-S. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI |
| RCLPriv-035 | 12/28/1988 | 1 | Client letter re foreign applications, with attorney handwritten notes. | MATSUMURA-S. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI |
| RCLPriv-036 | 1/27/1989 | 2 | Counsel letter forwarding and commenting upon first office action. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, KOBAYASHI-HIDEAKI |
| RCLPriv-037 | 1/17/1989 | 1 | Counsel letter to patent agent requesting certified copies of application. | LINKER-RAYMOND-O.-JR. | SMITH-ROBERT-L. | |
| RCLPriv-038 | 12/22/1988 | 1 | Internal counsel memo re telephone call with client re foreign filings. | LINKER-RAYMOND-O.-JR. | FILE | |
| RCLPriv-039 | 12/5/1988 | 5 | Counsel letter re procedure for foreign filings, with fax confirmation. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI |
| RCLPriv-040 | 12/2/1988 | 1 | Counsel letter re need to translate 12/2/89 letter. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-041 | 12/2/1988 | 4 | Counsel letter re procedure for foreign filings. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI |
| RCLPriv-042 | 11/29/1988 | 2 | Internal counsel memo re procedures for foreign filings. | LINKER-RAYMOND-O.-JR. | FILE | |
| RCLPriv-043 | 11/29/1988 | 1 | Counsel letter re draft letter for foreign filings. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-044 | 11/2/1988 | 2 | Counsel letter re pending invoices. | MCCOY-MICHAEL-D | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI HISAO |
| RCLPriv-045 | 11/1/1988 | 1 | Handwritten counsel notes re conversation with client re foreign filings. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-046 | 1/11/1988 | 2 | Counsel letter re procedures for payment of invoices. | MCCOY-MICHAEL-D | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI HISAO |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

2116549

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-047 | 9/23/1988 | 3 | Counsel letter re foreign filings and possible improvement applications. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MCCOY-MICHAEL-D |
| RCLPriv-048 | 9/12/1988 | 1 | Counsel letter re possible foreign filings. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI-HISAO |
| RCLPriv-049 | 3/21/1988 | 6 | Counsel letter commenting upon application and forwarding invoices. | MCCOY-MICHAEL-D. | SUGIMOTO-TAI, TATSUMI-HISAO | LINKER-RAYMOND-O.-JR. |
| RCLPriv-050 | 3/15/1988 | 1 | Counsel letter forwarding official filing receipt. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI-HISAO, MCCOY-MICHAEL-D |
| RCLPriv-051 | 2/5/1988 | 5 | Counsel letter transmitting and explaining invoices. | MCCOY-MICHAEL-D | TATSUMI-HISAO | SUGIMOTO-TAI, LINKER-RAYMOND-O.-JR. |
| RCLPriv-052 | 2/1/1988 | 1 | Client letter requesting clarification of invoices. | TATSUMI-HISAO | MCCOY-MICHAEL-D | |
| RCLPriv-053 | 1/20/1988 | 2 | Counsel letter commenting upon invoices. | MCCOY-MICHAEL-D | TATSUMI-HISAO | MATSUMURA-S., SUGIMOTO-TAI, LINKER-RAYMOND-O.-JR. |
| RCLPriv-054 | 1/14/1988 | 2 | Counsel letter re application and assignment documents. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI-HISAO, MCCOY-MICHAEL-D |
| RCLPriv-055 | 12/26/1987 | 1 | Handwritten client note to counsel re application, in English and Japanese. | INTERNATIONAL-CHIP-CORPORATION, RICOH COMPANY, LTD. | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-056 | 12/23/1987 | 2 | Counsel letter re application and assignment documents. | LINKER-RAYMOND-O.-JR. | SHINDO-MASAHIRO | TATSUMI-HISAO, SUGIMOTO-TAI |
| RCLPriv-057 | - | 1 | Handwritten counsel notes re instructions for joint assignment. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-058 | 12/22/1987 | 2 | Counsel letter re application, assignment and drawings. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI, KOBAYASHI-HIDEAKI | |
| RCLPriv-059 | - | 1 | Draft drawing from client to counsel. | RICOH COMPANY, LTD. | | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-060 | - | 3 | Draft drawings from client to counsel. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-061 | 12/8/1987 | 21 | Draft drawings and illustrations from client to counsel with handwritten notes of counsel. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-062 | 12/8/1987 | 16 | Portions of an outline of draft specification from client. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-063 | 12/17/1987 | 11 | Client letter re application and forwarding information re flowchart editor, with handwritten counsel annotations. | SUGIMOTO-TAI | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-064 | 12/15/1987 | 2 | Counsel letter forwarding draft claims. | MCCOY-MICHAEL-D | MATSUMURA-S, SUGIMOTO-TAI | LINKER-RAYMOND-O.-JR. |
| RCLPriv-065 | 12/15/1987 | 3 | Draft claims prepared by counsel and forwarded to client. | MCCOY-MICHAEL-D | | |
| RCLPriv-066 | - | 38 | Draft specification with attorney notes. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-067 | 7/1/1988 | 1 | USPTO notice of recordation of assignment, with handwritten attorney notes. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-068 | - | 1 | Back page of file wrapper with attorney notes. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-069 | 3/16/1995 | 2 | Counsel letter enclosing name change certificate from ICC to Knowledge Based Silicon Corporation and reporting recordation of assignment for U.S. Patent 5,218,669 from inventors to ICC & Ricoh. | LINKER-RAYMOND-O.-JR. | NAKAMURA-ISAO | KOBAYASHI-HIDEAKI |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-070 | 1/27/1992 | 5 | Counsel letter enclosing Certificate of Correction for '432 patent with Certificate of Correction for '432 patent w/ markings. | LINKER-RAYMOND-O.-JR. | KOBAYASHI-HIDEAKI | MATSUMURA-SADAO |
| RCLPriv-071 | 9/17/1990 | 2 | Counsel letter transmitting '432 patent, noting printing errors, giving legal advice, with client notations. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-SADAO |
| RCLPriv-072 | 4/10/1990 | 1 | Counsel letter transmitting Issue Fee Receipt for '432 patent and advising re patent issuance. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-SADAO |
| RCLPriv-073 | 4/10/1990 | 1 | Counsel letter transmitting Issue Fee Receipt for '432 patent and advising re patent issuance. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-SADAO |
| RCLPriv-074 | 4/19/1989 | 18 | Counsel letter transmitting amendment dated 4/18/89 and legal advice, with client markings (second page missing), with Amendment dated 4/18/89, w/ markings. | BELL-SELTZER-PARK-&-GIBSON | MATSUMURA-SADAO | |
| RCLPriv-075 | 3/24/1989 | 1 | Fax re response to patent application rejection by PTO. | SUGIMOTO-TAI | ARIMA-Y. | |
| RCLPriv-076 | 1/27/1989 | 2 | Counsel letter transmitting Office Action dated 1/18/89 and legal advice, client notations. | LINKER-RAYMOND-O.-JR. | MATSUMURA-SADAO | SUGIMOTO-TAI, KOBAYASHI-HIDEAKI |
| RCLPriv-077 | 3/15/1988 | 1 | Counsel letter transmitting Official Filing Receipt, w/ client notations | LINKER-RAYMOND-O.-JR. | MATSUMURA-SADAO | SUGIMOTO-TAI, TATSUMI HISAO, MCCOY-MICHAEL-D |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd's Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-078 | 1/14/1988 | 55 | Counsel letter transmitting application and assignment documents as forwarded to USPTO on 1/13/88, w/ advice re next steps in application process, w/ client markings, with application as forwarded to USPTO on 1/13/88, w/ markings | LINKER-RAYMOND-O.-JR. | MATSUMURA-SADAO | SUGIMOTO-TAI, TATSUMI-HISAO, MCCOY-MICHAEL-D |
| RCLPriv-079 | 5/21/2001 | 2 | Letter re Ricoh purchase of KBS' right to patents in 4/1/01 agreement. | NONAKA-TERUMOTO | BERSHADER-BRIAN | KOBAYASHI-HIDEAKI, NAKAYAMA-H. |
| RCLPriv-080 | 5/7/2001 | 2 | Letter re Ricoh's purchase of patents & amendment to Agreement Regarding Jointly Owned Patents. | NAKAYAMA-HARUO | KOBAYASHI-HIDEAKI | BERSHADER-BRIAN |
| RCLPriv-081 | 4/30/2001 | 5 | E-mail thread re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | BERSHADER-BRIAN | NAKAYAMA-HARUO |
| RCLPriv-082 | 3/22/2001 | 1 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | TAKADA-TAKAHEI | NAKAYAMA-HARUOMA-HARUO |
| RCLPriv-083 | 3/9/2001 | 15 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | RICOH, KBS | | |
| RCLPriv-084 | 3/9/2001 | 1 | E-mail thread re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | BERSHADER-BRIAN | NAKAYAMA-HARUO |
| RCLPriv-085 | 3/9/2001 | 14 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | RICOH, KBS | | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-086 | 1/30/2001 | 2 | E-mail thread re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | SUEOKA-GREG, KOBAYASHI-HIDEAKI |
| RCLPriv-087 | 1/20/2001 | 1 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | NAKAYAMA-HARUO | TAKADA-TAKAHEI |
| RCLPriv-088 | 1/17/2001 | 11 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | KBS | | |
| RCLPriv-089 | 12/13/2000 | 1 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | KOBAYASHI-HIDEAKI |
| RCLPriv-090 | 12/1/2000 | 10 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | KBS | | |
| RCLPriv-091 | 12/10/2000 | 11 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | KBS | | |
| RCLPriv-092 | 10/12/2000 | 1 | E-mail thread re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | NAKAYAMA-HARUO | TAKADA-TAKAHEI | |
| RCLPriv-093 | 10/6/2000 | 1 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | NAKAYAMA-HARUO | TAKADA-TAKAHEI | |
| RCLPriv-094 | 9/13/2000 | 1 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | BERSHADER-BRIAN | KOBAYASHI-HIDEAKI, NAKAYAMA-HARUO, NOYAMA-TOMONORI |
| RCLPriv-095 | 9/13/2000 | 10 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-096 | 8/9/2000 | 1 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | TAKADA-TAKAHEI, NAKAYAMA-HARUO, NOYAMA-TOMONORI | KOBAYASHI-HIDEAKI |
| RCLPriv-097 | 7/21/2000 | 9 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | KBS | | |
| RCLPriv-098 | 7/21/2000 | 2 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | KOBAYASHI-HIDEAKI | NONAKA-TERUMOTO, NAKAYAMA-HARUO |
| RCLPriv-099 | 7/21/2000 | 9 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | RICOH | | |
| RCLPriv-100 | Undated | 33 | Draft of Patent Portfolio Cross-License Agreement between Texas Instruments Incorporated and Ricoh Company, Ltd. | TEXAS INSTRUMENTS, RICOH | | |
| RCLPriv-101 | Undated | 33 | Draft of Patent Portfolio Cross-License Agreement between Texas Instruments Incorporated and Ricoh Company, Ltd. | TEXAS INSTRUMENTS, RICOH | | |
| RCLPriv-102 | 12/9/1987 | 4 | Minutes of meetings on 12/7/87 & 12/8/87 re ICC/Ricoh patent applications. 12/7/87 attendees: Kobayashi, Sugimoto, Shindo, Suehiro, Tatsumi. 12/8/87 attendees: McCoy, Linker, Kobayashi, Sugimoto, Tatsumi, Suehiro, Shindo. | KOBAYASHI-HIDEAKI, SHINDO-MASAHIRO, SUGIMOTO-TAI | | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-103 | Undated | 5 | Redacted excerpts of Shindo memo produced by Ricoh on 7/17/06 at RCL011957 - RCL011961. Redacted excerpts are information and commentary from client and not from Mr. Shindo, protected from disclosure pursuant to July 5, 2006 Order. | TAKADA-TAKAHEI | | |
| RCLPriv-104 | 1/30/2001 | 2 | E-mail thread re KBS & Synopsys correspondence, irrelevant matters. | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | SUEOKA-GREG, KOBAYASHI-HIDEAKI |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

EXHIBIT 2

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-001 | 1/13/1988 | 1 | Front page of file wrapper for application and issuance of US Patent 4,922,432 containing confidential notes and materials re attorney's legal services. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-002 | 3/3/1992 | 1 | Client letter re communications regarding patent & trademark issues | KOBAYASHI-HIDEAKI | LINKER-RAYMOND-O-JR. | DAVIS-JAMES-P, MOORE-BRIAN |
| RCLPriv-003 | - | 1 | Bell Gibson file card re '432 patent containing handwritten notes reflecting confidential communications with client. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-004 | - | 1 | Copies of client business cards with handwritten notes of counsel re legal services for '432 patent. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-005 | 7/6/1995 | 1 | Counsel letter enclosing change certificate from ICC to Knowledge Based Silicon Corporation. | LINKER-RAYMOND-O-JR. | KOBAYASHI-HIDEAKI | NAKAMURA-ISAO |
| RCLPriv-006 | 3/16/1995 | 2 | Counsel letter enclosing name change certificate from ICC to Knowledge Based Silicon Corporation and reporting recordation of assignment for U.S. Patent 5,218,669 from inventors to ICC & Ricoh. | LINKER-RAYMOND-O-JR. | NAKAMURA-ISAO | KOBAYASHI-HIDEAKI |
| RCLPriv-007 | 1/12/1995 | 2 | Client letter re change of name from International Chip Corporation to Knowledge Based Silicon Corporation for '432 patent application, others. | NAKAMURA-ISAO | LINKER-RAYMOND-O-JR. | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-008 | 9/18/1993 | 1 | Client letter re maintenance fees & abandonments | MATSUSHITA-A | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-009 | 9/13/1993 | 1 | Counsel letter re '432 patent maintenance fee. | LINKER-RAYMOND-O.-JR. | ITOGA-MICHIYA | |
| RCLPriv-010 | 9/9/1993 | 1 | Counsel letter re '432 patent maintenance fee. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | |
| RCLPriv-011 | 1/27/1992 | 1 | Counsel letter enclosing Certificate of Correction for '432 patent. | LINKER-RAYMOND-O.-JR. | KOBAYASHI-HIDEAKI | MATSUMURA-S. |
| RCLPriv-012 | 6/17/1991 | 1 | Client letter re KBSC-related Japanese patent application, with counsel handwritten reply with legal advice. | 1) BERSHADER-BRIAN 2) LINKER-RAYMOND-O.-JR. | 1) LINKER-RAYMOND-O.-JR. 2) BERSHADER-BRIAN | |
| RCLPriv-013 | 10/12/1990 | 1 | Counsel letter transmitting copies of '432 patent. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-014 | 10/12/1990 | 1 | Counsel letter transmitting copies of '432 patent. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-015 | 9/17/1990 | 2 | Counsel letter transmitting '432 patent, noting printing errors, giving legal advice. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-016 | 9/17/1990 | 2 | Counsel letter transmitting '432 patent, noting printing errors, giving legal advice. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-017 | 4/19/1990 | 1 | Cover letter transmitting 8/15/89 office action and 11/15/89 response. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | |
| RCLPriv-018 | 4/19/1990 | 2 | Client letter responding to 4/19/90 letter. | MATSUMURA-S. | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-019 | 4/10/1990 | 1 | Attorney letter re forthcoming issuance of '432 patent. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-020 | 1/2/1990 | 1 | Counsel letter to client re new drawings to be forward to patent office. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-021 | 12/15/1989 | 1 | Client letter in response to 12/4/89 letter from counsel. | SHINDO-MASAHIRO | LINKER-RAYMOND-O.-JR. | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-022 | 12/4/1989 | 1 | Counsel letter re formal notice of allowance. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-023 | 11/15/1989 | 1 | Counsel letter enclosing recently filed response and commenting upon examiner interview. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-024 | 8/25/1989 | 2 | Counsel letter forwarding and commenting on office action. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| RCLPriv-025 | 4/19/1989 | 2 | Counsel letter forwarding and commenting upon recently filed amendment. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI |
| RCLPriv-026 | 4/6/1989 | 8 | Internal counsel memo re distinguishing prior art. | TAULBEE-GEORGE-M. | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-027 | 3/30/1989 | 5 | Client letter reviewing and commenting upon prior art references cited by the examiner. | KOBAYASHI-HIDEAKI | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-028 | 3/10/1989 | 3 | Counsel letter re prior art references cited by the examiner. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-029 | 3/10/1989 | 2 | Counsel letter re original assignments, with 3/13/1989 acknowledgement of receipt by recipient. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-030 | 3/10/1989 | 2 | Counsel letter re original assignments. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-031 | 3/7/1988 | 9 | Client letter commenting upon response to examiner's action. Note: one page of RCLPriv-037 is the fax cover sheet for this memo. | SUGIMOTO-TAI | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-032 | 1/30/1989 | 2 | Counsel letter forwarding certified copies of application. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI HISAO |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-033 | 1/10/1989 | 1 | Client letter re foreign counterparts to the U.S. application. | TATSUMI-HISAO | MCCOY-MICHAEL-D | MATSUMURA-S. |
| RCLPriv-034 | 12/28/1988 | 1 | Client letter re foreign applications. | MATSUMURA-S. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI |
| RCLPriv-035 | 12/28/1988 | 1 | Client letter re foreign applications, with attorney handwritten notes. | MATSUMURA-S. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI |
| RCLPriv-036 | 1/27/1989 | 2 | Counsel letter forwarding and commenting upon first office action. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, KOBAYASHI-HIDEAKI |
| RCLPriv-037 | 1/17/1989 | 1 | Counsel letter to patent agent requesting certified copies of application. | LINKER-RAYMOND-O.-JR. | SMITH-ROBERT-L. | |
| RCLPriv-038 | 12/22/1988 | 1 | Internal counsel memo re telephone call with client re foreign filings. | LINKER-RAYMOND-O.-JR. | FILE | |
| RCLPriv-039 | 12/5/1988 | 5 | Counsel letter re procedure for foreign filings, with fax confirmation. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI |
| RCLPriv-040 | 12/2/1988 | 1 | Counsel letter re need to translate 12/2/89 letter. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| RCLPriv-041 | 12/2/1988 | 4 | Counsel letter re procedure for foreign filings. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI |
| RCLPriv-042 | 11/29/1988 | 2 | Internal counsel memo re procedures for foreign filings. | LINKER-RAYMOND-O.-JR. | FILE | |
| RCLPriv-043 | 11/29/1988 | 1 | Counsel letter re draft letter for foreign filings. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI |
| RCLPriv-044 | 11/2/1988 | 2 | Counsel letter re pending invoices. | MCCOY-MICHAEL-D | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI-HISAO |
| RCLPriv-045 | 11/1/1988 | 1 | Handwritten counsel notes re conversation with client re foreign filings. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-046 | 1/11/1988 | 2 | Counsel letter re procedures for payment of invoices. | MCCOY-MICHAEL-D | MATSUMURA-S. | SUGIMOTO-TAI, TATSUMI-HISAO |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co., Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-047 | 9/23/1988 | 3 | Counsel letter re foreign filings and possible improvement applications. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MCCOY-MICHAEL-D |
| RCLPriv-048 | 9/12/1988 | 1 | Counsel letter re possible foreign filings. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI, HISAO | SUGIMOTO-TAI, TATSUMI |
| RCLPriv-049 | 3/21/1988 | 6 | Counsel letter commenting upon application and forwarding invoices. | MCCOY-MICHAEL-D. | SUGIMOTO-TAI, TATSUMI-HISAO | LINKER-RAYMOND-O.-JR. |
| RCLPriv-050 | 3/15/1988 | 1 | Counsel letter forwarding official filing receipt. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | SUGIMOTO-TAI, HISAO, MCCOY-MICHAEL-D |
| RCLPriv-051 | 2/5/1988 | 5 | Counsel letter transmitting and explaining invoices. | MCCOY-MICHAEL-D. | TATSUMI-HISAO | SUGIMOTO-TAI, LINKER-RAYMOND-O.-JR. |
| RCLPriv-052 | 2/1/1988 | 1 | Client letter requesting clarification of invoices. | TATSUMI-HISAO | MCCOY-MICHAEL-D | |
| RCLPriv-053 | 1/20/1988 | 2 | Counsel letter commenting upon invoices. | MCCOY-MICHAEL-D | TATSUMI-HISAO | SUGIMOTO-TAI, TATSUMI-HISAO, MCCOY-MICHAEL-D |
| RCLPriv-054 | 1/14/1988 | 2 | Counsel letter re application and assignment documents. | LINKER-RAYMOND-O.-JR. | MATSUMURA-S. | MATSUMURA-S., SUGIMOTO-TAI, LINKER-RAYMOND-O.-JR. |
| RCLPriv-055 | 12/26/1987 | 1 | Handwritten client note to counsel re application, in English and Japanese. | INTERNATIONAL-CHIP-CORPORATION, RICOH-COMPANY, LTD. | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-056 | 12/23/1987 | 2 | Counsel letter re application and assignment documents. | LINKER-RAYMOND-O.-JR. | SHINDO-MASAHIRO | |
| RCLPriv-057 | - | 1 | Handwritten counsel notes re instructions for joint assignment. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-058 | 12/22/1987 | 2 | Counsel letter re application, assignment and drawings. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI, KOBAYASHI-HIDEAKI | |
| RCLPriv-059 | - | 1 | Draft drawing from client to counsel. | RICOH COMPANY, LTD. | | TATSUMI-HISAO, SUGIMOTO-TAI |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co., Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-060 | - | 3 | Draft drawings from client to counsel. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-061 | 12/8/1987 | 21 | Draft drawings and illustrations from client to counsel with handwritten notes of counsel. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-062 | 12/8/1987 | 16 | Portions of an outline of draft specification from client. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-063 | 12/17/1987 | 11 | Client letter re application and forwarding information re flowchart editor, with handwritten counsel annotations. | SUGIMOTO-TAI | LINKER-RAYMOND-O.-JR. | |
| RCLPriv-064 | 12/15/1987 | 2 | Counsel letter forwarding draft claims. | MCCOY-MICHAEL-D | MATSUMURA-S., SUGIMOTO-TAI | LINKER-RAYMOND-O.-JR. |
| RCLPriv-065 | 12/15/1987 | 3 | Draft claims prepared by counsel and forwarded to client. | MCCOY-MICHAEL-D | | |
| RCLPriv-066 | - | 38 | Draft specification with attorney notes. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-067 | 7/1/1988 | 1 | USPTO notice of recordation of assignment, with handwritten attorney notes. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-068 | - | 1 | Back page of file wrapper with attorney notes. | BELL-SELTZER-PARK-&-GIBSON | | |
| RCLPriv-069 | 3/16/1995 | 2 | Counsel letter enclosing name change certificate from ICC to Knowledge Based Silicon Corporation and reporting recordation of assignment for U.S. Patent 5,218,669 from inventors to ICC & Ricoh. | LINKER-RAYMOND-O.-JR. | NAKAMURA-ISAO | KOBAYASHI-HIDEAKI |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-070 | 1/27/1992 | 5 | Counsel letter enclosing Certificate of Correction for '432 patent with Certificate of Correction for '432 patent w/ markings. | LINKER-RAYMOND-O.-JR. | KOBAYASHI-HIDEAKI | MATSUMURA-SADAO |
| RCLPriv-071 | 9/17/1990 | 2 | Counsel letter transmitting '432 patent, noting printing errors, giving legal advice, with client notations. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-SADAO |
| RCLPriv-072 | 4/10/1990 | 1 | Counsel letter transmitting Issue Fee Receipt for '432 patent and advising re patent issuance. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-SADAO |
| RCLPriv-073 | 4/10/1990 | 1 | Counsel letter transmitting Issue Fee Receipt for '432 patent and advising re patent issuance. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-SADAO |
| RCLPriv-074 | 4/19/1989 | 18 | Counsel letter transmitting amendment dated 4/18/89 and legal advice, with client markings (second page missing), with Amendment dated 4/18/89, w/ markings. | BELL-SELTZER-PARK-&-GIBSON | MATSUMURA-SADAO | |
| RCLPriv-075 | 3/24/1989 | 1 | Fax re response to patent application rejection by PTO. | SUGIMOTO-TAI | ARIMA-Y. | |
| RCLPriv-076 | 1/27/1989 | 2 | Counsel letter transmitting Office Action dated 1/18/89 and legal advice, client notations. | LINKER-RAYMOND-O.-JR. | MATSUMURA-SADAO | SUGIMOTO-TAI, KOBAYASHI-HIDEAKI |
| RCLPriv-077 | 3/15/1988 | 1 | Counsel letter transmitting Official Filing Receipt, w/ client notations | LINKER-RAYMOND-O.-JR. | MATSUMURA-SADAO | SUGIMOTO-TAI, TATSUMI-HISAO, MCCOY-MICHAEL-D |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-078 | 1/14/1988 | 55 | Counsel letter transmitting application and assignment documents as forwarded to USPTO on 1/13/88, w/ advice re next steps in application process, w/ client markings, with application as forwarded to USPTO on 1/13/88, w/ markings | LINKER-RAYMOND-O.- JR. | MATSUMURA- SADAO | SUGIMOTO-TAI, TATSUMI HISAO, MCCOY-MICHAEL- D |
| RCLPriv-079 | 5/21/2001 | 2 | Letter between co-owners of '432 patent pursuant to advice of counsel re Ricoh purchase of KBS' right to patents in 4/1/01 agreement. | NONAKA-TERUMOTO | BERSHADER-BRIAN | KOBAYASHI-HIDEAKI, NAKAYAMA-H. |
| RCLPriv-080 | 5/7/2001 | 2 | Letter between co-owners of '432 patent pursuant to advice of counsel re Ricoh's purchase of patents & amendment to Agreement Regarding Jointly Owned Patents. | NAKAYAMA-HARUO | KOBAYASHI- HIDEAKI | BERSHADER-BRIAN |
| RCLPriv-081 | 4/30/2001 | 5 | E-mail thread between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents and discussing legal strategy and advice of counsel | TAKADA-TAKAHEI | BERSHADER-BRIAN | NAKAYAMA-HARUO |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-082 | 3/22/2001 | 1 | E-mail between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents and discussing legal strategy and advice of counsel | BERSHADER-BRIAN | TAKADA-TAKAHEI | NAKAYMA-HARUOMA-HARUO |
| RCLPriv-083 | 3/9/2001 | 15 | Draft of Ricoh-KBSC agreement between co-owners of '432 patent pursuant to advice of counsel regarding jointly-owned patents | RICOH, KBS | | |
| RCLPriv-084 | 3/9/2001 | 1 | E-mail thread between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | BERSHADER-BRIAN NAKAYAMA-HARUO | |
| RCLPriv-085 | 3/9/2001 | 14 | Draft of Ricoh-KBSC agreement between co-owners of '432 patent pursuant to advice of counsel regarding jointly-owned patents | RICOH, KBS | | |
| RCLPriv-086 | 1/30/2001 | 2 | E-mail thread between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents and discussing legal strategy and advice of counsel | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | SUEOKA-GREG, KOBAYASHI-HIDEAKI |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co., Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-087 | 1/20/2001 | 1 | E-mail between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | NAKAYAMA-HARUO | TAKADA-TAKAHEI |
| RCLPriv-088 | 1/17/2001 | 11 | Draft of Ricoh-KBSC agreement between co-owners of '432 patent pursuant to advice of counsel regarding jointly-owned patents | KBS | | |
| RCLPriv-089 | 12/13/2000 | 1 | E-mail between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | KOBAYASHI-HIDEAKI |
| RCLPriv-090 | 12/1/2000 | 10 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents and discussing legal strategy and advice of counsel | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | KOBAYASHI-HIDEAKI |
| RCLPriv-091 | 12/10/2000 | 11 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents and discussing legal strategy and advice of counsel | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | KOBAYASHI-HIDEAKI |
| RCLPriv-092 | 10/12/2000 | 1 | E-mail thread re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | NAKAYAMA-HARUO | TAKADA-TAKAHEI | |

2116549

Ricoh Co., Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-093 | 10/6/2000 | 1 | E-mail thread re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | NAKAYAMA-HARUO | TAKADA-TAKAHEI | |
| RCLPriv-094 | 9/13/2000 | 1 | E-mail re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | BERSHADER-BRIAN | KOBAYASHI-HIDEAKI, NAKAYAMA-HARUO, NOYAMA-TOMONORI |
| RCLPriv-095 | 9/13/2000 | 10 | Draft of Ricoh-KBSC agreement between co-owners of '432 patent pursuant to advice of counsel regarding jointly-owned patents | TAKADA-TAKAHEI | BERSHADER-BRIAN | KOBAYASHI-HIDEAKI, NAKAYAMA-HARUO, NOYAMA-TOMONORI |
| RCLPriv-096 | 8/9/2000 | 1 | E-mail between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents | BERSHADER-BRIAN | TAKADA-TAKAHEI, NAKAYAMA-HARUO, NOYAMA-TOMONORI | KOBAYASHI-HIDEAKI |
| RCLPriv-097 | 7/21/2000 | 9 | Draft of Ricoh-KBSC agreement between co-owners of '432 patent pursuant to advice of counsel regarding jointly-owned patents | BERSHADER-BRIAN | TAKADA-TAKAHEI, NAKAYAMA-HARUO, NOYAMA-TOMONORI | KOBAYASHI-HIDEAKI |
| RCLPriv-098 | 7/21/2000 | 2 | E-mail between co-owners of '432 patent pursuant to advice of counsel re negotiation of Ricoh-KBSC agreement regarding jointly-owned patents and discussing legal strategy and advice of counsel | TAKADA-TAKAHEI | KOBAYASHI-HIDEAKI | NONAKA-TERUMOTO, NAKAYAMA-HARUO |
| RCLPriv-099 | 7/21/2000 | 9 | Draft of Ricoh-KBSC agreement regarding jointly-owned patents | TAKADA-TAKAHEI | KOBAYASHI-HIDEAKI | NONAKA-TERUMOTO, NAKAYAMA-HARUO |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

Ricoh Co. Ltd.'s Supplemented Privilege Log, July 19, 2006, pursuant to Judge Chen's July 5, 2006 Order. As revised on August 1, 2006.

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| RCLPriv-100 | Deleted | Deleted | Deleted | Deleted | Deleted | Deleted |
| RCLPriv-101 | Deleted | Deleted | Deleted | Deleted | Deleted | Deleted |
| RCLPriv-102A | 12/9/1987 | 2 | Minutes of meeting on 12/7/87 re ICC/Ricoh patent applications, discussing legal strategy and reciting advice of counsel. Attendees: Kobayashi, Sugimoto, Shindo, Suehiro, Tatsumi. | KOBAYASHI-HIDEAKI, SHINDO-MASAHIRO, SUGIMOTO-TAI | | |
| RCLPriv-102B | 12/9/1987 | 2 | Memo to counsel re 12/8/87 meeting re ICC/Ricoh patent applications, discussing legal strategy and reciting advice of counsel. Attendees: McCoy, Linker, Kobayashi, Sugimoto, Tatsumi, Suehiro, Shindo. | KOBAYASHI-HIDEAKI, SHINDO-MASAHIRO, SUGIMOTO-TAI | MCCOY-MICHAEL-D., LINKER-RAYMOND-O-JR., BELL-SELTZER-PARK-&-GIBSON | |
| RCLPriv-103 | Deleted | Deleted | Deleted | Deleted | Deleted | Deleted |
| RCLPriv-104 | 1/30/2001 | 2 | E-mail thread between co-owners of 432 patent pursuant to advice of counsel re KBS & Synopsys correspondence, irrelevant matters, and discussing legal strategy and advice of counsel | BERSHADER-BRIAN | NAKAYAMA-HARUO, TAKADA-TAKAHEI | SUEOKA-GREG, KOBAYASHI-HIDEAKI |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2116549

EXHIBIT 3

KBSC Privilege Log, July 28, 2006

| Privilege Number | Date | Pages | Description | Author | Recipient | Copyee |
|---|---|---|---|---|---|---|
| KBSCPriv-001 | 10/26/1987 | 1 | Counsel letter to client forwarding copies of patents selected by counsel and offering legal advice. | MCCOY-MICHAEL-D, BELL-SELTZER-PARK-&-GIBSON | SUGIMOTO-TAI, INTERNATIONAL-CHIP-CORPORATION | |
| KBSCPriv-002 | 3/3/1989 | 14 | Client memo to counsel responding to examiner's office action. | KOBAYASHI-HIDEAKI | LINKER-RAYMOND-O.-JR. | |
| KBSCPriv-003 | 3/30/1989 | 5 | Client letter to counsel responding to 3/10/89 letter re KBSC and references. | KOBAYASHI-HIDEAKI | LINKER-RAYMOND-O.-JR. | |
| KBSCPriv-004 | 12/10/1987 | 4 | Counsel letter to clients summarizing his discussions with them re knowledge based silicon compiler. | MCCOY-MICHAEL-D. | SUGIMOTO-TAI, TATSUMI-HISAO | |
| KBSCPriv-005 | 11/27/1987 | 1 | Letter re preparation of KBSC patent application & planning a Ricoh-ICC meeting re KBSC patent application. | SHINDO-AKIHIRO | KOBAYASHI-HIDEAKI | BABA-J; PATENT-DEPT.; MATSUMURA-B; OGAWA-B; NAKAYAMA-B; TATSUMI-KK; NAKAYAMA-K; SUEHIRO-SN |
| KBSCPriv-006 | 11/15/1989 | 1 | Counsel letter enclosing recently filed response and commenting upon examiner interview. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | MATSUMURA-S. |
| KBSCPriv-007 | Undated | 7 | Draft of client memo to counsel responding to examiner's office action. | KOBAYASHI-HIDEAKI | | |
| KBSCPriv-008 | 12/18/1987 | 45 | Client letter to counsel forwarding sections of patent application draft and commentary. | SUGIMOTO-TAI | LINKER-RAYMOND-O.-JR. | |
| KBSCPriv-009 | 3/10/1989 | 2 | Counsel letter to client analyzing examiner office action. | LINKER-RAYMOND-O.-JR. | SUGIMOTO-TAI | |
| KBSCPriv-010 | 9/17/1990 | 2 | Counsel letter transmitting '432 patent, giving legal advice. | LINKER-RAYMOND-O.-JR., BELL-SELTZER-PARK-&-GIBSON | SUGIMOTO-TAI, INTERNATIONAL-CHIP-CORPORATION | MATSUMURA-SADAO |
| KBSCPriv-011 | 1/2/1990 | 1 | Counsel letter to client re new drawings to be forwarded to USPTO. | LINKER-RAYMOND-O.-JR., BELL-SELTZER-PARK-&-GIBSON | SUGIMOTO-TAI, INTERNATIONAL-CHIP-CORPORATION | MATSUMURA-SADAO |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2121316

KBSC Privilege Log, July 28, 2006

| ID | Date | # | Description | From | To | CC |
|---|---|---|---|---|---|---|
| KBSCPriv-012 | 11/15/1989 | 1 | Counsel letter enclosing recently filed response and commenting upon examiner interview | LINKER-RAYMOND-O.-JR., BELL-SELTZER-PARK-&-GIBSON | SUGIMOTO-TAI, INTERNATIONAL-CHIP-CORPORATION | MATSUMURA-SADAO |
| KBSCPriv-013 | 4/19/1989 | 2 | Counsel letter of transmittal of amendment, with legal advice. | LINKER-RAYMOND-O.-JR., BELL-SELTZER-PARK-&-GIBSON | MATSUMURA-SADAO, RICOH COMPANY, LTD. | SUGIMOTO-TAI |
| KBSCPriv-014 | 1/14/1988 | 2 | Counsel letter re application and assignment documents. | LINKER-RAYMOND-O.-JR., BELL-SELTZER-PARK-&-GIBSON | MATSUMURA-SADAO, RICOH COMPANY, LTD. | SUGIMOTO-TAI, TATSUMI-HISAO, MCCOY-MICHAEL-D |
| KBSCPriv-015 | 3/3/1989 | 8 | Client memo to counsel responding to examiner's office action. | KOBAYASHI-HIDEAKI, INTERNATIONAL-CHIP-CORPORATION | LINKER-RAYMOND-O.-JR., BELL-SELTZER-PARK-&-GIBSON | |

All Documents Listed are Withheld Pursuant to Attorney-Client Privilege and/or Work-Product Exception

2121316

EXHIBIT 4



525 Market Street
Suite 3600
San Francisco, CA 94105-2708
**T** 415.848.4900
**F** 415.848.4999
www.howrey.com

July 20, 2006

Direct Dial 415.848.3221
File 06816.0060

**VIA EMAIL**

Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526

> Re:    ***Synopsys v. Ricoh Company, Ltd.,***
> **Case No. C03-2289 MJJ (EMC)**
> ***Ricoh Company, Ltd. v. Aeroflex, Inc., et al.,***
> **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

We have reviewed Ricoh's supplemental privilege log. Unfortunately, it confirms our fears that Ricoh has been improperly shielding relevant documents under the guise of privilege. Furthermore, we are concerned that certain documents required to be logged have been left off the log.

On the face of the log, documents 79-91, 94-102, and 104 are not privileged. With the exception of document 102, these are documents that reflect, as author, recipient and/or copyee, people on opposite sides of a negotiating table — either Ricoh and KBS, or Ricoh and TI. There can be no conceivable privilege in such documents — joint defense privilege cannot apply to parties who are adversarial. Please provide us with these documents in full and unredacted form.

As for document 102, it appears from the description and the authorship to contain mostly (if not exclusively) non-privileged information. Although Mr. Linker is an attorney and may have provided legal advice at the 12/8/87 meeting, it would seem that such legal advice could be redacted from the overall document, especially given that no attorneys attended the 12/7/87 meeting. Please provide us with a copy of this document, redacted if necessary, or at least the minutes from the 12/7/87 portion of the meeting.

These improperly-withheld privileged documents are very relevant to the issues in this case, as you well know. The value Ricoh, KBS/ICC, and TI placed on the '432 patent goes directly to damages issues, and the inventors' pre-filing understanding of the scope of the invention goes to validity issues. We therefore anticipate requiring additional depositions of Mr. Bershader and Mr. Takada, as well as Dr. Kobayashi. (As per our agreement, we will defer further discussion of Dr. Kobayashi's deposition until all KBSC documents are produced.) We note that the KBSC documents produced yesterday (and likely others to come) also require additional questioning of Mr. Bershader and Mr. Takada.

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

DM_US\8362061.v1

Kenneth Brothers
July 20, 2006
Page 2

In addition to problems with what is contained on the log, we have concerns about what it not on the log. The second sentence of Paragraph 1.b. of the Stipulated Order requires Ricoh to log documents "that contain factual information (including documents) obtained from interviews with any third part(ies) . . . even if such factual information is contained within communications exclusively between Ricoh and Ricoh's counsel." However, no such documents except the Takada memo appear on Ricoh's supplemental privilege log. It is highly unlikely that the Takada memo on Shindo is the only such document — for instance, we are aware that Ricoh's counsel spoke with Simon Foo prior to the filing of the complaint, and it almost certainly spoke with Dr. Kobayashi, Mr. Davis, and Mr. Bershader and likely others prior to filing. Ricoh and its counsel almost certainly have documents that contain factual information derived from interviews with these third parties, and these documents must be logged pursuant to the Stipulated Order.

A non-exhaustive list of documents that we expect exist, but which have neither been produced nor placed on the privilege log include: pre-filing e-mails/letters between Ricoh and third parties; pre-filing e-mails/letters between DSMO and third parties; internal DSMO e-mails/memoranda/notes containing facts derived from interviews with third parties; and e-mails/letters between DSMO and Ricoh containing facts derived from interviews with third parties. A non-exhaustive list of third parties for whom we expect information exists include Dr. Kobayashi, Mr. Shindo, Mr. Hashimoto, Mr. Davis, Mr. Bershader, Mr. Foo, and Mr. Linker.

Please let us know when you are available to meet and confer on these issues. Given Judge Chen's requirement for a thorough meet and confer, please be prepared to explain to us precisely the privilege theory under which Ricoh is withholding the documents noted above, and whether Ricoh has specifically searched for all the documents required to be logged under the second sentence of Paragraph 1.b. of the Stipulated Order. If we fail to reach agreement on these issues, we intend to bring this matter to the Court for resolution and seek our attorneys fees for doing so (as well as for the fees associated with any additional depositions).

Sincerely,

Ethan B. Andelman

EBA:grc

EXHIBIT 5

**DICKSTEIN**SHAPIRO LLP

1825 Eye Street NW | Washington, DC 20006-5403
TEL (202) 420-2200 | FAX (202) 420-2201 | dicksteinshapiro.com

July 21, 2006

**Via PDF**

Ethan Andelman, Esq.
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708

      Re:    Ricoh v. Aeroflex, et al.
             Synopsys v. Ricoh

Dear Ethan:

We respond to your letter of July 20, 2006, regarding Ricoh's privilege log. Your letter has a number of incorrect assumptions. For example, you assume that the Ricoh log is incomplete because it does not log the documents from the KBSC boxes. As I explained to Denise De Mory and Henry Su on Wednesday, and as Mike Weinstein recounted in his July 19, 2006 declaration, the KBSC log will be served no later than July 28, 2006.

With regard to items 79-91, 94-99 and 104, you incorrectly claim that there can be no common interest between Ricoh and KBSC. As you know, Ricoh and KBSC were co-owners of the '432 patent, and that co-ownership created a common interest. The logged documents reflect discussions between co-owners of the '432 patent in connection with potential litigation to enforce the patent. As such, those documents are protected by common interest doctrine.

With regard to item numbers 100 and 101, these are two unsigned versions of the TI-Ricoh license. The documents themselves do not identify them as having been received from TI, and we are attempting to verify whether the description to this effect on the log is in fact accurate. If we confirm that these documents were obtained from TI, then we will produce them to you. Otherwise, we will clarify the description on the log.

With regard to item 102, these are two memos regarding the application of what would become the '432 patent. The first memo reflects the agreements of the co-inventors regarding the patent prosecution, and was prepared for purposes of communicating with their common counsel, and is protected by the attorney-client privilege. The second memo reflects a meeting the next day between counsel and clients, and likewise is protected by the attorney-client privilege.

Although you assert that the Stipulated Order requires the logging of all documents that contain factual information obtained during interviews with third parties, we note that your firm has to date declined to provide any such log of its interviews with third parties, such as the individuals mentioned in your letter, or any other third parties. The Stipulated Order was deliberately

**DICKSTEIN**SHAPIRO<sub>LLP</sub>

Ethan Andelman
July 21, 2006
Page 2

written to apply to all parties and their counsel.  We are prepared to discuss a mutual exchange of logs for those documents, but you must first reaffirm your intent to comply with that provision.

Sincerely,

Kenneth W. Brothers
(202) 420-4128
brothersk@dicksteinshapiro.com

2

EXHIBIT 6



525 Market Street
Suite 3600
San Francisco, CA 94105-2708
**T** 415.848.4900
**F** 415.848.4999
www.howrey.com
Direct Dial 415.848.3221
File 06816.0060.000000

July 25, 2006

**VIA PDF AND FIRST CLASS MAIL**

Kenneth W. Brothers, Esq.
Dickstein Shaprio Morin & Oshinsky LLP
1825 Eye Street, NW
Washington, DC 20006

> **Re:** **_Synopsys v. Ricoh Company, Ltd.,_**
> **Case No. C03-2289 MJJ (EMC)**
> **_Ricoh company, Ltd., v. Aeroflex, Inc., et al._**
> **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

I write regarding your July 21, 2006 letter concerning Ricoh's supplemental privilege log.

I am not sure where you divine that we "assume the Ricoh log is incomplete because it does not log the documents from the KBSC boxes." We never said that. Ricoh would be best served by addressing the serious issues we have raised, not addressing its own straw men in an misguided attempt to deflect its own misdeeds.

Although you creatively recharacterize documents 79-91, 94-99 and 104 as "discussions between co-owners of the '432 patent in connection with potential litigation to enforce the patent," the descriptions placed on Ricoh's log demonstrate that there is no common interest privilege here. These documents reflect Ricoh's purchase of KBSC's interest in the '432 patent, and the negotiations between the parties — the very antithesis of a common interest. In the absence of an applicable privilege, these documents must be produced.

In addition, the log provided notes that Texas Instruments is an author of documents 100-101. You apparently agree that the description placed on the log requires production of the documents, but suggest that the description is inaccurate. We find it unlikely that your description is inaccurate; rather, it appears that you are trying to find a way to continue to withhold these documents.

You suggest that the first memo contained in document 102 was "prepared for purposes of communication with [the inventors'] common counsel." But the log does not reflect that this memo was ever provided to counsel. In any event, a transcribed meeting between two non-attorneys to discuss what to say to their joint counsel is simply not covered by privilege, even if it does find its way into counsel's hands — there is no "mulling-it-over" exception to the requirement that attorney-client privilege be actual communication with counsel.

As to the second memo in document 102, dated 12/8/87, we need more information than you have provided to adequately determine if you have properly withheld this document. What was the purpose of the meeting? Was Mr. Linker the only attorney present at that meeting? Was he present for all discussions that day? Who is Mr. McCoy? Did anyone receive a copy of the memo?

Finally, as to the scope of the Stipulated Order, Paragraph 1 very clearly places the obligation solely on Ricoh to provide additional privilege logs. Ricoh appeared at the time to agree to this asymmetric obligation because it was limited only to pre-filing investigations, and, as you well know, neither Defendants nor Synopsys undertook a pre-filing investigation of the type Ricoh did, and indeed none of the defendants had knowledge of the patent before you filed your suit. Moreover, your objection that you are excused from complying with the Stipulated Order because our side has failed to log documents (that do not exist) rings as hollow now as it did when Judge Chen informed the parties in his June 23, 2006 order that "it is not a defense to argue that the other party is guilty of the same behavior." Ricoh must supplement its privilege log with the types of documents contained in my July 20, 2006 letter on this subject. At this point, based on your acknowledgement that the order requires this information but that you are deliberately not providing it allegedly because we have not provided such information appears to suggest that you are deliberately violating this Court order.

Please let me know when on Wednesday you are available for a meet and confer on this issue.

Sincerely,

Ethan B. Andelman

EBA:sg

EXHIBIT 7

# **DICKSTEIN**SHAPIRO LLP

1825 Eye Street NW | Washington, DC 20006-5403
TEL (202) 420-2200 | FAX (202) 420-2201 | dicksteinshapiro.com

July 31, 2006

**Via PDF**

Ethan Andelman, Esq.
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA  94105-2708

      Re:    Ricoh v. Aeroflex, et al.
             Synopsys v. Ricoh

Dear Ethan:

This letter summarizes the key points of our two-hour meet and confer on Friday afternoon.

**Privilege log issues:**  First, on Ricoh's assertion of the common interest documents regarding Ricoh's acquisition of the 50% KBSC interest, you agreed with me "any common interest is enough" to preserve the privilege, but you maintained that Ricoh's co-ownership of the '432 patent with KBSC, and their discussions on how to enforce the patent, was an insufficient common interest.  You advised me that you intended to move to compel, and will serve a joint letter Monday or Tuesday.

Second, on the two drafts of the Ricoh-TI agreement, based upon your agreement that the production of those documents would not be used by you as an argument of any waiver, I agreed to produce them, and they were sent to you on Friday evening.

Third, on the 12/8/87 memo memorializing the inventors' meeting preparing for the 12/9/87 meeting with the lawyers (both no. 102 on the log), I agreed that Ricoh would supplement the log to split the two documents into separate entries on the log.  You agreed that the 12/9/87 memo was privileged.  On the 12/8 document (102a), you claimed that it was not privileged and said you were considering moving to compel.

Fourth, on Ricoh's compliance with paragraph 1(b) of the protective order, re pre-filing documents, you are giving further consideration to my observation that the Kobayashi/Davis/Bershader communications were attorney-client privileged and need not be logged.  I also told you that I was not aware of any substantive pre-filing communications with any third parties except for the Takada memo re the Shindo memo.  Based upon your agreement that you will not argue waiver or seek further discovery of Mr. Takada or reserve any other rights based upon our production of the unredacted memo, it was produced to you on Friday.

Fifth, regarding each side's compliance with 1(c), re post-filing documents, your position was that 1(c) did not put either side under an affirmative obligation to disclose anything.  You are

**DICKSTEIN**SHAPIRO_LLP_

Ethan Andelman
July 31, 2006
Page 2

considering whether to insist that Ricoh log post-filing documents that contain factual information; you understand that if you take this position, we will cross move to have your clients do likewise.

Sixth, we discussed documents relating to attorneys' interviews with Foo. I advised you that our discussions with Foo were after the commencement of litigation, and thus were under paragraph 1(c). I questioned you about your claim of privilege of Foo documents, and you said that they were being withheld on work-product grounds. We do not understand how documents in Foo's possession can be work product. We intend to raise this on our portion of the joint letter on privilege issues.

**Weinstein declaration:** I explained to you that Mike had supervised and actively participated in the review of the 26 boxes, and that they used very broad criteria in determining what to copy. I gave you examples of those criteria. I explained why we were comfortable with the declaration, and noted that Judge Chen's clerk likewise saw no issues. We see no need for any further action. You threatened to raise this with the Court. You could not tell me whether you would in fact do so, and if you did, whether you would seek Mike's deposition. I advised you that, if you were seeking a deposition, while we have held off to date in seeking depositions of attorneys, we would likewise be seeking depositions of Denise DeMory and Jacky Fink. We agreed that we would have another meet and confer before raising this matter with the Court.

**Expert deposition schedule:** We tentatively agreed to the following schedule for Ricoh's experts:

Colianni: August 11, in Washington D.C. We decline your request to have this deposition in San Francisco.
Soderman: August 14 (infringement) and 15 (rebuttal), in Washington D.C.
Lipscomb: August 16, NYC. Note that August 18 is not available for the witness.
Loftus: August 17, NYC
Papaefthymiou: August 18, in Washington D.C.

You offered defendants' experts on the following dates:

Mitchell: August 4, location TBD. This date will not work for us. Would it be possible to schedule him for August 16 or 17 in either Pittsburg or DC?
Kowalski: August 7, Newark or maybe NYC if a half day. I will get back to you on this date.
Van Horn: Any time.
Casavant: After Soderman. Location TBD, but probably DC.
Wagner: August 21, in San Francisco. You and I agreed that neither party would claim any prejudice or otherwise seek to modify the schedule based upon this date.

We agreed that, if Ricoh decides not to depose defendants' experts, we will advise you no less than three days in advance.

2

**DICKSTEIN**SHAPIRO LLP

Ethan Andelman
July 31, 2006
Page 3

**Production of expert-related documents:**  You agreed to produce the Wagner exhibits and documents in native format.  Please confirm that all rebuttal expert material has been produced by your firm.  We likewise will provide such confirmation.

**Stipulation:**  I reminded you that the ball is in your court.  You said that you would discuss this with Denise, and that she would follow up.

**Howrey's belated production of documents:**  I noted how we had received a large volume of documents after the discovery cutoff, and requested further information.  You requested that I send you a letter setting forth my concerns.  I will forward that letter under separate cover.  However, Ricoh reserves all rights to object to any use of such documents or information by Synopsys or the ASIC defendants.

**Update re KBSC document review and production:**  I provided you with an update regarding the KBSC production, explaining that additional documents and a log would be sent to you, but that there may be some delays in Japanese documents and certain media.  In particular, I explained how our vendor had been unable to access the data from many of the old magnetic tapes.  You accepted my offer to have our consultant describe the tapes and what they had done to access them, and you or your vendor could provide any suggestions that they have as to other steps that could be tried.

Sincerely,

Kenneth W. Brothers
(202) 420-4128
brothersk@dicksteinshapiro.com

cc:  Howrey Distribution List

3

EXHIBIT 8

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
**T** 415.848.4900
**F** 415.848.4999
www.howrey.com
Direct Dial 415.848.3221
File 06816.0060.000000

July 31, 2006

**VIA PDF**

Kenneth W. Brothers, Esq.
Dickstein Shaprio Morin & Oshinsky LLP
1825 Eye Street, NW
Washington, DC 20006

> Re:  ***Synopsys v. Ricoh Company, Ltd.,***
> **Case No. C03-2289 MJJ (EMC)**
> ***Ricoh company, Ltd., v. Aeroflex, Inc., et al.***
> **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

I write to clarify certain issues that appear in your July 31 letter regarding our meet and confer last Friday.

You quote my statement that "any common interest is enough" out of context. That was made during the general discussion about the common interest privilege we had to make sure we agreed on the general law underlying the common interest privilege. It was not made in our discussion about the specific facts surrounding the documents on Ricoh's privilege log.

You further misunderstand our position as to why the documents are not privileged. Our position is not, as you state, that Ricoh's co-ownership of the '432 patent with KBSC is an insufficient common interest. Rather, it is that the privilege log does not reflect discussions about co-ownership and how to enforce the patent -- it reflects negotiations about purchase of KBSC's interest in the patent by Ricoh, which necessarily place KBSC and Ricoh in an adversarial (not a cooperative) relationship. Moreover, the common interest privilege only applies where the attorney-client privilege would apply if the two entities were a single entity. It does not appear that any of the withheld documents reflect attorney-client communications (for the same reasons I gave for document 102a, on which we do intend to move to compel). Please let me know if you require an additional meet and confer given this clarification of our position.

Also, I did not agree outright that document 102b (the 12/9/87 memo) is privileged. I said that, given your representation that the document reflects that it was sent to counsel, it is likely to be privileged. We await the revised privilege log to make our final determination.

The first time you raised any concern regarding the withholding of the documents listed on the Foo privilege log was at our meet and confer on Friday. I was not prepared to engage in a full meet and confer on this issue without any warning, and we do not believe a proper meet and

Kenneth W. Brothers, Esq.
July 31, 2006
Page 2

confer has occurred on this issue. Thus, if you plan to move on these documents, please let us know when you wish to discuss it.

On the Weinstein certification, after you told me the criteria you used in the initial relevance review, I asked whether you would comply with the request in our July 20, 2006 letter on this issue and place the criteria you used for the initial review (and told me orally) in a supplemental declaration. You refused to do so.

Finally, I will write separately on expert deposition scheduling.

Sincerely,

Ethan B. Andelman

EBA:sg