Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
Ethan B. Andelman (SBN 209101)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC.
and for Defendants AEROFLEX INCORPORATED,
AMI SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS, INC., MATROX INTERNATIONAL
CORP., MATROX TECH, INC., and
AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | Case No. C03-04669 MJJ (EMC) |
| Plaintiff, | Case No. C03-02289 MJJ (EMC) |
| vs. | **BRIEF IN OPPOSITION TO RICOH'S MOTION FOR A PROTECTIVE ORDER RE SUBPOENAS** |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC. | Judge: Hon. Edward M. Chen |
| Defendants. | |
| SYNOPSYS, INC., | |
| Plaintiff, | |
| vs. | |
| RICOH COMPANY, LTD., | |
| Defendant. | |

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
OPPOSITION TO MOTION FOR PROTECTIVE ORDER
DM_US\8379713.v1

## I.   INTRODUCTION

After doing everything in its power to prevent Synopsys and the Customer Defendants from obtaining relevant discovery from Ricoh during fact discovery, Ricoh continues its stonewalling tactics by seeking to prevent Synopsys and the Customer Defendants from obtaining relevant expert discovery from third parties wholly unaffiliated with Ricoh this time by filing a series of two frivolous discovery motions on the eve of the summary judgment deadline in this case.  Most telling, the subpoenas are not even contested by the third parties who were actually subpoenaed.  Only Ricoh, seizing the initiative to drive up its opponents' litigation costs, has bothered to challenge these subpoenas directed to third parties who have already indicated that they would comply.  Worse yet, Ricoh has made no effort to meet the "good cause" necessary to justify the issuance of a protective order.  The Court should deny Ricoh's motion for protective order and allow Synopsys and the Customer Defendants to proceed with collecting the subpoenaed documents from the third parties.  Further, because the subpoenas are entirely proper and legitimate expert discovery, and there is no good argument otherwise, the Court should award Synopsys and the Customer Defendants their fees incurred in responding to this motion pursuant to Rule 37.

## II.   STATEMENT OF FACTS

It has been a very busy summer in this case — trial is set for November 27, 2006.  As the Court is aware, fact discovery closed at the end of May, with motions to compel due by June 7, 2006. Opening expert reports were served on June 23, 2006.  Rebuttal expert reports were required to be served by July 24, and expert discovery closed on August 18, the same day that summary judgment motions were due to be filed.  Thus, the expert discovery period ran from June 23 until August 18, just under two months.

By agreement of the parties, expert discovery other than depositions largely occurred informally.  The parties agreed that expert document production would be informal, and would not even require explicit requests.  The parties agreed that each expert would produce draft reports, time records, correspondence with counsel, and several other categories of documents voluntarily days after the expert reports were served. (Declaration of Ethan B. Andelman in Support of Opposition to Ricoh's Motion for a Protective Order Re Subpoenas, ¶ 8.)  With regard to other categories, such as

1  articles published by the experts and prior expert testimony and reports, the parties agreed that they
2  would informally request those materials, if warranted, from the other side, and the materials would be
3  produced if they were in the possession of the expert.  If the publications and prior testimony was not
4  in the possession of the expert, the requesting party could subpoena such information.  (*Id.*, ¶ 9.)

5  Early on, the parties agreed that no expert depositions would be taken until after responsive
6  reports were served on July 24, 2006.  (*Id.*, ¶ 10.)  Ricoh refused to produce any of its experts for
7  deposition until the week before the August 18, 2006 cutoff.  (*Id.*, Ex. A.)  The first deposition of a
8  Ricoh expert — the deposition of Dr. Marios Papaefthymiou — was held on August 11, 2006.  (*Id.*,
9  Ex. B.)

10 Dr. Papaefthymiou is currently a professor at the University of Michigan who teaches classes
11 in, among other things, logic synthesis.  (*Id.*, Ex. C.)  He was previously a professor at Yale University,
12 and he was a teaching assistant while a doctoral student at MIT.  (*Id.*)  Dr. Papefthymiou's resume
13 indicates that he taught a course at Yale on computer organization and indicates that the "[c]ourse
14 material includes an instructional RISC microprocessor implemented in Verlilog."  Dr.
15 Papaefthymiou's resume also indicates that he taught a course at Yale on "Computer-Aided Design of
16 Integrated Circuits."  His resume also indicates that he taught a course at MIT on advanced algorithms
17 for the MIT Laboratory for Computer Science.  (*Id.*)

18 In his expert report, Dr. Papaefthymiou opined on the nature of RTL and the inputs to Design
19 Compiler, which is a critical issue in this case.  (*Id.*, ¶ 11.)  The crux of Dr. Papaefthymiou's
20 testimony is that the definition of RTL has changed over time, so that the term means something very
21 different today than it meant when the patent issued.  (*Id.*)  Of course, Synopsys and the Customer
22 Defendants disagree with this litigation-inspired opinion.  And, given that Dr. Papeafthymiou taught
23 courses on computer architecture as well as CAD systems (fundamental issues in this case), Synopsys
24 and the Customer Defendants suspect that the materials he used in teaching his classes may reveal how
25 litigation inspired Dr. Papaefthymiou's position really is.[1]

---

[1] A detailed description of the substantive issue raised by Dr. Papaefthymiou's testimony is contained in one of the summary judgment motions Synopsys and the Customer Defendants recently filed.  *See Synopsys* Dkt. No. 422.

While preparing for the deposition, Synopsys and the Customer Defendants noted that Dr. Papaefthymiou's resume indicated that he had prepared course materials and was currently teaching courses at the University of Michigan on "Logic Synthesis" and other relevant courses. (*Id.*, Ex. 3.) It was also discovered at this time that the link to the course materials for Dr. Papaefthymiou's course materials for his Logic Synthesis and other courses that he teaches at the University of Michigan was disabled. (*Id.*, ¶ 12.)

Having noted Dr. Papaefthymiou's course list, at his deposition, Dr. Papaefthymiou was asked about and testified regarding statements concerning the key issue in his report he makes while teaching his class:

> Q   In terms of the inputs to logic synthesis, do you discuss RTL in that context in the courses that you teach at the University of Michigan on logic synthesis?
> A   The input itself is not the focus. We talk about several kinds of algorithms and about the kinds of inputs that the algorithms would expect.
> Q   And is one of those kinds of inputs that you talk about RTL inputs?
> A   Yes, you could put it like that. **I'm not sure we put it in as explicit terms during a lecture**, but you could say that.
> Q   . . . When you discuss RTL or mention RTL in the context of your logic synthesis courses at the University of Michigan, do you offer any meaning as to what RTL is?
> A   I try to give examples. **I explain some of the issues with the terminology, and we just leave it there.**
> Q   And when you say some of the issues with the terminology, what do you mean?
> A   **Such as the fact that the term RTL has varied. The meaning of the term has not stayed fixed over time.** And the structural RTL from the '70s, from the '80s, the more high-level constructs, functional RTL, the '90s, and the more, you know, generic use of the term nowadays to describe descriptions of hardware systems.

(*Id.*, Ex. B at 52:6-53:12 (emphasis added).)

In order to determine whether Dr. Papaefthymiou actually does discuss RTL in this manner in his classes (which Synopsys and the Customer Defendants doubt), and in order to further discover other potential impeachment materials, on Monday, August 14, 2006, the business day after Dr. Papethymiou's deposition, Synopsys and the Customer Defendants sent Ricoh a letter requesting the production of Dr. Papethymiou's course materials, pursuant to the parties' agreement that no formal request would be necessary. (Brothers Decl., Ex. 1.) They also issued subpoenas to the three universities at which Dr. Papaefthymiou has taught or assisted in the teaching of courses, in case Dr. Papaefthymiou did not have control of these documents. (Brothers Decl., Exs. 2-4.) The sole purpose

-3-

of the document request and these subpoenas is to obtain evidence with which to impeach Dr. Papaefthymiou on his testimony above, and they are narrowly tailored to achieve that goal.

### III.  ARGUMENT

Rule 26(c) authorizes a court, on "good cause shown," to issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The burden is upon *the party seeking the order* to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (emphasis added). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992), quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986).

Ricoh has not shouldered its burden to show "good cause" for the requested protective order. Ricoh provides precious little evidence in support of its request,[2] let alone articulated reasoning. Ricoh sets forth six bases to "quash" the three subpoenas issued out of other Districts: (1) untimeliness under the scheduling order in this case; (2) lack of the Rule 45 "reasonable time for compliance"; (3) harassment of Ricoh's experts; (4) breath of the requests and burdensomeness to the third parties subpoenaed; (5) Dr. Papaefthymiou's supposed refusal to consent to the disclosure; and (6) that allowing this discovery will require a postponement of the schedule. None of these bases present "good cause" for the issuance of a protective order, and thus, the Court should deny Ricoh's request.[3]

#### 1.  Untimeliness

Ricoh's argument that the subpoenas are untimely is completely specious. As Ricoh notes, the subpoenas on their face seek information regarding Ricoh's *expert* Dr. Papaefthymiou, and the return dates of the subpoenas were set for August 18, 2006 — the last day of *expert* discovery. (*See, e.g.*,

---

[2] Ricoh only provides the attorney declaration of Kenneth Brothers. Synopsys and the Customer Defendants move to strike ¶¶ 11-14 of the Brothers Declaration as based upon hearsay, lacking personal knowledge, and relevance.

[3] Although the discussion below talks specifically about "subpoenas," the analysis is identical for the informal discovery requests sent to Ricoh pursuant to counsel's agreement.

*Synopsys* Dkt. No. 341.)  Given that the subpoenas were issued before the close of expert discovery and ordered the return of the documents prior to the close of expert discovery, they are timely.

Synopsys and the Customer Defendant concede that the subpoenas were served late in the expert discovery period.  However, this was largely due to the date chosen for Dr. Papaefthymiou's deposition.  Had Dr. Papaefthymiou testified earlier, the subpoenas would have issued earlier.  The time provided for expert discovery was approximately two months.  These subpoenas were served within that discovery period (albeit late in the period), and thus are timely.

### 2. **Rule 45 "reasonable time"**

As the Court is aware, on August 16, Ricoh brought Rule 45 motion to quash nearly identical to the present motion, which the Court denied due to lack of jurisdiction.  (*Synopsys* Dkt. No. 413.)  Yet Ricoh neglected to remove this Rule 45 argument from its brief.  As the Court has previously recognized, the Court does not have jurisdiction over this dispute under Rule 45, and so this argument cannot provide the "good cause" necessary to issue a protective order under Rule 26.

Even on the merits, though, Ricoh's "reasonable time" argument fails for the reasons set forth above.  The subpoenas issued as soon as the need for the information became apparent.  Under the circumstances, the time for response was reasonable.

### 3. **Harassment**

Ricoh complains that the requests made by Synopsys and the Customer Defendants were made solely to harass Dr. Papaefthymiou.  This is simple fiction, and is unsupported by any useful facts.  The requests were made in direct response to testimony given by Dr. Papaefthymiou, and seek information designed to impeach Dr. Papaefthymiou at trial.  This is not harassment; it is narrowly-tailored and specific discovery.  Notably, these are the only subpoenas Synopsys and the Customer Defendants have issued as a result of expert testimony — were they inclined to "harass" Ricoh's experts, similar requests would have issued for Ricoh's other experts.

### 4. **Burden and overbreadth**

Ricoh claims that the subpoenas are "unduly burdensome upon Ricoh, Dr. Papaefthymiou, and the targets of the subpoenas."  (Motion at 5:2-3.)  There is no support for this allegation.  Ricoh has not shown how either it or Dr. Papaefthymiou have *any* burden in responding to the subpoenas (because

they have none). And it appears that there is no undue burden placed on the universities — none have raised any objections of burden or overbreadth. (Andelman Decl., Exs. D-F.)[4] Ricoh simply cannot make these objections for the subpoenaed entities in a last-gasp attempt to stop discovery. *E.g., Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (a party "do[es] not have standing to quash the subpoenas on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds").

Ricoh attempts to shift the burden to Synopsys and the Customer Defendants to demonstrate the relevance of the information sought. Ricoh's assumption that relevance need be shown by Synopsys and the Customer Defendants is faulty. As noted above, "[t]he burden is upon ***the party seeking the order*** to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (emphasis added). In any event, Synospys and the Customer Defendants have shown relevance of the subpoenaed information, which may well contain information that would impeach Ricoh's expert witness.

### 5. **Dr. Papaefthymiou's alleged refusal to consent to disclosure**

MIT has informed Synopsys and the Customer Defendants that it will not produce documents until it has complied with the requirements of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g(b)(2). (Andelman Decl., Ex. F.) FERPA requires that a school notify a student in advance of compliance with a judicial order to release educational records of that student. *Id.* Notably, FERPA applies only to students, not teachers. *See Klein Ind. School Dist. v. Mattox*, 830 F.2d 576, 579 (5th Cir. 1987). Furthermore, the statute only requires notification to the student, not consent. *See Santamaria v. Dallas Ind. School Dist.*, 2006 U.S. Dist. LEXIS 33195, * 8 n.4 (N.D. Tex. 2006). ("A plain reading of FERPA makes clear that the judicial exception does not require the [educational institution] to wait for parental consent before releasing protected records and information; the [educational institution] need merely notify parents and students that a judicial order

---

[4] Ricoh claims in its moving papers and declaration that Synopsys and the Customer Defendants "refused" to provide this correspondence (the "objections") with Ricoh. This is not true — Ricoh never asked for this correspondence, so there was no "refusal" to provide it. Upon reviewing Ricoh's complaint, the correspondence was sent to Ricoh.

1 exists in advance of its compliance with such order.")  Thus, to the extent FERPA applies at all to the
2 subpoenas at issue, it only applies to the records of MIT, where Dr. Papaefthymiou was a graduate
3 student, and not to those of Michigan or Yale, where he was a professor.  Moreover, FERPA at most
4 only requires that Dr. Papaefthymiou be notified of the release of records, not that he consent to that
5 release.  Thus, his alleged objection to the production is irrelevant.[5]

6       Furthermore, it appears that Dr. Papaefthymiou posts his current course information on his
7 University of Michigan webpage, but those links are not presently active.  Certainly, if the information
8 has been publicly available in the past, Dr. Papaefthymiou cannot object to its production now.

9       6.    **Intent to delay**

10       Ricoh's final "good cause" argument has a huge gap in logic.  Ricoh alleges that the purpose of
11 this discovery is to delay the trial in this case, and therefore, the Court should prevent the discovery
12 from being taken.  This is silly, and completely unsupported.  How or why could or would the
13 production of potentially impeaching documents delay trial?

14       Even if Ricoh had a basis for its oft-repeated charge of delay (which it does not[6]), such an
15 intent on the part of Synopsys or the Customer Defendants would be no reason to prevent the timely
16 discovery of relevant information from third parties.  Any change in the trial schedule requires Court
17 approval; thus, the appropriate time for Ricoh to raise its concern about delay would be in the context
18 of such a motion.  An intent to seek a postponement of a schedule simply cannot constitute "good
19 cause" for issuing a protective order.

20 **IV.    CONCLUSION**

21       Rather than sit back and let third party discovery take its course, Ricoh has jumped in with a ill-
22 conceived (and unsupported) motion for protective order.  None of the grounds on which Ricoh seeks

---

[5] In any event, Ricoh has failed to provide any evidence of Dr. Papaefthymiou's objection to the production of these documents.

[6] Ricoh is tilting at windmills here, or (perhaps) trying to lay the foundation for ***Ricoh's*** eventual request to delay the trial on the pretext that the actions of Synopsys and the Customer Defendants require delay.  Delay has been Ricoh's stock in trade during the discovery process.  For instance, Ricoh failed to provide the bulk of the KBSC documents until August 7, and Ricoh is *still* withholding electronic media from KBSC which has unknown material contained on it.  So, even though the re-opening discovery could be justified given Ricoh's continuing failure to comply with its discovery obligations, Synopsys and the Customer Defendants have not sought such relief, and do not presently intend to do so.

1  to prevent the discovery from happening demonstrates "good cause" — indeed, none are even close.
2  Not only should the Court deny Ricoh's motion, it should award Synopsys and the Customer
3  Defendants their fees, pursuant to Rule 37, for having to respond to this baseless motion.

6  Dated: August 22, 2006                              HOWREY LLP

8                                                     By:   /s/ Ethan B. Andelman
                                                            Ethan B. Andelman
9                                                           Attorney for Plaintiff SYNOPSYS, INC.
                                                            and Defendants AEROFLEX
10                                                          INCORPORATED, AMI
                                                            SEMICONDUCTOR, INC., MATROX
11                                                          ELECTRONIC SYSTEMS, LTD.,
                                                            MATROX GRAPHICS INC., MATROX
12                                                          INTERNATIONAL CORP., MATROX
                                                            TECH, INC., and AEROFLEX
13                                                          COLORADO SPRINGS, INC.

-8-

**HOWREY LLP**

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
DM_US\8379713.v1