**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | No. C-03-2289 MJJ (EMC) |
| Plaintiff, | No. C-03-4669 MJJ (EMC) |
| v. | **ORDER RE JOINT LETTER OF AUGUST 10, 2006** |
| RICOH CO., LTD., | |
| Defendant. _____/ | **(Docket No. 402 in C-03-2289, Docket No. 539 in C-03-4669)** |
| RICOH CO., LTD., | |
| Plaintiff, | |
| v. | |
| AEROFLEX, et al., | |
| Defendants. _____/ | |

On August 10, 2006, the parties filed a joint letter regarding a discovery dispute over documents that either Ricoh or KBSC claims are privileged. There are two groups of documents: (1) "Negotiation Documents" (Nos. 79-91, 94-99, and 104 on Ricoh's privilege log, *see* Ex. 2) and (2) "Pre-Meeting Documents" (No. 102A on Ricoh's privilege log, *see* Ex. 2, and No. 5 on KBSC's privilege log). The Court hereby **GRANTS** in part and **DENIES** in part the request that the documents be produced.

///

///

///

1. <u>"Negotiation Documents"</u>

Ricoh and KBSC were once co-owners of the patents at issue. On April 1, 2001, the parties entered into an assignment agreement in which Ricoh purchased KBSC's rights to the patents. The actual transfer appears to have taken place later. *See* Joint letter at 10.

With the exception of No. 104, the Negotiation Documents consist of (1) drafts of the assignment agreement or (2) communications that took place both before and after the assignment agreement was signed on April 1, 2001 (*e.g.*, letters, e-mails). None of the documents -- including the draft assignment agreements -- were authored by counsel. Nor were any of the documents received by counsel. Instead, as described in Ricoh's privilege log, the documents are (1) drafts assignment agreements authored by Ricoh and/or KBSC employees or (2) communications between Ricoh and KBSC employees about (a) Ricoh's purchase of KBSC's right to the patents or (b) negotiations of the assignment agreement. Most of the documents are described as made "pursuant to advice of counsel." In addition, some state that they "discuss[] legal strategy and advice of counsel." Ricoh asserts that the documents are protected by the common interest privilege.

Synopsys and the Customer Defendants (collectively, "Defendants") are correct in arguing that the common interest privilege is not separate from the attorney-client privilege but rather is an exception to waiver of the attorney-client privilege. Under the attorney-client privilege, it is a general rule that attorney-client communications made "in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." 1 Paul R. Rice, Attorney-Client Privilege in the United States § 4:35, at 195 (1999 ed.). However, there is an exception to this rule. Participants in a joint or common defense or individuals with a community of interests

> may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney.

*Id.* at 192; *see also United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003) (discussing "the common interest exception to waiver of the attorney-client/work product privilege").

Therefore, for the common interest privilege to apply, Ricoh must first demonstrate that the attorney-client privilege is applicable.

The Ninth Circuit has described the elements of the attorney-client privilege as follows: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The burden is on Ricoh to establish all the elements of the privilege. *See id.* at 999-1000.

As indicated above, one of the key elements for the attorney-client privilege to obtain is that the communication was made for the purpose of seeking legal advice. For most of the documents at issue, Ricoh includes as part of its description one of the following phrases: "pursuant to advice of counsel" or "discussing legal strategy and advice of counsel." Two of the documents, however, do not contain either phrase or any other phrase that would link the documents to legal advice. Therefore, the Court orders that these documents -- more specifically, Nos. 94 and 99 on the Ricoh privilege log -- be produced.

For those documents that are linked to legal advice through one of the two phrases above, the Court takes note of Defendants' argument that, because Ricoh failed in its original privilege log to use such qualifiers, the belated inclusion of the qualifiers in the supplemental privilege log should be questioned. The Court, however, need not conduct an in camera review as requested. Reliance on the phrase "pursuant to the advice of counsel" is not a talisman which automatically invokes the privilege. In contrast to a document which describes or summarizes substantive advice of counsel, a claim that a document is something that was drafted "pursuant to advice of counsel" is amorphous. Documents such as a contract (and exchange of offers and counteroffers), patent application, demand letter, etc. are typically drawn "pursuant to advice of counsel." But they are not therefor privileged. Only the communications between client and attorney (or perhaps documents memorializing or describing such communications) themselves are privileged.

3

Even if Ricoh's assertion held legal merit, the Court finds that the documents at issue (except for No. 104) must be produced because Ricoh has failed to establish that it did not waive the privilege, *i.e.*, that the common interest exception to waiver is applicable. "The common interest privilege . . . applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003). According to Ricoh, the common interest that it shared with KBSC, at least up until the time that the patent rights were transferred, was the interest (as co-owners) in enforcement of the patents at issue. But if that is the common interest, then Ricoh has failed to demonstrate that the documents at issue were designed to *further* that common interest. The documents as described (except for No. 104) say nothing about enforcement of the patents; rather, they are about the assignment agreement and negotiations related to that agreement. Ricoh fails to explain how documents related to negotiations about transferring and the actual transferring of patent rights were in furtherance of the common interest in enforcement of the patents -- this despite the fact that Ricoh has had two opportunities to refine its privilege log. Accordingly, the Court orders that the remaining Negotiation Documents, except for No. 104, be produced.[1]

With respect to No. 104, there is a prima facie case that the common interest privilege might apply. The document is dated well before the assignment agreement and is described as communications made "pursuant to advice of counsel re KBS[C] & Synopsys correspondence, irrelevant matters, and discussing legal strategy and advice of counsel." Ex. 2. Ricoh shall produce this document for *in camera* review by August 31, 2006.

---

[1] The Court need not address here whether parties negotiating at arms' length can ever have a common interest such that the common interest privilege could be applicable. *Compare SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 512-13 (D. Conn. 1976) (holding that antitrust analysis shared by Xerox with its joint venturer Rank during negotiations between Xerox and Rank was not a matter of common legal interest: "Rank's interest in the negotiations does not appear to be that of a potential codefendant in a possible antitrust action[;] [r]ather, it was negotiating the price for relinquishing voting and managerial control in Rank-Xerox to its formerly equal partner"), *with Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) (Brazil, J.) (indicating that Bausch & Lomb had a common legal interest with GEC, a third party interested in buying one of Bausch & Lomb's divisions, such that Bausch & Lomb's disclosure of an opinion letter to GEC did not constitute waiver).

2. <u>"Pre-Meeting Documents"</u>

The documents at issue here are No. 102A on Ricoh's privilege log and No. 5 on KBSC's privilege log. With respect to No. 102A, the Court finds that there is a prima facie case that the document is protected by the attorney-client privilege. This document shall be produced for *in camera* review by August 31, 2006.

As for No. 5, the Court concludes that it should be produced. There is nothing in the description of the document that suggests it embodies or describes communications between client and attorney.

This order disposes of Docket No. 402 in C-03-2289 and Docket No. 539 in C-03-4669.

IT IS SO ORDERED.

Dated: August 28, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

5