1  Teresa M. Corbin (SBN 132360)
   Denise M. De Mory (SBN 168076)
2  Jaclyn C. Fink (SBN 217913)
   HOWREY LLP
3  525 Market Street, Suite 3600
   San Francisco, California 94105
4  Telephone: (415) 848-4900
   Facsimile: (415) 848-4999
5
   Attorneys for Plaintiff SYNOPSYS, INC.
6  and for Defendants AEROFLEX INCORPORATED,
   AMI SEMICONDUCTOR, INC., MATROX
7  ELECTRONIC SYSTEMS, LTD., MATROX
   GRAPHICS, INC., MATROX INTERNATIONAL
8  CORP., MATROX TECH, INC., and
   AEROFLEX COLORADO SPRINGS, INC.
9
                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                         SAN FRANCISCO DIVISION
12

| | |
|---|---|
| RICOH COMPANY, LTD., | Case No. C03-04669 MJJ (EMC) |
| Plaintiff, | Case No. C03-02289 MJJ (EMC) |
| vs. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLAINTIFFS** |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC. | |
| Defendants. | **[Summary Judgment Motion No. 3]**<br><br>Date: September 26, 2006<br>Time: 9:30 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Martin J. Jenkins |
| SYNOPSYS, INC., | |
| Plaintiff, | |
| vs. | |
| RICOH COMPANY, LTD., | |
| Defendant. | |

**HOWREY LLP**

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS
DM_US\8384082.v2

**TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ........................................................................................................................1

II. ARGUMENT ..............................................................................................................................3

    A.    Dr. Foo is a *joint* inventor of the '432 patent, even if he is not the *sole* inventor. ......................................................................................................................3

    B.    Whether the '432 patent is a "unique combination" of elements found in the prior art is irrelevant for joint inventorship purposes..................................7

    C.    Dr. Foo's joint inventorship is apparent from his thesis and publications..................................................................................................................9

    D.    There is no evidence that suggests that Dr. Foo's work for ICC as a consultant means that ICC owned Dr. Foo's portion of the '432 patent. ........................................................................................................................11

III. CONCLUSION ........................................................................................................................13

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -i-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) .................................................................................................. 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ........................................................................................................ 10

*Arshal v. United States*, 223 Ct. Cl. 179, 201 (Ct. Cl. 1980) .................................................................................... 10

*Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed. Cir. 2000) ............................................................................... 12

*Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004) ........................................................ 1, 3, 9

*Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ................................................................................. 3, 6, 11

*Hurd v. Sheffield Steel Corp.*, 181 F.2d 269, 271 (8th Cir. 1950) .................................................................................. 11

*Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ................................................................................. 8

*Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) ................................................................................. 3

*Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 961 (Fed. Cir. 1983) ................................................................................... 8

*Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984) ......................................................................... 10, 11

**STATUTES**

35 USC § 116 ............................................................................................................................ 9

37 C.F.R. § 1.75(e) .................................................................................................................. 8

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

-ii-

## I. INTRODUCTION

Ricoh's opposition confirms the absence of any disputed issue of material fact that Simon Foo contributed in a significant manner to the conception of the invention claimed in the '432 patent and is thus a joint inventor of the '432 patent. Indeed, Ricoh acknowledges that Dr. Foo collaborated with Dr. Kobayashi for years regarding computer aided design of VLSI chips:

- Dr. Kobayashi was Dr. Foo's advisor for his master's thesis. Opp. at 4:3, 17:4-5. This thesis describes the use of a relational database system to manage very large scale integration designs. Opp. at 17:3-4. Ricoh admits that Dr. Foo's master's thesis is Exhibit 66 to the Brothers Declaration.

- Dr. Kobayashi and Dr. Foo co-authored several published papers in 1986. Opp. at 4:4. One of these papers, titled "A Framework for Managing VLSI CAD Data," "discusses a frame based approach for managing VLSI CAD data." Opp. at 4:6-7. The other, titled "A Knowledge Based System for VLSI module selection," discusses a program called NEPTUNE, which is "a system that selects VLSI modules, and based on domain specific knowledge and heuristic rules, helps find optimized solutions." Opp. at 4:19-22. "These articles describe systems that use expert knowledge in the selection of [] functional modules."[1] Opp. at 16:11-12. Ricoh admits that the co-authored papers are Exhibits 67-68 to the Brothers Declaration.

- "Neptune is listed as one of the names of the program module for cell selection that was part of the contract between ICC and Ricoh for the joint development of the Knowledge based Silicon Compiler." Opp. at 18:1-3. In the contract, Dr. Foo is listed as one of the two program designers for Neptune. Opp. at 18:3-4.

These undisputed facts are the only facts regarding Dr. Foo's contribution necessary to show that Simon Foo is an unnamed joint inventor of the '432 patent, making the '432 patent invalid under § 102(f). As explained in the moving papers (and agreed upon by Ricoh in its opposition), a joint inventor is someone who makes a "contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." Opp. at 10:9-11, *quoting Eli Lilly & Co.*, 376 F.3d at 1358. The invention of the '432 patent, as described in Claim 13, requires, among other things, a set of stored hardware cells (claim element B), an expert system knowledge base containing rules for selecting hardware cells (claim element C), and an actual selection of hardware cells based upon the rules (claim element F). Motion at 6:25-7:12. Dr. Foo's thesis describes storing hardware cells in a frame-based database, as does the

---

[1] Although Ricoh claims that these papers only disclose technology independent modules, the papers themselves show that they use technology dependent modules, the same as the patent. Regardless the papers show the use of expert knowledge to select modules, and this is enough to show co-inventorship.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS
DM_US\8384082.v2

-1-

FAME paper — exactly what is required by claim element B, and as described below with almost identical characteristics to the hardware cells described in Column 9 of the patent. The NEPTUNE paper describes, in detail, a system developed by Dr. Foo and Dr. Kobayashi for selecting hardware cells from the frame-based database described in the FAME paper and Dr. Foo's thesis using rules stored in an expert system knowledge base — claim elements C and F. Further, this NEPTUNE system is listed in the ICC/Ricoh contract as a key portion of the KBSC system jointly developed by ICC and Ricoh, and Dr. Foo is listed as one of the designers of that system. Thus, the undisputed facts show that Dr. Foo, then a USC graduate student and multi-year collaborator with Dr. Kobayashi, contributed to the conception of significant portions of the invention claimed in the '432 patent — specifically, each element of the claims (or, at least, a significant portion of those elements) that do not deal with architecture independent actions and conditions — through his thesis, co-authored papers, and development of the NEPTUNE system. Under the agreed-upon law of joint inventorship, Dr. Foo is thus an unnamed joint inventor of the '432 patent, and the failure of the named inventors to include Dr. Foo on the patent invalidates the patent.

  Because Ricoh does not and cannot dispute these facts or the analysis, its defense consists solely of a series of straw men that are completely irrelevant for purposes of this motion. These irrelevant issues are (1) Dr. Foo is not the *sole* inventor of the '432 patent; (2) the *only* inventive aspect of the '432 patent is that it is a unique combination of elements found in the prior art; (3) Dr. Foo is a paid Howrey consultant; (4) Defendants do not offer any expert testimony in support of their motion; and (5) Dr. Foo's testimony is uncorroborated by admissible evidence. Furthermore, Ricoh argues, without any factual support, that Dr. Foo was an employee of ICC and thus assigned any patent rights to ICC. As explained below, none of these issues create a material issue of fact for purposes of this motion. Dr. Foo should be adjudged a joint inventor of the '432 patent; further, the case must be dismissed for failure to join all co-owners of the patent, even if Ricoh were to obtain correction of inventorship.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

-2-

## II. ARGUMENT

### A. Dr. Foo is a *joint* inventor of the '432 patent, even if he is not the *sole* inventor.

Ricoh's first straw man is its continual suggestion that, to prevail on this motion, Defendants must demonstrate that Dr. Foo is the *sole* inventor of the '432 patent (or at least Claim 13). *See, e.g.*, Opp. at 1:12-14 ("To prevail upon their motion for summary judgment under 102(f), defendants must prove by clear and convincing evidence that Mr. Foo is the inventor of claim 13. . . ."); 16:10-11 ("Any reliance by Mr. Foo's [*sic*] on the two co-authored papers to substantiate that he invented the invention of the '432 patent is unfounded."). But this is not Defendants' position on this motion — this motion is premised on Dr. Foo being a *joint* inventor of the '432 patent, pursuant to 35 U.S.C. § 116.[2]

Ricoh does briefly touch on the law of joint inventorship in its legal section. *See* Opp. at 10:9-15, *quoting Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004). *Eli Lilly* holds (as do the cases cited by Defendants in their opening brief) that "a person not listed on a patent need not demonstrate that he made a contribution equal in importance to the contribution made by the listed inventors to claim his right to joint inventor status. In fact, section 116 'sets no explicit lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor.'" *Eli Lilly*, 376 F.3d at 1358-59 (citations omitted). In other words, it is irrelevant that Dr. Foo may not have conceived of the entire invention claimed in the '432 patent, and it is irrelevant that Dr. Kobayashi and Mr. Shindo may have made arguably more "important" contributions to the invention of the '432 patent.[3] All that Defendants need to show to prevail on this motion is that Dr. Foo ***contributed to the conception of the claimed invention***. *Id.*; *see also Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). Defendants have done that in their moving papers (*see* Motion at 5-9), as briefly recapped in the introduction above.

---

[2] To dispose of this case, it is sufficient to show that Dr. Foo is an unnamed joint inventor whose interest in the patent is not owned by Ricoh. *See, e.g.*, *Ethicon, Inc. v. United States Surgical Corp.*, 145 F.3d 1456, 1468 (Fed. Cir. 1998).

[3] It is further irrelevant that Dr. Foo did not mention his contribution to the invention to anyone until after this litigation was instituted — this simply is not a factor in determining inventorship. Indeed, from a fact standpoint, Dr. Foo could not have told anyone of his contribution to the '432 patent prior to this litigation, since he was unaware of the '432 patent until contacted by Ricoh's counsel around the time this litigation was filed. Brothers Ex. 65 (Foo Tr.) at 106:14-107:12.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

-3-

1  Indeed, Ricoh does not seriously challenge Defendants' claims that Dr. Foo contributed to the
2  conception of the invention claimed in the '432 patent. Its only substantive argument on this issue is
3  that Dr. Foo's work used technology independent hardware cells, not the technology *dependent* cells
4  that Ricoh claims the '432 patent requires. *See* Opp. at 12:22-23 ("any type of 'expert system' [Dr.
5  Foo] may have developed was simply a system for selecting technology independent functional
6  modules."); *id.* at 16:10-14 ("These articles describe systems that use expert knowledge in the
7  selection of technology-independent functional modules. . . . This is different from expert knowledge
8  rules of the '432 patent that are in the selection of technology-independent [*sic*] functional
9  modules."); *id.* at 18:20-19:2. Ricoh's argument is based on a misinterpretation of Dr. Foo's papers,
10 which discuss storing precisely the same sort of information in the hardware cells as the '432 patent,
11 including technology specific information.

12  The patent notes that four types of information are stored in the database for each cell:
13 functional level, logic level, circuit level, and layout level, which are described in the excerpt of
14 Column 9 below:

> ing appropriate cells from the cell library. Four types of information are stored for each cell. These are:
> (1) functional level information: description of the cell at the register transfer level.
> (2) logic level information: description in terms of flip-flops and gates.
> (3) circuit level information: description at the transistor level.
> (4) Layout level information: geometrical mask level specification.

21 '432 patent at 9:24-34. Similar (if not identical) four types of information are stored in the FAME
22 database. Brothers Decl., Ex. 67 at KBSC000905 ("The 'architecture,' 'logic,' 'circuit,' and 'layout'
23 slots contain procedures to generate respective representations of the instance.").

24  The patent notes that the attributes of a cell include cell name, description, function, width,
25 height, technology, delay, power, and designer.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

-4-

```
The attributes of a cell are:
cell name
description
function
width
height
status
technology
minimum delay
typical delay
maximum delay
power
file
designer
date
comment
inspector
```

'432 patent at 9:35-51.  These attributes  (cell name (module-id), description (is_a), function, designer, version, status, technology, height & width (area), speed, power,) are stored in the FAME database, *including the technology attribute*, as shown in the middle part of Figure 1 of the paper:

 

Brothers Ex. 67 at KBSC000910.  Indeed, the paper on FAME shows definitively that the database contains technology information — the module shown appended on page 892 of the paper identifies its technology as "nmos/2.5." *Id.* at KBSC000907.  And the paper on NEPTUNE notes that "the input file [to NEPTUNE] is a list of design specifications (bit_size, *technology*, etc.) associated with each module." Brothers Decl., Ex. 68 at KBSC000915 (emphasis added).  Additionally, Dr. Foo's

**HOWREY LLP**

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -5-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

1 Spring 1986 project proposal describes as a database as a "module (cell) library" that includes for
2 each instance the following information:

```
fput(M100; is_a "flip flop"; type "edge triggered";
            class "D"; tech "nmos 2.5"; status "tested";
            speed 15; power 100; width 6700; height 8540;
            inPorts "din100"; outPorts "Dq100, Dqn100";
            clock "clk100"; powerSource "vdd100, gnd100")

where "fput" puts information into the instance frame "M100".
```

8 Brothers Ex. 26 at FOO 190.  There simply cannot be any dispute that (a) the Foo/Kobayashi papers
9 discuss an expert system for selecting technology *dependent* modules (cells) from a library of
10 modules (cells) with the same attributes as those described in the '432 patent and (b) the papers
11 discuss, at the least, a predecessor system to that disclosed in the patent specification.

12    Even if Ricoh's argument that the Foo references disclose only the use of technology
13 independent modules were factually correct, the argument misses the point.  As noted above, there is
14 no requirement that a joint inventor meet a full element of a claim, let alone the full claim.  Rather, a
15 joint inventor "needs to perform only a part of the task which produced the invention." *Ethicon, Inc.*
16 *v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  By Ricoh's admission, Dr.
17 Foo's thesis and co-authored papers show that, at the very least, Dr. Foo developed an expert system
18 that selected technology independent functional modules.  This development by Dr. Foo is a large
19 part of the "task which produced the invention," which, according to Ricoh, differs from the final
20 invention *only* in its use of technology dependent functional modules.  Ricoh has provided no
21 explanation why Dr. Foo's involvement in the creation of an expert system that selects technology
22 independent modules cannot be considered a contribution to the conception of the entire invention,
23 especially given the long-standing collaboration between Dr. Foo and Dr. Kobayashi.  Moreover, the
24 FAME paper or NEPTUNE paper standing alone show that Dr. Foo made a significant contribution to
25 the conception of the overall invention — read together, however, there is simply no question of the
26 importance of Dr. Foo's contribution.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -6-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

1    Further, Ricoh's opposition does not create any dispute about what Dr. Foo contributed to the
2 articles. As noted in the opening brief, Dr. Foo and Dr. Kobayashi agreed that Dr. Kobayashi acted
3 merely in an advisory role on both of these papers. Brothers Ex. 65 (Foo Tr.) at 9:6-10:5; Brothers
4 Ex. 56 (Kobayashi Tr.) at 161:6-162:4, 178:12-24. Dr. Kobayashi was unable to controvert this fact
5 at deposition, Brothers Ex. 56 (Kobayashi Tr.) at 178:16-19, and Ricoh has not provided any
6 declaration from Dr. Kobayashi to controvert this fact now. Thus, Ricoh's assertion that "it is not
7 clear what contribution was made by each author to the article," Opp. at 17:18 & 24-25, is simply
8 wishful thinking on Ricoh's part. The uncontroverted testimony demonstrates that the ideas in the
9 papers were Dr. Foo's, although certainly Dr. Kobayashi was aware of and approved the concepts,
10 and assisted with some editing of the papers. Brothers Ex. 65 (Foo Tr.) at 9:6-10:5; Brothers Ex. 56
11 (Kobayashi Tr.) at 161:6-162:4, 170:24-25, 171:1-7; 178:12-24, 179:1-21.

12    **B.   Whether the '432 patent is a "unique combination" of elements found in the prior
13         art is irrelevant for joint inventorship purposes.**

14    In an effort to avoid the indisputable contribution Dr. Foo made to the '432 patent (and the
15 invalidation of the '432 patent that contribution mandates), Ricoh makes the argument that the only
16 inventive aspect of the claims of the '432 patent are that they are a "unique combination" of prior art
17 elements. *See* Opp. at 11. Essentially, Ricoh is arguing that all Dr. Kobayashi and Mr. Shindo did to
18 invent the claimed invention of the '432 patent was to mix and match pre-existing, well-known
19 elements of others' work. Ricoh reasons that, because Dr. Foo did not contribute to this mixing and
20 matching, he did not contribute to the conception of the invention. This argument is frivolous for
21 several reasons.

22    Despite Ricoh's characterization, there is simply no indication in the patent itself that it is
23 solely a combination of prior art elements, wherein the only inventive aspect is the unique
24 combination of elements. Quite the contrary — the patent specification states explicitly that, to the
25 inventors' knowledge, the claimed system originated with these inventors. *See, e.g.*, '432 patent at
26 2:15-20 ("[T]he present invention, *for the first time*, opens the possibility for the design and
27 production of ASICs by designers, engineers and technicians who may not possess the specialized
28

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)        -7-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

expert knowledge of a highly skilled VLSI design engineer") (emphasis added). Moreover, the claims are not written in the *Jepson* format that is used to explicitly claim improvements on the prior art:

> Where the nature of the case admits, such as in the case of an improvement, any independent claim should contain in the following order:
> (1) A preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known,
> (2) A phrase such as "wherein the improvement comprises," and
> (3) Those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

37 C.F.R. § 1.75(e). Similarly, the patent does not disclose the prior art from which these six elements were supposedly taken, how the prior art combined these pre-existing elements, and why the particular combination hit upon by Ricoh is useful and novel. Furthermore, as the inventors only submitted four references to the PTO with their initial patent application (Brothers Decl., Ex. 39 at RCL000065) — where is all the prior art from which these six elements were allegedly taken?[4] Thus, Ricoh's argument that the patent is nothing more than a combination of prior art elements should be seen as what it is — a desperate attempt to prevent summary judgment.

There is additionally no legal basis for the assumption that a "combination claim" should be treated differently for joint inventorship purposes than any other claim. Patent law simply makes no distinction between "combination claims" and other types of claims. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 961 (Fed. Cir. 1983) ("[T]he language of the 1952 Patent Act provides no basis for either classifying patents into different 'types' or for applying different treatment to different 'types' of patents."). So, as discussed above, the standard is that a joint inventor must have contributed to the conception of the invention, which is defined by the language of the claims themselves. *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc) ("Both the

---

[4] It is worth noting that Ricoh, in its (misdirected) zeal to prevent summary judgment on the joint inventorship issue, has created a strong suggestion of inequitable conduct separate from the grounds alleged in Motion No. 4. Certainly, if the Foo/Kobayashi co-authored articles are part of the prior art upon which Kobayashi and Shindo built their supposed combination invention, those articles (known by Kobayashi) should have been provided to the PTO. *See generally*, Motion No. 4. But they were not. *See generally* Brothers Decl., Ex. 39 (prosecution history).

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -8-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

HOWREY LLP

Supreme Court and this court have adhered to the fundamental principle that claims define the scope of patent protection") (citations omitted).

Ricoh's bogeyman here is that "[i]f the Defendants' theory was [sic] correct . . . then the author of every prior art reference would be a co-inventor, even if the person never knew the named inventors." Opp. at 4:10-12. This is preposterous. As Ricoh takes pains to note in its legal section, the law requires that "the alleged joint inventor asserting inventorship under 35 USC § 116, must prove 'some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting.'" Opp. at 10:12-14, *quoting Eli Lilly*, 376 F.3d at 1358. Ricoh does not address this legal issue because there is nothing it can say to help its case — it is undisputed (and indisputable) that Dr. Foo collaborated with Dr. Kobayashi on the various papers relied upon in this motion, either in an advisor/advisee relationship or as a co-author. Thus, the necessary element of joint behavior is unquestionably present.

### C.    **Dr. Foo's joint inventorship is apparent from his thesis and publications.**

With precious few arguments to make on the law or the undisputed facts, Ricoh makes unhelpful evidentiary arguments as to why the motion cannot be granted — Dr. Foo is not a credible witness because he is a paid Howrey consultant, his handwritten documents are not authentic, and Defendants have failed to support their motion with any expert testimony. None of these arguments affects the propriety of the summary judgment evidence actually before the Court, nor does it prevent the Court from drawing reasonable conclusions from this evidence.

First, the primary evidence relied upon to show Dr. Foo's joint inventorship is not his testimony or his notes, but rather his printed publications — his thesis and the two articles co-authored with Dr. Kobayashi — in comparison with the patent. Indeed, the Court could determine that Dr. Foo should have been named as a co-inventor without relying upon Dr. Foo's deposition

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -9-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

testimony, although there is certainly no reason the Court should not consider Dr. Foo's uncontroverted testimony cited in Defendants' moving papers.[5]

Second, it is axiomatic that the credibility of witnesses cannot be determined on summary judgment. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.")  Thus, in the absence of specific controverting facts (which Ricoh has failed to provide), the Court should accept the testimony of Dr. Foo.

Third, Ricoh is the only party to have even mentioned Dr. Foo's handwritten notes, which it strongly suggests are forgeries (without any evidence to back up such a staggering claim). Opp. at 16:18-20. Defendants did not introduce these notes into evidence because, although they do further corroborate Dr. Foo's joint inventorship, they are not necessary for Defendants to prevail on this motion. Thus, it is pure sophistry for Ricoh to claim that the mere existence of this evidence — evidence that is not part of this motion — is "by itself a reason to deny this motion." Opp. at 16:20.

Finally, there is no requirement that expert testimony be provided for the Court to determine this motion. *E.g.*, *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984) (upholding a decision on summary judgment without expert testimony presented by the moving party because "the references and appellant's invention are easily understandable without the need for expert explanatory testimony"); *see also Arshal v. United States,* 223 Ct. Cl. 179, 201 (Ct. Cl. 1980) ("[I]t is well established that summary judgment is permissible when the court can understand the relevant technology without the aid of expert opinion."). The ultimate issue presented by this motion is whether Dr. Foo's thesis and publications, combined with his multi-year collaboration with Dr.

---

[5] Ricoh has provided only attorney argument — not admissible evidence — in an attempt to controvert the testimony of Dr. Foo cited in the opening brief. For instance, Ricoh dismisses Dr. Foo's testimony that he was an expert in VLSI design by stating, incredulously, that "as a result of his year or so of study, he knew more about VLSI design than his instructor, advisor and mentor, Dr. Kobayashi!" Opp. at 6:13-15. Yet, despite this attorney argument, it is uncontroverted that Dr. Kobayashi lacked experience in VLSI design — even Dr. Kobayashi admitted as much. *See* Brothers Ex. 23 (Kobayashi Tr.) at 368:19-369:4. Thus, it should be no surprise that Dr. Foo knew more about VLSI design than Dr. Kobayashi after only a "year or so of study." Once again, the facts support the Defendants' position, not the attorney argument put forward by Ricoh.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

-10-

Kobayashi, demonstrate that he contributed to the conception of any portion of the invention claimed by the '432 patent.[6]  Given the nature of this inquiry (i.e., only a contribution to a portion of the invention need be shown), and especially given the admissions made by Ricoh in its opposition (i.e., that Foo invented an expert system that used rules to select modules), Defendants suggest that the Court is well-equipped to reach the same conclusion any reasonable jury would reach, even in the absence of expert testimony on this issue[7] — Dr. Foo contributed to the conception of the invention, and is therefore an unnamed joint inventor.  As the Federal Circuit has noted in similar circumstances, "[a] trial on this issue would undoubtedly produce more argument but no more enlightenment." *Union Carbide*, 724 F.2d at 1573.

### D. There is no evidence that suggests that Dr. Foo's work for ICC as a consultant means that ICC owned Dr. Foo's portion of the '432 patent.

As explained in the moving papers, should the Court determine that Dr. Foo is a joint inventor, the case would still have to be dismissed for failure to join all co-owners as plaintiffs, even if Ricoh were to successfully petition to correct inventorship.[8]  Ricoh attempts to stave off dismissal

---

[6] Inventorship is a question of law. *Ethicon*, 135 F.3d at 1460.  Because of this, the Court cannot accept Dr. Kobayashi's testimony on this ultimate legal issue, quoted in footnote 4 of the Opposition.  Matters of law are "inappropriate subjects for expert testimony," let alone lay testimony. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).  Moreover, Dr. Kobayashi's testimony does not contradict either Dr. Foo's testimony on this point or the arguments in the moving papers — Dr. Kobayashi was not specifically asked if Dr. Foo "contributed to the conception" of the '432 patent, only whether he "contributed" to the patent, and Dr. Kobayashi also testified only that he "cannot think" that Dr. Foo made a contribution to the patent.

[7] Ricoh has submitted the report of Defendants' expert, Dr. Mitchell.  In an attempt to sow the seeds of confusion, Ricoh repeatedly attaches undue importance to Dr. Mitchell's statement that he could not determine the extent of Dr. Foo's contribution to the '432 patent.  Dr. Mitchell was noting simply that, because Dr. Foo and Dr. Kobayashi collaborated over many years and are listed as co-authors on the FAME and NEPTUNE papers, he cannot determine the separate contribution of each author.  Dr. Mitchell was without the benefit of Dr. Kobayashi's testimony admitting that he acted merely as an advisor on these papers, but, in any case, such discrete identification of inventive concepts is not required to show joint inventorship (nor would it be practical).  Moreover, Ricoh ignores Dr. Mitchell's clear conclusion — immediately following the portion of the sentence Ricoh repeatedly quotes (and improperly truncates) — that states the opinion that Dr. Foo ***had*** contributed to the conception of the claimed invention. *See* Brothers Decl., Ex. 34 at 62 ("[T]he materials I have reviewed, together with Foo's deposition testimony, strongly indicate Foo was a research collaborator with Kobayashi in creating the components and the overall conception of the knowledge-based approach to computer-aided design developed by Kobayashi's group at USC by the end of December, 1986.").

[8] Ricoh makes a half-hearted attempt to argue that this is not the law, claiming that *Ethicon* was dismissed solely because the unnamed joint inventor signed an exclusive license with the defendant. *See* Opp. at 19:15-24.  This misrepresents *Ethicon*.  In *Ethicon*, the court noted that "as a matter of substantive patent law, all co-owners must ordinarily ***consent*** to join as plaintiffs in an infringement suit." *Ethicon*, 135 F.3d at 1468 (emphasis added).  The court therefore dismissed the case because the unnamed inventor did not consent to an infringement suit, as *evidenced* by its exclusive license. *Id.*
(Continued...)

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)         -11-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

HOWREY LLP

with its unsupported claim that Dr. Foo was contractually obligated to assign his interest in the '432 patent to ICC. Ricoh makes this argument even while acknowledging that "Mr. Foo's 20-year old signed agreement no longer exists. . . ." Opp. at 14:19. This acknowledgement is fatal, for it is Ricoh, not Defendants, which have the burden to show that an assignment of Dr. Foo's interest in the patent has occurred:

> The general rule is that an individual owns the patent rights to the subject matter of which he is an inventor, even though he conceived it or reduced it to practice in the course of his employment. There are two exceptions to this rule: first, an employer owns an employee's invention if the employee is a party to an express contract to that effect; second, where an employee is hired to invent something or solve a particular problem, the property of the invention related to this effort may belong to the employer.

*Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed. Cir. 2000). Thus, in order to prevent dismissal, Ricoh must show that one of the two exceptions apply, which it cannot given the admitted absence of the written contract and a lack of evidence on the scope of Dr. Foo's work for ICC.

Indeed, even assuming that Ricoh did not have the burden on this issue, the evidence Ricoh relies upon is insufficient to raise a question of fact given the evidence Defendants rely upon. Ricoh relies on the (inadmissible) testimony of Tooru Ozeki,[9] who testified that all *employees* of ICC were required to sign over their patent rights to the company. *See* Brothers Ex. 24 (Ozeki Tr.) at 143:24-144:5; 148:18-149:16. But there is no evidence that Dr. Foo was an *employee* of ICC. Rather, the only evidence is that Dr. Foo was a *consultant* to ICC, a point Dr. Foo reiterated multiple times in his deposition. Brothers Ex. 65 (Foo Tr.) at 36:5-9; 71:25-72:6. Moreover, the pay stubs showing payments from ICC to various parties related to the development of the KBSC system contain *no*

---

(...Continued)

Here, there is no indication that Dr. Foo (or the University of South Carolina, the other potential co-owner of the '432 patent) has consented to a suit against the Defendants. Moreover, even if they did so consent, unless all co-owners are joined voluntarily at the **commencement** of litigation, the case must be dismissed. *See Hurd v. Sheffield Steel Corp.*, 181 F.2d 269, 271 (8th Cir. 1950) (affirming dismissal of lawsuit where all patent co-owners had not been joined when litigation began). The simple fact that there is a co-owner of the '432 patent who is not named as a party to this litigation means that this case must be dismissed.

[9] Mr. Ozeki's testimony regarding this issue is not based on personal knowledge and is hearsay, and is therefore inadmissible.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -12-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

1  payments whatsoever to Dr. Foo.[10]  Brothers Decl., Ex. 71.  Thus, Mr. Ozeki's testimony that all
2  employees were required to sign over their patent rights does not imply that Dr. Foo, a consultant,
3  was required to do the same.  In fact, Dr. Foo testified that he never signed any agreement with ICC
4  regarding patent rights or any other issue, which is the only admissible testimony on this issue.
5  Brothers Ex. 65 (Foo Tr.) at 47:23-48:20.

   Given that Ricoh cannot show that Dr. Foo assigned his rights in the '432 patent to ICC, there is a co-owner of the patent who is not a party to this case.  Under the reasoning of *Ethicon*, the case must be dismissed for failure to join all co-owners of the patent.

### III. CONCLUSION

Ricoh's opposition to this motion is much ado about nothing.  Ricoh complains that Defendants have failed to prove that Dr. Foo invented the whole invention claimed by the '432 patent, but this is not the legal standard (as Ricoh knows).  Ricoh complains that Dr. Foo did not contribute to the invention, which Ricoh claims is a mere combination; but there is nothing in the law that allows "combination claims" to be treated differently from any other claim for purposes of determining inventorship.  Ricoh complains that Dr. Foo's testimony is not credible and his handwritten documents (not even relied upon by Defendants) are not authentic, but it cannot argue credibility on summary judgment (at least not without putting in contradictory facts, which it does not do).  Ricoh complains that there is contradictory expert testimony, but Defendants have not relied on any expert testimony and Ricoh's (opinion) testimony is contradicted by (factual) documents.  Finally, Ricoh complains that Dr. Foo's interest in the patent is owned by ICC, but has absolutely no evidence to support that assertion.  In the end, Defendants' evidence is uncontroverted, and Ricoh is left either with an invalid patent, or with a co-owner it has not joined in this case.  Either way, the case should be dismissed.

Dated:  September 8, 2006            HOWREY LLP

                                     By:   /s/
                                     Denise M. De Mory

---

[10] In contrast, the paystubs confirm that Mr. Ozeki was an employee, with indications that he was on "payroll" and that taxes were withheld from his payments.  *See* Brothers Decl., Ex. 71 at KBSC00002159, 2203, and 2639.

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -13-
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO.
4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO
DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

HOWREY LLP

1
2
3
4
5

Attorney for Plaintiff SYNOPSYS, INC. and Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HOWREY LLP**

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO MSJ OF INVALIDITY OF U.S. PATENT NO. 4,922,432 FOR VIOLATION OF 35 U.S.C. § 102(f), OR TO DISMISS FOR FAILURE TO JOIN ALL CO-OWNERS AS PLTFS

-14-