**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   RICOH COMPANY, LTD,                    No. C03-04669 MJJ
                                            No. C03-02289 MJJ
12              Plaintiff,

13      v.

14   AEROFLEX INCORPORATED ET AL,

15              Defendant.                  **ORDER GRANTING SYNOPSYS'**
                                            **MOTION TO STAY**
16   _____/

17   SYNOPSYS, INC.,

                Plaintiff,
18
        v.
19
     RICOH COMPANY, LTD,
20
                Defendant.
21
     _____
22

23                          **INTRODUCTION**

24          Before the Court is Synopsys, Inc. ("Synopsys") and Aeroflex Incorporated, AMI

25   Semiconductor, Inc., Matrox Electronic Systems, Ltd.,  Matrox Graphics, Inc., Matrox International

26   Corp., Matrox Tech, Inc. and Aeroflex Colorado Springs, Inc.'s (collectively the "Customer

27   Defendants") Motion for Stay.[1]  The motion is opposed by Ricoh Company, Ltd. ("Ricoh" or

28   "Plaintiff").  For the following reasons, the Court **GRANTS** Synopsys and the Customer

_____

[1]Docket No. 729, Case No. 03-4669 and Docket No. 536, Case No. 03-2289.  Filed December 7, 2006

1 Defendants' Motion for Stay.

2 **FACTUAL BACKGROUND**

3 This case concerns the alleged infringement of U.S. Patent Number 4,922,432 ("the '432

4 patent") entitled "Knowledge Based Method and Apparatus for Designing Integrated Circuits Using

5 Functional Specifications."  By assignment, Ricoh is the owner of the entire right, title, and interest

6 in the '432 patent.  Ricoh complains that Synopsys' customers, the Customer Defendants, are

7 infringing on certain claims of the patent.  In response, Synopsys complains that Ricoh's suit is an

8 improper effort to improperly extract royalties from the Customer Defendants' use of Synopsys'

9 products, including Design Compiler.

10 On April 7, 2005, the Court issued a Claim Construction Order (("Claims Construction"),

11 Docket No. 296) construing the language of Claim 13 of the '432 patent.  On August 9, 2005, the

12 Customer Defendants moved for summary judgment, asking the Court to hold that Claims 13-17[2] of

13

14 [2] The claims at issue in the '432 patent read as follows:

15 13. A computer-aided design process for designing an application specific integrated circuit which will perform
a desired function comprising

16 [A] storing a set of definitions of architecture independent actions and conditions;

17 [B] storing data describing a set of available integrated circuit hardware cells for performing the actions and
conditions defined in the stored set;

18 [C] storing in an expert system knowledge base a set of rules for selecting hardware cells to perform the actions
and conditions;

19 [D] describing for a proposed application specific integrated circuit a series of architecture independent actions
and conditions;

20 [E] specifying for each described action and condition of the series one of said stored definitions which
corresponds to the desired action or condition to be performed; and

21 [F] selecting from said stored data for each of the specified definitions a corresponding integrated circuit hardware
cell for performing the desired function of the application specific integrated circuit, said step of selecting a

22 hardware cell comprising applying to the specified definition of the action or condition to be performed, a set of
cell selection rules stored in said expert system knowledge base and generating for the selected integrated circuit

23 hardware cells, a netlist defining the hardware cells which are needed to perform the desired function of the
integrated circuit and the interconnection requirements therefor.

24 14. A process as defined in claim 13, including generating from the netlist the mask data required to produce an
integrated circuit having the desired function.

25

26 15. A process as defined in claim 13 including the further step of generating data paths for the selected integrated
circuit hardware cells.

27 16. A process as defined in claim 15 wherein said step of generating data paths comprises applying to the selected
cells a set of data path rules stored in a knowledge base and generating the data paths therefrom.

28 17. A process as defined in claim 16 including the further step of generating control paths for the selected

2

United States District Court

For the Northern District of California

the '432 patent did not infringe under § 271(g) and to grant declaratory relief that the Synopsis

Design Compiler is not capable of infringing the asserted claims.  On November 7, 2005, this Court

denied Customer Defendants' motion for summary judgment.  Currently pending before the Court

are Synopsys and the Customer Defendants' (hereafter collectively, "Defendants") two motions for

summary judgment motion asking the Court to hold that the Customer Defendants do not infringe

Claims 13-17 of the '432 patent and that the Synopsys Design Compiler system is not capable of

infringing the asserted claims.

On December 7, 2006, Defendants filed the current[3] motion to stay.  Defendants notified the

Court that the United States Patent and Trademark Office ("PTO") issued a non-final office action in

the pending examination re-examination of the '432 patent.  In that office action the PTO rejected all

claims of the '432 patent, including each of the claims asserted in the pending litigation.  The PTO

ordered Ricoh to respond to the office action within two months and noted that it intends the next

office action to be the final office action.

**LEGAL STANDARD**

While courts are not required to stay judicial resolution in view of reexamination, *Viskase*

*Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001), a stay for purposes of PTO

reexamination is within the district court's discretion.  *Patlex Corp. v. Mossinghoff*, 758 F.2d 594,

603 (Fed. Cir. 1985); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)

("Courts have inherent power to manage their dockets and stay proceedings, including the authority

to order a stay pending conclusion of a PTO reexamination.").  A stay is particularly justified where

the outcome of the reexamination would be likely to assist the court in determining patent validity

and, if the claims were canceled in the reexamination, would eliminate the need to try the

infringement issue.  *See, e.g., Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)

("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is

canceled) or to facilitate trial of that issue by providing the district court with the expert view of the

integrated circuit hardware cells.

[3]On April 3, 2006, this Court denied Defendants' earlier motion to stay.  At that time the USPTO's re-examination of the '432 patent had just begun.  At that time, this Court found that a stay would be inappropriate.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   PTO (when a claim survives the reexamination proceeding).").  Once the PTO undertakes to

2   reexamine a patent, it shall do so with "special dispatch" and cannot otherwise be compelled to

3   cease reexamination.  35 U.S.C. § 305; *Ethicon*, 849 F.2d at 1426-27.

4       When determining the appropriateness of a stay pending reexamination, the court considers

5   the following three factors: "(1) whether a stay would unduly prejudice or present a clear tactical

6   disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial

7   of the case; and (3) whether discovery is complete and whether a trial date has been set." *ASCII*

8   *Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (granting stay)

9   (citing *GPAC, Inc. v. DWW Enterprises, Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992)).

10                                      **ANALYSIS**

11      Defendants argue that a stay is appropriate because the PTO has issued an office action

12  that has *rejected* all claims of the '432 patent, including the claims at issue in this litigation.

13  Defendants contend that if the PTO determines that the '432 patent in invalid, there is no basis for

14  the instant patent infringement suit.  Defendants also contend that the posture of this case has

15  significantly changed since their last request for a stay.  Ricoh disagrees and maintains that nothing

16  has changed since this Court's prior denial of Defendants' request for a stay.  The Court now

17  addresses the merits of Defendants' request for a stay and the relevant factors in turn.

18  **I.    Whether a Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to**

19           **the Nonmoving Party**

20      Ricoh argues that the Court has already determined that a stay would prejudice Ricoh when

21  the Court denied Defendants' previous request for a stay.  Ricoh contends that a stay would prevent

22  Ricoh from suing other selected ASIC manufacturers.  Defendants respond that Ricoh's tactical

23  litigation strategy in suing other ASIC manufacturers is not relevant in the Court's stay analysis.

24  Defendants also point out that the "delay inherent to the reexamination process does not constitute,

25  by itself, undue prejudice."  *Photoflex Prods. v. Circa 3 LLC*, 2006 U.S. Dist. LEXIS 37743 at *5

26  (N.D. Cal. May 24, 2006) (citing *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 U.S. Dist. LEXIS 8052,

27  2003 WL 21105073, at *2 (D. Del. May 14, 2003)).

28      At the time the Court denied Defendants' previous request for a stay the procedural posture

of the reexamination request was significantly different. At that time, the PTO had only recently granted a third-party request for a reexamination of the '432 patent. The PTO had not identified the particular claims at issue or provided any definitive guidance on the length of time required for the reexamination. At that time, in balancing the uncertainty as to the length of time required to complete the reexamination with the current stage of the proceedings, the Court found that the potential delay would likely prejudice Ricoh. However, as the Court indicated during the previous status conference[4], the circumstances surrounding the PTO's reexamination of the '432 patent have changed.

Currently, the PTO's office action indicates that the PTO has specifically *rejected all claims of the '432 patent* and has required Ricoh to respond to the action within two months. The rejected claims include each of the claims at issue in the current case. Additionally, the PTO arrived at is current decision rejecting the claims of the '432 patent relatively quickly–approximately 9 months after initiation of the reinvestigation. Ricoh's responses to the current PTO action are due in just over one month. In light of the PTO's rejection of the specific claims at issue and the PTO's relatively quick turnaround, the Court finds the previous finding of risk of prejudice to be significantly lessened.

Ricoh also makes a vague argument that a stay would be prejudicial to Ricoh's ability to obtain an injunction. Ricoh avers that it is an ASIC market competitor of some of the Customer Defendants and therefore Ricoh would be entitled to an injunction against them. However, as Defendants point out, the '432 patent expires in January 2008. Thus, as a practical matter, even if the case were to proceed to trial, by the time an injunction request is fully considered, the patent will be close to its expiration date. Moreover, Ricoh has indicated that it is not seeking lost profits, but instead is seeking reasonable royalty damages. As a result, the Court finds that a stay would not significantly prejudice Ricoh's potential remedies.

Although not addressed by the parties, the Court notes the risk of prejudice to Defendants if a stay is not issued. Defendants will be forced to potentially litigate a lengthy patent trial and a

---

[4]On December 8, 2006, the Court held a status conference and heard the parties' arguments regarding the pending motion to stay. The Court then permitted the parties to submit additional briefing, which the Court has now considered.

United States District Court

For the Northern District of California

1  potential appeal, and possibly be forced to pay significant damages for infringing the exact claims

2  that have already been determined to be invalid by the PTO.

3         The Court recognizes that a stay will cause further delay in this case.  The Court is sensitive

4  to the Ricoh's right to have its day in court.  Nonetheless, in light of the respective risk of prejudice

5  to the parties and the speed under which the PTO has conducted its reexamination of the claims at

6  issue, the Court finds this factor weighs in favor of staying the action.

7  **II.     Whether a Stay Will Simplify the Issues in Question and Trial of the Case**

8         Ricoh argues that the reexamination will not simplify the issues in question.  Rather, Ricoh

9  argues that proceeding to trial will better simplify the issues because the PTO could apply the

10 doctrine of collateral estoppel based on the factual findings of this Court.  Lastly, Ricoh declares that

11 this Court has already found this factor to be neutral.  Defendants insist that a court decision in

12 Ricoh's favor will not bind the PTO.  Defendants also argue that the circumstances surrounding the

13 reexamination have changed since their last request for a stay.

14        Courts routinely consider the expertise of the PTO, under which claim validity will be

15 rigorously reevaluated, as an important factor in determining whether to stay its proceedings.  *See*

16 *e.g. Gould*, 705 F.2d at 1342; *GPAC Inc. v. D.W.W. Enter. Inc*., 144 F.R.D. 60 (D.N.J. 1992); *see*

17 *also Bausch & Lomb Inc. v. Alcon Labs., Inc*., 914 F. Supp. 951, 953 (W.D.N.Y. 1996) ("Because

18 the PTO is considered to have expertise in deciding issues of patentability[,] many courts have

19 preferred to postpone making final decisions on infringement until the PTO rules on issues before

20 it.").  The technical nature of the patent claims in question increases the utility of PTO expertise,

21 which is further amplified by the need to examine prior art and publications not before the PTO

22 during its original patent examination.  *See Brown v. Shimano Am. Corp. (BNA)*, 18 U.S.P.Q.2d

23 1496 (C.D. Cal. 1991) ("[R]eexamination by the PTO when issues relevant to prior art are involved

24 is especially helpful given the PTO's expertise.").  In turn, patent cases not hinging upon the

25 consequences of prior art references have less of a need for the PTO's expertise.  *Emhart Indus. v.*

26 *Sankyo Seiki Mfg*., 3 U.S.P.Q.2D (BNA) 1889, 1892 n.3 (N.D.Ill. 1987) (distinguishing the matter

27 before it on such grounds, explaining that if "the issue of prior art was involved, the PTO's opinion

28 [would] be invaluable.") (quotation omitted).

**United States District Court**
For the Northern District of California

In analyzing this factor, the Court again notes that the circumstances surrounding the PTO's reexamination of the '432 patent have changed since Defendants' previous request for stay. The Court's primary concern regarding this factor in denying Defendants' previous request was the unpredictability of the PTO's reexamination proceedings. However, that is no longer an issue for concern. As explained above, the PTO has specifically *rejected each of the '432 patent claims* and has done so in a relatively expeditious manner. As a result the likelihood that the PTO's reexamination and expertise would assist the Court in determining patent validity, or potentially eliminating the need to try the action, has increased significantly.

Next, the Court addresses the issue of collateral estoppel. Ricoh argues that if the jury finds that the cited prior art does not invalidate the '432 patent, the PTO could find under the doctrine of collateral estoppel that there no longer exists a substantial question of patentability and terminate the reexamination. *See* Manual of Patent Examining Procedure ("MPEP") § 2259. Defendants accuse Ricoh of selectively citing to the MPEP. Defendants point out that § 2259 reads, "MPEP § 2242 and § 2286 relate to the [Patent] Office policy controlling the determination on a request for reexamination and the subsequent examination phase of the reexamination where there has been a Federal Court decision on the merits as to the patent for which reexamination is requested." Section 2286 addresses the actual reexamination proceedings and sets forth the PTO policy on what happens when a court makes a final determination on a patent that is in reexamination:

> The issuance of a final Federal Court decision upholding validity during an ex parte reexamination also *will have no binding effect on the examination of the reexamination*. This is because the court states in *Ethicon v. Quigg*, 849 F.2d 1422, 1428 [ ] (Fed. Cir. 1988) that the Office is not bound by a court's holding of patent validity and should continue the reexamination . . . .

MPEP § 2286 at § IV (emphasis added). The PTO's procedures, as set forth in § 2286, are in accord with *Ethicon*, where the Federal Circuit noted that the statutory scheme and the different burdens of proof in court and the PTO meant that "[t]he two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions." *Ethicon*, 849 F.2d at 1428 (stating "[t]he doctrine of collateral estoppel does not prevent the PTO from completing the reexamination in this situation. Courts do not find patents 'valid,' only that the patent challenger did not carry the 'burden of establishing invalidity in the particular case before the

United States District Court

For the Northern District of California

1    court' under 35 U.S.C. § 282. Thereupon, the patent simply remains valid until another challenger

2    carries the § 282 burden. Accordingly, a court's decision upholding a patent's validity is not

3    ordinarily binding on another challenge to the patent's validity in either the courts or the PTO.")

4    (citations omitted); *see also Bausch & Lomb, Inc. v. Alcon Lab., Inc*., 914 F. Supp. 951, 952

5    (W.D.N.Y. 1996). Thus, neither the MPEP nor binding precedent permit the PTO to simply adopt a

6    court's determination, therefore the reexamination at issue would otherwise proceed.[5] As a result,

7    the Court finds Ricoh's collateral estoppel argument unavailing.

8    The Court also finds that the PTO's reexamination may simplify the issues before this Court.

9    Simplification may occur by the very nature of the reexamination procedure itself, as claims,

10   arguments and defenses can be narrowed or entirely disposed of, preserving the resources of the

11   parties and the court. *See Broadcast Innovation, LLC v. IO Research Pty, Ltd.*, 2006 U.S. Dist.

12   LEXIS 46623 (D. Colo. 2006). Here, if the rejected claims are found to be invalid by the PTO, then

13   there will be no basis for the present action. Conversely, if not found invalid, the reexamination may

14   result in a narrowing and simplifying of the issues before the Court because the scope of the patent

15   claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent

16   infringement analysis. *See e.g., Allen Eng'g Corp. v. Bartell Indus., Inc*., 299 F.3d 1336, 1344 (Fed.

17   Cir. 2002).

18   Finally, since it is possible that this Court and the PTO could reach inconsistent conclusions

19   regarding the same patent, there is a significant concern of wasting resources by unnecessarily

20   proceeding to trial. If this Court were to deny the stay and proceed to trial, it is possible that the

21   time, resources, and significant efforts of all those involved in such a trial, including a jury, would

22   be wasted. The risk of potentially inconsistent decisions between this Court and the PTO would not

23   only cause Defendants significant harm (as noted above) but it also would be a tremendous waste of

24   the time and resources of all those involved. For the reasons above and because the reexamination is

25   to be conducted "with special dispatch," the Court finds that this factor weighs in favor of a stay.

26   *See* 35 U.S.C. § 305.

27   _____

28       [5]The Court also notes that the PTO provisions apply to final decisions on the merits. Thus, in order for the trial in this case to have an effect on the reexamination, Ricoh would need to prevail at trial and on appeal. When compared to the simplicity of allowing the reexamination to be completed, the Court finds Defendants' request for a stay to be well taken.

United States District Court

For the Northern District of California

**III.   Whether Discovery is Complete and Whether a Trial Date Has Been Set**

Ricoh argue against a stay and point out that discovery is closed and this case is currently set for trial.  Defendants contend that although the case is set for trial, a large amount of time and a significant amount of resources remain before the parties and the Court are ready for trial.

The proximity of the trial date, by itself, does not preclude entry of a stay.  *Broadcast Innovation*, 2006 U.S. Dist. LEXIS at *27.  It is not uncommon for courts to have granted stays where discovery has been completed, and when a trial date has been scheduled or is forthcoming. *Id.* (citing *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*, 68 U.S.P.Q. 2d 1755, 1757 (E.D. Mich. 2003); *see also Perricone v. Unimed Nutritional Services, Inc.*, 2002 U.S. Dist. LEXIS 17613, 2002 WL 31075868, *3 (D. Conn. 2002) (noting that courts "have granted stays pending re-examination proceedings notwithstanding the well-developed posture of the litigation")). For every court that yields to completed discovery and a looming trial date, another court finds these dates outweighed by other factors–be it the complexity of the suit, the value of PTO expertise, simplification of the issues, lack of hardship to the nonmovant, or the overall burden of duplicitous litigation on the parties and on the court.  *Id.* at *28.  "Put simply, trial time doesn't always tell the tale."  *Id.* (citing *Gould*, 705 F.2d at 1342 (order granting motion to stay proceedings five years into litigation and twenty days before scheduled trial date); *Middleton, Inc. v. Minn. Mining & Mfg.*, 2004 U.S. Dist. LEXIS 16812, at *10 (granting motion to stay proceedings eight years after start of litigation and less than two months before trial); *Loffland Bros.*, 225 U.S.P.Q. at 887 (order granting motion to stay proceedings after significant discovery, rulings on dispositive motions, pretrial conference and setting of initial trial date); *Robert H. Harris Co.*, 19 U.S.P.Q.2d at 1789 (granting stay despite the fact that case was set for trial in less than a month); *Motson*, 2005 U.S. Dist. LEXIS 34067, 2005 WL 3465664 at *2 (granting stay despite discovery being complete and summary judgment decided).

In examining this factor in light of the changed circumstances after the Court's ruling on Defendants' previous motion to stay, the Court finds that a stay is appropriate.  Undoubtably the parties have spent considerable time and resources thus far–substantial discovery has been

United States District Court

For the Northern District of California

1  conducted and the parties have submitted witness lists and lengthy summary judgment motions.  Yet

2  far more time and resources remain to be spent before this matter is concluded.  Not only must the

3  Court hear the pending motions for summary judgment, but the parties must also begin to prepare for

4  trial by finalizing deposition designations, preparing witnesses, finalizing jury instructions, drafting

5  and preparing motions in limine, drafting and exchanging witness and exhibit lists, and preparing

6  arguments.  Defendants argue that neither the Court nor the parties should expend additional

7  resources when it is uncertain which, if any, of the claims will survive the reexamination process.

8  Given the PTO's initial rejection of each of the relevant claims, the reexamination proceedings may

9  well alter, moot, or resolve the issues set for trial.  Staying the trial pending conclusion of the PTO's

10  review will eliminate the additional expense of trial preparation and the risk of inconsistent rulings.

11  **CONCLUSION**

12      For the foregoing reasons, the Court **GRANTS** Synopsys and the Customer Defendants'

13  Motion for a Stay.  Because the PTO's reexamination and current rejection of the claims may

14  materially affect the issues in this case, the Court will grant the motion to stay.  The case is stayed

15  pending a disposition of the PTO's reexamination of the '432 patent and the relevant claims.  All

16  pending motions will be denied without prejudice; the parties may refile them following the stay and

17  upon the entry of a new scheduling order, if applicable.

18

19

20  **IT IS SO ORDERED.**

21

22

23  Dated: December 14, 2006

24                                MARTIN J. JENKINS

                                  UNITED STATES DISTRICT JUDGE

25

26

27

28

10